# EXHIBIT A

DIP Term Loan
Summary of Indicative Terms and Conditions

TERM SHEET

Giga Watt, Inc.

December 17, 2018

*Below is a summary of certain basic terms under which DIP Lender would be willing to provide to Borrower (each defined below) a secured term loan. This term sheet represents a commitment subject to the following terms and conditions:*

| | |
|---|---|
| **Borrower:** | Giga Watt, Inc., as debtor and debtor in possession. |
| **DIP Lender:** | High Five Capital LLC, or its designee. |
| **DIP Term Loan:** | Secured debtor in possession term loan of $500,000. |
| **Closing:** | The date on which the DIP Term Loan is funded, which shall be no later than January 1, 2019. |
| **Maturity:** | The earlier of (a) June 30, 2019, provided, however, Borrower shall have the right to extend such date to no later than September 30, 2019 by exercising one three-month extension period ("Extension Period"); or (b) confirmation of a chapter 11 plan, in form and substance acceptable to DIP Lender. |
| **Interest Rate:** | The DIP Term Loan shall bear interest at the rate of 20% per year; provided, however, that upon exercise by Borrower of the Extension Period, and on the occurrence of an Event of Default, the DIP Term Loan shall bear interest at the rate of 24% per year. |
| **Use of Proceeds:** | The proceeds of the DIP Term Loan shall be used exclusively for working capital of the Borrower and its subsidiaries in accordance with the Approved Budget (defined below), in form and substance acceptable to DIP Lender, to be prepared by Borrower and furnished to DIP Lender setting forth the expenditures and revenues of Borrower during its chapter 11 cases as set forth on the budget annexed hereto as Exhibit 1 ("Approved Budget"). |
| **Fees:** | Closing Fee: $10,000, payable to DIP Lender at closing, which shall be deemed earned at Closing, and accrued and added to the outstanding principal indebtedness under the DIP Term Loan at Closing (in lieu of being paid cash at said time). |

Success Fee: If a chapter 11 plan for the Debtor is confirmed, or all or substantially all of Debtor's assets are sold pursuant to Bankruptcy Code section 363 outside of a plan, then a fee in the amount of $100,000 shall be payable to DIP Lender on the confirmation date or closing of such section 363 sale, as applicable. In addition, if a chapter 11 plan for the Debtor is confirmed, 5% of the post-reorganization equity shall be payable to DIP Lender on the confirmation date.

**Scheduled Interest and Principal Repayment**

Interest on DIP Term Loan shall be paid in kind by capitalizing such interest on the last day of each month. Accrued obligations in respect of the DIP Term Loan (including principal, interest, enforcement costs, and Fees) (together, "DIP Obligations") shall be due and payable in cash at Maturity.

**Collateral:**

The DIP Term Loan shall be secured (subject only to (a) the Carveout (defined below) and (b) certain "Permitted Liens" to be determined by the parties prior to final documentation) pursuant to Bankruptcy Code section 364(d) by (i) a valid, perfected security interest in and lien upon all of Borrower's assets and all proceeds and products of the foregoing, with priority over all existing liens including that of Giga Plex, LLC and mechanic's liens on Borrower's assets; (ii) a valid, perfected security interest in and lien upon proceeds of any and all claims, causes of action, and rights of Borrower arising under Bankruptcy Code sections 542-553 (other than section 549).

**Conditions Precedent:**

Customary conditions for financings of this type, including: (a) execution of all usual and customary credit documentation, including, without limitation, a secured loan agreement incorporating the terms and conditions set forth herein ("DIP Loan Agreement"), in form and substance satisfactory to DIP Lender; (b) perfection of all security interests in the Collateral as set forth in the DIP order; (c) the absence of any lawsuit, investigation, or proceeding (save the chapter 11 case) pending or threatened that in DIP Lender's judgment could reasonably be expected to have a material adverse effect on Borrower's business, or materially and adversely affect the DIP Term Loan; (e) payment of all fees and reasonable expenses imposed hereunder and/or incurred by DIP Lender; and (f) an order shall have been entered by the Bankruptcy Code (i) authorizing the secured financing under the DIP Term Loan on terms and conditions set forth herein; (ii) modifying the automatic stay; (iii) authorizing and granting the security interests and liens described above; (iv) granting DIP Lender a super priority administrative expense claim in the amount of the DIP Obligations; and (v)

