TIMOTHY R. FISCHER, WSBA NO. 40075
WINSTON & CASHATT, LAWYERS
601 W. Riverside Avenue, Suite 1900
Spokane, WA 1900
Telephone: (509)838-6131
trf@winston&cashatt.com

Attorneys for Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Case No. 18-03197-11 |
| GIGA WATT, INC., | Chapter 11 |
| Debtor. | **DEBTOR'S OBJECTION TO MOTION FOR RELIEF FROM STAY; ABANDONMENT; AND REJECTION OF UNEXPIRED COMMERCIAL LEASES** |
| | Hearing: |
| | DATE: January 17, 2019 |
| | TIME: 1:00 p.m. |

1

Giga Watt, Inc., the debtor and debtor in possession herein (the "Debtor"), respectfully submits this objection (the "Objection") to that certain *Motion For Relief From Stay; Abandonment; And Rejection Of Unexpired Commercial Leases* [Doc. No. 76] (the "RFS Motion") filed by the Debtor's landlords, Giga Plex, LLC and MLDC1, LLC (together, the "Landlord"). All capitalized terms not defined herein shall have the same meanings afforded to them as in the RFS Motion.

## I.

## STATEMENT OF FACTS

1. The Debtor commenced this case by filing a voluntary petition under Chapter 11 of 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") on November 19, 2018 (the "Petition Date").

2. The cryptocurrency market is over $250 billion in value. Each of the hundreds of crypto coins in existence rely on the core concept of the "blockchain". Cryptocurrency was designed to be decentralized, secure and unalterable. So every single transaction is encrypted. Once that encrypted transaction happens it's added to something called a "block" until a fixed number of transactions has been recorded. That block then gets added to a chain -- the blockchain -- which is publicly available.

3. These transactions leave no trace of who is behind them, however, because privacy is also a pillar of cryptocurrency. The location of the transactions isn't centralized, either, so that it can't be manipulated or controlled by one person or entity.

4. Since these blocks are heavily encrypted, they are akin to complicated math puzzles that only powerful computers can solve. The process of solving the math puzzles on these "blocks" and adding them to the public "blockchain" (similar to an accounting ledger) "mining".

5. Miners verify the transactions, ensure they aren't false, and keep the infrastructure intact. The miner's fee for doing such work is payment in that block's coin. The payment is based on how much their hardware contributed to solving that puzzle. Such payment is how new crypto coins are created and increases the number of coins in the marketplace.

6. However, only the first miner to solve the transaction is rewarded with the crypto coins. As a result, to stay competitive, sophisticated computer systems are crucial.

7. A *Marketwatch* article published on October 13, 2018 (https://www.marketwatch.com/story/if-youre-mining-bitcoin-from-home-youre-now-losing-money-2018-10-12) provides a good description of the costs of crypto mining:

> The hash rate is a measure of the computing power required to confirm a bitcoin transaction. As competition swelled, so did the hash rates, which in turn drove up electricity bills as miners scrambled to ramp up their mining equipment.
>
> However, these costs have reached levels where only institutional companies can foot the lofty electricity bills, Diar research found. "The investment proposition for smaller miners held true throughout most of this year, but has since become questionable on the back of an increase of computing power competing for the coinbase reward."

8. The Debtor's business plan was to open up the industry to smaller scale miners by creating customized mining "pods" along with a cheap and stable electricity supply and round-the-clock maintenance at a facility in central Washington. The Debtor effectuated the foregoing through its proprietary "Giga Pods," groundbreaking solution which takes advantage of mining hardware's extremely high power density, avoids active cooling consumption, and saves power for high-efficiency computing. In other words, the Debtor provides all the necessary infrastructure for mining and acts as a host for miners.

9. The Debtor entered into the Leases with Landlord pursuant to which the Debtor leased the Premises used for hosting such mining operations. The Debtor invested tens of millions of dollars in improving the facility with, among other things, construction of the infrastructure and the Giga Pods. The Debtor estimates that the current fair market value of the personal property assets located inside the Premises ("Personal Property Assets") total $22 million. The Debtor understands that the Landlord asserts a value of $8 million for such assets housed within the Premises.

10. Minor liens have been asserted against the Personal Property Assets in the

3

18-03197-FPC11    Doc 96    Filed 01/14/19    Entered 01/14/19 16:18:08    Pg 3 of 7

approximately amount of $1,000,000, including the lien held by Giga Plex, LLC (one of the landlords) to secure the obligations under the Lease entered into with Giga Plex, LLC. Based on the foregoing, the Debtor submits that substantial equity in the Personal Property Assets exists.

11. In addition to the Personal Property Assets, assets belonging to other third parties, including valuable servers, are also located at the Premises and housed within the Giga Pods. These other parties have not received notice of the RFS Motion.

## II.

## DISCUSSION

### A. Landlord Has Not Presented A Prima Facie Case Demonstrating That It Is Entitled To Relief From Stay.

It is axiomatic that a party seeking relief from stay has the burden of presenting a prima facie case demonstrating a factual and legal right to the relief it seeks. 3 COLLIER ON BANKRUPTCY ¶ 362.10, at 362-113 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). It would be both illogical and inefficient to require the debtor to demonstrate the nonexistence of every conceivable cause for relief under § 362(d)(1). *In re Setzer*, 47 B.R. 340, 345 (Bankr. S.D.N.Y. 1985).

Practical considerations also underlie the allocation of the initial burden of production to the movant. As Professor Kennedy has noted, "facts providing a justification for modifying the stay will ordinarily be more easily provable by the creditor than disprovable by the [debtor]." Kennedy, *The Automatic Stay in Bankruptcy*, 11 U.Mich.J.L.Ref. 175, 227 (1978). Further, if the burden of producing evidence were not initially allocated to the party seeking relief under section 362(d)(1), debtors would encounter difficult, if not insurmountable, problems of proof. As such, sound policy considerations militate in favor of a rule requiring that the party seeking relief from stay under section 362(d)(1) introduce a certain quantum of evidence sufficient to establish a *prima facie* case, or cause, thereby putting to the debtor the burden of producing evidence to show otherwise. Unless the quantum of proof on the issue of cause under section

18-03197-FPC11    Doc 96    Filed 01/14/19    Entered 01/14/19 16:18:08    Pg 4 of 7

362(d)(1) reaches a certain threshold, no *prima facie* case is established and the debtor is not required to introduce evidence to meet and rebut the *prima facie* case. *FSFG Service Corp. v. Kim (In re Kim)*, 71 B.R. 1011, 1015 (Bankr. C.D.Cal. 1987).

What constitutes a *prima facie* case for relief from stay turns on the grounds upon which relief from stay is sought. However, Landlord's motion is so devoid of facts and law that the Debtor is unable to tell under what subsection of Section 362 Landlord seeks relief from stay. Landlord only mentions Section 362 generally. Landlord does mention that Landlord is "not adequately protected" but does not discuss why Landlord is not adequately protected. Landlord likely does not go into detail regarding why Landlord is not adequately protected because Landlord is so glaringly adequately protected. As set forth above, Landlord Giga Plex, LLC has asserted a security interest in the Personal Property Assets. According to the RFS Motion, Landlord is currently owed $503,921.55. Even if all of the foregoing is secured by the Personal Property Assets (and the Debtor does not agree or consent that the foregoing amount is secured by the Personal Property Assets), Landlord is adequately protected by the over $7 million in equity in the Personal Property Assets. The fact that Landlord claims that it is not adequately protected is ludicrous given the numbers in involved in this case.

In summary, given the lack of detail regarding the basis for the RFS Motion, it is difficult, to say the least, for the Debtor to properly respond to the request for relief sought in the RFS Motion. However, what is clear from the Landlord's lack of detail is that the Landlord has fallen far short of establishing a prima facie case for relief from stay under any subsection of Section 362 of the Bankruptcy Code.

**B.** **Relief From Stay Should Be Denied At This Time As The Debtor Anticipates Assuming The Lease, And Curing All Defaults Thereunder, Within The Time Period Provided For Under The Bankruptcy Code.**

The Debtor submits that the Landlord's request for relief from the automatic stay is premature and should be denied at this time because the Debtor anticipates assuming the Lease (and curing all defaults thereunder) within the 120 day time period provided for the Debtor to

18-03197-FPC11    Doc 96    Filed 01/14/19    Entered 01/14/19 16:18:08    Pg 5 of 7

assume or reject the Lease pursuant to 11 U.S.C. § 365(d)(4). Pursuant to 11 U.S.C. § 365(d)(4), the Debtor is required to assume or reject the Lease within 120 days after the Petition Date (unless such period is extended by the Court for cause) or the Lease shall be deemed rejected and the Debtor shall immediately surrender the Premises to the Landlord.

The Debtor's case has been pending only less than two months. The Debtor should be afforded the breathing room to determine whether or not to assume or reject the Leases, particularly where moving the Personal Property Assets (if the Debtor were forced to vacate the Premises) has the potential of derailing the Debtor's business completely and where the Landlord is adequately protected by having the ability to assert an administrative claim (and has a partially secured claim) in a case that has substantial unencumbered assets.

At this time is it the Debtor's intention to assume the Lease and the Debtor is in the process of securing financing to allow the Debtor to cure any defaults under the Lease and assume the Lease. The Debtor is in the process of acquiring a Letter of Interest for purchase of interest in the Debtor, and expects to have concrete details of the purchase early this week. This amount should pay what is due to the Movant, and it would be in the best interest of the creditors and the estate for assets to be preserved.

Based on the above, the Debtor submits that it should be provided its 120 days period to assume or reject the Leases as contemplated and afforded under the Bankruptcy Code.

C.  **The Debtor Should Not Be Required To Abandon The Personal Property Assets.**

Pursuant to the RFS Motion, Landlord seeks an order directing the Debtor to abandon the Personal Property Assets that are located at the Premises. Landlord does not provide any legal or factual basis for this request. As discussed above, the Personal Property Assets are extremely valuable and are the cornerstone of the Debtor's business. If the Debtor were forced to abandon the Personal Property Assets, the Debtor would no longer be able to operate and the Debtor's other creditors apart from the Landlord would not receive any money. Additionally, the Personal Property Assets have substantial equity in them that can be used to generate cash to fund a plan of reorganization and make payments to all of the Debtor's creditors. By forcing the Debtor to

abandon the Personal Property Assets, the Landlord would gain windfall to the detriment to all of the Debtor's other creditors. This is simply not right and not fair to the Debtor's other creditors and its estate.

### III.

### CONCLUSION

**WHEREFORE**, the Trustee respectfully requests that this Court enter an order denying the RFS Motion in its entirety, and granting such other and further relief as the Court deems just and proper.

///

///

Dated: January 14, 2019

WINSTON & CASHATT, LAWYERS

By: /s/ Timothy R. Fischer
TIMOTHY R. FISCHER
Attorneys for Debtor In Possession