<u>Exhibit C</u>
Pangborn Lease

**LAND LEASE FOR PORTION OF
PANGBORN AIRPORT BUSINESS PARK
EAST WENATCHEE, WASHINGTON**

THIS LEASE ("Lease") is made by and between the PORT OF DOUGLAS COUNTY, a municipal corporation of the State of Washington (the "Landlord") and Giga Watt, Inc. (the "Tenant").

1. Lease and Acceptance of the Premises.

    a. **Lease of Premises.** The Landlord leases to the Tenant the 345,326 square feet, which is 7.93 +/- acres, of unimproved real property, known as **Lots 10, 11, 12 and 13**, in the Pangborn Airport Business Park located at **643, 644, 675 & 676 South Billingsley Drive**, East Wenatchee, Washington 98802, more particularly described in Exhibit A (the "Premises").

    b. **Acceptance of Premises.** The Premises constitutes vacant land within the Pangborn Airport Business Park. The Landlord and Tenant each represent to the other that neither is aware of any condition or occurrence with respect to the Premises which would constitute any violation of federal, state or local law. The Tenant has examined the Premises and all other matters determined necessary by the Landlord, and the Tenant accepts the Premises in its present condition, with all defects. The parties agree that there are no warranties, expressed or implied as to conditions apparent or unknown on the Premises, except as otherwise stated in this Lease.

    c. **Lot Consolidation.** At its own expense, the Landlord shall do a lot consolidation for Lots 10, 11, 12 and 13 to accommodate the Tenant's use of Premises.

2. Use. The Tenant shall use the Premises and construct improvements for the purpose of operating computing facility, server repair and testing and technology development.

3. Term.

    a. **Term.** The term of this Lease is thirty (30) years beginning **March 1, 2017** and ending on **February 28, 2047**.

    b. **Effective Date.** The terms of this Lease shall be effective and binding on both parties upon the signing of this Lease (the "Effective Date").

    c. **Extended Term.** The Tenant may request the Term be extended for up to two (2) additional terms of ten (10) years each by notifying the Landlord twelve (12) months prior to the end of the term or extended term. The Rent for an extended Term shall be determined according to Section 4. Unless otherwise agreed to by the Parties, the terms of the Lease for the extended term shall be the same terms and conditions as set forth herein.

4. Rent.

    a. **Base Rent.** The Tenant shall pay the Landlord annual rent in monthly installments. The annual rate shall be twenty-five cents ($.25) per square foot with an increase of One and a Half percent (1.5%) per year. The periodic Rental Market Rate Adjustments, as calculated in Paragraph (b) below, shall constitute the base rent when such adjustments become

effective. All rents and other payments to be made pursuant to this Lease shall be paid to the Landlord at its offices at 455 6th Street NE, Suite 100, East Wenatchee, WA 98802, or such other place as the Landlord may designate.

Rent Schedule for Years 1-15

| Month | | Annual Lease | Monthly Lease Payment | Monthly Leasehold Tax | Total Due Monthly |
|---|---|---|---|---|---|
| Year 1 | 1 | 86,331.50 | Deferred | 923.75 | 923.75 |
| | 2 | | Deferred | 923.75 | 923.75 |
| | 3 | | Deferred | 923.75 | 923.75 |
| | 4 | | Deferred | 923.75 | 923.75 |
| | 5 | | Deferred | 923.75 | 923.75 |
| | 6 | | Deferred | 923.75 | 923.75 |
| | 7 | | 14,388.58 | 923.75 | 15,312.33 |
| | 8 | | 14,388.58 | 923.75 | 15,312.33 |
| | 9 | | 14,388.58 | 923.75 | 15,312.33 |
| | 10 | | 14,388.58 | 923.75 | 15,312.33 |
| | 11 | | 14,388.58 | 923.75 | 15,312.33 |
| | 12 | | 14,388.58 | 923.75 | 15,312.33 |
| Year 2 | | 87,626.47 | 7,302.21 | 937.60 | 8,239.81 |
| Year 3 | | 88,940.87 | 7,411.74 | 951.67 | 8,363.41 |
| Year 4 | | 90,274.98 | 7,522.92 | 965.94 | 8,488.86 |
| Year 5 | | 91,629.11 | 7,635.76 | 980.43 | 8,616.19 |
| Year 6 | | 93,003.54 | 7,750.30 | 995.14 | 8,745.43 |
| Year 7 | | 94,398.60 | 7,866.55 | 1,010.06 | 8,876.61 |
| Year 8 | | 95,814.58 | 7,984.55 | 1,025.22 | 9,009.76 |
| Year 9 | | 97,251.79 | 8,104.32 | 1,040.59 | 9,144.91 |
| Year 10 | | 98,710.57 | 8,225.88 | 1,056.20 | 9,282.08 |
| Year 11 | | 100,191.23 | 8,349.27 | 1,072.05 | 9,421.32 |
| Year 12 | | 101,694.10 | 8,474.51 | 1,088.13 | 9,562.64 |
| Year 13 | | 103,219.51 | 8,601.63 | 1,104.45 | 9,706.07 |
| Year 14 | | 104,767.80 | 8,730.65 | 1,121.02 | 9,851.67 |
| Year 15 | | 106,339.32 | 8,861.61 | 1,137.83 | 9,999.44 |

b. **Rent Commencement Date.** The rent shall be paid monthly on the First (1st) of each month. Upon execution of this Lease, Landlord shall defer rent payments for six (6) months.

c. **Early Access.** Landlord shall allow Tenant to access Premises after the Effective Date and prior to the beginning of the term of this Lease to perform the site engineering and survey, planning activities, snow clearing, delivery of land moving equipment and material required for building, and other activities necessary for the Tenant to start using the Premises for the

18-03197-FPC7    Doc 253-3    Filed 03/29/19    Entered 03/29/19 07:49:09    Pg 3 of 14

intended purpose at the beginning of the term. In no way shall Tenant begin work for which a permit is required but not obtained during this Early Access period.

d. **Market Rate Adjustments.** Fifteen (15) years after the commencement of the lease, and at the beginning of each extended term, the base rent shall have a market rate adjustment to bring the rent into alignment with the current market conditions. The Base Rent shall adjust to the fair market rent for the Premises without improvements, however, the rent shall never decrease below the previous year's rent. Ninety (90) days prior to the start of Year Sixteen (16), the fair market rent shall be determined by an MAI real estate appraiser licensed in the State of Washington, mutually selected by and paid for by both Landlord and Tenant in equal shares. The appraiser shall only determine the fair market rental value of the land comprising the Premises, including the value of any related infrastructure improvements that have been placed upon the Premises by, and/or owned by the Landlord. The value of any improvements constructed and owned by the Tenant shall be excluded entirely from the determination of the fair market rental value of the Premises pursuant to this procedure. The appraiser selected by the Landlord and the Tenant shall notify each party hereto of his determination of such value and upon such notification, the Landlord and Tenant shall negotiate the rent, based on the current fair market value. If an agreement can't be reached either party may request arbitration which shall be appointed by the Superior Court in Douglas County. The cost of the arbitration shall be equally shared by both parties.

e. **Leasehold Tax.** In addition to the base rent, the Tenant shall pay to the Landlord a leasehold excise tax pursuant to Chapter 82.29A RCW, which is currently at 12.84% of taxable rent and other measurable consideration.

f. **Deposit.** On the Effective Date of the lease, Tenant shall provide a deposit of Fifteen Thousand Dollars ($15,000.00) which shall be applied to the deferred lease hold taxes and rent beginning in Month 7.

g. **Operating Expenses.** It is the intention of the Parties, and they agree, that this Lease shall be a triple-net Lease and the Landlord shall have no obligation to provide any services, perform any act or pay any expenses, charges, obligations or costs of any kind, whatsoever, with respect to the premises, except as provided for in this Lease, and the Tenant agrees to pay one-hundred percent (100%) of any and all operating expenses including, but not limited to:

   1. **Contribution-in-Aid-of-Construction (CIAC):** Tenant shall pay for PUD Infrastructure pursuant to the CIAC Agreements attached hereto as Exhibits B and C and incorporated by reference as if set forth in full, as an additional charge which shall be reasonable and ordinary. In the event this Lease is terminated under section 4(j) of this lease, the Tenant shall remain responsible for the CIACs.

   2. **Additional Charges:** Except as provided in the Lease, Tenant shall pay all additional operating expenses for only those matters that touch and concern the leased Premises including, without limitation, local, state and federal charges, utility taxes and assessments, maintenance costs, insurance expenses, engineering fees, and

Port of Douglas County
Land Lease Agreement
Page 3 of 11

18-03197-FPC7    Doc 253-3    Filed 03/29/19    Entered 03/29/19 07:49:09    Pg 4 of 14

other charges. The Landlord will promptly notify the Tenant of any such additional charges due, and the Tenant shall promptly pay the additional charges set out in the Landlord's notice within Thirty (30) days of the notice date

    h. **Interest—Late Charge.** Interest shall accrue on all delinquent Tenant rents and other accounts at the rate of Twelve percent (12%) per annum. The Tenant shall also pay a late charge equal to Four percent (4%) of the annual base rent for every month if the rent is delinquent for more than five (5) days after the due date.

    i. **Rent After Lessee Vacates Premises.** In the event the Tenant vacates Premises and the Premises have not been returned to the condition required by this Lease, and cleanup of the Tenant's operations is necessary by the Landlord prior to the Landlord's ability to re-let the Premises, then rent as specified herein shall continue to accrue until the Premises are restored to a rentable condition.

    j. **Contingency.** This Lease is contingent upon the execution of the Interconnection and Service Agreement between the Tenant and the PUD regarding the delivery of up to 30 megawatts of electrical power. In the event this contingency is exercised within six (6) months of the effective date of the Lease, this Lease shall terminate with rent payments due from the Effective Date up to and including the date of termination.

5. Rules and Regulations.

    a. **Rules and Regulations.** The Tenant shall comply with the rules and regulations of federal, state and local governments that apply to the Premises and the Tenant's use of the Premises.

    b. **Restrictive Covenants.** The Tenant shall comply with the rules, regulations, ordinances and restrictive covenants of the Landlord as are presently in effect (attached as Exhibit D) and may in the future be adopted. The Tenant will ensure that it will keep the Premises in a clean, orderly and well maintained condition. Tenant specifically agrees to make all repairs, alterations and replacements necessary to maintain the Premises in good condition and repair, and shall surrender the Premises when required by this Lease in good condition, reasonable use and wear excepted.

6. Lease Surety. The Tenant shall, upon execution of this Lease and prior to occupying the Premises, file with the Landlord a current good and sufficient corporate surety company bond, rental insurance policy, or other security (the "Lease Surety") to secure the rental payments in accordance with RCW 53.08.085 and in a form satisfactory to the Landlord, in the amount of $300,000, which is equal to approximately three (3) years payment of rents plus Leasehold Tax. The Port, in its sole discretion, may choose to discontinue the requirement for the Lease Surety in Year six (6), or any time thereafter, based on the performance of the tenant. The Port may also, in its sole discretion, require the Lease Surety to be re-instated if the performance of the tenant later becomes unsatisfactory. The Lease Surety may be adjusted by the Port from time to time as reasonably determined by the Port, and based on the Tenant's performance under the terms of this Lease. The Tenant shall have thirty (30) days after written notice to comply with the Port's directive. In no event shall the Landlord require the Lease Surety amount to exceed the amount of Three (3) years

18-03197-FPC7    Doc 253-3    Filed 03/29/19    Entered 03/29/19 07:49:09    Pg 5 of 14

rent under the Lease. In the event the Tenant fails to increase the Lease Surety amount within the thirty (30) day period, then the Tenant shall be in default of this Lease. No future amendment, extension or modification of this Lease shall be effective until the Lease Surety, insurer or guarantor has given its consent thereto, and the amount of the Lease Surety has been adjusted as required by the Landlord. The Tenant shall cause the Lease Surety to remain in continuous effect during the term of this Lease. Any lapse in the Lease Surety shall be considered a material default of this Lease.

7. Tenant Improvements.

   a. **Construction.** The Tenant may, from time to time, at its own expense, make improvements upon the Premises, whether structural or otherwise, and may install such machinery, equipment and facilities thereon as may be proper and necessary in connection with the use and operation of the Premises; provided, however, that all such construction and improvements shall be done in accordance with the provisions of the Restrictive Covenants which require, among other things, that Tenant's plans for such construction and improvements must have the written approval of the Landlord and that all applicable county, state and federal regulations are met and applicable permits are issued. With assistance from the Landlord, an FAA Form 7460-1, Notice of Proposed Construction or Alteration, for all new buildings, structures, improvements or alterations will be submitted to, and comments obtained from, the FAA. All improvements shall be constructed in a good and workmanlike manner. Tenant agrees to obtain and maintain, at its expense, public liability insurance and Workman's Compensation Insurance adequate to fully protect the Tenant and the Landlord against any and all liability for death or injury to persons or damage to the Premises by reason of the construction of the Building.

   b. **Substation.** As part of its business operations, Tenant may, at its own discretion, purchase and install a Substation on the Premises for the purpose of electrical generation, transmission and/or distribution. Upon the expiration of the term (including additional extended terms of this Lease, if exercised), or default of this Lease after the commencement of Year 16, the title to Substation shall be transferred to the Landlord. Landlord shall have no rights or claims to the Substation before the expiration of the term (including additional extended terms of this Lease, if exercised), or default of this Lease prior to the commencement of Year 16.

   c. **Permanent Structures.** Improvements constructed on the Premises by Tenant and personal property belonging to the Tenant, whether such property consists of facilities, furniture, machinery, equipment, appliances or trade fixtures, shall be and remain the property of the Tenant regardless of whether each property is affixed to the real property comprising the Premises; provided, however, the title to all Permanent Structures placed on the Premises shall revert to the Landlord. The term Permanent Structures shall include roofed and walled buildings built for permanent use and shall exclude pre-fabricated slab-on-grade buildings that could be removed from the Premises by the Tenant regardless of their constructional design and size).

   d. **Risk of Loss.** The full risk of destruction or damage to any of the Tenant's property rests with the Tenant, and the Tenant shall maintain, at their own cost, an insurance policy

18-03197-FPC7    Doc 253-3    Filed 03/29/19    Entered 03/29/19 07:49:09    Pg 6 of 14

covering their personal property.

8. <u>Utilities</u>. The Tenant shall pay all charges for all utilities including, but not limited to, water, stormwater, sewer, natural gas, electrical, telephone or other communications service used, rented or supplied upon or in connection with the Premises, and shall indemnify the Landlord against any liability or damage on such account.

9. <u>Landscaping</u>. The Tenant shall landscape the Premises and maintain the landscaping on the Premises in accordance with the restrictive covenants and any applicable County regulations. The Landlord shall maintain all landscaping that it has developed on the common properties adjacent to the Premises.

10. <u>Snow Removal</u>. The Tenant shall be solely responsible for removing any accumulation of snow and ice from the sidewalk abutting the Premises, and from any parking areas serving the Premises and the improvements located thereon.

11. <u>Signs—Advertisements</u>. All signs or symbols posted or displayed on the Premises by the Tenant shall be subject to the prior approval of the Landlord, which shall not be unreasonably withheld, and shall comply with any applicable County regulations. If the Tenant utilizes the name of the Landlord in any of its advertisements or publicity of any kind, the Landlord shall have the unilateral right to approve or disapprove of such use.

12. <u>Indemnification of Landlord</u>. The Tenant shall indemnify, defend, and hold the Landlord and its officers, officials, employees and volunteers, and the premises, harmless, at the Tenant's expense, against all claims, expenses, and liabilities arising from:

    a. The use or occupancy by the Tenant of the Premises;

    b. Any default by the Tenant under this Lease;

    c. Any act or omission of the Tenant or its agents, contractors, employers, employees, invitees, guests, licensees, trespassers, or franchisors.

13. <u>Insurance</u>. The Tenant shall procure and maintain for the duration of the Term, insurance against claims for injuries to persons or damage to property which may arise from or in connection with the Tenant's operation and use of the Premises. The Tenant's insurance shall include Commercial General Liability Insurance on an all risk basis for an amount no less than $2,000,000 each occurrence, $5,000,000 general aggregate and Property Insurance for the full value of the Tenant's property and improvements with no coinsurance provisions. The insurance shall be with insurances having an A.M. Best rating of not less than A:VII.

    a. The Tenant's maintenance of insurance as required by this Lease shall not be construed to limit the liability of the Tenant to the coverage provided by such insurance, or otherwise limit the Landlord's recourse to any remedy available at law or in equity.

    b. The Tenant shall furnish the Landlord with original certificates and a copy of the amendatory endorsements, including but not necessarily limited to the additional insured endorsement, evidencing the insurance requirements of the Tenant.

Port of Douglas County                                                                                              Land Lease Agreement
Page 6 of 11

18-03197-FPC7    Doc 253-3    Filed 03/29/19    Entered 03/29/19 07:49:09    Pg 7 of 14

    c.     The Tenant shall provide the Landlord with written notice of any policy cancellation, within two business days of their receipt of such notice.

    d.     The Tenant's Commercial General Liability insurance policy or policies are to contain, or be endorsed to contain that they shall be primary insurance as respect the Landlord. Any insurance, self-insurance, or insurance pool coverage maintained by the Landlord shall be excess of the Tenant's insurance and shall not contribute with it.

    e.     Tenant and the Landlord hereby release and discharge each other from all claims, losses and liabilities arising from or caused by any hazard covered by property insurance on or in connection with the Premises or Building. This release shall apply only to the extent that such claim, loss or liability is covered by insurance.

    f.     Failure on the part of the Tenant to maintain the insurance shall constitute a material Event of Breach, and notwithstanding the Lessee's right to Cure an Event of Breach, the Landlord may, after giving five (5) business days' notice of the Event of Breach, may procure or renew such insurance and pay any and all premiums in connection, with all sums so expended to be repaid to the Landlord on demand.

14. **Damage by Fire or Other Casualty.** In the event that any building or improvement on the Premises is damaged or destroyed during the term of this Lease, the Tenant shall have sixty (60) days from the event to elect, in writing, delivered to the Landlord, to promptly and fully repair and restore the building or improvement or return the Premises to the condition that is similar to that which existed prior to commencement of the Lease.

15. **Assignment.** The Tenant shall not assign this Lease nor sublet, mortgage or encumber in any way the whole or any part of the Premises without the express written permission of the Landlord, which shall not be unreasonably withheld. This Lease shall not be assignable by operation of law. Any transfer of this Lease by Tenant by merger, consolidation or liquidation, or any change in the ownership of, or power to vote the majority of its outstanding voting stock, shall constitute an assignment for the purposes of this Article. Any assignment of this Lease shall not extinguish or diminish the liability of the Tenant. Consent by the Landlord to any sublease or assignment shall not prevent its withholding consent to any subsequent sublease or assignment.

16. **Performance of Tenant's Obligation by Landlord.** If the Tenant shall be in default hereunder, the Landlord may cure such default on behalf of Tenant, in which event the Tenant shall reimburse the Landlord for all sums paid to effect such cure, together with interest at the rate of current bank prime plus 3% per annum, or 12% per annum, whichever is the greater, together with reasonable attorney fees and costs incurred by the Landlord. In order to collect such reimbursement, the Landlord shall have all remedies available under this Lease for a default in payment of rent. Before the Landlord shall perform or cure obligations of the Tenant under this paragraph, the Landlord shall first give notice of Landlord's intent to do so, and shall provide a reasonable time but not less than Sixty (60) days to the Tenant to cure such default.

17. **Right of Entry.** The Landlord or its authorized representatives reserves the right of entry in the case of an emergency. Except as provided below in section 20, all other entry will be in accordance with the right of entry policy as established by Tenant and approved by the Landlord.

18-03197-FPC7    Doc 253-3    Filed 03/29/19    Entered 03/29/19 07:49:09    Pg 8 of 14

18. <u>Default and Reentry</u>. If Tenant fails to pay any rent installment within 30 days after written notice from Landlord, or fails to perform any other covenant under this Lease within 30 days after written notice from Landlord stating the nature of the default, Landlord may cancel this Lease and reenter and take possession of the Premises using all necessary force to do so. Provided, however, that if Tenant defaults on a covenant other than its covenant to pay rent that cannot reasonably be cured within the 30-day period, Tenant shall not be deemed to be in default, if Tenant, within such period, commences and thereafter diligently initiates correction of said default. Notwithstanding Landlord's retaking possession upon default, Tenant's liability for the rent herein shall not be extinguished for the balance of the term of this Lease. Upon reentry, Landlord may relet or attempt to relet all or any part of the premises for a term longer or shorter than the term of this Lease, and upon such terms and conditions as the Landlord may deem advisable. Rents received from such letting shall be applied in the following order:

    a. To the expenses of reletting, including necessary alteration and repair of the premises, reasonable attorney fees and real estate commissions paid;

    b. To payment of all sums due or to become due to Landlord hereunder.

    c. Tenant shall pay Landlord any deficiency in items (a) and (b) on a monthly basis as it arises. Any reletting by Landlord following Tenant's default shall not be construed as an acceptance of a surrender of the Premises. If rent received upon reletting exceeds the rent received under this Lease, Tenant shall have no claim to the excess. Tenant hereby waives claim to damages that may be caused by Landlord's reentering and taking possession of the Premises or removing and storing the property of Tenant as provided in this Lease, and will hold Landlord harmless from loss, costs or damages occasioned Tenant thereby. No such reentry shall be construed to be a forcible entry.

19. <u>Surrender Upon Termination of Lease</u>. At the termination of the Term or the extended Term, or upon default, the Tenant shall surrender the Premises and ownership of all Permanent Structures, as defined in Paragraph 7(b) placed on the premises during the term of this Lease shall revert to the Landlord, in as good condition as it was in the beginning of the term, or, if installed after the beginning of the term, when the same were made, reasonable wear and tear excepted.

20. <u>Hazardous Waste and Materials</u>.

    a. Tenant shall comply with all present and future laws and regulations governing water pollution, air pollution, soil pollution, hazardous waste, hazardous and/or toxic material use, storage, transportation and disposal and hazardous or toxic chemical use, storage, transportation and disposal

    b. Tenant shall at all times comply with all city, county, state and federal environmental laws and environmental rules and regulations. Any breach of the conditions of this section will be a material breach of this Lease. Tenant further agrees that in the event of any such breach, Tenant shall be solely responsible for all fines, costs, penalties, and expenses in connection with said breach, and shall hold Landlord harmless therefrom.

    c. Tenant shall indemnify, defend, and hold Landlord harmless from any and all injury, damage or contamination of the Premises, property of third parties or injury to any person,

18-03197-FPC7    Doc 253-3    Filed 03/29/19    Entered 03/29/19 07:49:09    Pg 9 of 14

and will indemnify and hold Landlord harmless from any and all claims, judgments, penalties, costs, fines and lawsuits, which could arise during the term of this Lease or after the Lease term as a result of the presence or use of hazardous materials by Tenant, or caused or permitted by Tenant. Without limiting the foregoing, if the presence of any hazardous material on the Premises caused or permitted at any time by the Tenant results in any contamination of the Premises, Tenant shall take all actions at its sole expenses as are necessary to return the Premises to the condition that existed prior to the introduction of such hazardous material to the Premises; provided, Landlord's approval to undertake any clean up shall first be obtained.

    d.    The covenants, warranties and agreements to hold harmless the Landlord expressed in this section shall survive the termination of this Lease.

21. **Condemnation.** If all of the Premises and the Tenant's interest therein shall be condemned for public use by any authority superior to the Landlord, such as the State of Washington or the United States of America, this Lease shall terminate without liability of either party to the other, with each party having the right to make a claim in such condemnation proceedings as their interests may appear.

    a.    If the entire Premises or such portion thereof, will preclude the Tenant from conducting its business is taken by eminent domain, this Lease shall expire on the date when the Premises shall be so taken, and the rent shall be apportioned as of that date.

    b.    If only a portion of the Premises is taken by eminent domain and the tenant continues its business, the rent payable at that time shall be decreased in proportion to the amount or portion of the Premises as shall be taken under the proceeding.

    c.    Landlord shall be entitled to all compensation resulting from the taking of the Premises. Tenant shall be entitled to make claim against the taking entity for compensation for loss incurred by Tenant for such taking.

22. **Abandonment/Tenant's Property.** Tenant shall not vacate or abandon the Premises at any time during the primary or extended terms, unless otherwise provided in this Lease. In addition to any other remedy available to Landlord, if Tenant shall abandon, vacate or surrender the Premises, or be dispossessed by process of law, or otherwise, any personal property belonging to Tenant left upon the Premises, may, at Landlord's option, be placed in storage, and Tenant shall agree to pay reasonable storage costs associated with the storage.

23. **Right of First Refusal.** Tenant shall have an ongoing Right of First Refusal to lease all or any part of Lot 8. Tenant shall have fourteen (14) days to exercise this right, on the same terms as the Port's Offer (as defined below), after notification by the Port. Such Right of First Refusal shall be exercisable by Tenant only if no event of default by Tenant under this Lease then exists and is continuing beyond the expiration of any notice and cure periods applicable thereto under the Lease, as of the date of submission of the Offer by the Port to Tenant.

If the Port receives a bona fide offer (the "Offer") from a prospective tenant to lease all or any part of Lot 8, the Port shall give Tenant written notice of such fact, setting forth in such notice all of the material terms and conditions of such Offer. After the Port notifies Tenant in writing of such an

Port of Douglas County                                                                          Land Lease Agreement
Page 9 of 11

18-03197-FPC7    Doc 253-3    Filed 03/29/19    Entered 03/29/19 07:49:09    Pg 10 of 14

and will indemnify and hold Landlord harmless from any and all claims, judgments, penalties, costs, fines and lawsuits, which could arise during the term of this Lease or after the Lease term as a result of the presence or use of hazardous materials by Tenant, or caused or permitted by Tenant. Without limiting the foregoing, if the presence of any hazardous material on the Premises caused or permitted at any time by the Tenant results in any contamination of the Premises, Tenant shall take all actions at its sole expenses as are necessary to return the Premises to the condition that existed prior to the introduction of such hazardous material to the Premises; provided, Landlord's approval to undertake any clean up shall first be obtained.

    d.    The covenants, warranties and agreements to hold harmless the Landlord expressed in this section shall survive the termination of this Lease.

21. **Condemnation.** If all of the Premises and the Tenant's interest therein shall be condemned for public use by any authority superior to the Landlord, such as the State of Washington or the United States of America, this Lease shall terminate without liability of either party to the other, with each party having the right to make a claim in such condemnation proceedings as their interests may appear.

    a.    If the entire Premises or such portion thereof, will preclude the Tenant from conducting its business is taken by eminent domain, this Lease shall expire on the date when the Premises shall be so taken, and the rent shall be apportioned as of that date.

    b.    If only a portion of the Premises is taken by eminent domain and the tenant continues its business, the rent payable at that time shall be decreased in proportion to the amount or portion of the Premises as shall be taken under the proceeding.

    c.    Landlord shall be entitled to all compensation resulting from the taking of the Premises. Tenant shall be entitled to make claim against the taking entity for compensation for loss incurred by Tenant for such taking.

22. **Abandonment/Tenant's Property.** Tenant shall not vacate or abandon the Premises at any time during the primary or extended terms, unless otherwise provided in this Lease. In addition to any other remedy available to Landlord, if Tenant shall abandon, vacate or surrender the Premises, or be dispossessed by process of law, or otherwise, any personal property belonging to Tenant left upon the Premises, may, at Landlord's option, be placed in storage, and Tenant shall agree to pay reasonable storage costs associated with the storage.

23. **Right of First Refusal.** Tenant shall have an ongoing Right of First Refusal to lease all or any part of Lot 8. Tenant shall have fourteen (14) days to exercise this right, on the same terms as the Port's Offer (as defined below), after notification by the Port. Such Right of First Refusal shall be exercisable by Tenant only if no event of default by Tenant under this Lease then exists and is continuing beyond the expiration of any notice and cure periods applicable thereto under the Lease, as of the date of submission of the Offer by the Port to Tenant.

If the Port receives a bona fide offer (the "Offer") from a prospective tenant to lease all or any part of Lot 8, the Port shall give Tenant written notice of such fact, setting forth in such notice all of the material terms and conditions of such Offer. After the Port notifies Tenant in writing of such an

Offer, Tenant shall have fourteen (14) days to exercise the Right of First Refusal by written notice to the Port. If Tenant exercises the Right of First Refusal, Tenant shall be required to lease the entire portion of Lot/Lots that are the subject of the Offer. If Tenant fails to notify the Port of its election within the aforesaid fourteen (14) day period, Tenant shall be deemed to have waived the Right of First Refusal with respect to the subject Offer. If the Port and the party who made the Offer are not able to reach an agreement on the final terms of their Lease, or the material terms and conditions of the Offer are amended from those sent to the Tenant, Tenant's Right of First Refusal shall be reinstated and the Port agrees to give Tenant another fourteen days' written notice of its right to exercise the Right of First Refusal on the new or amended terms.

24. Miscellaneous.

    a. **Notices.** Any notices by either party to the other shall be in writing and shall be deemed to be duly given only if delivered personally, or mailed by certified mail in a postage paid envelope addressed to the other party as identified below and/or at the last known address of the party to whom the notice is given.

        If to Tenant: _____

        With Copies to: _____

        If to Landlord: Lisa Parks, Executive Director
        Port of Douglas County
        455 6th St. N.E. Suite 100
        East Wenatchee, WA 98802

        With Copies to: Quentin Batjer
        Davis, Arnell Law Firm, LLP
        617 Washington Street
        Wenatchee Washington 98801

    b. **Attorney Fees.** This Lease shall be construed in accordance with the laws of the State of Washington. In the event of any action arising hereunder, the prevailing party shall be granted its attorney fees and court costs. Venue for such action shall lie in Douglas County, Washington.

    c. **Successors and Assigns.** All rights, remedies, liabilities herein given to or imposed upon either of the parties hereto, shall inure to the benefit of and be binding upon their respective heirs, executors, administrators, successors in interest, transferrees, and assigns.

    d. **Liens and Insolvency.** Tenant shall keep the Premises and the improvements free from any liens, excluding long term financing, arising out of any work performed, materials ordered or obligations incurred by Tenant. If Tenant becomes insolvent, voluntarily or involuntarily bankrupt, or if a receiver, assignee, or other liquidating officer is appointed for the business of Tenant, then Landlord may, at its option, cancel this Lease without notice to the Tenant.

18-03197-FPC7    Doc 253-3    Filed 03/29/19    Entered 03/29/19 07:49:09    Pg 11 of 14

e. **Waiver.** The waiver by any party of a breach of any provision of this Lease shall not be deemed a continuing waiver or a waiver of any subsequent breach of this Lease.

f. **Non Discrimination.** The Tenant agrees not to discriminate in its business dealings or hiring practices on the grounds of race, color, national origin or sex.

g. **Severability.** If any provision of this Lease shall be declared invalid or unenforceable, the remainder of the lease shall continue in full force and effect.

h. **Entire Agreement.** This Lease contains the entire agreement between the parties and cannot be modified or amended unless the same is in writing and signed by both parties and attached hereto.

i. **Counterparts.** This Agreement may be executed in any number of separate counterparts, all of which taken together shall be deemed one original instrument notwithstanding that all parties are not signatory to the same counterpart.

j. **Effective Date.** This Lease is effective on the date signed by the Parties.

PORT OF DOUGLAS COUNTY
By: _Lisa Parks_
Lisa Parks, Executive Director
Date: 3/9/17

TENANT
By: _Dave Carlson, CEO_
(Authorized representative)
Date: 3/9/17

18-03197-FPC7    Doc 253-3    Filed 03/29/19    Entered 03/29/19 07:49:09    Pg 12 of 14

# ADDENDUM TO LEASE AGREEMENT
# PANGBORN AIRPORT BUSINESS PARK
# EAST WENATCHEE, WASHINGTON

THIS LEASE ADDENDUM (the "Addendum") is made and dated this 9th day of August, 2017, by and between the PORT OF DOUGLAS COUNTY, a municipal corporation of the State of Washington (the "Landlord") and GIGA WATT, INC., a Washington corporation (the "Tenant") (each, a "Party" and collectively, the "Parties").

  A. The Parties entered into a Lease (the "Lease") on March 1, 2017, a copy of which is attached and incorporated by this reference, for commercial property at the Pangborn Airport Business Park, as more particularly described in the Lease; and

  B. The Parties obtained a grant/loan package from the Community Economic Revitalization Board ("CERB") to fund the construction of certain improvements to the leased premises; and

  C. The Parties now seek to increase the lease rate due to the costs of the land improvements by the Landlord

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, LANDLORD and TENANT agree to further amend the Lease as follows

1. Base Rent. The annual rate as set forth in Paragraph 4 of the Lease shall be revised to twenty-nine cents ($0.295) per square foot. The revised Rent Schedule for Years 1-15 shall be as follows:

| | Month | Annual Lease | Monthly Lease Payment | Monthly Leasehold Tax | Total Due Monthly | Annual Total Due |
|---|---|---|---|---|---|---|
| Year 1 | 1 | 101,871.17 | Deferred | 1,090.02 | 1,090.20 | |
| | 2 | | Deferred | 1,090.02 | 1,090.20 | |
| | 3 | | Deferred | 1,090.02 | 1090.20 | |
| | 4 | | Deferred | 1,090.02 | 1090.20 | |
| | 5 | | Deferred | 1,090.02 | 1090.20 | |
| | 6 | | Deferred | 1,090.02 | 1090.20 | |
| | 7 | | 16,978.53 | 2,180.04 | 19,158.57 | |
| | 8 | | 16,978.53 | 2,180.04 | 19,158.57 | |
| | 9 | | 16,978.53 | 2,180.04 | 19,158.57 | |
| | 10 | | 16,978.53 | 2,180.04 | 19,158.57 | |
| | 11 | | 16,978.53 | 2,180.04 | 19,158.57 | |

# Exhibit B

|  | 12 |  | 16,978.53 | 2,180.04 | 19,158.57 |  |
|---|---|---|---|---|---|---|
|  | Year 2 | 103,399.24 | 8,616.60 | 1,106.37 | 9,722.97 | 116,675.70 |
|  | Year 3 | 104,950.23 | 8,745.85 | 1,122.97 | 9,868.82 | 118,425.84 |
|  | Year 4 | 106,524.48 | 8,877.04 | 1,139.81 | 10,016.85 | 120,202.22 |
|  | Year 5 | 108,122.35 | 9,010.20 | 1,156.91 | 10,167.10 | 122,005.26 |
|  | Year 6 | 109,744.18 | 9,145.35 | 1,174.26 | 10,319.61 | 123,835.33 |
|  | Year 7 | 111,390.34 | 9,282.53 | 1,191.88 | 10,474.41 | 125,692.86 |
|  | Year 8 | 113,061.20 | 9,421.77 | 1,209.75 | 10,631.52 | 127,578.26 |
|  | Year 9 | 114,757.12 | 9,563.09 | 1,227.90 | 10,790.99 | 129,491.93 |
|  | Year 10 | 116,478.47 | 9,706.54 | 1,246.32 | 10,952.86 | 131,434.31 |
|  | Year 11 | 118,225.65 | 9,852.14 | 1,265.01 | 11,117.15 | 133,405.83 |
|  | Year 12 | 119,999.04 | 9,999.92 | 1,283.99 | 11,283.91 | 135,406.91 |
|  | Year 13 | 121,799.02 | 10,149.92 | 1,303.25 | 11,453.17 | 137,438.02 |
|  | Year 14 | 123,626.01 | 10,302.17 | 1,322.80 | 11,624.97 | 139,499.59 |
|  | Year 15 | 125,480.40 | 10,456.70 | 1,342.64 | 11,799.34 | 141,592.08 |

2. **Lease Surety.** The Lease Surety as set forth in Paragraph 6 of the Lease shall be revised to reflect the increase in the base rent. The revised Lease Surety shall be increased by $50,000 to $350,000, which is equal to approximately three (3) years payment of rents plus Leasehold Tax. Payment shall be in accordance with RCW 53.08.085 and in a form satisfactory to the Landlord.

3. **Effect of Prior Agreements.** Except as provided in this Addendum, all other terms of the Lease shall be continued as agreed. In the event of any inconsistency between the provisions of the Lease and this Addendum, the provisions of this Addendum shall govern.

4. **Effective Date.** This Addendum is effective on the date signed by the Parties.

PORT OF DOUGLAS COUNTY

By: _Lisa Parks_ (signature)
Lisa Parks, Executive Director

Date: 8/15/17

TENANT

By: _Dave Carl_ (signature)
(Authorized representative)

Date: 8/15/17