Pamela M. Egan, WSBA No. 54736 (admitted *pro hac vice*)
Paul H. Beattie, WSBA No. 30277
CKR Law LLP
506 2nd Avenue, 14th Floor
Seattle, WA 98114
Telephone: (415) 297-0132
Facsimile: (206) 582-5001
Email: pbeattie@ckrlaw.com

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| In re: <br><br> GIGA WATT, Inc., a Washington corporation, <br><br> Debtor. | Case No. 18-03197 FPC 11 <br><br> Chapter 11 <br><br> **DECLARATION OF MARK D. WALDRON IN SUPPORT OF CHAPTER 11 TRUSTEE'S MOTIONS FOR ORDERS (I) APPROVING STIPULATION PURSUANT TO LBR 9013-1(c)(3) AND (II) GRANTING EXPEDITED CONSIDERATION THEREOF** |

I, Mark D. Waldron, declare as follows:

1. I submit this declaration in my capacity as the duly-appointed Chapter Trustee in the above-captioned bankruptcy case and in support of the Chapter 11 Trustee's Motions for Orders (i) Approving Stipulation Pursuant to

Declaration of Mark D. Waldron - Page 1

LBR 9013-1(c)(3) and (ii) Granting Expedited Consideration Thereof (the "Motion").[1] The statements set forth herein are based on my investigation of the Debtor's affairs and, except where otherwise noted, is based on personal knowledge. If called as a witness, I would and could competently testify hereto.

2. A true and correct copy of the Stipulation is attached to the Motion as <u>Exhibit A</u>.

3. The Port of Douglas County (the "Port") administers the land underlying the Pangborn Site and is the Debtor's landlord at the Pangborn Site.

4. The Pangborn Site is only partially developed. However, it is potentially valuable to the estate because of a power agreement between the Debtor and the Douglas County Public Utility District No. 1 pursuant to which the Douglas County Public Utility District No. 1 agreed to provide up to 30 megawatts of power to the Pangborn Site at energy prices that are considered among the most competitive in the world. Based on my investigation, I have concluded that the Pangborn Site is a potentially valuable asset of the estate. In my judgment, it is in the estate's best interests to try to capture that value for the benefit of the estate. The Stipulation is an essential part of achieving that goal.

5. The Stipulation allows the estate to become current on what may be its most important lease. Payment of these expenses will make it easier to assume and assign the Pangborn Lease by reducing any cure amounts. Thus, it enhances the potential recovery to creditors in this case.

---

[1] Capitalized terms used in this Declaration have the meanings ascribed to them in the Motion.

Declaration of Mark D. Waldron - Page 2

6. Based on my investigation I have determined that pre-petition, the Debtor and the Port entered into that certain *Lease for Portion of Pangborn Airport Business Park East Wenatchee, Washington*, dated March 9, 2017 (the "Lease"). Pursuant to section 6 of the Lease, the Debtor delivered $300,000 as the initial amount of the Surety Deposit to the Port as security.

7. Subsequently, the Port obtained a grant/loan package from the Community Economic Revitalization Board ("CERB") to the Debtor to fund the construction of improvements to the leased premises (the "Pangborn Site"). The loan portion of the CERB grant/loan package was in the principal amount of $291,552 and is payable over 20 years with two (2%) interest. The Port and the Debtor then entered into the *Addendum to Lease Agreement*, dated August 15, 2017 (the "Addendum" and, together with the Lease, the "Pangborn Lease") pursuant to which the rent under the Pangborn Lease was increased to $9,722.97 per month to defray the payments due to the CERB. After the rent was increased, the Surety Deposit was increased by $50,000 for a total of $350,000. The term of the Pangborn Lease is 30 years. A copy of the Pangborn Lease is attached to the Motion as Exhibit C.

8. I have further determined based on my investigation that before the Petition Date, the Debtor dug a large hole on land that the Port administers and that is adjacent to the Pangborn Site. The Port has asserted, in my judgment not unreasonably, that it cannot lease that adjacent land until the hole is filled. The estimated cost of filling the hole is $147,224, as set forth in the Claim Itemization attached to the Motion as Exhibit D.

9. I have further determined that on November 1, 2018, the Port filed a Verified Complaint for Unlawful Detainer against the Debtor in the Superior Court of Washington for Douglas County (the "Unlawful Detainer Action"), alleging that the Debtor was in breach of the Pangborn Lease.

10. On the eve of the hearing in the Unlawful Detainer Action, November 19, 2018 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief pursuant to sections 101 *et seq.* of the United States Code.

11. On February 15, 2019, the Port submitted a proof of claim, assigned claim number 65-1, asserting the right to payment in the amount of $662,994.09 on a general unsecured basis for pre-petition rent and two liens that were recorded against the Pangborn Site by two contractors who had performed work on the Pangborn Site. The Stipulation does not resolve the asserted liens or the proof of claim. However, payment to the Port pursuant to the Stipulation will reduce any claim that the Port can recover against the estate.

12. Since the Petition Date, administrative rent and other costs associated with the Pangborn Lease have accrued against the estate, as set forth in the Claim Itemization attached to the Motion as Exhibit D. Significant among these costs is: (1) amounts accrued through February 1, 2019, which total $108,449.01, and the (2) the cost of filling the hole in the estimated amount of $147,224 for a total of

[This Declaration continues on the next page]

$255,673.01, leaving a balance of $94,327 in the Surety Deposit, which can be used to keep other administrative expenses under the Pangborn Lease current.

13. The Stipulation will reduce the Estate's administrative liabilities, provide more time to assume or reject the Pangborn Lease, and allow the land adjacent to the Leased Premises to be repaired (i.e., the hole filled) and cleaned up (i.e., personal property removed) so that the Port may lease that adjacent land.

14. In my judgment, reducing administrative liabilities is critical to stabilizing the Debtor's operations and capturing its going concern value.

15. I am not aware of any party other than the Port that asserts an interest in the Surety Deposit.

16. The Port has required as an essential term of the Stipulation that the Court approve the Stipulation on or before April 18, 2019. Given the potential value of the Pangborn Site to the estate, as set forth above, and the Port's deadline for Court approval, expedited consideration as set forth herein is necessary.

To the best of my knowledge, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of March 2019 in Tacoma, Washington.

*/s/ Mark D. Waldron*
Mark D. Waldron

Declaration of Mark D. Waldron - Page 5