Pamela M. Egan, WSBA No. 54736 (*pro hac vice*)
Paul H. Beattie, WSBA No. 30277
CKR Law LLP
506 2nd Avenue, 14th Floor
Seattle, WA 98114
Telephone: (415) 297-0132
Facsimile: (206) 582-5001
Email: pbeattie@ckrlaw.com

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GIGA WATT, Inc., a Washington corporation,<br><br>Debtor. | Case No. 18-03197 FPC 11<br><br>Chapter 11<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CHAPTER 11 TRUSTEE'S MOTION FOR ORDER APPROVING MOSES LAKE TWO-WAY AGREEMENT** |

Mark D. Waldron, in his official capacity as the Chapter 11 Trustee (the "Trustee") hereby respectfully submits this Memorandum of Points and Authorities in support of the *Chapter 11 Trustee's Motion for Order Approving Moses Lake Two-Way Agreement* (the "Motion").

## I. INTRODUCTION

By the Motion, the Trustee requests approval of that certain *Agreement to Settle Relief from Stay Motion, Obtain Unsecured Super-Priority Credit and Re-Enter the Premises* (the "Moses Lake Two-Way Agreement") between the

Memorandum ISO Motion to
Approve Two-Way Agreement - Page 1

Debtor's estate (the "Estate"), on the one hand, and Giga Plex LLC and MLDC 1 LLC (collectively, the "Moses Lake Landlords"), on the other hand, subject to this Court's approval. A copy of the Moses Lake Two Way Agreement is attached the Motion as Exhibit B.

When the Trustee began his appointment, the Debtor's operations were at a standstill. No revenues were being earned. Solid financial information regarding the Debtor was and has continued to be unavailable. The Moses Lake Two-Way Agreement will allow the Trustee to resurrect a significant portion of the Debtor's operations that are located in Moses Lake, Washington. The Moses Lake Two-Way Agreement will also enable this Estate to generate revenue, put local workers to work, and pay down administrative liabilities.

The Moses Lake Two-Way Agreement is a proper exercise of the Trustee's business judgment and meets all the requirements of sections 363 and 364 of the Bankruptcy Code, as set forth below.

## II. THE MOSES LAKE FACILITY

Pursuant to four leases, the Debtor leased the following premises from the Moses Lake Landlords: Parcel C, the "Expansion Pods" on Parcel D, the "Date Center" on Parcel D, and Parcel E. The leases between the Debtor and the Moses Lake Landlords (the "Moses Lake Leases") are listed on **Exhibit C** to the Motion. On the leased premises, the Debtor built buildings, known as pods, that are wired and equipped to house computers that "mine" for cryptocurrency.

### Moses Lake Facility



Parcel C and the Data Center in Parcel D have been re-opened pursuant to the Moses Lake Two-Way Agreement. Parcel E has been re-opened pursuant to a separate agreement that will be the subject of a separate motion.

The material terms of the Moses Lake Two-Way Agreement are summarized in the Motion and incorporated herein by reference as if set forth fully herein.

### III. RELEVANT POST-PETITION EVENTS

On November 19, 2018 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief pursuant to sections 101 et seq. of the United States Code (the "Bankruptcy Code").

On December 17, 2018, the Court entered its Stipulated Order Authorizing Use of Cash Collateral (the "Cash Collateral Order") [Docket No. 53], pursuant to which the Moses Lake Landlords were permitted to apply certain security deposits to electricity and rent obligations pursuant to the Moses Lake Leases that had accrued pre-petition ($57,960) and to pay post-petition rent obligations. The Cash Collateral Order also provided the Moses Lake Landlords with an adequate protection lien in certain of the Debtor's assets based on certain security interests that the Debtor granted to the Moses Lake Landlords within five weeks of the Petition Date. Pursuant to ¶ 10 of the Cash Collateral Order, the adequate protection lien was only valid to the extent the security interests were valid. The

Memorandum ISO Motion to
Approve Two-Way Agreement - Page 3

Trustee believes that the security interests were avoidable preferences and therefore the adequate protection lien is void. The Moses Lake Two-Way Agreement does not resolve this issue and the Agreement does not include any releases of claims.

On January 3, 2019, the Moses Lake Landlords filed their *Motion for Relief From Stay; Abandonment; and Rejection of Unexpired Commercial Leases* [Docket No. 76] ("Motion for Stay Relief") to obtain possession of the Moses Lake facility from the Debtor.

By mid-January, all power to all of the Debtor's facilities was cut off and operations came to a complete standstill.

On January 23, 2019, the Court approved the appointment of Mark D. Waldron as the Trustee pursuant to its *Order Approving Appointment of Chapter 11 Trustee* [Docket. No. 146]. The Trustee has retained, and the Court has approved the employment of Lauren Miehe, Douglas Pratt, and Allen Oh to provide consulting services and operational assistance with respect to the Debtor's business and in particular with re-opening the Debtor's facilities. The Trustee has also retained two technicians in the ordinary course to assist with operations at Moses Lake.

On March 11, 2019, the Moses Lake Landlords paid $169,500.19 (the "Catch-Up Power Payment") to the Grant County Public Utility District in order to turn the power back on at a portion of the Debtor's facilities in Moses Lake. Without the Catch-Up Power Payment, the Trustee would not have been able to resume the Debtor's business operations. However, before the Moses Lake

Landlords made the Catch-Up Power Payment, the Trustee disclosed to the Moses Lake Landlords that any agreement, including to repay the Catch-Up Power Payment, was subject to Court approval.

After the Moses Lake Landlords paid the Catch-Up Power Payment, the Grant County PUD almost instantly turned on the electricity. The Debtor's operations at a portion of the Moses Lake facility are now being managed, under the Trustee's supervision, by Lauren Miehe, Doug Pratt and Allen Oh, whose employment has been approved by this Court.

On March 19, 2019, the Trustee filed the *Notice of Stipulation to Extend Deadline to Assume or Reject the Leases with Giga Plex, LLC and MLDC 1, LLC and the Sublease with EcoDiversified Holdings, Inc*. [Docket No. 241]. Pursuant to the noticed stipulation, the Trustee's deadline to assume or reject the Moses Lake Leases was extended to May 19, 2019, with an agreement to negotiate further extensions in good faith.

### IV. POINTS AND AUTHORITIES

**A. The Loan Agreement Is an Exercise of Sound Business Judgment.**

After notice and hearing, the Trustee may "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A transaction outside of the ordinary course "must be based on [the trustee's] reasonable business judgment*." In re Ernst Home Ctr., Inc.,* 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997), citing *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir.1986). The trustee must also establish "some articulated business justification" for the transaction. *Id.,* quoting *In re Lionel Corp.*, 722 F.2d

Memorandum ISO Motion to
Approve Two-Way Agreement - Page 5

1063, 1070 (2d Cir.1983); *In re Walter,* 83 B.R. 14 (B.A.P. 9th Cir. 1988). *See also In re Lahijani,* 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005) ("Ordinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection."). The Moses Lake Two-Way Agreement resumes the Debtor's business operations and therefore creates an ordinary course.

Sound business reasons support the Trustee's decision to enter into the Moses Lake Two-Way Agreement. It allows the Trustee to resume the Debtor's operations at a portion of the Moses Lake facility, pay down administrative liabilities, and possibly re-open the rest of the Moses Lake facility. Additionally, running operations at the Moses Lake facility will allow the Trustee to prepare accurate financial statements based on current information which in turn will allow the Trustee to assess the Debtor's going concern value and try to capture that going concern value for the benefit of creditors.

**B.  The Loan in the Amount of the Catch-Up Power Payment Should be Approved.**

Section 364(c) provides that if a trustee is unable to obtain unsecured credit as an administrative expense, it may apply to the court to authorize obtaining credit outside of the ordinary course of business, with priority over all administrative expenses. 11 U.S.C. 364(c)(1). *See In re Debbie Reynolds Hotel & Casino, Inc.*, 238 B.R. 831, 841 (B.A.P. 9th Cir. 1999), *rev'd and remanded on other grounds,* 255 F.3d 1061 (9th Cir. 2001) (trustee or debtor can obtain credit which gets a super-priority over any and all administrative expenses specified in

Memorandum ISO Motion to
Approve Two-Way Agreement - Page 6

Sections 503(b) or 507(b)); *State Bank of Waubay v. Bisgard*, 80 B.R. 491, 495 (D. S.D. 1987) (§ 364(c) establishes an expense that has priority over all prior expenses and claims). Given that operations were defunct and that no financial information regarding the Debtor was available, the Trustee was unable to obtain credit on an administrative basis pursuant to section 364(b) of the Bankruptcy Code.

Courts are generally receptive to the needs of trustees to obtain credit outside of the ordinary course of business while providing the post-petition lenders with incentives under section 364(c). *See, e.g., In re Estrada*, 2016 WL 745536, *3 (Bankr. S.D. Tex. 2016) ("In determining whether to approve a motion to obtain credit, courts generally permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties."). Resuming the Debtor's operations at Moses Lake can have a cascading beneficial effect on this entire case. It puts people to work. It generates revenues that will reduce administrative liability. It also generates credible information regarding the Debtor's revenues that will allow the Trustee to assess the going concern value of the Debtor and possibly capture that going concern value for the benefit of creditors.

The terms of the Moses Lake Two-Way Agreement are favorable. The Moses Lake Landlords are not requiring a set amount of money every month, other than the cost of electricity. Instead, payments after electricity are based on a percentage of the Estate's revenues. Thus, even if cryptocurrency depreciates or expenses increase, the Estate will receive some income from Moses Lake every

Memorandum ISO Motion to
Approve Two-Way Agreement - Page 7

month going forward. Additionally, interest will not accrue on any of the Estate's payments obligations other than on the Catch-Up Power Payment. The interest rate on the Catch-up Power Payment is the same as the rate that the Moses Lake Landlords are paying on the loan that they took out to make the Catch-Up Power Payment in the first place.

Accordingly, the Court should grant to the Moses Lake Landlords a super-priority claim for repayment of the Catch-Up Power Payment at 19.9% interest pursuant to section 364(c)(1) of the Bankruptcy Code.

## V. CONCLUSION

WHEREFORE, the Trustee respectfully requests entry of an Order:

1. Granting the Motion;

2. Approving the Moses Lake Two-Way Agreement;

3. Authorizing the Trustee to perform pursuant to the terms of the Moses Lake Two-Way Agreement;

4. Granting to the Moses Lake Landlords a super-priority administrative claim for repayment of the Catch-Up Power Payment and accrued interest, pursuant to section 364(c)(1) of title 11 of the United States Code; and

5. Granting such other and further relief as the Court deems necessary and just.

Dated: April 5, 2019            CKR LAW LLP

By:    */s/ Paul H. Beattie*
Paul H. Beattie (WSBA No. 30277)

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*