Pamela M. Egan, WSBA No. 54736 (*pro hac vice*)
CKR Law LLP
506 2nd Avenue, 14th Floor
Seattle, WA 98114
Telephone: (415) 297-0132
Facsimile: (206) 582-5001
Email: pegan@ckrlaw.com

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GIGA WATT, Inc., a Washington corporation,<br><br>           Debtor. | Case No. 18-03197 FPC 11<br><br>Chapter 11<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CHAPTER 11 TRUSTEE'S MOTION FOR ORDER APPROVING MOSES LAKE THREE-WAY AGREEMENT** |

Mark D. Waldron, in his official capacity as the Chapter 11 Trustee (the "Trustee") hereby respectfully submits this Memorandum of Points and Authorities in support of the *Chapter 11 Trustee's Motion for Order Approving Moses Lake Three-Way Agreement* (the "Motion") pursuant to which the Trustee requests approval of that certain *Agreement to Withdraw Motion for Relief From Stay, for Re-Entry of Subtenant Eco Diversified Holdings, Inc. and for Release of Claim* (the "Moses Lake Three-Way Agreement") between (1) the Debtor's estate (the "Estate"), (2) Giga Plex LLC and MLDC 1 LLC (collectively, the "Moses Lake Landlords"), and (3) Eco Diversified Holdings, Inc. ("EDH" or

Memorandum ISO Motion to
Approve Three-Way Agreement - Page 1

"Subtenant"), subject to this Court's approval. A copy of the Moses Lake Three-Way Agreement is attached to the Motion as Exhibit B.

In support of the Motion, the Trustee respectfully avers:

## I.

## INTRODUCTION

The Moses Lake Three-Way Agreement resolves a dispute with both the Moses Lake Landlords and EDH that would distract from and even undermine the Trustee's efforts and goal of resurrecting and selling the Debtor's business as a going concern for the benefit of creditors.

The Moses Lake Three-Way Agreement also builds on the progress that the Trustee has made at Moses Lake. It will allow the Trustee to re-open additional operations of the Debtor without having to incur any upfront costs or liability.

As set forth below, the Moses Lake Three-Way Agreement meets the *A&C Properties* for approval of a settlement and is otherwise a proper exercise of the Trustee's business judgment.

## II.

## PREPETITION EVENTS

### A. The Moses Lake Facility

Pursuant to four leases, the Debtor leased the following premises from the Moses Lake Landlords: Parcel C, the "Expansion Pod" on Parcel D, the "Date Center" on Parcel D, and Parcel E. The leases between the Debtor and the Moses Lake Landlords (the "Moses Lake Leases") are listed on Exhibit C to the Motion.

## Moses Lake Facility

```
         Parcel C                    Parcel D                    Parcel E
    ┌────┬┴───┐                ┌────┴────┐              ┌────┬───┴──┐
  Pod 3  Pod 4  Pod 5     Expansion  Data           Pod 6  Pod 7  Pod 8
                             Pod    Center
```

On the leased premises, the Debtor built buildings, known as pods, that are wired and equipped to house computers that "mine" for cryptocurrency. EDH allegedly purchased the building and subleased the land consisting of Pod 8 of Parcel E from the Debtor. The Debtor operated Pod 6 and Pod 7 of Parcel E. All of Parcel E has been re-opened pursuant to the Moses Lake Three-Way Agreement.

Parcel C and the Data Center have been re-opened pursuant to a separate agreement that is the subject of the *Chapter 11 Trustee's Motion to Approve the Two-Way Agreement*, filed on April 5, 2019 [Docket No. 260].

### B. The Prepetition Agreements with EDH

Without the consent of the Moses Lake Landlords, the Debtor purportedly[1] entered into two agreements with EDH: the Mining Farm Development Agreement, dated June 27, 2017 (the "MFDA"), and the Sublease Agreement, dated July 10, 2017 (the "Sublease").[2] (The MFDA and the Sublease are at times

---

[1] EDH has not produced a copy of the FDMA that is signed by a representative of the Debtor's.

[2] Another entity, Giga Watt Hosting, Inc., apparently entered into a third agreement with EDH with respect to Pod 8 at Parcel E. The WA Secretary of State website does not list a business entity known as Giga Watt Hosting, Inc.

Memorandum ISO Motion to
Approve Three-Way Agreement - Page 3

18-03197-FPC11    Doc 278    Filed 04/17/19    Entered 04/17/19 10:55:50    Pg 3 of 16

referred to herein collectively as the "Pre-Petition Agreements"). Copies of the MFDA and of the Sublease are attached to the Motion as Exhibits D and E, respectively.

Pursuant to the Pre-Petition Agreements, EDH (i) reportedly paid approximately $1.5 million to the Debtor to build Pod 8 on Parcel E of Moses Lake and (ii) claimed ownership of Pod 8. The Sublease provided that if EDH defaulted on the Sublease, then the Debtor could terminate the Sublease and Pod 8 would belong to the Debtor.[3]

## III.

## RELEVANT POST-PETITION EVENTS

On November 19, 2018 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief pursuant to sections 101 et seq. of the United States Code (the "Bankruptcy Code").

On January 3, 2019, the Moses Lake Landlords filed their *Motion for Relief From Stay; Abandonment; and Rejection of Unexpired Commercial Leases* [Docket No. 76] ("Motion for Stay Relief") to obtain possession of the Moses Lake facility from the Debtor.

By mid-January, all power to all of the Debtor's facilities was cut off and operations came to a complete standstill.

---

[3] See Sublease, Exhibit D to Motion, ¶¶ 5.b and 10.

On January 23, 2019, the Court approved the appointment of Mark D. Waldron as the Trustee pursuant to its *Order Approving Appointment of Chapter 11 Trustee* [Docket. No. 146]. The Trustee has retained, and the Court has approved the employment of Lauren Miehe, Douglas Pratt, and Allen Oh to provide consulting services and operational assistance with respect to the Debtor's business and in particular with re-opening the Debtor's facilities. The Trustee has also retained two technicians in the ordinary course to assist with operations at Moses Lake.

On February 13, 2019, EDH filed its *Opposition to Giga Plex, LLC and MLDC 1, LLC's Motion for Relief From Stay, Abandonment, and Rejection of Executory Contract* [Docket No. 173] (the "EDH Opposition") in which it alleged that pursuant to the Pre-Petition Agreements, it was entitled to immediate re-entry of Pod 8, Parcel E. EDH coupled this allegation with a Proof of Claim (Claim No. 67-1), filed on February 15, 2019 (the "EDH Claim"), in which it asserted the right to payment on a general unsecured basis of $25,180,375.00 as damages allegedly resulting from the shutdown of operations at Moses Lake after the Grant County PUD turned off the electricity in mid-January of this year, and the allegedly lost value of Pod 8 and third party equipment allegedly located therein.

From on or about the Petition Date until mid-January 2019, when the Grant County PUD shut off the electricity to the Debtor's operations at Moses Lake, , EDH asserts that Giga Watt did not invoice . It presents this as the reason for not paying EDH any rent or electricity from December 1, 2018, although it had operated and consumed electricity during that period. After filing the EDH Claim,

Memorandum ISO Motion to
Approve Three-Way Agreement - Page 5

EDH tendered to the Trustee a series of checks totaling $42,576.00 (the "Tendered Checks") in payment of past due and current post-petition rent under the Sublease.

On or about March 19, 2019, EDH paid $127,620.20 (the "EDH Catch-Up Power Payment") plus $10,000 (the "EDH Bond Payment") to the Moses Lake Landlords. The Moses Lake Landlords transferred the EDH Catch-Up Power Payment and the EDH Bond Payment to the Grant County Public Utility District, which in turn almost instantly turned on the electricity at Parcel E. Before EDH made the EDH Catch-Up Power Payment and the EDH Bond Payment, the Trustee disclosed to the Moses Lake Landlords and to EDH that any agreement with the Estate relating to Parcel E would be subject to Court approval.

To date, the Trustee has succeeded in re-opening all of Parcel C, the Data Center, and Pods 6 and 7 of Parcel E. These operations are being managed, under the Trustee's supervision, by Lauren Miehe, Doug Pratt and Allen Oh, whose employment has been approved by this Court.

On March 19, 2019, the Trustee filed the *Notice of Stipulation to Extend Deadline to Assume or Reject the Leases with Giga Plex, LLC and MLDC 1, LLC and the Sublease with EcoDiversified Holdings, Inc*. [Docket No. 241]. Pursuant to the noticed stipulation, the Trustee's deadline to assume or reject the Sublease was extended to May 19, 2019, with an agreement to negotiate further extensions in good faith.

On April 5, 2019, the Trustee filed the *Chapter 11 Trustee's Motion for Approval of the Moses Lake Two-Way Agreement* [Docket No. 260], pursuant to which the Trustee has requested approval of the Moses Lake Two-Way

Agreement. Pursuant to the Moses Lake Two-Way Agreement, the Trustee has resumed the Debtor's operations at Parcel C and the Data Center at Moses Lake. The Moses Lake Three-Way Agreement adds Parcel E to the list of resumed operations.

## IV.

## THE DISPUTE AND THE SETTLEMENT

### A. The Dispute

The shutdown of electricity by the Grant County PUD in mid-January 2019, brought the Debtor and EDH's operations at Moses Lake to a standstill. EDH demanded immediate re-entry and asserted that the shutdown constituted a breach by the Debtor of the Sublease that had damaged the EDH in the amount of approximately $25 million.

The Moses Lake Landlords asserted that they had not approved the Sublease and that the Sublease constituted a breach of the Moses Lake Leases. The Moses Lake Landlords further argued that the Sublease constituted additional cause to lift the automatic stay and evict both the Debtor and EDH.

Meanwhile, the Trustee claimed that EDH had defaulted under the Pre-Petition Agreements by failing to pay rent or electricity after the Petition Date through the date in mid-January when the Grant County PUD shut off the electricity. The Trustee argued that pursuant to the terms of the Sublease, this default was not curable. EDH's default entitled the Trustee to terminate the Sublease and take title to Pod 8 of Parcel E on behalf of the Estate.

EDH responded that if it had paid rent and electricity, it is unlikely that those funds would have reached either the Estate or Grant County PUD, given that former management had failed to account for post-revenues that the Debtor had generated between the Petition Date and the electricity shut down. EDH further asserted that the Debtor's former management had told EDH that it would not be affected by the bankruptcy and that it did not have to pay for electricity or rent until further notified. EDH further averred that the Debtor had defaulted and EDH was entitled to damages and remedies.

EDH further argued that it had purchased the Pod and pursuant to Washington real estate property law, that EDH could not be dispossessed of title to the Pod where the Debtor had first breached the Sublease. Therefore, ED asserted, the Estate would not prevail on its efforts to terminate the Sublease.

### B. The Settlement

The Moses Lake Three-Way Agreement resolves this dispute in its entirety. EDH has (i) agreed to withdraw its $25 million claim with prejudice, (ii) paid the EDH Catch-Up Power ($127,620.20) and the EDH Bond Payment ($10,000), both of which were necessary to resume electricity to Parcel E, and (iii) paid accrued administrative rent by the Tendered Checks in the amount of amount of $42,576. Furthermore, EDH has agreed to pay (x) $9,000 a month going forward in rent, which is almost double the rent under the Sublease, and (y) the cost, on a current basis, of all electricity consumed by the one pod on Parcel E that EDH operates, Pod 8.

The Moses Lake Three-Way Agreement continues the revenue-sharing arrangement with the Moses Lake Landlords that is contained in the Moses Lake Two-Way Agreement. The Estate will pay to the Moses Lake Landlord 77% of revenues[4], net of electricity costs, on revenues up to $299,000 and 85% of revenues, net of electricity costs, on revenues of $300,000 or more.

The Estate, EDH, and the Moses Lake Landlords have released each other from all claims arising from the Pre-Petition Agreements. **The deadline to assume or reject the sublease with EDH has been extended to May 19, 2019.** The rest of the terms are set forth more particularly in the Motion and are discussed more fully below.

## V.

## POINTS AND AUTHORITIES

### A. Standard for Approving a Settlement

Rule 9019(a) provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. To be approved, the settlement should be in the best interests of the estate and "reasonable, given the particular circumstances of the case." *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986). While a court generally gives deference to a trustee's business judgment in deciding whether to settle a matter,

---

[4] Per the Moses Lake Three-Way Agreement, revenues are defined to include the $9,000 monthly rent paid by EDH. *See* Motion, Exh. B., Moses Lake Three-Way Agreement, § 1.26.

the Trustee "has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved" *Id.*

In determining the "fairness, reasonableness and adequacy" of a proposed compromise, a bankruptcy court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*A&C Properties*, 784 F.2d at 1381 (quoting *In re Flight Transportation Corporation Securities Litigation*, 730 F.2d 1128, 1135 (8th Cir.1984) (citations omitted), *cert. denied*, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985)). "When assessing a compromise, courts need not rule upon disputed facts and questions of law, but rather only canvass the issues." *In re Schmitt,* 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997).

### B. The Moses Lake Three-Way Agreement Meets Each of the *A&C Properties* Factors.

#### 1. *Probability of Success on the Merits Is Uncertain.*

The Pre-Petition Agreements clearly provide that in the event of a default by EDH, the Debtor would have the right to terminate the Pre-Petition Agreements, in which case, ownership of Pod 8 would transfer to the Debtor without any

Memorandum ISO Motion to
Approve Three-Way Agreement - Page 10

obligation to compensate EDH for that transfer.[5] It was also indisputable that EDH had not paid the rent due or the electricity due after the Petition Date.

EDH contended that the electricity at Moses Lake would have been turned off even if EDH had paid the rent and electricity because EDH's pod was under the same account with the Grant County PUD as the Debtor's two pods on Parcel E. The Debtor had ignored its obligation to pay the electricity post-petition. Therefore, EDH argued, the Debtor breached the Sublease.

EDH further claimed that the Debtor's former management had told EDH that it would not be affected by the bankruptcy, that it should not pay electricity or rent at this time, and that the Debtor would provide to EDH the new payment information. Regardless of whether it was reasonable to rely on such a statement, the Debtor's former management is not available to confirm or deny this statement.

While the weight of the arguments favors the Estate, it would not be reasonable to assume a high probability of success at this time. Each side accused the other of breach and both sides were losing money..

Therefore, the probability-of-success-on-the-merits factor weighs in favor of the settlement.

---

[5] *See* Motion, Exh. D, Sublease, ¶¶ 5.b. and 10.

## 2. Collectability Is Questionable.

EDH represented that it was losing thousands of dollars a day as a result of the shutdown and that if the shutdown continued its business would be damaged. Thus, even if the Estate won the dispute, collection of damages would be problematical.

Further, while the Trustee had the right to terminate the Sublease and claim ownership of Pod 8 on behalf of the Estate, the Estate lacked the resources to operate Pod 8. Therefore, even if the Estate won the dispute with EDH, the reward would be an empty pod that was generating no revenue and that would have to be sold (assuming it could be moved) for liquidation value.

Moreover, the longer it takes to pay for back electricity, the higher the payment required by the Grant County PUD before it will turn the electricity back on. Therefore, the likely consequence of protracted litigation with EDH would be moribund operations and the subsequent sale of Pod 8 for essentially liquidation value.

Therefore, the collectability factor weighs in favor of the proposed settlement.

## 3. The Litigation Would Be Complex, Expensive, Inconvenient and Would Cause Delay.

The Trustee has only the slimmest of records regarding the Debtor's affairs, which complicates the Trustee's efforts to test EDH's assertion that the Debtor had instructed it not to pay rent or the electricity. Counsel would have to spend additional time conducting extensive discovery, thus increasing the expense of litigation.

Further, every day of not operating and not generating revenue is a day closer to being forced to reject the Moses Lake Leases and lose the opportunity to assume and assign them as part of a going concern sale. In the Trustee's judgment, working with EDH to resume operations for both EDH and the Estate was the proper choice. This is especially true given that EDH is paying the costs to resume those operations for both EDH *and* the Estate.

Therefore, the complexity-expense-inconvenience-delay factor weighs in favor of the proposed settlement.

### 4. *The Settlement Serves the Paramount Interest of the Creditors and Provides Proper Deference to Their Reasonable Views.*

The Moses Lake Three-Way Agreement serves the paramount interest of creditors by allowing the Trustee to re-open more of the Debtor's operations and generate additional revenue *without any upfront costs*. EDH has paid the EDH Catch-Up Power Payment ($127,620.20), the EDH Bond Payment ($10,000) and the Tendered Checks ($42,576), for a total of $180,398.20. These payments have allowed the Trustee to resume operations in two pods of Parcel E. This is in addition to the three pods on Parcel C and the Data Center, which were re-opened pursuant to the Moses Lake Two-Way Agreement.

In addition, EDH has agreed to increase its rental payments by nearly double (from $4,644 per month to $9,000). The Estate will have no obligation to maintain any portion of Pod 8. EDH will pay for all electricity consumed by EDH at Pod 8. The Moses Lake Landlords have agreed to apply the EDH Bond Payment to the

Bond Payment in the amount of $10,202 that the Moses Lake Landlords had paid to the Grant County PUD pursuant to the Moses Lake Two-Way Agreement. Thus, the EDH Bond Payment reduces the Estate's liability to the Moses Lake Landlords by $10,000.

Finally, the revenue-sharing arrangement with the Moses Lake Landlords allows the Trustee to pay down accrued administrative liabilities, retain a percentage for current operations, and create going concern value. The foregoing serves to increase the distribution to creditors.

Therefore, this paramount-interest-of-creditors factor weighs in favor of the proposed settlement.

### C. The Agreement Is an Exercise of Sound Business Judgment.

After notice and hearing, the Trustee may "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A transaction outside of the ordinary course "must be based on [the trustee's] reasonable business judgment." *In re Ernst Home Ctr., Inc.,* 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997), citing *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir.1986). The trustee must also establish "some articulated business justification" for the transaction. *Id.,* quoting *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir.1983); *In re Walter,* 83 B.R. 14 (B.A.P. 9th Cir. 1988). *See also In re Lahijani,* 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005) ("Ordinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection.").

Sound business reasons support the Trustee's decision to enter into the Moses Lake Three-Way Agreement. If approved, the Trustee will have succeeded in re-opening Parcel E with no upfront costs while also nearly doubling EDH's rent going forward. Pursuant to the revenue-sharing arrangement, the Trustee can pay down administrative liabilities while also retaining a percentage of revenues every month regardless of whether it has generated enough to meet all of its administrative obligations to the Moses Lake Landlords.

The Moses Lake Three-Way Agreement also gives (1) EDH the assurance of nondisturbance and attornment, consistent with the rights of a subtenant pursuant to section 365(h) of the Bankruptcy Code and (2) the Trustee more time, until May 19, 2019, to assume or reject the Moses Lake Leases and the Sublease, subject to further negotiated extensions.

Therefore, the Moses Lake Landlord Agreement is supported by sound business reasons.

## VI.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests entry of an Order:

1. Granting the Motion;

2. Approving the Moses Lake Three-Way Agreement and the settlement embodied therein;

3. Authorizing the Trustee to perform pursuant to the terms of the Moses Lake Three-Way Agreement; and

4. Granting such other and further relief as the Court deems necessary and just.

Dated: April 16, 2019           CKR LAW LLP

By:     */s/ Pamela M. Egan*
Pamela M. Egan (WSBA No. 54736; *pro hac vice*)

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*

Memorandum ISO Motion to
Approve Three-Way Agreement - Page 16