Pamela M. Egan, WSBA No. 54736 (*pro hac vice*)
CKR Law LLP
506 2nd Avenue, 14th Floor
Seattle, WA 98114
Telephone: (415) 297-0132
Facsimile: (206) 582-5001
Email: pegan@ckrlaw.com

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GIGA WATT, Inc., a Washington corporation,<br><br>          Debtor. | Case No. 18-03197 FPC 11<br><br>Chapter 11<br><br>**DECLARATION OF MARK D. WALDRON IN SUPPORT OF CHAPTER 11 TRUSTEE'S MOTION FOR ORDER APPROVING MOSES LAKE THREE-WAY AGREEMENT** |

I, Mark D. Waldron, declare as follows:

1. I submit this declaration in my capacity as the duly-appointed Chapter 11 Trustee (the "Trustee") in the bankruptcy case of the above-captioned debtor (the "Debtor" or "Giga Watt"). I submit this declaration in support of the *Chapter 11 Trustee's Motion for Order Approving Moses Lake Three-Way Agreement* (the "Motion")[1], filed herewith. The statements set forth herein are based on my investigation of the Debtor's affairs and, except where otherwise noted, are based

---

[1] Capitalized terms used herein have the meanings ascribed to them in the Motion.

Declaration of Mark D. Waldron ISO
Motion to Approve Three-Way Agreement - Page 1

on personal knowledge. If called as a witness, I would and could competently testify hereto.

2. A copy of the Moses Lake Three-Way Agreement is attached to the Motion as <u>Exhibit B</u>.

3. The Moses Lake Three-Way Agreement resolves a dispute with both the Moses Lake Landlords and EDH that would distract from and even undermine the Trustee's efforts and goal of resurrecting and selling the Debtor's business as a going concern for the benefit of creditors.

4. The Moses Lake Three-Way Agreement will allow the Trustee to re-open additional operations of the Debtor without having to incur any upfront costs or liability.

5. Pursuant to four leases, the Debtor leased the following premises from the Moses Lake Landlords: Parcel C, the "Expansion Pod" on Parcel D, the "Data Center" on Parcel D, and Parcel E. The leases between the Debtor and the Moses Lake Landlords (the "<u>Moses Lake Leases</u>") are listed on <u>Exhibit C</u> to the Motion.

6. The foregoing chart accurately depicts the parcels and buildings (pods) located on the Debtor's Moses Lake facility:



7. On the leased premises, the Debtor built buildings, known as pods, that are wired and equipped to house computers that "mine" for cryptocurrency.

Declaration of Mark D. Waldron ISO
Motion to Approve Three-Way Agreement - Page 2

EDH allegedly purchased the building and subleased the land consisting of Pod 8 of Parcel E from the Debtor. The Debtor operated Pod 6 and Pod 7 of Parcel E.

8. All of Parcel E has been re-opened pursuant to the Moses Lake Three-Way Agreement.

9. Parcel C and the Data Center have been re-opened pursuant to a separate agreement that is the subject of the *Chapter 11 Trustee's Motion to Approve the Two-Way Agreement*, filed on April 5, 2019 [Docket No. 260].

10. The material terms of the Moses Lake Three-Way Agreement are accurately summarized in the Motion and incorporated herein by reference as if set forth fully herein.

11. Without the consent of the Moses Lake Landlords, the Debtor, according to EDH, entered into two agreements with EDH: the Mining Farm Development Agreement, dated June 27, 2017 (the "MFDA"), and the Sublease Agreement, dated July 10, 2017 (the "Sublease"). (The MFDA and the Sublease are at times referred to herein collectively as the "Pre-Petition Agreements"). EDH has not produced a copy of the MFDA that is signed by a representative of the Debtor's.

12. Copies of the MFDA and of the Sublease are attached to the Motion as Exhibits D and E, respectively.

13. EDH has represented that pursuant to the Pre-Petition Agreements, EDH paid approximately $1.5 million to the Debtor to build Pod 8 on Parcel E of Moses Lake. EDH has also claimed ownership of Pod 8.

Declaration of Mark D. Waldron ISO
Motion to Approve Three-Way Agreement - Page 3

18-03197-FPC7    Doc 279    Filed 04/17/19    Entered 04/17/19 12:48:49    Pg 3 of 9

14. By mid-January, all power to all of the Debtor's facilities was cut off and operations came to a complete standstill.

15. From on or about the Petition Date until mid-January, 2019, when the Grant County PUD shut off the electricity to the Debtor's operations at Moses Lake, EDH asserts that Giga Watt did not invoice EDH for rent or electricity. It presents this as the reason for not paying rent or electricity from December 1, 2018, although it had operated and consumed electricity during the post-period period. After filing the EDH Claim, EDH tendered a series of checks totaling $42,576.00 (the "Tendered Checks") in payment of past due and current post-petition rent under the Sublease.

16. On or about March 19, 2019, EDH paid $127,620.20 (the "EDH Catch-Up Power Payment") plus $10,000 (the "EDH Bond Payment") to the Moses Lake Landlords. The Moses Lake Landlords transferred the EDH Catch-Up Power Payment and the EDH Bond Payment to the Grant County Public Utility District, which in turn almost instantly turned on the electricity at Parcel E. Before EDH made the EDH Catch-Up Power Payment and the EDH Bond Payment, I disclosed to the Moses Lake Landlords and to EDH that any agreement with the Estate relating to Parcel E would be subject to Court approval.

17. To date, the Debtor's operations on all of Parcel C, the Data Center, and Pods 6 and 7 of Parcel E have been resumed. These operations are being managed, under my supervision, by Lauren Miehe, Doug Pratt and Allen Oh, whose employment has been approved by this Court.

18. The shutdown of electricity by the Grant County PUD in mid-January 2019, brought the Debtor and EDH's operations at Moses Lake to a standstill. EDH demanded immediate re-entry and asserted that the shutdown constituted a breach by the Debtor of the Sublease that had damaged the EDH in the amount of approximately $25 million.

19. The Moses Lake Landlords asserted that they had not approved the Sublease and that the Sublease constituted a breach of the Moses Lake Leases. The Moses Lake Landlords further argued that the Sublease constituted additional cause to lift the automatic stay and evict both the Debtor and EDH.

20. Meanwhile, counsel and I asserted that EDH had defaulted under the Pre-Petition Agreements by failing to pay rent or electricity after the Petition Date through the date in mid-January when the Grant County PUD shut off the electricity. We argued that pursuant to the terms of the Sublease, this default was not curable. EDH's default entitled me, as Trustee, to terminate the Sublease and take title to Pod 8 of Parcel E on behalf of the Estate.

21. EDH responded that if it had paid rent and electricity, it is unlikely that those funds would have reached either the Estate or Grant County PUD, given that former management had failed to account for post-revenues that the Debtor had generated between the Petition Date and the electricity shut down. EDH further asserted that the Debtor's former management had told EDH that it would not be affected by the bankruptcy and that it did not have to pay for electricity or rent until further notified. EDH further averred that the Debtor had defaulted and EDH was entitled to damages and remedies.

Declaration of Mark D. Waldron ISO
Motion to Approve Three-Way Agreement - Page 5

18-03197-FPC7    Doc 279    Filed 04/17/19    Entered 04/17/19 12:48:49    Pg 5 of 9

22. EDH further argued that it had purchased the Pod and that pursuant to Washington real estate property law, EDH could not be dispossessed of title to the Pod where the Debtor had first breached the Sublease. Therefore, EDH asserted, the Estate would not prevail on its efforts to terminate the Sublease.

23. The Moses Lake Three-Way Agreement resolves this dispute in its entirety. EDH has (i) agreed to withdraw its $25 million claim with prejudice, (ii) paid the EDH Catch-Up Power ($127,620.20) and the EDH Bond Payment ($10,000), both of which were necessary to resume electricity to Parcel E, and (iii) paid accrued administrative rent by the Tendered Checks in the amount of amount of $42,576. Furthermore, EDH has agreed to pay (x) $9,000 a month going forward in rent, which is almost double the rent under the Sublease, and (y) the cost, on a current basis, of all electricity consumed by the one pod on Parcel E that EDH operates, Pod 8.

24. The Moses Lake Three-Way Agreement continues the revenue-sharing arrangement with the Moses Lake Landlords that is contained in the Moses Lake Two-Way Agreement. The Estate will pay to the Moses Lake Landlord 77% of revenues, net of electricity costs, on revenues up to $299,000 and 85% of revenues, net of electricity costs, on revenues of $300,000 or more.

25. The Estate, EDH, and the Moses Lake Landlords have released each other from all claims arising from the Pre-Petition Agreements. The deadline to assume or reject the sublease with EDH has been extended to May 19, 2019.

26. In my judgment, it would not be reasonable to assume a high probability of success at this time. Each side accused the other of breach. The credibility of the Debtor's management is not certain.

27. EDH represented that it was losing thousands of dollars a day as a result of the shutdown and that if the shutdown continued its business would be damaged. Thus, even if the Estate won the dispute, collection of damages would be problematical.

28. While I believe I had the right to terminate the Sublease and claim ownership of Pod 8 on behalf of the Estate, the Estate lacks the resources to operate Pod 8. Therefore, even if the Estate won the dispute with EDH, the reward would be an empty pod that was generating no revenue and that would have to be sold (assuming it could be moved) for liquidation value. Therefore, in my judgment, collecting any judgment could be difficult.

29. Moreover, the longer the delay in paying for back electricity, the higher the payment required by the Grant County PUD. Therefore, in my judgment, the likely consequence of protracted litigation with EDH would be moribund operations and the subsequent sale of Pod 8 for mere liquidation value.

30. I have only the slimmest of records regarding the Debtor's affairs, which complicates my efforts to test EDH's assertion that the Debtor had instructed it not to pay rent or the electricity. Counsel would have to spend additional time conducting extensive discovery, thus increasing the expense of litigation.

31. Further, every day of not generating revenue is a day closer to being forced to reject the Moses Lake Leases and lose the opportunity to assume and assign them as part of a going concern sale. In my judgment, working with EDH to resume operations for both EDH and the Estate was the proper choice. This is especially true given that EDH is paying the costs to resume those operations for both EDH *and* the Estate.

32. EDH has paid the EDH Catch-Up Power Payment ($127,620.20), the EDH Bond Payment ($10,000) and the Tendered Checks ($42,576), for a total of $180,398.20. These payments have allowed me to re-open the Debtor's operations in two pods of Parcel E. This is in addition to the three pods on Parcel C and the Data Center, which were re-opened pursuant to the Moses Lake Two-Way Agreement.

33. A further factor in my decision, is that EDH has agreed to increase its rental payments by nearly double (from $4,644 per month to $9,000). The Estate will have no obligation to maintain any portion of Pod 8. EDH will pay for all electricity consumed by EDH at Pod 8. The Moses Lake Landlords have agreed to apply the EDH Bond Payment to the Bond Payment in the amount of $10,202 that the Moses Lake Landlords had paid to the Grant County PUD pursuant to the Moses Lake Two-Way Agreement. Thus, the EDH Bond Payment reduces the Estate's liability to the Moses Lake Landlords by $10,000.

34. Finally, the revenue-sharing arrangement with the Moses Lake Landlords allows me to pay down accrued administrative liabilities, retain a percentage for current operations, and create going concern value. The foregoing

Declaration of Mark D. Waldron ISO
Motion to Approve Three-Way Agreement - Page 8

18-03197-FPC7    Doc 279    Filed 04/17/19    Entered 04/17/19 12:48:49    Pg 8 of 9

serves to increase the distribution to creditors and of the probability of a successful resolution of this case.

35. If the Moses Lake Two-Way Agreement and the Moses Lake Three-Way Agreement are approved, then the Debtor's operations will be re-opened in Parcel E with no upfront costs. EDH's rent is nearly doubled. Pursuant to the revenue-sharing arrangement, I will be able to further pay down administrative liabilities while also retaining a percentage of revenues every month regardless of whether it has generated enough to meet all of its administrative obligations to the Moses Lake Landlords.

36. The Moses Lake Three-Way Agreement also gives (1) EDH the assurance of nondisturbance and attornment, consistent with the rights of a subtenant pursuant to section 365(h) of the Bankruptcy Code and (2) the Trustee more time, until May 19, 2019, to assume or reject the Moses Lake Leases and the Sublease, subject to further negotiated extensions.

37. I believe the Moses Lake Three-Way Agreement is in the paramount interest of creditors.

To the best of my knowledge, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 17th day of April 2019 in Tacoma, Washington.

_____
Mark D. Waldron