1  Pamela M. Egan, WSBA No. 54736
   William R. Firth, III (admitted *pro hac vice*)
2  CKR Law LLP
   506 2nd Avenue, Suite 1400
3  Seattle, WA 98114
   Telephone: (415) 297-0132
4  Facsimile: (206) 582-5001
   Email: pegan@ckrlaw.com

5  *Attorneys for Mark D. Waldron in his capacity as*
   *the duly-appointed Chapter 11 Trustee*
6

7

8
                **UNITED STATES BANKRUPTCY COURT**
9
                **EASTERN DISTRICT OF WASHINGTON**
10

11 | In re: | Case No. 18-03197 |

12 GIGA WATT, Inc., a Washington          The Honorable Frederick P. Corbit
   corporation,
13                                          Chapter 11

14 Debtor.

15 MARK D. WALDRON, in his                 Adv. Pro. No.
   capacity as the duly-appointed
16 Chapter 11 Trustee,                     **VERIFIED COMPLAINT FOR**
                                           **AVOIDANCE AND RECOVERY OF**
17 vs.                                     **FRAUDULENT TRANSFERS**
                                           **AND/OR PREFERENTIAL**
18 DAVID M. CARLSON and JANE               **TRANSFERS; BREACH OF**
   DOE 1, individually and on behalf of    **FIDUCIARY DUTY; TURNOVER;**
19 the marital estate, ENTERPRISE          **AND INJUNCTIVE RELIEF; AND**
   FOCUS, INC., a Washington               **THE CHAPTER 11 TRUSTEE'S**
20 corporation, CLEVER CAPITAL,            **OBJECTIONS TO CLAIMS OF**
   LLC, a Washington limited liability     **DAVID M. CARLSON (CLAIMS**
21 company, JEFFREY FIELD, ROB             **NOS. 318 AND 319) AND OF**
   TAVIS, AND JANE DOES 2                  **CLEVER CAPITAL LLC (CLAIM**
22 THROUGH 15                              **NO. 320)**

23

24 Complaint for Avoidance and Recovery of
   Fraudulent Transfers and/or Preferential and/or, etc. - Page 1
25

Mark D. Waldron, in his capacity as the duly-appointed Trustee in the above-captioned case, hereby submits the following:

## **INTRODUCTORY STATEMENT**[1]

1.      This Complaint relates to one of the Debtor's three sites: the TNT Facility.[2]

2.      Three days before the Petition Date, Defendant Carlson – who was a "governor" of the Debtor at the time and thus a fiduciary – caused Defendant Turner, his subordinate, to sign over to Defendant Carlson's wholly-owned affiliate, Defendant Clever Capital: the power contract between Giga Watt and the Douglas County Public Utility District No. 1 for 3.3MW of power at rates that are among the cheapest in the world; hundreds of computers that "mine" for cryptocurrency and their accompanying power systems, and a security interest in the Debtor's assets located at the TNT Facility. The consideration recited is approximately $86,000, which, if really paid or owed, is by any measure, below the assets' value by many multiples.

3.      That same day, November 16, 2019, Defendant Carlson caused the Debtor to agree to pay to his company, Defendant Clever Capital, "rent" for Buildings A, B and H on the Debtor's TNT Facility. Upon information and belief, Defendant Carlson also took possession of Building C and the office located at the Debtor's TNT Facility on or about this time.

---

[1] Unless otherwise defined herein, capitalized terms have the meanings ascribed to them in subsequent sections of this Verified Complaint.

[2] The other two sites are the Moses Lake Facility and the Pangborn site.

Complaint for Avoidance and Recovery of
Fraudulent Transfers and/or Preferential and/or, etc. - Page 2

4.      On April 19, 2019, Defendant Carlson caused Defendant Clever Capital to file a claim seeking approximately $260,000 in "rent" and associated "landlord" costs for the TNT Facility. This claim is fraudulent. Defendant Clever Capital holds no interest of any kind in real property. Further, all leases with respect to the TNT Facility were expressly assigned to the Debtor pursuant to the Sale and Assignment Agreement.

5.      Worse still, Defendant Carlson has recently caused Defendant Clever Capital to obstruct the Trustee's effort to negotiate an agreement with the TNT Landlord and the DC PUD to re-open the TNT Facility as the Trustee successfully did with the Moses Lake Facility. Defendant Clever Capital has claimed that the "lease" (in which it holds no interest) has been rejected and his company, Defendant Clever Capital, is now in control of the TNT Facility. Defendant Carlson and Defendant Clever Capital's conduct is causing ongoing and substantial damage to the estate. It threatens to severely undermine the Trustee's to-date successful efforts to create and capture going concern value for the benefit of creditors.

6.      As set forth in the Prayer for Relief set forth below, all of the assets transferred to Defendant Clever Capital on the eve of bankruptcy are fraudulent transfers and/or preferences that the Trustee seeks to avoid and recover for the benefit of the estate.

7.      The Trustee  seeks damages for  breach of fiduciary duty by the Defendant Carlson.

Complaint for Avoidance and Recovery of
Fraudulent Transfers and/or Preferential and/or, etc. - Page 3

8.     The Trustee seeks turnover of all the assets transferred pursuant to the TNT Transfer and of the additional assets, including Building C and the office, which Defendant Carlson simply took without any written pretense. Under the circumstances, a constructive trust should be imposed upon the bundle of assets and rights transferred therein, including, without limitation, leasehold interests.

9.     Finally, the Trustee seeks preliminary injunctive and a temporary restraining order to avoid irreparable injury by the Defendants' fraudulent, obstreperous, and obstructionist conduct.

## **THE PARTIES**

10.     Giga Watt, Inc. was incorporated under the laws of Washington on December 15, 2016 by Nikolai Evdokimov.

11.     Plaintiff is the duly-appointed Chapter 11 Trustee of the estate in this case pursuant to that certain *Order Approving Appointment of Chapter 11 Trustee*, dated January 23, 2018. Plaintiff is at times also referred to herein as the "Trustee."

12.     Defendant David M. Carlson ("Defendant Carlson") is a resident of the State of Washington. He is a shareholder of Defendant Enterprise Focus, Inc.. Upon information and belief, he is the sole member of Defendant Clever Capital LLC. He and Jane Doe 1 are named herein individually and on behalf of the marital estate.

13.     At all material times herein, Defendant Carlson acted in his capacity as a fiduciary with a duty to the Debtor and its creditors. He was and/or is the Chief Executive Officer of the Debtor. He is a shareholder. He is also a Governor

Complaint for Avoidance and Recovery of
Fraudulent Transfers and/or Preferential and/or, etc. - Page 4

of the Debtor, which means that he was (i) a director of Giga Watt, (ii) the person under whose authority Giga Watt's powers were exercised and/or (iii) the person under whose direction the activities and affairs of the Debtor were managed pursuant to the organic law and organic rules of the Debtor. As the Chief Executive Officer of Giga Watt, he assiduously promoted a large-scale unregistered securities offering that is accompanied by numerous indicia of fraud.

14.     Defendant Enterprise Focus, Inc. ("Defendant Enterprise") is a corporation that was formed under the laws of Washington on May 1, 2009. It was administrative dissolved in October 2018.

15.     Defendant Clever Capital LLC ("Defendant Clever Capital") began as CryptoMatrix Holdings, LLC, a limited liability company organized under the laws of the state of Washington, on or about December 2, 2015. On January 30, 2018, CryptoMatrix Holdings, LLC changed its name to Clever Capital LLC according to a filing with the Washington Secretary of State signed by Defendant Carlson. Upon information and belief, Defendant Carlson wholly owns Defendant Clever Capital.

16.     Upon information and believe Defendant, Jeffrey Field, is a shareholder of Defendant Enterprise.

17.     Upon information and belief, Defendant, Rob Tavis, is a shareholder of Defendant Enterprise.

18.     The true names of Jane Does 1 through 15 are unknown.

Complaint for Avoidance and Recovery of
Fraudulent Transfers and/or Preferential and/or, etc. - Page 5

## CHRONOLOGY

19. All of the statements and allegations in the preceding paragraphs are incorporated herein by reference as if set forth fully in. They are repeated in this section only to the extent necessary to be clear.

20. On January 1, 2017, Defendant Carlson, Defendant Enterprise, Defendant Field and Defendant Tavis, on the one hand, and Giga Watt, on the other hand, entered into that certain *Bill of Sale and Assignment and Assumption Agreement* (the "Sale and Assignment Agreement"). A copy of the Sale and Assignment Agreement is attached hereto as **Exhibit A**.

21. Defendants Carlson and Enterprise conducted business under the name "MegaBigPower."

22. Pursuant to the Sale and Assignment Agreement, Defendants Carlson, Enterprise, Field and Tavis sold and assigned to Giga Watt all of their assets, interests and good will in "MegaBigPower" for a purchase price of $3 million.

23. On January 15, 2017, the Debtor, Defendant Carlson and Defendant Enterprise signed an Addendum to the Sale and Assignment Agreement pursuant to which the purchase price for MegaBigPower was reduced from $3 million to $1 million and the method of payment was changed from bitcoin to U.S. dollars. A copy of the Addendum is attached hereto as **Exhibit B**.

24. MegaBigPower ran two crypto-mining facilities. One was a smaller version of what is now the Debtor's facility at Moses Lake, Washington that the Trustee has recently re-opened. The other, referred to herein as the TNT Facility, is located in Wenatchee, Washington.

Complaint for Avoidance and Recovery of
Fraudulent Transfers and/or Preferential and/or, etc. - Page 6

25.     The TNT Facility is made up of five buildings and related infrastructure and includes Buildings A, B, C, and H and an office.

26.     With respect to the TNT Facility, the Sale and Assignment Agreement provides in paragraph 1 that:

> [T]he Seller *hereby* sells, conveys, *assigns,* and transfers to the Buyer the assets set forth on Schedule (the "Purchased Assets") free and clear of any and all liens and encumbrances, and the Buyer *hereby* accepts the sale, conveyance*, assignment,* and transfer of the Purchased Assets and assumes the Buyer's obligations under the contracts listed on Schedule 1 (the "Assumed Contracts").

**Exhibit A**, Sale and Assignment Agreement, ¶ 1 (emphasis added).

27.     Schedule 1 of the Sale and Assignment Agreement defines "Purchased Assets" to include the "*Wenatchee* and Moses Lake *leases and facility infrastructure* (Exhibit 1)"  and "equipment of the Wenatchee unused power infrastructure (Exhibit 2)." **Exh. A**, Sale and Assignment Agreement, Schedule 1.

28.     Exhibit 1 to the Sale and Assignment Agreement includes:

Wenatchee Leases & Facility Infrastructure:

H building 1.75MW
A building Storage
B building 225kW
C building 225kW
Eller St House/Office

**Exh. A**, Sale and Assignment Agreement, Schedule 1, Exh. 1.

29.     Exhibit 1 itemizes the Facility Infrastructure as including, "Deposits with Landlord for buildings A, D, C, and H" and other significant assets, such as "underground conduits/trenches," "power pole," "transformers," "vaults," and "

---

Complaint for Avoidance and Recovery of
Fraudulent Transfers and/or Preferential and/or, etc. - Page 7

secondary power (1" conductors)," among other assets. Exh. A, Sale and Assignment Agreement, Schedule 1, Exh. 1.

30.     Schedule 1, Exh.1 also states:

> MBP Electrical Infrastructure generally consists of tenant improvements to leasehold property. *It represents a long-term usable capital investment that is producing income.*

**Exhibit A**, Sale and Assignment Agreement, Schedule 1, Exh. 1.

31.     Exhibit 2 states:

> MBP [MegaBigPower] has some uninstalled power infrastructure, ready for a project. This equipment is new and never used.. . . "

**Exhibit A**, Sale and Assignment Agreement, Schedule 1, Exh. 2. The uninstalled power infrastructure is further described in Exhibit 2 as "a 1MW system" consisting of four "480V 225kW dry type transformers," two "480V mains breakers," four "208V Load Centers (400A disconnects)" and twelve "400 Amp Breaker Panels w/breakers."

32.     Schedule 1 states that "Assumed Contracts" includes, "lease agreements for the Eller St house/office, building A, building B, building C, building H, . . . ." **Exhibit A**, Sale and Assignment Agreement, Schedule 1.

33.     The Trustee is informed by the TNT Landlord, TNT Business Complex LLC, and therefore believes, that (i) Defendant Enterprise leased from the TNT Landlord, Buildings A and C of the TNT Facility, (ii) Defendant Carlson leased from the TNT Landlord, Buildings B and H of the TNT Facility, and (iii)

Complaint for Avoidance and Recovery of
Fraudulent Transfers and/or Preferential and/or, etc. - Page 8

either Defendant Carlson and/or Defendant Enterprise leased from the TNT Landlord the office located on the TNT Facility (collectively, the "TNT Leases").

34.     The TNT Landlord consented to Giga Watt's taking over of the TNT Facility on the understanding that Defendant Carlson would remain liable to them on the TNT Leases. Therefore, Defendant Carlson and Defendant Enterprise assigned their interests in the TNT Leases to Giga Watt by agreeing to remain liable to the TNT Landlord for Giga Watt's failure to perform.

35.     Consistent with the assignment, on July 11, 2017, Defendant Enterprise represented in its Annual Report to the Washington Secretary of State under penalty of perjury that it held no leasehold interests. A copy of the foregoing is attached hereto as **Exhibit C**.

36.     Less than six weeks later, Giga Watt began the following series of payments to Carlson:

| Date | Bitcoin | Dollar Value at time of transfer |
|---|---|---|
| August 18, 2017 | 270.3534 | $1,151,164.78 |
| August 21, 2017 | 50.0000 | $213,800 |
| March 16, 2017 | 117.92506 | $1,013,447.97 |
| | | **$2,378,412.75** |

37.     This amount exceeds the $1 million purchase price set forth in the Addendum by $1,378,412.75.

Complaint for Avoidance and Recovery of
Fraudulent Transfers and/or Preferential and/or, etc. - Page 9

1         38.     On April 30, 2018, Giga Watt signed a contract with the Douglas

2 County Public Utility District No. 1 (the "DC PUD") pursuant to which the DC

3 PUD agreed to provide to the TNT Facility 3.3 MW of power. Defendant Carlson

4 signed the contract on behalf of Giga Watt. On May 14, 2018, the DC PUD signed

5 the power contract.

6         39.     On October 18, 2018, Defendant Enterprise was administratively

7 dissolved by the Washington Secretary of State.

8         40.     On October 25, 2018, Giga Watt's registered agent filed Giga Watt's

9 annual report with the Washington Secretary of State. That annual report, signed

10 under penalty of perjury, listed Defendant Carlson as a Governor and, therefore,

11 as a fiduciary. A copy of the foregoing document is attached hereto as **Exhibit D**.

12         41.     On November 16, 2018, Defendant Carlson, when he was a Governor

13 and shareholder of the Debtor, and thus a fiduciary, caused the Debtor to transfer

14 to Defendant Clever Capital, his wholly-owned company, the power contract with

15 the DC PUD for the TNT Facility along with hundreds of miners and other

16 equipment located at the TNT Facility. He also caused the Debtor to grant to

17 Defendant Clever Capital a security interest in the Debtor's assets located at the

18 TNT Facility.

19         42.     Defendant Carlson and Defendant Clever Capital also falsely

20 purported to create a landlord-tenant relationship between Defendant Clever

21 Capital and the Debtor, pursuant to which the Debtor would pay three times what

22 it was paying for the TNT Leases, from approximately, $11,600 to approximately

23 $30,000. In exchange for this tripled rent, the Debtor would occupy fewer

24 Complaint for Avoidance and Recovery of
Fraudulent Transfers and/or Preferential and/or, etc. - Page 10

25

buildings. The foregoing agreement, the "TNT Transfer," is attached hereto as **Exhibit E**.

43.     Upon information and belief, on or about the Petition Date, Defendant Carlson began occupying a portion of the TNT Facility without permission or right.

44.     On December 21, 2018, six weeks after purporting to be the Debtor's "landlord" at the TNT Facility, Defendant Clever Capital represented to the Washington Secretary of State in its Annual Report under penalty of perjury that it held no interest of any kind in any real estate, including leasehold interests. A copy of the foregoing report is attached hereto as **Exhibit F**.

45.     On April 19, 2019, Defendant Clever Capital filed a proof of claim (Claim No. 320) asserting the right to payment of $259,055.66 for "rent" and other landlord related expenses at the TNT Facility even though (1) Defendant Clever Capital has no real estate interests of any kind, according to the sworn public record, and (2) the TNT Leases had already been assigned to the Debtor.

46.     On April 19, 2019, Defendant Carlson filed a proof of claim (Claim No. 319) asserting the right to payment of $1,359,891.59, pursuant to the Addendum, despite the fact that he has already received $2,378,412.75 from the Debtor and the purchase price for the Debtor's assets, including the Moses Lake Facility and the TNT Facility, was $1 million.

47.     On April 19, 2019, Defendant Carlson filed a proof of Claim (Claim No. 319) asserting the right to payment of $13,575.10 that he allegedly owes to a third party as a guarantor of the Debtor but has not even paid.

Complaint for Avoidance and Recovery of
Fraudulent Transfers and/or Preferential and/or, etc. - Page 11

## JURISDICTION AND VENUE

48.     The Bankruptcy Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1334. The statutory predicates for this Complaint are 11 U.S.C. §§ 105(a), 547, 548, 542(e), 544(a), 550(a) and Rule 65 of the Federal Rules of Civil Procedures, incorporated herein as modified, by Rules 7065 of the Federal Rules of Bankruptcy Procedure.

49.     Venue is appropriate  pursuant to 11 U.S.C. § 1408(2).

### PRAYER FOR RELIEF

### FIRST CLAIM FOR RELIEF

*Avoid and Recover Intentional Fraudulent Transfer – the TNT Transfer*
11 U.S.C. §§ 548(a)(1)(A) and 550(a)
(Against Defendants Clever Capital and Carlson)

50.     Plaintiff incorporates herein by reference all preceding paragraphs asserted herein as if set forth fully herein.

51.     The TNT Transfer was a transfer of an interest of the Debtor in property.

52.     The TNT Transfer was an obligation incurred by the Debtor.

53.     The TNT Transfer was made and the related obligations were incurred by the Debtor on or within two (2) years of the Petition Date.

54.     The TNT Transfer was made with the actual intent to hinder, delay, or defraud any entity to which the Debtor was or became indebted, on or after the date of the TNT Transfer.

55.     Before the transfer was made or obligation was incurred, the Debtor had been sued or threatened with suit.

Complaint for Avoidance and Recovery of
Fraudulent Transfers and/or Preferential and/or, etc. - Page 12

56.     The transfer was of substantially all the Debtor's assets at the TNT Facility.

57.     Debtor's former management has absconded.

58.     At all times material herein, Defendant Carlson was and is an insider of the transferee, Defendant Clever Capital, and of the transferor, the Debtor.

59.     At all times material herein, Defendant Carlson was and is a fiduciary of the Debtor.

60.     The Debtor has removed or concealed assets. An estimated $200,000, possibly more, has been earned after the Petition Date and not accounted for.

61.     Defendant Carlson has attempted to conceal the true nature of the TNT Transfer by falsely claiming that Defendant Clever Capital, which owns no real estate of any kind, is the Debtor's "landlord" at the TNT Facility.

62.     The value of the consideration received by the Debtor was not reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred pursuant to the TNT Transfer. It purported to triple the Debtor's rent under the TNT Leases for few buildings than the Debtor leased previously. This rent provision has already generated a claim by Defendant Clever Capital (Claim No. 320) demanding the sum of $259,055.66. This purported obligation standing alone far exceeds the approximately $86,000 in consideration that is recited in the TNT Transfer agreement. The power contract, the miners and their electrical systems are also worth far more than the $86,000 described in the TNT Transfer agreement.

Complaint for Avoidance and Recovery of
Fraudulent Transfers and/or Preferential and/or, etc. - Page 13

63.     The Debtor was insolvent or became insolvent shortly after the TNT Transfer was made and the obligations incurred.

64.     The TNT Transfer occurred in the context of substantial debt arising from the unregistered securities offering that Defendant Carlson actively and vigorously promoted as Chief Executive Officer of the Debtor and from the Debtor's unsuccessful and allegedly fraudulent business activities.

65.     In addition, and not by way of limitation, upon information and belief the TNT Transfer was made in anticipation of a money judgment, settlement, civil penalty, equitable order, or criminal fine which the Debtor believed would be incurred by a violation of the securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47))), any State securities laws, or any regulation or order issued under Federal securities laws or State securities laws; or fraud, deceit, or manipulation in a fiduciary capacity or in connection with the purchase or sale of any security registered under section 12 or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78l and 78o(d)) or under section 6 of the Securities Act of 1933 (15 U.S.C. 77f).

66.     Defendant Clever Capital is the initial transferee of the TNT Transfer.

67.     Upon information and belief, Defendant Carlson is a person for whose benefit the TNT Transfer was made and, as such, is an initial transferee.

68.     Upon information and belief, John Does 1 through 15 are the immediate or mediate transferees of the TNT Transfer.

69.     Wherefore, the TNT Transfer should be avoided and recovered for the benefit of the estate.

Complaint for Avoidance and Recovery of
Fraudulent Transfers and/or Preferential and/or, etc. - Page 14

## SECOND CLAIM FOR RELIEF

*Avoid and Recover Constructive Fraudulent Transfer – the TNT Transfer*
11 U.S.C. §§ 548(a)(1)(B), 550(a)
(Against Defendants Clever Capital and Carlson)

70. Plaintiff incorporates herein by reference all preceding paragraphs asserted herein as if set forth fully herein.

71. The Debtor received less than a reasonably equivalent value in exchange for the TNT Transfer.

72. The Debtor was insolvent on the date that the TNT Transfer was made and/or became insolvent as a result of the TNT Transfer.

73. At the time of the TNT Transfer, the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital.

74. The TNT Transfer was made within two (2) years of the Petition Date. Indeed, it was made three days before the Petition Date.

75. Defendant Clever Capital is the initial transferee of the TNT Transfer.

76. Upon information and belief, Defendant Carlson is the person for whose benefit the TNT Transfer was made and, as such, is an initial transferee.

77. Upon information and belief, John Does 1 through 15 are the immediate or mediate transferees of the TNT Transfer.

78. Wherefore, the TNT Transfer should be avoided and recovered for the benefit of the estate.

Complaint for Avoidance and Recovery of
Fraudulent Transfers and/or Preferential and/or, etc. - Page 15

## THIRD CLAIM FOR RELIEF
*Avoid and Recover Intentional Fraudulent Transfer - the TNT Transfer*
RCW 19.40.041(1)(A) and 11 U.S.C. §§ 544(a), 550
(Against Defendants Clever Capital and Carlson)

79.     Plaintiff incorporates herein by reference all preceding paragraphs asserted herein as if set forth fully herein.

80.     The TNT Transfer occurred within four (4) years before the Petition Date.

81.     At all times material herein, the Trustee has the rights and powers of a hypothetical lien creditor and hypothetical judgment creditor.

82.     The Debtor made the TNT Transfer with actual intent to hinder, delay or defraud any creditor of the Debtor.

83.     Wherefore, the TNT Transfer should be avoided and recovered for the benefit of the estate.

## FOURTH CLAIM FOR RELIEF
*Avoid and Recover Constructive Fraudulent Transfer- the TNT Transfer*
RCW 19.40.041(1)(B) and 11 U.S.C. §§ 544(a), 550
(Against Defendants Clever Capital and Carlson

84.     Plaintiff incorporates herein by reference all preceding paragraphs asserted herein as if set forth fully herein.

85.     The TNT Transfer occurred within four (4) years before the Petition Date.

86.     The Debtor did not receive a reasonably equivalent value in exchange for the TNT Transfer.

Complaint for Avoidance and Recovery of
Fraudulent Transfers and/or Preferential and/or, etc. - Page 16

1    87.    At the time of the TNT Transfer, the Debtor was engaged or was

2    about to engage in a business or a transaction for which the remaining assets of

3    the Debtor were unreasonably small in relation to the business or transaction.

4    88.    Alternatively, at the time of the TNT Transfer, the Debtor intended to

5    incur, or believed or reasonably should have believed that the Debtor would incur,

6    debts beyond the debtor's ability to pay as they became due.

7    89.    Wherefore, the TNT Transfer should be avoided and recovered for the

8    benefit of the estate.

9                          **FIFTH CLAIM FOR RELIEF**
     Avoid and Recover Preference to Insider – the March 2018 Transfer
10                    11 U.S.C. §§ 547(b)(4)(B) and 550

11    90.    Plaintiff incorporates herein by reference all preceding paragraphs

12    asserted herein as if set forth fully herein.

13    91.    At all times material herein, Defendant Carlson was an insider of the

14    Debtor.

15    92.    On or about March 16, 2018, within a year of the Petition Date, the

16    Debtor paid to Defendant Carlson the sum of 117.92506 Bitcoin which on the

17    transfer date had a value of $1,013,447.97 (the "March 2018 Transfer").

18    93.    The March 2018 Transfer was made for the benefit of Defendant

19    Carlson, who at the time of the March 2018 Transfer was a creditor of the Debtor.

20    94.    The March 2018 Transfer was on account of an antecedent debt: the

21    purchase price for the Moses Lake Facility and the TNT Facility pursuant to the

22    Agreement and the Addendum.

23    95.    The March 2018 Transfer was made while the Debtor was insolvent.

24    Complaint for Avoidance and Recovery of
     Fraudulent Transfers and/or Preferential and/or, etc. - Page 17

25

96.    The March 2018 Transfer was made between ninety days and one year before the Petition Date.

97.    The March 2018 Transfer enabled Defendant Carlson to receiver more than he would receive if the case were a case under chapter 7 of the Bankruptcy Code, the March 2018 Transfer had not been made and Defendant Carlson received payment of the antecedent debt to the extent provided by the provisions of the Bankruptcy Code.

## SIXTH CLAIM FOR RELIEF

*Breach of Fiduciary Duty*
(Defendant Carlson)

98.    Plaintiff incorporates herein by reference all preceding paragraphs asserted herein as if set forth fully herein.

99.    At all times material herein, Defendant Carlson was an officer, shareholder and/or Governor of the Debtor.

100.   At all times material herein, Defendant Carlson owed a fiduciary duty to the Debtor, its shareholders and its creditors.

101.   Defendant Carlson breached his fiduciary duty to creditors by causing the Debtor to make the TNT Transfer to Defendant Clever Capital, his wholly owned limited company.

102.   Wherefore, the Plaintiff seeks damages subject to proof.

Complaint for Avoidance and Recovery of
Fraudulent Transfers and/or Preferential and/or, etc. - Page 18

# SEVENTH CLAIM FOR RELIEF

*Turnover*
11 U.C.S. § 542(e)
(Defendant Carlson and Defendant Clever Capital)

103.    Plaintiff incorporates herein by reference all preceding paragraphs asserted herein as if set forth fully herein.

104.    Pursuant to the Sale and Assignment Agreement the TNT Leases were assigned to Giga Watt.

105.    By occupying the TNT Facility, Defendant Carlson and Defendant Clever Capital are exercising possession and control of property that the Trustee may use, sell, or lease under section 363 of this title.

106.    In the alternative, the equity of the case compels the imposition of a constructive trust upon the TNT Transfer, Building C, the office, and the TNT Leases. Defendant Carlson, a fiduciary of the Debtor, grabbed the TNT Facility for himself three days before the Petition Date and invented a lie that his affiliate was the Debtor's landlord at the TNT Facility. Then he filed a proof of claim to recover "rent" as this phantom landlord and another proof of claim to receive another $1 million plus interest towards the purchase price of the TNT Facility even though (i) he had just taken back the TNT Facility pursuant to a fraudulent transfer and (ii) he has already received more than the purchase price from the Debtor, $2,378,412.75. Equity compels the imposition of a constructive trust upon the entire TNT Facility.

Complaint for Avoidance and Recovery of
Fraudulent Transfers and/or Preferential and/or, etc. - Page 19

1    107.   Wherefore, the Trustee is entitled to an Order requiring the

2    Defendants to turn over the TNT Facility to the Trustee for the benefit of

3    creditors.

**EIGHTH CLAIM FOR RELIEF**
*Injunctive Relief*
11 U.S.C. §§ 105(a) and RCW 19.40.071

6    108.   Plaintiff incorporates herein by reference all preceding paragraphs

7    asserted herein as if set forth fully herein.

8    109.   The estate will suffer irreparable injury if the relief is denied. Every

9    one of the Debtor's facilities is critical to the Trustee's efforts to reorganize and

10   sell the Debtor as a going concern. Defendant Carlson's taking of the TNT

11   Facility places the Trustee's efforts at great risk to the detriment of the Debtor's

12   creditors.

13   110.   The Plaintiff will probably prevail on the merits of each of its claims

14   for relief asserted herein and/or there are serious questions going to the merits.

15   111.   The balance of potential harm favors the Plaintiff.

16   112.   The public interest favors granting relief.

17   **CLAIM OBJECTIONS**

18   The Trustee hereby includes the following Claims Objections in this

19   Complaint pursuant to Rule 3007(b) of the Federal Rules of Bankruptcy

20   Procedure:

21   **OBJECTION TO CLAIM NO. 318**

22   113.   The Trustee incorporates herein by reference all preceding paragraphs

23   asserted herein as if set forth fully herein.

Complaint for Avoidance and Recovery of
Fraudulent Transfers and/or Preferential and/or, etc. - Page 20

114.   The Trustee objects to Claim No. 318 on the ground that it is not supported by sufficient evidence and is subject to equitable subordination and mandatory subordination.

115.   Wherefore, the Trustee requests that Claim No. 318 be disallowed in its entirety.

## OBJECTION TO CLAIM NO. 319

116.   Plaintiff incorporates herein by reference all preceding paragraphs asserted herein as if set forth fully herein.

117.   Plaintiff objects to Claim No. 319 on the ground that it is not supported by sufficient evidence and is subject to equitable subordination and mandatory subordination.

## OBJECTION TO CLAIM NO. 320

118.   Plaintiff incorporates herein by reference all preceding paragraphs asserted herein as if set forth fully herein.

119.   Plaintiff objects to Claim No. 320 on the ground that it is not supported by sufficient evidence and is subject to equitable subordination and mandatory subordination.

120.   Wherefore, the Trustee requests that Claim No. 320 be disallowed in its entirety.

## RESERVATION OF RIGHT

121.   The Trustee does not waive and instead expressly reserves all rights to amend all claims for relief and objections set forth herein, including without limitation to (i) avoid in whole or in part the transfer of the $2,378,412.75  that the

Complaint for Avoidance and Recovery of
Fraudulent Transfers and/or Preferential and/or, etc. - Page 21

Debtor transferred to Defendant Carlson in a series of payments on August 18, 2017, August 21, 2017 and March 26, 2018 as intentional and/or constructive fraudulent transfers, (iii) assert additional claims of relief for, among things, violations of the securities laws, conversion, trespass, and fraud and (iv) object to any of the claims filed in this case by any of the Defendants on any additional or other basis than is set forth herein.

## **CONCLUSION**

Wherefore, the Trustee prays for judgment against the Defendants and in favor of the Trustee, for monetary relief, injunctive relief, attorneys fees and costs, as allowed by law, and for such other relief as the Court deems appropriate and just.

Dated: April 22, 2019                    CKR LAW LLP

*/s/ Pamela M. Egan*
Pamela M. Egan (WSBA No. 54736)

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*

Complaint for Avoidance and Recovery of
Fraudulent Transfers and/or Preferential and/or, etc. - Page 22

## **VERIFIFICATION**

I, Mark D. Waldron, am the duly-appointed Chapter 11 Trustee in the above-captioned bankruptcy case. I have reviewed the Complaint. I believe the allegations set forth herein are true based upon my personal knowledge and where applicable based on my investigation and review of documents in this case.

I declare under penalty of perjury that the foregoing is true.

Signed this 22nd day of April 2019 in Tacoma, Washington.

_____

Mark D. Waldon, *in his capacity as the duly appointed Chapter 11 Trustee*

Complaint for Avoidance and Recovery of
Fraudulent Transfers and/or Preferential and/or, etc.