# EXHIBIT B
*Engagement Agreement*



# Corporate Restructuring Proposal

*Prepared for:*

**Law Offices of Mark D. Waldron, PLLC**

03.06.2019

Stretto.com

410 Exchange, Ste. 100
Irvine, CA 92602

800.634.7734





## Executive Summary

Thank you for the opportunity to submit a proposal for corporate restructuring services. Enclosed, please find Stretto's proposed pricing for this engagement as well as an Engagement Agreement pertaining to this matter.

As a trusted service partner, clients rely on Stretto to orchestrate the administrative process. We offer deep-industry expertise and seamlessly integrate streamlined workflows and best-in-class technology. Clients can expect top-notch service along with exceptional attention to detail.

We appreciate your time and consideration. I look forward to hearing back from you. Should you have any questions or concerns, please do not hesitate to contact me.

Regards,

James Le
*Chief Operating Officer*

1



## Engagement Agreement

This Agreement is entered into as of __3/7__, 2019 between Bankruptcy Management Solutions, Inc. d/b/a Stretto ("Stretto") and __Giga Watt, inc__ (together with its affiliates and subsidiaries, the "Company").[1]  _Chapter 11 Case # 18-03197, Mark Waldron, Trustee_

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows: _ALL subject to Bankruptcy court Approval in Gigawatt, inc._

_(now)_ _(now)_

### 1. Services

(a) Stretto agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "Services").

(b) The Company acknowledges and agrees that Stretto will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to providing Services hereunder. The parties agree that Stretto may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

(c) The Company agrees and understands that Stretto shall not provide the Company or any other party with legal advice.

### 2. Rates, Expenses and Payment

(a) Stretto will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "Rate Structure"). The Company agrees to pay for reasonable out of pocket expenses incurred by Stretto in connection with providing Services hereunder.

(b) The Rate Structure sets forth individual unit pricing for each of the Services. The Company may request separate Services or all of the Services.

(c) Stretto will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Stretto may require advance or direct payment from the Company before the performance of Services hereunder. If any amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

(d) In the case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Stretto within 10 days of receipt of the invoice.

(e) The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(f) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(g) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Stretto or paid by Stretto to a taxing authority.

(h) Upon execution of this Agreement, the Company shall pay Stretto an advance of $_____. Stretto may use such advance against unpaid fees and expenses hereunder. Stretto may use the advance

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.

1


against all prepetition fees and expenses. Company shall upon Stretto's request, which request may take the form of an invoice, replenish the advance to the original advance amount. Stretto may also, at its option hold such advance to apply against unpaid fees and expenses hereunder.

(i) Stretto reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year. If such annual increases represent an increase greater than 10% from the previous year's levels, Stretto shall provide 30 days' notice to the Company of such increases.

(j) Payments to Stretto, under the guise and terms of the Services Agreement for services rendered, may be remitted by Client using either (or both) of the following methods:

    i. **Wire Transmission**
        Bank Name – First Bank of Colorado
        Account No. – 709 557 1634
        Account Name – Stretto
        ABA – 107005047

    i. **Check**
        Stretto
        410 Exchange, Suite 100
        Irvine, CA 92602

## 3. Retention in Bankruptcy Case

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "Bankruptcy Code"), the Company promptly shall file applications with the Bankruptcy Court to retain Stretto (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Stretto.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Stretto will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

## 4. Confidentiality

(a) The Company and Stretto agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the receiving party's possession or known to it, independently developed by the receiving party, lawfully obtained by the receiving party from a third party or required to be disclosed by law, then the receiving party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, (i) such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time, if possible, to seek any remedy available under applicable law to prevent disclosure of the information; and (ii) such party will limit such disclosure to the extent the such party's counsel in good faith determines such disclosure can be limited.

## 5. Property Rights

Stretto reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "Property") furnished by Stretto for itself or for use by the Company hereunder. The foregoing definition of Property shall include any and all data, from any source, downloaded, stored and maintained by Stretto's technology infrastructure. Fees and expenses paid by the Company do not vest in the Company any

18-03197-FPC7     Doc 290-2     Filed 05/07/19     Entered 05/07/19 16:31:18     Pg 5 of 11



rights in such Property. Such Property is only being made available for the Company's use during and in connection with the Services provided by Stretto hereunder.

### 6. Bank Accounts

At the request of the Company or the Company Parties, Stretto shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction. To the extent that certain financial products are provided to the Company pursuant to Stretto's agreement with financial institutions, Stretto may receive compensation from such institutions for the services Stretto provides pursuant to such agreement.

### 7. Term and Termination

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "Cause" means (i) gross negligence or willful misconduct of Stretto that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Stretto invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Stretto where Stretto reasonably believes it will not be paid.

(b) If this Agreement is terminated after Stretto is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Stretto of its duties under such retention, which order shall be in form and substance reasonably acceptable to Stretto.

(c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Stretto hereunder.

(d) If this Agreement is terminated, Stretto shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Stretto shall provide the necessary staff, services and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Rate Structure.

### 8. No Representations or Warranties

Stretto makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

### 9. Indemnification

(a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Stretto and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "Indemnified Parties") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to Stretto's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b) Stretto and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c) The Company's indemnification of Stretto hereunder shall exclude Losses resulting from Stretto's gross negligence or willful misconduct.

(d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

### 10. Limitations of Liability

3


Except as expressly provided herein, Stretto's liability to the Company for any Losses, unless due to Stretto's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company to Stretto for the portion of the particular work that gave rise to the alleged Loss. In no event shall Stretto be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

### 11. Company Data

(a) The Company is responsible for, and Stretto does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Stretto and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "SOFAs and Schedules"). Stretto bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b) The Company agrees, represents and warrants to Stretto that before delivery of any information to Stretto: (i) the Company has full authority to deliver such information to Stretto; and (ii) Stretto is authorized to use such information to perform Services hereunder and as otherwise set forth in this Agreement.

(c) Any data, storage media, programs or other materials furnished to Stretto by the Company may be retained by Stretto until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Stretto under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Stretto. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Stretto's Services for a period of 90 days or more, Stretto may dispose of any such materials in a manner to be determined in Stretto's sole reasonable discretion, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Stretto.

(d) Notwithstanding the foregoing, if Stretto is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

### 12. Non-Solicitation

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Stretto during the term of this Agreement and for a period of 12 months after termination thereof unless Stretto provides prior written consent to such solicitation or retention.

### 13. Force Majeure

Whenever performance by Stretto of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Stretto's reasonable control, then such performance shall be excused.

### 14. Choice of Law

4


The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of California.

## 15. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in Irvine, California in accordance with the United States Arbitration Act. Notwithstanding the foregoing, upon commencement of any chapter 11 case(s) by the Company, any disputes related to this Agreement shall be decided by the bankruptcy court assigned to such chapter 11 case(s).

## 16. Integration: Severability; Modifications: Assignment

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Stretto.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Stretto may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

## 17. Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 18. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Stretto:

> Stretto
> 410 Exchange, Ste. 100
> Irvine, CA 92602
> Attn: Eric Kurtzman
> Tel: 714.716.1841
> Email: eric.kurtzman@stretto.com

If to the Company:

> LAW OFFICES OF MARK D. WALDRON, PLLC
> 6711 Regents Blvd. W., Suite B
> Tacoma, WA 98466

MARK WALDRON, chapter 11 Trustee

5


With a copy to: Pamela Egan
CKR Law, LLP
506 2ᵈ Ave #1400
Seattle, WA 98114

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

Stretto

By: _James M-C_

Title: C.O.O.

[COMPANY]

By: _Ceiga WATT, Inc_    3/7/19

Title: Chapter 11 Bankruptcy
in the Eastern District
of Washington

6


## Fee Structure

### Consulting Services and Rates

Position | Hourly Rate
*Analyst* | *$30.00 - $50.00*

The Analyst processes incoming mail, including proofs of claim, ballots, creditor correspondence and returned mail. Also assists with the generation of mailing services.

*Associate/Senior Associate* | *$65.00 - $165.00*

The Associate manages the various data collection processes required by the Chapter 11 process. This includes, among other things, compiling the creditor matrix and Schedules/SOFAs (and generating drafts of same for counsel and advisors), reviewing and processing claims, overseeing contract review, overseeing all mailings and generating custom claim and ballot reports.

The Senior Associate leads complex data aggregation projects for compilation of Schedules & SOFA, the creditor matrix and special notice lists. In addition, the Senior Associate oversees quality control and on mailings and reports. Stretto's Senior Associates average over seven years of experience.

*Director/ Managing Director* | *$175.00 - $210.00*

The Director is the primary contact for the company, counsel and other professionals and oversees and supports all aspects of the administration for the entirety of an engagement.

The Managing Director provides industry and/or project specific expertise to support complex matters. Professionals, including Stretto's executive management team will serve in this role when appropriate.

Stretto's Directors and Managing Directors have over fifteen years of experience and are typically former restructuring professionals.

*COO/SMD* | *Waived*

Our COO and Senior Managing Director oversee Stretto's Corporate Restructuring group and will provide consulting support to this matter at no charge. Our COO and Senior Managing Director collectively have over thirty-five years of experience.

### Solicitation, Balloting and Tabulation Rates

*Solicitation Associate* | *$190*

The Solicitation Associate reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. The Solicitation Associate also prepares customized reports relating to voting and other corporate events, including exchange offers and rights subscriptions. The Solicitation Associate also interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and related communications.

*Director of Securities* | *$210*

The Director of Securities leads public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of related processes.

1


## Printing Services & Noticing Services

| Service | Pricing |
|---|---|
| Printing | $0.10 (per page) |
| Customization/Envelope Printing | $0.05 (each) |
| Document Folding and Inserting | Waived |
| Postage/Overnight Delivery | Preferred Rates |
| Email Noticing | Waived |
| Fax Noticing | $0.10 (per page) |
| Envelopes | Varies by Size |
| Coordinate and Publish Legal Notices | Available on Request |

## Electronic Services

| Service | Pricing |
|---|---|
| Case Website Set-Up | Waived |
| Case Website Hosting | Waived |
| Update Case Docket and Claims Register | Waived |
| Online Claims Filing | Waived |
| Custom Software, Workflow and Review Resources | Quoted at Time of Request |
| eDiscovery | Quoted at Time of Request |

## Claims Administration & Management Expenses

| Service | Pricing |
|---|---|
| License Fee and Data Storage (Per Creditor per Month) | $0.10 |
| Database and System Access (Unlimited Users) | Waived |
| Custom Client Reports | Waived |

## Document Management Services

| Service | Pricing |
|---|---|
| Electronic Imaging (Per Imaged Page) | $0.10 |
| Virtual Data Room | Available on Request |
| CD-ROMS (Mass Document Storage, Per CD) | $5.00 |

## Call Center Support Services

| Service | Pricing |
|---|---|
| Case-Specific Voice-Mail Box for Creditors | Waived |
| Interactive Voice Response (Per Minute) | Waived |
| Monthly Maintenance Charge | Waived |
| Management of Call Center (Per Hour) | Standard Hourly Rates |

## Disbursement Services

| Service | Pricing |
|---|---|
| Check Issuance | Available on Request |
| W-9 Mailing and Maintenance of TIN Database | Standard Hourly Rates |
| Disbursements - Record to Transfer Agent | Quoted at Time of Request |

## Other Services

| Service | Pricing |
|---|---|
| Depositions/Court Reporting | Quoted at Time of Request |

18-03197-FPC7     Doc 290-2     Filed 05/07/19     Entered 05/07/19 16:31:18     Pg 11 of 11