Pamela M. Egan, WSBA No. 54736 (*pro hac vice*)
POTOMAC LAW GROUP
1300 Pennsylvania Ave. NW, Suite 700
Washington, DC 20004
Telephone: (415) 297-0132
Facsimile: (202) 318-7707
Email: pegan@potomaclaw.com

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GIGA WATT, Inc., a Washington corporation,<br><br>                Debtor. | Case No. 18-03197 FPC 11<br><br>The Honorable Frederick P. Corbit<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TRUSTEE'S MOTION FOR ORDER: (I) SETTING EXPEDITED HEARING ON REQUEST FOR AUTHORITY TO RE-OPEN THE TNT FACILITY AND TO BORROW ON INTERIM BASIS; (II) AUTHORIZING RE-OPENING OF TNT FACILITY; AND (III) APPROVING FINANCING ON INTERIM AND FINAL BASIS WITH SUPER-PRIORITY UNSECURED STATUS**<br><br>**<u>INTERIM HEARING</u>**<br>Date:      August 29, 2019<br>Time:     10:00 a.m.<br>Location: 904 West Riverside Ave.<br>               Suite 304<br>               Spokane, WA 99201 |

MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

I. JURISDICTION, VENUE, AND BASES FOR RELIEF ............................ 2

II. BANKRUPTCY PROCEEDINGS ........................................................ 3

III. BACKGROUND FACTS .................................................................... 3

    A. The Moses Lake Facility ........................................................ 3

    B. The TNT Facility .................................................................... 5

    C. Pangborn ................................................................................. 7

IV. THE PROPOSED LOAN .................................................................... 7

    A. Loan Overview ....................................................................... 7

    B. Use and Repayment ................................................................ 8

    C. Inability to Obtain Credit on an Administrative Basis ............ 8

    D. The Lender .............................................................................. 9

V. POINTS AND AUTHORITIES .......................................................... 9

    A. Expedited Consideration of the Motion for Authority to Re-Open the TNT Facility Is Necessary ............................................................. 9

    B. Interim Financing is Necessary to Avoid Immediate and Irreparable Harm ....................................................................................... 10

    C. Sound Business Judgment Supports Re-Opening the TNT Facility. 10

    D. The TNT Loan Should be Approved on a Super-Priority Basis ....... 12

        1. The TNT Loan Is an Exercise of Sound Business Judgment ........ 12

    E. The Loan Is Made in Good Faith and at Arm's Length .................... 14

VI. CONCLUSION ................................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*Bland v. Farmworker Creditors*, 308 B.R. 109 (S.D. Ga. 2003) ......................... 12

*In re Continental Air Lines, Inc.,* 780 F.2d 1223 (5th Cir.1986) ......................... 11

*In re Cooper Commons, LLC,* 430 F.3d 1215 (9th Cir. 2005) ............................ 14

*In re Ernst Home Ctr., Inc.*, 209 B.R. 974 (Bankr. W.D. Wash. 1997) ............... 11

*In re Fleetwood Enterprises, Inc.*, 427 B.R. 852 (Bankr. C.D. Cal. 2010) *aff'd,* 471 B.R. 319 (B.A.P. 9th Cir. 2012) ........................................ 12

*In re Lahijani,* 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005) ..................................... 11

*In re Lionel Corp.*, 722 F.2d 1063 (2nd Cir.1983) ............................................... 11

*In re Walter*, 83 B.R. 14 (B.A.P. 9th Cir. 1988) .................................................... 11

## Statutes

11 U.S.C. § 363(b)(1) ........................................................................................ 10

11 U.S.C. § 364(c)(1) .......................................................................................... 7

11 U.S.C. § 364(e). ............................................................................................ 14

28 U.S.C. § 1408 ................................................................................................. 2

28 U.S.C. § 1409 ................................................................................................. 2

28 U.S.C. § 154(b)(2). ......................................................................................... 2

28 U.S.C. § 157 ................................................................................................... 2

28 U.S.C. §1334 .................................................................................................. 2

## Rules

Fed.R.Bankr.P. 4001(c)(2) ................................................................................. 10

Fed.R.Bankr.P. 9006(c)(1) .................................................................................. 9

L.B.R. 2002-1(c)(2) ............................................................................................. 9

Mark D. Waldron, in his official capacity as the Chapter 11 Trustee (the "Trustee") hereby respectfully submits this memorandum of points and authorities in support of the *Trustee's Motion for Order (i) Setting Expedited Hearing on Request for Authority to Re-Open the TNT Facility and to Borrow on Interim Basis; (ii) Authorizing Re-Opening of TNT Facility; and (iii) Approving Financing on Interim and Final Basis With Super-Priority Unsecured Status* (the "Motion") pursuant to which the Trustee moves this Court for entry of interim and final orders that provide, without limitation, the following relief:

    a. Authorizing the Trustee to re-open the TNT Facility (defined below) on shortened notice;

    b. Authorizing the Trustee to obtain a $158,512 loan on an interim basis, comprised of $154,512 (the "Catch-Up Power Payment") and a $4,000 origination fee, pending a final hearing on the Motion, and (ii) the remainder of $41,488 for a total of $200,000 on a final basis (the "Loan") pursuant to the terms of the Super-Priority Unsecured Credit Agreement (the "Loan Agreement") attached to the Motion as Exhibit B;

    c. Authorizing the Trustee to use the proceeds of the Loan in accordance with the budget (the "Budget") set forth in Section 2.6 of the Loan Agreement, as such may be revised or with the Lender's consent;

    d. Authorizing the Trustee to execute and enter into the Loan Agreement and to perform such other and further act as may be required thereby; and

e. Granting a super-priority claim pursuant to section 364(c)(1) of title 11 of the United States Code (the "Bankruptcy Code"); and

f. Finding that the Loan is made in good faith.

The Trustee further requests that the Court (i) schedule a final hearing on 21-days' notice on the Trustee's request to borrow funds; (ii) approve notice procedures with respect thereto and (iii) grant such other and further relief as the Court deems appropriate.

Notice of the Motion has been given to: (i) the Office of the United States Trustee for the Eastern District of Washington; (ii) the Official Committee of Unsecured Creditors, (iii) the Public Utility District No. 1 of Douglas County, Washington (the "DC PUD"); (iii) TNT Business Complex, LLC, the landlord at the TNT Facility (defined below); (iii) Giga Plex LLC and MLDC I LLC, the landlords (the "Moses Lake Landlords") of the Moses Lake Facility; (iv) David M. Carlson and his counsel; (v) the Master Mailing List maintained by the Court, and (vi) parties that have filed with the Court requests for notice of all matters in accordance with Bankruptcy Rule 2002.

## I. JURISDICTION, VENUE, AND BASES FOR RELIEF

The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 157 and 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. § 154(b)(2). Venue is proper in this district pursuant to 28 U.S.C. § 1408 and 28 U.S.C. § 1409.

18-03197-FPC7    Doc 354    Filed 08/22/19    Entered 08/22/19 18:24:00    Pg 5 of 18

The statutory predicates for the relief requested are sections 105, 363, 364 and 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 9006 and 9014 and L.B.R. 2002-1.

## II. BANKRUPTCY PROCEEDINGS

On November 19, 2018 (the "Petition Date"), Giga Watt, Inc. (the "Debtor" or "Giga Watt") commenced this case by filing a voluntary petition for relief pursuant to sections 101 of the Bankruptcy Code.

On January 23, 2019, the Court approved the appointment of Mark D. Waldron as the Trustee pursuant to its Order Approving Appointment of Chapter 11 Trustee [Docket. No. 146].

## III. BACKGROUND FACTS

The foregoing is based on the Trustee's investigation, which is ongoing.

As described more specifically below, the Debtor operated two crypto-mining facilities prepetition: a facility in Moses Lake, Washington (the "Moses Lake Facility"); and a facility in East Wenatchee, Washington (the "TNT Facility"). At these facilities, the Debtor mined three types of cryptocurrency: Bitcoin; Ethereum; and Litecoin.

### A. The Moses Lake Facility

The Grant County Public Utility District provides power to the Moses Lake Facility pursuant to an agreement between the Grant County Public Utility District and the Moses Lake Landlords. In mid-January 2019, before the Trustee was appointed, the Grant County Public Utility District stopped providing power to the Moses Lake Facility for nonpayment of electricity.

3
MEMORANDUM OF POINTS AND AUTHORITIES

With the Court's permission, the Trustee borrowed funds from the Moses Lake Landlords to pay the Grant County Public Utility District to resume electrical service to the Moses Lake Facility and to re-commence operations at the Moses Lake Facility. On May 10, 2019, the Court approved the re-opening of a portion of the Moses Lake Facility pursuant to its *Order Granting Chapter 11 Trustee's Motion for Order Approving Agreement with Moses Lake Landlords* [ECF 300]. On May 20, 2019, the Court approved the re-opening of another portion of the Moses Lake Facility, pursuant to the *Order Granting Chapter 11 Trustee's Motion for Order Approving Moses Lake Three-Way Agreement* [ECF 309], dated May 20, 2019 (collectively, the "Moses Lake Orders"). Currently, all of Moses Lake Facility is up and running except for two pods. A third party has asserted an interest in one of the two unopened pods. The Trustee contests this party's assertion and is currently attempting to negotiate with this party.

Pursuant to the Moses Lake Orders, the Court authorized the Trustee to borrow the sum of $169,500.19 at 19.9% interest (the "Moses Lake Catch-Up Power Payment") and with respect to the Moses Lake Catch-Up Power Payment granted the Moses Lake Landlords a super-priority claim pursuant to section 364(c)(1) of the Bankruptcy Code, the same priority that the Trustee requests for the loan at issue in this Motion. As of the end of June 2019, the Trustee had fully satisfied this super-priority obligation to the Moses Lake Landlords.

The Moses Lake Orders also authorized a revenue-sharing arrangement pursuant to which the amount of payments to the Moses Lake Landlords on the Moses Lake Loan and for past due administrative expenses and other

4
MEMORANDUM OF POINTS AND AUTHORITIES

administrative expenses owed to the Moses Lake Landlords would depend on the amount of net monthly revenues.

The Moses Lake Facility generated approximately $400,000 in gross revenues in each of June and July 2019. *See Chapter 11 Trustee's Monthly Financial Report for June 2019,* filed on July 15, 2019 [ECF 342], p. 1, para. 1, and *Chapter 11 Trustee's Monthly Financial Report for July 2019*, filed on August 14, 2019 [ECF 352], p. 1, ¶ 1. All current obligations are being met on a timely basis. The Trustee has also paid approximately $200,000 in past due administrative rent to the Moses Lake Landlords. Currently, $51,000 in past due administrative rent remains due and owing to the Moses Lake Landlords. The revenue-sharing obligation will end when the past due administrative rent is paid in full.

### B. The TNT Facility

The TNT Facility has four buildings, Buildings A, B, C, and H (referred to as H1 and H2), which the Debtor leases from TNT Business Complex LLC for $11,600 per month. Pre-petition, the Debtor operated the TNT Facility and invested in tenant improvements at the TNT Facility.

Effective May 14, 2018, Giga Watt entered into a power contract with the DC PUD, the *Interconnection and Service Agreement* (the "TNT Power Contract"), pursuant to which the DC PUD agreed to provide up to 3.3MW of power to the Debtor's operations at the TNT Facility, subject to the terms of the TNT Power Contract. The DC PUD terminated power to the TNT Facility in December 2018. The DC PUD requires ten (10) days after payment of the Catch-

Up Power Payment (defined below) before it can resume power to the TNT Facility.

The DC PUD has informed the Trustee of the following additional facts: On or shortly after the Petition Date, the DC PUD sent a written notification to the Debtor pursuant to 11 U.S.C. § 366 requiring adequate assurance in the amount of $128,000 for continued service at the TNT Facility. On or about December 18 or 19, 2018, the Debtor's then-counsel requested an extension of time to provide adequate assurance. The DC PUD denied the request and the Debtor did not provide adequate assurance by December 20, 2018 as required. On or about December 20, 2018, the DC PUD disconnected the power to the TNT Facility.

On June 5, 2019, the Court entered its Order Granting Preliminary Injunction [AP Doc 70] (the "Preliminary Injunction") pursuant to which, *inter alia,* the Court ordered:

> That management and control of the Debtor's business operations and interests located at 474 Highline Drive, Buildings A, B, C, H1, H2, East Wenatchee, Washington (the "TNT Facility") are placed with Mark D. Waldon [sic], in his official capacity as the duly-authorized trustee in this bankruptcy case (the "Trustee").

*Id.,* at 2:17-21. The foregoing preliminary injunction was issued in the adversary proceeding, *Waldron v. Carlson, et al.,* pending in this case and assigned case number 19-80012. In that proceeding, the Trustee has alleged that the former CEO of the Debtor attempted, *inter alia*, to misappropriate the TNT Facility for his personal gain.

The Trustee has negotiated the TNT Loan pursuant to the authority vested in him by the Preliminary Injunction. Trial is set in the Adversary Proceeding for January 9, 2020 at 10:00 a.m.

### C. Pangborn

The Trustee has determined that there is no ability to finish the development of the Pangborn site. In June 2019, the DC PUD indicated, during an in-person meeting, that it would not reconsider its decision to terminate the Interconnection and Service Agreement, dated March 7 12, 2017, between the DC PUD and the Debtor with respect to the Debtor's site at Pangborn. That same month, the Trustee rejected the lease of the Pangborn site.

## IV. THE PROPOSED LOAN

### A. Loan Overview

Pursuant to Section 364(c)(1) of the Bankruptcy Code, the Trustee seeks to enter into the Loan Agreement as an administrative expense, having priority over other administrative expenses. 11 U.S.C. § 364(c)(1). The Loan is unsecured.

Pursuant to the Loan Agreement, the Estate will pay 15% annual interest with no compounding[1] on the principal amount of $200,000.[2] The Lender is charging an origination fee of $4,000.[3]

---

[1] *See* Motion, Exh. B, Loan Agreement, § 2.3.
[2] *See* Motion, Exh. B, Loan Agreement, § 2.1.
[3] *See* Motion, Exh. B, Loan Agreement, § 2.2.

### B. Use and Repayment

The Trustee will use the Loan proceeds to (i) pay the Catch-Up Power Payment in the amount of $154,512 that the DC PUD requires before it will resume electrical service to the TNT Facility; (ii) use a reserve, in the amount of $41,488, for use by the Trustee for ordinary course expenses incurred in operating the TNT Facility and (iii) pay the Lender's origination fee of $4,000.[4]

### C. Inability to Obtain Credit on an Administrative Basis

The Trustee and counsel contacted not less than seven (7) potential lenders to obtain this Loan. Based on these efforts and my significant experience as a bankruptcy trustee, the Trustee has concluded that the Debtor's estate (the "Estate") could not obtain financing on an administrative basis pursuant to section 503(b)(1) of the Bankruptcy Code.

At least four factors have made it impossible to borrow on an administrative basis. First, the Trustee does not have basic pre-petition financial statements, which prevents lenders from conducting typical due diligence. Second, the TNT Facility is subject to litigation, which increases risk. Third, the amount to be borrowed is relatively small, which increases relative cost. Fourth, crypto-currency's value is volatile, and its long-term value is uncertain. For these reasons and based on his experience, the Trustee has concluded that he is not able to obtain financing without offering a super-priority basis.

---

[4] *See* Motion, Exh. B, Loan Agreement, Schedule 2.6.

### D. The Lender

The Lender is a well-respected, experienced bankruptcy lawyer, based in San Francisco, CA. She graduated from Yale Law School.

The Lender and Trustee's counsel have been involved in multiple other bankruptcy cases, including the bankruptcy case of Empyrean Towers, LLC, Case No. 15-42341, filed in the U.S. Bankruptcy Court for the Northern District of California, Oakland Division. The Lender represented the Chapter 11 Trustee. Trustee's legal counsel represented the Official Committee of Unsecured Creditors in that case.

## V. POINTS AND AUTHORITIES

As an initial matter, the Trustee requests that the Court set a hearing on six (6) days' notice (even when service is sent by U.S. Mail) to consider the Trustee's request to re-open the TNT Facility and to consider the Trustee's request to borrow the sum of $158,512 on an interim basis.

### A. Expedited Consideration of the Motion for Authority to Re-Open the TNT Facility Is Necessary

Rule 9006(c) of the Federal Rules of Bankruptcy Procedure permits the court to set a hearing on an expedited basis "for cause" and in the court's discretion. Fed.R.Bankr.P. 9006(c)(1). *See also* L.B.R. 2002-1(c)(2) (shortened notice allowed when necessary).

Cause exists to hear the Trustee's request to re-open the TNT Facility on shortened notice. The monthly rent for the TNT Facility is $11,600. The Trustee met the current rent obligations at the TNT Facility. Yet, the TNT Facility is

currently generating no revenue. The Trustee is informed that it will take approximately one month after electricity resumes for the mining operation to be at a reasonable capacity with optimization to follow thereafter. Considering the accruing monthly rent and the lag time in becoming fully operational, the Trustee should be allowed to re-open the TNT Facility as soon as is possible.

### B. Interim Financing is Necessary to Avoid Immediate and Irreparable Harm

Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure permits a hearing on less than fourteen days' notice and allows borrowing pending a final hearing "to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed.R.Bankr.P. 4001(c)(2).

Every day that the TNT Facility remains closed is a day of lost revenues. This loss of revenue is irreparable and immediate. Furthermore, the DC PUD requires ten days after payment to resume electricity to the TNT Facility. The sooner the Catch-Up Power Payment can be made, the sooner that clock can begin to run. Further, the Lender will not advance the Catch-Up Power Payment without payment of the origination fee. Therefore, it is also necessary to allow the Trustee to borrow the origination fee on an interim basis, pending a final hearing.

### C. Sound Business Judgment Supports Re-Opening the TNT Facility

After notice and hearing, the Trustee may "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In this case, re-opening the TNT Facility will create an ordinary course of business.

A transaction outside of the ordinary course "must be based on [the trustee's] reasonable business judgment." *In re Ernst Home Ctr., Inc.*, 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997), citing *In re Continental Air Lines, Inc.,* 780 F.2d 1223, 1226 (5th Cir.1986). The Trustee must also establish "some articulated business justification" for the transaction. *Id.*, quoting *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2nd Cir.1983); *In re Walter*, 83 B.R. 14 (B.A.P. 9th Cir. 1988). *See also In re Lahijani,* 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005) ("Ordinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection.").

Re-opening the TNT Facility is a sound business decision. As set forth in Schedule 2.6 of the Loan Agreement,[5] the Trustee projects, based on his analysis and on discussions with consultants whom he has employed with Court approval, that after the TNT Facility becomes fully operational, the TNT Facility will generate net monthly revenues of $48,470.00 during the loan repayment period, which will not exceed 12 months. After the Loan is repaid, projected net monthly revenues are $96,940. In addition to generating revenue for the benefit of creditors, re-opening the TNT Facility will allow the Trustee to put at least two additional technicians back to work.

The Trustee has been paying the administrative rent for the TNT Facility. Re-opening the TNT Facility will enable the Estate to recoup this cost. It will also

---

[5] *See* Motion, Exhibit B, Loan Agreement, Schedule 2.6.

11
MEMORANDUM OF POINTS AND AUTHORITIES
18-03197-FPC7   Doc 354   Filed 08/22/19   Entered 08/22/19 18:24:00   Pg 14 of 18

enable the Estate to benefit from the investment in tenant improvements that the Debtor made in the TNT Facility pre-petition.

Accordingly, the re-opening of the TNT Facility is a prudent decision.

**D.     The TNT Loan Should be Approved on a Super-Priority Basis**

Under section 364(c), the court may authorize the Trustee to obtain credit or incur post-petition debt entitled to a "super-priority" claim over all administrative expense claims specified in § 503(b) (administrative expenses) or § 507(b) (other super-priority administrative claims for failed adequate protection). 11 U.S.C. § 364(c)(1). *See also Bland v. Farmworker Creditors,* 308 B.R. 109, 114 (S.D. Ga. 2003) ("§ 364 provides incentives to induce lenders to undertake risks of post-petition financing"). *See also In re Fleetwood Enterprises, Inc.*, 427 B.R. 852 (Bankr. C.D. Cal. 2010) *aff'd,* 471 B.R. 319 (B.A.P. 9th Cir. 2012):

> The language of § 364(c)(1) is clear enough—a debtor's authority to obtain unsecured credit under that subsection is expressly premised on its inability to obtain credit under § 503(b)(1), i.e. as an allowable administrative expense under § 364(b). There is no other legislative requirement under the statute.

*Id.,* 427 B.R. at 858.

As set forth above, the Trustee could not obtain financing on an administrative basis. Therefore, the Loan is entitled to a "super-priority" basis.

        1.     <u>The TNT Loan Is an Exercise of Sound Business Judgment</u>

In approving post-petition super-priority financing, courts also look to whether the post-petition financing is a sound and reasonable business decision. *See generally, Bland*, 308 B.R. at 114. The Trustee has conferred with Lauren

Miehe and Doug Pratt, two cryptocurrency experts who have been retained with the Court's permission to help the Trustee manage the Debtor's business operations. Based on those discussions and the Trustee's review of the facts and circumstances, the Trustee has determined that the Loan is a prudent and sound business decision.

First, the Loan is necessary. Although the Trustee has made significant progress at the Moses Lake Facility, the Estate does not have $154,512 available to pay the DC PUD to re-open the TNT Facility unless he borrows the funds. Second, as set forth above, the Loan will allow the Estate to begin generating additional revenues for the benefit of creditors. This will allow the Estate to recoup for the benefit of creditors the administrative rent that he has paid post-petition and the tenant improvement investments that the Debtor made pre-petition.

Third, the terms are reasonable and beneficial. The Lender has agreed to give the Estate a two-month grace period before payments have to be made on the Loan. Thereafter, the Estate will repay the Loan every month in whichever amount is greater: (1) $25,000 or (2) 50% of net monthly revenues generated from the TNT Facility. Net monthly revenues are defined in the Loan Agreement as monthly gross revenues less monthly electricity, monthly rent and monthly labor costs for the TNT Facility operations.

The revenue-sharing arrangement intends to ensure that the Estate will be able to comply with its repayment obligations if cryptocurrency valuations decrease, but also able to aggressively pay down the Loan balance if

13
MEMORANDUM OF POINTS AND AUTHORITIES

cryptocurrency valuations increase. Further, there is no prepayment penalty. The Lender has agreed to forego attorney's fees incurred in negotiating and drafting the Loan and otherwise obtaining its approval.

Accordingly, re-opening the TNT Facility on the terms set forth in the Loan Agreement is an exercise of sound business judgment.

### E. The Loan Is Made in Good Faith and at Arm's Length

The Trustee requests a finding that the Loan is made in good faith. *See In re Cooper Commons, LLC,* 430 F.3d 1215, 1220 (9th Cir. 2005) (discussing good faith loan); 11 U.S.C. § 364(e).

The Lender is an experienced, highly respected bankruptcy practitioner. The Trustee's counsel and the Lender have been involved in various other bankruptcy cases over the past two decades, most recently the Empyrean Towers case that was pending in the U.S. Bankruptcy Court of the Northern District of California.

The Trustee has disclosed to the Lender that an adversary proceeding with respect to the TNT Facility is pending and that the Trustee is operating under the authority vested in him by the Preliminary Injunction.

Accordingly, the Loan is a good faith transaction made at arm's length, entitled to the protections of section 364(e) of the Bankruptcy Code.

[*This memorandum continues on the next page.*]

**VI. CONCLUSION**

WHEREFORE, the Trustee respectfully requests that the Court grant the Motion.

Dated: August 22, 2019      POTOMAC LAW GROUP

By:    */s/ Pamela M. Egan*
        Pamela M. Egan (WSBA No. 54736)

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*