Pamela M. Egan, WSBA No. 54736 (*pro hac vice*)
POTOMAC LAW GROUP
1300 Pennsylvania Ave. NW, Suite 700
Washington, DC 20004
Telephone: (415) 297-0132
Facsimile: (202) 318 7707
Email: pegan@potomaclaw.com

Attorneys for Mark D. Waldron, Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GIGA WATT, Inc., a Washington corporation,<br><br>          Debtor. | Case No. 18-03197 FPC 11<br><br>The Honorable Frederick P. Corbit<br><br>***RESUBMISSION OF EXHIBIT B*** TO TRUSTEE'S MOTION FOR ORDER: (I) SETTING EXPEDITED HEARING ON REQUEST FOR AUTHORITY TO RE-OPEN THE TNT FACILITY AND BORROW ON INTERIM BASIS; (II) AUTHORIZING RE-OPENING OF TNT FACILITY; AND (III) APPROVING FINANCING ON INTERIM AND FINAL BASIS WITH SUPER-PRIORITY UNSECURED STATUS<br><br>**INTERIM HEARING**<br>Date:     August 29, 2019<br>Time:    10:00 a.m.<br>Judge:   Hon. Frederick P. Corbit<br>Location: 904 West Riverside Ave.,<br>           Suite 304<br>           Spokane, WA 99201 |

RESUBMISSION OF EXHIBIT B TO TRUSTEE'S MOTION TO RE-OPEN TNT FACILITY AND OBTAIN SUPER-PRIORITY CREDIT -- Page 1

The Trustee hereby re-submits Exhibit B to the *Motion for Order: (i) Setting Expedited Hearing on Request for Authority to Re-Open the TNT Facility and Borrow on Interim Basis; (ii) Authorizing Re-Opening of TNF Facility; and (iii) Approving Financing on Interim and Final Basis With Super-Priority Unsecured Status*, filed on August 22, 2019 [ECF No. 353] (the "Motion"). Exhibit B is the Super-Priority Unsecured Credit Agreement (the "Loan Agreement") submitted herewith.

Due to a clerical error, the Loan Agreement was not submitted with Exhibit B to the Motion, as intended. This Resubmission and the annexed Loan Agreement will be served with the Motion, the proposed Order and notice thereof.

Dated: August 22, 2019         POTOMAC LAW GROUP

By:  */s/ Pamela M. Egan*
Pamela M. Egan (WSBA No. 54736)

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*

RESUBMISSION OF EXHIBIT B TO TRUSTEE'S MOTION TO RE-OPEN TNT FACILITY AND OBTAIN SUPER-PRIORITY CREDIT -- Page 2

# **EXHIBIT B**
*Proposed Loan Agreement*

# SUPER-PRIORITY UNSECURED CREDIT AGREEMENT

This Super-Priority Unsecured Credit Agreement, dated as of August [__], 2019, is entered into by the Estate of Giga Watt, Inc., represented by Mark D. Waldon, the duly-appointed Trustee in the bankruptcy case of Giga Watt, Inc., pending in the U.S. Bankruptcy Court for the Eastern District of Washington and assigned case no. 18-03197, as borrower, on the one hand, and Randy Michelson, as lender, on the other hand.

## RECITALS

**WHEREAS**, capitalized terms used in these Recitals shall have the meanings ascribed to them in Section 1 hereof.

**WHEREAS**, on November 19, 2018, the Debtor commenced the Bankruptcy Case.

**WHEREAS**, the Trustee was appointed pursuant to that *Order Approving Appointment of Chapter 11 Trustee*, dated January 23, 2019 [ECF No.146].

**WHEREAS**, the Parties wish to enter into a loan agreement that will enable the Trustee to re-open the TNT Facility.

**NOW, THEREFORE**, in consideration of the premises and the agreements, provisions and covenants herein contained, the parties hereto agree as follows:

## SECTION 1 DEFINITIONS

**1.1** "**Agreement**" means this *Super-Priority Unsecured Credit Agreement*, dated as of August [__], 2019, between the Estate of Giga Watt, Inc. and Randy Michelson.

**1.2** "**Bankruptcy Case**" means that bankruptcy proceeding commenced by Giga Watt, Inc., in the Bankruptcy Court on November 19, 2018, seeking an order of relief pursuant to chapter 11 of the Bankruptcy Code, and assigned case number 18-03197.

**1.3** "**Bankruptcy Code**" means sections 101 *et seq.* of title 11 of the United States Code.

**1.4** "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of Washington.

**1.5** "**Catch-Up Power Payment**" means the payment that the Trustee must pay to the DC PUD to cause the resumption of electrical service to the TNT Facility and specifically means the sum of (i) $53,820 in arrearages owed to the DC PUD by the Debtor, (ii) $1,767 for a connection fee and (iii) $98,925 in deposits that the DC PUD requires before it will resume electrical service to the TNT Facility. The Catch-Up Power Payment totals $154,512.

**1.6** "**Debtor**" means Giga Watt, Inc.

**1.7** "**Default Rate**" means TWENTY ONE PERCENT (21%) per year, no compounding.

**1.8** "**Estate**" means the estate of Giga Watt, Inc. in the Bankruptcy Case pursuant to the Bankruptcy Code.

**1.9** "**Event of Default**" means any of the events specified in Section 9 hereof which constitutes an Event of Default.

**1.10** "**DC PUD**" means the Public Utility District No. 1 of Douglas County, Washington.

**1.11** "**Final Financing Order**" means a final order entered or approved by the Bankruptcy Court authorizing the Loan in substantially the form of the Interim Financing Order, with only such modifications in form and substance that are satisfactory to the Lender, as the same may be amended, supplemented, or modified from time to time after entry thereof with the written consent of the Lender, in her sole discretion.

**1.12** "**Interim Financing Order**" means an interim order entered or approved by the Bankruptcy Court in the form as substantially set forth in Exhibit A hereto, approving the Agreement, which Interim Financing Order shall, among other things (a) have been entered on such prior notice to such parties as may be satisfactory to the Lender in her sole discretion, (b) authorize the extensions of credit in respect of the Loan in the amounts and on the terms set forth herein, unless otherwise agreed to in writing by Lender, and (c) grant to the Super-Priority Claim the status referred to herein.

**1.13** "**Lender**" means Randy Michelson.

**1.14** "**Loan**" means the funds provided to the Estate by the Lender pursuant to the terms of this Agreement.

**1.15** "**Moses Lake Landlords**" means Giga Plex LLC and MLDC 1 LLC, collectively.

**1.16** "**Moses Lake Loan**" means the loan from the Moses Lake Landlords to the Estate pursuant to the Moses Lake Orders.

**1.17** "**Moses Lake Orders**" means the *Order Granting Chapter 11 Trustee's Motion for Order Approving Agreement with Moses Lake Landlords* [ECF 300], dated May 10, 2019 and the *Order Granting Chapter 11 Trustee's Motion for Order Approving Moses Lake Three-Way Agreement* [ECF 309], dated May 20, 2019.

**1.18** "**Monthly Net Revenues**" means monthly revenues generated solely by the Trustee's operation of the TNT Facility LESS the (i) cost of electricity provided to the TNT Facility in the applicable month as evidenced by the monthly invoice from the DC PUD, (ii) the monthly rent for the TNT Facility, and (iii) the monthly labor costs, all as set forth in Schedule 2.6, attached hereto.

**1.19** "**Orders**" means the Interim Financing Order and the Final Financing Order.

**1.20** "**Super-Priority Claim**" means the allowed claim that the Lender shall hold upon funding of the Loan, pursuant to this Agreement, and that shall have priority over any or all administrative expenses of the kind specified in section 503(b), 507(a)(1) and 507(b) of the Bankruptcy Code as provided by section 364(c)(1) of the Bankruptcy Code.

**1.21** "**TNT Facility**" means Building A, B, C and H located at 474 Highline Drive, East Wenatchee, WA.

**1.22** "**Trustee**" means Mark D. Waldron, solely in his capacity as the Trustee pursuant to the *Order Approving Appointment of Chapter 11 Trustee*, dated January 23, 2019 [ECF 146] in the Bankruptcy Case and not in any personal capacity.

### SECTION 2 AMOUNT AND TERMS OF CREDIT

**2.1** <u>Loan Amount</u>. Subject to the terms and conditions hereof and upon entry of the Interim Financing Order, in substantially the form attached hereto as Exhibit A, the Lender agrees to make available to the Estate the amount of the Catch Up Power Payment, or such other amount as approved by the Bankruptcy Court in the Bankruptcy Case and upon entry of the Final Financing Order, and the remaining balance or such other amount as approved by the Bankruptcy Court in the Bankruptcy Case; provided that the aggregate disbursements under this Agreement shall not exceed $200,000, unless otherwise agreed to between the Trustee and the Lender and subject to court approval in the Bankruptcy Case.

3

**2.2** <u>Origination Fee</u>. Upon funding, the Trustee shall pay to Lender an origination fee of two percent (2%), which is $4000.

**2.3** <u>Interest</u>. The Trustee shall pay interest to the Lender on the outstanding amount of the Loan, at fifteen percentage points (15%) per year with no compounding. Interest shall begin to accrue when advanced by Lender.

    2.3.1  All computations of interest shall be made by Lender on the basis of a 365-day year.

    2.3.2  In the case of a default by the Estate (as defined in Section 9.1) and at the election of Lender, confirmed by written notice from Lender to the Trustee, the interest rate applicable to the Loan shall increase to 21% per year without compounding, and all outstanding obligations under the Loan shall bear interest at the Default Rate. The Default Rate shall accrue from the initial date of such Event of Default until that Event of Default is cured or waived and shall be payable upon demand.

**2.4** <u>Repayment and Revenue Sharing</u>. In consideration for the Loan, the Trustee agrees to pay to the Lender on a monthly basis the greater of $25,000 or FIFTY PERCENT (50%) of Monthly Net Revenues until the full amount of the Loan, including principal and interest, is paid in full. For the avoidance of doubt, Monthly Net Revenues shall be calculated as monthly revenues generated by the Trustee's operation of the TNT Facility LESS the (i) cost of electricity provided to the TNT Facility in the applicable month as evidenced by the monthly invoice from the DC PUD, (ii) the monthly rent for the TNT Facility, and (iii) the monthly labor costs for the TNT Facility, all as set forth in the Budget contained in Schedule 2.6 to this Agreement.

**2.5** <u>Application of Payments</u>. Payments made by the Trustee shall be applied as follows: first, to attorneys' fees and costs, if any, then due and payable on the Loan; second to interest then due and payable on the Loan; and third, to the principal outstanding balance of the Loan until the same has been paid in full.

**2.6** <u>Use of Proceeds</u>. The Trustee will not directly or indirectly use the proceeds of the Loan for any purpose other than to initially pay to the DC PUD the Catch-Up Power Payment, as defined in Section 1.4, and, as to the balance of the loan proceeds, such proceeds may be used by the Trustee, in his sole discretion, for other expenses for the operation of the TNT Facility.

## SECTION 3 TERM

**3.1** <u>Date of Payment</u>. The first payment to Lender on the Loan will be due on the first day of the month after the first two full months after receipt by the

4

Trustee of funds. By way of example, if the Lender funds on August 25, 2019, the first payment will be due on November 1, 2019.

**3.2** Paid in Full. Once the Trustee has paid in full the Loan, then the Trustee shall no longer be obligated under this Agreement to make any payment to Lender.

**3.3** Maturity Date. Unless terminated sooner by reason of acceleration or otherwise, payment of the Loan shall be due upon the earliest of (i) twelve months after funding, (ii) the sale of all or substantially all of the Debtor's assets at the TNT Facility, (iii) the confirmation and consummation of a plan of reorganization or similar arrangement or (iv) the date upon which repayment is required due to the occurrence of an Event of Default.

## SECTION 4 CONDITIONS PRECEDENT

**4.1** Conditions to the Loan. The Lender shall not be obligated to make any Loan, or to take, fulfill, or perform any other action hereunder, until the following conditions have been satisfied or provided for in a manner reasonably satisfactory to Lender, or waived in writing by Lender:

- 4.1.1 Credit Agreement. This Agreement or counterparts hereof shall have been duly executed by, and delivered to all parties hereto.

- 4.1.2 Orders. The entry by the Bankruptcy Court of the Interim Financing Order, substantially in the form attached hereto as Exhibit A, and, if such Order is the subject of any pending appeal, no performance of any obligation of any party hereto shall have been stayed pending such appeal. Before disbursement of the full borrowing limit under this Agreement, entry by the Bankruptcy Court of a final and nonappealable Final Financing Order.

## SECTION 5 PRIORITY

**5.1** Unsecured, Super Priority Status. Upon entry of the Interim Financing Order, and disbursements of loan proceeds pursuant to the Interim Financing Order, and upon entry of the Final Financing Order and disbursements of loan proceeds pursuant thereto, the provisions of the Agreement and the Orders are effective to create in favor of the Lender, a claim that shall have priority over any or all administrative expenses of the kind specified in section 503(b), 507(a)(1) and 507(b) of the Bankruptcy Code as provided by section 364(c)(1) of the Bankruptcy Code. Notwithstanding any provision in this Agreement to the contrary, the Super-Priority Claim shall be junior to any unpaid fees pursuant to 28 U.S.C. § 1930 and any fees payable to the Clerk of the Bankruptcy Court.

## SECTION 6 REPRESENTATIONS AND WARRANTIES

To induce Lender to make the Loan, the Trustee makes the following representations and warranties to Lender, each and all of which shall survive the execution and delivery of this Agreement.

**6.1** <u>Authority</u>. The Trustee is duly-appointed by the U.S. Trustee's Office pursuant to a valid Order of the Bankruptcy Court and has the requisite power and authority and the legal right to own, pledge, mortgage or otherwise bind the Debtor and encumber the property of the estate in the Bankruptcy Case pursuant to the terms of this Agreement.

**6.2** <u>Government Regulation</u>. The Trustee is not aware and to the best of the Trustee's knowledge, the Debtor is not currently subject to any federal or state statute that restricts or limits its ability to incur indebtedness or to perform its obligations hereunder.

**6.3** <u>Projections and Budget</u>. The projections and any forward-looking statements, estimates, and pro forma financial information contained in Schedule 2.6 of this Agreement, or any other document, certificate, or statement furnished to the Lender are based upon good faith estimates and assumptions believed by the Trustee to be reasonable at the time made, it being recognized by the Lender that the projections and any such forward-looking statements, estimates, and pro forma financial information are not to be viewed as facts and are subject to material contingencies and assumptions, many of which are beyond the control of the Trustee, and that actual results during the period or periods covered by the projections and any such forward-looking statements, estimates, and pro forma financial information may differ materially from the projected results.

**6.4** <u>Other Super-Priority Claims</u>. Pursuant to the Moses Lake Orders, the Moses Lake Loan was granted the super-priority status provided for in section 364(c)(1) of the Bankruptcy Code. As of the end of June 2019, the bankruptcy estate has fully satisfied the super-priority obligation to the Moses Lake Landlords.

## SECTION 7 AFFIRMATIVE COVENANTS

**7.1** <u>Insurance</u>. The Trustee shall, at the sole cost and expense of the Estate, maintain general liability coverage in the amount of $2 million. The Trustee shall deliver to Lender, in form and substance reasonably satisfactory to Lender, endorsements to the foregoing general liability insurance.

**7.2** Books and Records. The Trustee shall keep adequate books and records with respect to the Debtor's business activities in which proper entries, reflecting all financial transactions.

**7.3** Reporting. The Trustee shall timely deliver to the Lender proof of monthly revenues, electrical bills and labor costs, relating to the TNT Facility.

**7.4** Bankruptcy Court. The Lender and the Lender's counsel shall receive all material pleadings, motions and other documents filed on behalf of the Trustee with the Bankruptcy Court.

**7.5** Further Assurances. The Trustee, at the expense of the bankruptcy estate and upon the reasonable request of Lender, will duly execute and deliver, or cause to be duly executed and delivered, to Lender such further instruments and do and cause to be done such further acts as may be necessary or proper in the reasonable opinion of Lender to carry out more effectively the provisions and purposes of this Agreement.

**7.6** Compliance with Budget. The Trustee shall use the Loan proceeds as set forth in the Budget, which is set forth in Schedule 2.6 of this Agreement. The Trustee shall maintain records of all expenditures and upon the written request of Lender shall submit copies of the same to the Lender.

## SECTION 8 NEGATIVE COVENANTS

The Trustee agrees that from and after the date hereof until the Loan is paid in full, the Trustee shall not act as follows:

**8.1** No Liens. The Trustee agrees not to create, incur, assume or permit to exist any lien on or with respect to any property of the Estate (whether now owned or hereafter acquired); provided, however, that liens that are currently enforceable against property of the Estate are excluded from the negative covenants set forth herein and the continuing existence of such currently enforceable liens shall not constitute a breach of this negative covenant or any other provision of this Agreement.

**8.2** *Pari Passu* or Senior. The Trustee shall not incur, create, assume, suffer to exist or permit any other super-priority administrative claim which is *pari passu* with or senior to the Super-Priority Claim.

**8.3** Modification to Orders. The Trustee shall not seek or consent to any modification, stay, vacation or amendment to the Orders.

**8.4** Acts Prohibited. The Trustee shall not seek or consent to any order seeking authority to take any action that is prohibited by the terms of this

18-03197-FPC7    Doc 357    Filed 08/22/19    Entered 08/22/19 19:36:09    Pg 10 of 18

Agreement or refrain from taking any action that is required to be taken by the terms of this Agreement.

## SECTION 9 EVENTS OF DEFAULT

**9.1** <u>Events of Default</u>. Each of the following events or conditions shall constitute an Event of Default:

9.1.1 The Trustee fails to make any payment of principal or interest in respect of the Loan when due and payable.

9.1.2 Any representation or warranty herein or in any written statement, report, financial statement or certificate made or delivered to Lender is untrue or incorrect in any material respect as of the date when made or deemed made.

9.1.3 Any material non-compliance by the Trustee with any of the terms or provisions of the Interim Financing Order or the Final Financing Order, including, without limitation, failure to use the Loan proceeds as set forth in the Budget.

9.1.4 Failure on the part of the Trustee to observe or perform duly in any material respect any other covenants or agreements on the part of the Trustee in this Agreement and such failure continues unremedied for a period of 10 days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Trustee by Lender (in accordance with Section 11.1); provided, however, that if the same is reasonably capable of being cured within 30 days, but cannot be reasonably cured within 10 days, the Trustee may cure such Event of Default by commencing in good faith to cure the default promptly after the Trustee's receipt of such written notice and prosecuting the cure of such default to completion with diligence and continuity within a reasonable time thereafter, but in no event later than 30 days after the Trustee's receipt of such written notice.

9.1.5 The Final Financing Order shall not have been entered by the Bankruptcy Court within sixty (60) days after the entry of the Interim Financing Order, or such later date as the Lender may reasonably agree.

8

- 9.1.6 The entry of an order in the Bankruptcy Case granting any other claim on a priority basis that is equal or superior to that granted to the Lender herein, without the written consent of the Lender.

- 9.1.7 The Orders are amended, stayed, vacated, or modified without the Lender's written consent.

- 9.1.8 Filing of any challenge by the Trustee to the validity, priority, or extent of the Super-Priority Claim, unless based upon the fault or actions of the Lender.

**9.2** <u>Remedies</u>.

- 9.2.1 If any Event of Default has occurred and is continuing, Lender may increase the rate of interest applicable to the Loan to the Default Rate.

- 9.2.2 Subject to the Orders and the Bankruptcy Code, if any Event of Default has occurred and is continuing, Lender may declare all or any portion of the Loan to be forthwith due and payable or exercise any rights and remedies provided to Lender under this Agreement or at law or equity, including all remedies provided under the Bankruptcy Code.

## SECTION 10 SUCCESSORS AND ASSIGNS

**10.1** <u>Successors and Assigns</u>. This Agreement shall be binding on and shall inure to the benefit of the Trustee and Lender and their respective successors and assigns (including, in the case of Debtor, the reorganized debtor), except as otherwise provided herein or therein. The Trustee may not assign, transfer, hypothecate or otherwise convey any rights, benefits, obligations or duties hereunder without the prior express written consent of Lender. Any such purported assignment, transfer, hypothecation or other conveyance by the Trustee without the prior express written consent of Lender shall be void. The terms and provisions of this Agreement are for the purpose of defining the relative rights and obligations of the Trustee and Lender with respect to the transactions contemplated hereby and no Person shall be a third-party beneficiary of any of the terms and provisions of this Agreement.

[*The Agreement continues on the next page.*]

# SECTION 11 MISCELLANEOUS

**11.1** Notices.

11.1.1 All notices to the Lender shall be sent to:

Randy Michelson, Esq.
Michelson Law Group
220 Montgomery Street, Suite 2100
San Francisco, CA 94104

And also, by email to:

randy.michelson@michelsonlawgroup.com

11.1.2 All notices to the Trustee shall be sent to:

Mark D. Waldron, Trustee
Law Offices of Mark D. Waldron, PLLC
6711 Regents Blvd. W., Suite B
Tacoma, WA 98466

And also, by email to:

mark@mwaldronlaw.com
diana@mwaldronlaw.com

With a copy to:

Pamela M. Egan, Esq.
Potomac Law Group
1300 Pennsylvania Avenue NW, Suite 700
Washington, DC 200014

And also, by email to:

pegan@potomaclaw.com

**11.2** Complete Agreement. This Agreement constitutes the complete agreement between the parties with respect to the subject matter thereof.

**11.3** Amendments and Waivers. Except for actions expressly permitted to be taken by Lender, no amendment, modification, termination or waiver of any provision of this Agreement, or any consent to any departure by the Trustee

therefrom, shall in any event be effective unless the same shall be in writing and signed by Lender and Debtor.

**11.4** <u>No Waiver</u>. Lender's failure, at any time or times, to require strict performance by the Trustee of any provision of this Agreement shall not waive, affect or diminish any right of Lender thereafter to demand strict compliance and performance herewith or therewith. Any suspension or waiver of an Event of Default shall not suspend, waive or affect any other Event of Default whether the same is prior or subsequent thereto and whether the same or of a different type. Subject to the provisions of Section 9.1.4, none of the undertakings, agreements, warranties, covenants and representations of Debtor contained in this Agreement and no Event of Default by the Trustee shall be deemed to have been suspended or waived by Lender, unless such waiver or suspension is by an instrument in writing signed by an officer of or other authorized employee of Lender and directed to the Trustee specifying such suspension or waiver.

**11.5** <u>Remedies</u>. Lender's rights and remedies under this Agreement shall be cumulative and nonexclusive of any other rights and remedies that Lender may have, by operation of law or otherwise.

**11.6** <u>Severability</u>. Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Agreement.

**11.7** <u>Governing Law</u>. Except as otherwise expressly provided in this agreement, in all respects, including all matters of construction, validity and performance, this agreement and the obligations shall be governed by and construed and enforced in accordance with the internal laws of the State of Washington applicable to contracts made and performed in that state and any applicable laws of the United States of America. The Trustee and the Lender hereby consent and agree that the Bankruptcy Court shall have exclusive jurisdiction to hear and determine any claims or disputes pertaining to this Agreement or to any matter arising out of or relating to this Agreement.

**11.8** <u>Section Titles</u>. The Section titles contained in this Agreement are and shall be without substantive meaning or content of any kind whatsoever and are not a part of the agreement between the parties hereto.

**11.9** <u>Counterparts</u>. This Agreement may be executed in any number of separate counterparts, each of which shall collectively and separately constitute one agreement.

18-03197-FPC7    Doc 357    Filed 08/22/19    Entered 08/22/19 19:36:09    Pg 14 of 18

**11.10** <u>USA PATRIOT Act Notice</u>. The Lender hereby notifies the Trustee that pursuant to the requirements of the USA PATRIOT Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) (the "Act"), she is required to obtain, verify and record information that identifies the Trustee and the Debtor, which information includes the name and address of the Trustee and the Debtor and other information that will allow the Lender, as applicable, to identify the Trustee and the Debtor in accordance with the Act. Following a request by the Lender, the Trustee shall promptly provide all documentation and other information that the Lender requests in order to comply with her ongoing obligations under applicable "know your customer" and anti-money laundering rules and regulations, including the Act.

**11.11** <u>Advice of Counsel</u>. Each of the parties represents to the other party hereto that he or she has discussed this Agreement with counsel of his or her own choosing.

**11.12** <u>No Strict Construction</u>. The parties hereto have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties hereto and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Agreement.

**11.13** <u>Attorneys' Fees and Costs</u>. The Parties will each bear the costs, including without limitation all attorneys' fees, of negotiating the Agreement. In the event of a dispute between the Parties regarding this Agreement, including without limitation any attempt to enforce any remedies of Lender under this Agreement or to work out or restructure the Loan, the prevailing party in such dispute shall be entitled to reasonable attorneys' fees and costs incurred.

[*Signature page follows on the next page.*]

<007>

18-03197-FPC7    Doc 357    Filed 08/22/19    Entered 08/22/19 19:36:09    Pg 15 of 18

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the dates set forth below.

August __, 2019     **LENDER**

_____
Randy Michelson

August __, 2019     **ESTATE OF GIGA WATT, INC.**

By: _____
Mark D. Waldron, *in his capacity as Trustee of the estate of Giga Watt, Inc. and not in any personal capacity*

13

Giga Watt, Inc.                      Schedule 2.6                      Page 1 of 2
Case No. 18-03197         Use of Loan Proceeds

| Item | Interim Hearing | Final Hearing | Aug. 2019 | Sept. 2019 | Oct. 2019 |
|---|---|---|---|---|---|
| Partial Funding on Interim Order | $158,512 | | | | |
| Origination Fee | ($4,000) | | | | |
| Funding on Final Order | | $41,488 | | | |
| Catch Up Power Payment | | | ($154,512) | | |
| Operating Expenses | | | | ($41,488) | |
| Net to Estate | $154,512 | $41,488 | ($154,512) | ($41,488) | $0.00 |

| MONTHLY SUMMARY LOAN REPAYMENT PERIOD | |
|---|---|
| Category | Amount |
| Gross Revenues | $ 169,812.00 |
| Electricity | $ (49,912.00) |
| Rent | $ (11,600.00) |
| Labor | $ (11,360.00) |
| Subtotal | $ 96,940.00 |
| 50% Paid to Lender | $ (48,470.00) |
| Total | $ 48,470.00 |

| MONTHLY SUMMARY AFTER LOAN PAID | |
|---|---|
| Category | Amount |
| Gross Revenues | $ 169,812.00 |
| Electricity | $ (49,912.00) |
| Rent | $ (11,600.00) |
| Labor | $ (11,360.00) |
| Total | $ 96,940.00 |

| Mthly Estimated Electr. Costs* | |
|---|---|
| TNT Building | Amount |
| Bldg A | $ 17,801.00 |
| Bldg B | $ 5,767.00 |
| Bldg C | n/a |
| Bldg H1 | $ 12,912.00 |
| Bldg H2 | $ 13,432.00 |
| Total | $ 49,912.00 |

*Based on monthly invoices and summaries provided by DC PUD.

| One-Time Catch-Up Power Pmt. | |
|---|---|
| Category | Amount |
| Arrearages | $ 53,820.00 |
| Deposit | $ 98,925.00 |
| Connection Fee | $ 1,767.00 |
| Subtotal | $ 154,512.00 |

| Monthly Rent | |
|---|---|
| Category | Amount |
| Bldg. A | $ 2,200.00 |
| Bldg.B&H | $ 7,750.00 |
| Bldg. C | $ 1,650.00 |
| Subtotal | $ 11,600.00 |

Good Faith Estimates