BEN ELLISON, WSBA #48315
Email: salishsealegal@outlook.com
SALISH SEA LEGAL PLLC
2212 Queen Anne Avenue North, No. 719
Seattle, WA 98109
Telephone: (206) 257-9547
Attorney for the Unsecured Creditors Committee

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GIGA WATT, INC.<br><br>Debtor. | 18-03197-FPC11<br><br>UNSECURED CREDITORS COMMITTEE'S DISCLOSURE STATEMENT |

### I. Preliminary Statement

This Disclosure Statement describes a forthcoming plan of reorganization (the "Plan") and the mechanism for its implementation. This Disclosure Statement should be read in conjunction with the Plan, which is the document which will ultimately be confirmed and bind parties in interest.

All parties in interest should also read the Plan and this Disclosure Statement in their entirety, rather than relying on any summary thereof. The Unsecured Creditors Committee ("Committee") urges all parties in interest to consult with independent counsel in connection with their decision ultimately to accept or reject the Plan. Notwithstanding the foregoing, without waiving the right to support any other competing strategy for providing repayment to creditors, representative members of the Committee unanimously propose the following treatment of claims. While the present Disclosure Statement does not presently have the

1

DISCLOSURE STATEMENT

support of the Chapter 11 Trustee, the Committee shared a prior version of the same with the Trustee 30 days ago and hopes to work together to craft a joint plan.

## II. Summary of Plan and Code Provisions for Voting

A full year has passed since the commencement of this Chapter 11 reorganization case. The Committee now proposes its own exit strategy given that (1) the mining equipment relied on by Giga Watt to generate cryptocurrency is aging, (2) administrative costs continue to accrue and professional fees alone exceed $800,000, and (3) the main Giga Watt generating facility is located in a county where electricity rates are scheduled to increase substantially starting in April 2020.

In light of this, the Committee proposes that a third-party loan ("Reorganization Loan") be solicited in the amount of the net funds that operations at TNT and Moses Lake would have generated over the reasonable life span of the existing mining equipment or a percentage of appraised value of the business not to exceed a to-be-specified percentage.

Once obtained, to the extent that there are not sufficient funds to satisfy all allowed claims in full, proceeds of the Reorganization Loan will be attributed 60% to administrative claims as a final and complete payment, and then 40% to all unsecured creditors. The portion attributable to unsecured creditors shall be divided evenly between monies available for those opting to be paid cash, and those who wish instead to retain equity in a Giga Watt Newco, with half of 40%, or 20% of the Reorganization Loan being provided for working capital for the Newco. Upon distribution of the Loan proceeds, all assets in the bankruptcy estate will be vested in the Giga Watt Newco, including but not limited to the right to pursue any prepetition litigation claims belonging to the Debtor-in-Possession.

In the event no satisfactory loan is capable of being secured within 90 days of the filing of this Disclosure Statement, all funds generated from the TNT and Moses Lake operations will be collected in escrow for the sooner of, 12 months or

the end of positive financial operations ("Handover Event") for TNT and Moses Lake, with administrative expenses, cash unsecured creditor, and equity unsecured creditor all being paid in the same proportion as through the Reorganization Loan.

For avoidance of doubt, after the Handover Event or disbursement of funds from the Reorganization Loan, administrative creditors and unsecured creditors who opt to receive cash will receive no further consideration from the bankruptcy estate, and the bankruptcy estate will be vested in the Giga Watt Newco.

*A. Repayment*

There are $129,001,908 of claims filed in this bankruptcy case. This consists, *inter alia*, of a $30,000,000 claim by a class action law firm, almost $30,000,000 of claims from insiders, and $25,000,000 from a subleasee.

There appear to be no secured claims.

Among administrative priority claims, there are $125,000 of unpaid prepetition wage claims.

Funds for implementation of the Plan will be derived from a loan the Committee anticipates it will be able to secure from a third-party source – the Reorganization Loan.

All unpaid allowed unsecured creditors shall become the holders of equity of a new reorganized Giga Watt entity that will emerge from bankruptcy in a ownership percentage that corresponds to the amount of their allowed proofs of claim. Within 30 days of payment of the Reorganization Loan proceeds, the new owners of the reorganized Debtor may, but are under no obligation to, hold a shareholders meeting, elect a board of directors, and determine the proper management for the new Giga Watt entity.

*B. Voting Procedures and Confirmation Requirements*

<u>1. Ballots and Voting Deadline.</u>

A ballot for voting to accept or reject the Plan will be distributed, along with this Disclosure Statement and the Plan, upon the Bankruptcy Court's approval of

the Disclosure Statement. Creditors and equity interest holders of the Debtor must (1) carefully review the ballot and instructions thereon and execute it; and (2) return the completed ballot to the Committee c/o Salish Sea Legal PLLC, 2212 Queen Anne Ave N., No. 719, Seattle, WA 98109, no later than midnight, February 20, 2020. Ballots received after the deadline will not be counted.

2. Creditors Entitled to Vote.

Any impaired creditor or equity interest holder of the Debtor[1] under the Plan is entitled to vote, provided that (1) its claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent or unliquidated, or (2) it has filed a proof of claim on or before the last date set by the Court for such filing, and no objection to such proof of claim is pending at the time of the confirmation hearing.

Any claim or equity interest as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Court temporarily allows the claim or equity interest in an amount which it deems proper for the purpose of accepting or rejecting the Plan upon motion by the creditor or holder of an equity interest whose claim or equity interest is subject to objection.

A Creditor will be bound by the terms and treatment set forth in the Plan if the Plan is accepted by the requisite majorities in each class of creditors and/or is confirmed by the Court. Creditors who fail to vote will not be counted in determining acceptance or rejection of the Plan. Allowance of a claim for voting purposes does not necessarily mean that the claim will be allowed or disallowed for purposes of distribution under the terms of the Plan. Any claim to which an

---

[1] Under § 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a Plan unless, with respect to each claim or equity interest of such class, the plan (1) leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or equity interest, or (2) reinstates the claim or equity interest pursuant to its original terms and cures any default.

objection has been or will be made will be allowed only for distribution after determination by the Court after the Plan is confirmed.<u>3. Requirements for Confirmation.</u>

In order to be confirmed (i.e., approved) by the Bankruptcy Court, the Plan must conform with the following:

    a. Propose to pay each member of a class of claimants, who has not accepted the Plan, property at least equal in value to what the claimant would receive if the Debtor's assets were liquidated on the date of the confirmation hearing, and distributed to creditors according to their rights and priorities under law;

    b. Propose to pay all Administrative Claims in full and all Priority Claims in full in deferred payments or cash;

    c. Disclose all compensation paid or promised for professional services rendered or to be rendered in connection with the case;

    d. Disclose the identity and affiliations of all officers to serve after the Plan is confirmed and the compensation of any insiders to be employed after Confirmation; and

    e. At least one impaired class must vote in favor of the Plan.

The Bankruptcy Code defines acceptance of a Plan by a class of creditors or equity holders as acceptance by holders of two-thirds in dollar amount and a majority in number of the allowed claims of that class which actually cast ballots to accept or reject the Plan.

<u>3. Confirmation Hearing.</u>

The Bankruptcy Code requires that the Bankruptcy Court hold a Confirmation Hearing with notice to all parties in interest. The Confirmation Hearing is scheduled for February __, 2020 at _____, before the Honorable Judge Frederick Corbit. The Confirmation Hearing may be adjourned or continued by the Bankruptcy Court without further notice except for

an announcement made of the adjourned or continued date made at the Confirmation Hearing.

At the Confirmation Hearing, the Bankruptcy Court shall determine whether the requirements of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court shall enter an order confirming the Plan.

With respect to creditor acceptance of the Plan, if the requisite members of an impaired Class do not vote to accept the Plan as provided above, the Debtor may seek confirmation pursuant to § 1129(b) of the Bankruptcy Code, known as the "cramdown" procedure. Pursuant to this section, the Bankruptcy Court may confirm the Plan notwithstanding the non-acceptance by an impaired Class if at least one impaired Class votes to accept the Plan, the Plan does not discriminate unfairly, and is "fair and equitable" to the non-accepting Class(es).

A Plan does not discriminate unfairly within the meaning of the Bankruptcy Code if no Class receives more than it is legally entitled to receive for its claims or equity interests. The Bankruptcy Code establishes different "fair and equitable" standards for secured and unsecured claims.

With respect to an Unsecured Claim, a Plan may be "fair and equitable" if (1) each impaired unsecured creditor receives or retains property of a value equal to the amount of its allowed claim, or (2) the holder of any claim or interest that is junior to the claims of the dissenting class will not receive any property under the plan, except to the extent that such complies with the absolute priority rule and its exceptions.

Finally, it must be noted that even though a Creditor may vote to reject the Plan, so long as the Plan is confirmed, the Creditor will be entitled to share in any distributions to be made under the Plan.

### III. REQUISITE DISCLOSURES

*A. Representations Limited*

NO FORMAL APPRAISALS HAVE BEEN UNDERTAKEN OF THE

DEBTOR'S PROPERTY. THE VALUES PLACED THEREON AND SUMMARIZED BELOW ARE THE COMMITTEE'S BEST ESTIMATE OF THE VALUE OF THE PROPERTY AS OF THE TIME OF THE FILING OF THE PLAN AND THIS DISCLOSURE STATEMENT. THESE VALUES MAY DIFFER FROM VALUES PLACED ON THE SAME PROPERTY AT THE TIME OF FILING OF THE PETITION FOR RELIEF AND THE SUBSEQUENT SCHEDULES.

*B. Background, Income and Expenses*

On November 19, 2018 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for reorganization relief under Chapter 11 of title 11 of the U.S. Code (as amended, the "Bankruptcy Code"). In January 2019, a Chapter 11 Trustee was appointed to administer this estate.

Giga Watt, Inc. currently operates two crypto currency mining operations in Eastern Washington, one in Grant County (Moses Lake) and the other in Douglas County (TNT). The Debtor-in-Possession previously had operations in Douglas County at the so-called Pangborn facility. The Trustee asserts that the lease to the Pangborn facility expired as of June 2019.

The TNT facility restarted operation on September 10, 2019. The projected monthly revenues for the Douglas County operations is approximately $36,000.

## IV. Classification and Treatment of Claims

The Plan establishes three classes of claims, including two subcategories of administrative/priority claims. The classes of claims are identified and treated as follows:

A. <u>Administrative Expenses</u>. Unless the proceeds of the Reorganization Loan exceed the total amount of claims, 60% of Administrative Expense claims approved and allowed by the Court shall be paid in full, in cash, by the Debtor on the Effective Date of the Plan or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan.

Administrative claims which by their terms, are not due and payable on or before the Effective Date shall be paid as and when due.

Class A consists of Priority Claims under 11 U.S.C. § 507 other than Administrative Claims and Priority Tax Claims. The claims here consist of prior wage claims by former employees of Giga Watt, which total in approximate amount $125,000.

This Class also includes at least $800,000 in administrative priority legal and professional expenses, consisting of claims by the Trustee, Trustee's counsel, former Debtor-in-Possession counsel, original Committee counsel, successor Committee counsel, and Committee special counsel.

B. Class B Unsecured Creditor. There are more than $125,000,000 of currently allowed unsecured claims.

C. Class C Equity. Giga Watt was owned by the ownership group identified in the original bankruptcy petition.

## V. Implementation of Plan

If a Reorganization Loan is obtained, proceeds will then be paid to satisfy all administrative claims 60% and then 40% shall be paid *pro rata* to all unsecured creditors. Half of the sums available to unsecured creditors shall be paid to the Newco to be used for working capital to start up and maintain the business. The other half will be paid in cash to those allowed unsecured creditors waiving any equity interest in the business. Upon payment of the Loan proceeds, all assets in the bankruptcy estate will be vested in the Giga Watt Newco, including but not limited to the right to pursue any prepetition litigation claims belonging to the Debtor-in-Possession.

In the event no acceptable loan is capable of being secured within 90 days of the filing of this Disclosure Statement, the same transfer of funds and assets occurs over time, which will be the shorter time period of 12 months or the commenced obsolescence of mining equipment at the facilities.

## VI. Analysis of Liquidation Value of the Estate

The value of the stream of payments until mining equipment is anticipated to be obsolete is $\_\_\_\_\_. The anticipated residual value of the operations once such mining equipment is obsolete is $\_\_\_\_\_.

The liquidation value of the estate is approximately $_____. The Plan proposes to pay $_____ toward unsecured claims which is greater than the liquidation value of estate.

## VII. Tax Consequences

The Committee is not qualified to advise creditors of the specific tax ramifications to them of confirmation of the Plan, and therefore makes no representations in this regard. However, the Committee is not aware of any potential material federal tax consequences to creditors that would result from confirmation of the Plan. Each creditor is urged to consult with a tax advisor as to such matters.

No material tax consequence to the Debtor is anticipated as a result of confirmation of the Plan. Any forgiveness of indebtedness would be exempt from taxation under IRC § 108. The Debtor's basis in the secured property will have to be adjusted, but no tax will be due as a result thereof until any such property is sold.

## VIII. Modifications or Withdrawals of the Plan

The Committee may alter, amend, or modify the Plan under § 1127(a) of the Bankruptcy Code at any time before the Confirmation Date, so long as the Plan, as modified, meets the requirements of §§ 1122 and 1123. The Committee may also alter, amend, or modify the Plan under § 1127(b), following the Confirmation Date but before the Effective Date. The Committee may revoke or withdraw the Plan before the Confirmation Date. If the Plan is revoked or withdrawn before the Confirmation Date, the Plan shall be of no force or effect, and shall be deemed null

and void. If the Plan is revoked or withdrawn before the Confirmation Date, nothing contained herein shall in any way effect or prejudice the rights of the Debtor with regard to Claims, Avoidance Actions, or any other rights or interests. After confirmation, the plan may be modified pursuant to § 1127(e).

## IX. Objections to Claims, Counterclaims, and Avoidance Actions

Any objections to claims must be filed no later than 30 days before the Effective Date/Confirmation. The Committee believes that the claims resolution process should not delay Confirmation of the Plan. In order to expedite payments to creditors, the Committee seeks Confirmation notwithstanding the fact that certain claims may be disputed.

## X. Miscellaneous Plan Provisions

A. Executory Contracts and Unexpired Leases.

The leases for the Moses Lake and TNT facilities are expressly assumed.

Any prepetition Executory Contracts and Leases in effect as of the Effective Date (other than any leases to tenants) and not specifically rejected will be deemed rejected as of the Effective Date. Any Claims arising from the rejection of Contracts and Leases must be filed on or before the Rejection Claim Bar Date. The Rejection Claim Bar Date is 30 days after the Effective Date, or, if later, 30 days after entry of any Final Order rejecting the Executory Contract or Lease. Absent the filing of a proof of claim on or before the Rejection Claim Bar Date, all Rejection Claims shall be forever barred from assertion and shall not be enforceable against the Debtor, its Estate, Assets, or properties. All Rejection Claims shall be General Unsecured Claims.

B. Retention of Jurisdiction, Closing.

Pursuant to §§ 105(a) and 1142 of the Bankruptcy Code, the Plan provides for the Bankruptcy Court to retain exclusive jurisdiction over all matters relating to the Plan, including the allowance of Claims and the adjudication of any Avoidance Actions. Upon substantial consummation of the plan, the case shall be closed, but

shall be subject to reopening to enforce the terms of this Plan and to enter a discharge. This provision serves to avoid the need to pay U.S. Trustee fees after substantial consummation, an expense Debtor can ill afford.

## XI. Risks for the Plan

The estimate of the hypothetical stream of payments from operations prior to obsolescence may be incorrect in duration and/or amounts.

Committee may be unable to secure financing within 90 days.

## XII. Conclusion

The information and materials provided in this Disclosure Statement are intended to assist you in voting on the Plan in an informed fashion. Since confirmation of the Plan will be binding on your interests, the Committee invites you to review these materials and make such further inquiries as may be appropriate.

DATED this 12th day of December, 2019.

**SALISH SEA LEGAL PLLC**

By: /s/ *Benjamin A. Ellison*
Ben Ellison, WSBA No. 48315
2212 Queen Anne Ave. N., No. 719
Seattle, WA 98125
Tel: (206) 257-9547