**OMITTED EXHIBIT B TO ECF NO. 442**

# MEMORANDUM

Re: Basis for Challenging Douglas PUD Termination of Giga Watt Interconnection and Service Agreement

On March 7, 2017, Giga Watt, Inc. signed an Interconnection and Service Agreement ("Service Agreement") with Douglas County PUD in which the PUD agreed to construct facilities and provide electric service to Giga Watt's cryptocurrency facility at Pangborn Airport in East Wenatchee, Washington. The Service Agreement provides that payment for the 115-kV substation, wires, transformers, and related equipment needed to serve the Giga Watt facility (defined in the Service Agreement as "Major Costs") would be deferred and paid for by the Port of Douglas County ("Port") under an Interlocal Cooperation Agreement between the Port and the PUD which allows the Port to support economic development around Pangborn Airport. The Service Agreement remains in effect "until terminated pursuant to Section 20."[1]

On August 15, 2017, Giga Watt signed a lease with the Port allowing it to construct and operate its facility at the Pangborn location for thirty years, with the right for Giga Watt to request two additional ten-year terms. The lease provides that Giga Watt was to pay the Port (not the PUD) for the substation and other upgrades necessary for PUD electric service as a Contribution in Aid of Construction ("CIAC") "as an additional charge which shall be reasonable and ordinary."[2]

On October 12, 2018, the PUD sent a letter seeking to terminate the Service Agreement under Section 20.1 of that Agreement, which provides that "Upon twelve (12) months prior

---

[1] Service Agreement § 1.

written notice the Customer or the District may terminate this Agreement." On November 19, 2018, Giga Watt filed a petition for bankruptcy, which resulted in the imposition of the bankruptcy automatic stay on that date.

The question, then, is whether the October 12, 2018, letter, which purports to have terminated the Service Agreement effective on October 12, 2019, was effective. If so, Douglas terminated the contract prior to the automatic stay. If not, the automatic stay prevents Douglas from terminating the Service Agreement.

## ANALYSIS

As noted, Section 20.1 includes a very general right for either party to terminate the Service Agreement on twelve months' notice. However, the PUD bases its termination on the claim that Giga Watt failed to pay $310,329 for work performed for Giga Watt. We understand this amount to be for work defined as "Major Costs" in the Service Agreement.

In light of the fact that the PUD is to be reimbursed for those Major Costs under the Interlocal Cooperation Agreement between the Port and the PUD, Section 6 of the Service Agreement contains specific requirements for terminating the Service Agreement for unpaid Major Costs. Specifically, Section 6 provides:

> In the event that the Port does not make all payments required under the terms of the [PUD's] interlocal agreement with the Port, the Customer agrees to pay such Major Costs to the District within 180 days of the District's invoice.

The PUD's termination letter claims that an invoice for Major Costs was sent to the District on August 29, 2018. Under the terms of Section 6, Giga Watt's payment would not have become due until 180 days later, approximately March 1, 2019, several months after the automatic stay went into effect in November 2018.

---

[2] Lease § 4(g)(1).

{03704947.DOCX;1 }

3

There are several reasons to believe that Section 6 governs in these circumstances, and not Section 20. First, it is well established under Washington law that specific contract terms prevail over general terms.[3] Under this canon of contractual interpretation, the specific provisions of Section 6 regarding the treatment of "Major Costs" would prevail over the general terms of Section 20, and would require the PUD to abide by the specific termination provision in Section 6 rather than relying on the general provision in Section 20.

Second, "[a] discretionary power under a contract may not be exercised in a way that deprives the other party of bargained-for rights."[4] Applying the rule here, the PUD was not permitted to exercise its essentially unlimited discretion to terminate the Service Agreement under Section 20 because that would deprive Giga Watt of the specific, bargained-for provisions of Section 6, including the specific provisions the PUD was required to follow to terminate the Service Agreement if it failed to receive payment for Major Costs from the Port.

Third, Section 20 provides essentially unlimited power for either party to terminate the contract for any reason or no reason. Arguably, Section 20 therefore must be struck from the contract because the contract is otherwise illusory.

Finally, we note that Section 5.5 of the Service Agreement allows the PUD to "cease delivery of power and associated energy" if bills for either electricity or Major Costs remain unpaid after the PUD has provided five days' notice. This provision, however, allows only for cessation of electric service. And, reading the provision in conjunction with the PUD's Customer Service Policies, which is required under Section 18.2 of the Service Agreement, it is clear that the PUD may only suspend delivery of electricity for as long as a bill remains unpaid.

---

[3] *T-Mobile USA Inc. v. Selective Ins. Co. of Am.*, 450 P.3d 150, 155 (Wash. 2019)(" A basic rule of textual interpretation is that the specific prevails over the general").
[4] *CMS Mechanical Serices, LLC v. PetSmart, Inc.,* 2018 WL 1586647 at *14 (D. Ariz. 2018). *See also T-Mobile USA,* 450 P.3d at 155.

Neither the Customer Service Policies nor Section 5.5 give the PUD an independent right to terminate the Service Agreement.  The PUD's remedy under Section 5.5 is limited to cessation of electric service only.

## CONCLUSION

For the reasons explained above, we conclude there is good reason to believe that Douglas's attempt to terminate the Service Agreement was defective.  Hence, the Agreement remains effective by virtue of the automatic stay, as does its value to the bankruptcy estate.