Honorable Frederick P. Corbit
Chapter 11
Response Date: February 17, 2020

IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

In Re:

GIGA WATT, INC.,

            Debtor.

In Chapter 11 Proceeding

Case No. 18-03197-FPC11

**DECLARATION OF ROSS MILLER IN SUPPORT OF MOTION TO COMPEL THE TRUSTEE TO ABANDON ALLRISE MINING POD**

Pursuant to 28 U.S.C. § 1746, the undersigned hereby declares that:

1. I am Senior Associate, Structuring for Allrise Capital LLC, which is an affiliate of creditor Allrise IP Holding, Inc. ("Allrise"). I have personal knowledge of the matters set forth in this declaration and am competent to testify in this matter.

2. Attached hereto as Exhibit "A," and incorporated by reference herein, is a true and correct copy of a document entitled "Mining Farm Development Agreement" dated May 1, 2017 (the "Development Agreement").

DECLARATION OF ROSS MILLER IN SUPPORT OF
MOTION TO COMPEL THE TRUSTEE TO ABANDON
MINING POD- 1

2053288.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

18-03197-FPC7    Doc 462    Filed 01/24/20    Entered 01/24/20 15:38:58    Pg 1 of 13

3. Pursuant to the Development Agreement, Allrise paid $1,200,000 to purchase a Mining Farm from the Debtor, which is located at 7906 Randolph Road, Moses Lake, Washington 98837.

4. The Development Agreement references a Sublease Agreement. Attached hereto as Exhibit "B," and incorporated by reference herein, is a true and correct copy of a document entitled "Sublease of Land," which is the Sublease Agreement referenced in the Development Agreement.

5. Allrise believes that no other person holds an ownership interest in the Mining Farm.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED this 24th day of January, 2020, at Irvine, California.

/s/ *Ross Miller*
Ross Miller

DECLARATION OF ROSS MILLER IN SUPPORT OF
MOTION TO COMPEL THE TRUSTEE TO ABANDON
MINING POD- 2

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

2053288.01
18-03197-FPC7   Doc 462   Filed 01/24/20   Entered 01/24/20 15:38:58   Pg 2 of 13

# EXHIBIT A

18-03197-FPC7    Doc 462    Filed 01/24/20    Entered 01/24/20 15:38:58    Pg 3 of 13

## MINING FARM DEVELOPMENT AGREEMENT

This Mining Farm Development Agreement ("Agreement") is made on May 2, 2017, by and between Giga Watt, Inc., a Washington corporation, located at 1 Campbell Pkwy, East Wenatchee, WA 98802 ("Developer" or "Giga Watt") and Allrise IP Holding, Inc., a Cayman corporation, located at 2nd Floor, The Grand Pavilion Commercial Centre, 802 West Bay rd P.O. Box 10338, Grand Cayman KY1-1003, Cayman Islands ("Client").

**Whereas,** Developer is in business of owning and operating data processing facilities in the State of Washington.

**Whereas,** Client wishes for Developer to construct the mining farm on the land subleased by Client and for the use by Client.

**Now, therefore,** in consideration of the mutual covenants and agreements and subject to the conditions and limitations set forth herein, the Parties hereto do hereby agree as follows:

1. **Project.**
   a. Mining Farm. The mining farm ("Mining Farm") shall consist of one structure with the aggregate capacity of 1.25 MW and useful capacity of 1.2 MW connected to the power line of Grant County PUD. The structure shall have all required parts such as fans, shelves, and power distribution infrastructure to allow operation of the Client's equipment.
   b. Location. The Mining Farm shall be located at 7906 Randolph Road, Moses Lake, Washington 98837.
   c. Additional Work. Installation, operation, maintenance and service of the Client's mining equipment shall be governed by separate agreements.
2. **Scope of Work.**
   a. Design of Mining Farm. Over the course of its business, Developer invented and perfected the proprietary design of a structure required to operate the mining equipment, which shall be used as a basis to construct the Mining Farm for Client. All drawings, specifications and other documents and electronic data furnished by Developer to Client under this Agreement ("Work Product") are deemed to be the property of Developer, and Client is granted a limited license to use such Work Product solely for the Mining Farm to which this Agreement pertains.
   b. Construction Management. Developer shall hire all necessary contractors and purchase the required materials and equipment to build and operate the Mining Farm for Client.
   c. Permits. Developer shall facilitate obtaining the required governmental approvals and permits for construction of the Mining Farm. The cost of the permits shall be borne by Developer.
3. **Payment.** Client shall pay One Million Two Hundred Thousand U.S. dollars ($1,200,000) for construction of the Mining Farm upon the execution of this Agreement. This amount shall not include the cost of the mining equipment, which shall be purchased by Client under a separate agreement. The Payment may be made in BTC to the Seller's wallet (18KQG3h7cAM3eJk4zPSHkhG2KLKdkuPrBy) at the exchange rate set by Coindesk at the time of transfer.

4. **Ownership of Mining Farm.** Client shall be the sole owner of the Mining Farm constructed under this Agreement. The ownership of the Mining Farm is subject to the land sublease, which Client has with Allrise IP Holding, Inc., a Delaware corporation ("Sublease Agreement"). In construction and operation of the Mining Farm, Client shall be bound by the terms of the Sublease Agreement.
5. **Schedule.** Developer shall commence the designing work on the Mining Farm within Three (3) business days upon the receipt of payment under this Agreement and shall commence the construction portion of the work within Three (3) business days of the issuance of the building permit. Subject to the permitted extensions and delays provided herein, Developer shall deliver the Mining Farm within Ten (10) weeks after the execution of this Agreement.
6. **Delivery.** The Mining Farm shall be considered delivered when it is connected to the power line of the Grant County PUD and is ready for the operation of mining equipment with the aggregate capacity of 1.2 MW.
7. **Delay.** Client understands and acknowledges that the delivery of Mining Farm can be delayed by the act, neglect, or default of the third parties, including but not limited by contractors and material suppliers, governmental action or inaction, or any other reason or reasons beyond Developers reasonable control, including but not limited to damage caused by fire or other casualty, strikes, force majeure, shortage of materials or labor, transportation delays, weather conditions, etc. In case of any delay, Developer will place the Client's mining equipment to its own facilities to allow full operation of the Client's equipment no later than 10 weeks from the execution of this Agreement.
8. **Warranty.** Developer warrants that Mining Farm shall be constructed in accordance with the applicable laws and free from material structural defects. Developer shall repair any work not performed in accordance with the applicable law for a period of One (1) year from the date of delivery. Client shall give a written notice of any defect to Developer and allow Developer reasonable time but not less than Sixty (60) days to cure the defect. All product warranties, if any, are deemed assigned from Developer to Client, and Developer shall reasonably assist Client in enforcing such product warranties.
9. **Arbitration.** The parties agree to attempt to resolve any disputes relating to this Agreement by negotiation and/or with a mutually agreed-upon mediator. However, if these attempts are unsuccessful, upon demand by either party, all claims between the parties shall be referred for binding arbitration in accordance with the Washington Uniform Arbitration Act (RCW 7.04A et seq.). There shall be one arbitrator, whose decision shall be final, and binding, and judgment may be entered thereon. If the parties cannot agree on the arbitrator, the arbitrator shall be appointed by the presiding judge of the Douglas County Superior Court. The arbitrator is authorized to restrict and/or limit discovery in the arbitrator's discretion, to that discovery reasonable under the circumstances considering the complexity of the matter and the amount in controversy. The substantially prevailing party, in any arbitration or other action, shall be entitled to collect all fees and costs incurred in connection with such action, including attorneys' fees, which amount shall be included in any award given.
10. **Survival.** In the event any clause or provision of this Agreement shall be held to be invalid, then the remaining clauses and provisions shall nevertheless be and remain in full force and effect.
11. **Entire Agreement.** In entering into this Agreement, neither party has relied upon any statement, estimate, forecast, projection, representation, warranty, action or agreement of the other party except for those expressly contained in this Agreement. All other agreements, oral

or written, are hereby merged into and superseded by this Agreement. There are no other agreements which modify or affect the terms hereof. No amendment hereto shall be binding unless the terms thereof are in writing and signed by both parties. No verbal or other agreements shall modify or affect this Agreement.

12. **Binding Effect.** This Agreement shall be binding upon the parties hereto, and their heirs, successors, executors, administrators, and assigns.
13. **Assignment.** Neither party shall assign nor transfer this Agreement or any rights hereunder without the prior written consent of the other.
14. **Notices.** All notices which may be required under this Contract are to be in writing and delivered (a) to the attention of the party at the address listed on the signature page; or (b) by email to the email address on the signature page; or (c) by fax to the fax number on the signature page, or (d) mailed by certified mail, postage prepaid, to the address listed on the signature page. All notices shall be deemed served upon delivery, successful transmission, or Two (2) days following deposit of the notice in the U.S. mail as required herein.
15. **Governing Law, Venue.** The performance and interpretation of this Contract shall be governed in accordance with the laws of the State of Washington.

| **DEVELOPER** | **CLIENT** |
|---|---|
| *David M. Carlson* | *[signature]* |
| By: David M. Carlson, CEO | By: Vladimir Evseev, _____ |
| Giga Watt, Inc. | Allrise IP Holding, Inc. |
| 1 Campbell Pkwy | 2nd Floor, The Grand Pavilion Commercial Centre |
| East Wenatchee, WA 98802 | 802 West Bay rd P.O. Box 10338 |
| | Grand Cayman KY1-1003, Cayman Islands |

# EXHIBIT B

## SUBLEASE OF LAND

THIS SUBLEASE ("Sublease") is made by and between Giga Watt, Inc., a Washington corporation, located at 1 Campbell Pkwy, East Wenatchee, WA 98802 ("Giga Watt" or "Sublessor") and Allrise IP Holding, Inc., a Delaware corporation, located at 936 Southwood Blvd, 201, Incline Village, NV 89451 ("Allrise" or "Sublessee"). Giga Watt and Allrise may refer to individually as Party and jointly as Parties.

**Whereas,** Giga Watt leased a portion of the land ("Parcel 1") located at 7906 Randolph Road, Moses Lake, Washington 98837 from MLDC 1, LLC ("Landlord") under the Land Lease for Portion of Land in Moses Lake, Washington dated May 1, 2017 ("Master Lease").

**Whereas,** Allrise wishes to sublease Parcel 1 from Giga Watt to construct and operate the data processing facility ("Mining Farm").

**Now, therefore,** in consideration of the mutual covenants and agreements and subject to the conditions and limitations set forth herein, the Parties hereto do hereby agree as follows:

1. <u>Sublease and Use of Parcel 1</u>.

    a. **Sublease of Parcel 1.** Giga Watt subleases to Allrise the Parcel 1, which is approximately 1,250 square foot parcels of land of unimproved real property located at 7906 Randolph Road, Moses Lake, Washington 98837 ("Land"), as indicated in the Exhibit A.

    b. **Use of Parcel 1.** Allrise intends to construct and operate the Mining Farm on Parcel 1 with the assistance from Giga Watt.

2. <u>Term</u>.

    a. **Term.** The term of this Sublease shall be thirty (30) years beginning **May 1, 2017** and ending on **April 30, 2047** ("Initial Term").

    b. **Effective Date.** The terms of this Lease shall be effective and binding on both parties upon the signing of this Lease (the "Effective Date").

    c. **Extended Term.** Allrise may request the Initial Term be extended for up to two (2) additional terms of ten (10) years each ("Extended Term") by notifying the Giga Watt twelve (12) months prior to the end of the Initial Term or the first Extended Term. Unless otherwise agreed to by the Parties, the terms of the Sublease for the Extended Term shall be the same terms and conditions as set forth herein. In the event that Allrise continues to occupy the Parcel 1 after the Initial Term without giving notice to Landlord as provided herein, the lease shall convert to a month-to-month lease.

    3. <u>Rent</u>.

        a. **Base Rent.** Allrise shall pay the Giga Watt monthly rent in the amount of Five Thousand dollars ($5,000) ("Initial Rent").

b. **Rent Commencement Date.** The rent shall be paid monthly on the First (1ˢᵗ) of each month. The first rental payment under this Sublease shall not be due until 30 days after the Mining Farm is connected to the main power line.

c. **Late Charge.** Allrise shall pay a late charge equal to One Hundred dollars ($100) if the rent is delinquent for more than five (5) days after the due date. If the rental payment has not been paid within thirty (30) days, then all unpaid rent shall accrue interest at 12% per annum until paid.

d. **Rent Increase.** The rent shall increase by One percent (1%) every 3 years, starting on May 1, 2020. Upon of the expiration of the Initial Term, the base rent shall be adjusted to the amount agreed by Landlord and Giga Watt. Allrise shall be obligated to pay adjusted rent for the Extended Term of the Sublease.

e. **Contingency.** This Sublease is contingent upon Allrise IP Holdings, Inc., a Cayman corporation, located at 2nd Floor, The Grand Pavilion Commercial Centre, 802 West Bay Rd, P.O. Box 10338, Grand Cayman KY1-1003, Cayman Islands, which is an affiliate of Allrise ("Affiliate") entering into the Mining Farm development agreement with Giga Watt to construct the Mining Farm on the subleased Parcel 1 ("Mining Farm Development Agreement").

4. Rules and Regulations. Allrise shall comply with the rules and regulations of federal, state and local governments that apply to the Parcel 1 and the Allrise's use of the Parcel 1.

5. Allrise Improvements.

   a. **Construction.** Any construction or improvements on the Parcel 1 shall only be made under the Mining Farm Development Agreement. There shall be no other construction or improvements allowed on the Parcel 1.

   b. **Property of Allrise.** All structures, equipment, machinery, appliances, furniture, trade fixtures and other property regardless of whether it is affixed to Parcel 1, shall be considered the property of Allrise or its Affiliate ("Property of Allraise"); provided, at the termination of this Sublease, Tenant shall revert the Mining Farm to Giga Watt.

   c. **Risk of Loss.** The full risk of destruction or damage to any of the Allrise's property rests with Allrise.

6. Utilities. Utility services used by Allrise shall be included into the hosting fee charged to Allrise under a separate service agreement with Giga Watt ("Service Agreement").

7. Property Taxes. Allrise shall pay all personal property taxes for the Property of Allrise.

8. Sublease and Assignment. Allrise shall have the right to further sublease or assign this Sublease in whole or in part to its Affiliate upon approval from Giga Watt ("Further Sublease"). The Further Sublease shall be subject and subordinate to this Sublease. In case of a Further Sublease, Allrise shall remain liable for the payment of rent under this Sublease. No other or subsequent

1

sublease or assignment shall be allowed unless approved by Giga Watt.

9. Right of Entry. Giga Watt or its authorized representatives shall have an unrestricted right of entry on the Parcel 1.

10. Default and Reentry. If Allrise fails to pay any rent installment within thirty (30) days of its due date, or fails to perform any other covenant under this Sublease within thirty (30) days after written notice from Giga Watt stating the nature of the default, Giga Watt may cancel this Sublease and reenter and take possession of the Parcel 1 using all necessary force to do so. Provided, however, that if Allrise defaults on a covenant other than its covenant to pay rent that cannot reasonably be cured within the 30-day period, Allrise shall not be deemed to be in default, if Allrise, within such period, commences and thereafter diligently initiates correction of said default.

11. Insurance. Allrise shall insure all of its improvements on the property. In addition, Allrise shall at Allrise's expense maintain comprehensive liability insurance on the Parcel 1. Allrise shall pay the insurance premiums as they become due. Giga Watt and Landlord shall be an additional insured on such policy. Allrise shall deliver a copy of any such insurance policy to Giga Watt within five (5) days upon request thereof. In the event that Giga Watt fails to timely pay premiums or otherwise maintain such insurance, Giga Watt may procure and pay for such insurance and charge any such payments to Allrise. Such charges shall constitute additional rent owed Allrise to Giga Watt.

12. Hazardous Waste and Materials.

    a. Allrise shall comply with all present and future laws and regulations governing water pollution, air pollution, soil pollution, hazardous waste, hazardous and/or toxic material use, storage, transportation and disposal and hazardous or toxic chemical use, storage, transportation and disposal.

    b. Allrise shall at all times comply with all city, county, state and federal environmental laws and environmental rules and regulations. Any breach of the conditions of this section will be a material breach of this Sublease. Allrise further agrees that in the event of any such breach, Allrise shall be solely responsible for all fines, costs, penalties, and expenses in connection with said breach, and shall hold Giga Watt harmless therefrom.

    c. Without limiting the foregoing, if the presence of any hazardous material on the Parcel 1 caused or permitted at any time by the Allrise results in any contamination of the Parcel 1, Allrise shall take all actions at its sole expenses as are necessary to return the Parcel 1 to the condition that existed prior to the introduction of such hazardous material to the Parcel 1; provided, Giga Watt's approval to undertake any clean up shall first be obtained.

13. Indemnification. Allrise shall indemnify, defend, and hold Giga Watt and Landlord harmless from any and all injury, damage or contamination of the Parcel 1, property of third parties or injury to any person, and will indemnify and hold Giga Watt and Landlord harmless from any and all claims, judgments, penalties, costs, fines and lawsuits, which could arise during the term of this

Sublease or after the Sublease term.

14. Condemnation. If all of the Parcel 1 and the Allrise's interest therein shall be condemned for public use by any authority superior to Giga Watt or Landlord, such as the State of Washington or the United States of America, this Sublease shall terminate without liability of either party to the other, with each party having the right to make a claim in such condemnation proceedings as their interests may appear.

    a. If the entire Parcel 1 or such portion thereof, will preclude Allrise from conducting its business is taken by eminent domain, this Sublease shall expire on the date when the Parcel 1 shall be so taken, and the rent shall be apportioned as of that date.

    b. If only a portion of the Parcel 1 is taken by eminent domain and Allrise continues its business, the rent payable at that time shall be decreased in proportion to the amount or portion of the Parcel 1 as shall be taken under the proceeding.

    c. Landlord shall be entitled to all compensation resulting from the taking of the Parcel 1. Allrise shall be entitled to make claim against the taking entity for compensation for loss incurred by Allrise for such taking.

15. Abandonment/Allrise's Property. Allrise shall not vacate or abandon the Parcel 1 at any time during the Initial or Extended Terms, unless otherwise provided in this Sublease. In addition to any other remedy available to Giga Watt, if Allrise shall abandon, vacate or surrender the Parcel 1, or be dispossessed by process of law, or otherwise, the Mining Farm shall revert to Giga Watt.

16. Master Lease. This Sublease is and shall be at all times subject and subordinate to the Master Lease; provided, however, that any provisions of this Sublease that directly contradict to Master Lease shall control over the Master Lease.

17. Arbitration of Disputes. The parties agree to attempt to resolve any disputes relating to this Agreement by negotiation and/or with a mutually agreed-upon mediator. However, if these attempts are unsuccessful, upon demand by either party, all claims between the parties shall be referred for binding arbitration in accordance with the Washington Uniform Arbitration Act (RCW 7.04A et seq.). There shall be one arbitrator, whose decision shall be final, and binding, and judgment may be entered thereon. If the parties cannot agree on the arbitrator, the arbitrator shall be appointed by the presiding judge of the Grant County Superior Court. The arbitrator is authorized to restrict and/or limit discovery in the arbitrator's discretion, to that discovery reasonable under the circumstances considering the complexity of the matter and the amount in controversy. The substantially prevailing party, in any arbitration or other action, shall be entitled to collect all fees and costs incurred in connection with such action, including attorneys' fees, which amount shall be included in any award given.

18. Miscellaneous.

    a. **Notices.** Any notices by either party to the other shall be in writing and shall be deemed to be duly given only if delivered personally, or mailed by certified mail in a postage paid envelope addressed to the other party as identified below

3

If to Allrise: If given on the Parcel 1

or at such address as Tenant may direct in writing,

If to Giga Watt: 1 Campbell Pkwy
East Wenatchee, WA 98802

or at such address as Giga Watt may direct in writing.

b. **Attorney Fees.** This Sublease shall be construed in accordance with the laws of the State of Washington. Each party to this Sublease had the right to consult with their own attorney. In the event of any action arising hereunder, the prevailing party shall be granted its attorney fees and court costs. Venue for such action shall lie in Grant County, Washington.

c. **Successors and Assigns.** All rights, remedies, liabilities herein given to or imposed upon either of the parties hereto, shall inure to the benefit of and be binding upon their respective heirs, executors, administrators, successors in interest, transferrees, and assigns.

d. **Waiver.** The waiver by any party of a breach of any provision of this Sublease shall not be deemed a continuing waiver or a waiver of any subsequent breach of this Lease.

e. **Severability.** If any provision of this Sublease shall be declared invalid or unenforceable, the remainder of the lease shall continue in full force and effect.

f. **Entire Agreement.** This Sublease contains the entire agreement between the parties and cannot be modified or amended unless the same is in writing and signed by both parties and attached hereto.

g. **Counterparts.** This Agreement may be executed in any number of separate counterparts, all of which taken together shall be deemed one original instrument notwithstanding that all parties are not signatory to the same counterpart.

SUBLESSEE

Allrise IP Holding, Inc.
a Delaware corporation

By: Vladimir Evseev, _____

Date:

SUBLESSOR

Giga Watt, Inc.,
a Washington corporation

By: Dave Carlson, President

Date: 5/3/17

4

STATE OF WASHINGTON )
                     ) ss.
COUNTY OF Chelan     )

    I certify that I know or have satisfactory evidence that DAVID M. CARLSON is the person who appeared before me and said person acknowledged that she signed this instrument, on oath stated that he was authorized to execute the instrument and acknowledged it as a Member of MLDC 1, LLC, a Wyoming limited liability company, to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

    Dated this _2_ day of _May_, 2017.

[Notary Seal: DEVONNE J. HIGGINS, NOTARY PUBLIC, STATE OF WASHINGTON, COMMISSION EXPIRES JUNE 30, 2019]

Devonne F. Higgins
Typed/Printed Name  Devonne J. Higgins
NOTARY PUBLIC
In and for the State of Washington
My appointment expires 6-30-2019

5