1
William L. Hames, WSBA #12193
Hames, Anderson, Whitlow & O'Leary, P.S.
2
601 W. Kennewick Avenue
P.O. BOX 5498
3
Kennewick, WA 99336-0498
(509) 586-7797/ (509) 586-3674 fax
4
BillH@hawlaw.com

5

6

7

8

9

10

11
UNITED STATES BANKRUPTCY COURT

12
EASTERN DISTRICT OF WASHINGTON

13
In re:                                          Case No. 18-03197-FPC11

14
GIGA WATT INC,                        DECLARATION OF JIM KUNTZ IN
                                                    SUPPORT OF MOTION FOR RELIEF
15
                                                    FROM AUTOMATIC STAY;
                        Debtor.               ABANDONMENT OF PROPERTY OF
16
                                                    THE ESTATE; WAIVER OF FRBP
                                                    4001(a)(3)
17

18
    I, Jim Kuntz, am the CEO of the Chelan Douglas Regional Port Authority

19
formerly the Port of Douglas County (the "Port"). I am the person in charge of and

20
have possession of all the books, records and files pertaining to the lease of Port

21
property to the debtor, Giga Watt, Inc., and the financial records of rent paid and the

22
surety deposit filed by Giga Watt. Collectively, these records and files are referred to

23
as "Debtor's Business Records".

24
    I have personally worked on the Debtor's Business Records. Accordingly, the

25
facts stated herein are based on my own true knowledge, and/or I have gained

DECLARATION OF JIM KUNTZ IN
SUPPORT OF MOTION FOR RELIEF
FROM AUTOMATIC STAY;
ABANDONMENT OF PROPERTY OF THE
ESTATE; WAIVER OF FRBP 4001(a)(3) - 1

HAMES, ANDERSON, WHITLOW & O'LEARY, P.S.
601 W. KENNEWICK AVENUE
P.O. BOX 5498
KENNEWICK, WA 99336-0498
(509) 586-7797/ (509) 586-3674 fax

knowledge of the facts from the Debtor's Business Records. The Debtor's Business Records were created in the ordinary course of the Chelan Douglas Regional Port Authority, formerly the Port of Douglas County, (the "Port") and were created at or about such time as the records are dated. After the Debtor's Business Records were prepared, the Debtor's Business Records were stored in both paper and electronically on the Port's servers. The Debtor's Business Records can be accessed by me electronically in my office or by asking for the actual paper files. Therefore, I have personal knowledge of the facts contained in this declaration. If I were called to testify, my testimony would be consistent with the facts set forth in this declaration.

The Port entered a non-residential real property lease with debtor, Giga Watt Inc., effective March 1, 2017. The term of the lease was 30 years, until February 28, 2047. The monthly lease payment was deferred for the first six months of the lease. The total for the next 6 months with the leasehold tax totaled $15,312.33, which included the deferred lease payments. Commencing in year 2, the monthly payment with monthly leasehold tax was $8,239.81. See page 2 of the lease for the monthly payment schedule. The lease and addendum to the lease are attached hereto as Exhibit A.

Pursuant to Paragraph 6 of the lease and Paragraph 2 of the addendum to lease, Debtor was required to provide a surety bond in the sum of $350,000.00 pursuant to RCW 53.08.085. The debtor did not have the ability to purchase a bond, therefore, the debtor paid $350,000.00 cash in lieu of bond which deposit was held by the Port.

In the fall of 2018, the debtor defaulted on the lease. The breach of the lease was non-payment of 2 claims of lien; one filed by Consolidated Electrical Distributors in the amount of $145,093.83 and one filed by Neppel Electrical & Controls in the amount

DECLARATION OF JIM KUNTZ IN
SUPPORT OF MOTION FOR RELIEF
FROM AUTOMATIC STAY;
ABANDONMENT OF PROPERTY OF THE
ESTATE; WAIVER OF FRBP 4001(a)(3) - 2

HAMES, ANDERSON, WHITLOW & O'LEARY, P.S.
601 W. KENNEWICK AVENUE
P.O. BOX 5498
KENNEWICK, WA 99336-0498
(509) 586-7797/ (509) 586-3674 fax

18-03197-FPC7    Doc 468    Filed 01/29/20    Entered 01/29/20 14:07:09    Pg 2 of 40

of $479,959.63. Debtor failed to cure the lease defaults by paying the liens. The Port terminated the lease and commenced an unlawful detainer action against the debtor, which was filed in Douglas County Superior Court on November 1, 2018. The unlawful detainer complaint is attached as Exhibit B.

Debtor filed the above captioned bankruptcy proceeding on November 19, 2018. Shortly after filing, the Unsecured Creditors Committee filed a motion for an order directing the U.S. Trustee to appoint a Chapter 11 Trustee. At a hearing held on January 17, 2019, the Court granted the Unsecured Creditor's motion (ECF 119). At the same time, the Court extended the deadline by which the Trustee could assume or reject executory contracts and unexpired real property leases to March 19, 2019 (ECF 120).

On January 24, 2019, the Court entered an Order Approving the employment of Mark Waldron as Chapter 11 Trustee (ECF 146). The Port and the Trustee entered a stipulation in which the Port granted the Trustee a 90-day extension to assume the lease to June 17, 2019. In exchange, the Trustee agreed to a modification of the automatic stay to permit the Port to use Debtor's surety deposit to pay the debtor's rent, pay the Ports attorneys fee's as incurred, have the hole filled and compacted and remove the trash. (ECF251). The Court approved the stipulation on April 16, 2019 (ECF 276). A copy of that stipulation is attached as Exhibit C. A copy of the order granting the motion is attached as exhibit D.

The debtor entered into a pre-petition power agreement with Douglas County P.U.D. under which the P.U.D. agreed to supply power to the debtor at a favorable rate. The power agreement was terminated pre-petition. The favorable power rate would have enabled the debtor to be profitable at the Pangborn site. Without electric power at a favorable rate, a cryptocurrency mining operation cannot be profitable. The

DECLARATION OF JIM KUNTZ IN
SUPPORT OF MOTION FOR RELIEF
FROM AUTOMATIC STAY;
ABANDONMENT OF PROPERTY OF THE
ESTATE; WAIVER OF FRBP 4001(a)(3) - 3

HAMES, ANDERSON, WHITLOW & O'LEARY, P.S.
601 W. KENNEWICK AVENUE
P.O. BOX 5498
KENNEWICK, WA 99336-0498
(509) 586-7797/ (509) 586-3674 fax

18-03197-FPC7    Doc 468    Filed 01/29/20    Entered 01/29/20 14:07:09    Pg 3 of 40

Chapter 11 Trustee was unable to persuade the Douglas County PUD to revive the terminated power supply agreement between the P.U.D. and the debtor. The bankruptcy estate would have to pay market rate for power, which means the property cannot be successfully marketed as a cryptocurrency mining location because it would be unprofitable and, therefore, has no value to the bankruptcy estate.

As a result of the failed negotiation between the P.U.D. and the Trustee, the Pangborn lease was not assumed by the Trustee prior to the June 17, 2019 deadline. The Trustee immediately surrendered the non-residential real property to the Port.

During its occupancy of the Pangborn site, the debtor, constructed improvements, consisting of "pods," small shed-like structures which contained debtor's computers and electrical equipment. Outside the pods, the debtor installed transformers, electrical switching equipment, breaker boxes and a significant amount of underground electrical conduit, connectors, cabling and wiring necessary to conduct a large-scale cryptocurrency mining operation. The debtor was supposed to construct an electrical substation through which the power to the pods would have been supplied. The debtor did not construct the electrical substation. The debtor also left personal property on the Pangborn site on adjacent lots which were not part of the area leased by the debtor. Debtor also caused damage to the Port's real estate, primarily by excavating a large hole on unleased lots. The Port obtained an engineer's estimate of $159,000.00 to fill and compact the hole. The actual cost turned out to be less than the estimate.

The Port and the Trustee entered a second stipulation and motion to modify the automatic stay, by amending the prior stipulation. The amended stipulation was filed on October 30, 2019 (ECF 397). The order approving the amended stipulation was entered on November 14, 2019 (ECF 417). In the two months since that time, the

DECLARATION OF JIM KUNTZ IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY; ABANDONMENT OF PROPERTY OF THE ESTATE; WAIVER OF FRBP 4001(a)(3) - 4

HAMES, ANDERSON, WHITLOW & O'LEARY, P.S.
601 W. KENNEWICK AVENUE
P.O. BOX 5498
KENNEWICK, WA 99336-0498
(509) 586-7797/ (509) 586-3674 fax

Trustee has not removed any of the personal property, which is preventing the contractor from completing the work of restoring the Port's real property. The Port has had difficulty getting the bankruptcy estate to remove or dispose of personal property in which it claims an interest.

Neppel Electrical and Controls filed a secured Proof of Claim (Claim #121-2) and as part of that lien filed its Notice of Perfection of Lien pursuant to 11 U.S.C. § 546(b) on December 6, 2018 (ECF 34). Neppel then assigned its lien to Windland Credit Partners, LLC. The lien purports to be a lien on real estate, however, the real estate is owned by the Port, which is a municipal corporation in the State of Washington. Lien claimants are prohibited from filing liens against real estate owned by municipal corporations. The idea of the stipulation was to permit the Port to use the remaining funds of the surety deposit to have a contractor clean up the remaining property. However, the Trustee and Windland claim an interest in the personal property currently on the Port's real property. The contractor is in a quandary as to what the Trustee and/or Windland may wish to retain and sell. The contractor cannot continue the restoration of the Port's real estate without someone from the Trustee's office and/or Windland removing the personal property that has not been affixed to the Port's real property, that they wish to retain. Attached as Exhibit E is a list of most, if not all, of the personal property.

The personal property left by the estate, except for the property that became fixtures upon installation, such as the underground conduit, needs to be removed as soon as possible and the stay needs to be lifted to permit the Port to remove or dispose of any personal property the Trustee or Windland does not remove.

The Trustee has not paid any rent to the Port since the lease was terminated by non-assumption on June 17, 2019. If the Trustee or Windland Credit Partners claims

DECLARATION OF JIM KUNTZ IN
SUPPORT OF MOTION FOR RELIEF
FROM AUTOMATIC STAY;
ABANDONMENT OF PROPERTY OF THE
ESTATE; WAIVER OF FRBP 4001(a)(3) - 5

HAMES, ANDERSON, WHITLOW & O'LEARY, P.S.
601 W. KENNEWICK AVENUE
P.O. BOX 5498
KENNEWICK, WA 99336-0498
(509) 586-7797/ (509) 586-3674 fax

18-03197-FPC7    Doc 468    Filed 01/29/20    Entered 01/29/20 14:07:09    Pg 5 of 40

an interest in any of the non-fixture items of personal property left by the debtor, it should have 30 days from the date of this order to remove all personal property.

The Port needs the personal property to be removed or to have it abandoned so the Port can remove it to enable the contractor to complete restoration of the Port's real estate.

I have no idea what the value of this used equipment is, however, I do know that the Trustee has not removed it from the premises. It has been seven months since the Pangborn lease was rejected and the Trustee has not paid any rent, removed the personal property or restored the Port's property to a marketable state.

The Port obtained a "Committed Private Partner Community Economic Revitalization Board" (CERB) grant/loan package to provide tenant improvements (vehicle access and basic utilities) that were requested by the debtor and constructed by the Port. The addendum to the lease agreement was negotiated and approved to incorporate cost recovery of those tenant improvements incurred by the Port on behalf of the debtor. The Port is also liable on the CERB loan.

The Trustee/bankruptcy estate has moved and organized some of the personal property, however none of the personal property has been removed since the lease was not assumed by the June 2019 deadline.

I make this declaration under the penalty of perjury under the laws of the State of Washington.

DATED this 28th day of January, 2020, at East Wenatchee, Washington.

Jim Kuntz

DECLARATION OF JIM KUNTZ IN
SUPPORT OF MOTION FOR RELIEF
FROM AUTOMATIC STAY;
ABANDONMENT OF PROPERTY OF THE
ESTATE; WAIVER OF FRBP 4001(a)(3) - 6

HAMES, ANDERSON, WHITLOW & O'LEARY, P.S.
601 W. KENNEWICK AVENUE
P.O. BOX 5498
KENNEWICK, WA 99336-0498
(509) 586-7797/ (509) 586-3674 fax

# EXHIBIT A

THIS LEASE ("Lease") is made by and between the PORT OF DOUGLAS COUNTY, a municipal corporation of the State of Washington (the "Landlord") and Giga Watt, Inc. (the "Tenant").

1.    Lease and Acceptance of the Premises.

    a.  **Lease of Premises.** The Landlord leases to the Tenant the 345,326 square feet, which is 7.93 +/- acres, of unimproved real property, known as **Lots 10, 11, 12 and 13**, in the Pangborn Airport Business Park located at **643, 644, 675 & 676 South Billingsley Drive**, East Wenatchee, Washington 98802, more particularly described in Exhibit A (the "Premises").

    b.  **Acceptance of Premises.** The Premises constitutes vacant land within the Pangborn Airport Business Park. The Landlord and Tenant each represent to the other that neither is aware of any condition or occurrence with respect to the Premises which would constitute any violation of federal, state or local law. The Tenant has examined the Premises and all other matters determined necessary by the Landlord, and the Tenant accepts the Premises in its present condition, with all defects. The parties agree that there are no warranties, expressed or implied as to conditions apparent or unknown on the Premises, except as otherwise stated in this Lease.

    c.  **Lot Consolidation.** At its own expense, the Landlord shall do a lot consolidation for Lots 10, 11, 12 and 13 to accommodate the Tenant's use of Premises.

2.    Use. The Tenant shall use the Premises and construct improvements for the purpose of operating computing facility, server repair and testing and technology development.

3.    Term.

    a.  **Term.** The term of this Lease is thirty (30) years beginning **March 1, 2017** and ending on **February 28, 2047.**

    b.  **Effective Date.** The terms of this Lease shall be effective and binding on both parties upon the signing of this Lease (the "Effective Date").

    c.  **Extended Term.** The Tenant may request the Term be extended for up to two (2) additional terms of ten (10) years each by notifying the Landlord twelve (12) months prior to the end of the term or extended term. The Rent for an extended Term shall be determined according to Section 4. Unless otherwise agreed to by the Parties, the terms of the Lease for the extended term shall be the same terms and conditions as set forth herein.

4.    Rent.

    a.  **Base Rent.** The Tenant shall pay the Landlord annual rent in monthly installments. The annual rate shall be twenty-five cents ($.25) per square foot with an increase of One and a Half percent (1.5%) per year. The periodic Rental Market Rate Adjustments, as calculated in Paragraph (b) below, shall constitute the base rent when such adjustments become

effective. All rents and other payments to be made pursuant to this Lease shall be paid to the Landlord at its offices at 455 6th Street NE, Suite 100, East Wenatchee, WA 98802, or such other place as the Landlord may designate.

Rent Schedule for Years 1-15

| | Month | Annual Lease | Monthly Lease Payment | Monthly Leasehold Tax | Total Due Monthly |
|---|---|---|---|---|---|
| Year 1 | 1 | 86,331.50 | Deferred | 923.75 | 923.75 |
| | 2 | | Deferred | 923.75 | 923.75 |
| | 3 | | Deferred | 923.75 | 923.75 |
| | 4 | | Deferred | 923.75 | 923.75 |
| | 5 | | Deferred | 923.75 | 923.75 |
| | 6 | | Deferred | 923.75 | 923.75 |
| | 7 | | 14,388.58 | 923.75 | 15,312.33 |
| | 8 | | 14,388.58 | 923.75 | 15,312.33 |
| | 9 | | 14,388.58 | 923.75 | 15,312.33 |
| | 10 | | 14,388.58 | 923.75 | 15,312.33 |
| | 11 | | 14,388.58 | 923.75 | 15,312.33 |
| | 12 | | 14,388.58 | 923.75 | 15,312.33 |
| Year 2 | | 87,626.47 | 7,302.21 | 937.60 | 8,239.81 |
| Year 3 | | 88,940.87 | 7,411.74 | 951.67 | 8,363.41 |
| Year 4 | | 90,274.98 | 7,522.92 | 965.94 | 8,488.86 |
| Year 5 | | 91,629.11 | 7,635.76 | 980.43 | 8,616.19 |
| Year 6 | | 93,003.54 | 7,750.30 | 995.14 | 8,745.43 |
| Year 7 | | 94,398.60 | 7,866.55 | 1,010.06 | 8,876.61 |
| Year 8 | | 95,814.58 | 7,984.55 | 1,025.22 | 9,009.76 |
| Year 9 | | 97,251.79 | 8,104.32 | 1,040.59 | 9,144.91 |
| Year 10 | | 98,710.57 | 8,225.88 | 1,056.20 | 9,282.08 |
| Year 11 | | 100,191.23 | 8,349.27 | 1,072.05 | 9,421.32 |
| Year 12 | | 101,694.10 | 8,474.51 | 1,088.13 | 9,562.64 |
| Year 13 | | 103,219.51 | 8,601.63 | 1,104.45 | 9,706.07 |
| Year 14 | | 104,767.80 | 8,730.65 | 1,121.02 | 9,851.67 |
| Year 15 | | 106,339.32 | 8,861.61 | 1,137.83 | 9,999.44 |

b.   **Rent Commencement Date.** The rent shall be paid monthly on the First (1st) of each month. Upon execution of this Lease, Landlord shall defer rent payments for six (6) months.

c.   **Early Access.** Landlord shall allow Tenant to access Premises after the Effective Date and prior to the beginning of the term of this Lease to perform the site engineering and survey, planning activities, snow clearing, delivery of land moving equipment and material required for building, and other activities necessary for the Tenant to start using the Premises for the

18-03197-FPC7    Doc 468    Filed 01/29/20    Entered 01/29/20 14:07:09    Pg 9 of 40

intended purpose at the beginning of the term. In no way shall Tenant begin work for which a permit is required but not obtained during this Early Access period.

d. **Market Rate Adjustments.** Fifteen (15) years after the commencement of the lease, and at the beginning of each extended term, the base rent shall have a market rate adjustment to bring the rent into alignment with the current market conditions. The Base Rent shall adjust to the fair market rent for the Premises without improvements, however, the rent shall never decrease below the previous year's rent. Ninety (90) days prior to the start of Year Sixteen (16), the fair market rent shall be determined by an MAI real estate appraiser licensed in the State of Washington, mutually selected by and paid for by both Landlord and Tenant in equal shares. The appraiser shall only determine the fair market rental value of the land comprising the Premises, including the value of any related infrastructure improvements that have been placed upon the Premises by, and/or owned by the Landlord. The value of any improvements constructed and owned by the Tenant shall be excluded entirely from the determination of the fair market rental value of the Premises pursuant to this procedure. The appraiser selected by the Landlord and the Tenant shall notify each party hereto of his determination of such value and upon such notification, the Landlord and Tenant shall negotiate the rent, based on the current fair market value. If an agreement can't be reached either party may request arbitration which shall be appointed by the Superior Court in Douglas County. The cost of the arbitration shall be equally shared by both parties.

e. **Leasehold Tax.** In addition to the base rent, the Tenant shall pay to the Landlord a leasehold excise tax pursuant to Chapter 82.29A RCW, which is currently at 12.84% of taxable rent and other measurable consideration.

f. **Deposit.** On the Effective Date of the lease, Tenant shall provide a deposit of Fifteen Thousand Dollars ($15,000.00) which shall be applied to the deferred lease hold taxes and rent beginning in Month 7.

g. **Operating Expenses.** It is the intention of the Parties, and they agree, that this Lease shall be a triple-net Lease and the Landlord shall have no obligation to provide any services, perform any act or pay any expenses, charges, obligations or costs of any kind, whatsoever, with respect to the premises, except as provided for in this Lease, and the Tenant agrees to pay one-hundred percent (100%) of any and all operating expenses including, but not limited to:

    1. **Contribution-in-Aid-of-Construction (CIAC):** Tenant shall pay for PUD Infrastructure pursuant to the CIAC Agreements attached hereto as Exhibits B and C and incorporated by reference as if set forth in full, as an additional charge which shall be reasonable and ordinary. In the event this Lease is terminated under section 4(j) of this lease, the Tenant shall remain responsible for the CIACs.

    2. **Additional Charges:** Except as provided in the Lease, Tenant shall pay all additional operating expenses for only those matters that touch and concern the leased Premises including, without limitation, local, state and federal charges, utility taxes and assessments, maintenance costs, insurance expenses, engineering fees, and

18-03197-FPC7   Doc 468   Filed 01/29/20   Entered 01/29/20 14:07:09   Pg 10 of 40

other charges. The Landlord will promptly notify the Tenant of any such additional charges due, and the Tenant shall promptly pay the additional charges set out in the Landlord's notice within Thirty (30) days of the notice date

h.   **Interest—Late Charge.** Interest shall accrue on all delinquent Tenant rents and other accounts at the rate of Twelve percent (12%) per annum. The Tenant shall also pay a late charge equal to Four percent (4%) of the annual base rent for every month if the rent is delinquent for more than five (5) days after the due date.

i.   **Rent After Lessee Vacates Premises.** In the event the Tenant vacates Premises and the Premises have not been returned to the condition required by this Lease, and cleanup of the Tenant's operations is necessary by the Landlord prior to the Landlord's ability to re-let the Premises, then rent as specified herein shall continue to accrue until the Premises are restored to a rentable condition.

j.   **Contingency.** This Lease is contingent upon the execution of the Interconnection and Service Agreement between the Tenant and the PUD regarding the delivery of up to 30 megawatts of electrical power. In the event this contingency is exercised within six (6) months of the effective date of the Lease, this Lease shall terminate with rent payments due from the Effective Date up to and including the date of termination.

5.   <u>Rules and Regulations</u>.

a.   **Rules and Regulations.** The Tenant shall comply with the rules and regulations of federal, state and local governments that apply to the Premises and the Tenant's use of the Premises.

b.   **Restrictive Covenants.** The Tenant shall comply with the rules, regulations, ordinances and restrictive covenants of the Landlord as are presently in effect (attached as Exhibit D) and may in the future be adopted. The Tenant will ensure that it will keep the Premises in a clean, orderly and well maintained condition. Tenant specifically agrees to make all repairs, alterations and replacements necessary to maintain the Premises in good condition and repair, and shall surrender the Premises when required by this Lease in good condition, reasonable use and wear excepted.

6.   <u>Lease Surety</u>.  The Tenant shall, upon execution of this Lease and prior to occupying the Premises, file with the Landlord a current good and sufficient corporate surety company bond, rental insurance policy, or other security (the "Lease Surety") to secure the rental payments in accordance with RCW 53.08.085 and in a form satisfactory to the Landlord, in the amount of $300,000, which is equal to approximately three (3) years payment of rents plus Leasehold Tax. The Port, in its sole discretion, may choose to discontinue the requirement for the Lease Surety in Year six (6), or any time thereafter, based on the performance of the tenant. The Port may also, in its sole discretion, require the Lease Surety to be re-instated if the performance of the tenant later becomes unsatisfactory. The Lease Surety may be adjusted by the Port from time to time as reasonably determined by the Port, and based on the Tenant's performance under the terms of this Lease. The Tenant shall have thirty (30) days after written notice to comply with the Port's directive. In no event shall the Landlord require the Lease Surety amount to exceed the amount of Three (3) years

18-03197-FPC7    Doc 468    Filed 01/29/20    Entered 01/29/20 14:07:09    Pg 11 of 40

rent under the Lease. In the event the Tenant fails to increase the Lease Surety amount within the thirty (30) day period, then the Tenant shall be in default of this Lease. No future amendment, extension or modification of this Lease shall be effective until the Lease Surety, insurer or guarantor has given its consent thereto, and the amount of the Lease Surety has been adjusted as required by the Landlord. The Tenant shall cause the Lease Surety to remain in continuous effect during the term of this Lease. Any lapse in the Lease Surety shall be considered a material default of this Lease.

7. <u>Tenant Improvements.</u>

    a. **Construction.** The Tenant may, from time to time, at its own expense, make improvements upon the Premises, whether structural or otherwise, and may install such machinery, equipment and facilities thereon as may be proper and necessary in connection with the use and operation of the Premises; provided, however, that all such construction and improvements shall be done in accordance with the provisions of the Restrictive Covenants which require, among other things, that Tenant's plans for such construction and improvements must have the written approval of the Landlord and that all applicable county, state and federal regulations are met and applicable permits are issued. With assistance from the Landlord, an FAA Form 7460-1, Notice of Proposed Construction or Alteration, for all new buildings, structures, improvements or alterations will be submitted to, and comments obtained from, the FAA. All improvements shall be constructed in a good and workmanlike manner. Tenant agrees to obtain and maintain, at its expense, public liability insurance and Workman's Compensation Insurance adequate to fully protect the Tenant and the Landlord against any and all liability for death or injury to persons or damage to the Premises by reason of the construction of the Building.

    b. **Substation.** As part of its business operations, Tenant may, at its own discretion, purchase and install a Substation on the Premises for the purpose of electrical generation, transmission and/or distribution. Upon the expiration of the term (including additional extended terms of this Lease, if exercised), or default of this Lease after the commencement of Year 16, the title to Substation shall be transferred to the Landlord. Landlord shall have no rights or claims to the Substation before the expiration of the term (including additional extended terms of this Lease, if exercised), or default of this Lease prior to the commencement of Year 16.

    c. **Permanent Structures.** Improvements constructed on the Premises by Tenant and personal property belonging to the Tenant, whether such property consists of facilities, furniture, machinery, equipment, appliances or trade fixtures, shall be and remain the property of the Tenant regardless of whether each property is affixed to the real property comprising the Premises; provided, however, the title to all Permanent Structures placed on the Premises shall revert to the Landlord. The term Permanent Structures shall include roofed and walled buildings built for permanent use and shall exclude pre-fabricated slab-on-grade buildings that could be removed from the Premises by the Tenant regardless of their constructional design and size).

    d. **Risk of Loss.** The full risk of destruction or damage to any of the Tenant's property rests with the Tenant, and the Tenant shall maintain, at their own cost, an insurance policy

18-03197-FPC7    Doc 468    Filed 01/29/20    Entered 01/29/20 14:07:09    Pg 12 of 40

covering their personal property.

8.    <u>Utilities</u>. The Tenant shall pay all charges for all utilities including, but not limited to, water, stormwater, sewer, natural gas, electrical, telephone or other communications service used, rented or supplied upon or in connection with the Premises, and shall indemnify the Landlord against any liability or damage on such account.

9.    <u>Landscaping</u>. The Tenant shall landscape the Premises and maintain the landscaping on the Premises in accordance with the restrictive covenants and any applicable County regulations. The Landlord shall maintain all landscaping that it has developed on the common properties adjacent to the Premises.

10.   <u>Snow Removal</u>. The Tenant shall be solely responsible for removing any accumulation of snow and ice from the sidewalk abutting the Premises, and from any parking areas serving the Premises and the improvements located thereon.

11.   <u>Signs—Advertisements</u>. All signs or symbols posted or displayed on the Premises by the Tenant shall be subject to the prior approval of the Landlord, which shall not be unreasonably withheld, and shall comply with any applicable County regulations. If the Tenant utilizes the name of the Landlord in any of its advertisements or publicity of any kind, the Landlord shall have the unilateral right to approve or disapprove of such use.

12.   <u>Indemnification of Landlord</u>. The Tenant shall indemnify, defend, and hold the Landlord and its officers, officials, employees and volunteers, and the premises, harmless, at the Tenant's expense, against all claims, expenses, and liabilities arising from:

    a.  The use or occupancy by the Tenant of the Premises;

    b.  Any default by the Tenant under this Lease;

    c.  Any act or omission of the Tenant or its agents, contractors, employers, employees, invitees, guests, licensees, trespassers, or franchisors.

13.   <u>Insurance</u>. The Tenant shall procure and maintain for the duration of the Term, insurance against claims for injuries to persons or damage to property which may arise from or in connection with the Tenant's operation and use of the Premises. The Tenant's insurance shall include Commercial General Liability Insurance on an all risk basis for an amount no less than $2,000,000 each occurrence, $5,000,000 general aggregate and Property Insurance for the full value of the Tenant's property and improvements with no coinsurance provisions. The insurance shall be with insurances having an A.M. Best rating of not less than A:VII.

    a.  The Tenant's maintenance of insurance as required by this Lease shall not be construed to limit the liability of the Tenant to the coverage provided by such insurance, or otherwise limit the Landlord's recourse to any remedy available at law or in equity.

    b.  The Tenant shall furnish the Landlord with original certificates and a copy of the amendatory endorsements, including but not necessarily limited to the additional insured endorsement, evidencing the insurance requirements of the Tenant.

18-03197-FPC7   Doc 468   Filed 01/29/20   Entered 01/29/20 14:07:09   Pg 13 of 40

c.  The Tenant shall provide the Landlord with written notice of any policy cancellation, within two business days of their receipt of such notice.

d.  The Tenant's Commercial General Liability insurance policy or policies are to contain, or be endorsed to contain that they shall be primary insurance as respect the Landlord. Any insurance, self-insurance, or insurance pool coverage maintained by the Landlord shall be excess of the Tenant's insurance and shall not contribute with it.

e.  Tenant and the Landlord hereby release and discharge each other from all claims, losses and liabilities arising from or caused by any hazard covered by property insurance on or in connection with the Premises or Building. This release shall apply only to the extent that such claim, loss or liability is covered by insurance.

f.  Failure on the part of the Tenant to maintain the insurance shall constitute a material Event of Breach, and notwithstanding the Lessee's right to Cure an Event of Breach, the Landlord may, after giving five (5) business days' notice of the Event of Breach, may procure or renew such insurance and pay any and all premiums in connection, with all sums so expended to be repaid to the Landlord on demand.

14.  <u>Damage by Fire or Other Casualty</u>. In the event that any building or improvement on the Premises is damaged or destroyed during the term of this Lease, the Tenant shall have sixty (60) days from the event to elect, in writing, delivered to the Landlord, to promptly and fully repair and restore the building or improvement or return the Premises to the condition that is similar to that which existed prior to commencement of the Lease.

15.  <u>Assignment</u>. The Tenant shall not assign this Lease nor sublet, mortgage or encumber in any way the whole or any part of the Premises without the express written permission of the Landlord, which shall not be unreasonably withheld. This Lease shall not be assignable by operation of law. Any transfer of this Lease by Tenant by merger, consolidation or liquidation, or any change in the ownership of, or power to vote the majority of its outstanding voting stock, shall constitute an assignment for the purposes of this Article. Any assignment of this Lease shall not extinguish or diminish the liability of the Tenant. Consent by the Landlord to any sublease or assignment shall not prevent its withholding consent to any subsequent sublease or assignment.

16.  <u>Performance of Tenant's Obligation by Landlord</u>. If the Tenant shall be in default hereunder, the Landlord may cure such default on behalf of Tenant, in which event the Tenant shall reimburse the Landlord for all sums paid to effect such cure, together with interest at the rate of current bank prime plus 3% per annum, or 12% per annum, whichever is the greater, together with reasonable attorney fees and costs incurred by the Landlord. In order to collect such reimbursement, the Landlord shall have all remedies available under this Lease for a default in payment of rent. Before the Landlord shall perform or cure obligations of the Tenant under this paragraph, the Landlord shall first give notice of Landlord's intent to do so, and shall provide a reasonable time but not less than Sixty (60) days to the Tenant to cure such default.

17.  <u>Right of Entry</u>. The Landlord or its authorized representatives reserves the right of entry in the case of an emergency. Except as provided below in section 20, all other entry will be in accordance with the right of entry policy as established by Tenant and approved by the Landlord.

18-03197-FPC7   Doc 468   Filed 01/29/20   Entered 01/29/20 14:07:09   Pg 14 of 40

18. <u>Default and Reentry</u>. If Tenant fails to pay any rent installment within 30 days after written notice from Landlord, or fails to perform any other covenant under this Lease within 30 days after written notice from Landlord stating the nature of the default, Landlord may cancel this Lease and reenter and take possession of the Premises using all necessary force to do so. Provided, however, that if Tenant defaults on a covenant other than its covenant to pay rent that cannot reasonably be cured within the 30-day period, Tenant shall not be deemed to be in default, if Tenant, within such period, commences and thereafter diligently initiates correction of said default. Notwithstanding Landlord's retaking possession upon default, Tenant's liability for the rent herein shall not be extinguished for the balance of the term of this Lease. Upon reentry, Landlord may relet or attempt to relet all or any part of the premises for a term longer or shorter than the term of this Lease, and upon such terms and conditions as the Landlord may deem advisable. Rents received from such letting shall be applied in the following order:

   a. To the expenses of reletting, including necessary alteration and repair of the premises, reasonable attorney fees and real estate commissions paid;

   b. To payment of all sums due or to become due to Landlord hereunder.

   c. Tenant shall pay Landlord any deficiency in items (a) and (b) on a monthly basis as it arises. Any reletting by Landlord following Tenant's default shall not be construed as an acceptance of a surrender of the Premises. If rent received upon reletting exceeds the rent received under this Lease, Tenant shall have no claim to the excess. Tenant hereby waives claim to damages that may be caused by Landlord's reentering and taking possession of the Premises or removing and storing the property of Tenant as provided in this Lease, and will hold Landlord harmless from loss, costs or damages occasioned Tenant thereby. No such reentry shall be construed to be a forcible entry.

19. <u>Surrender Upon Termination of Lease</u>. At the termination of the Term or the extended Term, or upon default, the Tenant shall surrender the Premises and ownership of all Permanent Structures, as defined in Paragraph 7(b) placed on the premises during the term of this Lease shall revert to the Landlord, in as good condition as it was in the beginning of the term, or, if installed after the beginning of the term, when the same were made, reasonable wear and tear excepted.

20. <u>Hazardous Waste and Materials</u>.

   a. Tenant shall comply with all present and future laws and regulations governing water pollution, air pollution, soil pollution, hazardous waste, hazardous and/or toxic material use, storage, transportation and disposal and hazardous or toxic chemical use, storage, transportation and disposal

   b. Tenant shall at all times comply with all city, county, state and federal environmental laws and environmental rules and regulations. Any breach of the conditions of this section will be a material breach of this Lease. Tenant further agrees that in the event of any such breach, Tenant shall be solely responsible for all fines, costs, penalties, and expenses in connection with said breach, and shall hold Landlord harmless therefrom.

   c. Tenant shall indemnify, defend, and hold Landlord harmless from any and all injury, damage or contamination of the Premises, property of third parties or injury to any person,

18-03197-FPC7     Doc 468     Filed 01/29/20     Entered 01/29/20 14:07:09     Pg 15 of 40

and will indemnify and hold Landlord harmless from any and all claims, judgments, penalties, costs, fines and lawsuits, which could arise during the term of this Lease or after the Lease term as a result of the presence or use of hazardous materials by Tenant, or caused or permitted by Tenant. Without limiting the foregoing, if the presence of any hazardous material on the Premises caused or permitted at any time by the Tenant results in any contamination of the Premises, Tenant shall take all actions at its sole expenses as are necessary to return the Premises to the condition that existed prior to the introduction of such hazardous material to the Premises; provided, Landlord's approval to undertake any clean up shall first be obtained.

    d.    The covenants, warranties and agreements to hold harmless the Landlord expressed in this section shall survive the termination of this Lease.

21.    <u>Condemnation.</u> If all of the Premises and the Tenant's interest therein shall be condemned for public use by any authority superior to the Landlord, such as the State of Washington or the United States of America, this Lease shall terminate without liability of either party to the other, with each party having the right to make a claim in such condemnation proceedings as their interests may appear.

    a.    If the entire Premises or such portion thereof, will preclude the Tenant from conducting its business is taken by eminent domain, this Lease shall expire on the date when the Premises shall be so taken, and the rent shall be apportioned as of that date.

    b.    If only a portion of the Premises is taken by eminent domain and the tenant continues its business, the rent payable at that time shall be decreased in proportion to the amount or portion of the Premises as shall be taken under the proceeding.

    c.    Landlord shall be entitled to all compensation resulting from the taking of the Premises. Tenant shall be entitled to make claim against the taking entity for compensation for loss incurred by Tenant for such taking.

22.    <u>Abandonment/Tenant's Property.</u> Tenant shall not vacate or abandon the Premises at any time during the primary or extended terms, unless otherwise provided in this Lease. In addition to any other remedy available to Landlord, if Tenant shall abandon, vacate or surrender the Premises, or be dispossessed by process of law, or otherwise, any personal property belonging to Tenant left upon the Premises, may, at Landlord's option, be placed in storage, and Tenant shall agree to pay reasonable storage costs associated with the storage.

23.    <u>Right of First Refusal.</u> Tenant shall have an ongoing Right of First Refusal to lease all or any part of Lot 8. Tenant shall have fourteen (14) days to exercise this right, on the same terms as the Port's Offer (as defined below), after notification by the Port. Such Right of First Refusal shall be exercisable by Tenant only if no event of default by Tenant under this Lease then exists and is continuing beyond the expiration of any notice and cure periods applicable thereto under the Lease, as of the date of submission of the Offer by the Port to Tenant.

If the Port receives a bona fide offer (the "Offer") from a prospective tenant to lease all or any part of Lot 8, the Port shall give Tenant written notice of such fact, setting forth in such notice all of the material terms and conditions of such Offer. After the Port notifies Tenant in writing of such an

18-03197-FPC7   Doc 468   Filed 01/29/20   Entered 01/29/20 14:07:09   Pg 16 of 40

Offer, Tenant shall have fourteen (14) days to exercise the Right of First Refusal by written notice to the Port. If Tenant exercises the Right of First Refusal, Tenant shall be required to lease the entire portion of Lot/Lots that are the subject of the Offer. If Tenant fails to notify the Port of its election within the aforesaid fourteen (14) day period, Tenant shall be deemed to have waived the Right of First Refusal with respect to the subject Offer. If the Port and the party who made the Offer are not able to reach an agreement on the final terms of their Lease, or the material terms and conditions of the Offer are amended from those sent to the Tenant, Tenant's Right of First Refusal shall be reinstated and the Port agrees to give Tenant another fourteen days' written notice of its right to exercise the Right of First Refusal on the new or amended terms.

24. <u>Miscellaneous</u>.

   a. **Notices.** Any notices by either party to the other shall be in writing and shall be deemed to be duly given only if delivered personally, or mailed by certified mail in a postage paid envelope addressed to the other party as identified below and/or at the last known address of the party to whom the notice is given.

      If to Tenant: _____
      _____
      _____

      With Copies to: _____
      _____
      _____

      If to Landlord:  Lisa Parks, Executive Director
       Port of Douglas County
       455 6th St. N.E. Suite 100
       East Wenatchee, WA 98802

      With Copies to:  Quentin Batjer
       Davis, Arneil Law Firm, LLP
       617 Washington Street
       Wenatchee Washington 98801

   b. **Attorney Fees.** This Lease shall be construed in accordance with the laws of the State of Washington. In the event of any action arising hereunder, the prevailing party shall be granted its attorney fees and court costs. Venue for such action shall lie in Douglas County, Washington.

   c. **Successors and Assigns.** All rights, remedies, liabilities herein given to or imposed upon either of the parties hereto, shall inure to the benefit of and be binding upon their respective heirs, executors, administrators, successors in interest, transferrees, and assigns.

   d. **Liens and Insolvency.** Tenant shall keep the Premises and the improvements free from any liens, excluding long term financing, arising out of any work performed, materials ordered or obligations incurred by Tenant. If Tenant becomes insolvent, voluntarily or involuntarily bankrupt, or if a receiver, assignee, or other liquidating officer is appointed for the business of Tenant, then Landlord may, at its option, cancel this Lease without notice to the Tenant.

18-03197-FPC7   Doc 468   Filed 01/29/20   Entered 01/29/20 14:07:09   Pg 17 of 40

e.   **Waiver.** The waiver by any party of a breach of any provision of this Lease shall not be deemed a continuing waiver or a waiver of any subsequent breach of this Lease.

f.   **Non Discrimination.** The Tenant agrees not to discriminate in its business dealings or hiring practices on the grounds of race, color, national origin or sex.

g.   **Severability.** If any provision of this Lease shall be declared invalid or unenforceable, the remainder of the lease shall continue in full force and effect.

h.   **Entire Agreement.** This Lease contains the entire agreement between the parties and cannot be modified or amended unless the same is in writing and signed by both parties and attached hereto.

i.   **Counterparts.** This Agreement may be executed in any number of separate counterparts, all of which taken together shall be deemed one original instrument notwithstanding that all parties are not signatory to the same counterpart.

j.   **Effective Date.** This Lease is effective on the date signed by the Parties.

PORT OF DOUGLAS COUNTY

By: _Lisa Parks_

Lisa Parks, Executive Director

Date: _3/9/17_

TENANT

By: _Dave Carlson, CEO_

(Authorized representative)

Date: _3/9/17_

18-03197-FPC7    Doc 468    Filed 01/29/20    Entered 01/29/20 14:07:09    Pg 18 of 40

THIS LEASE ADDENDUM (the "Addendum") is made and dated this 9th day of August, 2017, by and between the PORT OF DOUGLAS COUNTY, a municipal corporation of the State of Washington (the "Landlord") and GIGA WATT, INC., a Washington corporation (the "Tenant") (each, a "Party" and collectively, the "Parties").

A. The Parties entered into a Lease (the "Lease") on March 1, 2017, a copy of which is attached and incorporated by this reference, for commercial property at the Pangborn Airport Business Park, as more particularly described in the Lease; and

B. The Parties obtained a grant/loan package from the Community Economic Revitalization Board ("CERB") to fund the construction of certain improvements to the leased premises; and

C. The Parties now seek to increase the lease rate due to the costs of the land improvements by the Landlord

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, LANDLORD and TENANT agree to further amend the Lease as follows

1. **Base Rent**. The annual rate as set forth in Paragraph 4 of the Lease shall be revised to twenty-nine cents ($0.295) per square foot. The revised Rent Schedule for Years 1-15 shall be as follows:

| | Month | Annual Lease | Monthly Lease Payment | Monthly Leasehold Tax | Total Due Monthly | Annual Total Due |
|---|---|---|---|---|---|---|
| Year 1 | 1 | 101,871.17 | Deferred | 1,090.02 | 1,090.20 | |
| | 2 | | Deferred | 1,090.02 | 1,090.20 | |
| | 3 | | Deferred | 1,090.02 | 1090.20 | |
| | 4 | | Deferred | 1,090.02 | 1090.20 | |
| | 5 | | Deferred | 1,090.02 | 1090.20 | |
| | 6 | | Deferred | 1,090.02 | 1090.20 | |
| | 7 | | 16,978.53 | 2,180.04 | 19,158.57 | |
| | 8 | | 16,978.53 | 2,180.04 | 19,158.57 | |
| | 9 | | 16,978.53 | 2,180.04 | 19,158.57 | |
| | 10 | | 16,978.53 | 2,180.04 | 19,158.57 | |
| | 11 | | 16,978.53 | 2,180.04 | 19,158.57 | |

| | | 12 | 16,978.53 | 2,180.04 | 19,158.57 | |
|---|---|---|---|---|---|---|
| Year 2 | 103,399.24 | 8,616.60 | 1,106.37 | 9,722.97 | 116,675.70 |
| Year 3 | 104,950.23 | 8,745.85 | 1,122.97 | 9,868.82 | 118,425.84 |
| Year 4 | 106,524.48 | 8,877.04 | 1,139.81 | 10,016.85 | 120,202.22 |
| Year 5 | 108,122.35 | 9,010.20 | 1,156.91 | 10,167.10 | 122,005.26 |
| Year 6 | 109,744.18 | 9,145.35 | 1,174.26 | 10,319.61 | 123,835.33 |
| Year 7 | 111,390.34 | 9,282.53 | 1,191.88 | 10,474.41 | 125,692.86 |
| Year 8 | 113,061.20 | 9,421.77 | 1,209.75 | 10,631.52 | 127,578.26 |
| Year 9 | 114,757.12 | 9,563.09 | 1,227.90 | 10,790.99 | 129,491.93 |
| Year 10 | 116,478.47 | 9,706.54 | 1,246.32 | 10,952.86 | 131,434.31 |
| Year 11 | 118,225.65 | 9,852.14 | 1,265.01 | 11,117.15 | 133,405.83 |
| Year 12 | 119,999.04 | 9,999.92 | 1,283.99 | 11,283.91 | 135,406.91 |
| Year 13 | 121,799.02 | 10,149.92 | 1,303.25 | 11,453.17 | 137,438.02 |
| Year 14 | 123,626.01 | 10,302.17 | 1,322.80 | 11,624.97 | 139,499.59 |
| Year 15 | 125,480.40 | 10,456.70 | 1,342.64 | 11,799.34 | 141,592.08 |

2.  **Lease Surety**. The Lease Surety as set forth in Paragraph 6 of the Lease shall be revised to reflect the increase in the base rent. The revised Lease Surety shall be increased by $50,000 to $350,000, which is equal to approximately three (3) years payment of rents plus Leasehold Tax. Payment shall be in accordance with RCW 53.08.085 and in a form satisfactory to the Landlord.

3.  **Effect of Prior Agreements**. Except as provided in this Addendum, all other terms of the Lease shall be continued as agreed. In the event of any inconsistency between the provisions of the Lease and this Addendum, the provisions of this Addendum shall govern.

4.  **Effective Date**. This Addendum is effective on the date signed by the Parties.

PORT OF DOUGLAS COUNTY

By: _Lisa Parks_

Lisa Parks, Executive Director

Date: _8/15/17_

TENANT

By: _Dave Carl_

(Authorized representative)

Date: _8/15/17_

# EXHIBIT B

E-FILED

NOVEMBER 01, 2018

TRISTEN WORTHEN

DOUGLAS COUNTY CLERK

CDG

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF DOUGLAS

|  |  |
|---|---|
| PORT OF DOUGLAS COUNTY, WASHINGTON, a municipal corporation of the State of Washington, | ) ) ) ) NO. **18-2-00378-09** |
| Plaintiff, | ) ) VERIFIED COMPLAINT FOR |
| vs. | ) UNLAWFUL DETAINER ) |
| GIGA WATT, INC., a Washington corporation, | ) ) ) |
| Defendant | ) ) |

FOR A CAUSE OF ACTION IN UNLAWFUL DETAINER, the plaintiff, through his attorneys of record, alleges as follows:

1.    Plaintiff, Port of Douglas County, Washington, is a municipal corporation of the State of Washington. Plaintiff owns real property located at 643, 644, 675, and 676 South Billingsley Drive, East Wenatchee, Douglas County, Washington (hereinafter referred to as "the Premises").

2.    Defendant, Giga Watt, Inc., is a Washington corporation with its principle place of business in Douglas County, Washington.

LAW OFFICES OF
DAVIS, ARNEIL LAW FIRM, LLP
617 WASHINGTON STREET
WENATCHEE, WA 98801
TELEPHONE (509) 662-3551

18-03197-FPC7    Doc 468    Filed 01/29/20    Entered 01/29/20 14:07:09    Pg 22 of 40

1     3.     Jurisdiction and venue is proper in this Court.

2     4.     On March 9, 2017, Plaintiff and Defendant executed an agreement entitled Land

3 Lease for Portion of Pangborn Airport Business Park East Wenatchee, (hereinafter referred to

4 as "the Lease"). A true and correct copy of the Lease is attached hereto as **Exhibit A.**

5     5.     An Addendum to Lease Agreement Pangborn Airport Business Park East

6 Wenatchee, Washington, (hereinafter referred to as "the Addendum") was executed by the parties

7 on August 15, 2017, which modified certain terms of the Lease. A true and correct copy of the

8 Addendum is attached hereto as **Exhibit B.**

9     6.     Pursuant to paragraph 3 of the Lease, Plaintiff leased the Premises to Defendant for

10 a term of thirty (30) years beginning March 1, 2017.

11     7.     Pursuant to paragraph 1 of the Addendum, rent is calculated based on an annual

12 rate of twenty-nine and one half cents ($0.295) per square foot with an increase in rent each year.

13     8.     Pursuant to paragraph 4(g) of the Lease, the Lease is a triple-net lease, with the

14 landlord having no obligation to provide any services and the tenant paying 100 percent of all

15 operating costs.

16     9.     Pursuant to paragraph 6 of the Lease, and paragraph 2 of the Addendum,

17 Defendant was required to provide a surety of $350,000.00 as rental surety under RCW

18 53.08.085.

19     10.     Pursuant to paragraphs 7(b)-(c) of the Lease, tenant is the owner of any substation

20 and improvements constructed on the premises, except those improvements which are defined as

21 "Permanent Structures" under the Lease.

22

23

24 VERIFIED COMPLAINT FOR UNLAWFUL
     DETAINER
     Page 2 of 6

18-03197-FPC7    Doc 468    Filed 01/29/20    Entered 01/29/20 14:07:09    Pg 23 of 40

11.     Pursuant to paragraph 24(d) of the Lease, Defendant was required to "keep the Premises and the improvements free from any liens, excluding long term financing, arising out of any work performed, materials ordered or obligations incurred by Tenant."

12.     On August 2, 2018, a Claim of Lien was filed by Consolidated Electrical Distributors, Inc. in the real property records of Douglas County, Washington, AFN # 3214548. The Claim of Lien alleges to encumber improvements on the Premises, and named Chelan and Douglas County Port District and Defendant as owners of the real property and improvements. The person alleged to owe the debt to the lien claimant is "Neppel Electric & Controls LLC." The sum of the lien claimed is $145,093.83 plus interest and sales tax. A copy of the Claim of Lien is attached hereto as **Exhibit C**.

13.     On August 6, 2018, a Claim of Lien was filed in the real property records of Douglas County, Washington, AFN # 3214623. The lien claimant is Neppel Electrical & Controls, LLC, a Washington limited liability company. The alleged respondents is Defendant, Plaintiff, and the Port of Chelan County. The Claim of Lien alleges to encumber the Premises in whole, and not simply the improvements. The sum of the lien claimed is $479,959.63, together with interest thereon. A copy of the Claim of Lien is attached hereto as **Exhibit D**.

14.     Pursuant to the paragraph 18 of the Lease, Plaintiff delivered by both email and hand delivery a 30-Day Notice of Breach of Lease on October 1, 2018 (hereinafter referred to as "30-Day Notice"). A copy of the 30-Day Notice is attached hereto as **Exhibit E**.

15.     A 10-Day Notice to Cure or Vacate (hereinafter referred to as "10-Day Notice") was served upon Defendant by posting a copy of the 10-Day Notice upon the front gate of the Premises, and mailing to the addresses of the Premises four copies of the 10-Day Notice on October 19, 2018. A copy of the 10-Day Notice is attached hereto as **Exhibit F**. A copy of the

VERIFIED COMPLAINT FOR UNLAWFUL
DETAINER
Page 3 of 6

LAW OFFICES OF
**DAVIS, ARNEIL LAW FIRM, LLP**
617 WASHINGTON STREET
WENATCHEE, WA 98801
TELEPHONE (509) 662-3551

1  Declaration of Posting of Donald Jones is attached hereto as **Exhibit G.** A copy of the

2  Declaration of Mailing of Amy Brittingham is attached hereto as **Exhibit H.**

3       16.    In addition to posting and mailing at the Premises, Plaintiff personally served the

4  10-Day Notice on the registered agent of Defendant on October 19, 2018. A copy of the

5  Declaration of Service of Donald Jones is attached hereto as **Exhibit I.**

6       17.    More than 30 days have elapsed since the 30-Day Notice was delivered to

7  Defendant. More than 11 days have elapsed since the 10-Day Notice was posted and mailed to

8  the Premises. More than 10 days have elapsed since the 10-Day notice was personally served and

9  mailed to the registered agent. Defendants have failed to cure the breaches by not having the liens

10  removed from the improvements on the Premises. The Plaintiff is entitled to an Order terminating

11  the Lease Agreement, declaring Defendants to be in unlawful detainer of the Premises, requiring

12  restitution of the Premises to the Plaintiff, providing damages for lost future rent, costs and fees in

13  an amount to be proven herein, and other contractual and equitable remedies.

14       WHEREFORE, Plaintiff prays for a judgment as follows:

15       1.    For a judgment of unlawful detainer against Defendant;

16       2.    For an Order for a Writ of Restitution restoring the Premises to Plaintiff as against

17  Defendant;

18       3.    For a judgment declaring the tenancy between the Plaintiff and Defendant

19  terminated;

20       4.    For a judgment against Defendant for rents, attorney fees and costs, and other

21  damages in an amount to be proven;

22       5.    For attorney's fees and costs as authorized by statute;

23

24  VERIFIED COMPLAINT FOR UNLAWFUL
DETAINER
Page 4 of 6

1      6.      For such other and further relief as the Court deems just and equitable under these

2  circumstances.

3  //

4  //

      DATED this 31st day of October, 2018.

5

6                 DAVIS, ARNEIL LAW FIRM, LLP

7             By

8                 David R. Law, WSBA No. 48057

24  VERIFIED COMPLAINT FOR UNLAWFUL
     DETAINER
     Page 5 of 6

LAW OFFICES OF
DAVIS, ARNEIL LAW FIRM, LLP
617 WASHINGTON STREET
WENATCHEE, WA 98801
TELEPHONE (509) 662-3551

## Verification of Plaintiff

State of Washington

County of _DOUGLAS_

      Lisa Parks, being first duly sworn, on oath deposes and says: That she is the Executive Director of the Plaintiff herein; that she has read the above and foregoing Complaint for Unlawful Detainer, knows the contents thereof and believes the same to be true. That she is

authorized by Plaintiff to execute the verification of this Complaint for Unlawful Detainer.

_Lisa Parks_

Lisa Parks, Executive Director for Plaintiff

      Signed and sworn to or affirmed before me this _31ST_ day of October , 2018.

Signature     _Douglas A. Provo_

_DOUGLAS A. PROVO_ ,Notary Public

My Appointment Expires   _FEBRUARY 13, 2019_

DOUGLAS A. PROVO
Commission Expires
NOTARY
PUBLIC
February 13, 2019
STATE OF WASHINGTON

VERIFIED COMPLAINT FOR UNLAWFUL
DETAINER
Page 6 of 6
PADRLW-NGiga Watt, Inc\Verified Complaint for UD.doc

LAW OFFICES OF
DAVIS, ARNEIL LAW FIRM, LLP
617 WASHINGTON STREET
WENATCHEE, WA 98801
TELEPHONE (509) 662-3551

# EXHIBIT C

1  Pamela M. Egan, WSBA No. 54736[1]
   Paul H. Beattie, WSBA No. 30277
2  CKR Law LLP
   506 2nd Avenue, Suite 1400
3  Seattle, WA 98114
   Telephone: (415) 297-0132
4  Facsimile: (206) 582-5001
   Email: pegan@ckrlaw.com
5
       *Attorneys for Mark D. Waldron, in his capacity*
6      *as the duly-appointed Chapter 11 Trustee herein*

7

8              **UNITED STATES BANKRUPTCY COURT**
                **EASTERN DISTRICT OF WASHINGTON**
9

10  In re:                          Case No. 18-03197

11  GIGA WATT, Inc., a Washington   The Honorable Frederick P. Corbit
    corporation,
12                                  Chapter 11
               Debtor.
13                                  **STIPULATION BETWEEN THE**
                                    **CHAPTER 11 TRUSTEE AND THE**
14                                  **PORT OF DOUGLAS COUNTY**
                                    **REGARDING THE LEASE, THE**
15                                  **APPLICATION OF THE SURETY**
                                    **DEPOSIT TO THE CLAIMS OF**
16                                  **THE PORT OF DOUGLAS**
                                    **COUNTY, AND THE**
17                                  **MODIFICATION OF THE**
                                    **AUTOMATIC STAY**

18      This *Stipulation Between the Chapter 11 Trustee and the Port of Douglas*

19  *County Regarding the Lease, the Application of the Surety Deposit to the Claims*

20  *of the Port of Douglas County, and the Modification of the Automatic Stay* (the

21  _____

22  [1] Ms. Egan was recently admitted to the Washington State Bar. She will shortly
    apply for admission to the U.S. District Court for the E.D. Washington. She is
23  admitted in this case *pro hac vice*.

24  STIPULATION BET. CH. 11 TRUSTEE AND
    PORT OF DOUGLAS COUNTY RE LEASE, ETC. - Page 1
25

"Stipulation") is entered into by and between the Port of Douglas County (the "Port"), on the one hand, and Mark D. Waldron, in his official capacity as the Chapter 11 Trustee in the above-captioned bankruptcy case (the "Chapter 11 Trustee"), on the other hand.

IT HEREBY STIPULATED AND AGREED that the Chapter 11 Trustee's time to assume or reject that certain *Lease for Portion of Pangborn Airport Business Park East Wenatchee, Washington*, dated March 9, 2017, and *Addendum to Lease Agreement*, dated August 15, 2017, (collectively, the "Lease") entered into by and among the Port and Giga Watt, Inc. (the "Debtor"), is hereby extended for ninety days to June 17, 2019 (the "90-Day Extension Period"); ***provided that*** the Lease shall be deemed rejected as of March 19, 2019 without the need for further notice or Order if, within thirty days of the date of this Stipulation, the Court has not entered an Order that both (1) approves this Stipulation and (2) modifies the automatic stay set forth in section 362 of title 11 of the United States Code to permit the Port to exercise its rights under the Stipulation (the "Approval Order").

IT IS FURTHER STIPULATED AND AGREED that the Port hereby grants to the Chapter 11 Trustee the right to defer $4,000.00 in monthly rent (the "Rent Deferral") from the current monthly rent of $9,722.97 during the 90-Day Extension Period, effective as of the date that the Court enters the Approval Order.

STIPULATION BET. CH. 11 TRUSTEE AND
PORT OF DOUGLAS COUNTY RE LEASE, ETC. - Page 2

1    IT IS FURTHER STIPULATED AND AGREED that if the Chapter 11

2  Trustee has not removed the personal property on Lots 8 & 9 by March 31, 2019,

3  then the Port will have the express right to do so. The Chapter 11 Trustee shall not

4  wait until entry of the Approval Order before removing the personal property on

5  Lots 8 & 9.

6    IT IS FURTHER STIPULATED AND AGREED that the Port shall be

7  allowed to apply the $350,000 surety deposit that the Port is currently holding

8  with respect to the Lease (the "Surety Deposit") to the following expenses:

9      1.    To pay the cost of Port administrative expenses incurred up to

10  March 19, 2019 in the above-captioned bankruptcy case, including, but not limited

11  to, rent at the current rental rate under the Lease, attorneys fees, fencing costs, and

12  any payments made by the Port to maintain the premises that are the subject of the

13  Lease;

14      2.    To pay the cost of filling the hole that the Debtor dug and left

15  on land that is adjacent to the Premises and that the Port administers;

16      3.    To pay the cost of removing the personal property located on

17  Lots 8 & 9 of the property that the Port administers if the Chapter 11 Trustee has

18  failed to do so on or before March 31, 2019;

19      4.    To pay the cost of all administrative expenses as they are

20  incurred by the Port during the 90-Day Extension Period and to the date of the

21  closing of a transaction pursuant to which the Lease is assumed and assigned, in

22  the event that the 90-Day Extension Period is extended;

23

24  STIPULATION BET. CH. 11 TRUSTEE AND
PORT OF DOUGLAS COUNTY RE LEASE, ETC. - Page 3

25

1      5.    At the end of the 90-day Extension Period, to reimburse the

2 Port for the Rent Deferral amount;

3      6.    In the event of an extension of the 90-Day Extension Period

4 and if the Lease is not assumed and assigned before July 31, 2019, then the Port

5 may treat the payment due under CERB loan S17-790A0-133 on July 31, 2019 in

6 the amount of $17,830.36 (the "July CERB Payment") as Deferred Rent and may

7 pay the July CERB Payment out of the Surety Deposit; provided that, if the Surety

8 Deposit is depleted by July 31, 2019, then the July CERB Payment shall be

9 included as a closing cost or a cure cost payable to the Port in the event the 90-

10 Day Extension Period is extended and the Chapter 11 Trustee assumes and assigns

11 the Lease pursuant to section 365 of the Bankruptcy Code; and

12      7.    The Port may apply the Surety Deposit to the payment of

13 administrative expenses, excluding Rent Deferral, as they are incurred.

14      IT IS FURTHER STIPULATED AND AGREED that the automatic stay

15 provided by section 362 of title 11 of the United States Code is hereby modified to

16 allow the Port to exercise its rights under this Stipulation commencing on the date

17 that the Approval Order is entered on the docket of the Court.

18      IT IS FURTHER STIPULATED AND AGREED that nothing contained in

19 this Stipulation shall limit the Port's right to assert any and all claims it may have

20 against the Debtor's estate at the conclusion of the 90-Day Extension Period.

21      IT IS FURTHER STIPULATED AND AGREED that this Stipulation may

22 be executed in counterparts and that a facsimile or electronic signature shall have

23 the same binding effect on all parties hereto as an original signature.

24 STIPULATION BET. CH. 11 TRUSTEE AND
PORT OF DOUGLAS COUNTY RE LEASE, ETC. - Page 4

25

IT IS FURTHER STIPULATED AND AGREED that this stipulation, together with the Lease, constitute the sole and entire agreement of the Parties with respect to the subject matter of this Stipulation, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to the subject matter.

March 19, 2019                     **PORT OF DOUGLAS COUNTY**

By: _Lisa Parks_____

Printed Name:

Its: _Executive Director_____

March 19, 2019                     **ESTATE OF GIGA WATT INC.**

By: _____
       Mark D. Waldron, in his capacity as
       the Chapter 11 Trustee in the
       bankruptcy case of Giga Watt, Inc.,
       and not in any personal capacity.

STIPULATION BET. CH. 11 TRUSTEE AND
PORT OF DOUGLAS COUNTY RE LEASE, ETC. - Page 5

Scanned with CamScanner

# EXHIBIT D

So Ordered.

Dated: April 16th, 2019

_Frederick P. Corbit_

Frederick P. Corbit
Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

In re:

GIGA WATT, Inc., a Washington corporation,

Debtor.

Case No. 18-03197 FPC 11

Chapter 11

**ORDER GRANTING CHAPTER 11 TRUSTEE'S MOTIONS FOR ORDERS (I) APPROVING STIPULATION PURSUANT TO LBR 9013-1(c)(3) AND (II) GRANTING EXPEDITED CONSIDERATION THEREOF**

**[No Hearing Requested]**

This matter came before this Court on the Chapter 11 Trustee's Motions for Orders (i) Approving Stipulation Pursuant to LBR 9013-1(c)(3) and (ii) Granting Expedited Consideration Thereof (the "Motion")[1] filed by Mark D. Waldron, in

---

[1] Unless otherwise defined herein, capitalized terms used in this Order have the meanings ascribed to them in the Motion.

Order Granting Chapter 11 Trustee's Motions
for Orders (i) Approving Stipulation, etc. - Page 1

1 | his official capacity as the Chapter 11 Trustee, in the above-captioned bankruptcy

2 | case.

3 |     The Court finds good cause to approve the *Stipulation Between the Chapter*

4 | *11 Trustee and the Port of Douglas County Regarding the Lease, the Application*

5 | *of the Surety Deposit to the Claims of the Port of Douglas County, and the*

6 | *Modification of the Automatic Stay* (the "Stipulation"), attached to the Motion as

7 | Exhibit A.

8 |     The Court further finds that notice of the Motion and manner of service

9 | thereof by email was proper and sufficient and that a reduction of the time period

10 | to object to the Motion was necessary.

11 |     IT IS HEREBY ORDERED as follows:

12 |     1.    The Motion is GRANTED in its entirety:

13 |     2.    The Stipulation is approved;

14 |         [*This Order continues on the following page.*]

Order Granting Chapter 11 Trustee's Motions
for Orders (i) Approving Stipulation, etc. - Page 2

1   3. The automatic stay provided by 11 USC § 362 is modified pursuant

2 to the terms set forth in the Stipulation and such modification shall be effective

3 fourteen days after the Notice of Stipulation to Modify Automatic Stay was filed

4 and served in this case.

5       /// END OF ORDER ///

6 Presented by:

7 CKR LAW LLP

8

9  *Pamela M. Egan*

10 Pamela M. Egan (WSBA 54637) *(pro hac vice)*
506 2nd Avenue, 14th floor

11 Seattle, WA 98114
Tel.: (415) 297-0132

12 E: pegan@ckrlaw.com

13 *Of attorneys for Mark Waldron in his capacity*
*as the duly-appointed Chapter 11 Trustee*

14

15

16

17

18

19

20

21

22

23

24 Order Granting Chapter 11 Trustee's Motions
for Orders (i) Approving Stipulation, etc. - Page 3

25

# EXHIBIT E

## Giga Watt Site Inventory

| Description | Quantity |
|---|---|
| **Personal Property, Continued...** | |
| Cabling | 11 boxes & 17 bags |
| Plastic Utility cart | 1 |
| Saw horses | 4 |
| Misc vaults near substation | 5 |
| Partially constructed substation | |
| Filters (installed) | 288 |
| Folding table | 2 |
| | |
| **Fixtures** | |
| **East Side of So. Billingsley Dr.** | |
| *Demo Pod Transformer | 1 |
| *Demo Pod Electrical meter | 1 |
| *Demo Pod Switch Gear | 1 |
| *Demo Pod Breaker Panels | 1 |
| Foundations (1 is not backfilled) | 12 |
| Electrical vault | 25 |
| Electrical vault cover (1 broken) | 14 |
| Partially constructed Pod | 6 |
| Completed Pod | 1 |
| Electrical Breaker Panels with no wiring | 2 |
| Conductors to electical vault | 2 |
| Wiring to electrical breaker panel | 1 |
| Electrical Breaker panel complete | 1 |
| **West Side of So. Billingsley Dr.** | |
| Electrical Vault | 24 |
| Electrical Vault Cover | 24 |
| *Electrical Transformer | 9 |
| *Electrical Switch Gear | 12 |
| *Electrical Breaker Panels (complete) | 12 |
| | |
| * Including associated electrical wiring and conductors | |
| | |
| **Personal Property still on Lots 8 & 9** | |
| Rock/gravel piles | 5 |
| Concrete debris | |
| Misc substation parts (very large) | |
| Misc. wood and wood pallets | |
| Electrical vault cover | 4 |

# Giga Watt Site Inventory

| Description | Quantity |
|---|---|
| **Personal Property** | |
| **East Side of So. Billingsley Way** | |
| Security grates for cooling openings | 5 |
| Misc. Conduit,Pipe, Hose, Drain Pipe | multi. Areas |
| Industrial Fans (Crated) | 46 |
| Steel Panel (blue) | 1 |
| Fence posts (black) in concrete | 12 |
| Fence T-posts | 6 |
| Giga Watt sign (demo pod) | 1 |
| 12' x 1/2" rebar | 4 piles |
| Misc. lumber, 2x10, 2x6, plywood | various locations |
| * Metal siding & roofing | 3 pallets |
| * Misc siding | varoius locations |
| * Misc roofing | various locations |
| Saw horses | 4 |
| Metal siding and roofing screw | 1 box & 3 bags |
| Panel tape by 3M | |
| 12' x 8' metal shelving (for power supplies) | 8 pallets |
| Stainless steel metal shelving 2' x  4' | 7 pallets |
| Stainless steel metal shelving 2' x 6' | 2 pallets |
| Steel floor grates | 6 |
| Misc. stainless steel shelving posts & rails | |
| Shelving brackets | 10 boxes |
| Shelving brackets | 12 buckets |
| Aluminum 1" angle brackets | 3 pallets |
| Misc. shelving posts and rails (steel) | 5 pallets |
| Metal flashing | 11-1/2 pallets |
| Uninstalled exterior door | 2 |
| Partial interior wiring | 2 pods |
| Partial Pod | 6 |
| Demo Pod | 1 |
| **West Side of So. Billingsley Way** | |
| Completed pods | 12 |
| 40' shipping container | 2 |
| Power cabinet (uninstalled) | 1 |
| Wooden wire spool (no wire) | 3 |
| Racks | 50 |
| Power cords | Many |
| PDUs | Many |
| Servers (Alpha Miners) | Many |
| Industrial Fans (installed in completed pods) | 324 |
| 8 ft step ladder | 7 |
| Misc. debris (garbage cans, rebar, pallets) | |