# AGREEMENT AND GENERAL RELEASE OF CLAIMS

This Settlement Agreement and General Release of Claims (the **Agreement**") is entered into by and between David M. Carlson, Dorrinda M. Carlson, Enterprise Focus, Inc., a Washington corporation, Clever Capital, LLC, a Washington limited liability company (collectively, "**Carlson**") and Mark D. Waldron, in his capacity as the Chapter 11 Trustee (the "**Trustee**") acting on behalf of and representing the estate (the "**Estate**") in the bankruptcy case (the "**Bankruptcy Case**") of Giga Watt, Inc., ("**Giga Watt**" or the "**Debtor**") which is pending in the U.S. Bankruptcy Court for the Eastern District of Washington (the "**Bankruptcy Court**") and assigned Case No. 18-03197-FPC 11. Carlson and the Trustee are referred to herein collectively, as the "**Litigation Parties**." Terrain Holdings, LLC ("**Terrain Holdings**") and the TNT Landlords (defined below) are entering into certain provisions of this Agreement. The Litigation Parties, Terrain Holdings and the TNT Landlords are at times collectively referred to herein as the "**Parties**."

## RECITALS

**A.** The Litigation Parties are engaged in litigation in the matter of *Mark D. Waldron v. David M. Carlson, et al.*, Adversary Case No. 19-80012, (the "**Adversary Proceeding**") pending in the Bankruptcy Case with regard to a series of actions generally alleged in the Verified Complaint filed by the Trustee in the Adversary Proceeding, regarding the facility that Giga Watt operated at 474 Highline Drive, East Wenatchee, Washington (the "**TNT Facility**"). Carlson denied the Trustee's allegations in the Adversary Proceeding.

**B.** The Trustee alleged in the Adversary Proceeding that the Estate owned Giga Watt's operations at the TNT Facility, and had an interest as tenant in the TNT Facility pursuant to the sale and lease agreements (the "**TNT Leases**") listed on Schedule 1 attached hereto. The landlords with respect to the TNT Leases are Darrell Thompson, Kelly Thompson, Patricia Thompson, and TNT Business Complexes, LLC (collectively, the "**TNT Landlords**").

**C.** On or about November 16, 2018, Clever Capital, LLC, one of the Litigation Parties, and Giga Watt entered into that certain agreement entitled, *Commercial Lease*, pursuant to which Clever Capital, LLC purported, *inter alia*, to lease to Giga Watt Buildings A, B and H of the TNT Facility (the "**November 16 Agreement**").

**D.** The following claims were filed by and amended in the Bankruptcy Case: claims 318 and 319 by David M. Carlson; and claim 320 by Clever Capital, LLC (collectively, the "**Carlson Proofs of Claim**"). The Trustee objected to the Carlson Proofs of Claim in the Adversary Proceeding.

**E.** Terrain Holdings is the owner of a condominium located at 23728 NW Cliffe Pointe Rd., Unit 8B, Quincy, WA 98848 (the "**Condo**"). David M. Carlson, one of the Litigation Parties, directly or indirectly controls Terrain Holdings, LLC.

**F.** The Litigation Parties participated in a mediation/settlement conference with the Hon. Benjamin Hursh (the "**Mediator**") and successfully resolved all issues between and among

them relating to the Adversary Proceeding and the Bankruptcy Case and therefore desire to enter into a settlement and general release of claims on the terms and conditions set forth in this Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual promises, covenants and provisions set forth in this Agreement, the sufficiency of which is hereby acknowledged, the parties agree as follows:

**1. Effective Date.** This Agreement will be effective on the date that an Order of the Bankruptcy Court approving this Agreement has been entered on the Bankruptcy Court's docket in the Bankruptcy Case (the "**Effective Date**").

**2. HOA Insurance.** Carlson and Terrain Holdings shall make best efforts to obtain a complete and current copy of any insurance carried by the homeowners' association with respect to the Condo and the common areas and to send any HOA insurance to the Trustee.

**3. Bankruptcy Court Approval.** The rights, obligations, assignments, releases and waivers of each of the Parties, and all other terms of this Agreement, are conditioned on approval of the Bankruptcy Court of this Agreement. Within five (5) business days after the Parties have signed this Agreement, the Trustee shall file a motion with the Court seeking approval of this Agreement.

**4. Dismissal of the Adversary Proceeding and Withdrawal of Carlson Proofs of Claims.** The Approval Order shall provide for the (i) dismissal of the Adversary Proceeding with prejudice against Carlson and without prejudice against Rob Tavis and (ii) for the withdrawal of the Carlson Proofs of Claims with prejudice.

**5. Purchase Deed.** Concurrently with the signing of this Agreement, Carlson shall cause Terrain Holdings to execute and deliver to Frontier Title and Escrow, 324 S. Ash, Moses Lake, WA (the "**Escrow Agent**"), a fully executed and acknowledged Washington Statutory Warranty Deed in the form attached as **Exhibit A** to this Settlement Agreement (the "**Property Deed**").

    5.1. Title Transfer. On the first business day after the Effective Date, the Escrow Agent shall publicly record the Purchase Deed. The first business day after the Effective Date is referred to herein as the "**Closing Date**."

    5.2. Closing Costs. The Estate shall pay the closing charges of the Escrow Agent, including costs to record the Purchase Deed. The Estate shall pay for title insurance, if any. If the Estate obtains any title insurance, the Trustee shall promptly provide to Carlson a true, correct, complete, and legible copy of the title documents, including the policy, that the Estate receives from the title company.

    5.3. Excise Tax. The Estate shall pay any excise tax arising from the transfer of title to the Condo.

5.4. _Fixtures and Personal Property._ Carlson agrees not to remove any fixtures from the Condo, including, but not limited to, appliances, electric window shades, window shades of any kind and air conditioners. Within 15 days of the execution of this Agreement Carlson shall remove any personal property located in the Condo. Any personal property not removed within 15 days of the execution of this Agreement shall be deemed property of the Estate without further order or notice and shall be part of the consideration paid pursuant to and in reliance on this Settlement Agreement.

6. **Allocation of Risk.** Carlson and Terrain Holdings covenant and agree that until the Closing Date, Terrain Holdings (i) shall bear any risk of property damage or personal injury with respect to the Condo and (ii) agree not to terminate any insurance or essential services, such as water or utilities. Carlson shall cause to be paid all utilities, real property taxes, homeowners associations dues, assessments until the Closing Date.

7. **Terrain Holdings' Acknowledgement of Consideration.** Carlson and Terrain Holdings further acknowledge that they benefit from the Agreement.

8. **Lease Assignment.** Concurrently with the signing of this Settlement Agreement, Carlson shall execute an Assignment in the form attached as **Exhibit B** to this Agreement of any and all interest in any lease or leasehold interest related to the TNT Facility, including without limitation, the TNT Leases. The assignment shall not be effective unless and until the occurrence of the Effective Date. TNT Landlords consent to such assignment.

9. **Allowed Administrative Claim.** If and only if the Trustee sells the Condo for a sale price of more than $300,000, Carlson shall have an allowed administrative claim in the amount of $25,000. This amount is a compromise intended to recognize that certain payments made by Carlson post-petition were actual and necessary costs and expenses of preserving the estate. The motion for approval of this agreement shall constitute a request for allowance of administrative expense under 11 U.S.C. § 503(b)(1)(A), subject to the conditions and terms of this Agreement. The Allowed Administrative Claim shall receive a distribution that is _pro rata_ with other allowed administrative claims.

10. **November 16 Agreement is Void.** Carlson acknowledges and agrees that the November 16 Agreement is, by execution of this Agreement, now null and void and of no force or effect. Pursuant to the Assignment of Leases, any leasehold interest created by the November 16 Agreement is assigned to the Estate.

11. **No Contact or Interference.** Carlson agrees (i) to have no contact with or assist any party in interest in this case who materially interferes with Debtor's reorganization and (ii) not to materially interfere with the Debtor's reorganization in the Bankruptcy Case. This provision shall not be construed as an allegation or admission that Carlson has materially interfered with Debtor's reorganization.

12. **No Further Contest; General Release.** The Parties acknowledge and agree that this Agreement is intended to fully and finally resolve all claims, controversies, and disputes between them, and that neither Carlson nor the Trustee may later pursue a claim or legal theory

that would involve further litigation of the claims asserted, or that could have been asserted, in the Adversary Proceeding, the Bankruptcy Case or otherwise. In exchange for the consideration provided in this Agreement, Carlson, and Carlson's heirs, executors, representatives, administrators, attorneys, employees, agents, and assigns, on the one hand, and the Trustee and the Trustee's representatives, administrators, attorneys, employees, agents and assigns, on the other, hereby irrevocably and unconditionally fully and forever waive, release, and discharge the other from any and all claims, demands, actions, causes of actions, judgments, rights, fees, damages, debts, obligations, liabilities, and expenses (inclusive of attorneys' fees) of any kind whatsoever, whether known or unknown that either Party may have or has ever had against the other, whether based in tort, contract, or statute.

**13. TNT-Carlson Release.** The TNT Landlords and Carlson agree that they mutually benefit from the resolution of the issues in the Adversary Proceeding relating to the TNT Leases (defined below). In exchange for the benefits associated with resolution of the Adversary Proceeding, Carlson and the TNT Landlords along with their heirs, executors, representatives, administrators, attorneys, employees, agents, and assigns hereby irrevocably and unconditionally fully and forever waive, release, and discharge the other from any and all claims, demands, actions, causes of actions, judgments, rights, fees, damages, debts, obligations, liabilities, and expenses (inclusive of attorneys' fees) of any kind whatsoever, whether known or unknown to the TNT Landlords or Carlson that either the TNT Landlords or Carlson may have or has ever had against the other arising from or related to the TNT Facility, any lease or other agreement between Carlson and TNT Landlords, whether based in contract, tort or statute.

**Unknown Claims Waiver.** THIS GENERAL RELEASE BETWEEN THE LITIGATION PARTIES AND THE RELEASE BETWEEN TNT LANDLORDS AND CARLSON CONTAINED IN THIS AGREEMENT EXTENDS EVEN TO CLAIMS THAT A PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS, ITS OR HER FAVOR AT THE TIME OF EXECUTING THIS RELEASE. THIS GENERAL RELEASE IS VALID AND APPLIES EVEN IF KNOWLEDGE OF SUCH NOW UNKNOWN CLAIM WOULD HAVE MATERIALLY AFFECTED THE DECISION TO ENTER INTO THIS SETTLEMENT AGREEMENT.

**14. TNT Acknowledgment of Leasehold Interest.** The TNT Landlords acknowledge and agree as of the Effective Date that: Giga Watt has an existing right of possession to the TNT Facility based on the leases Giga Watt acquired from Carlson in January 2017, as listed in Schedule 1 to this Agreement (the "**TNT Leases**").

14.1. The Trustee's deadline pursuant to 11 U.S.C. § 365 to assume or reject the TNT Leases is 120 days after the Effective Date;

14.2. The Trustee has the right to seek a 90-day extension of the deadline to assume or reject the TNT Leases, for cause, pursuant to 11 U.S.C. § 365(d)(4)(B)(i);

14.3. The deadline to assume or reject the TNT Leases may be further extended upon the prior written consent of the TNT Landlords pursuant to 11 U.S.C. § 365(d)(4).

14.4. The TNT Landlords hereby agree that the November 16 Agreement is, by execution of this Agreement, now of no force or effect.

**15. Mediator.** In the event of a dispute between the parties regarding this Agreement, the parties may request the assistance of the Mediator, subject to any necessary Court approval, to resolve the dispute. In connection with such a request, the Litigation Parties waive the privilege for mediation communications, to the extent necessary for the Mediator to resolve the dispute.

**16. Personal Items at the TNT Facility.** Carlson shall remove all personal items, including without limitation furniture, arts and crafts, and air compressor from Buildings A, C, and H of the TNT Facility no later than February 10, 2020. In connection with the removal of the large safe, a representative of the Trustee shall inspect the contents of the safe prior to removal, and the Litigation Parties shall agree on a time for the inspection.

**17. Agreement is Not an Admission.** The Parties hereby acknowledge that this Settlement Agreement is a compromise as to disputed claims and,—subject to the conditions set forth herein—nothing in or about this Settlement Agreement is an admission of liability, wrongdoing, allegation, or default on the part of any Party, all of whom and which expressly deny any allegation, fault or liability, and the Settlement Agreement shall not be construed as admission of liability, wrongdoing, or default on the part of any Party.

**18. Limited Warranty and Due Diligence of Trustee.** Carlson warrants that (i) he has the ability, power, and authority to cause Terrain to convey the property to the Estate; (ii) that he does not have any side agreements with any other 3rd parties related to the Condo, has no actual knowledge of matters that would not be of public record related to the condo that would expose the Estate to liability, or claims, as a result of the conveyance of the Condo to the Estate; and, (iii) will cooperate and assist the Trustee, as may be necessary, to close and complete the transactions contemplated in this Agreement. The Trustee has been solely responsible for obtaining information he considers necessary for evaluating the title and value of the Condo.

**19. General Provisions.**

19.1. Amendment. This Agreement may not be altered, modified, or amended except by a written document executed by all of the Parties.

19.2. Attorneys' Fees or Costs. The Parties each acknowledge and agree that each Party is responsible for his, her or its own attorneys' fees, court fees, consultant, and other costs in connection with the Adversary Proceeding, the Carlson Proofs of Claims, the TNT Leases, or the Bankruptcy Case.

19.3. Authority. Each Party hereby represents and warrants to the other Party that it has the respective power and authority, and is duly authorized to execute, deliver and perform their obligations under this Agreement.

19.4. Headings. The headings in the Agreement are inserted for reference only and shall not be construed to expand, limit or otherwise modify the terms and conditions of this Settlement Agreement.

4829-9378-0400, v. 5

18-03197-FPC7    Doc 473-1    Filed 02/03/20    Entered 02/03/20 09:08:49    Pg 5 of 10

19.5. No Third-Party Beneficiary. This Agreement is made and entered into for the sole protection and benefit of the Parties, including TNT Landlords, their successors and assigns. No other person shall have any right of action based upon any provision of this Agreement.

19.6. Interpretation. This Agreement has been reviewed and revised by legal counsel for all Parties, including TNT Landlords, and no presumption or rule that ambiguity shall be construed against the Party drafting the document shall apply to the interpretation or enforcement of this Agreement.

19.7. Governing Law, Jurisdiction, and Venue. This Agreement and all matters arising out of or relating to this Agreement for all purposes shall be governed by and construed in accordance with the laws of the State of Washington, without regard to any conflicts of laws principles that would require the laws of any other jurisdiction to apply, and section 101, et seq. of title 11 of the United States Code, as applicable, Any action or proceeding by either of the Parties, or TNT concerning this Agreement shall be brought only in the Bankruptcy Court. The Parties, including TNT Landlords, hereby irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court and waive the defense of inconvenient forum to the maintenance of any action or proceeding in such venue.

19.8. Entire Agreement. Unless specifically provided herein, this Agreement contains all of the understandings and representations between the parties relating to the subject matter hereof and supersedes all prior and contemporaneous understandings, discussions, agreements, representations, and warranties, both written and oral, regarding such subject matter.

19.9. Counterparts. The Parties may execute this Agreement in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same instrument. This Agreement and counterparts thereof, may be executed and delivered by facsimile or other electronic transmission, with the safe effect as an original executed Agreement or counterpart.

19.10. Notices. All notices under this Agreement must be given in writing at the addresses indicated in this Agreement or any other address designated in writing by either Party.

19.11. Acknowledgment of Full Understanding. THE PARTIES, INCLUDING TNT LANDLORDS, ACKNOWLEDGE AND AGREE THAT EACH OF THEM HAS FULLY READ, UNDERSTANDS, AND VOLUNTARILY ENTERS INTO THIS AGREEMENT. THE PARTIES, INCLUDING, TNT LANDLORDS ACKNOWLEDGE AND AGREE THAT EACH OF THEM HAD AN OPPORTUNITY TO ASK QUESTIONS AND CONSULT WITH AN ATTORNEY OF THEIR CHOICE BEFORE SIGNING THIS AGREEMENT. THE PARTIES, INCLUDING TNT LANDLORDS,

Name: David M. Carlson
Date Signed: *[signature: David M. Carlson]*
Address: 2229 Blackstone Ct
East Wenatchee, WA 98802

*[signature: Dorrinda M. Carlson]*
Name: Dorrinda M. Carlson
Date Signed: 1/24/20
Address: 2229 Blackstone Ct
East Wenatchee, WA 98802

**TNT BUSINESS COMPLEXES, LLC**

By: *[signature]*
Name: Kelly W. Thompson
Title: Managing Partner
Date Signed: 1-21-2020
Address: 380 Leslie Way East Wenatchee WA 98802

*[signature: Darrel Thompson]*
Name: Darrel Thompson
Date Signed: 1-21-2020
Address: 380 Leslie Way East Wenatchee WA 98802

*[signature: Patricia Thompson]*
Name: Patricia Thompson
Date Signed: 1-21-2020
Address: 380 Leslie Way East Wenatchee WA 98802

*[signature]*
Name: Kelly Thompson
Date Signed: 1-21-2020
Address: 380 Leslie Way
East Wenatchee WA 98802

Mark D. Waldon, *in his capacity as the Chapter 11 Trustee*
Date Signed: _____

4829-9378-0400, v. 5

FURTHER ACKNOWLEDGES THAT THEIR SIGNATURE BELOW IS AN AGREEMENT TO RELEASE EACH OTHER FROM ANY AND ALL CLAIMS THAT CAN BE RELEASED AS A MATTER OF LAW.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date and year indicated below.

**CLEVER CAPITAL, LLC**

By: _/s/ David M. Carlson_
Name: David M. Carlson
Title: Governor
Date Signed: 1/24/20
Address: 2229 Blackstone Ct
East Wenatchee, WA 98802

**ENTERPRISE FOCUS, INC.**

By: _/s/ David M. Carlson_
Name: David M. Carlson
Title: Governor
Date Signed: 1/24/20
Address: 2229 Blackstone Ct
East Wenatchee, WA 98802

**TERRAIN HOLDINGS, LLC**

By: _/s/ David M. Carlson_
Name: David M. Carlson
Title: Governor
Date Signed: 1/24/20
Address: 2229 Blackstone Ct
East Wenatchee, WA 98802

*[Signatures end.]*

4829-9378-0400, v. 5