Pamela M. Egan, WSBA No. 54736 (pro hac vice)
Potomac Law Group PLLC
1905 7th Avenue West
Seattle, WA 98119
Telephone: (415) 297-0132
Email: pegan@potomaclaw.com

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| In re:<br><br>GIGA WATT, Inc., a Washington corporation,<br><br>     Debtor. | Case No. 18-03197 FPC 11<br><br>Chapter 11<br><br>**DECLARATION OF MARK D. WALDRON IN SUPPORT OF CHAPTER 11 TRUSTEE'S MOTION FOR ORDER APPROVING AGREEMENT AND GENERAL RELEASE OF CLAIMS (CARLSON ADVERSARY)** |

I, Mark D. Waldron, declare as follows:

1. I submit this declaration in my capacity as the duly-appointed Chapter 11 Trustee in the bankruptcy case of the above-captioned debtor (the "**Debtor**" or "**Giga Watt**") and in support of the *Chapter 11 Trustee's Motion for Order Approving Agreement and General Release of Claims (Carlson Adversary)* (the "**Motion**"), filed herewith. The statements set forth herein are based on my investigation of the Debtor's affairs, which is ongoing, and, except where otherwise noted, are based on personal knowledge. If called as a witness, I would and could competently testify thereto. Unless otherwise defined herein, capitalized terms have the meanings ascribed to them in the Motion.

2. Pursuant to the Motion, I request approval of that certain *Agreement and General Release of Claims* (the "**Agreement**"), which resolves a dispute with Carlson with respect to the TNT Facility. The Agreement also clarifies the status of the Estate's interest in the leases with respect to the TNT Facility.

3. The Agreement provides a full general release between the Estate and Carlson, the release by Carlson of any interest in the TNT Facility, and the transfer by Carlson's affiliate, Terrain Holdings LLC, to the Estate of a condominium located in Quincy, Washington. According to a title report that I ordered from Frontier Title & Escrow, the condominium is free and clear of any mortgages, loans or other encumbrances. I have also consulted with local brokers to establish and determine the value of Condo, which is estimated at between $350,000 and $400,000.

4. In addition, the TNT Landlords have agreed on a new deadline to reject or assume the leases related to the TNT Facility. In short, the Agreement will allow me, as Trustee, to fully and robustly market the TNT Facility without the overhang of uncertainty created by the litigation with Carlson.

5. The TNT Facility has four buildings, Buildings A, B, C, and H (referred to as H1 and H2), which the Debtor leases from TNT Business Complex LLC. Pre-petition, the Debtor operated the TNT Facility and invested in tenant improvements at the TNT Facility. Prepetition, and effective May 14, 2018, Giga Watt entered into a power contract with the DC PUD, the *Interconnection and Service Agreement* (the "**TNT Power Contract**"), pursuant to which the DC PUD agreed to provide up to 3.3MW of power to the Debtor's operations at the TNT Facility, subject to terms of the TNT Power Contract. The DC PUD terminated power to the TNT Facility in December 2018. When I was appointed, the TNT Facility was shut down and not operating.

---

Declaration of Mark D. Waldron in Support of Motion to Approve Carlson Settlement - Page 2

6. Pursuant to an Order dated September 30, 2019 [ECF 380], I obtained post-petition credit in order to restore the electrical service and otherwise re-open the TNT Facility. I continue to operate the TNT facility.

7. The dispute that is the subject of the Motion centered on control and ownership of the TNT Facility and on the proper treatment of the Carlson Proof of Claims.

8. The Agreement resolves this dispute in its entirety. The material terms include a full mutual release between Carlson and the Estate. Carlson has agreed to assign to the Estate any and all leasehold interests in the TNT Facility that he or his affiliates may hold or assert to hold.

9. Subject to the Agreement, Carlson's affiliate, Terrain Holdings LLC, will transfer to the Estate a condominium that is located in Quincy, Washington and that has an estimated value, based on conferral with local brokers, of between $350,000 and $400,000. I intend to hire a broker promptly and sell the Condo for the benefit of the estate.

10. In addition, in my judgment, the Agreement brings certainty to the Estate's leasehold interest in the TNT Leases. First, Carlson and the TNT Landlords release each other with respect to the TNT Leases. In addition, the TNT Landlords agree that the Debtor has an existing right of possession to the TNT Facility based on the TNT Leases. They also agree that the deadline to assume or reject the TNT Leases is 120 days after the Court enters an Order approving the Agreement. The deadline is subject to extension.

11. I am confident in the claims that are asserted in the Complaint. However, Carlson vehemently denied the allegations and presented every indication of a willingness to contest the assertions. Therefore, in my judgment,

the probability of success on the merits was far from certain and weighed in favor of the settlement.

12. Carlson has asserted that he does not own significant assets. Indeed, an affiliate, Terrain Holdings LLC, is transferring the Condo to the Estate. Thus, even if the Estate won the dispute, collection of damages would have been problematical. Therefore, collectability informed my judgment regarding the settlement.

13. The dispute included substantial facts and was document intensive. The hearing on the Preliminary Injunction alone lasted an entire day. There were multiple witnesses and issues regarding intent. While I believe that the Estate would have won certain issues on summary judgment, other issues would have had to go to trial. I estimate that the litigation would have cost the Estate more than $400,000 in attorneys' fees if it had gone through trial. It also consumed a disproportionate amount of the professionals' energies in a case that has limited resources. The dispute also created uncertainty in the market and hindered my efforts to sell the TNT Facility. The foregoing complexity, expense, inconvenience, and delay inherent in the dispute informed my decision to resolve the dispute with Carlson as set forth herein.

[*This Declaration continues on the next page.*]

14. In my judgment, the Agreement serves the paramount interest of creditors by resolving the distraction, expense and uncertainty that was inherent in the dispute over ownership of the TNT Facility.

To the best of my knowledge, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of February 2020 in Tacoma, Washington.

_____
Mark D. Waldron, *in his official capacity as Chapter 11 Trustee in the above-captioned case*

Declaration of Mark D. Waldron in Support of Motion to Approve Carlson Settlement - Page 5