Pamela M. Egan, WSBA No. 54736 (*pro hac vice*)
POTOMAC LAW GROUP
1905 7th Avenue W
Seattle, Washington 98119
Telephone: (415) 297-0132
Facsimile: (202) 318-7707
Email: pegan@potomaclaw.com

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GIGA WATT, Inc., a Washington corporation,<br><br>           Debtor. | Case No. 18-03197 FPC 11<br><br>The Honorable Frederick P. Corbit<br><br>**OMNIBUS OPPOSITION OF THE CHAPTER 11 TRUSTEE TO: (I) NOTICE AND MOTION TO COMPEL TRUSTEE TO ABANDON ALLRISE MINING POD AND (II) APPLICATION OF ALLRISE FINANCIAL GROUP FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM** |

CHAPTER 11 TRUSTEE'S OMNIBUS OBJECTION TO ABANDONMENT
MOTION AND ADMINISTRATIVE CLAIM

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  BACKGROUND FACTS ........................................................................................4

III.  POINTS AND AUTHORITIES ............................................................................9

    A.  Allrise Lacks Standing to Pursue Either the Abandonment Motion or the Administrative Claim ...................................................................9

    B.  The Abandonment Motion Fails as a Matter of Law ...................... 12

        1.  Allrise Does Not Make the Showing Required for Abandonment 12

        2.  The Trustee's Rights Under Section 544(a) Defeat Allrise's Asserted but Secret Interest in the Pod ......................................... 12

        3.  Allrise's Failure to Pay Rent Caused the Termination of the Sublease and With it Any Interest in the Pod ................................ 14

    C.  The Administrative Claim Fails As a Matter of Law ..................... 15

        1.  Allrise Failed to Provide Notice of its Administrative Claim ....... 15

        2.  Allrise Has Not Met Its Burden of Proof ....................................... 15

            a)  Allrise's Claim Arose Pre-Petition ............................................ 16

            b)  Allrise Cannot Establish A Direct and Substantial Benefit to the Estate ........................................................................................ 17

    D.  Allrise's Demand that the Trustee Search for the Allegedly Missing Miners Is Patently Unreasonable ...................................................... 17

    E.  Reclamation Is Inapposite ................................................................ 18

IV.  CONCLUSION ................................................................................................ 19

---

i

CHAPTER 11 TRUSTEE'S OMNIBUS OBJECTION TO ABANDONMENT
MOTION AND ADMINISTRATIVE CLAIM

## TABLE OF AUTHORITIES

### CASES

*In re Ballard,* 502 B.R. 311, 320 (Bankr. S.D. Ohio 2013) ------------------------ 11
*In re DAK Indus., Inc.,* 66 F.3d 1091(9th Cir. 1995)-------------------------------- 15
*In re Great Plains Western Ranch Co.,* 38 B.R. 899, 905 (Bankr.C.D. Cal.1984)13
*In re Khachikyan,* 335 B.R. 121, 125–26 (B.A.P. 9th Cir. 2005) ------------------ 11
*In re Loretto Winery Ltd.,* 898 F.2d 715, 718 (9th Cir. 1990) --------------------- 12
*In re Palau,* 139 B.R. 942, 944 (9th Cir. BAP 1992), aff'd, 18 F.3d 746 (9th
   Cir.1994) ------------------------------------------------------------------- 16
*In re Seaway Exp. Corp.,* 912 F.2d 1125 (9th Cir. 1990)-------------------------- 13
*In re SNTL Corp.,* 571 F.3d 826, 839 (9th Cir. 2009)------------------------------ 16
*Paganelli v. Swendsen,* 50 Wash.2d 304, 311 P.2d 676 (1957) ------------------- 13
*Seaside Inland Transp. v. Coastal Carriers LLC*, 2018 WL 4409381, at *3 (E.D.
   Wash. Sept. 17, 2018) ------------------------------------------------------- 10
*Seaway Exp.*, 912 F.2d at 1128–29 ----------------------------------------------- 13
*Trapp v. Jackels*, 114 Wash. App. 1040 (2002) ------------------------------------ 13

### STATUTES

11 U.S.C.     § 546(c) ----------------------------------------------------------- 3
11 U.S.C. § 503(b)--------------------------------------------------------------- 15
11 U.S.C. § 503(b)(9) ----------------------------------------------- 3, 4, 18, 19
11 U.S.C. § 544(a)--------------------------------------------------------------- 12
11 U.S.C. § 546(c)--------------------------------------------------------------- 19
11 U.S.C. § 546(c)(1) ------------------------------------------------------ 18, 19
11 U.S.C. § 554 ----------------------------------------------------------------- 12
section 502(b) ------------------------------------------------------------------ 16
Wash. Rev. Code § 23.95.505----------------------------------------------- 10, 11
Wash. Rev. Code §§ 64.04.010–.020 ------------------------------------------- 13
Wash.Rev.Code § 65.08.070 ------------------------------------------------------ 13

### RULES

"Bankruptcy Rules Made Easy (2001): A Guide to the Federal Rules of Civil
   Procedure That Apply in Bankruptcy," 75 Am. Bankr. L.J. 35, 41 (2001) ---- 11
Fed.R.Bank.P. 9014 -------------------------------------------------------------- 11
Federal Rule of Bankruptcy Procedure 3001(f)------------------------------------- 18
L.B.R. 2002-1(a)----------------------------------------------------------------- 15

### SECONDARY AUTHORITIES

"Bankruptcy Rules Made Easy (2001): A Guide to the Federal Rules of Civil
   Procedure That Apply in Bankruptcy," 75 Am. Bankr. L.J. 35, 41 (2001) ---- 11

CHAPTER 11 TRUSTEE'S OMNIBUS OBJECTION TO ABANDONMENT
MOTION AND ADMINISTRATIVE CLAIM

Mark D. Waldron, in his official capacity as the Chapter 11 Trustee (the "**Trustee**") hereby opposes (the "**Opposition**") the *Notice and Motion to Compel Trustee to Abandon Allrise Mining Pod* [ECF 461], filed on January 24, 2020 (the "**Abandonment Motion**") and the *Application of Allrise Financial Group for Allowance and Payment of Administrative Expense Claim* [ECF 459], filed on January 24, 2020 (the "**Administrative Claim**"). This Opposition is supported by the Declaration of Mark D. Waldron (the "**Waldron Declaration**"), the Declaration of Lauren Miehe (the "**Miehe Declaration**"), the Declaration of Allen Oh (the "**Oh Declaration**"), the Declaration of Ryan Oster (the "**Oster Declaration**"), the Declaration of Pamela Egan (the "**Egan Declaration**") and the Request for Judicial Notice, filed herewith.

In support of the Opposition, the Trustee respectfully avers:

## I.    INTRODUCTION

Allrise IP Holding, Inc., through its affiliate, Allrise Financial Group (hereinafter, "**Allrise**") seeks to require the Trustee to abandon one of the Debtor's pods, pod 1 (referred to hereinafter as the "**Pod**"), located at the crypto-mining facility of Giga Watt, Inc. (the "**Debtor**") in Moses Lake, Washington (the "**Moses Lake Facility**"). A pod is a building that is outfitted with electrical gear that enables hundreds of computers to run crypto-mining operations. It is built on a concrete slab with permanent improvements. The Debtor leased the ground under the pods.

18-03197-FPC7   Doc 483   Filed 02/17/20   Entered 02/17/20 21:25:33   Pg 4 of 23

1     Allrise also asserts the right to an administrative claim for certain miners

2 which it thinks – but is not sure – were delivered to the Debtor pursuant to a

3 prepetition purchase agreement.

4     Allrise lacks standing to pursue either the Abandonment Motion or the

5 Administrative Claim because it failed to register with the state of Washington as

6 a foreign corporation. Under clear Washington law, the Abandonment Motion and

7 the Administrative Claim must be stayed until Allrise registers with the

8 Washington Secretary of State, pays all back due fees and pays all applicable

9 penalties.

10     Aside from the lack of standing, the Abandonment Motion fails as a matter

11 of law because Allrise does not – and cannot – show that the Pod with respect to

12 which it seeks abandonment is burdensome to the estate or of inconsequential

13 value or benefit to the estate. In fact, the Pod is valuable to the estate.

14     The Abandonment Motion appears to be an attempt by Allrise to obtain

15 possession of the Pod, which it claims, falsely, to own. Allrise's asserted interest

16 in the Pod was never recorded. No UCC statement was ever filed. Allrise posted

17 no signs or made any public indication of any interest or even operations in the

18 Pod. Allrise is nowhere mentioned in the Debtor's Schedules or Statement of

19 Financial Affairs. In fact, the Trustee was not even aware of Allrise until February

20 2019. Pursuant to section 544(a), the Trustee's rights as a bona fide purchaser and

21 judicial lien creditor in the Pod defeats Allrise's secret interest.

22

23

24

25

2
CHAPTER 11 TRUSTEE'S OMNIBUS OBJECTION TO ABANDONMENT
MOTION AND ADMINISTRATIVE CLAIM

1      Finally, any interest that Allrise may have had in the Pod was terminated

2 when the Trustee terminated the Sublease due to Allrise's failure to pay rent.

3      The Administrative Claim also fails as a matter of law. Allrise failed to

4 provide notice of the Administrative Claim. Further, Allrise's claim arises from a

5 prepetition purchase agreement with the Debtor – not with the debtor in

6 possession or the Trustee. No consideration was paid to the estate. Further, Allrise

7 does not know if the miners for which it seeks an administrative claim were even

8 delivered to Giga Watt.

9      Allrise's demand that the Trustee search for the allegedly missing miners is

10 patently unreasonable. First, as set forth above, Allrise does not know if the

11 miners were even delivered to Giga Watt. Second, credibility is an issue. Allrise's

12 list of serial numbers is hardly credible. No declaration attests to its validity. No

13 agreement is attached to the Administrative Claim. Allrise has given varying

14 explanations of its relationship with Giga Watt from being introduced through

15 "Vadim" to meeting shareholders "at a party." The one common thread is that Mr.

16 Vladimir Nikolayevich Evseev, Allrise's principal and founder, does not know the

17 details and all employees involved in the transaction are now gone. Third, the

18 Trustee would have to divert extremely limited resources for two to three weeks to

19 search for these miners without any assurance that they even exist.

20      Finally, Allrise's allusions to a reclamation claim pursuant to 11 U.S.C.

21 § 546(c) and a claim pursuant to 11 U.S.C. § 503(b)(9) undermine – not bolster –

22 the Administrative Claim because reclamation and the claim pursuant to 11 U.S.C.

23
CHAPTER 11 TRUSTEE'S OMNIBUS OBJECTION TO ABANDONMENT
24 MOTION AND ADMINISTRATIVE CLAIM

25

§ 503(b)(9) assume that the miners were sold to the Debtor – not owned by Allrise.

## II. BACKGROUND FACTS

On May 1, 2017, Giga Watt, Inc. and the Master Landlord signed a lease for the land on which the Pod is located (the "**Master Lease**"). A copy of the Master Lease is attached hereto as **Exhibit A**. The Master Lease required Giga Watt, Inc. to provide notice of any sublease to MLDC 1, LLC (the "**Master Landlord**"). **Exh. A,** Master Lease, ¶ 10. That same day, May 1, 2017, and without notice to the Master Landlord, Giga Watt entered into a sublease (the "**Sublease**") with Allrise IP Holding, Inc., which is described in the Sublease as a Delaware Corporation. A copy of the Sublease is attached hereto as **Exhibit B**. *See also* Oster Declaration.

On May 2, 2017, Allrise IP Holding, Inc., described as a Cayman Islands corporation, purportedly entered into a service agreement (the "**Service Agreement**") with Giga Watt, Inc. The Service Agreement states:

> Whereas, Customer [Allrise] wishes to operate its mining farm located in 7906 Randolph Road, Moses Lake, WA 98337 ("Mining Farm") with assistance from Giga Watt."

Service Agreement, attached hereto as **Exhibit C** (recitals).

On May 2, 2017, Giga Watt and Allrise Holding IP, Inc., described as a Cayman Islands corporation, purportedly entered into a Development Agreement which provided that Giga Watt would build the Pod. As set forth more fully

4
CHAPTER 11 TRUSTEE'S OMNIBUS OBJECTION TO ABANDONMENT MOTION AND ADMINISTRATIVE CLAIM

below, the Development Agreement provided that Allrise's rights to the Pod were subject to the terms of the Sublease, which, as also set forth more fully below, provided that (a) the Sublease could be cancelled upon failure to pay rent within 30 days of the due date and (b) upon termination of the Sublease, ownership of the Pod would revert to Giga Watt. *See* Development Agreement attached hereto as **Exhibit D**.

On May 1, 2017, Allrise IP Holding, Inc., described again as a Cayman Island corporation, purportedly entered into a Purchase and Sale Agreement with Giga Watt for the purchase of miners. Pursuant to paragraph 5, the miners were to be delivered on or before July 15, 2017. *See* Purchase and Sale Agreement, attached hereto as **Exhibit E**. By as late as October 2017, Allrise did not know which equipment it had purchased and did not even have a copy of the Purchase Agreement. *See* email correspondence, attached hereto as **Exhibit F**, p. 7.[1] That same month, Vladimir Nikolayevich Evseev made plans to visit the Moses Lake Facility. No complaints were made about missing miners. *Id.*

The Debtor's Schedules of Assets and Liabilities and its Statement of Financial Affairs omit any mention of Allrise. *See* Waldron Declaration. Allrise never publicly recorded any interest in the Pod. No insignia were placed on the Pod. No indication of any kind was ever made that Allrise was conducting

---

[1] Allrise produced these emails to the Trustee at the Trustee's request. *See* Egan Declaration.

CHAPTER 11 TRUSTEE'S OMNIBUS OBJECTION TO ABANDONMENT MOTION AND ADMINISTRATIVE CLAIM

business at the Pod or claimed ownership in the Pod. *See* Oster Declaration and Waldron Declaration.

In October 2018, the Debtor and the Master Landlord amended the Master Lease to provide that a sublease was allowed, provided that the Master Landlord provided written consent. A copy of the amended Master Lease is attached hereto as **Exhibit G**, ¶ 17. No consent was ever requested or obtained. *See* Oster Declaration.

On November 19, 2018 (the "**Petition Date**"), the Debtor commenced this case by filing a voluntary petition for relief pursuant to sections 101, *et seq.* of title 11 of the United States Code (the "**Bankruptcy Code**").

On December 4, 2018, the state of Nevada, Department of Business and Industry, Division of Mortgage Lending issued an *Order to Cease and Desist, Order Imposing an Administrative Fine and Investigative Costs and Notice of Opportunity for Administrative Hearing* ("**Cease and Desist Order**") with respect to Allrise Direct Lending LLC, d/b/a Allrise Financial Group, Inc., Royal Development, Inc. and Vladimir Nikolayevich Evseev on the ground that Mr. Evseev and his businesses were conducting a mortgage brokerage business in Nevada without a license. The Cease and Desist Order states that Mr. Evseev represented to the Nevada Division of Mortgage Lending that he was not engaged in mortgage brokerage in Nevada and that he would issue such a disclaimer on his company's website. Instead, however, he changed the website to boast that his company was now conducting brokering mortgages in all fifty states. *See* Cease

18-03197-FPC7     Doc 483     Filed 02/17/20     Entered 02/17/20 21:25:33     Pg 9 of 23

and Desist Order attached hereto as **Exhibit H**. *See also* Request for Judicial Notice.

In mid-January 2019, the Grant County Public Utility District shut off the electricity at the Moses Lake Facility. At that point in time, Ryan Oster, the principal of MLDC 1, LLC and of Giga Plex LLC, the Debtor's landlords at the Moses Lake Facility, locked all of the pods at the Moses Lake Facility as well as the exterior perimeter fencing for the entire Moses Lake Facility. He stayed on the premises 24 hours, seven days a week in order to ensure security. He also bought and installed power generators so that security cameras would watch the premises at all times. No miners were removed by Ryan Oster and he is not aware of any miners being removed from the facility during that period. *See* Oster Declaration.

Allrise admits that it did not pay the rent owed for any part of January 2019 pursuant to the Sublease. Email Correspondence attached hereto as **Exhibit I**.

On January 23, 2019, the Court approved the appointment of Mark D. Waldron as the Trustee pursuant to its *Order Approving Appointment of Chapter 11 Trustee* [Docket. No. 146]. Ryan Oster continued to reside at the Moses Lake Facility with security cameras.

Pursuant to the *Order Granting Chapter 11 Trustee's Motion for Order Approving Agreement With Moses Lake Landlords* [ECF 300], dated May 10, 2019, and the *Order Granting Chapter 11 Trustee's Motion for Order Approving Moses Lake Three-Way Agreement* [ECF 309], dated May 20, 2019, the Trustee resumed operations at most of the Moses Lake Facility.

At that point in time, the Master Landlord gave the keys to the Moses Lake Facility to Lauren Miehe and Allen Oh, whom the Trustee had retained pursuant to Court orders. They kept Pod 1 locked at all times. They never removed any equipment from Pod 1. The Trustee maintains security cameras which allow the Trustee to know who enters and leaves the Moses Lake Facility at all times. There is no evidence of the removal of any equipment from Pod 1, other than as set forth below.

On June 7, 2019, Mr. Evseev entered into a *Consent Order Requiring Compliance, Imposing an Administrative Fine and Assessing Administrative Costs* (the "**Consent Order**") with the Nevada Division of Mortgage Lending pursuant to which he promised to pay a $15,000 fine for having conducted business without a license in Nevada and for making misrepresentations to Nevada regarding that business. A true and correct copy of the Consent Order is attached hereto as **Exhibit J**. *See also* Request for Judicial Notice.

On or about July 19, 2019, the Master Landlord voluntarily paid to have the electricity turned on at the remaining closed pods at the Moses Lake Facility, Pod 1, which is the Pod at issue here, and Pod 2. Almost immediately, the Trustee began operations from Pod 2. The Pod remained dormant pending resolution of Allrise's claim. *See* Waldron Declaration.

On August 9, 2019, after multiple demands for payment of rent and exhaustive efforts to resolve issues with Allrise, the Trustee sent a letter to Allrise

CHAPTER 11 TRUSTEE'S OMNIBUS OBJECTION TO ABANDONMENT MOTION AND ADMINISTRATIVE CLAIM

formally terminating the sublease. A copy of the foregoing termination letter is attached hereto as **Exhibit K**.

On or about August 21, 2019, Allrise tendered one half of the rent for January 2019 and one half of the electricity that Allrise unilaterally decided was appropriate. The total sum was $17,500. The Trustee accepted the tender without rescinding the termination or otherwise waiving any rights. *See* Waldron Declaration.

On November 5, 2019, Allrise admitted that it did not know whether the miners, for which it now seeks an administrative claim, were ever delivered to the Debtor. *See* Exhibit A to Administrative Claim, November 5, 2019 email.

On December 11, 2019, at the Trustee's request, Allrise removed its miners from Pod 1 so that the Trustee could begin operating in it. The Trustee's staff supervised the removal to ensure that nothing, but miners and related power cords, were removed from Pod 1. *See* Oh Declaration.

Thereafter, in December 2019, the Trustee installed miners and began operations in Pod 1. *See* Waldron Declaration.

### III. POINTS AND AUTHORITIES

**A. Allrise Lacks Standing to Pursue Either the Abandonment Motion or the Administrative Claim**

The Abandonment Motion and the Administrative Claim are brought by Allrise IP Holding, Inc. through its affiliate "Allrise Financial Group." Allrise IP Holding, Inc. is organized under the laws of Delaware and perhaps also the

9
CHAPTER 11 TRUSTEE'S OMNIBUS OBJECTION TO ABANDONMENT MOTION AND ADMINISTRATIVE CLAIM

Cayman Islands. Neither Allrise IP Holding, Inc. nor any of its affiliates,

including those doing business as "Allrise Financial Group" are registered with

the Washington Secretary of State.

Under Washington law:

> (2) A foreign entity doing business in this state may not maintain an action or proceeding in this state unless it is registered to do business in this state and has paid to this state all fees and penalties for the years, or parts thereof, during which it did business in this state without having registered.

Wash. Rev. Code § 23.95.505.

Despite its failure to register, Allrise operated a "mining farm" at the Moses

Lake Facility. It is now seeking to recover the building in which it conducted

these operations. It is also seeking an administrative claim for certain miners that

it claimed it purchased in May 2017, but that it is not sure were ever delivered to

the Debtor. Indeed, without disclosing that it is not registered to do business in

Washington, Allrise has made a series of vague proposals to the Trustee to resume

conducting business at the Moses Lake Facility or even buy the Moses Lake

Facility, despite its failure to register as a foreign corporation. *See* Waldron

Declaration.

Allrise lacks standing to pursue either the Abandonment Motion or the

Administrative Claim until it registers and pays all past due fees and applicable

penalties. *See Seaside Inland Transp. v. Coastal Carriers LLC*, 2018 WL

4409381, at *3 (E.D. Wash. Sept. 17, 2018) (unregistered foreign corporation

10

CHAPTER 11 TRUSTEE'S OMNIBUS OBJECTION TO ABANDONMENT
MOTION AND ADMINISTRATIVE CLAIM

cannot sue until it pays all past due fees and applicable penalties). The Motion initiated a contested matter which is an action or proceeding within the meaning of Wash. Rev. Code § 23.95.505. *See* Fed.R.Bank.P. 9014. *See also In re Khachikyan*, 335 B.R. 121, 125–26 (B.A.P. 9th Cir. 2005) (in a contested matter, "discovery is available, testimony regarding contested material factual disputes must be taken in the same manner as in an adversary proceeding, and the court must make findings of fact and conclusions of law before entering an order that has the status of a judgment."); *In re Ballard,* 502 B.R. 311, 320 (Bankr. S.D. Ohio 2013) ("There are two different types of litigated proceedings within bankruptcy cases: adversary proceedings and contested matters."); "Bankruptcy Rules Made Easy (2001): A Guide to the Federal Rules of Civil Procedure That Apply in Bankruptcy," 75 Am. Bankr. L.J. 35, 41 (2001) ("The operative principle is that [w]henever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter.").

This case should be distinguished from cases where a claimant who has operated in a different state is forced by the automatic stay to assert a claim where the bankruptcy case is pending. Here, Allrise has initiated a contested matter, which is an action or proceeding, based on business activities conducted in Washington.

Allrise's failure to register should not be treated as a mere oversight, but as a pattern of violating American state law. *See* Cease and Desist Order, **Exh. H**,

CHAPTER 11 TRUSTEE'S OMNIBUS OBJECTION TO ABANDONMENT MOTION AND ADMINISTRATIVE CLAIM

and Consent Order, **Exh. J** (Mr. Evseev was found to have conducted a mortgage brokerage business in Nevada without a license and to have made misrepresentations to Nevada regarding same).

Accordingly, until Allrise registers with the State of Washington and pays all back due fees and any applicable penalties, it cannot purse the Abandonment Motion or the Administrative Claim and they should be denied.

### B. The Abandonment Motion Fails as a Matter of Law

#### 1. Allrise Does Not Make the Showing Required for Abandonment

The Abandonment Motion is brought pursuant to 11 U.S.C. § 554. On its face, § 554 permits abandonment only "upon a showing that property is either of inconsequential value and benefit to the estate or burdensome to the estate." *In re Johnston*, 49 F.3d 538, 540 (9th Cir. 1995). Allrise makes no showing that the Pod is of inconsequential value and benefit to the estate or burdensome. Indeed, as set forth in the Waldron Declaration, the Pod benefits the estate by allowing the Trustee to operate more miners for the benefit of the estate.

#### 2. The Trustee's Rights Under Section 544(a) Defeat Allrise's Asserted but Secret Interest in the Pod

Pursuant to 11 U.S.C. § 544(a), the Trustee has the rights of a *bona fide purchaser* and judicial lien creditor. State law determines the scope of the rights. *See In re Loretto Winery Ltd.*, 898 F.2d 715, 718 (9th Cir. 1990) ("Courts look to state law to determine the underlying property interests and commercial arrangements at issue in bankruptcy proceedings."). The Sublease, the

12
CHAPTER 11 TRUSTEE'S OMNIBUS OBJECTION TO ABANDONMENT
MOTION AND ADMINISTRATIVE CLAIM

1    Development Agreement, the Service Agreement and the Purchase Agreement are

2    all governed by Washington law.

3       As stated in *In re Seaway Exp. Corp.*, 912 F.2d 1125 (9th Cir. 1990):

> To "perfect" an interest in real property under Washington law, a party must record a deed signed by the grantor. Wash. Rev. Code §§ 64.04.010–.020. An unrecorded interest in property is not binding on a subsequent purchaser in good faith. Wash. Rev. Code § 65.08.070; *Paganelli v. Swendsen,* 50 Wash.2d 304, 311 P.2d 676 (1957). Such recording statutes are central to real property law. *In re Great Plains Western Ranch Co.,* 38 B.R. 899, 905 (Bankr. C.D. Cal. 1984).

9    *Id.* at 1127. "The policy underlying this rule is the protection of *bona fide*

10    purchasers against loss from secret liens or conveyances not disclosed by any

11    public record nor ascertainable by due diligence." *Trapp v. Jackels*, 114 Wash.

12    App. 1040 (2002). Similarly, "[w]hen a creditor claims an inchoate equitable

13    interest in real property owned by the debtor at the commencement of the case,

14    which interest is not evidenced by a recorded instrument and not yet granted by a

15    state court, ***the trustee as bona fide purchaser prevails***." *Seaway Exp.*, 912 F.2d

16    at 1128–29 (emphasis added).

17       The Debtor's Schedules and Statement of Financial Affairs omit any

18    mention of Allrise. The Trustee has asked Allrise to produce any record of a

19    public recording of its asserted ownership interest in the Pod. None has been

20    produced. A search of the Grant County public records and a UCC search has

21    found no recording of any purported interest. *See* Waldron Declaration; Egan

22    Declaration. The Master Landlord never knew of Allrise's asserted interest in the

---

CHAPTER 11 TRUSTEE'S OMNIBUS OBJECTION TO ABANDONMENT
MOTION AND ADMINISTRATIVE CLAIM

Pod until Allrise contacted the Trustee after the Petition Date. *See* Oster

Declaration. Nothing in or on the Pod would have indicated Allrise's assertion to

ownership of or operation in the Pod. *See* Oster Declaration and Waldron

Declaration.

Accordingly, Allrise's asserted interest is no more than a secret lien that is

defeated by the Trustee's status as a *bona fide* purchaser and hypothetical lien

creditor.

### 3. Allrise's Failure to Pay Rent Caused the Termination of the Sublease and With it Any Interest in the Pod

The Sublease provided that:

> ***If Allrise fails to pay any rent installment within thirty (30) days of its due date*** or fails to perform any other covenant under this Sublease within thirty (30) days after written notice from Giga Watt stating the nature of the default, ***Giga Watt may cancel this Sublease***, and reenter and take possession of the parcel 1 using all necessary force to do so . . ..

Sublease, **Exh. B**, ¶ 10. The Sublease further provided that "at the termination of

this Sublease, Tenant shall revert the Mining Farm to Giga Watt." Sublease, **Exh.**

**B**, ¶ 5.b. The Development Agreement states:

> The ownership of the Mining Farm is subject to the land sublease . . . Client shall be bound by the terms of the Sublease Agreement.

Development Agreement, **Exh. D**, ¶ 4.

Allrise has admitted that it failed to pay rent in January 2019, despite

operating there until the Grant County PUD turned off the electricity in mid-

14
CHAPTER 11 TRUSTEE'S OMNIBUS OBJECTION TO ABANDONMENT
MOTION AND ADMINISTRATIVE CLAIM

January 2019. *See* Email, **Exh. I**. On August 9, 2019, the Trustee formally informed Allrise of the termination of the Sublease. *See* Termination Letter, **Exh. K**.

Accordingly, ownership of the Pod reverted to the estate and Allrise does not own the Pod.

**C.    The Administrative Claim Fails As a Matter of Law**

Allrise is not entitled to an administrative claim for miners for two reasons: (1) it has failed to provide proper notice of the claim and (2) it has failed to meet its burden of proof.

1.    Allrise Failed to Provide Notice of its Administrative Claim

Section § 503 provides in pertinent part, "After notice and a hearing, there shall be allowed administrative expenses. . . ." 11 U.S.C. § 503(b). *See also* L.B.R. 2002-1(a). Here, Allrise has failed to provide notice of the Administrative Claim. Therefore, the Administrative Claim fails.

2.    Allrise Has Not Met Its Burden of Proof

The burden of proving an administrative expense claim is on the claimant. *In re DAK Indus., Inc.,* 66 F.3d 1091(9th Cir. 1995). The claimant must show that the debt asserted to be an administrative expense:

> (1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the

CHAPTER 11 TRUSTEE'S OMNIBUS OBJECTION TO ABANDONMENT
MOTION AND ADMINISTRATIVE CLAIM

debtor-in-possession); and (2) directly and substantially
benefitted the estate.

*Id.* at 1094 (9th Cir. 1995). *See also In re Palau,* 139 B.R. 942, 944 (9th Cir. BAP

1992), aff'd, 18 F.3d 746 (9th Cir.1994) ("In order to keep administrative costs to

the estate at a minimum, 'the actual, necessary costs and expenses of preserving

the estate,' § 503(1)(A), are construed narrowly.").

### a) *Allrise's Claim Arose Pre-Petition*

The Ninth Circuit has adopted the "fair contemplation" test for determining

when a claim accrues for the purposes of section 502(b). *In re SNTL Corp.,* 571

F.3d 826, 839 (9th Cir. 2009). "Under that test, a claim arises when a claimant can

fairly or reasonably contemplate the claim's existence even if a cause of action has

not yet accrued under nonbankruptcy law." *Id.*

The Purchase Agreement is dated May 1, 2017, a year and a half before the

Petition Date. The Purchase Agreement provided that the miners were to be

delivered by July 15, 2017. Allrise could have fairly and reasonably contemplated

that it had at least a contingent claim against Giga Watt as of July 15, 2017.

Furthermore, the consideration allegedly paid by Allrise was paid pre-petition.

Thus, Allrise's claim for undelivered miners arose pre-petition.

Furthermore, it is questionable whether Allrise has any kind of claim with

respect to the miners. Correspondence between Allrise and the Debtor fails to

show any concern about missing miners during the 18 months that elapsed from

the date of purported sale to the Petition Date. *See* Email Correspondence, **Exh. F**;

Egan Declaration.

---

16
CHAPTER 11 TRUSTEE'S OMNIBUS OBJECTION TO ABANDONMENT
MOTION AND ADMINISTRATIVE CLAIM

### b) *Allrise Cannot Establish A Direct and Substantial Benefit to the Estate*

Allrise does not know whether the miners were ever delivered to Giga Watt. Its attorney admitted, "I have not been able to locate a 'proof of delivery' thus far. Delivery may have confirmed verbally." *See* <u>Exh. A</u> to the Administrative Claim, at p. 7. Allrise's counsel attempted to avoid the consequence of this admission by proposing that "past invoices and payments for hosting fees . . . indicate that we had all of the miners. . . ." *Id.* However, it is just as likely that Giga Watt overcharged Allrise, which would give rise to a general unsecured claim, but certainly not an administrative claim.

Finally, Allrise makes no effort to quantify the benefit allegedly conferred on the estate by a set of miners that might or might not have been delivered to Giga Watt.

### D. Allrise's Demand that the Trustee Search for the Allegedly Missing Miners Is Patently Unreasonable

Allrise has produced a list of serial numbers whose authenticity is utterly unfounded. It is not attached to the Purchase Agreement. No declaration attests to its veracity.

There is reason to distrust the authenticity of the serial number list. As set forth above, Allrise misrepresented to Nevada that it was not conducting mortgage brokerage in Nevada. It failed to register as a foreign corporation in Washington.

CHAPTER 11 TRUSTEE'S OMNIBUS OBJECTION TO ABANDONMENT
MOTION AND ADMINISTRATIVE CLAIM

1    And the Trustee has never received a satisfactory answer about Giga Watt's

2    relationship with Allrise. In October 2019, Allrise stated that Allrise was

3    introduced to Giga Watt through "Vadim," who apparently worked at Allrise. *See*

4    **Exhibit L**, Email. Later, Allrise stated that Mr. Evseev met "Andrey and Leonid"

5    (perhaps a reference to Andrey Kuzenny and Leonid Markin, shareholders who

6    have vanished) "at a party." Allrise also claims that everyone involved in the

7    negotiations is no longer with Allrise, except for Vladimir Nikolayevich Evseev

8    who was not closely involved in the negotiations. *See* Email Dated October 9,

9    2019, **Exhibit M**.

10        Further, the Trustee is operating approximately 7,000 to 8,000 miners in

11    closely packed quarters. Checking the serial number on each miner would require

12    pulling two workers away from all other duties and have them spend a full two to

13    three weeks manually unplugging, checking and replugging miners, handling

14    sharp and old wires that cut the hands. *See* Miehe Declaration.

15        **E.    Reclamation Is Inapposite**

16        Allrise claims that its proof of claim constitutes *prima facie* evidence of a

17    reclamation claim pursuant to 11 U.S.C. § 546(c)(1), 11 U.S.C. § 503(b)(9) and a

18    general unsecured claim. First, the proof of claim is not *prima facie* evidence of

19    anything because it fails to attach the relevant agreements under which the claims

20    arise. *See* Federal Rule of Bankruptcy Procedure 3001(f) (if a claim "is based on a

21    writing, a copy of the writing shall be attached to the proof of claim"). The proof

22    of claim is based on the Purchase Agreement, the Service Agreement, the

23
24

25

Development Agreement and the Sublease. None of them are attached to the Proof of Claim. Therefore, it is not *prima facie* valid.

Second, the proof of claim nowhere mentions reclamation or 11 U.S.C. § 503(b)(9). If it did, that would directly contradict Allrise's claim that it owns allegedly missing miners because reclamation and the safe harbor section 503(b)(9) only apply when a party has *sold goods* to a debtor. *See* 11 U.S.C. § 546(c) (referring to the rights of "a seller of goods that has sold goods to the debtor"); 11 U.S.C. § 503(b)(9) (referring to the rights of one who has sold goods to the debtor). Indeed, if Allrise had sold miners to the Debtor, then it would have no claim, given the lack of any evidence of a timely reclamation demand or that the miners were delivered within twenty days of the Petition Date. See 11 U.S.C. § 546(c)(1) (requiring that the seller provide notice within 45 days of delivery or not later than 20 days after the Petition Date if the 45 day period expired after the Petition Date); 11 U.S.C. § 503(b)(9) (requiring that the goods have been received by the debtor within 20 days before the Petition Date). If anything, these assertions undermine – not bolster – Allrise's claim.

## IV.   CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court stay the Abandonment Motion and the Administrative Claim until such time as Allrise registers with the state of Washington as a foreign corporation, pays all back fees and applicable penalties. In the alternative, the Trustee requests that the Court set a discovery schedule to allow the Trustee to conduct its discovery regarding the

Abandonment Motion and the Administrative Claim or deny the Abandonment

Motion and the Administrative Claim in their entirety and with prejudice.

Dated: February 17, 2020          POTOMAC LAW GROUP


                              By:    */s/ Pamela M. Egan*
                                     Pamela M. Egan (WSBA No. 54736)

                                     *Attorneys for Mark D. Waldron, Chapter 11*
                                     *Trustee*

20

CHAPTER 11 TRUSTEE'S OMNIBUS OBJECTION TO ABANDONMENT
MOTION AND ADMINISTRATIVE CLAIM