EXHIBIT A
(Master Lease)

# LAND LEASE FOR PORTION OF LAND IN MOSES LAKE, WASHINGTON



THIS LEASE ("Lease") is made by and between MLDC 1, a Wyoming limited liability company (the "Landlord") and Giga Watt, Inc., a Washington corporation (the "Tenant").

1. **Lease and Use of the Premises.**

    a. **Lease of Premises.** The Landlord leases to the Tenant two 1,250 square foot parcels of land ("Parcel 1" and "Parcel 2") and one 100 square foot parcel of land ("Parcel 3") in the total amount of 2,600 square feet (0.0597 +/- acres) of unimproved real property ("Premises"), which is a portion of land located at 7906 Randolph Road, Moses Lake, Washington 98837 ("Land"), as indicated in the Exhibit A.

    b. **Use of Premises.** Tenant intends to construct and operate the data processing facility(ies) ("Facilities") on Parcel 1 and Parcel 2, install the transformer (Transformer") on Parcel 3 with the power consumption of up to 2.5 MW in aggregate, and make other required improvements to use the Premises. Landlord shall cooperate with Tenant to allow any activity consistent with the purpose of use and to assist with obtaining all necessary permits.

    c. **Access to Premises.** Landlord shall grant Tenant an easement over the Land to allow Tenant unobstructed and unlimited access to Premises.

2. **Term.**

    a. **Term.** The term of this Lease is thirty (30) years beginning **May 1, 2017** and ending on **April 30, 2047** ("Initial Term").

    b. **Effective Date.** The terms of this Lease shall be effective and binding on both parties upon the signing of this Lease (the "Effective Date").

    c. **Extended Term.** The Tenant may request the Term be extended for up to two (2) additional terms of ten (10) years each ("Extended Term") by notifying the Landlord twelve (12) months prior to the end of the Initial Term or the first Extended Term. Unless otherwise agreed to by the Parties, the terms of the Lease for the Extended Term shall be the same terms and conditions as set forth herein. In the event that Tenant continues to occupy the Premises after the Initial Term without giving notice to Landlord as provided herein, the lease shall convert to a month-to-month lease.

3. **Rent.**

    a. **Base Rent.** The Tenant shall pay the Landlord monthly rent in the amount of Ten Thousand

1

dollars ($10,000) ("Initial Rent").

    b. **Rent Commencement Date.** The rent shall be paid monthly on the First (1st) of each month. The first rental payment under this Lease shall not be due until 30 days after the Tenant's Facilities are connected to the main power line and Tenant is able to use 2.5 MW of power to operate the Facilities.

    c. **Late Charge.** The Tenant shall pay a late charge equal to One Hundred dollars ($100) if the rent is delinquent for more than five (5) days after the due date. If the rental payment has not been paid within thirty (30) days, then all unpaid rent shall accrue interest at 12% per annum until paid.

    d. **Rent Increase.** The rent shall increase by One percent (1%) every 3 years, starting on May 1, 2020. Upon of the expiration of the Initial Term, the base rent shall have a market rate adjustment to bring the rent into alignment with the current market conditions. The rent shall adjust to the fair market rent for the Premises in its original condition existed at the time of the Lease commencement excluding the value of any Facilities, Transformer and Improvements placed on Premises by Tenant or Landlord. Ninety (90) days prior to the end of the Initial Term, the fair market rent shall be determined by an MAI real estate appraiser licensed in the State of Washington, mutually selected by and paid for by both Landlord and Tenant in equal shares. The appraiser selected by the Landlord and the Tenant shall notify each party hereto of his determination of such value and upon such notification, the Landlord and Tenant shall negotiate the rent, based on the current fair market value. If an agreement can't be reached either party may request arbitration which shall be appointed by the Superior Court in Grant County. The cost of the arbitration shall be equally shared by both parties.

    e. **Contingency.** This Lease is contingent upon the Landlord's provision of 2.5 MW of electrical power to Tenant at the rate not to exceed the official Schedule 7 rate for Grant County. Landlord shall be responsible for all PUD deposits and costs associated with connecting Tenant's Facilities to the main power line. This Lease may be terminated by Tenant at any time and at Tenant's own discretion if Landlord is unable to provide Tenant with the access to 2.5 MW of electrical power at the rate not to exceed the official Schedule 7 rate for Grant County PUD.

4. <u>Rules and Regulations</u>. The Tenant shall comply with the rules and regulations of federal, state and local governments that apply to the Premises and the Tenant's use of the Premises.

5. <u>Tenant Improvements</u>.

    a. **Construction.** The Tenant may, from time to time, at its own expense, make improvements upon the Premises, whether structural or otherwise, and may install such machinery, equipment and structures thereon as may be proper and necessary in connection with the use and operation of the Premises, including but not limited to Facilities and Transformer, without obtaining consent from Landlord; provided, however, that all such construction

and improvements shall be done in accordance with the rules and regulations.

    b. **Property of Tenant.** All structures, equipment, machinery, appliances, furniture, trade fixtures and other property, including but not limited to Facilities and Transformer, placed by Tenant on Premises regardless of whether it is affixed to Premises, shall be and remain the property of Tenant ("Property of Tenant"); provided, at the termination of this Lease, Tenant shall remove all Property of Tenant and shall restore the Premises to the condition of Premises prior to Tenant's improvements unless otherwise agreed. Landlord shall have no right to the Property of Tenant.

    c. **Risk of Loss.** The full risk of destruction or damage to any of the Tenant's property rests with the Tenant.

6. <u>Utilities</u>. The Tenant shall only pay charges for electricity actually used by Tenant at the rate not to exceed the official Schedule 7 rate for Grant County. Water shall be supplied by existing water meter on site and cost of water shall be covered by Landlord. Should a new water supply be required, owner shall cover costs of installation of a new supply line and water meter. Tenant shall pay for the additional monthly fee in connection with the use of water from the new supply line.

7. <u>Property Taxes</u>. Landlord shall pay all real property taxes for the Premises. Tenant shall pay all personal property taxes for the Property of Tenant.

8. <u>Snow Removal</u>. The Landlord shall be solely responsible for removing any accumulation of snow and ice from the sidewalk abutting the Premises, and from any parking areas serving the Premises and the improvements located thereon.

9. <u>Signs—Advertisements</u>. Tenant shall have the right to post or display any kind of advertisement on the Premises; provided that such advertisement shall comply with any applicable County regulations.

10. <u>Sublease and Assignment</u>. The Tenant shall have the unrestricted right to sublease or assign this Lease in whole or in part to the third party(ies) without obtaining a permission of the Landlord; however, provided that Tenant shall remain liable for the payment of rent under this Lease. In case of a sublease or assignment, Tenant shall provide Landlord with the name of the sublessee or assignee within ten (10) business days from the commencement of such sublease or assignment.

11. <u>Right of Entry</u>. The Landlord or its authorized representatives reserves the right of entry in the case of an emergency. Other than in an emergency, Landlord shall be provided escorted access to the Premises upon forty-eight hours written notice.

12. <u>Default and Reentry</u>. If Tenant fails to pay any rent installment within thirty (30) days of its due date, or fails to perform any other covenant under this Lease within thirty (30) days after written notice from Landlord stating the nature of the default, Landlord may cancel this Lease and reenter and take possession of the Premises using all necessary force to do so. Provided, however, that if Tenant defaults on a covenant other than its covenant to pay rent that cannot reasonably be cured within the 30-day period, Tenant shall not be deemed to be in default, if Tenant, within such

3

period, commences and thereafter diligently initiates correction of said default.

13. Hazardous Waste and Materials.

   a. Tenant shall comply with all present and future laws and regulations governing water pollution, air pollution, soil pollution, hazardous waste, hazardous and/or toxic material use, storage, transportation and disposal and hazardous or toxic chemical use, storage, transportation and disposal.

   b. Tenant shall at all times comply with all city, county, state and federal environmental laws and environmental rules and regulations. Any breach of the conditions of this section will be a material breach of this Lease. Tenant further agrees that in the event of any such breach, Tenant shall be solely responsible for all fines, costs, penalties, and expenses in connection with said breach, and shall hold Landlord harmless therefrom.

   c. Tenant shall indemnify, defend, and hold Landlord harmless from any and all injury, damage or contamination of the Premises, property of third parties or injury to any person, and will indemnify and hold Landlord harmless from any and all claims, judgments, penalties, costs, fines and lawsuits, which could arise during the term of this Lease or after the Lease term as a result of the presence or use of hazardous materials by Tenant, or caused or permitted by Tenant. Without limiting the foregoing, if the presence of any hazardous material on the Premises caused or permitted at any time by the Tenant results in any contamination of the Premises, Tenant shall take all actions at its sole expenses as are necessary to return the Premises to the condition that existed prior to the introduction of such hazardous material to the Premises; provided, Landlord's approval to undertake any clean up shall first be obtained.

14. Condemnation. If all of the Premises and the Tenant's interest therein shall be condemned for public use by any authority superior to the Landlord, such as the State of Washington or the United States of America, this Lease shall terminate without liability of either party to the other, with each party having the right to make a claim in such condemnation proceedings as their interests may appear.

   a. If the entire Premises or such portion thereof, will preclude the Tenant from conducting its business is taken by eminent domain, this Lease shall expire on the date when the Premises shall be so taken, and the rent shall be apportioned as of that date.

   b. If only a portion of the Premises is taken by eminent domain and the tenant continues its business, the rent payable at that time shall be decreased in proportion to the amount or portion of the Premises as shall be taken under the proceeding.

   c. Landlord shall be entitled to all compensation resulting from the taking of the Premises. Tenant shall be entitled to make claim against the taking entity for compensation for loss incurred by Tenant for such taking.

15. Abandonment/Tenant's Property. Tenant shall not vacate or abandon the Premises at any time

4

during the primary or extended terms, unless otherwise provided in this Lease. In addition to any other remedy available to Landlord, if Tenant shall abandon, vacate or surrender the Premises, or be dispossessed by process of law, or otherwise, any personal property belonging to Tenant left upon the Premises, may, at Landlord's option, be placed in storage, and Tenant shall agree to pay reasonable storage costs associated with the storage.

16. **Right of First Refusal.** Tenant shall have an ongoing Right of First Refusal to buy the Land or Premises if Landlord decides to sell it. If Landlord receives a bona fide offer (the "Offer") from a prospective buyer to buy all or any part of Land with may or may not include Premises, the Landlord shall give Tenant written notice of such fact, setting forth in such notice all of the material terms and conditions of such Offer. After the Landlord notifies Tenant in writing of such an Offer, Tenant shall have fourteen (14) days to exercise the Right of First Refusal by written notice to the Landlord. If Tenant exercises the Right of First Refusal, Tenant shall be required to purchase the entire portion of Land that is the subject of the Offer. If Tenant fails to notify the Landlord of its election within the aforesaid fourteen (14) day period, Tenant shall be deemed to have waived the Right of First Refusal with respect to the subject Offer. If the Landlord and the party who made the Offer are not able to reach an agreement on the final terms of their sale within 120 days of the non-exercise of Tenant's right of first refusal, or the material terms and conditions of the Offer are amended from those sent to the Tenant, Tenant's Right of First Refusal shall be reinstated and the Landlord agrees to give Tenant another fourteen days' written notice of its right to exercise the Right of First Refusal on the new or amended terms.

17. **Arbitration of Disputes.** The parties agree to attempt to resolve any disputes relating to this Agreement by negotiation and/or with a mutually agreed-upon mediator. However, if these attempts are unsuccessful, upon demand by either party, all claims between the parties shall be referred for binding arbitration in accordance with the Washington Uniform Arbitration Act (RCW 7.04A et seq.). There shall be one arbitrator, whose decision shall be final, and binding, and judgment may be entered thereon. If the parties cannot agree on the arbitrator, the arbitrator shall be appointed by the presiding judge of the Grant County Superior Court. The arbitrator is authorized to restrict and/or limit discovery in the arbitrator's discretion, to that discovery reasonable under the circumstances considering the complexity of the matter and the amount in controversy. The substantially prevailing party, in any arbitration or other action, shall be entitled to collect all fees and costs incurred in connection with such action, including attorneys' fees, which amount shall be included in any award given.

18. **Miscellaneous.**

    a. **Notices.** Any notices by either party to the other shall be in writing and shall be deemed to be duly given only if delivered personally, or mailed by certified mail in a postage paid envelope addressed to the other party as identified below

    If to Tenant:   If given on the Premises

    or at such address as Tenant may direct in writing,

    *Giga Watt, Inc*
    *1 Campbell Parkway*
    *East Wenatchee, WA*
    *98802*

5

If to Landlord: 10622 227th Ave SE
Monroe, WA 98272

or at such address as Landlord may direct in writing.

b. **Attorney Fees.** This Lease shall be construed in accordance with the laws of the State of Washington. Each party to this Lease had the right to consult with their own attorney. In the event of any action arising hereunder, the prevailing party shall be granted its attorney fees and court costs. Venue for such action shall lie in Grant County, Washington.

c. **Successors and Assigns.** All rights, remedies, liabilities herein given to or imposed upon either of the parties hereto, shall inure to the benefit of and be binding upon their respective heirs, executors, administrators, successors in interest, transferees, and assigns.

d. **Waiver.** The waiver by any party of a breach of any provision of this Lease shall not be deemed a continuing waiver or a waiver of any subsequent breach of this Lease.

e. **Severability.** If any provision of this Lease shall be declared invalid or unenforceable, the remainder of the lease shall continue in full force and effect.

f. **Entire Agreement.** This Lease contains the entire agreement between the parties and cannot be modified or amended unless the same is in writing and signed by both parties and attached hereto.

g. **Counterparts.** This Agreement may be executed in any number of separate counterparts, all of which taken together shall be deemed one original instrument notwithstanding that all parties are not signatory to the same counterpart.

**LANDLORD**

MLDC 1,
a Wyoming limited liability company

By: /s/ Ryan Oster
Ryan Oster, Member

Date: 5/1/17

**TENANT**

Giga Watt, Inc.,
a Washington corporation

By: /s/ Dave Carlson
Dave Carlson, CEO

Date: 5/1/17

18-03197-FPC7    Doc 483-1    Filed 02/17/20    Entered 02/17/20 21:25:33    Pg 7 of 8

STATE OF WASHINGTON ) 
 ) ss.
COUNTY OF Chelan )

I certify that I know or have satisfactory evidence that RYAN OSTER is the person who appeared before me and said person acknowledged that she signed this instrument, on oath stated that he was authorized to execute the instrument and acknowledged it as a Member of MLDC 1, LLC, a Wyoming limited liability company, to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated this 1 day of May, 2017.



Typed/Printed Name Devonne J. Higgins
NOTARY PUBLIC
In and for the State of Washington
My appointment expires 6-30-2019

STATE OF WASHINGTON )
 ) ss.
COUNTY OF Chelan )

I certify that I know or have satisfactory evidence that DAVE CARLSON is the person who appeared before me and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute the instrument and acknowledged it as the President of GIGA WATT, INC., a Washington corporation, to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated this 1 day of May, 2017.



Typed/Printed Name Devonne J. Higgins
NOTARY PUBLIC
In and for the State of Washington
My appointment expires 6-30-2019

7