EXHIBIT C
(Service Agreement)

# SERVICE AGREEMENT

This Service Agreement ("Agreement") is made on May 2, 2017, by and between Giga Watt, Inc., a Washington corporation, located at 1 Campbell Pkwy, East Wenatchee, WA 98802 ("GigaWatt") and Allrise IP Holding, Inc., a Cayman corporation, located at 2nd Floor, The Grand Pavilion Commercial Centre, 802 West Bay rd P.O. Box 10338, Grand Cayman KY1-1003, Cayman Islands ("Customer or Owner"). GigaWatt and Customer may refer to individually as Party and jointly as Parties.

**Whereas,** GigaWatt is in business of operating data processing facilities in the State of Washington.

**Whereas,** Customer wishes to operate its mining farm located in 7906 Randolph Road, Moses Lake, Washington 98837 ("Mining Farm") with assistance from GigaWatt.

**Now, therefore**, in consideration of the mutual covenants and agreements and subject to the conditions and limitations set forth herein, the Parties hereto do hereby agree as follows:

**1.      Services.**

**1.1      Location.** The Service shall be performed by GigaWatt at the Customer's Mining Farm.

**1.2      Equipment.** Customer shall be solely responsible for purchasing and delivering to the Mining Farm the blockchain processors completed with PSU and power supplies ("Units") and any additional equipment ("Additional Equipment") required for the operation of the Units.

**1.3      Operation, Performance Testing and Repair.** GigaWatt will provide qualified technical employees that will be in charge of Mining Farm proper operation, including its electrical and cooling systems, and installed Units and Additional Equipment. GigaWatt shall only operate the Units for their intended purpose and with a reasonable standard of care relating to upkeep, monitoring and operation. For the avoidance of doubt, GigaWatt shall provide reasonable labor for deployment and operation of Units and Additional Equipment, but shall not be responsible for the labor cost or provision of parts relating to the repair or replacement of Units. Customer will reimburse costs for spare parts, labor and replacements not covered by manufacturer's warranty if GigaWatt seeks Customer approval prior to use of such spare parts, labor or replacements.

**1.4      Maintenance of Mining Farm.** GigaWatt shall provide the reasonable maintenance of the Mining Farm, in such condition and its related services to a level that allows for consistent uptime and operation of the Units and accounts for reasonable wear and tear.

**1.5      Security and Access.** GigaWatt will provide Customer access to the Customer Units on a 24x7x365 basis.

**2.      Term.**

**2.1** **Initial Term.** The term of this Agreement ("Initial Term") shall be Thirty (30) years, beginning when Customer's Units are installed and tested ("Commencement Date"), with two additional terms for Ten (10) years.

**2.2** **Additional Term.** The Customer may request the Term be extended for up to two (2) additional terms of ten (10) years each ("Additional Term") by notifying GigaWatt Twelve (12) months prior to the end of the Initial Term or Additional Term. Unless otherwise agreed to by the Parties, the terms of the Agreement for the Additional Term shall be the same terms and conditions as set forth herein.

**3.      Revenue and Expenses.**

**3.1** **Operation Expenses.** Customer shall pay GigaWatt the hosting fee set at 2.9 cents per kW/h of the electricity consumed by Customer Equipment and Mining Farm ("Hosting Fee"). This Hosting Fee shall be increased by no more than 2% annually beginning from the date of the execution of this Agreement.

**3.2** **Revenue Distribution.**

**3.2.1** **Pool.** GigaWatt will be in charge of connecting Customer Units to the pool selected by Customer and connecting the digital wallet provided by Customer to the pool account. Customer will have a full access to its account at the selected pool and shall be responsible for monitoring the performance of its Customer Units and receipt of a reward generated by Customer Units. To the extent that a payment failure is the result of Customer providing the incorrect bitcoin address, GigaWatt shall not bear the burden of such loss.

**3.2.2** **Payment.** Within Five (5) business days following the end of each calendar month, GigaWatt will provide an invoice to Customer via email at yuliya@allrisefinancialgroup.com for the Hosting Fee based on the amount of electricity used by the Customer Units and Mining Farm during that month. Customer shall pay the invoice in full within three (3) business days from the receipt of the invoice. Customer shall pay a late charge equal to One Hundred dollars ($100) if payment of the Hosting Fee is late for more than five (5) days after the due date. If the Hosting Fee has not been paid within thirty (30) days from the issue of invoice by Giga Watt, then Giga Watt may terminate this Agreement and disconnect the power from the Mining Farm.

**3.2.3** **Security Deposit.** On or before July 15, 2017, Customer shall deposit and maintain during the term of this Agreement Thirty Thousand ($30,000) dollars with Giga Watt to secure a payment of the monthly Hosting Fee ("Security Deposit"). Such deposit may be applied by Giga Watt, at its own discretion, towards payment of any outstanding amount of the Hosting Fee.. The Security Deposit will be refunded to Customer upon the termination of this Agreement after subtraction of any outstanding amount of the Hosting Fee, late charges or any other fees due to Giga Watt.

**4.      Insurance.**

**4.1     Insurance.**  Customer shall obtain and maintain in force, at its expense, during the term of this Agreement, comprehensive liability insurance and property insurance, including policies that provide property and casualty insurance on buildings and power distribution equipment sufficient to cover the total loss thereof.  GigaWatt and MLDC 1, LLC  shall be additional insured on such policy.  Customer shall deliver a copy of any such insurance policy to GigaWatt within five (5) days upon request thereof.  In the event that Customer fails to timely pay premiums or otherwise maintain such insurance, GigaWatt may procure and pay for such insurance and charge any such payments to Client.  Such charges shall constitute additional charges owed by Customer to GigaWatt.

**4.2     Release and Waiver of Subrogation Rights.**  To the extent permitted under applicable law, GigaWatt and Customer each release the other and their respective agents and employees from all liability to each other, or anyone claiming through or under them, by way of subrogation or otherwise, for any loss or damage to property caused by or resulting from risks insured against under this Agreement, pursuant to insurance policies carried by the Parties that are in force at the time of the loss or damage.  The provisions of this subparagraph shall survive termination of this Agreement.

**5.     Performance.**

**5.1     No Guarantee.** GigaWatt provides no guarantee regarding performance or revenue generation.

**5.2     Weather.**  The Mining Farm may experience seasonally low temps in the winter and can often outperform expectations, while in the summer the Mining Farm may experience seasonally high temps that impact performance negatively.

**5.3     Pool Performance.**  All pools operate differently and, as such, may report different hashrate to the client.  GigaWatt cannot be held liable for pool performance and/or hashrate variances reported there.

**5.4     Manufacturer Performance.**  Hardware varies from one unit to another and manufacturers can change specifications at will.  In addition, manufacturers encounter delays in product availability and shipping.  GigaWatt cannot guarantee that manufacturer promises are kept especially in regards to hashrate per unit, power consumption per unit and shipping times. In accordance with Section 2.2 hereof, GigaWatt will inspect each Unit upon arrival.  Additionally, GigaWatt will periodically monitor performance of the Units and will notify Customer upon its discovery of material underperformance, disrepair or other problems with Unit(s).

**6.     Limitation of Liability.**

**6.1     Early Termination**. Customer shall have the right to terminate this Agreement at any time on a 30 written notice given to GigaWatt. Early termination does not relieve Customer from the liability to

pay outstanding Hosting Fees and other fees due to GigaWatt.

**6.2** **Standard** **of** **Care.** GigaWatt's standard of care shall be to (a) take reasonable steps to maintain the Mining Farm in a good and working condition, (b) operate the Units for their intended purpose and with reasonable care and technical skill expected by a datacenter operator, and (c) ensure that the equipment under the control of GigaWatt, its personnel and agents located in or impacting the Mines are operated with the same standard of care (this sub-section (c) applies only to the extent the operation of such equipment impacts the operation of the Units).

**6.3** **Liability** **of** **GigaWatt.** GigaWatt shall have no responsibility whatsoever for mistakes, errors, bugs, defects or any acts of omission or omissions by Customer's equipment, agents or employees or those of third parties; provided, however, that such exemption shall not apply to the extent that any claims or damages relating thereto are the result of a failure of the standard of care or relate to negligence, willful misconduct and fraud on the part of GigaWatt. GigaWatt shall have no liability relating to condition of the Units as delivered by Manufacturer, except with respect to the responsibility to inspect such Units upon receipt (as set forth in Section 2.2). Notwithstanding the foregoing limitations and exceptions, the liability of GigaWatt to Customer shall be limited to direct, objectively measurable damages, and will not exceed (a) for incidences not involving willful misconduct and fraud, the lesser of $1,000,000 and the total revenue share earned by GigaWatt during the term of the Agreement or (b) for incidences involving willful misconduct and fraud, $1,000,000. The parties acknowledge that these limitations on potential liabilities were an essential element in setting consideration under this Agreement.

**6.4** **Liability** **of** **Customer.** Customer shall have no responsibility whatsoever for mistakes, errors, bugs, defects or any acts of omission relating to the provision of the Units under this agreement; provided, however, that negligence, willful misconduct and fraud are not subject to this limitation of liability. Customer shall have no liability relating to the condition of the Units as delivered by Manufacturer. Notwithstanding the foregoing limitations and exceptions, the liability of Customer to GigaWatt shall be limited to direct, objectively measurable damages, and will not exceed (a) for incidences not involving willful misconduct and fraud, the lesser of $1,000,000 and the total revenue share earned by Customer during the term of the Agreement or (b) for incidences involving willful misconduct and fraud, $1,000,000. The parties acknowledge that these limitations on potential liabilities were an essential element in setting consideration under this Agreement.

**6.5** **Force** **Majeure.** Neither Party shall be liable for any loss or damage whatsoever caused by malfunction of equipment (absent a failure of the standard of care set forth in Section 5.2, negligence, willful misconduct or fraud), or any loss or damage occasioned by the elements (absent a failure of the standard of care set forth in Section 5.2, negligence, willful misconduct or fraud), labor disputes, shortages, utility curtailments, acts of God, government requisition, changes in government regulation, acts or omissions of third parties or any other cause beyond such Party's reasonable control.

**6.6** **Exchange** **of** **Information.** Each Party shall mark as confidential all information provided by each

Party to the other that is considered by the disclosing Party to be confidential information. The Party receiving such confidential information shall not use or disclose such confidential information to any third party, except to the extent required by the law, to a government agency or department or to enforce its rights or carry out its duties under this Agreement.

**6.7** **Indemnification.** Each party shall indemnify and hold harmless the other party and its directors, officers, employees, agents, stockholders, affiliates, subcontractors and customers from and against all allegations, claims, actions, suits, demands, damages, liabilities, obligations, losses, settlements, judgments, costs and expenses (including without limitation attorneys' fees and costs) which arise out of, relate to or result from any act or omission of the indemnifying party.

**7.** **Remedies.**

**7.1** **Arbitration of Disputes.** The parties agree to attempt to resolve any disputes relating to this Agreement by negotiation and/or with a mutually agreed-upon mediator. However, if these attempts are unsuccessful, upon demand by either party, all claims between the parties shall be referred for binding arbitration in accordance with the Washington Uniform Arbitration Act (RCW 7.04A et seq.). There shall be one arbitrator, whose decision shall be final, and binding, and judgment may be entered thereon. If the parties cannot agree on the arbitrator, the arbitrator shall be appointed by the presiding judge of the Douglas County Superior Court. The arbitrator is authorized to restrict and/or limit discovery in the arbitrator's discretion, to that discovery reasonable under the circumstances considering the complexity of the matter and the amount in controversy. The substantially prevailing party, in any arbitration or other action, shall be entitled to collect all fees and costs incurred in connection with such action, including attorneys' fees, which amount shall be included in any award given.

**7.3** **Notices.** Any notices or demands under this Agreement shall be in writing and shall be sent to the addresses listed on the signature page.

**8.** **Miscellaneous.**

**8.1** **Assignment.** None of the Parties may assign its rights under this Agreement to the third parties.

**8.2** **Waiver.** The waiver by a Party of any breach of any term, covenant or condition herein contained shall not be deemed to be a waiver of such terms, covenant, or condition for any subsequent breach of the same or any other term, covenant or condition herein contained.

**8.3** **Governing Law; Venue.** Any claims arising under or relating to this Agreement shall be governed by the internal substantive laws of United States and Washington State, without regard to principles of conflict of laws. Each Party agrees to the exclusive jurisdiction of United States.

**8.4** **Severability.** If any part or parts of this Agreement shall be held unenforceable for any reason,

the remainder of this Agreement shall continue in full force and effect.  If any provision of this Agreement is deemed invalid or unenforceable by any court of competent jurisdiction, and if limited such provision would make the provision valid, then such provision shall be deemed to be construed as so limited.

**8.5** **Confidentiality.** Each Party agrees to keep confidential the financial terms of this Agreement.

**8.6** **Entire** **Agreement.** The terms and conditions contained herein supersede all prior oral or written understandings between the Parties and constitute the entire agreement between them concerning the subject matter of this Agreement.

**8.7** **Modification.** This Agreement shall not be modified or amended except in writing signed by authorized representatives of the Parties.

**8.8** **Counterparts.** This Agreement may be executed in any number of counterparts (including facsimile copies), and it will become an enforceable agreement once both parties have delivered a signed counterpart to the other.  In proving this Agreement, it will not be necessary to produce or account for the original counterpart signed by the Party against whom the proof is being presented.

IN WITNESS WHEREOF, GigaWatt and Customer have executed this Agreement as of the date written below.

**GigaWatt**                                                          **Customer**

_David M. Carlson_                              _[signature]_
By: David M. Carlson, CEO                 By:

Giga Watt, Inc.                                        Allrise IP Holding, Inc.
1 Campbell Pkwy                                   2nd Floor, The Grand Pavilion Commercial Centre
East Wenatchee, WA 98802                802 West Bay rd P.O. Box 10338
                                                              Grand Cayman KY1-1003, Cayman Islands

6