# EXHIBIT G
(Amended Master Lease)

# AMENDED AND RESTATED LEASE

between

## Giga Watt, Inc.,
as Tenant

and

## MLDC 1, LLC
as Landlord

dated October 16, 2018

# AMENDED AND RESTATED LEASE

THIS AMENDED AND RESTATED LEASE ("Lease") is effective as of the date of the last to sign of Tenant and Landlord (the "Effective Date") between **MLDC 1, LLC, a Washington limited liability company** ("Landlord"), and **Giga Watt, Inc., a Washington corporation** ("Tenant").

1. **FUNDAMENTAL TERMS AND EXHIBITS.**

    (a) **Fundamental Terms.** The following is a summary schedule of certain fundamental definitions and terms of this Lease.

    (i) Landlord: **MLDC 1, LLC**
    10622 227th Avenue SE
    Monroe, WA 98272
    Attn: Ryan Oster, Manager

    (ii) Tenant: **Giga Watt, Inc.**
    1 Campbell Pkwy
    East Wenatchee, WA 98802
    Attn: George Turner, Managing Director

    (iii) Address of Premises: portion of 7906 Randolph Road
    Moses Lake, WA 98837

    (iv) Term and Critical Dates:

    a. Initial Lease Term: Thirty (30) Lease Years.

    b. Extension(s): Two (2) terms of ten (10) Lease Years each.

    c. Anticipated Delivery Date: Date of Execution.

    d. Outside Delivery Date: **N/A**

    (v) Commencement Date: October 16, 2018.

    (vi) Base Rent: The Rent for the initial Term of the Lease shall be $10,000 per month, commencing November 1, 2018.

    (vii) Security Deposit. Upon execution of this Lease, Tenant has delivered to Landlord the sum of $34,000.00 to be held as a security deposit pursuant to Section 3 below.

(viii) Triple Net Lease: It is understood and agreed that this Lease is intended to be a Net Lease, with the Tenant responsible for the cost of maintenance of all buildings, infrastructure, and parking areas, and with Tenant responsible for utilities, and maintaining insurance coverage. Landlord shall be responsible for payment of property taxes. Landlord shall deliver utility invoices to Tenant for the actual charges incurred for utilities serving the Premises, and Tenant shall pay to Landlord the full amount of each utility invoice within ten days of Landlord's delivery.

(ix) Lease Year: The twelve (12) month period during the Initial Term or any Extension commencing on the Commencement Date or the anniversary thereof, as may be applicable; provided, however, that if the Commencement Date is a day other than the first day of a calendar month, then the first Lease Year shall include that period of time from the Commencement Date up to the first day of the next calendar month and the following twelve (12) months, and any subsequent Lease Year shall be the twelve (12) month period beginning on the anniversary of the first day of the next calendar month following the Commencement Date.

(x) Use: The Premises is a portion of a vacant lot. It may be used solely for Tenant's installation and operation of electrical transformers and data processing facilities with the useful power consumption of up to 4.9 megawatts of power in the aggregate. Landlord shall cooperate with Tenant to allow any activity consistent with the aforementioned use and to assist Tenant with Tenant's application processes for requisite permits, subject to Landlord's approval of Tenant's proposed improvements to the Premises, which shall not be unreasonably withheld.

(b) **Exhibits.** The following exhibits (each an "Exhibit") are attached hereto and, by this reference, incorporated herein:

Exhibit A     Depiction of Premises

2. **DESCRIPTION AND USE OF PREMISES.** In consideration of the mutual covenants contained herein, Landlord hereby leases to Tenant, and Tenant hereby leases from Landlord, a portion (consisting of the land underneath two Gigapods and underneath one electrical transformer in the approximate locations depicted on Exhibit A (the "Premises")) of Grant County Tax Parcel number 09-0969-103, which is legally described as Parcel D, Carlile Development Major Plat, Lot 1 Industrial Binding Site Plan, Grant County, Washington, recorded January 13, 2017, under Grant County Auditor's No. 1373121 (the entire parcel is known as the "Property"). A true and correct copy of a depiction of the Premises as it is contained within the Property is attached hereto as <u>Exhibit A</u> and incorporated herein by this

reference. The Premises shall be used for the purpose set forth in Section 1(a)(x) above and for purposes reasonably ancillary thereto. The Premises do not include, and Landlord reserves, the subsurface rights beneath the Premises, and the pipes and ducts, conduits, wires, fixtures, and equipment servicing the Premises.

3. **SECURITY DEPOSIT.** Upon execution of this Lease, Tenant shall deliver to Landlord the security deposit specified in Section 1 above. Landlord's obligations with respect to the security deposit are those of a debtor and not of a trustee, and Landlord may commingle the security deposit with its other funds.

If Tenant breaches any covenant or condition of this Lease, including but not limited to the payment of Rent or the payment of Utilities, Landlord may apply all or any part of the security deposit to the payment of any sum in default and any damage suffered by Landlord as a result of Tenant's breach, with it being expressly understood that the security deposit shall not be considered as a measure of Tenant's damages in case of default by Tenant. In the event of a default in Tenant's payment of rent or utilities, Tenant shall, within three (3) days after written demand therefor by Landlord, deposit with Landlord the amount so applied.

**If Tenant remains in default three (3) days after written demand by Landlord, then Landlord shall have the unilateral right to terminate the Lease and/or immediately shut off electrical services to the Premises. Landlord and Tenant agree that the Tenant's energy-intensive use of the Premises represents a significant risk to Landlord in the event that Tenant does not pay the electrical bill and justifies the Landlord's unilateral right to terminate electrical service three days after written notice of Tenant's default of its obligation to make a utility payment. Landlord and Tenant agree that Tenant shall hold Landlord harmless for any consequential damages associated with Landlord's terminate Tenant's electrical service three days after providing written notice to Tenant of Tenant's default of its obligation to make a utility payment.**

Any payment to Landlord from the security deposit shall not be construed as a payment of liquidated damages for any default. If Tenant complies with all of the covenants and conditions of this Lease throughout the Lease, the security deposit shall be repaid to Tenant without interest within thirty (30) days after the surrender of the Premises by Tenant in the condition required hereunder.

On the fifth anniversary of the Commencement Date, and each five years thereafter, Landlord shall have the right to issue written demand to Tenant for an increase in the Security Deposit by the same percentage increase that the price per kilowatt hour has increased by the Grant County PUD for electrical service to the Premises. The rate per kilowatt hour for electrical service to the Premises at the Commencement date is 2.5 cents per kilowatt hour. If Tenant remains in default three (3) days after written demand by Landlord for the increase in security deposit, then Landlord shall have the unilateral right to terminate the Lease and/or immediately shut off electrical services to the Premises.

4. **TERM AND EXTENSIONS.** The initial term of this Lease shall commence on the Commencement Date and shall expire thirty (30) Lease Years thereafter unless earlier

MLDC 1, LLC / Giga Watt, Inc     Tenant Initials _____

Lease – portion of 7906 Randolph Road, Moses Lake, WA     Landlord Initials _____

3

terminated or extended as set forth below ("Initial Term"). The Lease may be extended for up to two (2) additional periods of ten (10) years each ("Extension(s)"), commencing at midnight on the date on which the Initial Term or any preceding Extension expires. To exercise each Extension, Tenant shall give Landlord written notice of such election to extend the current Lease Term at least sixty (60) days prior to the expiration of the Initial Term or preceding Extension. Each Extension Term shall be on the same terms and conditions as the prior term, provided that Rent for each Extension Term shall be adjusted at the commencement of each Extension Term, with such adjustment calculated from the commencement of the Initial Term, in accordance with the adjustment provisions outlined in paragraph 6, below. If the Tenant does not exercise the Extension at the conclusion of a lease term, then Tenant shall be deemed to have waived all additional Extension rights.

5. **CONSTRUCTION AND DELIVERY.** Tenant shall, at Tenant's sole cost and expense, construct any improvements on the Premises, subject to Landlord's approval of Tenant's proposed improvements to the Premises, which shall not be unreasonably withheld. Tenant shall construct any improvements in a workman-like manner, obtain all required permits at Tenant's sole cost, and keep the Premises free and clear of all liens.

6. **RENT.** From and after the Commencement Date, Tenant agrees to pay Rent to Landlord in the amount set forth in Section 1(a)(vi). Tenant shall pay the Rent to Landlord in equal monthly installments in advance, without offset, deduction, abatement or demand, except as may be set forth in this Lease to the contrary, making the monthly installment payments no later than the first day of each and every calendar month during the Lease. The first monthly installment payment shall be paid on the first of the month following the Commencement Date.

The Rent shall increase by one percent (1%) every three (3) years, starting on November 1, 2021.

If any sums payable by Tenant to Landlord under this Lease are not received by the first day of the month in which they are due, Tenant shall pay Landlord in addition to the amount due, for the cost of collecting and handling such late payment, an amount equal to five percent (5%) of the delinquent amount. In addition, all delinquent sums payable by Tenant to Landlord and not paid within five days of the due date shall, at Landlord's option, bear interest at the rate of twelve percent (12%) per annum, or the highest rate of commercial interest allowable by law, whichever is less. Interest on all delinquent amounts shall be calculated from the original due date to the date of payment.

Landlord's acceptance of less than the full amount of any payment due from Tenant shall not be deemed an accord and satisfaction or compromise of such payment unless Landlord specifically consents in writing to payment of such lesser sum as an accord and satisfaction or compromise of the amount which Landlord claims.

7. **ADDITIONAL RENT.** It is understood and agreed that this Lease is intended to be a Net Lease and except for the property taxes specifically required of Landlord, Landlord shall have no obligation to pay any costs or expenses associated with the Premises. From and after the Commencement Date, Tenant shall be responsible for payment of all costs and expenses

MLDC 1, LLC / Giga Watt, Inc     Tenant Initials ____

Lease – portion of 7906 Randolph Road, Moses Lake, WA     Landlord Initials ____

4

associated with the operation of the Premises, including but not limited to, utilities, casualty insurance, liability insurance and maintenance, repair and replacement of the Improvements located on the Premises, all of which shall be deemed additional rent.

8. **HAZARDOUS SUBSTANCES.**

(a) **Landlord's Representations and Warranties.** Tenant represents and warrants to Landlord that (i) the Premises does not presently, and will not as of the Commencement Date, contain and is free from all Hazardous Substances (as hereinafter defined); (ii) Tenant has not and will not transport, or cause to be transported, any Hazardous Substances on, to or from the Premises; and (iii) Tenant has not received and is not aware of any notification from any federal, state, county or city agency or authority relating to Hazardous Substances, in or near the Premises. "Hazardous Substances" means, collectively, any flammable explosives, radioactive materials, petroleum, natural gas liquids, underground or aboveground storage tanks, any PCB-contaminated items, mold, lead paint, hazardous materials or wastes or any other hazardous or toxic substance defined as such under all applicable laws, codes, orders, statutes, ordinances, rules and regulations of federal, state, county and municipal authorities with appropriate jurisdiction ("applicable laws").

(b) **Tenant's Indemnity.** Tenant shall indemnify, defend (with counsel approved by Landlord, such approval not to be unreasonably withheld) and hold harmless Landlord, and its nominees, officers, directors, agents, employees, successors, assigns, affiliates, subsidiaries and parent companies (if any) from and against any and all liability arising from any and all claims, demands, litigation, consequential damages, and governmental action involving Hazardous Substances brought onto the Premises by Tenant or its agents, employees, contractors or invitees, including, without limitation, any migration of such Hazardous Substances from the Premises to any other property..

(c) **Tenant's Representations and Warranties.** Tenant and its agents, employees, contractors or invitees, shall not sell, use, store, release or transport in or around the Premises any Hazardous Substances in violation of applicable laws. Furthermore, Tenant shall, at its own expense, procure, maintain in effect and comply with all conditions of any and all permits, licenses and other governmental and regulatory approvals required for the storage or use by Tenant of Hazardous Substances on the Premises, including, without limitation, discharge of materials or wastes into or through any sanitary sewer serving the Premises.

(d) **Survival.** The representations, warranties and indemnities set forth in this Section 8 shall survive and continue after the expiration or termination of this Lease.

9. **MAINTENANCE.** Tenant shall at all times and at Tenant's sole cost and expense, keep, maintain, clean, repair, preserve and replace, as necessary, the Premises and all improvements thereon, including, without limitation, all heating, ventilating and air conditioning systems, electrical infrastructure, parking areas, accessways, and sidewalk areas, and any

alterations, additions and other property located on the Premises in good condition and repair, reasonable wear and tear and damage by casualty excepted.

10. **IMPROVEMENTS & ALTERATIONS.**

    (a) **Landlord Approval.** Except as provided in Section 10(b) below, Tenant shall not make any alterations, additions or improvements to the Improvements or the Premises without the prior written consent of Landlord, which consent shall not be unreasonably withheld, conditioned or delayed.

    (b) **Performance of Work.** All construction work done by Tenant within the Premises shall be performed: (i) lien–free and in a quality and workmanlike manner; and (ii) in compliance with all laws, rules and regulations of all governmental agencies and authorities.

    (c) **Liens.** Tenant shall not permit any judgment, attachment and/or lien to be filed against the Premises. Should any judgment, attachment and/or lien of any nature be filed against the Premises as a result of Tenant's actions, then Tenant shall within twenty (20) days after filing cause such judgment, attachment and/or lien to be discharged of record by payment, deposit or bond. Notwithstanding anything contained herein to the contrary, Tenant shall have the right to contest the validity or amount of any lien by posting reasonable security with Landlord in an amount required by Landlord, or appropriate governmental authority with Landlord's consent, until such dispute has been resolved; provided that pursuant to such contest, no portion of the Premises or any interest therein or the Rent reserved hereunder shall be subjected to sale, forfeiture, foreclosure or interference.

11. **SUBORDINATION, NONDISTURBANCE AND ATTORNMENT**

    (a) **Subordination.** Tenant agrees that this Lease shall, at the request of Landlord, be subordinate to any mortgages or deeds of trust that are now, or may hereafter be, placed upon the Premises or any portion thereof and to any and all advances to be made thereunder, and to the interest thereon, and all renewals, replacements and extensions thereof. Tenant also agrees that any mortgagee or beneficiary may elect to have this Lease constitute a prior lien to its mortgage or deed of trust, and in the event of such election and upon notification by such mortgagee or beneficiary to Tenant to that effect, this Lease shall be deemed prior in lien to such mortgage or deed of trust, whether this Lease is dated prior to or subsequent to the date of said mortgage or deed of trust. Tenant's acknowledgment and agreement of subordination provided for in this Section 11(a) is self-operative, and no further instrument of subordination shall be required; however, Tenant agrees that upon the request of Landlord, from time to time, or any mortgagee or beneficiary, Tenant shall execute whatever reasonable instruments may be required to carry out the intent of this Section.

(b) **Attornment**. In the event any proceedings are brought for the foreclosure to, or in the event of the conveyance by deed in lieu of foreclosure to, or in the event of exercise of the power of sale under, any mortgage and/or deed of trust or other security instrument made by Landlord affecting the Premises or any portion thereof, or in the event Landlord sells, conveys or otherwise transfers its interest in the Premises or any portion thereof, this Lease shall remain in full force and effect and Tenant hereby attorns to, and covenants and agrees to execute an instrument in writing reasonably satisfactory to the new owner whereby Tenant attorns to, such successor-in-interest and recognizes such successor-in-interest as the Landlord under this Lease. Payment by or performance of this Lease by any person, firm or corporation claiming an interest in this Lease or the Premises by, through or under Tenant without Landlord's consent in writing shall not constitute an attornment or create any interest in this Lease or the Premises.

(c) **Estoppel Certificate**. Tenant shall, without charge therefor, at any time and from time to time, within thirty (30) days after written request therefor by Landlord, execute, acknowledge and deliver to Landlord a written estoppel certificate, in reasonable form, certifying to Landlord, any mortgagee, or any purchaser of the Premises or any other person designated by Landlord, as of the date of such estoppel certificate: (a) that Tenant is in possession of the Premises; (b) that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified and setting forth such modifications); (c) whether or not there are then existing any set-offs or defenses against the enforcement of any right or remedy of Landlord, or any duty or obligation of Tenant, hereunder (and, if so, specifying the same in detail); (d) that rent is paid currently without any offset or defense thereto; (e) the dates, if any, to which any rent has been paid in advance; (f) whether or not there is then existing any claim of Landlord's default under this Lease and, if so, specifying the same in detail; (g) that Tenant has no knowledge of any event having occurred that authorized the termination of this Lease by Tenant (or if Tenant has such knowledge, specifying the same in detail); and (h) any other matters relating to the status of this Lease that Landlord or its mortgagee may request be confirmed, provided that such facts are accurate and ascertainable.

12. **INSURANCE.**

(a) **Property Insurance.** From and after the Commencement Date and continuing throughout the Lease and any Extensions, Tenant shall maintain the following insurance on the Premises: (i) commercial general liability and property damage insurance in the amount of not less than $1,000,000.00 for property damage or bodily injury or death of any one person and $1,000,000.00 for any one occurrence, (ii) fire and extended coverage insurance in an amount equal to the full replacement cost of the Improvements located on the Premises, (iii) workers' compensation insurance in statutory amounts, and (iv) contractual liability insurance, which may be included as part of its commercial general liability policy and/or excess liability umbrella policy. The foregoing policy shall be primary, and the proceeds of same shall be used for the repair and/or reconstruction of the Premises pursuant to Section 13. Upon notice from

Landlord, Tenant shall deliver to Landlord a certificate from its insurer declaring such insurance to be in full force and effect. The insurance policy shall provide that it is not subject to cancellation or a reduction in coverage except after thirty (30) days' prior written notice to Landlord.

(b) **Liability Insurance.** From and after the Commencement Date and continuing throughout the Lease and any Extensions, Tenant shall maintain the following insurance on the Premises for the benefit of both Landlord and Tenant: (i) commercial general liability and property damage insurance insuring Tenant and naming Landlord and, if requested by Landlord in writing, Landlord's Mortgagee, as an additional insured in the amount of not less than $1,000,000.00 for property damage or bodily injury or death of any one person and $1,000,000.00 for any one occurrence; (ii) an umbrella policy of $5,000,000.00 per occurrence, with an annual aggregate limit of $5,000,000.00, (iii) workers' compensation in statutory amounts; and (iv) contractual liability insurance. Upon notice from Landlord, Tenant shall deliver to Landlord a certificate from its insurer declaring such insurance to be in full force and effect. The insurance policy shall provide that it is not subject to cancellation or a reduction in coverage except after thirty (30) days' prior written notice to Landlord.

a. **Insurance Costs.** The amount of the premiums for all insurance required by this Article to be carried by Tenant shall be paid solely by Tenant and Tenant shall have no obligation for payment to, or reimbursement of, any such insurance costs to Landlord, except in the event Tenant fails to provide or keep in force the insurance required above, in which case Landlord, in its discretion, may provide such insurance, in which event, the cost thereof shall be payable by Tenant to Landlord as additional rent on the first day of the calendar month immediately following demand therefore from Landlord.

13. **DAMAGE TO OR DESTRUCTION OF IMPROVEMENTS.**

    (a) **Insured Losses.** Tenant shall promptly, and using commercially reasonable efforts, reconstruct the Premises if same is damaged by an insured casualty (or casualty which should have been insured pursuant to this Lease) and Tenant shall apply all proceeds received from Tenant's Property Insurance maintained in accordance with this Lease to said reconstruction.

    (b) **Non-Abatement.** Following the date of any damage and during any period of reconstruction, the Rent payable under this Lease shall not abate. Tenant is advised to insure its continuing rent obligations in the event of casualty for the period of reconstruction.

14. **CONDEMNATION.** From and after the Effective Date, Tenant shall have the following rights in the event of a taking of the entire Premises or any part thereof, by reason of any exercise of the power of eminent domain, including any transfer in lieu thereof:

(a) **Total Permanent.** In the event of a taking of the entire Premises or, in Tenant's reasonable discretion, a substantial portion as would render the balance of the Premises not suitable for Tenant's then current use, this Lease shall terminate upon the date that Tenant surrenders possession to the condemning authority (the "Taking Date"), at which time all rights and obligations between the parties shall cease and Rent and other charges payable by Tenant under this Lease shall be apportioned. The taking of any portion of the Improvements, or the loss of the rights of access or ingress and egress as then established, which cannot be replaced with substantially equal access or ingress and egress, shall be, at Tenant's reasonable discretion and option, but not exclusively considered, such a substantial taking as would render the use of the Premises not suitable for Tenant's then current use. In the event this Lease is terminated as a result of a taking, Tenant shall have the right to make a claim with the condemning authority for an award for the loss of Tenant's leasehold estate and moving and relocation expenses; provided, however, Tenant's award shall not diminish Landlord's award for the loss of the Improvements, the land or Landlord's fee simple interest.

## 15. INDEMNIFICATION.

(a) **Tenant's Assumption of Risk and Waiver.** Except to the extent such matter is not covered by the insurance required to be maintained by Tenant under this Lease and except to the extent such matter is attributable to the negligence or willful misconduct of Landlord, Landlord shall not be liable to Tenant, Tenant's employees, agents or invitees for any damage to the personal property of Tenant located in, on or about the Premises, or any such damage caused by the public, or caused by operations in construction of any public or quasi-public work. Neither Landlord nor Tenant shall be liable for any consequential or punitive damages or loss of business or profits and Tenant and Landlord hereby waive any and all claims for any such damage. All property of Tenant kept or stored on the Premises shall be so kept or stored at the sole risk of Tenant and Tenant shall hold Landlord harmless from any claims arising out of damage to the same, unless such damage shall be caused by the negligence or willful misconduct of Landlord.

## 16. TENANT'S PROPERTY.

(a) **Tenant's Property.** Title to the improvements upon the Premises, including the building together with any fixtures attached thereto exclusive of Tenant's Property (as defined below), shall belong to Tenant at all times, subject to Landlord's ability to encumber the Improvements as collateral, and subject to Landlord's ability to insure the Improvements. Tenant alone shall be entitled to claim depreciation on the improvements, additions and alterations therein and all renewals and replacements thereof, for all taxation purposes. Landlord agrees that Tenant shall have the right, at any time or from time to time, to remove any and all of Tenant's Property. Tenant shall repair any damage resulting from such removal, at Tenant's sole expense.

(b) **Landlord's Lien.** Tenant hereby grants Landlord a security interest in Tenant's equipment, including gigapods, electrical infrastructure, servers, trade fixtures,

MLDC 1, LLC / Giga Watt, Inc

Lease – portion of 7906 Randolph Road, Moses Lake, WA

Tenant Initials ___

Landlord Initials ___

furnishings, accounts and all other property of Tenant at the Premises. This Lease shall constitute a security agreement for the purposes of securing Landlord's security interest.

17. **TENANT ASSIGNMENT AND SUBLETTING.** Tenant will not assign this Lease, in whole or in part, nor sublet all or any part of the Premises, without the prior written consent of Landlord in each instance, which consent may be withheld, conditioned or delayed in Landlord's absolute discretion. The consent of Landlord to any assignment or subletting shall not constitute a waiver of the necessity for such consent to any subsequent assignment or subletting. If this Lease shall be assigned, or if the Premises or any part thereof be sublet or occupied by anybody other than Tenant, Landlord may collect rent from the assignee, subtenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, subletting, occupancy or collection shall be deemed a waiver of this covenant, or the acceptance of the assignee, subtenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of the covenants on the part of Tenant herein contained, unless Tenant is released from such obligations by Landlord.

18. **ACCESS AND RIGHT OF ENTRY.** After reasonable notice from Landlord (except in cases of emergency, where no notice is required), Tenant shall permit Landlord and its agents, employees and contractors to enter the Premises at all reasonable times to make repairs, alterations, improvements or inspections. This Section shall not impose any repair or other obligation upon Landlord not expressly stated elsewhere in this Lease. After reasonable notice to Tenant, Landlord shall have the right to enter the Premises for the purpose of showing the Premises to prospective purchasers or lenders at any time, and to prospective tenants within 90 days prior to the expiration or sooner termination of the Lease, and for posting "for lease" signs within 120 days prior to the expiration or sooner termination of the Lease.

19. **SIGNAGE.** Tenant shall obtain Landlord's written consent before installing any signs upon the Premises. Tenant shall install any approved signage at Tenant's sole expense and in compliance with all applicable laws. Tenant shall not damage or deface the Premises in installing or removing signage and shall repair any injury or damage to the Premises caused by such installation or removal.

20. **LANDLORD ASSIGNMENT.** Landlord shall have the right to transfer, assign and convey, in whole or in part, any or all of the right, title and interest in the Premises, provided such transferee, assignee or grantee shall be bound by the terms, covenants and agreements herein contained, and shall expressly assume and agree to perform the covenants and agreements of Landlord herein contained.

21. **QUIET ENJOYMENT.** Landlord covenants that commencing on the Delivery Date and so long as Tenant has not committed an uncured Event of Default under this Lease, Tenant will have peaceful and quiet possession of the Premises, free from disturbance by anyone claiming by, through, or under Landlord.

MLDC 1, LLC / Giga Watt, Inc    Tenant Initials

Lease – portion of 7906 Randolph Road, Moses Lake, WA    Landlord Initials

10

18-03197-FPC7    Doc 483-7    Filed 02/17/20    Entered 02/17/20 21:25:33    Pg 12 of 20

## 22. TENANT'S DEFAULT.

(a) **Events of Default.** An Event of Default shall mean the occurrence or existence of one or more of the following events or conditions (whatever the reason for such Event of Default and whether voluntary, involuntary or effected by operation of law):

(i) failure of Tenant to pay any Rent or other sum due (including utilities) hereunder, if such failure is not cured within three (3) days after receipt of written notice thereof from Landlord; or

(ii) Tenant shall fail to perform any other non-monetary covenant or agreement contained in this Lease within ten (10) days after receipt of written notice of default by Landlord; or

(iii) (1) the making by Tenant or any guarantor hereof of any general assignment for the benefit of creditors, (2) the filing by or against Tenant or any guarantor hereof of a petition to have Tenant or any guarantor hereof adjudged a bankrupt or a petition for reorganization or arrangement under any law relating to bankruptcy (unless, in the case of a petition filed against Tenant or any guarantor hereof, the same is dismissed within sixty (60) days), (3) the appointment of a trustee or receiver to take possession of substantially all of Tenant's assets located at the Premises or of Tenant's interest in this Lease or of substantially all of the guarantor's assets, where possession is not restored to Tenant or the guarantor within sixty (60) days, or (4) the attachment, execution or other judicial seizure of substantially all of Tenant's assets located at the Premises or of Tenant's interest in this Lease or of substantially all of the guarantor's assets where such seizure is not discharged within sixty (60) days.

(b) **Remedies.** Upon the occurrence of an Event of Default, Landlord shall sue commercially reasonable efforts to mitigate its damages, and Landlord may, at its option, exercise the following remedies, in addition to any remedies available at law or in equity:

(i) Landlord may terminate this Lease, and Tenant shall immediately surrender possession of the Premises to Landlord. No act by Landlord other than giving written notice to Tenant of Landlord's election to terminate this Lease shall terminate this Lease. Termination shall not relieve Landlord or Tenant of any obligation under this Lease which has accrued prior to the date of such termination. Upon such termination, Landlord shall have the right to re-enter the Premises, and remove all persons and property, and Landlord shall also be entitled to recover from Tenant:

(A) The worth at the time of award of the unpaid Rent and Additional Rent which had been earned at the time of termination; plus

(B) The worth at the time of award of the amount by which the unpaid Rent and Additional Rent which would have been earned after termination until the time of award exceeds the amount of such rental loss which Tenant provides Landlord could have reasonably avoided; plus

(C) The "worth at the time of award" shall be computed by allowing interest at an interest rate of the lesser of: (a) the rate announced from time to time by the largest (as measured by deposits) chartered operating bank operating in the State of Washington, as its "prime rate" or "reference rate", plus three percent (3%).

(D) Reletting Expenses, which are defined as all expenses incurred by Landlord in connection with reletting the Premises, including without limitation, all repossession costs, brokerage commissions, attorneys' fees, remodeling and repair costs, costs for removing and storing Tenant's property and equipment, and rent concessions granted by Landlord to any new Tenant, prorated over the life of the new lease.

(ii) Landlord may elect not to terminate Tenant's right to possession of the Premises, in which event this Lease will continue in full force and effect as long as Landlord does not terminate Tenant's right to possession, and Landlord may continue to enforce all of its rights and remedies specifically set forth in this Lease, including the right to collect Rent and Additional Rent as it becomes due.

(c) **CURING DEFAULTS.** If Tenant fails to perform any agreement to be performed by Tenant and such failure continues for thirty (30) days without commencement and diligent pursuit of cure, or involves potential danger to the health or safety of persons, or may result in substantial deterioration of the Premises, then in each case after written notice to Tenant specifying the default, Landlord may, at its election, cure such failure or breach for and on behalf of Tenant. Any amount which Landlord shall reasonably expend for such purpose, or which shall otherwise be due by Tenant to Landlord, shall be paid to Landlord on demand, without contest, upon delivery of its invoice, from the date which is thirty (30) days after written demand therefor, accompanied by reasonable documentary evidence of such expenditures, to the date of payment in full.

23. **COSTS AND ATTORNEYS' FEES.** Each party shall be responsible for its own costs, attorney fees and expenses arising from this Agreement.

24. **NOTICES.** All notices, demands, or other communications of any type given by Landlord to Tenant or by Tenant to Landlord, whether required by this Lease or in any way related to the transaction contracted for herein, shall be void and of no effect unless given in accordance with the provisions of this Lease. All notices shall be legible and in writing and shall be sent by a recognized overnight courier service for next day delivery or by United States certified mail, return receipt requested, postage prepaid and addressed to the parties at their respective addresses set forth in Section 1. Notices sent in compliance with this Section shall be

MLDC 1, LLC / Giga Watt, Inc            Tenant Initials ⸺

effective (a) upon receipt or refusal; (b) one (1) business day after depositing with such an overnight courier service; or (c) three (3) business days after deposit in the mails if mailed as provided above. Either party hereto may change the address for notice and the person to whom notices are sent specified above by giving the other party ten (10) days advance written notice of such change of address, given in accordance with this provision.

25. **HOLDING OVER.** If Tenant shall occupy the Premises after the expiration of this Lease without Landlord approval, it is understood that Tenant shall hold the Premises as a tenant from month to month, subject to all the other terms and conditions of this Lease, except that Rent shall be due at the rate of 125% of the rate due immediately prior to such holdover.

26. **NON-WAIVER.** Landlord's waiver of any breach of any term contained in this Lease shall not be deemed to be a waiver of the same term for subsequent acts of Tenant. The acceptance by Landlord of Rent or other amounts due by Tenant hereunder shall not be deemed to be a waiver of any breach by Tenant preceding such acceptance.

27. **COMMISSION.** Landlord and Tenant represent and warrant to each other that they have not had any dealings with any real estate broker, finders or agents in connection with this Agreement. Landlord and Tenant shall indemnify and hold each other harmless from and against any liability and cost which Landlord or Tenant may suffer in connection with any real estate broker claiming by, through or under either party seeking any commission, fee or payment in connection with this Lease.

28. **REPRESENTATIONS AND WARRANTIES OF LANDLORD.** To induce Tenant to execute, deliver and perform this Agreement and without regard to any independent investigations made by Tenant, Landlord represents and warrants to Tenant on and as of the date of execution and delivery of this Lease as follows:

    (a) **Title.** Landlord owns the Premises in fee simple, free of any liens, claims or encumbrances that would restrict the ability of Tenant to use the Premises for the purposes contemplated herein.

    (b) **Authorization.** Landlord has full capacity, right, power and authority to execute, deliver and perform this Lease and all documents to be executed by Landlord pursuant hereto, and all required action and approvals therefor have been duly taken and obtained. The individuals signing this Lease and all other documents executed or to be executed pursuant hereto on behalf of Landlord are and shall be duly authorized to sign the same on Landlord's behalf and to bind Landlord thereto. This Lease and all documents to be executed pursuant hereto by Landlord are and shall be binding upon and enforceable against Landlord in accordance with their respective terms, and the transaction contemplated hereby will not result in a breach of, or constitute a default or permit acceleration of maturity under, any indenture, mortgage, deed of trust, loan agreement or other agreement to which Landlord or the Premises are subject or by which Landlord or the Premises is bound.

MLDC 1, LLC / Giga Watt, Inc                                      Tenant Initials _____

Lease – portion of 7906 Randolph Road, Moses Lake, WA          Landlord Initials _____

18-03197-FPC7　　Doc 483-7　　Filed 02/17/20　　Entered 02/17/20 21:25:33　　Pg 15 of 20

(c) **Litigation.** There are no claims, causes of action or other litigation or proceedings pending or, to the best of Landlord's knowledge, threatened in respect to the ownership, operation or environmental condition of the Premises or any part thereof (including disputes with mortgagees, governmental authorities, utility companies, contractors, adjoining land owners or suppliers of goods or services), except for claims which are fully insured and as to which the insurer has accepted defense without reservation.

(d) **Violation.** There are no violations of any health, safety, pollution, zoning or other laws, ordinances, rules or regulations with respect to the Premises, which have not been heretofore entirely corrected. In the event Landlord has knowledge of any such violations, Landlord shall cure such violations prior to the date that Tenant takes possession of the Premises.

(e) **Zoning.** The Use as set forth in Section 1 of this Lease is permitted under the current zoning of the Premises.

29. **REPRESENTATION OF TENANT.** Tenant has full capacity, right, power and authority to execute, deliver and perform this Lease and all documents to be executed by Tenant pursuant hereto, and all required action and approvals therefor have been duly taken and obtained. The individuals signing this Lease and all other documents executed or to be executed pursuant hereto on behalf of Tenant are and shall be duly authorized to sign the same on Tenant's behalf and to bind Tenant thereto. This Lease and all documents to be executed pursuant hereto by Tenant are and shall be binding upon and enforceable against Tenant in accordance with their respective terms.

30. **CONFIDENTIALITY.** Landlord and Tenant shall keep the terms of this Lease confidential except to the extent disclosure is reasonably necessary in the conduct of each party's business or is otherwise required by law.

31. **SURVIVAL.** All indemnities contained in this Lease and obligations which by their terms are to be performed after the termination or expiration of this Lease shall survive the termination or expiration of this Lease.

32. **MISCELLANEOUS.**

(a) **Merger.** This Lease represents the entire agreement between Landlord and Tenant pertaining to the subject matter of this Lease, and any and all discussions and negotiations between Landlord and Tenant have been merged into this Lease. No rights are conferred upon Landlord until this Lease has been executed by Tenant. Any and all representations and agreements by either of the parties or their agents made during negotiations prior to execution of this Lease and which representations are not contained in this Lease shall not be binding upon either of the parties.

(b)     **Interpretation.** All terms and words used in this Lease, regardless of the number and gender in which they are used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine or neuter, as the context or sense of this Lease or any portion of this Lease may require, the same as if such words had been fully and properly written in the number and gender.

(c)     **Counterpart Execution.** This Lease may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts together shall constitute but one and the same instrument.

(d)     **No Joint Venture or Partnership.** Landlord and Tenant are not and shall not be considered joint venturers nor partners and neither shall have power to bind or obligate the other except as set forth in this Lease.

(e)     **Separability.** If any provision of this Lease or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons whose circumstances are other than those as to which it is held invalid or unenforceable, shall not be affected thereby.

(f)     **Modification of Lease.** No modification, alteration or amendment of this Lease shall be binding unless in writing and executed by both parties hereto.

(g)     **Headings.** The headings to the Sections of this Lease are inserted only as a matter of convenience and for reference, and in no way confine, limit or proscribe the scope or intent of any Section of this Lease, nor in any way affect this Lease.

(h)     **Successors and Assigns.** This Lease shall be binding upon and inure to the benefit of the parties, any subtenants and their heirs, administrators, executors, successors and assigns.

(i)     **Time of the Essence and Business Day.** Time is of the essence of this Lease and each provision; provided, however, if the final (but not any interim) date of any period set forth herein falls on a Saturday, Sunday or legal holiday under the laws of the United States of America, the final date of such period shall be extended to the next business day.

(j)     **Governing Law.** This Lease shall be governed by and construed and interpreted in accordance with the laws of the State of Washington.

[*REMAINDER OF PAGE INTENTIONALLY BLANK; SIGNATURE PAGE FOLLOWS.*]

IN WITNESS WHEREOF, the parties have caused this Lease to be executed as of the dates set forth below.

**LANDLORD**

**MLDC 1, LLC**

By: _____

Name: ____Ryan Cox_____

Title: ____Manager_____


**TENANT**

**GIGA WATT, INC.**

By: _____

Name: ____George F. Turner III____

Title: ____Managing Director_____

STATE OF WASHINGTON    )
                       ) SS.
COUNTY OF CHELAN       )

I certify that I know or have satisfactory evidence that <u>George Turner</u> is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute the instrument and acknowledged it as the managing director of Giga Watt, Inc., to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.



Dated this 16th day of October, 2018

_____
Notary Public

My appointment expires 11-1-2020


STATE OF WASHINGTON    )
                       ) SS.
COUNTY OF CHELAN       )

I certify that I know or have satisfactory evidence that <u>Ryan Oster</u> is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute the instrument and acknowledged it as the manager of MLDC 1, LLC, to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.



Dated this 16th day of October, 2018

_____
Notary Public

My appointment expires 11-1-2020

MLDC 1, LLC / Giga Watt, Inc.

Lease – portion of 7906 Randolph Road, Moses Lake, WA

Tenant Initials ____

Landlord Initials ____

17

18-03197-FPC7    Doc 483-7    Filed 02/17/20    Entered 02/17/20 21:25:33    Pg 19 of 20

# EXHIBIT A
# TO LEASE AGREEMENT



4111297