# EXHIBIT K
# (Termination Letter)

# LAW OFFICES OF MARK D. WALDRON, PLLC

**6711 Regents Blvd., Suite B**
Tacoma, WA 98466 ·Tel.: 253-565-5800
Email: **mark@mwaldronlaw.com**

August 9, 2019

**BY EMAIL:** nathan@allrisecapital.com
Mr. Nathan Cho
General Counsel
Allrise Capital
200 Spectrum Center Dr., Ste. 1450
Irvine, CA 92618

Re:   <u>In re Giga Watt, Inc., Case No. 18-03197, U.S. Bankruptcy Court for the Eastern District of Washington</u>

Dear Mr. Cho:

I am the duly appointed Chapter 11 Trustee in the above-referenced bankruptcy case. I am writing regarding your client's claim with respect to a pod located at the Debtor's Moses Lake Facility and the multiple discussions you have had with my counsel. As discussed below, Allrise Capital ("Allrise") owes the estate (the "Estate") of Giga Watt Inc. ("Giga Watt") the sum of not less than $82,356.73, immediate payment of which is a condition to any settlement discussions regarding Allrise's future use of Giga Watt's facilities.

Before we continue any discussions with you, Allrise must pay the following sums:

| Items | Amount |
| --- | --- |
| Unpaid electricity consumed by Allrise in January 2019 (and revenues thereby collected) due within 3 business per Service Agreement, ¶ 3.2.2. | $60,856.73 |
| January rent (50%) | $ 2,500.00 |
| Holding fee for refusal to release the pod @ $1,000 per month for February through May when there was no electricity (20% of rent per month representing an 80% reduction) | $ 4,000.00 |
| Rent for June, July and August | $15,000.00 |
|  | $82,356.73 |

While we could reasonably demand that you pay the full rent in the amount of $5,000 for every month, this letter instead offers an 80% reduction for the period when the electricity was turned off at the pod. If Allrise had paid for the electricity, as it was obligated to do, then the electricity would likely have been resumed for the facility much earlier. Allrise's failure to tender funds has hindered the reorganization effort.

Reference is hereby made to the following agreements (collectively, the "Agreements") ostensibly entered into between Giga Watt and Allrise:

1. Sublease of Land dated May 1, 2107 (the "Sublease");
2. Service Agreement dated May 2, 2017;
3. Mining Farm Development Agreement dated May 2, 2017;
4 Purchase and Sale Agreement dated May 1, 2017.

For reference the Agreements are enclosed herewith.

Pursuant to the Agreements, Allrise purported to buy a pod and miners from Giga Watt and to have the pod and miners serviced and maintained by Giga Watt. However, the agreements are invalid and terminated. Furthermore, they appear calculated to evade the U.S. securities laws.

With respect to the first point, the sublease that Allrise entered into with Giga Watt in May 2017 violates the master lease between Giga Watt, as tenant, and MLDC1, LLC, as landlord. The master lease prohibits any sublease without the master landlord's consent. No such consent was requested or given. Therefore, the Sublease is void. Sublease, ¶ 16 (providing that the Sublease is subject to the master lease).

In addition, to the extent it was ever valid, the Sublease has been terminated and ownership of the pod has "reverted" to the Estate of Giga Watt. Specifically, Allrise failed to pay the rent in January. The rent was required to be paid "monthly on the First (1st) of each month." Sublease, ¶ 3.b. Allrise's failure to pay the rent entitled Giga Watt to "cancel this Sublease and reenter and take possession of the Parcel 1 using all necessary force to do so."

Sublease, ¶ 10. It also caused any ownership of the pod to revert to Giga Watt. Sublease ¶ 5.b. ("At the termination of this Sublease, Tenant shall revert the Mining Firm to Giga Watt.").

Finally, Allrise participated in Giga Watt's Initial Coin Offering, which was an unregistered securities offering. The Agreements are nothing more than an effort to mask that participation. Giga Watt manufactured, delivered, installed and maintained all the miners that are subject to the Agreements. In fact, Giga Watt had the "unrestricted right of entry" pursuant to paragraph 9 of the Sublease. Allrise has not produced any accounting to show that the mining operations at the applicable pod were segregated from Giga Watt's mining. In short, the ostensible purchase of miners and sublease of the Pod was no more than an investment in Giga Watt. The Agreements neither reflect nor define economic reality. Accordingly, any claim arising from these Agreements – to the extent one exists – is subject to the mandatory and equitable subordination provisions set forth in section 510(b) of title 11 of the United States Code.

I hereby demand payment of $82,356.73 in certified funds received by my office on or before Thursday, August 15, 2019 before any further discussion can occur. If not paid, then this matter is concluded and I will instruct the Estate's legal counsel to proceed accordingly. In contrast, upon timely receipt of the certified funds, we will enter into settlement negotiations with you regarding any claim that you may assert.

Sincerely yours,

*Mark Waldron*

Mark D. Waldron in his capacity as Chapter 11 Trustee

Enclosures: Agreements