Pamela M. Egan, WSBA No. 54736 (*pro hac vice*)
POTOMAC LAW GROUP
1905 7th Avenue W
Seattle, Washington 98119
Telephone: (415) 297-0132
Facsimile: (202) 318-7707
Email: pegan@potomaclaw.com

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GIGA WATT, Inc., a Washington corporation,<br><br>Debtor. | Case No. 18-03197 FPC 11<br><br>The Honorable Frederick P. Corbit<br><br>**DECLARATION OF MARK D. WALDRON IN SUPPORT OF OMNIBUS OPPOSITION OF THE CHAPTER 11 TRUSTEE TO: (I) NOTICE AND MOTION TO COMPEL TRUSTEE TO ABANDON ALLRISE MINING POD AND (II) APPLICATION OF ALLRISE FINANCIAL GROUP FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM** |

DECLARATION OF MARK D. WALDRON

I, Mark D. Waldron, declare as follows:

1. I submit this declaration in my capacity as the duly-appointed Chapter 11 Trustee (the "**Trustee**") in the bankruptcy case of the above-captioned debtor (the "**Debtor**" or "**Giga Watt**") and in support of the *Omnibus Opposition of the Chapter 11 Trustee to: (i) Notice and Motion to compel Trustee to Abandon Allrise Mining Pod and (ii) Application of Allrise Financial Group for Allowance and Payment of Administrative Expense Claim* (the "**Opposition**"), which I have read and approved. The statements set forth herein are based on my investigation of the Debtor's affairs, which is ongoing, and, except where otherwise noted, are based on personal knowledge. If called as a witness, I would and could competently testify thereto.

2. Unless otherwise defined herein, capitalized terms have the meanings ascribed to them in the Opposition.

3. The Abandonment Motion relates to a pod that is located at the Debtor's Moses Lake Facility. A pod is a building that is outfitted with electrical gear that enables hundreds of computers to run crypto-mining operations. It is built on a concrete slab with permanent improvements. The Debtor leased the ground under the pods.

4. On May 1, 2017, Giga Watt, Inc. and the Master Landlord signed a lease for the land on which the Pod is located (the "**Master Lease**"). The Master Lease permitted a sublease only upon notice to the Master Landlord. Based on my investigation, notice of the Sublease with Allrise was never provided to the Master Landlord. A true and correct copy of the Master Lease is attached to the Opposition as **Exhibit A**.

5. That same day, May 1, 2017, and without notice to the Master Landlord, Giga Watt entered into the Sublease with Allrise IP Holding, Inc.,

which is described in the Sublease as a Delaware Corporation. A true and correct copy of the Sublease as provided to me by Allrise is attached to the Opposition as **Exhibit B**.

6. On May 2, 2017, Allrise IP Holding, Inc., described as a Cayman Islands corporation, purportedly entered into the Service Agreement with Giga Watt, Inc. A true and correct copy of the Service Agreement provided to me by Allrise is attached to the Opposition as **Exhibit C**.

7. On May 2, 2017, Giga Watt and Allrise Holding IP, Inc., described as a Cayman Islands corporation, purportedly entered into a Development Agreement which provided that Giga Watt would build the Pod. A true and correct copy of the Development Agreement provided to me by Allrise is attached hereto as **Exhibit D**.

8. On May 1, 2017, Allrise IP Holding, Inc., described again as a Cayman Island corporation, purportedly entered into a Purchase and Sale Agreement with Giga Watt for the purchase of miners. A true and correct copy of the Purchase and Sale Agreement provided to me by Allrise is attached hereto as **Exhibit E**.

9. The Debtor's Schedules of Assets and Liabilities and its Statement of Financial Affairs, which I have reviewed, omit any mention of Allrise.

10. I or people under my supervision have conducted a search of the public records. Allrise never publicly recorded any interest in the Pod. No insignia were placed on the Pod. No indication of any kind was ever made that Allrise was conducting business at the Pod or claimed ownership in the Pod.

11. In October 2018, the Debtor and the Master Landlord amended the Master Lease to provide that a sublease was allowed, provided that the Master Landlord provided written consent. A true and correct copy of the amended

3
DECLARATION OF MARK D. WALDRON

Master Lease is attached to the Opposition as **Exhibit G**. Based on my investigation, no consent was ever requested or obtained.

12. After the Court entered the *Order Granting Chapter 11 Trustee's Motion for Order Approving Agreement with Moses Lake Landlords* [ECF 300], dated May 10, 2019, and the *Order Granting Chapter 11 Trustee's Motion for Order Approving Moses Lake Three-Way Agreement* [ECF 309], dated May 20, 2019, I resumed operations at most of the Moses Lake Facility.

13. At that point in time, and at my request, the Master Landlord gave the keys to the Moses Lake Facility to Lauren Miehe and Allen Oh, whom I had retained pursuant to Court orders to operate and maintain the Moses Lake Facility. They kept the Pod locked at all times. They never removed any equipment from the Pod. I maintain security cameras which allow Lauren Miehe and Allen Oh to know who enters and leaves the Moses Lake Facility at all times. There is no evidence of the removal of any equipment from the Pod, other than as set forth below.

14. On or about July 19, 2019, the Master Landlord voluntarily paid to have the electricity turned on at the remaining closed pods at the Moses Lake Facility, Pod 1, which is the Pod at issue here, and Pod 2. Almost immediately, I began operations from Pod 2. The Pod remained dormant pending resolution of Allrise's claim.

15. On August 9, 2019, after multiple demands for payment and exhaustive efforts to resolve issues with Allrise, I sent a letter to Allrise formally terminating the sublease. A true and correct copy of the foregoing termination letter is attached hereto as **Exhibit K**.

16. On or about August 21, 2019, Allrise tendered one half of the rent due for January 2019 and one half of the electricity that Allrise unilaterally

decided was appropriate. The total sum was $17,500. I accepted the tender without rescinding the termination or otherwise waiving any rights.

17. On December 11, 2019, at my request, Allrise removed its miners from Pod 1 so that I could begin operating in it. Allen Oh supervised the removal to ensure that nothing, but miners and related power cords, were removed from the Pod.

18. Thereafter, in December 2019, my team installed miners and began operations in the Pod.

19. I dispute Allrise's assertion that the Pod does not benefit the estate, is of inconsequential value to the estate or is burdensome to the estate. The Pod benefits the estate by allowing me to operate more miners for the benefit of the estate.

20. The Debtor's Schedules and Statement of Financial Affairs omit any mention of Allrise. I have asked Allrise to produce any record of a public recording of its asserted ownership interest in the Pod. None has been produced. A search of the Grant County public records and a UCC search has found no recording of any purported interest.

21. Based on my investigation, the Master Landlord never knew of Allrise's asserted interest in the Pod until Allrise contacted my counsel after the Petition Date. Nothing in or on the Pod, which I have personally viewed, would have indicated Allrise's assertion to ownership of or operation in the Pod.

22. My team is operating approximately 7,000 to 8,000 miners in closely packed quarters. Checking the serial number on each miner would require pulling two workers away from all other duties and have them spend a full two to three weeks manually unplugging, checking and replugging miners, handling sharp and

5
DECLARATION OF MARK D. WALDRON

18-03197-FPC7    Doc 484    Filed 02/17/20    Entered 02/17/20 21:32:54    Pg 5 of 6

old wires that cut the hands. To the best of my knowledge, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 17th day of February 2020 in Tacoma, Washington.

_____
Mark D. Waldron

6
DECLARATION OF MARK D. WALDRON