EXHIBIT B
(Verified Complaint)

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF DOUGLAS

| | |
|---|---|
| PORT OF DOUGLAS COUNTY, WASHINGTON, a municipal corporation of the State of Washington, | NO. **18-2-00378-09** |
| Plaintiff, | VERIFIED COMPLAINT FOR UNLAWFUL DETAINER |
| vs. | |
| GIGA WATT, INC., a Washington corporation, | |
| Defendant | |

FOR A CAUSE OF ACTION IN UNLAWFUL DETAINER, the plaintiff, through his

attorneys of record, alleges as follows:

1.      Plaintiff, Port of Douglas County, Washington, is a municipal corporation of the

State of Washington. Plaintiff owns real property located at 643, 644, 675, and 676 South

Billingsley Drive, East Wenatchee, Douglas County, Washington (hereinafter referred to as

"the Premises").

2.      Defendant, Giga Watt, Inc., is a Washington corporation with its principle place

of business in Douglas County, Washington.

VERIFIED COMPLAINT FOR UNLAWFUL
DETAINER
Page 1 of 6

LAW OFFICES OF
**DAVIS, ARNEIL LAW FIRM, LLP**
617 WASHINGTON STREET
WENATCHEE, WA 98801
TELEPHONE (509) 662-3551

1     3.     Jurisdiction and venue is proper in this Court.

2     4.     On March 9, 2017, Plaintiff and Defendant executed an agreement entitled Land

3 Lease for Portion of Pangborn Airport Business Park East Wenatchee, (hereinafter referred to

4 as "the Lease"). A true and correct copy of the Lease is attached hereto as **Exhibit A**.

5     5.     An Addendum to Lease Agreement Pangborn Airport Business Park East

6 Wenatchee, Washington, (hereinafter referred to as "the Addendum") was executed by the parties

7 on August 15, 2017, which modified certain terms of the Lease. A true and correct copy of the

8 Addendum is attached hereto as **Exhibit B**.

9     6.     Pursuant to paragraph 3 of the Lease, Plaintiff leased the Premises to Defendant for

10 a term of thirty (30) years beginning March 1, 2017.

11     7.     Pursuant to paragraph 1 of the Addendum, rent is calculated based on an annual

12 rate of twenty-nine and one half cents ($0.295) per square foot with an increase in rent each year.

13     8.     Pursuant to paragraph 4(g) of the Lease, the Lease is a triple-net lease, with the

14 landlord having no obligation to provide any services and the tenant paying 100 percent of all

15 operating costs.

16     9.     Pursuant to paragraph 6 of the Lease, and paragraph 2 of the Addendum,

17 Defendant was required to provide a surety of $350,000.00 as rental surety under RCW

18 53.08.085.

19     10.     Pursuant to paragraphs 7(b)-(c) of the Lease, tenant is the owner of any substation

20 and improvements constructed on the premises, except those improvements which are defined as

21 "Permanent Structures" under the Lease.

22

23

24 VERIFIED COMPLAINT FOR UNLAWFUL
DETAINER
Page 2 of 6

1       11.     Pursuant to paragraph 24(d) of the Lease, Defendant was required to "keep the
2 Premises and the improvements free from any liens, excluding long term financing, arising out of
3 any work performed, materials ordered or obligations incurred by Tenant."

4       12.     On August 2, 2018, a Claim of Lien was filed by Consolidated Electrical
5 Distributors, Inc. in the real property records of Douglas County, Washington, AFN # 3214548.
6 The Claim of Lien alleges to encumber improvements on the Premises, and named Chelan and
7 Douglas County Port District and Defendant as owners of the real property and improvements.
8 The person alleged to owe the debt to the lien claimant is "Neppel Electric & Controls LLC." The
9 sum of the lien claimed is $145,093.83 plus interest and sales tax. A copy of the Claim of Lien is
10 attached hereto as **Exhibit C**.

11       13.     On August 6, 2018, a Claim of Lien was filed in the real property records of
12 Douglas County, Washington, AFN # 3214623. The lien claimant is Neppel Electrical &
13 Controls, LLC, a Washington limited liability company. The alleged respondents is Defendant,
14 Plaintiff, and the Port of Chelan County. The Claim of Lien alleges to encumber the Premises in
15 whole, and not simply the improvements. The sum of the lien claimed is $479,959.63, together
16 with interest thereon. A copy of the Claim of Lien is attached hereto as **Exhibit D**.

17       14.     Pursuant to the paragraph 18 of the Lease, Plaintiff delivered by both email and
18 hand delivery a 30-Day Notice of Breach of Lease on October 1, 2018 (hereinafter referred to as
19 "30-Day Notice"). A copy of the 30-Day Notice is attached hereto as **Exhibit E**.

20       15.     A 10-Day Notice to Cure or Vacate (hereinafter referred to as "10-Day Notice")
21 was served upon Defendant by posting a copy of the 10-Day Notice upon the front gate of the
22 Premises, and mailing to the addresses of the Premises four copies of the 10-Day Notice on
23 October 19, 2018. A copy of the 10-Day Notice is attached hereto as **Exhibit F**. A copy of the

24 VERIFIED COMPLAINT FOR UNLAWFUL
DETAINER
Page 3 of 6

LAW OFFICES OF
**DAVIS, ARNELL LAW FIRM, LLP**
617 WASHINGTON STREET
WENATCHEE, WA 98801
TELEPHONE (509) 662-3551

1  Declaration of Posting of Donald Jones is attached hereto as **Exhibit G**. A copy of the

2  Declaration of Mailing of Amy Brittingham is attached hereto as **Exhibit H**.

3      16.    In addition to posting and mailing at the Premises, Plaintiff personally served the

4  10-Day Notice on the registered agent of Defendant on October 19, 2018. A copy of the

5  Declaration of Service of Donald Jones is attached hereto as **Exhibit I**.

6      17.    More than 30 days have elapsed since the 30-Day Notice was delivered to

7  Defendant. More than 11 days have elapsed since the 10-Day Notice was posted and mailed to

8  the Premises. More than 10 days have elapsed since the 10-Day notice was personally served and

9  mailed to the registered agent. Defendants have failed to cure the breaches by not having the liens

10 removed from the improvements on the Premises. The Plaintiff is entitled to an Order terminating

11 the Lease Agreement, declaring Defendants to be in unlawful detainer of the Premises, requiring

12 restitution of the Premises to the Plaintiff, providing damages for lost future rent, costs and fees in

13 an amount to be proven herein, and other contractual and equitable remedies.

14     WHEREFORE, Plaintiff prays for a judgment as follows:

15     1.    For a judgment of unlawful detainer against Defendant;

16     2.    For an Order for a Writ of Restitution restoring the Premises to Plaintiff as against

17 Defendant;

18     3.    For a judgment declaring the tenancy between the Plaintiff and Defendant

19 terminated;

20     4.    For a judgment against Defendant for rents, attorney fees and costs, and other

21 damages in an amount to be proven;

22     5.    For attorney's fees and costs as authorized by statute;

23

24 VERIFIED COMPLAINT FOR UNLAWFUL
   DETAINER
   Page 4 of 6

LAW OFFICES OF
**DAVIS, ARNEIL LAW FIRM, LLP**
617 WASHINGTON STREET
WENATCHEE, WA 98801
TELEPHONE (509) 662-3551

1    6.    For such other and further relief as the Court deems just and equitable under these

2    circumstances.

3    //

4    //

     DATED this 31st day of October, 2018.

5

6                                   DAVIS, ARNEIL LAW FIRM, LLP

7                              By _D. R. Law_____
                                   David R. Law, WSBA No. 48057
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   VERIFIED COMPLAINT FOR UNLAWFUL
     DETAINER                                        LAW OFFICES OF
     Page 5 of 6                                DAVIS, ARNEIL LAW FIRM, LLP
                                                     617 WASHINGTON STREET
                                                     WENATCHEE, WA 98801
                                                   TELEPHONE (509) 662-3551

**Verification of Plaintiff**

State of Washington
County of _DOUGLAS_

      Lisa Parks, being first duly sworn, on oath deposes and says: That she is the Executive Director of the Plaintiff herein; that she has read the above and foregoing Complaint for Unlawful Detainer, knows the contents thereof and believes the same to be true. That she is authorized by Plaintiff to execute the verification of this Complaint for Unlawful Detainer.

                      _Lisa Parks_
               Lisa Parks, Executive Director for Plaintiff

      Signed and sworn to or affirmed before me this 31ST day of October , 2018.

          Signature       _Douglas A. Provo_
                  _DOUGLAS A. PROVO_   ,Notary Public
          My Appointment Expires _FEBRUARY 13, 2019_

DOUGLAS A. PROVO
Commission Expires
NOTARY
PUBLIC
February 13, 2019
STATE OF WASHINGTON

VERIFIED COMPLAINT FOR UNLAWFUL
DETAINER
Page 6 of 6
FADRLAF-J\Giga Watt, Inc\Verified Complaint for UD.doc

LAW OFFICES OF
**DAVIS, ARNELL LAW FIRM, LLP**
617 WASHINGTON STREET
WENATCHEE, WA 98801
TELEPHONE (509) 662-3551

18-03197-FPC7   Doc 500-2   Filed 02/28/20   Entered 02/28/20 15:09:41   Pg 7 of 53

THIS LEASE ("Lease") is made by and between the PORT OF DOUGLAS COUNTY, a municipal corporation of the State of Washington (the "Landlord") and Giga Watt, Inc. (the "Tenant").

1.  Lease and Acceptance of the Premises.

    a.  **Lease of Premises.** The Landlord leases to the Tenant the 345,326 square feet, which is 7.93 +/- acres, of unimproved real property, known as **Lots 10, 11, 12 and 13**, in the Pangborn Airport Business Park located at **643, 644, 675 & 676 South Billingsley Drive**, East Wenatchee, Washington 98802, more particularly described in Exhibit A (the "Premises").

    b.  **Acceptance of Premises.** The Premises constitutes vacant land within the Pangborn Airport Business Park. The Landlord and Tenant each represent to the other that neither is aware of any condition or occurrence with respect to the Premises which would constitute any violation of federal, state or local law. The Tenant has examined the Premises and all other matters determined necessary by the Landlord, and the Tenant accepts the Premises in its present condition, with all defects. The parties agree that there are no warranties, expressed or implied as to conditions apparent or unknown on the Premises, except as otherwise stated in this Lease.

    c.  **Lot Consolidation.** At its own expense, the Landlord shall do a lot consolidation for Lots 10, 11, 12 and 13 to accommodate the Tenant's use of Premises.

2.  Use. The Tenant shall use the Premises and construct improvements for the purpose of operating computing facility, server repair and testing and technology development.

3.  Term.

    a.  **Term.** The term of this Lease is thirty (30) years beginning **March 1, 2017** and ending on **February 28, 2047**.

    b.  **Effective Date.** The terms of this Lease shall be effective and binding on both parties upon the signing of this Lease (the "Effective Date").

    c.  **Extended Term.** The Tenant may request the Term be extended for up to two (2) additional terms of ten (10) years each by notifying the Landlord twelve (12) months prior to the end of the term or extended term. The Rent for an extended Term shall be determined according to Section 4. Unless otherwise agreed to by the Parties, the terms of the Lease for the extended term shall be the same terms and conditions as set forth herein.

4.  Rent.

    a.  **Base Rent.** The Tenant shall pay the Landlord annual rent in monthly installments. The annual rate shall be twenty-five cents ($.25) per square foot with an increase of One and a Half percent (1.5%) per year. The periodic Rental Market Rate Adjustments, as calculated in Paragraph (b) below, shall constitute the base rent when such adjustments become

Exhibit "A"

effective. All rents and other payments to be made pursuant to this Lease shall be paid to the Landlord at its offices at 455 6th Street NE, Suite 100, East Wenatchee, WA 98802, or such other place as the Landlord may designate.

**Rent Schedule for Years 1-15**

| | Month | Annual Lease | Monthly Lease Payment | Monthly Leasehold Tax | Total Due Monthly |
|---|---|---|---|---|---|
| Year 1 | 1 | 86,331.50 | Deferred | 923.75 | 923.75 |
| | 2 | | Deferred | 923.75 | 923.75 |
| | 3 | | Deferred | 923.75 | 923.75 |
| | 4 | | Deferred | 923.75 | 923.75 |
| | 5 | | Deferred | 923.75 | 923.75 |
| | 6 | | Deferred | 923.75 | 923.75 |
| | 7 | | 14,388.58 | 923.75 | 15,312.33 |
| | 8 | | 14,388.58 | 923.75 | 15,312.33 |
| | 9 | | 14,388.58 | 923.75 | 15,312.33 |
| | 10 | | 14,388.58 | 923.75 | 15,312.33 |
| | 11 | | 14,388.58 | 923.75 | 15,312.33 |
| | 12 | | 14,388.58 | 923.75 | 15,312.33 |
| Year 2 | | 87,626.47 | 7,302.21 | 937.60 | 8,239.81 |
| Year 3 | | 88,940.87 | 7,411.74 | 951.67 | 8,363.41 |
| Year 4 | | 90,274.98 | 7,522.92 | 965.94 | 8,488.86 |
| Year 5 | | 91,629.11 | 7,635.76 | 980.43 | 8,616.19 |
| Year 6 | | 93,003.54 | 7,750.30 | 995.14 | 8,745.43 |
| Year 7 | | 94,398.60 | 7,866.55 | 1,010.06 | 8,876.61 |
| Year 8 | | 95,814.58 | 7,984.55 | 1,025.22 | 9,009.76 |
| Year 9 | | 97,251.79 | 8,104.32 | 1,040.59 | 9,144.91 |
| Year 10 | | 98,710.57 | 8,225.88 | 1,056.20 | 9,282.08 |
| Year 11 | | 100,191.23 | 8,349.27 | 1,072.05 | 9,421.32 |
| Year 12 | | 101,694.10 | 8,474.51 | 1,088.13 | 9,562.64 |
| Year 13 | | 103,219.51 | 8,601.63 | 1,104.45 | 9,706.07 |
| Year 14 | | 104,767.80 | 8,730.65 | 1,121.02 | 9,851.67 |
| Year 15 | | 106,339.32 | 8,861.61 | 1,137.83 | 9,999.44 |

b.  **Rent Commencement Date.** The rent shall be paid monthly on the First (1st) of each month. Upon execution of this Lease, Landlord shall defer rent payments for six (6) months.

c.  **Early Access.** Landlord shall allow Tenant to access Premises after the Effective Date and prior to the beginning of the term of this Lease to perform the site engineering and survey, planning activities, snow clearing, delivery of land moving equipment and material required for building, and other activities necessary for the Tenant to start using the Premises for the

18-03197-FPC7    Doc 500-2    Filed 02/28/20    Entered 02/28/20 15:09:41    Pg 9 of 53

intended purpose at the beginning of the term. In no way shall Tenant begin work for which a permit is required but not obtained during this Early Access period.

d. **Market Rate Adjustments.** Fifteen (15) years after the commencement of the lease, and at the beginning of each extended term, the base rent shall have a market rate adjustment to bring the rent into alignment with the current market conditions. The Base Rent shall adjust to the fair market rent for the Premises without improvements, however, the rent shall never decrease below the previous year's rent. Ninety (90) days prior to the start of Year Sixteen (16), the fair market rent shall be determined by an MAI real estate appraiser licensed in the State of Washington, mutually selected by and paid for by both Landlord and Tenant in equal shares. The appraiser shall only determine the fair market rental value of the land comprising the Premises, including the value of any related infrastructure improvements that have been placed upon the Premises by, and/or owned by the Landlord. The value of any improvements constructed and owned by the Tenant shall be excluded entirely from the determination of the fair market rental value of the Premises pursuant to this procedure. The appraiser selected by the Landlord and the Tenant shall notify each party hereto of his determination of such value and upon such notification, the Landlord and Tenant shall negotiate the rent, based on the current fair market value. If an agreement can't be reached either party may request arbitration which shall be appointed by the Superior Court in Douglas County. The cost of the arbitration shall be equally shared by both parties.

e. **Leasehold Tax.** In addition to the base rent, the Tenant shall pay to the Landlord a leasehold excise tax pursuant to Chapter 82.29A RCW, which is currently at 12.84% of taxable rent and other measurable consideration.

f. **Deposit.** On the Effective Date of the lease, Tenant shall provide a deposit of Fifteen Thousand Dollars ($15,000.00) which shall be applied to the deferred lease hold taxes and rent beginning in Month 7.

g. **Operating Expenses.** It is the intention of the Parties, and they agree, that this Lease shall be a triple-net Lease and the Landlord shall have no obligation to provide any services, perform any act or pay any expenses, charges, obligations or costs of any kind, whatsoever, with respect to the premises, except as provided for in this Lease, and the Tenant agrees to pay one-hundred percent (100%) of any and all operating expenses including, but not limited to:

  1. **Contribution-in-Aid-of-Construction (CIAC):** Tenant shall pay for PUD Infrastructure pursuant to the CIAC Agreements attached hereto as Exhibits B and C and incorporated by reference as if set forth in full, as an additional charge which shall be reasonable and ordinary. In the event this Lease is terminated under section 4(j) of this lease, the Tenant shall remain responsible for the CIACs.

  2. **Additional Charges:** Except as provided in the Lease, Tenant shall pay all additional operating expenses for only those matters that touch and concern the leased Premises including, without limitation, local, state and federal charges, utility taxes and assessments, maintenance costs, insurance expenses, engineering fees, and

18-03197-FPC7    Doc 500-2    Filed 02/28/20    Entered 02/28/20 15:09:41    Pg 10 of 53

other charges. The Landlord will promptly notify the Tenant of any such additional charges due, and the Tenant shall promptly pay the additional charges set out in the Landlord's notice within Thirty (30) days of the notice date

h.　**Interest—Late Charge.** Interest shall accrue on all delinquent Tenant rents and other accounts at the rate of Twelve percent (12%) per annum. The Tenant shall also pay a late charge equal to Four percent (4%) of the annual base rent for every month if the rent is delinquent for more than five (5) days after the due date.

i.　**Rent After Lessee Vacates Premises.** In the event the Tenant vacates Premises and the Premises have not been returned to the condition required by this Lease, and cleanup of the Tenant's operations is necessary by the Landlord prior to the Landlord's ability to re-let the Premises, then rent as specified herein shall continue to accrue until the Premises are restored to a rentable condition.

j.　**Contingency.** This Lease is contingent upon the execution of the Interconnection and Service Agreement between the Tenant and the PUD regarding the delivery of up to 30 megawatts of electrical power. In the event this contingency is exercised within six (6) months of the effective date of the Lease, this Lease shall terminate with rent payments due from the Effective Date up to and including the date of termination.

5.　<u>Rules and Regulations</u>.

a.　**Rules and Regulations.** The Tenant shall comply with the rules and regulations of federal, state and local governments that apply to the Premises and the Tenant's use of the Premises.

b.　**Restrictive Covenants.** The Tenant shall comply with the rules, regulations, ordinances and restrictive covenants of the Landlord as are presently in effect (attached as Exhibit D) and may in the future be adopted. The Tenant will ensure that it will keep the Premises in a clean, orderly and well maintained condition. Tenant specifically agrees to make all repairs, alterations and replacements necessary to maintain the Premises in good condition and repair, and shall surrender the Premises when required by this Lease in good condition, reasonable use and wear excepted.

6.　<u>Lease Surety</u>. The Tenant shall, upon execution of this Lease and prior to occupying the Premises, file with the Landlord a current good and sufficient corporate surety company bond, rental insurance policy, or other security (the "Lease Surety") to secure the rental payments in accordance with RCW 53.08.085 and in a form satisfactory to the Landlord, in the amount of $300,000, which is equal to approximately three (3) years payment of rents plus Leasehold Tax. The Port, in its sole discretion, may choose to discontinue the requirement for the Lease Surety in Year six (6), or any time thereafter, based on the performance of the tenant. The Port may also, in its sole discretion, require the Lease Surety to be re-instated if the performance of the tenant later becomes unsatisfactory. The Lease Surety may be adjusted by the Port from time to time as reasonably determined by the Port, and based on the Tenant's performance under the terms of this Lease. The Tenant shall have thirty (30) days after written notice to comply with the Port's directive. In no event shall the Landlord require the Lease Surety amount to exceed the amount of Three (3) years

18-03197-FPC7　　Doc 500-2　　Filed 02/28/20　　Entered 02/28/20 15:09:41　　Pg 11 of 53

rent under the Lease. In the event the Tenant fails to increase the Lease Surety amount within the thirty (30) day period, then the Tenant shall be in default of this Lease. No future amendment, extension or modification of this Lease shall be effective until the Lease Surety, insurer or guarantor has given its consent thereto, and the amount of the Lease Surety has been adjusted as required by the Landlord. The Tenant shall cause the Lease Surety to remain in continuous effect during the term of this Lease. Any lapse in the Lease Surety shall be considered a material default of this Lease.

7.   Tenant Improvements.

    a.   **Construction.** The Tenant may, from time to time, at its own expense, make improvements upon the Premises, whether structural or otherwise, and may install such machinery, equipment and facilities thereon as may be proper and necessary in connection with the use and operation of the Premises; provided, however, that all such construction and improvements shall be done in accordance with the provisions of the Restrictive Covenants which require, among other things, that Tenant's plans for such construction and improvements must have the written approval of the Landlord and that all applicable county, state and federal regulations are met and applicable permits are issued. With assistance from the Landlord, an FAA Form 7460-1, Notice of Proposed Construction or Alteration, for all new buildings, structures, improvements or alterations will be submitted to, and comments obtained from, the FAA. All improvements shall be constructed in a good and workmanlike manner. Tenant agrees to obtain and maintain, at its expense, public liability insurance and Workman's Compensation Insurance adequate to fully protect the Tenant and the Landlord against any and all liability for death or injury to persons or damage to the Premises by reason of the construction of the Building.

    b.   **Substation.** As part of its business operations, Tenant may, at its own discretion, purchase and install a Substation on the Premises for the purpose of electrical generation, transmission and/or distribution. Upon the expiration of the term (including additional extended terms of this Lease, if exercised), or default of this Lease after the commencement of Year 16, the title to Substation shall be transferred to the Landlord. Landlord shall have no rights or claims to the Substation before the expiration of the term (including additional extended terms of this Lease, if exercised), or default of this Lease prior to the commencement of Year 16.

    c.   **Permanent Structures.** Improvements constructed on the Premises by Tenant and personal property belonging to the Tenant, whether such property consists of facilities, furniture, machinery, equipment, appliances or trade fixtures, shall be and remain the property of the Tenant regardless of whether each property is affixed to the real property comprising the Premises; provided, however, the title to all Permanent Structures placed on the Premises shall revert to the Landlord. The term Permanent Structures shall include roofed and walled buildings built for permanent use and shall exclude pre-fabricated slab-on-grade buildings that could be removed from the Premises by the Tenant regardless of their constructional design and size).

    d.   **Risk of Loss.** The full risk of destruction or damage to any of the Tenant's property rests with the Tenant, and the Tenant shall maintain, at their own cost, an insurance policy

18-03197-FPC7   Doc 500-2   Filed 02/28/20   Entered 02/28/20 15:09:41   Pg 12 of 53

covering their personal property.

8.  Utilities. The Tenant shall pay all charges for all utilities including, but not limited to, water, stormwater, sewer, natural gas, electrical, telephone or other communications service used, rented or supplied upon or in connection with the Premises, and shall indemnify the Landlord against any liability or damage on such account.

9.  Landscaping. The Tenant shall landscape the Premises and maintain the landscaping on the Premises in accordance with the restrictive covenants and any applicable County regulations. The Landlord shall maintain all landscaping that it has developed on the common properties adjacent to the Premises.

10. Snow Removal. The Tenant shall be solely responsible for removing any accumulation of snow and ice from the sidewalk abutting the Premises, and from any parking areas serving the Premises and the improvements located thereon.

11. Signs—Advertisements. All signs or symbols posted or displayed on the Premises by the Tenant shall be subject to the prior approval of the Landlord, which shall not be unreasonably withheld, and shall comply with any applicable County regulations. If the Tenant utilizes the name of the Landlord in any of its advertisements or publicity of any kind, the Landlord shall have the unilateral right to approve or disapprove of such use.

12. Indemnification of Landlord. The Tenant shall indemnify, defend, and hold the Landlord and its officers, officials, employees and volunteers, and the premises, harmless, at the Tenant's expense, against all claims, expenses, and liabilities arising from:

    a.  The use or occupancy by the Tenant of the Premises;

    b.  Any default by the Tenant under this Lease;

    c.  Any act or omission of the Tenant or its agents, contractors, employers, employees, invitees, guests, licensees, trespassers, or franchisors.

13. Insurance. The Tenant shall procure and maintain for the duration of the Term, insurance against claims for injuries to persons or damage to property which may arise from or in connection with the Tenant's operation and use of the Premises. The Tenant's insurance shall include Commercial General Liability Insurance on an all risk basis for an amount no less than $2,000,000 each occurrence, $5,000,000 general aggregate and Property Insurance for the full value of the Tenant's property and improvements with no coinsurance provisions. The insurance shall be with insurances having an A.M. Best rating of not less than A:VII.

    a.  The Tenant's maintenance of insurance as required by this Lease shall not be construed to limit the liability of the Tenant to the coverage provided by such insurance, or otherwise limit the Landlord's recourse to any remedy available at law or in equity.

    b.  The Tenant shall furnish the Landlord with original certificates and a copy of the amendatory endorsements, including but not necessarily limited to the additional insured endorsement, evidencing the insurance requirements of the Tenant.

18-03197-FPC7    Doc 500-2    Filed 02/28/20    Entered 02/28/20 15:09:41    Pg 13 of 53

c.   The Tenant shall provide the Landlord with written notice of any policy cancellation, within two business days of their receipt of such notice.

d.   The Tenant's Commercial General Liability insurance policy or policies are to contain, or be endorsed to contain that they shall be primary insurance as respect the Landlord. Any insurance, self-insurance, or insurance pool coverage maintained by the Landlord shall be excess of the Tenant's insurance and shall not contribute with it.

e.   Tenant and the Landlord hereby release and discharge each other from all claims, losses and liabilities arising from or caused by any hazard covered by property insurance on or in connection with the Premises or Building. This release shall apply only to the extent that such claim, loss or liability is covered by insurance.

f.   Failure on the part of the Tenant to maintain the insurance shall constitute a material Event of Breach, and notwithstanding the Lessee's right to Cure an Event of Breach, the Landlord may, after giving five (5) business days' notice of the Event of Breach, may procure or renew such insurance and pay any and all premiums in connection, with all sums so expended to be repaid to the Landlord on demand.

14.   Damage by Fire or Other Casualty. In the event that any building or improvement on the Premises is damaged or destroyed during the term of this Lease, the Tenant shall have sixty (60) days from the event to elect, in writing, delivered to the Landlord, to promptly and fully repair and restore the building or improvement or return the Premises to the condition that is similar to that which existed prior to commencement of the Lease.

15.   Assignment. The Tenant shall not assign this Lease nor sublet, mortgage or encumber in any way the whole or any part of the Premises without the express written permission of the Landlord, which shall not be unreasonably withheld. This Lease shall not be assignable by operation of law. Any transfer of this Lease by Tenant by merger, consolidation or liquidation, or any change in the ownership of, or power to vote the majority of its outstanding voting stock, shall constitute an assignment for the purposes of this Article. Any assignment of this Lease shall not extinguish or diminish the liability of the Tenant. Consent by the Landlord to any sublease or assignment shall not prevent its withholding consent to any subsequent sublease or assignment.

16.   Performance of Tenant's Obligation by Landlord. If the Tenant shall be in default hereunder, the Landlord may cure such default on behalf of Tenant, in which event the Tenant shall reimburse the Landlord for all sums paid to effect such cure, together with interest at the rate of current bank prime plus 3% per annum, or 12% per annum, whichever is the greater, together with reasonable attorney fees and costs incurred by the Landlord. In order to collect such reimbursement, the Landlord shall have all remedies available under this Lease for a default in payment of rent. Before the Landlord shall perform or cure obligations of the Tenant under this paragraph, the Landlord shall first give notice of Landlord's intent to do so, and shall provide a reasonable time but not less than Sixty (60) days to the Tenant to cure such default.

17.   Right of Entry. The Landlord or its authorized representatives reserves the right of entry in the case of an emergency. Except as provided below in section 20, all other entry will be in accordance with the right of entry policy as established by Tenant and approved by the Landlord.

18-03197-FPC7    Doc 500-2    Filed 02/28/20    Entered 02/28/20 15:09:41    Pg 14 of 53

18.  Default and Reentry. If Tenant fails to pay any rent installment within 30 days after written notice from Landlord, or fails to perform any other covenant under this Lease within 30 days after written notice from Landlord stating the nature of the default, Landlord may cancel this Lease and reenter and take possession of the Premises using all necessary force to do so. Provided, however, that if Tenant defaults on a covenant other than its covenant to pay rent that cannot reasonably be cured within the 30-day period, Tenant shall not be deemed to be in default, if Tenant, within such period, commences and thereafter diligently initiates correction of said default. Notwithstanding Landlord's retaking possession upon default, Tenant's liability for the rent herein shall not be extinguished for the balance of the term of this Lease. Upon reentry, Landlord may relet or attempt to relet all or any part of the premises for a term longer or shorter than the term of this Lease, and upon such terms and conditions as the Landlord may deem advisable. Rents received from such letting shall be applied in the following order:

   a.  To the expenses of reletting, including necessary alteration and repair of the premises, reasonable attorney fees and real estate commissions paid;

   b.  To payment of all sums due or to become due to Landlord hereunder.

   c.  Tenant shall pay Landlord any deficiency in items (a) and (b) on a monthly basis as it arises. Any reletting by Landlord following Tenant's default shall not be construed as an acceptance of a surrender of the Premises. If rent received upon reletting exceeds the rent received under this Lease, Tenant shall have no claim to the excess. Tenant hereby waives claim to damages that may be caused by Landlord's reentering and taking possession of the Premises or removing and storing the property of Tenant as provided in this Lease, and will hold Landlord harmless from loss, costs or damages occasioned Tenant thereby. No such reentry shall be construed to be a forcible entry.

19.  Surrender Upon Termination of Lease. At the termination of the Term or the extended Term, or upon default, the Tenant shall surrender the Premises and ownership of all Permanent Structures, as defined in Paragraph 7(b) placed on the premises during the term of this Lease shall revert to the Landlord, in as good condition as it was in the beginning of the term, or, if installed after the beginning of the term, when the same were made, reasonable wear and tear excepted.

20.  Hazardous Waste and Materials.

   a.  Tenant shall comply with all present and future laws and regulations governing water pollution, air pollution, soil pollution, hazardous waste, hazardous and/or toxic material use, storage, transportation and disposal and hazardous or toxic chemical use, storage, transportation and disposal

   b.  Tenant shall at all times comply with all city, county, state and federal environmental laws and environmental rules and regulations. Any breach of the conditions of this section will be a material breach of this Lease. Tenant further agrees that in the event of any such breach, Tenant shall be solely responsible for all fines, costs, penalties, and expenses in connection with said breach, and shall hold Landlord harmless therefrom.

   c.  Tenant shall indemnify, defend, and hold Landlord harmless from any and all injury, damage or contamination of the Premises, property of third parties or injury to any person,

and will indemnify and hold Landlord harmless from any and all claims, judgments, penalties, costs, fines and lawsuits, which could arise during the term of this Lease or after the Lease term as a result of the presence or use of hazardous materials by Tenant, or caused or permitted by Tenant. Without limiting the foregoing, if the presence of any hazardous material on the Premises caused or permitted at any time by the Tenant results in any contamination of the Premises, Tenant shall take all actions at its sole expenses as are necessary to return the Premises to the condition that existed prior to the introduction of such hazardous material to the Premises; provided, Landlord's approval to undertake any clean up shall first be obtained.

    d.    The covenants, warranties and agreements to hold harmless the Landlord expressed in this section shall survive the termination of this Lease.

21.    <u>Condemnation</u>. If all of the Premises and the Tenant's interest therein shall be condemned for public use by any authority superior to the Landlord, such as the State of Washington or the United States of America, this Lease shall terminate without liability of either party to the other, with each party having the right to make a claim in such condemnation proceedings as their interests may appear.

    a.    If the entire Premises or such portion thereof, will preclude the Tenant from conducting its business is taken by eminent domain, this Lease shall expire on the date when the Premises shall be so taken, and the rent shall be apportioned as of that date.

    b.    If only a portion of the Premises is taken by eminent domain and the tenant continues its business, the rent payable at that time shall be decreased in proportion to the amount or portion of the Premises as shall be taken under the proceeding.

    c.    Landlord shall be entitled to all compensation resulting from the taking of the Premises. Tenant shall be entitled to make claim against the taking entity for compensation for loss incurred by Tenant for such taking.

22.    <u>Abandonment/Tenant's Property</u>. Tenant shall not vacate or abandon the Premises at any time during the primary or extended terms, unless otherwise provided in this Lease. In addition to any other remedy available to Landlord, if Tenant shall abandon, vacate or surrender the Premises, or be dispossessed by process of law, or otherwise, any personal property belonging to Tenant left upon the Premises, may, at Landlord's option, be placed in storage, and Tenant shall agree to pay reasonable storage costs associated with the storage.

23.    <u>Right of First Refusal.</u> Tenant shall have an ongoing Right of First Refusal to lease all or any part of Lot 8. Tenant shall have fourteen (14) days to exercise this right, on the same terms as the Port's Offer (as defined below), after notification by the Port. Such Right of First Refusal shall be exercisable by Tenant only if no event of default by Tenant under this Lease then exists and is continuing beyond the expiration of any notice and cure periods applicable thereto under the Lease, as of the date of submission of the Offer by the Port to Tenant.

If the Port receives a bona fide offer (the "Offer") from a prospective tenant to lease all or any part of Lot 8, the Port shall give Tenant written notice of such fact, setting forth in such notice all of the material terms and conditions of such Offer. After the Port notifies Tenant in writing of such an

Offer, Tenant shall have fourteen (14) days to exercise the Right of First Refusal by written notice to the Port. If Tenant exercises the Right of First Refusal, Tenant shall be required to lease the entire portion of Lot/Lots that are the subject of the Offer. If Tenant fails to notify the Port of its election within the aforesaid fourteen (14) day period, Tenant shall be deemed to have waived the Right of First Refusal with respect to the subject Offer. If the Port and the party who made the Offer are not able to reach an agreement on the final terms of their Lease, or the material terms and conditions of the Offer are amended from those sent to the Tenant, Tenant's Right of First Refusal shall be reinstated and the Port agrees to give Tenant another fourteen days' written notice of its right to exercise the Right of First Refusal on the new or amended terms.

24. Miscellaneous.

    a. **Notices.** Any notices by either party to the other shall be in writing and shall be deemed to be duly given only if delivered personally, or mailed by certified mail in a postage paid envelope addressed to the other party as identified below and/or at the last known address of the party to whom the notice is given.

If to Tenant: _____
                _____
                _____

With Copies to: _____
                _____
                _____

If to Landlord: <u>Lisa Parks, Executive Director</u>
                <u>Port of Douglas County</u>
                <u>455 6th St. N.E. Suite 100</u>
                <u>East Wenatchee, WA 98802</u>

With Copies to: <u>Quentin Batjer</u>
                <u>Davis, Arneil Law Firm, LLP</u>
                <u>617 Washington Street</u>
                <u>Wenatchee Washington 98801</u>

    b. **Attorney Fees.** This Lease shall be construed in accordance with the laws of the State of Washington. In the event of any action arising hereunder, the prevailing party shall be granted its attorney fees and court costs. Venue for such action shall lie in Douglas County, Washington.

    c. **Successors and Assigns.** All rights, remedies, liabilities herein given to or imposed upon either of the parties hereto, shall inure to the benefit of and be binding upon their respective heirs, executors, administrators, successors in interest, transferrees, and assigns.

    d. **Liens and Insolvency.** Tenant shall keep the Premises and the improvements free from any liens, excluding long term financing, arising out of any work performed, materials ordered or obligations incurred by Tenant. If Tenant becomes insolvent, voluntarily or involuntarily bankrupt, or if a receiver, assignee, or other liquidating officer is appointed for the business of Tenant, then Landlord may, at its option, cancel this Lease without notice to the Tenant.

18-03197-FPC7    Doc 500-2    Filed 02/28/20    Entered 02/28/20 15:09:41    Pg 17 of 53

e. **Waiver.** The waiver by any party of a breach of any provision of this Lease shall not be deemed a continuing waiver or a waiver of any subsequent breach of this Lease.

f. **Non Discrimination.** The Tenant agrees not to discriminate in its business dealings or hiring practices on the grounds of race, color, national origin or sex.

g. **Severability.** If any provision of this Lease shall be declared invalid or unenforceable, the remainder of the lease shall continue in full force and effect.

h. **Entire Agreement.** This Lease contains the entire agreement between the parties and cannot be modified or amended unless the same is in writing and signed by both parties and attached hereto.

i. **Counterparts.** This Agreement may be executed in any number of separate counterparts, all of which taken together shall be deemed one original instrument notwithstanding that all parties are not signatory to the same counterpart.

j. **Effective Date.** This Lease is effective on the date signed by the Parties.

PORT OF DOUGLAS COUNTY

By: _Lisa Parks_

Lisa Parks, Executive Director

Date: _3/9/17_

TENANT

By: _Dave Carlson, CEO_

(Authorized representative)

Date: _3/9/17_

18-03197-FPC7    Doc 500-2    Filed 02/28/20    Entered 02/28/20 15:09:41    Pg 18 of 53

THIS LEASE ADDENDUM (the "Addendum") is made and dated this 9th day of August, 2017, by and between the PORT OF DOUGLAS COUNTY, a municipal corporation of the State of Washington (the "Landlord") and GIGA WATT, INC., a Washington corporation (the "Tenant") (each, a "Party" and collectively, the "Parties").

A.  The Parties entered into a Lease (the "Lease") on March 1, 2017, a copy of which is attached and incorporated by this reference, for commercial property at the Pangborn Airport Business Park, as more particularly described in the Lease; and

B.  The Parties obtained a grant/loan package from the Community Economic Revitalization Board ("CERB") to fund the construction of certain improvements to the leased premises; and

C.  The Parties now seek to increase the lease rate due to the costs of the land improvements by the Landlord

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, LANDLORD and TENANT agree to further amend the Lease as follows

1.  Base Rent. The annual rate as set forth in Paragraph 4 of the Lease shall be revised to twenty-nine cents ($0.295) per square foot. The revised Rent Schedule for Years 1-15 shall be as follows:

| | Month | Annual Lease | Monthly Lease Payment | Monthly Leasehold Tax | Total Due Monthly | Annual Total Due |
|---|---|---|---|---|---|---|
| Year 1 | 1 | 101,871.17 | Deferred | 1,090.02 | 1,090.20 | |
| | 2 | | Deferred | 1,090.02 | 1,090.20 | |
| | 3 | | Deferred | 1,090.02 | 1090.20 | |
| | 4 | | Deferred | 1,090.02 | 1090.20 | |
| | 5 | | Deferred | 1,090.02 | 1090.20 | |
| | 6 | | Deferred | 1,090.02 | 1090.20 | |
| | 7 | | 16,978.53 | 2,180.04 | 19,158.57 | |
| | 8 | | 16,978.53 | 2,180.04 | 19,158.57 | |
| | 9 | | 16,978.53 | 2,180.04 | 19,158.57 | |
| | 10 | | 16,978.53 | 2,180.04 | 19,158.57 | |
| | 11 | | 16,978.53 | 2,180.04 | 19,158.57 | |

# Exhibit B

| | 12 | | 16,978.53 | 2,180.04 | 19,158.57 | |
|---|---|---|---|---|---|---|
| Year 2 | 103,399.24 | 8,616.60 | 1,106.37 | 9,722.97 | 116,675.70 |
| Year 3 | 104,950.23 | 8,745.85 | 1,122.97 | 9,868.82 | 118,425.84 |
| Year 4 | 106,524.48 | 8,877.04 | 1,139.81 | 10,016.85 | 120,202.22 |
| Year 5 | 108,122.35 | 9,010.20 | 1,156.91 | 10,167.10 | 122,005.26 |
| Year 6 | 109,744.18 | 9,145.35 | 1,174.26 | 10,319.61 | 123,835.33 |
| Year 7 | 111,390.34 | 9,282.53 | 1,191.88 | 10,474.41 | 125,692.86 |
| Year 8 | 113,061.20 | 9,421.77 | 1,209.75 | 10,631.52 | 127,578.26 |
| Year 9 | 114,757.12 | 9,563.09 | 1,227.90 | 10,790.99 | 129,491.93 |
| Year 10 | 116,478.47 | 9,706.54 | 1,246.32 | 10,952.86 | 131,434.31 |
| Year 11 | 118,225.65 | 9,852.14 | 1,265.01 | 11,117.15 | 133,405.83 |
| Year 12 | 119,999.04 | 9,999.92 | 1,283.99 | 11,283.91 | 135,406.91 |
| Year 13 | 121,799.02 | 10,149.92 | 1,303.25 | 11,453.17 | 137,438.02 |
| Year 14 | 123,626.01 | 10,302.17 | 1,322.80 | 11,624.97 | 139,499.59 |
| Year 15 | 125,480.40 | 10,456.70 | 1,342.64 | 11,799.34 | 141,592.08 |

2. <u>Lease Surety</u>. The Lease Surety as set forth in Paragraph 6 of the Lease shall be revised to reflect the increase in the base rent. The revised Lease Surety shall be increased by $50,000 to $350,000, which is equal to approximately three (3) years payment of rents plus Leasehold Tax. Payment shall be in accordance with RCW 53.08.085 and in a form satisfactory to the Landlord.

3. <u>Effect of Prior Agreements</u>. Except as provided in this Addendum, all other terms of the Lease shall be continued as agreed. In the event of any inconsistency between the provisions of the Lease and this Addendum, the provisions of this Addendum shall govern.

4. <u>Effective Date</u>. This Addendum is effective on the date signed by the Parties.

PORT OF DOUGLAS COUNTY

By: _____
Lisa Parks, Executive Director

Date: ____8/15/17____

TENANT

By: _____
(Authorized representative)

Date: ____8/15/17____

After Recording Return To:
Douglas R. Hookland
Scott ◆ Hookland LLP
P.O. Box 23414
Tigard, OR 97281-3414

## Document Title(s)
Claim of Lien

## Reference Number(s) of Related Document(s)

_____ _____ _____
                              Additional Reference #'s on Page _____

## Grantor(s) (owner)(Last, First and Middle Initial)
Chelan and Douglas County Port District
Giga Watt, Inc.

## Grantee(s) (claimant)(Last, First and Middle Initial)
Consolidated Electrical Distributors, Inc.

## Legal Description (abbreviated form, i.e. lot, block, plat or section, township, range, quarter/quarter)
Section 16 Township 22 N Range 21 E
                              Additional legal is on page 2 of the Claim of Lien

## Assessor's Property Tax Parcel/Account Numbers
76600001000; 76600001100; 76600001200; and 76600001300

Our File: CED388

# Exhibit C

## CLAIM OF LIEN

CONSOLIDATED ELECTRICAL
DISTRIBUTORS, INC.,

            Claimant,

vs.

NEPPEL ELECTRIC & CONTROLS LLC,

            Lien Debtor.

**CLAIM OF LIEN**

      Notice is hereby given that the person named below claims a lien pursuant to Chapter 60.04 RCW. In support of this lien the following information is submitted:

1.      NAME OF LIEN CLAIMANT:      Consolidated Electrical
                                        Distributors, Inc.
        TELEPHONE NUMBER:          253-852-1618
        ADDRESS:                      6703 S. 234th St., Suite #209
                                            Kent WA 98032

2.      DATE ON WHICH THE CLAIMANT BEGAN TO PERFORM LABOR, PROVIDED PROFESSIONAL SERVICES, SUPPLY MATERIAL OR EQUIPMENT OR THE DATE ON WHICH EMPLOYEE BENEFIT CONTRIBUTIONS BECAME DUE:

      On or about December 10, 2017

3.      NAME OF PERSON INDEBTED TO THE CLAIMANT:

      Neppel Electric & Controls LLC

4.      DESCRIPTION OF THE PROPERTY AGAINST WHICH A LIEN IS CLAIMED:

      The improvements that give rise to, and are subject to, this lien is the twenty-four pod substation for a data center at the Pangborn Airport Business Park constructed at the request of Giga Watt, Inc. The addresses of the land that are subject to this lien are 643 S. Billingsley Drive, 644 S. Billingsley Drive, 675 S. Billingsley Drive, and 676

1 -    CLAIM OF LIEN

S. Billingsley Drive, East Wenatchee, WA 98802, Douglas County, Washington. The land is more particularly described as follows:

<u>Consolidated Parcel</u>:

Lot 10, Pangborn Airport Business Park, Binding Site Plan 12-01, recorded under Auditor's File Number 3176418, records of Douglas County, Washington.

TOGETHER WITH LOT 12, Pangborn Airport Business Park, Binding Site Plan 12-01, recorded under Auditor's File Number 3176418, records of Douglas County, Washington.

and

<u>Consolidated Parcel</u>:

Lot 11, Pangborn Airport Business Park, Binding Site Plan 12-01, recorded under Auditor's File Number 3176418, records of Douglas County, Washington.

TOGETHER WITH LOT 13, Pangborn Airport Business Park, Binding Site Plan 12-01, recorded under Auditor's File Number 3176418, records of Douglas County, Washington.

5.    NAMES OF THE OWNERS OR REPUTED OWNERS:

The names of the owners or reputed owners of said land are (a) Chelan and Douglas County Port District, and (b) Giga Watt, Inc., both of which at all times herein mentioned had knowledge of the construction of said improvement. Any other owners or reputed owners are otherwise unknown.

6.    THE LAST DATE ON WHICH LABOR WAS PERFORMED, PROFESSIONAL SERVICES WERE FURNISHED; CONTRIBUTIONS TO AN EMPLOYEE BENEFIT PLAN WERE DUE; OR MATERIAL, OR EQUIPMENT WAS FURNISHED:

May 9, 2018

///

2 -    CLAIM OF LIEN

7. PRINCIPAL AMOUNT FOR WHICH LIEN IS CLAIMED:

As set forth on Exhibit "A" attached hereto and incorporated herein, the following is a true statement of claimant's demand after deducting all just credits and offsets, to-wit:

The reasonable value and contract amount of claimant's labor, services, materials and equipment is:

| | |
|---|---|
| Labor | $0.00 |
| Materials | $285,483.33 |
| Equipment | $0.00 |
| Services | $0.00 |
| Recording fees | $121.00 |
| Total | $285,604.33 |
| Less all just credits and offsets | $<140,510.50> |
| Balance due claimant | $145,093.83* |

*Together with interest at the rate of eighteen percent (18%) per annum on the principal amount of $144,972.83 from July 26, 2018 until paid, together with interest accrued prior to July 26, 2018 in the amount of $11,283.89. In addition to the above amounts, this lien claim also includes Washington State Sales Tax at the rate of 8.2 percent (.082) on the principal amount of $144,972.83, which sales tax amount is $11,887.77.

8. IF THE CLAIMANT IS THE ASSIGNEE OF THIS CLAIM SO STATE HERE:

Claimant is not an assignee of this lien claim.

9. MISCELLANEOUS

a) In construing this instrument, the masculine pronoun means and includes the feminine and the neuter and the singular includes the plural, as the circumstances may require.

/ / /

/ / /

/ / /

/ / /

3 - CLAIM OF LIEN

b) The paragraph captions are of convenience only and shall not be deemed to limit the terms or provisions of this claim of lien.

DATED this _2ⁿᵈ_ day of August, 2018.

CONSOLIDATED ELECTRICAL
DISTRIBUTORS, INC.

By: _____
Jason Jory
Its: Credit Manager
Telephone Number: 253-852-1618
Address: 6703 S. 234ᵗʰ St., Suite #209
Kent WA 98032

STATE OF WASHINGTON )
                        ) ss.
County of King       )

     Jason Jory says as follows: I am a credit manager for claimant above named; I have read or heard the foregoing claim, read and know the contents thereof, and believe the same to be true and correct and that the claim of lien is not frivolous and is made with reasonable cause, and is not clearly excessive under penalty of perjury.

_____
Jason Jory

STATE OF WASHINGTON )
                        ) ss.
County of King       )

     I certify that I know or have satisfactory evidence that Jason Jory is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute the instrument and acknowledged it as the credit manager of Consolidated Electrical Distributors, Inc. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument. Subscribed and sworn to before me on the date set forth below.

DATED: August 2, 2018     _____
                                  (Signature)
                                  Title: Notary Public For Washington
                                  My appointment expires: _8-7-19_

4 -     CLAIM OF LIEN

                        NICKI MILLER
                    NOTARY PUBLIC
               STATE OF WASHINGTON
               COMMISSION EXPIRES
                 AUGUST 7, 2019

SIMPLIFILE

## EXHIBIT "A"

Lien Claimant:     Consolidated Electrical Distributors, Inc.
Lien Debtor:       Neppel Electric & Controls LLC

A.     CONTRACT AMOUNT AND REASONABLE VALUE: $144,972.83

| INVOICE NO. | DELIVERY DATE | PRODUCT CODE / DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 4944-569383 | 01/17/18 | WIRE 115411201097 / TC TRAY CABLE 4C WITH GROUND | 28000 | 2,000 PER M | 56,000.00 |
| 4944-570447 | 01/18/18 | BLINE B133ZN / 4H T CONN PLATE | 4 | 842.25 PER C | 33.69 |
| " | " | FLEX RWA-3/4 / FLEX ALUM REDUCED WALL | 200 | 52.08 PER C | 104.16 |
| " | " | LB3 CANTEX 5133670 | 14 | 2,855.57 PER C | 399.78 |
| " | " | WIRE THHN12STRBRN | 1500 | 132.13 PER M | 198.20 |
| " | " | WIRE THHN12STRYEL | 500 | 123.22 PER M | 61.61 |
| " | " | BLINE 44C / NEMA1 WIREWAY ADPT | 27 | 3.41 PER E | 92.07 |
| " | " | BLINE 44ENK / 4X4 END NEMA1 SC WIREWAY | 37 | 3.41 PER E | 126.17 |
| " | " | RAB SHARK450W10 / LED FIXTURE | 2 | 175.12 PER E | 350.24 |
| " | " | CULLY 55416J / 3/8-16X1 ZP HXHD BOLT | 100 | 16.91 PER C | 16.91 |

EXHIBIT "A"
Page 1 of 18

| INVOICE NO. | DELIVERY DATE | PRODUCT CODE / DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| " | " | CULLY 40535J / 3/8 ZP MED SPLIT LCKWSH | 100 | 4.71 PER C | 4.71 |
| " | " | CULLY 40741J / 3/8X1 ZP FENDER WSHR | 100 | 13.38 PER C | 13.38 |
| 4944-570052 | 01/19/18 | EATON XTCE015810A / 3P 15A FVNR CNCTR | 216 | 54.25 PER E | 11,718.00 |
| 4944-570472 | 01/18/18 | PVC ELL903X36 / SWEEL ELL | 18 | 2,035.01 PER C | 366.30 |
| " | " | WIRE THNN12STRPNK | 500 | 149.11 PER M | 74.56 |
| " | " | WIRE THHN12STRPRP | 500 | 149.11 PER M | 74.56 |
| " | " | IDEAL 303496 / 12AWG SOL GRD WR | 200 | 27.08 PER C | 54.16 |
| 4944-570570 | 01/19/18 | BLINE FT4X12X10ELG | 100 | 74.64 PER E | 7,464.00 |
| " | " | BLINE WASHER SPL KIT | 500 | 1.31 PER E | 655.00 |
| 4944-570144 | 01/24/18 | SWIRE M3K | 1 | 2,008.00 PER E | 2,008.00 |
| " | " | SWIRE P3-T01 | 1 | 441.00 PER E | 441.00 |
| 4944-571852 | 02/22/18 | BUSS BCM6032SQ / 2P FUSE BLOCK LP-CC/KTK-R/FNQ-R | 25 | 13.09 PER E | 327.25 |
| 4944-571859 | 02/26/18 | WIRE THHN750GRY | 2000 | 11,900 PER M | 23,800.00 |
| " | " | WIRE THHN350BRN | 2000 | 4,575.00 PER M | 9,150.00 |

EXHIBIT "A"
Page 2 of 18

| INVOICE NO. | DELIVERY DATE | PRODUCT CODE / DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| " | " | WIRE THHN350ORG | 2000 | 4,575.00 PER M | 9,150.00 |
| " | " | WIRE THHN350GRY | 2000 | 4,575.00 PER M | 9,150.00 |
| 4944-571893 | 02/27/18 | LTH ECGLEDM6 / EXIT, EMERGENCY (LED) COMBO, GREEN | 6 | 59.57 PER E | 357.42 |
| " | " | 3M CT158K50C / 15IN NY BLK CBL TIE | 600 | 0.13 PER E | 78.00 |
| " | " | 3M CT11BK50C / 11IN NY BLK CBL TIE | 400 | 0.17 PER E | 68.00 |
| " | " | 3M 3+SUPER-2X36YD / ELECTRICAL TAPE | 10 | 27.22 PER E | 272.20 |
| " | " | WIRE THHN12STRBRN | 2000 | 125.00 PER M | 250.00 |
| " | " | WIRE THHN12STRORG | 2000 | 125.00 PER M | 250.00 |
| " | " | WIRE THHN12STRGRN | 2000 | 125.00 PER M | 250.00 |
| " | " | WIRE THHN12STRWHT | 2000 | 125.00 PER M | 250.00 |
| " | " | WIRE THHN12STRBLK | 1000 | 125.00 PER M | 125.00 |
| 4944-571784 | 02/27/18 | COND EMT-3/4 / 3/4" EMT CONDUIT | 5000 | 49.00 PER C | 2,450.00 |
| 4944-571623 | 02/27/18 | NSI 3350T2 / 350MCM DU RTD TFMR-LUG | 32 | 24.92 PER E | 797.44 |

| INVOICE NO. | DELIVERY DATE | PRODUCT CODE / DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 4944-571933 | 02/27/18 | CHE 201 / 3/4" 1H EMT STRAP | 600 | 15.66 PER C | 93.96 |
| " | " | CHE TP7944 / 3/4" ALUM THREADED PLUG | 50 | 41.14 PER C | 20.57 |
| " | " | FIT CPL-3/4 / GALV CPLG | 30 | 0.91 PER E | 27.30 |
| " | " | CHE 51 / 3/4" MALL BUSHED NIPPLE | 30 | 95.93 PER C | 28.78 |
| " | " | CHE TP512 / YSQ 1/2D COVER FOR 1-SW | 20 | 95.76 PER C | 19.15 |
| " | " | HUBWD 5362W / 20A 125V DPLX RCPT | 20 | 3.07 PER E | 61.40 |
| " | " | HUBWD 1221W / 20A 120/277V-SP-TGL-SW | 10 | 3.95 PER E | 39.50 |
| 4944-571942 | 02/27/18 | NSI ASC6T / #6 ALUM COMP SPLC | 20 | 240.74 PER C | 48.15 |
| " | " | PVC CEMENTCLR QT / QUICK SET CLEAR CEMENT | 12 | 1,213.39 PER C | 145.61 |
| 4944-572006 | 02/28/18 | LITH CDSL96MVOLTDM40 K80 / 8 FT LED STRIPLIGHT CR | 16 | 113.99 PER E | 1,823.84 |
| " | " | INT WP5100C / S-G RCPTCVR | 12 | 8.50 PER E | 102.00 |
| " | " | HUBWD 5362W / 20A 125V DPLX RCPT | 40 | 3.07 PER E | 122.80 |

EXHIBIT "A"
Page 4 of 18

| INVOICE NO. | DELIVERY DATE | PRODUCT CODE / DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| " | " | PVC LB3 / CANTEX 5133670 | 20 | 2,855.57 PER C | 571.11 |
| 4944-571786 | 03/01/18 | CPL XTOR28-PC1 / 20W LED W/M LT FX | 11 | 198.33 PER E | 2,181.63 |
| " | " | CULLY 150126 / 10X3/4 RWH SQ DR SMS | 2 | 43.03 PER E | 86.06 |
| " | " | CULLY 150166 / 10X1 RWWTS SQ DR 500PK | 1 | 30.67 PER E | 30.67 |
| " | " | 3M T/Y+JUG / SPRING CONN 500JUG | 1000 | 0.12 PER E | 120.00 |
| 4944-572079 | 02/28/18 | WIRE 956603799 / 350KCMLCU220EPRP | 6000 | 7,650.00 PER M | 45,900.00 |
| 4944-572103 | 03/05/18 | HUBWD 02201014 / STD SUPPORT GRIP | 1 | 24.86 PER E | 24.86 |
| " | " | HUBWD 02201015 / STD SUPPORT GRIP | 1 | 28.39 PER E | 28.39 |
| " | " | TB TY529MX / LOCKING CABLE TIE | 200 | 95.09 PER C | 190.18 |
| " | " | SWIRE WW538 | 1 | 0.00 PER E | 0.00 |
| " | " | LEN 20351GOLD50D / UTL KNF BLD 50/PK | 100 | 0.35 PER E | 35.00 |
| " | " | IDEAL 36305 / 1-3/8 CRBD HL CUTTER | 1 | 39.39 PER E | 39.39 |
| 4944-572144 | 02/28/18 | WIRE THHN1/0GRN / 2X1000 | 2000 | 1,645.24 PER M | 3,290.48 |

EXHIBIT "A"
Page 5 of 18

| INVOICE NO. | DELIVERY DATE | PRODUCT CODE / DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| " | " | WIRE THHN12STRYEL / 500FT SPOOLS | 4000 | 125.00 PER M | 500.00 |
| " | " | WIRE THHN12STRORG | 4000 | 125.00 PER M | 500.00 |
| " | " | FRT OAK HARBOR FRT | 1 | 49.28 PER E | 79.28 |
| 4944-572117 | 03/02/18 | WIRE THHN750BRN | 2000 | 11,900 PER M | 23,800.00 |
| " | " | WIRE THHN750ORG | 1000 | 11,900 PER M | 11,900.00 |
| " | " | WIRE THHN750YEL | 2000 | 11,900 PER M | 23,800.00 |
| " | " | WIRE THHN350YEL | 2000 | 4,575.00 | 9,150.00 |
| 4944-572147 | 03/06/18 | EATON XBUT4 / SCR CON GND BLOK | 50 | 1.40 PER E | 70.00 |
| " | " | EATON XBAES35C / TERM BLOK END STOP | 25 | 1.57 PER E | 39.25 |
| 4944-572198 | 03/07/18 | CHE 411 / 3/4" 1H GRC STRAP | 1000 | 24.41 PER C | 244.10 |
| " | " | CHE 451 / 3/4" STL S/SCR EMT CONN | 200 | 17.35 PER C | 34.70 |
| " | " | CHE 772DC / 3/4" D/C SCR-IN FLEX CONN | 86 | 43.68 PER C | 37.56 |
| " | " | CHE 709DC / 3/4" FLEX/BX SQUEEZE CONN | 250 | 66.68 PER C | 166.70 |

EXHIBIT "A"
Page 6 of 18

| INVOICE NO. | DELIVERY DATE | PRODUCT CODE / DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| " | " | FLEX RWA-3/4 / FLEX ALUM REDUCED WALL | 800 | 55.08 PER C | 440.64 |
| " | " | 3M T/Y+JUG / SPRING CONN 500JUG | 500 | 0.90 PER E | 450.00 |
| " | " | CHE TP516 / 4SQ 1/2D CVR F/1-DPXRCP | 50 | 64.85 PER C | 32.43 |
| " | " | CHE TP512 / YSQ 1/2D COVER FOR 1-SW | 50 | 95.76 PER C | 47.88 |
| " | " | WIRE THHN12STRBRN | 2000 | 125.00 PER M | 250.00 |
| " | " | WIRE THHN12STRORG | 2000 | 125.00 PER M | 250.00 |
| " | " | WIRE THHN12STRYEL | 2000 | 125.00 PER M | 250.00 |
| " | " | WIRE THHN12STRGRN | 2000 | 125.00 PER M | 250.00 |
| " | " | WIRE THHN6STRGRN | 1000 | 463.65 PER M | 463.65 |
| " | " | WIRE THHN12STRBLK | 1000 | 125.00 PER M | 125.00 |
| 4944-572204 | 03/06/18 | ILSCO TA350 / 6-350MCM ALCU LUG | 5 | 6.28 PER E | 31.40 |
| 4944-572038 | 03/07/18 | PVC LB3 / CANTEX 5133670 | 20 | 2,855.57 PER C | 571.11 |
| 4944-572253 | 03/08/18 | HUBWD HBL2313 / LKG CONN NMAL5-20R | 32 | 15.58 PER E | 498.56 |
| " | " | CHE 2632 / 1" 2-SCR NMC/SEC CONN | 50 | 174.05 PER C | 87.03 |

EXHIBIT "A"
Page 7 of 18

| INVOICE NO. | DELIVERY DATE | PRODUCT CODE / DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| " | " | CHE 2631 / 3/4" D/C 2-SCREW NMC CONN | 100 | 105.21 PER C | 105.21 |
| " | " | 3M 35WHT-3/4 / 3/4X86" WHITE CODING TAPE | 10 | 4.40 PER E | 44.00 |
| " | " | NSI IPL44 / INSD M-CBL CONN BLOCK | 0 | 15.92 PER E | 0.00 |
| 4944-572248 | 03/07/18 | FLEX RWA.75 / FLEX ADUM REDUCED WALL | 54 | 73.13 PER C | 39.49 |
| 4944-572433 | 03/13/18 | WIRE THHN750ORG | 1000 | 11,900 PER M | 11,900 |
| 4944-572378 | 03/12/18 | CHE 260 / 1X3/4 RED BUSH | 22 | 161.06 PER C | 35.43 |
| " | " | CHE 2632 1" 2-SCR NMC/SEC CONN | 450 | 107.22 PER C | 482.49 |
| 4944-572479 | 03/13/18 | PVC DBLCPL3 / 3" DOUBLE BELL CPL SCH40 | 50 | 5.66 PER E | 283.00 |
| " | " | CULLY 96060 / 120Z HANDI FOAM | 9 | 9.31 PER E | 83.79 |
| " | " | BPT 902S / 3/4 1H COND STRAP | 50 | 12.86 PER C | 6.43 |
| " | " | BPT 903S / 1-IN 1 H COND STRAP | 50 | 15.60 PER C | 7.80 |
| 4944-572521 | 03/15/18 | HUBWD 1223W / 20A 120/277V 3WY TGL SW | 20 | 3.43 PER E | 68.60 |
| " | " | CHE 301DC / 3/4" D/C OFFSET NIPPLE | 20 | 203.16 PER C | 40.63 |

EXHIBIT "A"
Page 8 of 18

SIMPLIFILE

| INVOICE NO. | DELIVERY DATE | PRODUCT CODE / DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| " | " | CHE 51 / 3/4" MALL BUSHED NIPPLE | 16 | 95.93 PER C | 15.35 |
| " | " | CHE 451 / 3/4" STL S/SCR EMT CONN | 200 | 17.35 PER C | 34.70 |
| " | " | PVC CAP 4 / CANTEX 5140040 | 8 | 450.00 PER C | 36.00 |
| 4944-572199 | 03/15/18 | CHE TP432 / 4SQ 2-1/8D BOX 3/4KO | 400 | 99.85 PER C | 399.40 |
| " | " | CHE 772DC / 3/4" D/C SCR-IN FLEX CONN | 210 | 43.68 PER C | 91.73 |
| " | " | 3M CT11BK50C | 2000 | 11.25 PER C | 225.00 |
| 4944-572688 | 03/15/18 | WIRE THHN350STRGRY / 2X1000 | 2000 | 4,889.72 PER M | 9,779.44 |
| 4944-5723256 | 04/03/18 | PVC BE3 / CANTEX 5144010 | 100 | 269.20 PER C | 269.20 |
| " | " | TB C1053 GALV COND STRAP | 50 | 361.43 PER C | 180.72 |
| " | " | LITH CDSL96MVOLTDM40 K80 / 8 FT LED STRIPLIGHT CR | 20 | 113.99 PER E | 2,279.80 |
| " | " | PVC LB3 / CANTEX 5133670 | 40 | 2,855.57 PER C | 1,142.23 |
| " | " | CHE 2631 / 3/4" D/C 2-SCREW NMC CONN | 50 | 105.21 PER C | 52.61 |
| " | " | CULLY 59032J / 1/4X2 ZAMAC NAILIN | 200 | 39.08 PER C | 78.16 |

EXHIBIT "A"
Page 9 of 18

| INVOICE NO. | DELIVERY DATE | PRODUCT CODE / DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| " | " | BLINE B202ZN / 1/2 9/16HL WSHR | 100 | 463.40 PER C | 463.40 |
| " | " | FLEX RWA-1/2 / FLEX ALUM REDUCED WALL | 100 | 48.30 PER C | 48.30 |
| 4944-573419 | 04/02/18 | NSI GL656 / #6 CU CMPRSN LUG | 900 | 0.81 PER E | 729.00 |
| " | " | FRT UPS FREIGHT | 1 | 8.54 PER E | 8.54 |
| 4944-572412 | 04/10/18 | CHE 260 1X3/4 RED BUSH | 78 | 161.06 PER C | 125.63 |
| 4944-572287 | 04/10/18 | NSI IPL44 / INSD M-CBL CONN BLOCK | 60 | 15.92 PER E | 955.20 |
| 4944-573274 | 04/10/18 | CHE 2631 / 3/4" D/C 2-SCREW NMC CONN | 50 | 105.21 PER C | 52.61 |
| " | " | CHE 51 / 3/4" MALL BUSHED NIPPLE | 9 | 95.93 PER C | 8.63 |
| 4944-573352 | 04/10/18 | PVC BE3 / CANTEX 5144010 | 100 | 391.19 PER C | 391.19 |
| " | " | PVC TA3 / CANTEX 5140110 | 120 | 247.38 PER C | 296.86 |
| " | " | PVC FA-3/4 / CANTEX 514044 | 125 | 34.60 PER C | 43.25 |
| " | " | PVC FA1 / CANTEX 5140046 | 70 | 47.18 PER C | 33.03 |
| " | " | CHE 201 / 3/4" 1H EMT STRAP | 200 | 15.66 PER C | 31.31 |
| 4944-574566 | 05/09/18 | 3M 35ORG-3/4 / 3/4X86" ORANGE CODING TAPE | 2 | 4.40 PER E | 8.80 |

EXHIBIT "A"
Page 10 of 18

| INVOICE NO. | DELIVERY DATE | PRODUCT CODE / DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| " | " | 3M 35GRY-3/4 / 3/4X66"GREY PHASE TAPE-GREY | 2 | 4.40 PER E | 8.80 |
| " | " | 3M 35YEL-E/R / 3/4X66" YELLOW CODING TAPE | 2 | 4.40 PER E | 8.80 |
| 4944-574663 | 05/08/18 | TB TY523MX / LOCKING CABLE TIE | 100 | 20.55 PER C | 20.55 |
| 4944-574652 | 05/10/18 | NSI 800T2 / 800-300MCM STACKED LUG | 50 | 29.00 PER E | 1,450.00 |
| " | " | FRT UPS FREIGHT | 1 | 89.90 PER E | 89.90 |
| 4944-574759 | 05/14/18 | ORIGINAL INVOICE: 573256  LITH CDSL96MVOLTDM40K80 / 8 FT LED STRIPLIGHT CR | -14 | 113.99 PER E | -1,595.86 |

| INVOICE NO. | DELIVERY DATE | PRODUCT CODE / DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 4944-576761 | 07/09/18 | ORIGINAL INVOICES:<br>564300, 564326, 564864, 564905, 565523, 566243, 567214, 567404, 567478, 567961, 568125, 568152, 568279, 568443, 568528, 568819, 568972, 569086, 569748, 570133, 570297, 570479, 570480, 570488, 570795, 570956, 571420, 571505, 571607, 571608, 571661, 571779, 571881, 571893, 571933, 572006, 572038, 572198, 572199, 572253, 572287, 572378, 572412, 572521, 572716, 573256, 573274, 573352, 573419, 574971 | | | |
| | | PVC ELL901 / CANTEX 5233825 | -60 | 173.88 PER C | -104.33 |
| " | " | PVC BE2 / CANTEX 5144008 | -40 | 308.24 PER C | -123.30 |
| " | " | CHE 411 / 3/4" 1H GRC STRAP | -350 | 24.41 PER C | -85.44 |
| " | " | CHE 200 / 1/2" 1H EMT STRAP | -100 | 12.02 PER C | -12.02 |
| " | " | CHE 200 / 1/2" 1H EMT STRAP | -100 | 12.02 PER C | -12.02 |
| " | " | CHE 201 / 3/4" 1H EMT STRAP | -300 | 15.66 PER C | -46.98 |
| " | " | PVC CPL-3/4 / CANTEX 6141624 | -122 | 12.84 PER C | -15.66 |

EXHIBIT "A"
Page 12 of 18

SIMPLIFILE

| INVOICE NO. | DELIVERY DATE | PRODUCT CODE / DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| " | " | PVC BE1 / CANTEX 5144005 | -50 | 220.10 PER C | -110.05 |
| " | " | PVC BE1 / CANTEX 5144005 | -44 | 220.10 PER C | -96.84 |
| " | " | PVC BE1 / CANTEX 5144005 | -31 | 220.10 PER C | -68.23 |
| " | " | CHE TP432 / 4SQ 2-1/8D BOX 3/4KO | -356 | 99.85 PER C | -355.47 |
| " | " | CHE TP451 / 4SQ 2-1/8D BOX | -25 | 180.92 PER C | -45.23 |
| " | " | PVC BE3 / CANTEX 5144010 | -100 | 391.19 PER C | -391.19 |
| " | " | PVC BE3 / CANTEX 5144010 | -47 | 269.20 PER C | -126.52 |
| " | " | PVC LB3 / CANTEX 5133670 | -40 | 2,855.57 PER C | -1,142.23 |
| " | " | PVC LB3 / CANTEX 5133670 | -5 | 2,855.57 PER C | -142.78 |
| " | " | PVC TA3 / CANTEX 5140110 | -120 | 247.38 PER C | -296.86 |
| " | " | CHE 18X / 3" STEEL LOCKNUT | -100 | 107.51 PER C | -107.51 |
| " | " | BLINE 44C / NEMA1 WIREWAY ADPT | -199 | 3.25 PER E | -646.75 |
| " | " | BLINE 44ENK / 4X4 END NEMA 1SC WIREWAY | -358 | 3.25 PER E | -1,163.50 |
| " | " | CHE 2631 / 3/4" D/C 2-SCREW NMC CONN | -50 | 105.21 PER C | -52.61 |

EXHIBIT "A"
Page 13 of 18

| INVOICE NO. | DELIVERY DATE | PRODUCT CODE / DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| " | " | CHE 2631 / 3/4" D/C 2-SCREW NMC CONN | -50 | 105.21 PER C | -52.61 |
| " | " | CHE 2631 / 3/4" D/C 2-SCREW NMC CONN | -100 | 105.21 PER C | -105.21 |
| " | " | CHE 2631 / 3/4" D/C 2-SCREW NMC CONN | -12 | 105.21 PER C | -12.63 |
| " | " | CHE 2632 / 1" 2-SCR NMC/SEC CONN | -203 | 107.22 PER C | -217.66 |
| " | " | CHE 938 / 3" 105C PLSTC INS BUSH | -40 | 101.62 PER C | -40.65 |
| " | " | WIRE CAT5E / 24/4PR CATEGORY 5 ENHANCED | -2000 | 62.10 PER M | -124.20 |
| " | " | RAB SHARK450WD010 / LED FIXTURE | -2 | 175.12 PER E | -350.24 |
| " | " | NSI IT4 / 4-14AWG INSD-TAP CONN | -5 | 9.41 PER E | -47.05 |
| " | " | EATON DH362NRK / 60A 600V 4SN SW NEMA3R | -2 | 350.92 PER E | -701.84 |
| " | " | CHE 2633 / 1-1/4" 2-SCR SEC CONN | -120 | 185.00 PER C | -222.00 |
| " | " | NSI ISR1/0 / 1/0-14AWG SPLICER/RED | -12 | 14.13 PER E | -169.56 |
| " | " | BLINE 44LCOMBO / NMA1 WIREWAY 90D ELL | -13 | 27.49 PER E | -357.37 |

EXHIBIT "A"
Page 14 of 18

| INVOICE NO. | DELIVERY DATE | PRODUCT CODE / DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| " | " | LITH ECGLEDM6 / EXIT, EMERGENCY (LED) COMBO, GREEN | -4 | 59.57 PER E | -238.28 |
| " | " | HUBWD 5362W / 20A 125V DPLX RCPT | -20 | 3.07 PER E | -61.40 |
| " | " | HUBWD 1223W / 20A 120/277V 3WY TGL SW | -10 | 3.43 PER E | -34.30 |
| " | " | HUBWD HBL5269C / CONN-NEMA5-154 | -5 | 10.79 PER E | -53.95 |
| " | " | CHE 451 / 3/4" STL S/SCR EMT CONN | -75 | 17.35 PER C | -13.01 |
| " | " | CHE 450S / 1/2" STL S/SCR EMTCONN | -32 | 24.87 PER C | -7.96 |
| " | " | CHE 260 / 1X3/4 RED BUSH | -75 | 161.06 PER C | -120.80 |
| " | " | CHE TP7078 / 1G WP BOX 2/3 3/4 HUBS | -7 | 881.38 PER C | -61.70 |
| " | " | INT WP5100C / S-G RCPTCVR | -6 | 8.50 PER E | -51.00 |
| " | " | TB IHD42 / AG RT BOX 2/4 3/4 HUBS | -4 | 1,091.27 PER C | -43.65 |
| " | " | CHE TP7130 / 2G WP BOX 2/5 3/4 HUB | -1 | 1,211.89 PER C | -12.12 |
| " | " | CHE TP7050 / 1G WP BOX 2/5 3/4 HUBS | -1 | 584.62 PER C | -5.85 |
| " | " | CHE 709DC / 3/4" FLEX/BX SQUEEZE CONN | -250 | 66.68 PER C | -166.70 |

| INVOICE NO. | DELIVERY DATE | PRODUCT CODE / DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| " | " | CHE 709DC / 3/4" FLEX/BX SQUEEZE CON | -54 | 66.68 PER C | -36.01 |
| " | " | CHE 709DC / 3/4" FLEX/BX SQUEEZE CON | -54 | 66.68 PER C | -36.01 |
| " | " | CHE 709DC / 3/4" FLEX/BX SQUEEZE CON | -53 | 66.68 PER C | -35.34 |
| " | " | CHE 709DC / 3/4" FLEX/BX SQUEEZE CON | -3 | 93.50 PER C | -2.81 |
| " | " | CHE 772DC / 3/4" D/C SCR-IN FLEX CONN | -210 | 43.68 PER C | -91.73 |
| " | " | CHE 772DC / 3/4" D/C SCR-IN FLEX CONN | -145 | 43.68 PER C | -63.34 |
| " | " | CHE 736DC / 1/2" D/C 90D DQZ FLEX CONN | -25 | 119.25 PER C | -29.81 |
| " | " | TFP7944 / 3/4 ALUM THREADED PLUG | -50 | 41.14 PER C | -20.57 |
| " | " | IDEAL 30454 / SIZE 454 BLU WIRECONN | -50 | 334.48 PER M | -16.72 |
| " | " | IDEAL 30454 / SIZE 454 BLU WIRECONN | -50 | 334.48 PER M | -16.72 |
| " | " | IDEAL 30452 / SIZE 452 RED WIRECONN | -100 | 177.28 PER M | -17.73 |
| " | " | 3M RV1414Q / 16-14AWG VIN INSD TERM | -70 | 7.03 PER E | -492.10 |
| " | " | NSI GL656 / #6 CU CMPRSN LUG | -700 | 0.81 PER E | -567.00 |

EXHIBIT "A"
Page 16 of 18

| INVOICE NO. | DELIVERY DATE | PRODUCT CODE / DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| " | " | NSI GL614 / #6 CU CMPRSN LUG | -2000 | 87.13 PER C | -1,742.60 |
| " | " | NSI GL614 / #6 CU CMPRSN LUG | -125 | 85.24 PER C | -106.55 |
| " | " | NSI IPL44 / INSD M-CBL CONN BLOCK | -60 | 15.92 PER E | -955.20 |
| " | " | NSI GL814 / #8 CU CMPRSN LUG | -1099 | 80.17 PER C | -881.07 |
| " | " | NSI 4T / 4-14AWG DU RATED LUG | -16 | 54.07 PER C | -8.65 |
| " | " | NSI IT 1/0 / 1/0-14AWG INSD-TAP CON | -10 | 11.51 PER E | -115.10 |
| " | " | NSI IT 1/0 / 1/0-14AWG INSD-TAP CON | -6 | 11.51 PER E | -69.06 |
| " | " | CHE 455 / 2" STL S/SCR EMT CONN | -5 | 277.11 PER C | -13.86 |
| " | " | CHE 455 / 2" STL S/SCR EMT CONN | -30 | 277.11 PER C | -83.13 |
| " | " | CULLY 33402 / 1X1/2 REDUCING WASHER | -500 | 14.25 PER C | -71.25 |
| " | " | CULLY 33416 / 1-1/2X1 REDUCING WASHER | -200 | 30.08 PER C | -60.16 |
| " | " | FLEX RWA-3/4 / FLEX ALUM REDUCED WALL | -400 | 55.08 PER C | -220.32 |
| " | " | IDEAL 89206 / 6CKT TERMINAL STRIP | -1 | 11.45 PER E | -11.45 |
| " | " | HUBWD GFRST20W / 20A COM SLF-TST RCPT | -3 | 15.15 PER E | -45.45 |

EXHIBIT "A"
Page 17 of 18

| INVOICE NO. | DELIVERY DATE | PRODUCT CODE / DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| " | " | BLINE 242412RTSCNK / 24X24X12 3R SC ENCL | -6 | 175.00 PER E | -1,050.00 |
| " | " | MISC RESTOCKING CHARGE / 25% RESTOCK FEE | 1 | 3,819.25 PER E | 3,819.25 |

|  | TOTAL: |  | $285,483.33 |
|---|---|---|---|
| B. | Credits and Offsets: |  | <$140,510.50> |
| C. | TOTAL AMOUNT OWED CLAIMANT (A - B = C) |  | $144,972.83* |

*Together with interest at the rate of eighteen percent (18%) per annum on the principal amount of $144,972.83 from July 26, 2018, until paid, together with interest accrued prior to July 26, 2018 in the amount of $11,283.89. In addition to all other amounts, this lien claim also includes Washington State Sales Tax at the rate of 8.2 percent (.082) on the principal amount of $144,972.83, which sales tax amount is $11,887.77.

Copies of documentation supporting the delineations on Exhibit "A" will be provided free of charge to interested parties upon request to: Douglas R. Hookland, Scott◆Hookland LLP, P.O. Box 23414, Tigard, Oregon 97281.

EXHIBIT "A"
Page 18 of 18

THIS SPACE PROVIDED FOR RECORDERS USE
Please print or type all information

RETURN TO:

RIES LAW FIRM, P.S.
P.O. Box 2119
Moses Lake, WA 98837

## ORIGINAL

Document Title: **CLAIM OF LIEN**

Auditor's File No. of document to be released or assigned: N/A

Assessor's property tax parcel or account number: 76600001000 and 76600001100

Claimant: 1. NEPPEL ELECTRICAL & CONTROLS, LLC, a Washington limited liability company

Respondent: 1. GIGA WATT, INC., a Washington corporation, Chelan and Douglas County Port Districts, Port of Douglas County, Port of Chelan County

Legal Description (lot, block, plat or section, township, range)

**Parcel 1:**

Lots 10 and 12, Pangborn Airport Business Park, Binding Site Plan 12-01 recorded under Auditor's File No. 3176418, records of Douglas County, Washington.

**Parcel 2:**

Lots 11 and 13, Pangborn Airport Business Park, Binding Site Plan 12-01 recorded under Auditor's File No. 3176418, records of Douglas County, Washington.

# Exhibit D

4.    Description of the Property Against Which A Lien is Claimed:

**Parcel 1**:

Lots 10 and 12, Pangborn Airport Business Park, Binding Site Plan 12-01 recorded under Auditor's File No. 3176418, records of Douglas County, Washington.

APN:  76600001000

**Parcel 2**:

Lots 11 and 13, Pangborn Airport Business Park, Binding Site Plan 12-01 recorded under Auditor's File No. 3176418, records of Douglas County, Washington.

APN:  76600001100

5.    Name of Owner or Reputed Owner:

Chelan and Douglas County Port Districts, Port of Douglas County, Port of Chelan County, and Giga Watt, Inc.

6.    The last date on which the labor was performed; professional services were furnished; contributions to an employee benefit plan were due; or material or equipment was furnished:

June 14, 2018.

7.    Claimant claims a lien upon the real property in the sum of $479,959.63, together with interest thereon at the rate of twelve percent (12%) per annum and all attorney's fees and costs.

8.    If the Claimant is the assignee of this claim so state here:

The Claimant is not the assignee of this claim.

2

## CERTIFICATION

STATE OF WASHINGTON    )
                             ) ss.
County of Grant               )

MARY MONCADA, being sworn, says:

I am a Member of NEPPEL ELECTRICAL & CONTROLS, LLC, a Washington limited liability company, claimant above-named. I have read or heard the foregoing claim, read and know the contents thereof, and believe the same to be true and correct and that the claim of lien is not frivolous and is made with reasonable cause, and is not clearly excessive under penalty of perjury.

_Mary Moncada_
Mary Moncada

SUBSCRIBED AND SWORN TO before me this 3rd day of August, 2018, by Mary Moncada.



_Corinne D. Gebelin_
(Signature) Corinne D. Gebelin
Notary Public in and for the State of Washington
Residing at Moses Lake, Washington
My commission expires: 11-01-19

4



### 30-Day Notice of Breach of Lease

This letter serves as notice of breach of the Land Lease for Portion of Pangborn Airport Business Park East Wenatchee, Washington between the Port of Douglas County and Giga Watt, Inc., executed March 9, 2017 ("Lease").

The following list explains each separate breach of the Lease:

1. Giga Watt breached the condition under ¶ 24(d) of the Lease to keep the Premises and improvements free of liens, by allowing a Claim of Lien to be filed by Consolidated Electrical Distributors, Inc. attaching the improvements on the premises which are the subject of the Lease. Said Claim of Lien was filed in the real property records of Douglas County, Washington on August 2, 2018 under AFN # 3214548.

2. Giga Watt breached the condition under ¶ 24(d) of the Lease to keep the Premises and improvements free of liens, by allowing Claim of Lien to be filed by Neppel Electrical & Controls, LLC attaching the improvements on the premises which are the subject of the Lease. Said Claim of Lien was filed in the real property records of Douglas County, Washington on August 6, 2018 under AFN # 3214623.

Pursuant to ¶ 18 of the Lease, Giga Watt must cure the aforementioned breaches within thirty (30) days of the date of this notice, or Giga Watt will be in default of the Lease. If Giga Watt defaults on the lease, the Port has the right to cancel the Lease and use all legal means available to it to reenter and take possession of the leased premises. The Port also has to right to seek all other contractual, statutory, and common law remedies due to Giga Watt's breaches and potential defaults.

If Giga Watt intends to cure, it should contact the Port as soon as possible regarding the proposed cure. Early and complete communication between Giga Watt and the Port may help avoid damages to both parties.

Please contact Lisa Parks at the Port of Douglas with any questions.

*Lisa Parks*

Lisa Parks, Executive Director

# Exhibit E

## 10-Day Notice to Cure or Vacate

(Pursuant to RCW 59.12.030(4) and RCW 59.12.040)

TO:  Giga Watt, Inc., a Washington corporation
643, 644, 675 & 676 South Billingsley Drive
East Wenatchee, Washington 98802

You and each of you are hereby notified of the following failures to keep or perform

conditions and/or covenants of the Land Lease for Portion of Pangborn Airport Business

Park East Wenatchee, Washington between the Port of Douglas County and Giga Watt,

Inc., executed March 9, 2017 ("Lease"):

1. Giga Watt, Inc. breached the condition under ¶ 24(d) of the Lease to keep the Premises and improvements free of liens, by allowing a Claim of Lien to be filed by Consolidated Electrical Distributors, Inc. attaching the improvements on the premises which are the subject of the Lease. Said Claim of Lien was filed in the real property records of Douglas County, Washington on August 2, 2018 under AFN # 3214548.

2. Giga Watt, Inc. breached the condition under ¶ 24(d) of the Lease to keep the Premises and improvements free of liens, by allowing Claim of Lien to be filed by Neppel Electrical & Controls, LLC attaching the improvements on the premises which are the subject of the Lease. Said Claim of Lien was filed in the real property records of Douglas County, Washington on August 6, 2018 under AFN # 3214623.

Pursuant to RCW 59.12.030(4), Giga Watt, Inc. must cure or perform the conditions

and covenants breached herein within ten (10) days of receipt of this notice, or in the

alternative, vacate and surrender the premises. Failure to cure or perform, or in the

alternative vacate and surrender the premises, will result in Giga Watt, Inc. being in

unlawful detainer of the premises. If Giga Watt, Inc. unlawfully detains the premises, the

Landlord, Port of Douglas County, will pursue all legal remedies and damages.

# Exhibit F

Dated this 18th day of October, 2018.

DAVIS, ARNEIL LAW FIRM, LLP

By _____
    David R. Law, WSBA No. 48057
    Attorneys for Port of Douglas County
    617 Washington Street
    Wenatchee, WA 98801
    (509) 662-3551 (Phone)
    (509) 662-9074 (Fax)

```
TO:     GIGA WATT, INC.     )
        a Washington        )
        corporation         )        DECLARATION OF POSTING
        643, 644, 675 &     )
        676 Billingsley     )        10-DAY NOTICE TO CURE OR
        Drive, East Wen-    )        VACATE.
        atchee, WA.         )
                            )
BY:     DAVID R. LAW        )
        DAVIS ARNEIL,       )
        LAW FIRM            )
                            )
                            )
```

STATE OF WASHINGTON  )
                     ) S.S.
COUNTY OF  DOUGLAS   )

The undersigned, being first duly sworn, on oath deposes and says: That he is now and at all times herein mentioned was a citizen of the United States and resident of the State of Washington, over the age of eighteen years, not a party to or interested in the above-entitled action and competent to be a witness therein.

That on  10-19-18  at  3:02 pm  at GIGA WATT, INC.
643,644,675,676 S. Billingsley, E. Wen., County, Washington, affiant duly posted the above-described documents in the above-entitled matter upon  PROPERTY VACANT,
POSTED ON LOCKED FRONT GATE (SEE PHOTO)
by then and there posting a true and correct copy thereof.

I HEREBY DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF WASHINGTON THAT THE FOREGOING IS TRUE AND CORRECT.

DATED this  20  day of  Oct.  2018

                                        DONALD JONES
                                        Chelan co. PS-003
                                        Registration Number

POSTING FEES  60.00  TRAVEL 10.00  MAIL 5.00  OTHER 5.00  TOTAL $80.00

# Exhibit G



STATE OF WASHINGTON )
                          ) ss.
County of Chelan )

        Amy M. Brittingham, being first duly sworn on oath, deposes and says: That she is now and was at all times hereinafter mentioned a citizen of the United States and of the State of Washington, competent to be a witness herein and not a party to this action; that on October 19, 2018, she sent a full, true and correct copy of the 10 day notice to cure or vacate, to:

Gig Watt, Inc., a Washington Corporation
676 South Billingsley Drive
East Wenatchee, WA 98802

Gigal Watt, Inc., a Washington Corporation
643 South Billingsley Drive
East Wenatchee, WA 98802

Gigal Watt, Inc., a Washington Corporation
675 South Billingsley Drive
East Wenatchee, WA 98802

Gigal Watt, Inc., a Washington Corporation
644 South Billingsley Drive
East Wenatchee, WA 98802

by depositing such copies in an envelope with postage thereon prepaid, and depositing the same in the United States Post Office in Wenatchee, Washington, on said date.

                                   _____
                                     Amy M. Brittingham

        SIGNED AND SWORN TO BEFORE ME on October 31, 2018, by AMY M. BRITTINGHAM.

                                     _____
                                     MEGAN L. HEIMBIGNER, Notary Public
                                     Residing at: East Wenatchee, WA
                                     My Appointment Expires: 6-24-2021

Megan Heimbigner
COMM EXP
NOTARY
PUBLIC
06/24/2021
THE STATE OF WASHINGTON

**Exhibit H**

IN THE _____ COURT, FOR _____ COUNTY. STATE OF WASHINGTON

TO: GIGA WATT, INC., a Washington )
corporation, 643,644,675 & )
676 Billingsley Drive, ) CAUSE NO.
East Wenatchee, WA. 98802 )
) DECLARATION OF SERVICE
)
) 10-DAY NOTICE TO CURE
BY: DAVID R. LAW ) OR VACATE.
DAVIS, ARNEIL LAW FIRM )
)
)

STATE OF WASHINGTON )
) S.S.
COUNTY OF __DOUGLAS__ )

The undersigned, being first duly sworn, on oath deposes and says: That he is now and at all times herein mentioned was a citizen of the United States and resident of the State of Washington, over the age of eighteen years, not an officer of a plaintiff corporation, not a party to nor interested in the above-entitled action and competent to be a witness therein.

That on __10-19-18__ at __3:31 pm__ at __2600 Chester Kimm, Wenatchee__ __Chelan__ County, Washington, affiant duly served the above-described documents in the above-mentioned matter upon __GIGA WATT, INC.__ by then and there personally delivering a true and correct copy thereof into the hands of and leaving the same with __REG. AGENT, JEFFERS DANIELSON, BY BRIAN HUBER, ATT. AT LAW__.

That at the time and place set forth above affiant duly served the above-described documents in the above-entitled matter upon _____ by then and there, at the residence and usual abode of said person, personally delivering a true and correct copy thereof into the hands of and leaving the same with _____ being a person of suitable age and discretion and then resident therein.

Affiant further states that he is informed and believes, and therefore alleges, that neither of said defendants is in the military service of the United States.

I HEREBY DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF WASHINGTON THAT THE FOREGOING IS TRUE AND CORRECT.

DATED this __20__ day of __Oct.__, 201 at Wenatchee, Washington

DONALD JONES
Chelan co. PS-003
Registration Number

SERVICE FEES __60.00__ TRAVEL __10.00__ MAIL _____ RETURN __5.00__ TOTAL $__75.00__

# Exhibit I