EXHIBIT B
(Sale Agreement + Schedule 1)

# PANGBORN AND OTHER EQUIPMENT SALE AGREEMENT

This Pangborn and Other Equipment Sale (this "**Agreement**"), is entered into between Mark D. Waldron, in his official capacity as the duly-appointed Chapter 11 Trustee (the "**Seller**") and Gib Compute LLC, a Delaware limited liability company ("**Buyer**," and together with Seller, the "**Parties**," and each, a "**Party**.").

WHEREAS, Seller is the duly-appointed Chapter 11 Trustee acting on behalf of and representing the estate (the "**Estate**") in the bankruptcy case (the "**Bankruptcy Case**") of Giga Watt, Inc. (the "**Debtor**") pending in the United States Bankruptcy Court for the Eastern District of Washington (the "**Bankruptcy Court**") and assigned Case No. 18-03197-FPC 11.

WHEREAS, the Debtor leased from the Port of Douglas County (the "**Pangborn Lease**"), a municipal corporation of the State of Washington (the "**Port**") 7.93 +/- acres of unimproved real property, known as Lots 10, 11, 12 and 13, in the Pangborn Airport Business Park located at 643, 644, 675 & 676 South Billingsley Drive, East Wenatchee, Washington 98802 (the "**Pangborn Site**").

WHEREAS, in June 2019, Seller rejected the Pangborn Lease. However, equipment and materials belonging to the Debtor remain on the Pangborn Site (the "**Pangborn Equipment**").

WHEREAS, Seller has Power Distributor Units ("**PDU**s") and Power Supply Units ("**PSU**s") (collectively, "**Other Equipment**") that the Trustee removed from the Pangborn Site to the Debtor's other facilities located in East Wenatchee, Washington and Moses Lake, Washington (the "**Other Facilities**").

WHEREAS, Buyer is in the business of procuring low cost, renewable energy and real estate assets.

WHEREAS, Buyer desires to purchase from Seller, and Seller desires to sell to Buyer the Pangborn Equipment and the Other Equipment, as more particularly described in Schedule 1, attached hereto, subject to the approval of the Bankruptcy Court and the terms of this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Sale of Pangborn Equipment and Other Equipment. Seller shall sell to Buyer and Buyer shall purchase from Seller the Pangborn Equipment and the Other Equipment. The Buyer is not obligated to buy all the Pangborn Equipment and/or Other Equipment. However, the Purchase Price (defined below) will not change if the Buyer takes less Pangborn Equipment than is located on the Pangborn Site

1

and/or less Other Equipment than is located at the Other Facilities. Seller agrees not to dispose of, transfer, or otherwise remove any Pangborn Equipment from the Pangborn Site or Other Equipment from the Other Facilities, without Buyer's prior written consent.  Buyer may, but is not obligated to, demolish or remove any "Pods" from the Pangborn Site as defined in the Pangborn Lease.

2. Buyer's Acknowledgement & Buyer's Security.

    2.1. Buyer acknowledges that:

      2.1.1. Buyer is not relying on Schedule 1 with respect to this Agreement, including, but not limited to, the decision to enter into this Agreement,
      2.1.2. Buyer has conducted its own inventory of the Pangborn Equipment and Other Equipment and is relying on its own inventory of the Pangborn Equipment and Other Equipment in deciding to enter into this Agreement.

    2.2. Upon signing of this Agreement and until all the Pangborn Equipment is removed from the Pangborn Site, Buyer may take all steps it believes necessary to secure the Pangborn Site.

3. Trustee's Representation. The Trustee represents and warrants that (i) Schedule 1 is the result of the Trustee's good faith effort to inventory the Pangborn Equipment and Other Equipment and that Schedule 1 reflects the Trustee's inventory and (ii) on and after March 24, 2020, Trustee has not removed anything off of the Pangborn Site or Other Facilities. Notwithstanding the foregoing, the Trustee does not represent or warrant the accuracy or completeness of Schedule 1.

4. Purchase Price. Buyer shall purchase the Pangborn Equipment and Other Equipment from Seller for the sum of $175,000 (the "**Purchase Price**"). The Purchase Price is exclusive of all sales, use and excise taxes, transfer taxes, and any other similar taxes, duties and charges of any kind imposed by any governmental authority on any amounts payable by Buyer. Buyer shall be responsible for all such charges, costs, and taxes; provided, that, Buyer shall not be responsible for any taxes imposed on, or with respect to, Seller's income, revenues, gross receipts, personnel or real or personal property or other assets.

5. Bankruptcy Court Approval. The obligations of the Parties to this Agreement are subject to the approval of the Bankruptcy Court by entry of an Order approving this Agreement (the "**Approval Order**") with the exception that Buyer shall pay the Earnest Money Deposit upon execution of this Agreement, subject to the terms of section 4 hereof. Seller shall file a motion with the Bankruptcy Court seeking approval of the Agreement in time for the Approval Order to be entered by April 13, 2020.

6. Earnest Money Deposit. Upon execution of this Agreement, Buyer shall deposit with the Trustee the sum of $17,500.00 which equals ten percent (10%) of the Purchase Price (the "**Earnest Money Deposit**"). Upon entry of the Approval Order, the

2

18-03197-FPC7    Doc 519-2    Filed 03/30/20    Entered 03/30/20 16:10:32    Pg 3 of 11

Earnest Money Deposit shall become nonrefundable and the Earnest Money Deposit shall be applied to the Purchase Price. If the Bankruptcy Court declines to approve this Agreement, then the Seller shall refund the Earnest Money Deposit to the Buyer within five business days after the Bankruptcy Court declines to approve the Agreement.

7. <u>Purchase Price</u>. Buyer shall pay the Purchase Price (net of the Earnest Money Deposit) within seven (7) calendar days after entry of the Approval Order. Buyer shall make all payments hereunder by wire transfer and in US dollars.

8. <u>Title and Risk of Loss</u>. Subject to entry of the Approval Order and payment of the Purchase Price, Seller shall deliver to Buyer all right, title and interest of the Estate in the Pangborn Equipment and Other Equipment free and clear of any and all liens, encumbrances, claims, and/or interests in the Pangborn Equipment and Other Equipment. Title and risk of loss shall pass to Buyer upon payment of the Purchase Price.

9. <u>Delivery</u>. Seller's obligation to deliver the Pangborn Equipment shall be fulfilled by making the Pangborn Equipment available at the Pangborn Site. Seller's obligation to deliver the Other Equipment shall be fulfilled by making the Other Equipment available at the Other Facilities. Buyer agrees to be responsible for, to assume, and to bear all costs and risks involved in picking up, removing and transporting the Pangborn Equipment from the Pangborn Site and the Other Equipment from the Other Facilities to the Buyer's desired destination. Subject to Section 24, the Pangborn Equipment must be picked up by the Buyer on or before May 2, 2020. The Other Equipment may be picked up within a reasonable time.

10. <u>Over-Bidding; Break-Up Fee</u>. In the event that a third party seeks to submit a bid for the Pangborn Equipment and the Other Equipment before entry of the Approval Order, then the Seller shall ask the Court to approve bidding procedures that (a) permits a first overbid of $10,000, or more, (b) permits subsequent overbids of $5,000 or more, (c) permits Buyer to participate in overbidding and (d) approves a three percent (3%) break-up fee to the Buyer in the event that an overbid is approved by the Bankruptcy Court. For clarity, the Break-Up Fee shall be three percent (3%) of the final purchase price unless the Buyer wins the bidding, in which case no break-up fee will be paid to Buyer.

11. Warranties.

    11.1. <u>Warranty of Title</u>. The Seller warrants free, clear and full title to the Pangborn Equipment and the Other Equipment, as specifically described in and approved by the Bankruptcy Court in the Approval Order.

    11.2. <u>As Is</u>. The sale of the Pangborn Equipment and the Other Equipment is "as is."

    11.3. **EXCEPT AS SET FORTH IN SECTION 11.1 HEREOF, SELLER MAKES NO WARRANTY WHATSOEVER WITH RESPECT TO THE PANGBORN EQUIPMENT, INCLUDING ANY (a) WARRANTY OF MERCHANTABILITY; or**

3

**(b) WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE; WHETHER EXPRESS OR IMPLIED BY LAW, COURSE OF DEALING, COURSE OF PERFORMANCE, USAGE OF TRADE OR OTHERWISE.**

12. <u>Compliance with Law</u>. Buyer is in compliance with and shall comply with all applicable laws, regulations, and ordinances. Buyer has and shall maintain in effect all the licenses, permissions, authorizations, consents and permits that it needs to carry out its obligations under this Agreement.

13. <u>Indemnification</u>. Buyer (as "**Indemnifying Party**") shall indemnify, defend and hold harmless Seller (the "**Indemnified Party**") against any and all damage to the real property of the Pangborn Site that is caused by the Buyer's gross negligence in removing the Pangborn Equipment from the Pangborn Site. Pursuant to this provision, the Indemnifying Party agrees to pay the attorneys' fees and costs incurred by the Indemnified Party as a result of damage to the real property of the Pangborn Site that is caused by the Indemnified Party's gross negligence.

14. <u>Entire Agreement</u>. This Agreement, including and together with any related exhibits and the Approval Order, constitutes the sole and entire agreement of the Parties with respect to the subject matter contained herein and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, regarding such subject matter.

15. <u>Notices</u>. All notices, requests, consents, claims, demands, waivers and other communications under this Agreement must be in writing and addressed to the other Party at its address set forth below. Except as otherwise provided in this Agreement, a notice is effective only on receipt by the receiving Party.

Notice to Seller:

Law Offices of Mark D. Waldron, PLLC
6711 Regents Blvd., Suite B
Tacoma, WA 98466
Attention: Mark D. Waldron
Email: mark@mwaldronlaw.com

With a copy to Seller's counsel:

Potomac Law Group
1905 7th Ave. W
Seattle, WA 98119
Attn: Pamela M. Egan
Email: pegan@potomaclaw.com

4

Notice to Buyer:

> GIB Compute LLC
> 8044 Montgomery Rd Suite 700
> Cincinnati, OH 45236
> Attention: James Kelly
>
> With a copy to Buyer's counsel:
> Robert Weinberger Law PC
> 1340 E. 6th Street, Suite #603
> Los Angeles, CA 90021
> Email: bobby@rkweinbergerlaw.com

16. <u>Amendments</u>. No amendment to or modification of this Agreement is effective unless it is in writing and signed by each Party.

17. <u>Waiver</u>. No waiver by any party of any of the provisions of this Agreement shall be effective unless explicitly set forth in writing and signed by the party so waiving. Except as otherwise set forth in this Agreement, no failure to exercise, or delay in exercising, any rights, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

18. <u>Assignment</u>. Buyer shall not assign, transfer, delegate or subcontract any of its rights or obligations under this Agreement without the prior written consent of Seller. Any purported assignment, transfer, delegation or subcontract in violation of this Section shall be null and void. No assignment, transfer, delegation or subcontract shall relieve Buyer of any of its obligations hereunder.

19. <u>Successors and Assigns</u>. This Agreement is binding on and inures to the benefit of the Parties to this Agreement and their respective permitted successors and permitted assigns.

20. <u>No Third-Party Beneficiaries</u>. This Agreement benefits solely the Parties to this Agreement and their respective permitted successors and assigns and nothing in this Agreement, express or implied, confers on any other Person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

21. <u>Choice of Law</u>. This Agreement, including all exhibits attached to this Agreement and thereto are governed by, and construed in accordance with, the laws of the State of Washington and section 101, et seq. of title 11 of the United States Code, as applicable, without regard to the conflict of laws provisions thereof.

22. <u>Choice of Forum</u>. Each Party irrevocably and unconditionally agrees that it will not commence any action, litigation or proceeding of any kind whatsoever against the other Party in any way arising from or relating to this Agreement, including all

5

18-03197-FPC7    Doc 519-2    Filed 03/30/20    Entered 03/30/20 16:10:32    Pg 6 of 11

exhibits attached to this Agreement, and all contemplated transactions, in any forum other than the U.S. Bankruptcy Court for the Eastern District of Washington, and any appellate court from thereof. Each Party irrevocably and unconditionally submits to the exclusive jurisdiction of the Bankruptcy Court and agrees to bring any such action, litigation or proceeding only in the U.S. Bankruptcy Court for the Eastern District of Washington. Each Party agrees that a final judgment in any such action, litigation or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

23. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which is deemed an original, but all of which together are deemed to be one and the same agreement. Notwithstanding anything to the contrary herein, a signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission is deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

24. <u>Force Majeure</u>. Any delay or failure of either Party to perform its obligations under this Agreement will be excused to the extent that the delay or failure was caused directly by an event beyond such Party's control, without such Party's fault or negligence and that by its nature could not have been foreseen by such Party or, if it could have been foreseen, was unavoidable (which events may include natural disasters, embargoes, explosions, riots, wars, epidemic, pandemic, plague, acts of terrorism, strikes, labor stoppages or slowdowns or other industrial disturbances, and shortage of adequate power or transportation facilities). In addition to, and not a limitation of, the previous sentence, if the Approval Order is not entered on the docket of the Bankruptcy Court by April 13, 2020, and such delay is substantially caused by epidemic, pandemic, plague, or some combination thereof, then Buyer shall have the right to terminate this contract by written notice to the Seller. Upon receipt of such written notice, then the Seller shall refund the Earnest Money Deposit to the Buyer within five business days.

25. <u>Relationship of the Parties</u>. The relationship between the Parties is that of independent contractors. Nothing contained in this Agreement shall be construed as creating any agency, partnership, franchise, business opportunity, joint venture or other form of joint enterprise, employment or fiduciary relationship between the parties, and neither party shall have authority to contract for or bind the other party in any manner whatsoever. No relationship of exclusivity shall be construed from this Agreement.

26. <u>Attorneys' Fees or Costs</u>. The Parties each acknowledge and agree that each Party is responsible for his, her or its own attorneys' fees in connection with this Agreement except that in the event of a breach of this Agreement, the prevailing party shall be entitled to attorneys' fees and costs.

27. <u>Authority</u>. Each Party hereby represents and warrants to the other Party that it has the respective power and authority, and is duly authorized to execute, deliver and perform their obligations under this Agreement.

28. <u>Headings</u>. The headings in the Agreement are inserted for reference only and shall not be construed to expand, limit or otherwise modify the terms and conditions of this Settlement Agreement.

29. <u>Interpretation</u>. This Agreement has been reviewed and revised by legal counsel for all Parties, and no presumption or rule that ambiguity shall be construed against the Party drafting the document shall apply to the interpretation or enforcement of this Agreement.

30. <u>Acknowledgment of Full Understanding</u>. THE PARTIES ACKNOWLEDGE AND AGREE THAT EACH OF THEM HAS FULLY READ, UNDERSTANDS, AND VOLUNTARILY ENTERS INTO THIS AGREEMENT. THE PARTIES ACKNOWLEDGE AND AGREE THAT EACH OF THEM HAD AN OPPORTUNITY TO ASK QUESTIONS AND CONSULT WITH AN ATTORNEY OF THEIR CHOICE BEFORE SIGNING THIS AGREEMENT.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

MARK D. WALDRON, *in his official capacity as Chapter 11 Trustee in the bankruptcy case of Giga Watt, Inc., pending in the US Bankruptcy Court, ED WA, Case No. 18-013197*

By _____
Name: Mark D. Waldron
Title: Chapter 11 Trustee

GIB Compute LLC

By _____
Name: James Kelly
Title: Manager

7

## Schedule 1 - Sale Inventory
### Pangborn Equipment & Other Equipment

### Other Equipment

| Item(s) Description | Quantity | Notes | Site |
|---|---|---|---|
| Raritan PX2-5956XV PDUs [3] [5] | 64 | 60A, 48A (Derated), 380-415V/ 220-240V | ML [2] |
| Raritan PX2-5956XV PDUs [3] [4] | 270 | 60A, 48A (Derated), 380-415V/ 220-240V | TNT [1] |
| Alpha Miner PSUs [6] | approx. 425 | Set aside and stacked. | TNT [1] |

Notes:
[1] TNT = Debtor's TNT Facility, 474 Highline Drive, E. Wenatchee, WA
[2] ML = Debtor's Moses Lake Facility, 7890 Randolph Rd., Moses Lake, WA 98837
[3] PDU = Power Distribution Unit
[4] The PDUs do not have whip tails; they have never been energized; not boxed
[5] New in box
[6] PSU = Power Supply Unit

### Pangborn Equipment

| Item(s) Description | Quantity | Notes | Site |
|---|---|---|---|
| 2000kVA Transformer | 10 | 2,000kVA, 13.2kV : 415Y/240V | Pangborn |
| 75kVA Transformer | All | 75kVA, 415V : 480Y/277V | Pangborn |
| 15kVA Transformer | All | 15kVA, 480V : 208Y/120V | Pangborn |
| 4,000A LV Switchgear | All | 4,000A, 415Y/240V, 65KAIC w/ (6) 500A CBs | Pangborn |
| 2,000A LV Switchgear | All | 2,000A, 208Y/120V, 65KAIC w/ (5) 400A CBs | Pangborn |
| 600A Service Entrance Disconnect | All | 600A, 208Y/120V Switch | Pangborn |
| 600A MLO Panelboard (42-space) | All | 600A MLO, 480Y/277V, 65kAIC, (14) 3P60A | Pangborn |
| 600A MLO Panelboard (48-space) | All | 600A MLO, 480Y/277V, 65kAIC,(14) 3P60A+(1)3P100A | Pangborn |
| 225A MCB Panelboard | All | 225A MCB, 480Y/277V, 65KAIC, (2) 3P60A+(3)3P40A | Pangborn |
| 40A MCB Panelboard (125A bus) | All | 125A Bus/40A MCB, 208Y/120V, 10kAIC, (12) 1P20A | Pangborn |
| Panelboard Exterior Only | All | Includes contactors, overloads. CB, terminals, etc. | Pangborn |
| Fans (Uninstalled) - Airfoil Impeller Corp. | 48 | In crates, located onsite. | Pangborn |
| Medium Voltage Conductors | 2 | Located onsite. Outside. | Pangborn |
| Plastic Utility Cart | 1 | Located onsite. | Pangborn |
| Saw Horses | 4 | Located onsite. | Pangborn |
| Folding Table | 2 | Located onsite. | Pangborn |
| Electrical Meter | 1 | Located onsite. | Pangborn |

| Pangborn Equipment (cont'd) | | | |
|---|---|---|---|
| Item(s) Description | Quantity | Notes | Site |
| 8 ft. Step Ladder | 7 | Located onsite. | Pangborn |
| Metal Siding and Roofing | 3 pallets (approx.) | Palletized onsite. | Pangborn |
| Metal Shelving 12' x 8' | 3 pallets (approx.) | Palletized onsite. | Pangborn |
| Stainless Steel Metal Shelving 2' x 4' | 7 pallets (approx.) | Palletized onsite. | Pangborn |
| Stainless Steel Metal Shelving 2' x 6' | 2 pallets (approx.) | Palletized onsite. | Pangborn |
| Shelving Brackets | boxes + 12 buckets | Palletized onsite. | Pangborn |
| Uninstalled Aluminum 1' Angle Brackets | 3 pallets | Palletized onsite. | Pangborn |
| Stainless Steel Shelving Posts & Rails | 5 pallets | Palletized onsite. | Pangborn |
| Metal Flashing | 11 1/2 pallets | Palletized onsite. | Pangborn |
| Uninstalled Exterior Door | 2 | Located onsite. | Pangborn |
| Fence Posts | 12 | Located onsite. | Pangborn |
| Fence T-Posts | 6 | Located onsite. | Pangborn |
| Giga Watt Sign | 1 | Located onsite. | Pangborn |
| Uninstalled Rebar, 12' x 1/2' | All | Loose onsite. Not palletized. | Pangborn |
| Uninstalled Lumber, 12 x 10, 2 x 6, plywood | All | Loose onsite. Not palletized. | Pangborn |
| Electrical Vaults | 49 | Located onsite. | Pangborn |
| Electrical Vault Covers | 42 | Located onsite. | Pangborn |
| Security Grates for Cooling Openings | 5 | Located onsite. | Pangborn |
| Steel Floor Grates | All | Located onsite. | Pangborn |
| Keys to All Locks | All | All keys and all key copies to be provided by Trustee. | Pangborn |
| Steel Panel | 1 | Located onsite. Loose/Uninstalled. | Pangborn |
| Pods & All Contents Within | All | Located onsite. | Pangborn |
|    Fans (Installed) - Airfoil Impeller Corp. | 324 | Located onsite. In pods. | Pangborn |
|    Fan Control Panels | 24 | Including contactors, overloads. CB, terminals, etc. | Pangborn |
|    Networking Cabinets, Enclosures, and A | All | Located onsite. | Pangborn |
|    Electrical Equipment, Enclosures, and A | All | Located onsite. | Pangborn |
|    Power Cords | All | Located onsite. In pods. | Pangborn |
|    Doors, Lighting, and Fixtures | All | Located onsite. | Pangborn |
|    Networking Equipment and Accessories | All | Located onsite, in pods. | Pangborn |
|    Network/Internet/Ethernet Cabling | All | Located onsite, in pods. | Pangborn |
|    Computer/Electronics and Accessories | All | Located onsite, in pods. | Pangborn |
|    Filters | 288 | Located onsite. | Pangborn |
|    Copper Feeder/Conductor; Electrical Wir | All | Located onsite. Installed and Uninstalled/Loose. | Pangborn |
|    Racking and Shelving | All | Located onsite. | Pangborn |
|    Fire Extinguisher | All | Located onsite. | Pangborn |
| 40ft Shipping Container & All Content With | 2 | Located onsite. | Pangborn |
|    PSUs | All | Boxed in container. | Pangborn |

| Pangborn Equipment (cont'd) | | | |
|---|---|---|---|
| Item(s) Description | Quantity | Notes | Site |
| Wiring Shelving/Cable Tray | All | In container. | Pangborn |
| Control Switchgear Assembly (xfmr, panel | 1 | Located onsite. Next to Container. | Pangborn |