Pamela M. Egan, WSBA No. 54736 (*pro hac vice*)
POTOMAC LAW GROUP PLLC
1905 7th Ave. W
Seattle, WA 98119
Telephone: (415) 297-0132
Email: pegan@potomaclaw.com

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GIGA WATT, Inc., a Washington corporation,<br><br>           Debtor. | Case No. 18-03197 FPC 11<br><br>The Honorable Frederick P. Corbit<br><br>Chapter 11<br><br>**MEMORANDUM IN SUPPORT OF CHAPTER 11 TRUSTEE'S MOTION FOR ORDER APPROVING SALE OF EQUIPMENT FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS, APPROVAL OF NOTICE THEREOF AND RELATED RELIEF**<br><br>**Telephonic Hearing**<br>Date:      April 9, 2020<br>Time:     10:30 a.m. PT<br>Telephone: 877-402-9753<br>Access Code: 3001392 |

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving Sale of Equipment, etc.

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................... 1

II. RELIEF REQUESTED ............................................................................ 2

III. JURISDICTION AND VENUE ................................................................ 2

IV. FACTUAL BACKGROUND .................................................................... 2

V. EQUIPMENT TO BE SOLD .................................................................... 4

VI. POINTS AND AUTHORITIES ................................................................ 5

    A. The Sale Is Authorized Pursuant to 11 U.S.C. § 363(b)(1) ..................... 5

        *1. The Pangborn and Other Equipment Is Property of the Estate....5*

        *2. Sound Business Judgment Supports the Sale Agreement..............6*

    B. The Overbid Procedures and Break-Up Fee Are in the Best Interests of the Estate .................................................................................................7

    C. The Motion Satisfies the Elements of 11 U.S.C. § 363(f) ....................... 8

    D. The Sale of the Personal Property Is in Good Faith............................. 10

    E. The Form and Manner of Service of the Notice of Sale Is Sufficient ... 11

VII. CONCLUSION ........................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Ewell v. Diebert (In re Ewell),* 958 F.2d 276, 281 (9th Cir. 1992) ....................... 10

*In re Am. W. Airlines, Inc.*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) ................... 7

*In re Ernst Home Ctr., Inc.,* 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997) ................................................................................................................. 5

*In re Filtercorp, Inc.,* 163 F.3d 570, 576 (9th Cir. 1998) ..................................... 10

*In re Lind,* 2019 WL 2950167, at *4 (B.A.P. 9th Cir. July 8, 2019) ..................... 10

*In re Lionel Corp.*, 722 F.2d 1063, 1070 (2nd Cir. 1983) ...................................... 5

*In re Onouli-Kona Land Co.*, 846 F.2d 1170, 1174 (9th Cir. 1988) ..................... 10

**Statutes**

11 U.S.C. § 105 ........................................................................................................ 2

11 U.S.C. § 363 ......................................................................................... 5, 8, 9, 10

28 U.S.C. § 157 ........................................................................................................ 2

28 U.S.C. § 1334 ...................................................................................................... 2

28 U.S.C. § 1409 ...................................................................................................... 2

**Rules**

Fed.R.Bank.P. 2002 ................................................................................................. 2

Fed.R.Bank.P. 6004(h) .......................................................................................... 10

Fed.R.Bank.P. 9014 ................................................................................................. 2

LBR 2002-1 ............................................................................................................. 2

LBR 6004-1 ............................................................................................................. 2

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving Sale of Equipment, etc. - Page ii

Mark D. Waldron, in his official capacity as the Chapter 11 Trustee (the "**Trustee**"), hereby respectfully submits this memorandum in support of the *Chapter 11 Trustee's Motion for Order Approving Sale of Equipment Free and Clear of all Liens, Claims and Interests, Approval of Notice Thereof and Related Relief* (the "**Motion**") and in support of the Motion avers as follows:

## I. INTRODUCTION

Subject to Court approval and overbidding, the Trustee has negotiated an agreement ("**Sale Agreement**")[1] with Gib Compute, LLC ("**Gib**" or "**Buyer**"), a Delaware limited liability company, to sell ("**Sale**") (i) a set of transformers, switchboards, fans and other equipment that located at the Debtor's former site located on 643, 644, 675 & 676 South Billingsley Drive, East Wenatchee Washington 98802 ("**Pangborn Site**") and (ii) a set of power distribution and power supply units ("**Other Equipment**") located at the estate's facilities in Moses Lake, Washington ("**Moses Lake Facility**") and in East Wenatchee, Washington ("**TNT Facility**"). The purchase price ("**Purchase Price**") is $175,000, subject to overbidding.

The Pangborn Equipment and the Other Equipment are listed on Schedule 1 to the Sale Agreement. (Exhibit B to the Motion)

As set forth more fully below, the Sale serves the twin goals of clearing the Pangborn Site and recovering value for the benefit of creditors and parties in interest.

---

[1] A copy of the Sale Agreement is attached to the Motion as <u>Exhibit B</u>.

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving Sale of Equipment, etc. - Page 1

## II. RELIEF REQUESTED

The Trustee requests that the Court:

1. approve the Sale Agreement;

2. approve the Sale free and clear of any liens, claims or interests pursuant to 11 U.S.C. §§ 363(f)(4) and (5).

3. approve the bidding procedures (the "**Bidding Procedures**") and break-up fee ("**Break-Up Fee**") provided by the Sale Agreement pursuant to which third parties may bid in a first increment of $10,000 above the Purchase Price and in subsequent increments of $5,000 with a Break-Up Fee to Buyer in the amount of three percent (3%) of the final purchase price if Buyer does not win the overbidding; and

4. find that the sale is in good faith and waive the 14-day stay provided by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

## III. JURISDICTION AND VENUE

The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper in this district pursuant to 28 U.S.C. § 1408 and 28 U.S.C. § 1409.

The statutory predicates for the relief requested in the Motion are sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9014 and L.B.R. 2002-1 and L.B.R. 6004-1.

## IV. FACTUAL BACKGROUND

On March 9, 2017, the Chelan Douglas Regional Port Authority, formerly known as the Port of Douglas County (the "**Port**") and Giga Watt, Inc. ("**Giga**

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving Sale of Equipment, etc. - Page 2

Watt" or the "**Debtor**") executed that certain *Land Lease for Portion of Pangborn Airport Business Park East Wenatchee, Washington* (the "**Port Lease**")[2] pursuant to which Giga Watt leased the Pangborn Site from the Port.

On November 19, 2018 (the "**Petition Date**"), Giga Watt, Inc. commenced this case by filing a voluntary petition for relief pursuant to sections 101, *et seq.* of title 11 of the United States Code (the "**Bankruptcy Code**").

On January 23, 2019, the Court approved the appointment of Mark D. Waldron as the Trustee pursuant to its *Order Approving Appointment of Chapter 11 Trustee* [Docket No. 146]. In June 2019, the Port Lease was deemed rejected.

On February 18, 2019, Neppel Electrical and Controls, LLC ("**Neppel**") filed a proof of claim in which it asserted a lien against the real property at the Pangborn Site. The claim is in the amount of $479,959.63. On or about July 25, 2019, Neppel assigned its claim to Winland Credit Partners LLC. [ECF 344]

On March 24, 2020, the Court entered an Order, which *inter alia*, requires the Trustee to remove the Pangborn Equipment from its current location by May 7, 2020. Otherwise, the Pangborn Equipment will be deemed abandoned. [ECF 515]. The Order granted the *Port's Amended Motion for Relief from Automatic Stay; Abandonment of Property of the Estate; Waiver of FRBP 4001(a)(3)* [ECF 478] after a hearing held on March 18, 2020. At that hearing, the Trustee described the Sale and represented that the purchase price for the Sale was $200,000. After that hearing, the Buyer asked to reduce the price in light of the

---

[2] A copy of the Port Lease is attached hereto as **Exhibit 1**.

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving Sale of Equipment, etc. - Page 3

corona virus pandemic and the condensed time schedule for removal of all equipment. After negotiations, we agreed to a new price of $175,000.

At the hearing, the Court stated that this Motion could be heard on seven (7) days' notice.

## V. EQUIPMENT TO BE SOLD

The material terms of the Sale Agreement are set forth in the Motion and are incorporated herein by reference as if set forth fully herein.

On the Pangborn Site, the Debtor built (i) thirteen (13) pre-fabricated buildings (referred to as "**Pods**"), one of which was operational, and (ii) six (6) partially built additional Pods, none of which were operational. Almost all the operational Pods contain transformers, fans, electrical meters, switch gears and breaker panels with associated electrical wiring and conductors. The Pods are made of sheet metal and wooden beams. Pursuant to the Sale, the Buyer may, but is not required, to strip the Pods of anything that it deems of value. It may, but is not required, to demolish the Pods. The Buyer may also remove all other equipment that is located on the Pangborn Site, which includes such things as vault covers, additional fans and shelving. The Trustee expects the Buyer to remove almost all the Pangborn Equipment. The Pangborn Equipment and Other Equipment is itemized on Schedule 1 attached to the Sale Agreement.[3]

In addition, pursuant to the Sale, the Buyer will purchase (i) 64 PDUs located at the Moses Lake Facility and (ii) 270 PDUs and approximately 425

---

[3] The Sale Agreement with Schedule is attached to the Motion as <u>Exhibit B</u>.

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving Sale of Equipment, etc. - Page 4

PSUs located at the TNT Facility. Much remaining equipment remains at the Moses Lake Facility and the TNT Facility.

## VI. POINTS AND AUTHORITIES

### A. The Sale Is Authorized Pursuant to 11 U.S.C. § 363(b)(1)

Under section 363(b)(1) of the Bankruptcy Code, the Trustee may use, sell, or lease property of the estate, other than in the ordinary course of its business. 11 U.S.C. § 363. The decision to enter into a transaction that is outside the ordinary course of the debtor's business must be based on the Trustee's reasonable business judgment and supported by "some articulated business justification." *In re Ernst Home Ctr., Inc.,* 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997) (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2nd Cir. 1983)).

#### 1. *The Pangborn and Other Equipment Is Property of the Estate.*

The Port Lease provided that Giga Watt would own all improvements and property placed on the Pangborn Site, including fixtures. The Port Lease contained only one exception to this rule. The Port would own any Permanent Structures built on the Pangborn Site. Exh. 1, Port Lease, § 7.c. The Port Lease defines Permanent Structures:

> The term Permanent Structures shall include roofed and walled buildings built for permanent use and shall exclude pre-fabricated slab on-grade buildings that could be removed from the Premises by the Tenant regardless of their constructional design and size).

**Exh. 1**, Port Lease, § 7.c.

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving Sale of Equipment, etc. - Page 5

The Pangborn Equipment, which includes the Pods, are not Permanent Structures. The Pods are pre-fabricated buildings built on slab-on grade cement. They could be removed from the Pangborn Site. Therefore, none of the Pangborn Equipment falls within the Permanent Structure exception to the Port Lease and all of the Pangborn Equipment is property of the estate.

The Other Equipment is also property of the estate. With respect to the PDUs located at the Moses Lake Facility, the Trustee moved them from the Debtor's warehouse located in Rock Island, Washington after rejecting that lease.[4] The Trustee removed the rest of the Other Equipment from the Pangborn Site and stored it at the TNT Facility.

2. *Sound Business Judgment Supports the Sale Agreement*

The Trustee has tested the market for the Pangborn Equipment and has determined that $175,000 is market value. The Pangborn Equipment is essentially a niche set of property. Some of Pangborn Equipment was custom built. Much of the Pangborn Equipment is gauged to European – not U.S. – standards. The Pangborn Equipment is very heavy, requiring machinery, including a forklift, to remove. The Trustee has determined that it would cost not less than $18,000 just to move the Pangborn Equipment, further diminishing its marketability.

The Trustee and his team have spoken with not less than ten potential purchasers before agreeing to the Sale Agreement, subject to Court approval. Because the property is so specialized, the Buyer is the only party to have made an

---

[4] The Trustee rejected the lease for the warehouse in Rock Island, Washington.

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving Sale of Equipment, etc. - Page 6

offer on the Pangborn Equipment and Other Equipment. Furthermore, pursuant to the Pangborn Order [ECF 515], the Trustee has until May 7, 2020 to remove the Pangborn Equipment. Otherwise, the Pangborn Equipment will be deemed abandoned.

Given the foregoing, the Sale is an exercise of sound business judgment.

B. **The Overbid Procedures and Break-Up Fee Are in the Best Interests of the Estate**

The overbid procedures are reasonable and in the best interests of the estate. As set forth in the Motion, the Sale Agreement permits overbids at or before the hearing on the Motion, provided that the first overbid is $10,000 or more than the Purchase Price. Subsequent overbids must be in increments of $5,000. A bidder must establish the bidder's financial ability to meet all the terms of the Agreement. Bidders must also establish the ability to remove the Pangborn Equipment by May 2, 2020. The Trustee will decide the highest and best offer, in his sound business judgment, subject to court review and approval.

The Buyer would not enter into the Sale Agreement without the overbid procedures and the Break-Up Fee. The proposed bidding procedures ensure that the estate will benefit in the event of overbidding even after payment of the Break-Up Fee. *Cf. In re Am. W. Airlines, Inc.*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (court considers best interests of the estate in reviewing a breakup fee; collecting and discussing cases therein).

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving Sale of Equipment, etc. - Page 7

### C. The Motion Satisfies the Elements of 11 U.S.C. § 363(f)

The Trustee seeks an order making the sale of the Pangborn Equipment and Other Equipment free and clear of any lien, claim or interest in the Pangborn Equipment. The Trustee is not aware of any lien, claim or interest in the Pangborn Equipment or Other Equipment. However, Neppel Electrical and Controls, LLC ("**Neppel**") has filed a proof of claim (the "**Lien Claim**") in which it asserts a mechanics' lien on the Pangborn Site under Washington law. *See* Proof of Claim No. 121-2. This claim was assigned to Winland Credit Partners LLC. *See Transfer of Claim Other Than for Security*, filed on July 25, 2019, [ECF 344].

Moreover, the landlord at the Moses Lake Facility (the "**Moses Lake Landlord**") may assert a security interest in the Other Equipment based on a security interest that was granted within 90 days of the Petition Date which was pursuant to a resolution of the Debtor's prior default under leases between the Debtor and the Moses Lake Landlord.[5]

Section 363(f) allows the Chapter 11 Trustee to sell property of the estate free and clear of liens if "such interest is in *bona fide* dispute," or "such entity could be compelled, in a legal or equitable proceeding, to accept a monetary satisfaction of such interest." 11 U.S.C. §§ 363(f)(4) and (5). Both provisions apply here.

The Lien Claim relates to the real property and permanent improvements made thereon. The Pangborn Equipment and Other Equipment are not permanent

---

[5] Allrise has asserted a claim in miners which are not part of this Sale and a pod at Moses Lake Facility, which is also not part of the Sale.

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving Sale of Equipment, etc. - Page 8

structures or improvements. Therefore, the Lien Claim would be disputed if asserted against the Pangborn Equipment or Other Equipment. *See Estate of Haselwood v. Bremerton Ice Arena, Inc.*, 166 Wash. 2d 489, 501, 210 P.3d 308, 314 (2009) (mechanics' liens apply to improvements that "will be permanently affixed to or part of the realty.").

Any security interest asserted by the Moses Lake Landlord would also be disputed on the ground that it is an avoidable preference pursuant to section 547 of the Bankruptcy Code.

Furthermore, under section 363(f)(5), a sale free and clear of any interest may occur if "such entity *could be* compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f) (emphasis added). Importantly, the claim does not have to be paid in order to satisfy section 363(f). *See In re Lady H Coal Co., Inc.,* 193 B.R. 233, 247–48 (Bankr. S.D. W. Va. 1996) (referring to "hypothetical" satisfaction under (f)(5), since the subsection uses "could be" compelled and not "must be" or "shall be" compelled.). Any claims asserted by Neppel or the Moses Lake Landlord may be compensable in a money satisfaction. In fact, both Neppel and the Moses Lake Landlord have filed proofs of claim in this case seeking such monetary satisfaction.

For all the foregoing reasons, the Debtor has satisfied the elements of 11 U.S.C. § 363(f).

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving Sale of Equipment, etc. - Page 9

### D. The Sale of the Personal Property Is in Good Faith

The Trustee requests a finding that the Sale Agreement is made in good faith pursuant to 11 U.S.C. § 363(m). Under § 363(m) of the Bankruptcy Code:

> [w]hen a sale of assets is made to a good faith purchaser, it may not be modified or set aside unless the sale was stayed pending appeal.

*In re Filtercorp, Inc.,* 163 F.3d 570, 576 (9th Cir. 1998). *See also* Fed.R.Bank.P. 6004(h):

> An order authorizing the . . . sale . . . of property . . . is stayed until the expiration of 14 days after entry of the order, **unless the court orders otherwise**.

*Id.* (emphasis added).

A good faith buyer "is one who buys 'in good faith' and 'for value.'" *Ewell v. Diebert (In re Ewell),* 958 F.2d 276, 281 (9th Cir. 1992). The analysis is holistic and does not depend on any one factor. *See also In re Onouli-Kona Land Co.,* 846 F.2d 1170, 1174 (9th Cir. 1988) ("Ninth Circuit authority . . . does not make good faith depend on 'value' . . . ."); *accord In re Lind,* 2019 WL 2950167, at *4 (B.A.P. 9th Cir. July 8, 2019) ("[A] a good faith finding does not turn on the purchase price in isolation.").

The Sale Agreement was negotiated at arm's length, with each party represented by counsel. The Buyer is not an insider of the Debtor and is disinterested. The bidding procedures, if approved, will ensure that the Purchase Price is put to the test of other interested buyers. The Trustee is motivated to enter into the Sale in order to benefit the estate both by monetizing the Pangborn Equipment and Other Equipment and clearing the Pangborn Site.

The Trustee submits that this is sufficient to find that the Sale Agreement was made in good faith.

### E. The Form and Manner of Service of the Notice of Sale Is Sufficient

The Notice of Sale, attached to the Motion as <u>Exhibit C</u>, complies with Bankruptcy Rule 2002(a)(2) in that the Court granted permission to serve the Notice of Sale on seven (7) days' notice. Service will be accomplished on or before April 2, 2020, which is seven (7) days before the hearing date of April 9, 2020. The Trustee is serving the Notice of Sale on (i) the U.S. Trustee's Office, (ii) counsel for the Official Committee of Unsecured Creditors, (iii) everyone on the Master Mailing List and (iv) everyone with whom the Trustee has ever discussed the sale of the Pangborn Equipment and Other Equipment.

The Notice of Sale also contains all the information required by Bankruptcy Rule 2002(c)(1) and L.B.R. 2002-1. In particular, it includes a copy of Schedule 1 to the Sale Agreement and describes both the Sale and the Bidding Procedures. It also provides the Trustee's contact information for potential bidders to learn more about the Sale, including, but not limited to, the Pangborn Equipment and the Other Equipment.

Based on the foregoing, the form and manner of service of the Notice of Sale is sufficient.

### VII. CONCLUSION

WHEREFORE, the Trustee respectfully requests entry of an Order:

1. Granting the Motion;

2. Approving the Sale Agreement;

3. Approving the Bidding Procedures;

4. Authorizing the Trustee to enter into and perform pursuant to the terms of the Agreement;

5. Approving the form and manner of service of the Notice of Sale; and

6. Granting such other and further relief as the Court deems necessary and just.

Dated: March 30, 2020

POTOMAC LAW GROUP PLLC

By:    */s/ Pamela M. Egan*
Pamela M. Egan (WSBA No. 54736)

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*