Pamela M. Egan, WSBA No. 54736 (*pro hac vice*)
POTOMAC LAW GROUP PLLC
1905 7th Ave. W
Seattle, WA 98119
Telephone: (415) 297-0132
Email: pegan@potomaclaw.com

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GIGA WATT, Inc., a Washington corporation,<br><br>Debtor. | Case No. 18-03197 FPC 11<br><br>The Honorable Frederick P. Corbit<br><br>Chapter 11<br><br>**DECLARATION OF MARK D, WALDRON IN SUPPORT OF CHAPTER 11 TRUSTEE'S MOTION FOR ORDER APPROVING SALE OF EQUIPMENT FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS, APPROVAL OF NOTICE THEREOF AND RELATED RELIEF**<br><br><u>Telephonic Hearing</u><br>Date:      April 9, 2020<br>Time:     10:30 a.m. PT<br>Telephone: 877-402-9753<br>Access Code: 3001392 |

DECLARATION OF MARK D. WALDRON IN SUPPORT OF CHAPTER 11 TRUSTEE'S
MOTION FOR ORDER APPROVING SALE OF EQUIPMENT FREE, etc. – Page 1

I, Mark D. Waldron, declare as follows:

1. I submit this declaration in my capacity as the duly-appointed Chapter 11 Trustee in the bankruptcy case of the above-captioned debtor (the "**Debtor**" or "**Giga Watt**") and in support of the *Chapter 11 Trustee's Motion for Order Approving Sale of Equipment Free and Clear of all Liens, Claims and Interests, Approval of Notice Thereof and Related Relief* (the "**Motion**"), which I have read and approved. The statements set forth herein are based on my investigation of the Debtor's affairs, which is ongoing, and, except where otherwise noted, are based on personal knowledge. If called as a witness, I would and could competently testify thereto.

2. Unless otherwise defined herein, capitalized terms have the meanings ascribed to them in the Motion.

3. Subject to Court approval and overbidding, I have negotiated the **Sale Agreement** with Gib Compute, LLC ("**Gib**" or the "**Buyer**"), a Delaware limited liability company, to sell (the "**Sale**") (i) transformers, switchboards, fans and other equipment that are located at the Debtor's former site located on 643, 644, 675 & 676 South Billingsley Drive, East Wenatchee Washington 98802 (the "**Pangborn Site**") and (ii) a set of power distribution and power supply units (the "**Other Equipment**") that is located at the estate's facilities in Moses Lake, Washington (the "**Moses Lake Facility**") and in East Wenatchee, Washington (the "**TNT Facility**").

4. The Pangborn Equipment and the Other Equipment are listed on Schedule 1 to the Sale Agreement. A true and correct copy of the Sale Agreement is attached to the Motion as Exhibit B.

5. On March 9, 2017, the Chelan Douglas Regional Port Authority, formerly known as the Port of Douglas County (the "**Port**") and Giga Watt, Inc.

Declaration of Mark D. Waldron in Support of Chapter 11 Trustee's Motion for Order Approving Sale of Equipment, etc. - Page 1

18-03197-FPC7   Doc 521   Filed 03/30/20   Entered 03/30/20 16:23:52   Pg 2 of 6

("**Giga Watt**" or the "**Debtor**") executed that certain *Land Lease for Portion of Pangborn Airport Business Park East Wenatchee, Washington* (the "**Port Lease**") pursuant to which Giga Watt leased the Pangborn Site from the Port. A true and correct copy of the Port Lease is attached as <u>Exhibit 1</u> to the Memorandum of Points and Authorities filed in in support of the Motion

6. On March 24, 2020, the Court entered an Order, which *inter alia*, requires me to remove the Pangborn Equipment from its current location by May 7, 2020. Otherwise, the Pangborn Equipment will be deemed abandoned. [ECF 515]. The Order granted the *Port's Amended Motion for Relief from Automatic Stay; Abandonment of Property of the Estate; Waiver of FRBP 4001(a)(3)* [ECF 478] after a hearing held on March 18, 2020. At that hearing, I, through counsel, described the Sale and represented that the purchase price for the Sale was $200,000. After that hearing, the Buyer asked to reduce the price in light of the corona virus pandemic and the condensed time schedule for removal of all equipment. After negotiations, we agreed to a new price of $175,000.

7. The material terms of the Sale Agreement are set forth in the Motion and are incorporated herein by reference as if set forth fully herein.

8. On the Pangborn Site, the Debtor built (i) thirteen (13) pre-fabricated buildings (referred to as "**Pods**"), one of which was operational, and (ii) six (6) partially built additional Pods, none of which were operational. Almost all the Pods contain transformers, fans, electrical meters, switch gears and breaker panels with associated electrical wiring and conductors. They are made of sheet metal and wooden beams. Pursuant to the Sale, the Buyer may, but is not required, to strip the Pods of anything that it deems of value. It may, but is not required, to demolish the Pods. The Buyer may also remove all other equipment that is located on the Pangborn Site, which includes such things as vault covers, additional fans

Declaration of Mark D. Waldron in Support of Chapter 11 Trustee's Motion for Order Approving Sale of Equipment, etc. - Page 2

and shelving. I expect the Buyer to remove almost all the Pangborn Equipment. The Pangborn Equipment and Other Equipment is itemized on Schedule 1 attached to the Sale Agreement.

9. In addition, pursuant to the Sale, the Buyer will purchase (i) 64 PDUs located at the Moses Lake Facility and (ii) 270 PDUs and approximately 425 PSUs located at the TNT Facility. Much remaining equipment remains at the Moses Lake Facility and the TNT Facility.

10. A true and correct copy of the Port Lease is attached as Exhibit 1 to the Memorandum of Points and Authorities filed in support of the Motion.

11. The Pods are pre-fabricated buildings built on slab-on grade cement. They could be removed from the Pangborn Site.

12. With respect to the PDUs located at the Moses Lake Facility that are subject to the Sale, I moved them from the Debtor's warehouse located in Rock Island, Washington after rejecting that lease. I removed the rest of the Other Equipment from the Pangborn Site and stored it at the TNT Facility.

13. I have tested the market for the Pangborn Equipment and have determined that $175,000 is market value. The Pangborn Equipment is essentially a niche set of property. Some of Pangborn Equipment was custom built. Much of the Pangborn Equipment is gauged to European – not U.S. – standards. The Pangborn Equipment is very heavy, requiring a forklift, to remove. It would cost not less than $18,000 just to move the Pangborn Equipment, further diminishing its marketability.

14. My team and I have spoken with not less than ten potential purchasers before I agreed to the Sale Agreement, subject to Court approval. Because the property is so specialized, the Buyer is the only party to have made an offer on the Pangborn Equipment and Other Equipment. Furthermore, pursuant to

Declaration of Mark D. Waldron in Support of Chapter 11 Trustee's Motion for Order Approving Sale of Equipment, etc. - Page 3

the Pangborn Order [ECF 515], I have until May 7, 2020 to remove the Pangborn Equipment. Otherwise, the Pangborn Equipment will be deemed abandoned.

15. In my judgment, the overbid procedures are reasonable and in the best interests of the estate. As set forth in the Motion, the Sale Agreement permits overbids at or before the hearing on the Motion, provided that the first overbid is $10,000 or more than the Purchase Price. Subsequent overbids must be in increments of $5,000. A bidder must establish the bidder's financial ability to meet all the terms of the Agreement. Bidders must also establish the ability to remove the Pangborn Equipment by May 2, 2020. I will decide the highest and best offer, in my sound business judgment, subject to court review and approval.

16. The Buyer would not enter into the Sale Agreement without the overbid procedures and the Break-Up Fee. In my judgment, the proposed bidding procedures ensure that the estate will benefit in the event of overbidding even after payment of the Break-Up Fee.

17. I am not aware of any undisputed lien, claim or interest in the Pangborn Equipment or Other Equipment or of any lien, claim or interest that could not be compelled to accept a monetary satisfaction.

18. The Sale Agreement was negotiated at arm's length, with each party represented by counsel. The Buyer is not an insider of the Debtor and is disinterested. The bidding procedures, if approved, will ensure that the Purchase Price is put to the test of other interested buyers. I am motivated to enter into the Sale in order to benefit the estate both by monetizing the Pangborn Equipment and Other Equipment and clearing the Pangborn Site.

19. A true and correct copy of the Notice of Sale is attached to the Motion as Exhibit C.

Declaration of Mark D. Waldron in Support of Chapter 11 Trustee's Motion for Order Approving Sale of Equipment, etc. - Page 4

20. Service of the Notice of Sale will be accomplished on or before April 2, 2020, which is seven (7) days before the hearing date of April 9, 2020. I am serving the Notice of Sale on (i) the U.S. Trustee's Office, (ii) counsel for the Official Committee of Unsecured Creditors, (iii) everyone on the Master Mailing List and (iv) everyone with whom I or my team has discussed the sale of the Pangborn Equipment and Other Equipment.

To the best of my knowledge, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of March 2020 in Tacoma, Washington.

_____
Mark D. Waldron, in his official capacity as Chapter 11 Trustee in the above-captioned case

Declaration of Mark D. Waldron in Support of Chapter 11 Trustee's Motion for Order Approving Sale of Equipment, etc. - Page 5