KATHRYN R MCKINLEY, WSBA No. 25105
PAINE HAMBLEN LLP
717 West Sprague Avenue Suite 1200
Spokane WA 99201
T (509) 455-6000
F (509) 838-0007
kathryn.mckinley@painehamblen.com

Attorneys for Public Utility District No. 1 of Douglas County, Washington

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>**GIGA WATT INC, a Washington corporation,**<br><br>Debtor. | No. 18-03197-FPC11<br><br>**CHAPTER 11**<br><br>**OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S MOTION FOR AUTHORIZATION TO FILE ADVERSARY PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE BENEFIT OF THE BANKRUPTCY ESTATE** |

Public Utility District No. 1 of Douglas County, Washington (the "District"), through its counsel, Kathryn R. McKinley and Paine Hamblen LLP, objects to the Motion for Authorization to File Adversary Proceeding Against Douglas County PUD for the Benefit of the Bankruptcy Estate filed by the Unsecured Creditors Committee (the "Committee") on April 9, 2020 [ECF No. 533]. This Objection is

OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S
MOTION FOR AUTHORIZATION TO FILE ADVERSARY
PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE
BENEFIT OF THE BANKRUPTCY ESTATE- 1

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201
PHONE (509) 455-6000
FAX (509) 838-0007

supported by the Declarations of Gary Ivory, Jeff Johnson, Dennis Baker, Lisa Parks, and Kathryn R. McKinley, and the facts, law and analysis set forth below.

## I.  INTRODUCTION

On February 24, 2020, this Court entered an order approving employment of Special Counsel for the Committee "to investigate the scope of any rights of the above-captioned debtor's estate in that certain Interconnection and Service Agreement, dated March 7, 2017, by and between Giga Watt, Inc. and the District." [ECF No. 492].  Although having done no apparent investigation of the facts related to the subject Agreement, the Committee now alleges that it has a colorable claim against the District and that the Chapter 11 trustee (the "Trustee") has abused his power in not pursuing the claim.

The Committee asks this Court to grant it derivative status to pursue an adversary action against the District. The Committee asserts that this is purely an issue of law. However, as fully discussed below, the grant of derivative status involves a mixed question of fact and law and is within the sound discretion of the Court. The Committee fails to present facts sufficient to state a claim that is plausible on its face. Further, the Committee has not shown that the Trustee abused his discretion in deciding not to pursue a claim against the District.

**OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S MOTION FOR AUTHORIZATION TO FILE ADVERSARY PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE BENEFIT OF THE BANKRUPTCY ESTATE**- 2

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA  99201
PHONE (509) 455-6000
FAX (509) 838-0007

In seeking the February, 2020, Order, the Committee submitted a Memorandum setting forth a purported basis for asserting a claim against the District.[1] The Memorandum contains inaccurate and unsupported facts and, then, misapplies or misinterprets applicable Washington law. Despite having deprived the District and the Chapter 11 Trustee of the opportunity to respond to those facts, the Committee now asserts in the current motion (the "Motion") that the Trustee and the District "presented every single one of their arguments for why such litigation would in the end be futile." [ECF No. 533 at p1]. The Committee further states that the District has only legal defenses. [*Id.* at p2]. These assertions are without merit, and the Court is entitled to be fully informed of the facts and law applicable to the Committee's Motion.

As set forth in this Objection, the Committee's Motion fails on its merits and must be denied.

## II.     APPLICABLE FACTS

### A. The Interconnection and Services Agreement.

On March 7, 2017, the District and Debtor Giga Watt entered into that certain Interconnection and Services Agreement. (the "Agreement") (Declaration

---

[1] The Memorandum was submitted as a Reply titled "Omitted Ex. B to ECF No. 442" on January 22, 2020 at 10:21 p.m. the day before the hearing on the employment of special counsel.

OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S
MOTION FOR AUTHORIZATION TO FILE ADVERSARY
PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE
BENEFIT OF THE BANKRUPTCY ESTATE- 3

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA  99201
PHONE (509) 455-6000
FAX (509) 838-0007

of Gary Ivory, Ex. A.) The Agreement contained no specific term, rather, it stated that it was effective until terminated in accordance with Section 20 of the Agreement. (Ivory Decl. at ¶3 and Ex. A, §1.)   In its Motion, the Committee incorrectly asserts that the Agreement had a term of fifty (50) years. *Motion* [ECF No. 533 at p2]. Section 20 provided that either party could terminate the Agreement upon 12 months' prior written notice. (Ivory Decl. at ¶4 and Ex. A, §20.) No reason was required to terminate the Agreement with 12 months' notice. *Id.* The Agreement was also terminable by the District upon 180 days' notice if Giga Watt failed to pay certain amounts under the Agreement. (Ivory Decl. at ¶5 and Ex. A, §6.)[2] Termination for non-payment was to be accomplished in accordance with §20 but with a shorter notice period than the bilateral no-fault termination provision. *Id.*

Pursuant to the Agreement, Giga Watt was to construct a substation to allow the District to provide electric service to the Pangborn site.  (Ivory Decl. at ¶6 and Ex. A, §3.1.)  Giga Watt further agreed to pay certain Major Costs as defined in §2.2 of the Agreement and specifically including those Major Costs identified in Section 6.  (Ivory Decl. at ¶7 and Ex. A.) Section 6 stated:

---

[2] The Agreement actually specified "thirty (180) days" notice. The numerical number of days was the correct time frame. (Ivory Decl. at ¶5.)

OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S MOTION FOR AUTHORIZATION TO FILE ADVERSARY PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE BENEFIT OF THE BANKRUPTCY ESTATE- 4

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA  99201
PHONE (509) 455-6000
FAX (509) 838-0007

Certain Major Costs typically required to be paid by the Customer pursuant to the District's electrical line extension policies, ***are expected to be paid by the Port*** . . . through an Interlocal Agreement between the district and the Port. (Emphasis added.)

(Ivory Decl. at ¶7 and Ex. A, §6.) However, as discussed more fully in Section B of this Objection, Giga Watt opted out of having the Port paying those costs when it subsequently entered into a triple net lease with the Port.

Once the substation was complete and operational, Giga Watt's maximum power usage under the Agreement was to be 30 megawatts. The rate for the electricity was to be in accordance with District Rate Schedule 1 with a 6.013% surcharge and was specifically subject to change at any time. (Ivory Decl. at §8 and Ex. A, §4.)

The Agreement also contained the following provisions pertinent to this matter:

**Recital D:**

The District has an interlocal agreement with the Port of Douglas County that allows the Port to defer payment of electrical infrastructure for service to the Pangborn Airport Business Park lots. ***The customer is working with the Port to pay for the electrical infrastructure.*** (Emphasis added.)

**OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S MOTION FOR AUTHORIZATION TO FILE ADVERSARY PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE BENEFIT OF THE BANKRUPTCY ESTATE**- 5

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201
PHONE (509) 455-6000
FAX (509) 838-0007

**Section 4:**

Subject to the provisions contained in this agreement, the District shall provide power and associated energy to meet customer's demand as generally outlined in Exhibit A.

**Exhibit A:**

Service Rates: Rate Schedule 1 will apply to the Customer. ***Rates are subject to change at any time.*** (Emphasis added.)

**Section 6:**

\* \* \* \*

In the event that Customer does not pay the Major Costs as deemed necessary by the District, the district may (i) reduce the amount of power sold below the amount set forth on Exhibit A in the District's discretion; or (ii) ***terminate this Agreement pursuant to Paragraph 20; provided the notice period for such termination shall be thirty*** *(sic)* ***(180) days.*** (Emphasis added.)

**Section 18.6:**

This agreement shall be governed by and construed in accordance with the laws of the state of Washington. . . . The substantially prevailing party in any legal action shall be entitled to all reasonable costs of the action, including, but not limited to, reasonable attorney fees, expert witness fees, court reporting fees, copy expenses, and all reasonable travel, meals, and lodging expenses.

OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S
MOTION FOR AUTHORIZATION TO FILE ADVERSARY
PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE
BENEFIT OF THE BANKRUPTCY ESTATE- 6

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201
PHONE (509) 455-6000
FAX (509) 838-0007

18-03197-FPC7   Doc 560   Filed 04/27/20   Entered 04/27/20 10:35:26   Pg 6 of 24

**Section 20:**

**20.1** Upon twelve (12) months prior written notice the Customer or the District may terminate this agreement.

(Ivory Decl., Ex. A.)

**B.    Land Lease Between Giga Watt and the Port.**

On March 9, 2017, Giga Watt and the Port entered into that certain LAND LEASE FOR PORTION OF PANGBORN AIRPORT BUSINESS PARK, which was amended by an Addendum on August 15, 2017 (collectively, the "Lease"). (Declaration of Lisa Parks, Ex. A.)  Under that Lease, Giga Watt leased Lots 10, 11, 12 and 13 in the Pangborn Airport Business Park from the Port.  The Lease was a triple net lease which required Giga Watt to pay all costs and expenses associated with the leased premises (Parks Decl. ¶¶ 6-9 and Ex. A.) Specifically, the Lease contained the following pertinent provisions:

**4.  Rent.**

**g.  Operating Expenses.**  It is the intention of the Parties, and they agree, that this Lease shall be a triple-net Lease and the Landlord shall have no obligation to provide any services, perform any act or pay any expenses, charges, obligations or costs of any kind, whatsoever, with respect to the premises, except as provided for in this Lease, and ***Tenant agrees to pay one-hundred percent (100%) of any and all operating expenses including, but not limited to:***

OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S
MOTION FOR AUTHORIZATION TO FILE ADVERSARY
PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE
BENEFIT OF THE BANKRUPTCY ESTATE- 7

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA  99201
PHONE (509) 455-6000
FAX (509) 838-0007

1.  **Contribution-in-Aid-of-Construction (CIAC):** Tenant
    shall pay for PUD infrastructure pursuant to the CIAC
    Agreements attached hereto as Exhibits B and C . . .

Further, the Lease provided that Giga Watt could purchase and install a substation
on the leased premises. (Parks Decl. at ¶ 8.) This was separate from Operating
Expenses:

7.  <u>Tenant Improvements</u>.

\* \* \* \*

b.  **Substation.** As part of its business operations, Tenant may, at
    its own discretion, purchase and install a Substation on the
    Premises for the purpose of electrical generation, transmission
    and/or distribution.

While the Lease contemplated that Giga Watt would be able to take
advantage of the deferred payment structure for CIAC payments for infrastructure,
Giga Watt elected to not participate in that program. (Parks Decl. at ¶ 5.)
Participation in the CIAC deferral program required Giga Watt to sign CIAC
agreements with the Port. (Parks Decl. at ¶¶ 3-4 and Exs. B and C), Giga Watt was
unable to provide the required funding and did not sign those agreements.
Accordingly, they were not incorporated into the Lease. (Parks Decl. at ¶ 5 .)

Lisa Parks, then the Executive Director of the Port, spoke with Dave Carlson
about the effect of Giga Watt opting out of the CIAC deferral program and he
indicated that Giga Watt would proceed with the project without utilizing the

OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S
MOTION FOR AUTHORIZATION TO FILE ADVERSARY
PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE
BENEFIT OF THE BANKRUPTCY ESTATE- 8

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201
PHONE (509) 455-6000
FAX (509) 838-0007

CIAC option. (Parks Decl. at ¶ 5.) Pursuant to the Lease, Giga Watt was responsible to pay billings from the District directly, and the Port was not obligated to pay any amounts to the District. (Parks Decl. at ¶¶ 6-7, 9.)

## III.  LAW AND ANALYSIS

### A. Washington Contract Law Supports the Termination

The Committee alleges that the District's termination of the Agreement on one-year's written notice was a breach of contract. However, the Committee misconstrues and/or misinterprets both the Agreement and Washington law.

When a contract for a continuing performance does not specify an intended duration, Washington courts "construe it to be terminable-at-will by either party after a reasonable time." *Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co*., 145 P.3d 1253, 1256 (Div. 2 2006) (citing *Robbins v. Seattle Peerless Motor Co*., 148 Wash. 197, 199, 268 P. 594 (1928); *Birkenwald Distrib. Co. v. Heublein, Inc*., 55 Wn.App. 1, 6, 776 P.2d 721 (1989)). The terminating party must give reasonable notice to the other party. *Id*.

The reasonableness of notice requires a facts and circumstances analysis. *Id.* (citing *Lano v. Osberg Constr., Co.*, 67 Wn.2d 659, 663, 409 P.2d 466 (1965)). "Reasonable notice is notice 'fairly to be expected or required under the particular circumstances.'" *Id*. at 767 (quoting BLACK'S LAW DICTIONARY at 1091 (8th ed.

OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S
MOTION FOR AUTHORIZATION TO FILE ADVERSARY
PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE
BENEFIT OF THE BANKRUPTCY ESTATE- 9

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201
PHONE (509) 455-6000
FAX (509) 838-0007

1999)); *SAK & Associates, Inc. v. Ferguson Const., Inc.,* 357 P.3d 671, 677 (Div. 1 2015). However, courts do look to the express terms of the agreement, and where the parties have agreed to provide notice within a certain timeline, that will control absent a showing the term is unreasonable. In *Myers v. Department of Social & Health Services*, the court held that the Department of Social and Health Services properly terminated a contract with a caregiver based on a termination for convenience provision, recognizing that the covenants of good faith and fair dealing do not trump express contract terms. *Myers*, 218 P.3d 241, 244 (Div. 3 2009).

In *SAK*, SAK and the defendant, Ferguson Construction Inc., entered into a fixed sum contract to provide certain materials and services for a construction project. *SAK*, 357 P.3d at 673. The contract had been partially completed when Ferguson terminated SAK from the project. *Id*. In its notice of termination, Ferguson referenced "phasing restrictions, site logistics, and basic convenience" and cited to Section 7 of the contract which permitted Ferguson to terminate the contract "for its own convenience." *Id*. Upon Ferguson giving the required written notice to the SAK, the contract terminated immediately. *Id*.

SAK argued the notice was not reasonable because it did not allow SAK an opportunity to take action to protect its rights under the contract. *Id*. at 418. The

**OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S MOTION FOR AUTHORIZATION TO FILE ADVERSARY PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE BENEFIT OF THE BANKRUPTCY ESTATE**- 10

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201
PHONE (509) 455-6000
FAX (509) 838-0007

18-03197-FPC7    Doc 560    Filed 04/27/20    Entered 04/27/20 10:35:26    Pg 10 of 24

court rejected this argument, finding that the termination was "simply a termination for convenience, *which was contemplated by the parties in the clear language of the contract*." *Id*. (Emphasis added.) While *SAK* and *Myers* both deal with termination for convenience clauses, which are unilateral, the same analysis applies to bilateral termination clauses which specify the notice period.

In the instant case, §20.1 of the Agreement stated: "[u]pon twelve (12) months prior written notice, the Customer or the District may terminate this agreement." (Ivory Decl., Ex. A.)  On October 12, 2018, the District sent Giga Watt a "Termination Letter" in accordance with the notice provisions of the Agreement. (Ivory Decl. at ¶ 9 and Ex. D.)  The letter expressly quoted §20.1, stating that the obligations of the parties under the Agreement would terminate in one year, effective on October 12, 2019.

While subsequent paragraphs of the letter addressed a past due invoice in the amount of $310,329 that Giga Watt had yet to pay, the unpaid invoice was not the reason for the termination. (Ivory Decl. at ¶9.) Had nonpayment been the driving force behind the termination, the District would have invoked the 180-day termination provision pursuant to Section 6. The District clearly expressed concern about Giga Watt's status as a going concern. (Ivory Decl. at ¶ 10 and Ex. D.)

**OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S MOTION FOR AUTHORIZATION TO FILE ADVERSARY PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE BENEFIT OF THE BANKRUPTCY ESTATE**- 11

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA  99201
PHONE (509) 455-6000
FAX (509) 838-0007

The impetus for the termination by the District was the culmination of numerous issues. Since signing the Agreement in March, 2017, Giga Watt had made little to no progress in building the substation. (Declaration of Dennis Baker at ¶¶ 4-8; Declaration of Jeff Johnson at ¶ 5; Ivory Decl. at ¶10.) There were continual personnel changes at Giga Watt and ultimately a mass layoff of employees. (Baker Decl. at ¶¶ 5 and 15; Johnson Decl. at ¶¶ 9 and 16; Ivory Decl. at ¶10.) Dave Carlson, the CEO of Giga Watt with whom the District had dealt, resigned suddenly. (Ivory Decl. at ¶10.) The District had expended significant resources to help Giga Watt with the Pangborn project and simply could not continue to do so. ( Baker Decl. at ¶ 4; Ivory Decl. at ¶10.) Given all of the information available to the District, termination appeared to be the best option to minimize losses to the District, and therefore, the customers in its service area. (Ivory Decl. at ¶10.)

Notably, the termination letter indicated that the District would be willing to work with Giga Watt on future options. The one-year notice period gave Giga Watt ample opportunity to pursue other options, whether that be a new agreement with the District or the purchase of power from another source. (Ivory Decl. at ¶11.) Giga Watt did not approach the District to discuss options. (Ivory Decl. at ¶11.)

**OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S MOTION FOR AUTHORIZATION TO FILE ADVERSARY PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE BENEFIT OF THE BANKRUPTCY ESTATE**- 12

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201
PHONE (509) 455-6000
FAX (509) 838-0007

18-03197-FPC7    Doc 560    Filed 04/27/20    Entered 04/27/20 10:35:26    Pg 12 of 24

The Committee argues that §6 sets forth specific termination provision which overrides §20.1. This is not born out by the clear language of §6 which states that the District may terminate the Agreement for nonpayment "pursuant to Paragraph 20; *provided* the notice period for such termination shall be thirty (180) days." (Ivory Decl. at ¶ 5 and Ex. A.) The use of the word "provided" carves out a notice period for unilateral termination by the District for nonpayment which is shorter than the notice period required for termination under the bilateral termination provision.

**B. The Committee Has Not Met the Standard for Derivative Status**

The Committee asks this Court to grant it derivative status to bring an adversary proceeding against the District and incorrectly asserts that the issue is merely one of legal analysis. The grant of derivative standing is a mixed question of law and fact. *Official Committee of Unsecured Creditors v. Sabine Oil & Gas Corp.*, 562 B.R. 211, 216 (S.D.N.Y 2016) (quoting *In re Adelphia Communications Corp.*, 371 B.R. 660, 665 (S.D.N.Y. 2007), aff'd 544 F.3d 420 (2d Cir. 2008)). After considering tests from other jurisdictions, the Sixth Circuit set forth the following test:

> . . . a creditor or creditors' committee may have derivative standing to initiate an avoidance action where: 1) a demand has been made upon the statutorily authorized party to take action; 2) the demand is declined; 3) a colorable claim that would benefit the

OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S
MOTION FOR AUTHORIZATION TO FILE ADVERSARY
PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE
BENEFIT OF THE BANKRUPTCY ESTATE- 13

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201
PHONE (509) 455-6000
FAX (509) 838-0007

estate if successful exists, based on a cost-benefit analysis performed by the court, and 4) the inaction is an abuse of discretion ("unjustified") in light of the debtor-in-possession's duties in a Chapter 11 case.

*Canadian Pacific Forest Products, Ltd. v. J. D. Irving, Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436, 1446 ( 6th Cir. 1995). A version of this test has been adopted by bankruptcy courts within the Ninth Circuit. *Morabito v. JH Inc. (In re Consol. Nev. Corp.)*, 2017 Bankr. LEXIS 4393 (9th Cir. BAP 2017) (citing *In re Alaska Fur Gallery, Inc.*, 2010 Bankr. LEXIS 6572 at *1 (Bankr. D. Alaska May 21, 2010); *In re Yellowstone Mountain Club, LLC*, 2009 Bankr. LEXIS 4443 at *6 (Bankr. D. Mont. Jan. 16, 2009)). The bankruptcy court in *Morabito* followed the *Yellowstone Mountain Club* test:

> 1. A demand has been made upon the statutorily authorized party to take action;
> 2. The demand is declined;
> 3. A colorable claim that would benefit the estate if successful exists, based on a cost-benefit analysis performed by the court; and
> 4. The inaction is an abuse of discretion ("unjustified") in light of the debtor-in-possession's duties in a Chapter 11 case."

2017 Bankr. LEXIS 4393 at *18-19 (citing *In re Yellowstone Mountain Club*, 2009 Bankr. LEXIS 4443 at *6).

For purposes of this Objection only, the District assumes that the Committee's assertion that it asked the Trustee to pursue an action against the District is true. Clearly, the Trustee has not pursued such an action and has exercised his judgment

**OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S MOTION FOR AUTHORIZATION TO FILE ADVERSARY PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE BENEFIT OF THE BANKRUPTCY ESTATE**- 14

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201
PHONE (509) 455-6000
FAX (509) 838-0007

in making that determination. *CITE to Trustee's declaration and brief from January*

1. <u>The Committee Has Not Presented a Colorable Claim</u>.

If the first two elements of the *Yellowstone Mountain Club* test are met, then the Court must consider whether the Committee has set forth a colorable claim. In making its determination, the Court may evaluate the proposed claim "through the lens of Civil Rule 12(b)(6): a claim that could not even withstand a motion to dismiss is one example of a claim that is not colorable." *Morabito*, 2017 Bankr. LEXIS 4393 at *20. In that case, the 9th Circuit BAP quoted from *Ashcroft v. Iqbal* in which the United States Supreme Court set forth the standard for a complaint to survive a motion to dismiss:

> . . . a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Morabito*, 2017 Bankr. LEXIS 4393 at *20 (quoting *Ashcroft*, 556 U.S. at 678 (2009)).

The court is to determine plausibility using "its experience and judgment to predict the possible outcome of the claim." *Morabito*, 2017 Bankr. LEXIS 4393 at *20 (citing *Ashcroft*, 556 U.S. at 679). The Court need not accept the truth of "unreasonable inferences or conclusory legal allegations cast in the form of factual

**OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S MOTION FOR AUTHORIZATION TO FILE ADVERSARY PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE BENEFIT OF THE BANKRUPTCY ESTATE**- 15

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201
PHONE (509) 455-6000
FAX (509) 838-0007

allegations." *Morabito*, 2017 Bankr. LEXIS 4393 at *21 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In this case, the Committee has failed to submit evidence supporting its proposed claim against the District. Despite having allegedly spent nearly $15,000 investigating this matter, the Committee submits only the Agreement with the District, the Lease between Giga Watt and the Port, and a single invoice. Without having requested any information from the District or having submitted any factual affidavits or declarations, the Committee misconstrues the arrangement between all parties for the infrastructure and services at the Pangborn site in its attempt to create a cause of action.

As discussed above, the District's termination notice was given under the one-year bilateral termination clause. The Committee, however, focuses on the August 29, 2018 invoice for $310,329, and alleges that the District needed to bill the Port before it could bill Giga Watt. That allegation is not supported by any facts regarding the relationship of the District, the Port, and Giga Watt. As described in the Declaration of Lisa Parks, the Port was never obligated for any of the costs or expenses related to electric infrastructure or the substation at the Pangborn site. (Parks Decl. at ¶¶6-7, 9.) While the Agreement stated that the Port was "expected"

OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S
MOTION FOR AUTHORIZATION TO FILE ADVERSARY
PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE
BENEFIT OF THE BANKRUPTCY ESTATE- 16

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201
PHONE (509) 455-6000
FAX (509) 838-0007

to pay for some costs, Giga Watt entered into a different arrangement with the Port when it leased the Pangborn site. (Parks Decl. at ¶5.)

There is no colorable claim against the District, and the Trustee properly reached the conclusion that there was no colorable claim against the District. The Committee's Motion should be denied for failing to state a colorable claim.

2. <u>Pursuit of a Claim Against the District Will Not Benefit the Estate</u>.

If the Court finds that there is a colorable claim, it must then analyze the cost/benefit to the estate of pursuing the claim. ***CITE*** In assessing the cost/benefit to the estate, the Court must weigh "the probability of success and financial recovery . . ." *Official Committee of Unsecured Creditors v. Sabine Oil & Gas Corp.*, 562 B.R. 211, 216 (S.D.N.Y. 2016) (citing *In re Am.'s Hobby Ctr.*, 223 B.R. 275, 282 (Bankr. S.D.N.Y. 1998) (quoting *In re STN Enterprises*, 779 F.2d 901, 905 (2d Cir. 1985))). The determination as to the likelihood that a proposed claim will benefit the estate is within the Court's discretion. *Sabine Oil*, 562 B.R. at 216-17. The Court must find a sufficient likelihood of success to "justify the anticipated delay and expense to the bankruptcy estate that the initiation and continuation of litigation will likely produce." *In re STN*, 779 F.2d at 906.

The Committee has provided nothing to the Court to allow the Court to conduct the required cost/benefit analysis. The Committees' estimated damages of "in

**OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S MOTION FOR AUTHORIZATION TO FILE ADVERSARY PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE BENEFIT OF THE BANKRUPTCY ESTATE**- 17

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201
PHONE (509) 455-6000
FAX (509) 838-0007

excess of five million dollars" appear to be based in large part on an assertion that the Agreement had a fifty (50) year term. As discussed above, and as shown on the face of the Agreement, that assertion is incorrect. (Ivory Decl., Ex. A.) The Agreement had no fixed term and provided two different methods of termination. Termination on twelve (12) months' notice was a bilateral provision available to both parties. No reason was required for termination on twelve (12) months' notice, which is the basis upon which the District terminated the Agreement. Thus, using a calculation of fifty (50) years for damages is wholly invalid.

The Committee also discusses "below world-prices" for the electricity supply for the Pangborn site, purportedly to support its allegation that the Agreement has a value in excess of $5 million. *Motion* [ECF No. 533 at p10]. The Committee, however, provides no explanation, analysis or support for how it arrived at such a figure. The Agreement clearly states that electric rates can be changed at any time. (Ivory Decl., Ex. A at Ex. A.) Using the rate schedule in place at the time of the Agreement to calculate alleged damages is not supported by the Agreement.

Current market data indicates that no such value, as alleged by the Committee, exists. In fact, the Trustee's Monthly Report indicates that profitability is significantly tied to non-power rate factors, such as cryptocurrency prices, mining difficulty changes, and the type of equipment used. *Chapter 11*

OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S
MOTION FOR AUTHORIZATION TO FILE ADVERSARY
PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE
BENEFIT OF THE BANKRUPTCY ESTATE- 18

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201
PHONE (509) 455-6000
FAX (509) 838-0007

*Trustee's Monthly Financial Report for March 2020* [ECF No. 554].    Even with so-called "below world-prices" cryptocurrency mining at Giga Watt's operations at the TNT site powered at District rates is not currently profitable.    In addition to the 29% decrease in bitcoin prices in March 2020, the Trustee reported:

> With the Bitcoin reward halving in mid-May, April will be the last full month that the S9s can mine at TNT before they will be switched off later in May.

*Trustee's Monthly Financial Report for March 2020* [ECF No. 554 at p15].

Clearly, the Trustee has demonstrated that other factors beyond power prices impact mining profitability.

   Aside from power prices alone, the Agreement further required Giga Watt to build a substation before it could get access to the power at the Pangborn site to begin mining operations.  There is no indication that the Committee has taken into account the costs of installation of the substation and related infrastructure to serve the Pangborn site or the time necessary to complete the substation.  The District recently completed construction of a 30 megawatt substation known as the Lone Pine substation, similar in size to what Giga Watt would have needed to construct to operate at the Pangborn site.  The Lone Pine substation took more than 4 years and approximately $3.5 million to build.  (Baker Decl. at ¶16.)  Even if Giga Watt had the financial resources and means to complete the substation, anything near

**OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S MOTION FOR AUTHORIZATION TO FILE ADVERSARY PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE BENEFIT OF THE BANKRUPTCY ESTATE**- 19

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA  99201
PHONE (509) 455-6000
FAX (509) 838-0007

these costs and time frames would have resulted in the Pangborn site being non-operable for some time.  As such, with the changes in cryptocurrency prices and other market data and information disclosed by the Trustee, there is simply no factual basis to support the allegation that the Agreement has any value at the Pangborn site, regardless of power rates.

The Committee's allegation also fails on a pure rate analysis. On January 27, 2020 following an eight-month process, the District's commission passed a resolution that will increase the District's cryptocurrency rates by 10% beginning on July 1, 2020, and an additional 10% every six months over the next five years. (Ivory Decl. at ¶ 12 and Ex. E.)  The plan to increase rates over the next five years on block chain and crypto currency miners is intended to address the additional risks that high intensive and large volume power users mining cryptocurrency create for the District. (Ivory Decl. at 13.)   The increased power costs must be taken into account in assessing any value that might be attributable to the Agreement.

There is no right to a low power rate. This issue has been litigated in neighboring Grant County, where numerous cryptocurrency miners sought to challenge Grant County PUD's 2018 rate increases on cryptocurrency miners.  In that case, this Court confirmed that a PUD power rate is not a protected property

**OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S MOTION FOR AUTHORIZATION TO FILE ADVERSARY PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE BENEFIT OF THE BANKRUPTCY ESTATE**- 20

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA  99201
PHONE (509) 455-6000
FAX (509) 838-0007

18-03197-FPC7    Doc 560    Filed 04/27/20    Entered 04/27/20 10:35:26    Pg 20 of 24

interest. *See Blocktree Properties, LLC v. Pub. Util. Dist. No. 2 of Grant Cty. Wash.*, WL 1217309 at 12-13, (Case No. 2:18-CV-390-RMP, E.D. Wash. March 12, 2020) (order granting, in part, Grant PUD's motion for summary judgment). (Declaration of Kathryn R. McKinley, Ex. A.) While this issue was addressed in the due process context, it renders hollow the Committee's argument that Giga Watt was somehow entitled to "below world-prices" for the electricity, especially where, as here, the power rates in the Agreement were subject to change at any time. (Ivory Decl., Ex. A at Ex A).

Further, Giga Watt's lack of a contract for service from the District does not mean it cannot access power. The Agreement makes this clear. Section 4 of the Agreement states:

> Customer shall have the right to acquire power and associated energy from any other source; provided that should the Customer purchase power from someone other than the District, Customer shall take delivery pursuant to the District's Rate Schedule 4, Energy Delivery Service, or its successor service rate schedule.

(Ivory Decl., Ex. A at §4.)

This provision is consistent with the rights of all customers in Douglas County. (Ivory Decl. at ¶ 11.) Even without a contract in place, Giga Watt could access power. The District's customer service policies allow customers to purchase power on the market and allow customers to "wheel" the power through

**OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S MOTION FOR AUTHORIZATION TO FILE ADVERSARY PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE BENEFIT OF THE BANKRUPTCY ESTATE**- 21

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201
PHONE (509) 455-6000
FAX (509) 838-0007

18-03197-FPC7    Doc 560    Filed 04/27/20    Entered 04/27/20 10:35:26    Pg 21 of 24

the District's distribution system to deliver the power to the customer facility and to pay charges under Rate Schedule 4. (Ivory Decl., Ex. A at §4.) Thus, with access to the District's system and no legal rights to locked in power rates, there is no basis for the Committee's unsupported assertion that the Agreement is worth in excess of $5 Million. Such an argument is not supported legally or factually.

Finally, it is unknown whether the costs of litigation are considered in the Committee's alleged damages. While the Committee states that it has counsel to pursue an adversary action on a contingent basis, there will undoubtedly be significant costs related to depositions, discovery, travel, expert witnesses, and the like. Additionally, the Agreement provides for attorney fees and costs to the substantially prevailing party. The District is confident that it will be the prevailing party, in which case it will seek to recover its costs and fees incurred defending any action.

After weighing the time involved, the probability of success, and the lack of benefit to the estate, it is clear that pursuing a claim against the District is unlikely to benefit the estate, a conclusion the Trustee correctly reached in his business judgment, and within his discretion, some time ago.

**OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S MOTION FOR AUTHORIZATION TO FILE ADVERSARY PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE BENEFIT OF THE BANKRUPTCY ESTATE**- 22

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201
PHONE (509) 455-6000
FAX (509) 838-0007

3. <u>The Trustee Did Not Abuse His Discretion in Refusing to Pursue a Claim Against the District</u>.

The Trustee conducted a thorough investigation of a potential claim against the District based on termination of the Agreement in 2019, and informed the Court of that fact during a hearing on August 29, 2019. (Declaration of Kathryn R. McKinley at ¶ 5.) The Trustee's investigation included requesting and receiving information from the District and meeting with District personnel to discuss the prepetition termination of the Agreement, and analyzing the applicable law. (McKinley Decl. at ¶¶ 3 and 5.) Further, the Trustee's counsel analyzed the termination provisions of the Agreement under applicable Washington law and determined that the District had the right to terminate the Agreement on one year's notice for any reason or no reason. (McKinley Decl. at ¶ .4) As a result, the Trustee determined that pursuit of a claim against the District would not benefit the Estate. (McKinley Decl. at ¶ 5.)

The Chapter 11 Trustee has the exclusive standing to pursue legal claims of the estate. 11 U.S.C. § 323(a); *Morabito*, 2017 LEXIS 4393 at *13.

> It follows that a trustee may simply dismiss a claim if doing so would further the estate's interests. The bankruptcy trustee must determine, in his sound business judgment, what disposition is in the best interests of the estate."

*Morabito*, 2017 LEXIS 4393 at *13-14 (citing *In re Moore*, 110 B.R. 924, 927 (Bankr. C.D. Cal. 1990)).

OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S MOTION FOR AUTHORIZATION TO FILE ADVERSARY PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE BENEFIT OF THE BANKRUPTCY ESTATE- 23

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201
PHONE (509) 455-6000
FAX (509) 838-0007

"The trustee's authority is discretionary." *Id.* (citing *In re Moore*, 110 B.R. at 928). In this case, the Trustee, Mark Waldron, investigated the potential for a claim against the District based on the termination and determined, in his sound business judgment, that pursuing a claim against the District was not in the best interests of the estate. The Committee has failed to present any facts or law that would support overturning the Trustee's business judgment or showing that he abused his discretion.

## IV.    CONCLUSION

The Committee has failed to: 1) present any facts or law that would support a colorable claim against the District that would benefit the estate; 2) present facts that would allow the Court to conduct a cost/benefit analysis; 3) present support for its position that the Trustee abused his discretion in not pursuing a claim against the District. The facts presented by the District, supported by declarations and law, are sufficient to prevail on a CR 12(b)(6) motion.   The District respectfully requests that the Court deny the Committee's Motion.

DATED this 27th day of April, 2020.

PAINE HAMBLEN LLP

*/s/ Kathryn R. McKinley*
Kathryn R McKinley, WSBA #25105
Attorneys for Public Utility District No. 1
of Douglas County, Washington

**OBJECTION OF DOUGLAS COUNTY PUD TO COMMITTEE'S MOTION FOR AUTHORIZATION TO FILE ADVERSARY PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE BENEFIT OF THE BANKRUPTCY ESTATE**- 24

*PAINE HAMBLEN LLP*
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA  99201
PHONE (509) 455-6000
FAX (509) 838-0007

18-03197-FPC7    Doc 560    Filed 04/27/20    Entered 04/27/20 10:35:26    Pg 24 of 24