Benjamin Ellison, WSBA No. 48315
SALISH SEA LEGAL PLLC
2212 Queen Anne Ave. N., No. 719
Seattle, WA 98109
Tel: (206) 257-9547
Attorney for the Committee

BANKRUPTCY COURT FOR THE

EASTERN DISTRICT OF WASHINGTON AT SPOKANE

| | |
|---|---|
| In re Giga Watt, Inc., <br><br> Debtor. | COMMITTEE'S REPLY IN SUPPORT OF MOTION FOR AUTHORIZATION TO FILE ADVERSARY PROCEEDING AGAINST DOUGLAS COUNTY PUD FOR THE BENEFIT OF THE BANKRUPTCY ESTATE <br><br> CASE NO: 18-03197 FPC 11 |

Three points are presented by the Committee in further reply in support of the Motion to authorize it to pursue litigation on behalf of the bankruptcy estate against Douglas County Public Utility District.

*First*, the PUD Contract sought to be recovered has real and considerable value, and that is the reason everyone is fighting over it. Despite the implication to the contrary in ECF No. 560, Douglas County PUD cannot arbitrarily increase rates, thereby devaluing the asset. Indeed, utility prices can only be set to "cover *actual costs* to be incurred by the PUD" in providing service, *Wash.*

COMMITTEE REPLY IN SUPPORT OF MOTION FOR LEAVE TO
PURSUE INVESTIGATION - 1

*Manufactured Hous. Ass'n v. PUD No. 3 of Mason Cnty.*, 124 Wn. 2d 381, 386 (Wash. 1994) (emphasis added), and it must "establish its rates at the lowest possible point." *Carstens v. PUD No. 1 of Lincoln Cnty.*, 8 Wn. 2d 136, 151 (Wash. 1941). Because Douglas County's rates are already among the lowest in the world, the contract is likely to retain significant long-term value for any customer with the need for a large quantity of inexpensive electricity. There is no reason that the contract could not be sold to an ordinary data center or an entity operating in some other energy-intensive industry.[1]

*Second*, only a minimal threshold showing needs to be made out to establish that a colorable claim may be asserted by the bankruptcy estate. *Morabito v. JH Inc.,* 2017 Bankr. LEXIS 4393 at *20 (9th Cir. BAP 2017)(must survive a FRCP 12(b)(6) motion). The PUD argued vociferously in its Opposition to the Motion, ECF No. 560 (*24-page opposition, 5 supporting declarations, and 12 further-supporting declarations thereto*), that no reasonable

---

[1] Douglas's arguments about its cryptocurrency rate hikes are likewise without merit. First, nothing in the contract requires that the 30 MW of power Douglas is obligated to provide must be used by a customer in the crypto-currency industry. Second, the recent decision from the Eastern District of Washington relied on by Douglas County does not resolve the validity of this County's cryptocurrency-specific rate. Indeed, that decision is already under appeal. In any event, it leaves unresolved all of the state-law challenges to the cryptocurrency rate imposed by Grant County PUD.

person could view there being a potentially meritorious claim here. However, much of the hundreds of pages of responsive pleadings can be ignored, because the legal issue on "*colorable claim*" comes down to a solitary issue: whether termination was properly invoked under Section 20 of the PUD Contract, or whether Douglas County should have proceeded under Section 6. The Committee's argument is the familiar cannon of statutory/contractual interpretation that the specific prevails over the general.

Douglas County does not dispute this cannon of interpretation. Instead, distilled down to its essence, the PUD argues two things: Section 6 only comes into play if there is a "Major Cost" infrastructure obligation that the Port Authority needs to pay, not if there is such an obligation that Giga Watt needed to pay.[2] The PUD also parses the language of its October 2018 Termination Letter finely, and argues that even if there are termination grounds under Section 6 set forth, there are also additional termination grounds set forth under Section 20, and

---

[2] The PUD Contract provides, in relevant part: "*Certain Major Costs typically required to be paid by the Customer pursuant to the District's electrical line extension policies, are expected to be paid by the Port of Douglas County ("Port") through an Interlocal Agreement between the District and the Port. In the event that the Port does not make all payments required under the terms of the District's interlocal agreement with the Port, the Customer agrees to pay such Major Costs to the District within 180 days of the District's invoice.*"

COMMITTEE REPLY IN SUPPORT OF MOTION FOR LEAVE TO
PURSUE INVESTIGATION  - 3

18-03197-FPC7    Doc 572    Filed 05/01/20    Entered 05/01/20 04:11:56    Pg 3 of 9

so, there is no 180-day waiting period required for payment before the parties' contractual obligation can be terminated.

If the applicable standard is the liberal one under Rule 12(b)(6), then both of Douglas County's arguments should be rejected. If the Court finds any ambiguity at all, it must defer for the purposes of the present motion – as it would on any motion to dismiss under FRCP 12(b) – to the legal theory posited by the Committee. Here, there is more than sufficient basis to believe that Section 6 takes precedence over Section 20, thereby requiring Douglas PUD to first forward the invoices to the Port Authority, and, if they remain unpaid, present them to Giga Watt to satisfy within 180 days.

Regardless of the fact the Port Authority may have contractually shifted this payment obligation onto Giga Watt exclusively two days after the PUD Contract was executed,[3] the plain language of Section 6 provides that the Debtor had 180 days to tender payment to Douglas County PUD. Because the 180 days had not expired by the time of the bankruptcy filing, the Douglas County PUD's attempt to terminate the contract is stayed.

---

[3] As the Court will see from pp. 3 and 7 of the Douglas County Opposition, ECF No. 560, the Debtor's agreement with Douglas County was on March 7, 2017, and the Debtor's agreement with the Port Authority was 48 hours later.

Indeed, the fact the Port Authority and Giga Watt may have come to a different deal in their subsequent lease arrangement, does not modify the 180-day protections in the PUD Contract, because changes to the PUD Contract would require the signed assent of both Douglas County PUD and Giga Watt, and Douglas County PUD never assented to this supposed change, it is trying to benefit from the lease as an unintended third-party beneficiary. Section 18.3, ECF No. 564-1, at p. 11 (changes to PUD Contract require written agreement by both parties to the PUD Contract). Port Authority Lease, ECF No. 561-1 at p. 11, Section 24(c)(rights limited to the parties and their successors).

Concerning the bases for termination, it is a distorted reading of the October 12, 2018 Termination Letter (ECF No. 564-4) to say that the "*driving force*" and "*major impetus*" and "*clearly expressed concern*" for the letter was Giga Watt's generic financial instability. Douglas County Opposition, ECF No. 560 at p. 11; Ivory Declaration, ECF No. 564, at ¶ 9. Rather, the only specified and detailed basis mentioned for termination is the $310,329 of Major Costs that were not paid.

While Giga Watt's financial status certainly is mentioned obliquely, that rationale is buried at the very end of the letter. And, at that point, because Giga Watt had not commenced operations, the PUD was not providing it significant

amounts of power, so Giga Watt's continuing financial status was of concern only with respect to the payment of the $310,329.

Mr. Ivory's rationale for why the other throw-away bases were the *primary* basis for the Termination Letter is circular. *Id*. It is true that Douglas County omitted citing Section 6 in the letter, but that is not persuasive evidence as to the PUD's *intent* in deciding to terminate, but rather shows the speed with which the PUD evidently wanted to sever the relationship with the Debtor.

If the Termination Letter had been drafted properly – in light of the position now taken by Douglas County PUD – it should have properly cited both Sections 6 and 20. But the Court should not allow these amorphous bases for termination to be used to nullify the 180-day waiting period that was contractually agreed to between the Parties for paying Major Cost invoices. To do otherwise would render the PUD Contract nugatory in part, and undo the protections for a party in Giga Watt's place from potentially-capricious decision-making by Douglas County to leave their electricity user high and dry.

*Third*, the Chapter 11 Trustee and the United States Trustee make a series of non-substantive objections. ECF No. 568, 570. The Committee concedes that another week is required for responses, and the Committee will delay scheduling any hearing until a further week has passed, during which time any party in

COMMITTEE REPLY IN SUPPORT OF MOTION FOR LEAVE TO
PURSUE INVESTIGATION - 6

interest can contribute further responses, including to the specifics raised in this Reply.

That said, timing and ensuring every single creditor receives notice of the pending Motion should not be an issue, because this is not a debate between any party other than the Committee and the Chapter 11 Trustee, and Mr. Waldron has provided his response without formal objection to needing more time. Indeed, what more is there to say for the Chapter 11 Trustee? He has looked at the issue from every possible angle, he is yet to be convinced.

Nor do the 300+ proof of claim filers have anything to add here, nor do they need to be individually mailed the motion as the UST contends (ECF No. 568 at p. 3). What are they going to say on the topic of whether to bring contingent fee litigation claims or not bring contingent fee claims – presumably everyone would be in favor of additional potential recovery.

Finally, the Committee respectfully disagrees with the United States Trustee's suggestion that the issue of right to prosecute this claim should be resolved through a plan provision, together with follow-up confirmation process. If the Chapter 11 Trustee and the Committee both wanted to bring litigation against the Douglas County PUD, but do so in different ways, under different theories, there might be some basis to requiring a vote by all the creditors on the

correct path.  *Here, however, only the Committee apparently wants to move forward with litigation.*  Nor is there any cost issue – the subsequent litigation is to be done, if at all, on a contingent fee basis.[4]

Let's remember the colloquoys from the last hearing on this subject back on January 23, 2020.  The concern when the Committee was authorized to go out and hire special counsel to examine this litigation possibility was that we would spend too much money, and the Court, the United States Trustee, and the Chapter 11 Trustee all telegraphed none-too-veiled warnings that there was no assurance that the upper limit of fees authorized ($25,000) would be ever allowed, never mind repaid if the Committee wanted to go down this path.

Having taken the risk but heeded this warning, and now presenting the required showing to obtain authorization to initiate litigation on maybe half that budget, it is inappropriate for any party to suggest that the goal post be moved, and require multiple additional litigation steps (confirming a Chapter 11 plan) that

---

[4] For this reason, the Committee does not understand the US Trustee's comment, pp. 3-4, concerning this notion of ensuring a plan referendum can be held on cost, or the comments from Mr. Waldron (p.5) that rely on the same misapprehension. Here, no proceeds or "limited estate resources" from the Chapter 11 bankruptcy estate are being used to fund future litigation against Douglas County.  Said litigation will occur on a contingent fee basis.

COMMITTEE REPLY IN SUPPORT OF MOTION FOR LEAVE TO
PURSUE INVESTIGATION  - 8

will easily require the Committee to burst through the prior guideline amount proposed for this particular litigation investigation.

Requiring excess procedure when financial resources are in scarce supply can have the same effect as rendering a substantial denial of the relief requested. If the Court sees there *could* be merit on these litigation claims, it should authorize the Committee now to move forward with its contingent fee counsel to secure a recover for the creditors of this estate.

DATED this 1st day of May, 2020.

SALISH SEA LEGAL PLLC

By /s/ Ben Ellison
Benjamin Ellison, WSBA No. 48315
2212 Queen Anne Ave. N., No. 719
Seattle, WA 98109
Tel: (206) 257-9547
*Attorney for the Committee*