|  |  |
|---|---|
| | containing a good faith finding under Bankruptcy Code section 364(e). |
| **Documentation:** | The DIP Term Loan shall be subject to terms and conditions set forth in the DIP Loan Agreement, which shall include usual and customary provisions for financings of this kind, including conditions (including those described herein), representations and warranties, affirmative and negative covenants, financial reporting requirements, assignment and participation provisions, indemnification, events of default, and remedies (including, without limitation, the right to credit bid in a section 363 sale). |
| **Covenants:** | The DIP Loan Agreement shall include usual and customary covenants for financings of this kind, including: (a) milestones for disclosure statement approval and confirmation of a chapter 11 plan, or consummation of a section 363 sale; (b) limitations on liens; (c) limitations on restricted payments; (d) limitations on affiliate transactions; (e) limitations on modification of certain agreements; and (f) limitations on certain voluntary payments; (g) limitations on super-priority claims; and (h) limitations on chapter 11 orders. |
| **Budget:** | Borrower shall not pay any expenses save those set forth in the Approved Budget. The Approved Budget reflects, on a line-item basis, anticipated cash receipts and expenditures on a weekly basis and includes all necessary and required expenses that Borrower expects to incur each month of the Approved Budget. The Approved Budget shall be revised by the end of each month during the term of the DIP Term Loan, and shall remain subject to the consent of the DIP Lender. Not later than the second business day of each week commencing with the second week of the period covered by the Approved Budget, Borrower shall provide DIP Lender with a variance report, reflecting on a line-item basis, actual cash disbursements and revenues for the preceding week and the percentage variance ("<u>Variance Percent</u>") of such actual disbursements and revenues from those reflected in the Approved Budget for that period. Any disbursement by Borrower other than for budgeted amounts as set forth in the Approved Budget shall constitute an Event of Default under the DIP Loan Agreement unless DIP Lender has agreed to the those changes in writing; provided, however, Borrower may make payments in exceeds of the total budgeted disbursements so long as the Variance Percent of the aggregate of all actual disbursements for each week shall not exceed ten percent (10%) of the budgeted disbursements for that week ("<u>Allowed Disbursement Variance</u>"). Any amount included in the Approved Budget that is not incurred or paid |

|  | during a particular week shall be permitted to be carried over into subsequent weeks of the Approved Budget. The foregoing shall be tested each week pursuant to a variance report delivered by Borrower to DIP Lender on the Wednesday of each week reflecting on a line-item basis Borrower's actual performance compared to the Approved Budget for the applicable period after Closing and the Variance Percent of Borrower's actual results from those reflected in the then-extant Approved Budget along with management's explanation of such variance. |
|---|---|
| **Carveout:** | The DIP order shall contain a "carveout" defined as follows: (a) following a Triggering Event (defined below), (i) allowed fees, and reimbursement for disbursements of professionals retained by Borrower ("Borrower's Professional Fee Payments") accrued in accordance with the Approved Budget in an aggregate amount for all of Borrower's Professional Fee Payments not to exceed $50,000 (the "Carveout Amount"); (ii) quarterly fees payable under 28 U.S.C. § 1930(a)(6); and (iii) fees payable to a chapter 7 trustee in an aggregate amount not to exceed $10,000 (collectively, the "Carveout Amount"); and (b) without reducing the Carveout Amount, all Borrower's Professional Fee Payments accrued in accordance with the Approved Budget and payable under Bankruptcy Code sections 330 and 331, to the extent incurred prior to such Triggering Event. "Triggering Event," as used herein, means the date the DIP Lender provides to Borrower notice of an Event of Default, failure to pay quarterly fees owed under 28 U.S.C. § 1930(a)(6) and interest due thereon. The Carveout shall not be used for any actions adverse in any manner to DIP Lender. |
| **Expenses and Indemnification:** | The DIP Term Loan shall provide Borrower will be responsible for all reasonable costs, fees, and expenses of DIP Lender, and will indemnify it and its affiliates against any and all liabilities arising out of this transaction. Borrower's obligations under this paragraph shall survive termination of this term sheet. |
| **Governing Law:** | New York. |

If you wish to accept this term sheet, please return executed counterparts of this proposal letter to Thomas Braziel and Brian Stout by e-mail at thomas@highfivecap.com and brian@highfivecap.com on or before 4:00 p.m. on December 24, 2018; otherwise, this term sheet shall automatically terminate on such date and time and be of no further force and effect. High Five Capital LLC's commitment hereunder will expire at such time in the event that we have not received such executed counterparts in accordance with the preceding sentence. If you do so execute and deliver to us this term sheet, we agree to hold our commitment available to you until the earlier of the hearing date on a motion to approve the DIP Term Loan, which must be by

February 1, 2019. Following said date, this term sheet and our commitment hereunder shall automatically terminate unless we, in our discretion, agree to an extension in writing.

High Five Capital LLC is working to present a financing package that meets your request and needs. We appreciate the opportunity to propose this financing package and look forward to discussing this term sheet with you.

This term sheet may be executed in any number of counterparts, each of which, when so executed, shall be deemed to be an original but all of which shall together constitute one and the same instrument. Delivery of an executed counterpart of a signature page of this term sheet by electronic means shall be as effective as delivery of a manually executed counterpart.

GIGA WATT, INC.


Name:
Title: