Pamela M. Egan, WSBA No. 54736 (*pro hac vice*)
POTOMAC LAW GROUP PLLC
1905 7th Ave. W
Seattle, WA 98119
Telephone: (415) 297-0132
Email: pegan@potomaclaw.com

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GIGA WATT, Inc., a Washington corporation,<br><br>Debtor. | Case No. 18-03197 FPC 11<br><br>The Honorable Frederick P. Corbit<br><br>Chapter 11<br><br>**MEMORANDUM IN SUPPORT OF CHAPTER 11 TRUSTEE'S MOTION FOR ORDER APPROVING: (I) SALE OF TNT FACILITY AND TRAILER EQUIPMENT, SUBJECT TO OVERBIDDING, APPROVING NOTICE THEREON; (II) ASSUMPTION AND ASSIGNMENT OF LEASES AND CONTRACT; AND (III) SHORTENED NOTICE THEREON**<br><br>**<u>Telephonic Hearing</u>**<br>Date:      May 13, 2020<br>Time:      1:30 p.m. PT<br>Telephone: 877-402-9753<br>Access Code: 3001392 |

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving: (i) Sale of TNT Facility, etc.

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................1

II.   RELIEF REQUESTED ......................................................3

III.  JURISDICTION AND VENUE...........................................4

IV.  FACTUAL BACKGROUND .............................................4

V.   THE BUYER AND THE ASSETS TO BE SOLD.......................7

    A.   Leases, Power Contract, Crypto...........................................7

    B.   The TNT Equipment ...........................................................8

    C.   Trailer Equipment .............................................................8

    D.   Excluded Assets: The Gib Equipment .................................9

          *1.  Excluded TNT Equipment* .................................*9*

          *2.  Excluded Trailer Equipment* ....................................*10*

    E.   The Power Deposit.........................................................10

VI.  POINTS AND AUTHORITIES ..................................................10

    A.   The Sale Is Authorized Pursuant to 11 U.S.C. § 363(b)(1) .............10

          *1.  The TNT Facility and Trailer Equipment Are Property of the Estate.*.................................................*11*

          *2.  Sound Business Judgment Supports the Sale* .............................*11*

    B.   The Overbid Procedures and Break-Up Fee Are in the Best Interests of the Estate.......................................................................13

    C.   The Motion Satisfies the Elements of 11 U.S.C. § 363(f)...............13

|   |    |    |    |
|---|----|----|----|
| 1 | D. | The Assumption and Assignment of the TNT Leases, the Power | |
| 2 |    | Contract and the Trailer Oral Lease Is Appropriate ......................... 16 | |
| 3 | E. | The Sale Is in Good Faith ................................................................. 17 | |
| 4 |    | 1. *Buyer's Requested Findings Regarding Good Faith*................ *18* | |
| 5 | F. | Cause Exists for Shortened Notice...................................................... 19 | |
| 6 | G. | The Form and Manner of Service of Notice Is Sufficient ................ 20 | |
| 7 | VII. | CONCLUSION .......................................................................... 20 | |

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving: (i) Sale of TNT Facility, etc. - Page ii

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Balestra v. Giga Watt, Inc.*, 2018 WL 8244006, at *1 (E.D. Wash.
June 28, 2018) ............................................................................ 15

*Ewell v. Diebert (In re Ewell),* 958 F.2d 276, 281 (9th Cir. 1992) ..................... 17

*In re Am. W. Airlines, Inc.*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) ............... 13

*In re Catapult Entm't, Inc.*, 165 F.3d 747 (9th Cir. 1999) .................................... 16

*In re Claar Cellars LLC and RC Farms LLC*, 2020 WL 1238924, at
*4 (Bankr. E.D. Wash. Mar. 13, 2020) ....................................................... 11

*In re Equity Funding Corp. of Am.*, 519 F.2d 1274, 1277 (9th Cir.
1975) ........................................................................................................... 11

*In re Ernst Home Ctr., Inc.,* 209 B.R. 974, 979 (Bankr. W.D. Wash.
1997) ..................................................................................................... 10, 11

*In re Filtercorp, Inc.,* 163 F.3d 570, 576 (9th Cir. 1998) ................................... 17

*In re Lady H Coal Co., Inc.,* 193 B.R. 233, 247–48 (Bankr. S.D. W.
Va. 1996) ................................................................................................... 16

*In re Lind,* 2019 WL 2950167, at *4 (B.A.P. 9th Cir. July 8, 2019) .................... 17

*In re Lionel Corp.*, 722 F.2d 1063, 1070 (2nd Cir. 1983) ................................... 11

*In re Onouli-Kona Land Co.*, 846 F.2d 1170, 1174 (9th Cir. 1988) .................... 17

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652,
1658, 203 L. Ed. 2d 876 (2019) ................................................................ 11

## <u>Statutes</u>

11 U.S.C. § 105 .................................................................................................... 4

11 U.S.C. § 363 .............................................................. 3, 4, 10, 14, 16, 17

11 U.S.C. § 365 .............................................................................. 3, 4, 16

11 U.S.C. § 510 .................................................................................................. 15

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving: (i)
Sale of TNT Facility, etc. - Page iii

28 U.S.C. § 154 ...................................................................................4

28 U.S.C. § 157 ...................................................................................4

28 U.S.C. § 1334 .................................................................................4

28 U.S.C. § 1408 .................................................................................4

28 U.S.C. § 1409 .................................................................................4

**<u>Rules</u>**

Fed.R.Bank.P. 2002 ........................................................................ 4, 20

Fed.R.Bank.P. 6004 ............................................................. 3, 4, 17, 18

Fed.R.Bank.P. 6006 ..................................................................... 4, 18

Fed.R.Bank.P. 9006 ..................................................................... 4, 19

Fed.R.Bank.P. 9014 ........................................................................4

L.B.R. 2002-1 ........................................................................ 4, 19, 20

L.B.R. 6004-1 ..................................................................................4

L.B.R. 6006-1 ..................................................................................4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving: (i) Sale of TNT Facility, etc. - Page iv

Mark D. Waldron, in his official capacity as the Chapter 11 Trustee (the "**Trustee**"), hereby respectfully submits this memorandum in support of the *Chapter 11 Trustee's Motion for Order Approving: (i) the Sale of the TNT Facility and Trailer Equipment Free and Clear of all Liens, Claims and Interests, Subject to Overbidding, Approval of Notice Thereof, (ii) the Assumption and Assignment of Leases and Power Contract, and (ii) Shortened Notice Thereon* (the "**Motion**").

## I.    INTRODUCTION

Subject to Court approval, the Trustee has negotiated an agreement (the "**Agreement**")[1] with EcoChain, Inc. ("**EcoChain**" or "**Buyer**"), a Delaware limited liability company, to sell ("**Sale**") (i) the Debtor's crypto-mining facility located at 474 Highline Avenue, East Wenatchee Washington ("**TNT Facility**"). The Sale includes equipment at the TNT Facility ("**TNT Equipment**") and (ii) a set of power distribution units, power supply units and related electrical equipment ("**Trailer Equipment**") that the Trustee is currently storing in leased trailers ("**Trailers**") at the estate's other facility in Moses Lake, Washington.

Pursuant to the Agreement, the Trustee has further agreed, subject to this Court's approval, to assume and assign to Buyer the four leases ("**TNT Leases**") relating to the TNT Facility and to also assume and assign the power contract ("**Power Contract**") relating to the TNT Facility. Further, the Trustee will assign and the Buyer will assume all obligations under an oral lease for the Trailers that the Trustee entered into post-petition in the ordinary course (the "**Trailer Oral**

---

[1] A copy of the Agreement is attached to the Motion as **Exhibit** B.

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving: (i) Sale of TNT Facility, etc. - Page 1

**Lease**"). All counter-parties consent to the assumption and assignment. Specifically, the TNT Facility lessors (the "**TNT Landlords**"), the Public Utility District No. 1, Douglas County, Washington (the "**District**"), and the owner of the Trailers have consented to the assignment of their respective agreements pursuant to the Sale. The District has agreed to the assignment of the Power Contract, subject to its standard rules and policies.

The consideration is a cash payment of $200,000 due at Closing. The Buyer has already placed a $20,000 earnest money deposit with the Trustee, which will be applied to the purchase price if the Sale is approved or returned to the Buyer if the Sale does not close. The balance is due on closing. Shortly after closing, the estate will receive the $98,925 power deposit ("**Power Deposit**") that the Trustee had placed with the District in order to resume operations at the TNT Facility.

One should also weigh the consideration transferred to the estate pursuant to the TNT Litigation Settlement. Those proceeds relate directly to the Trustee's efforts to monetize the Debtor's interest in the TNT Facility. The condominium received from the TNT Litigation Settlement is currently listed for $385,000.

Shortened notice is necessary and appropriate. On May 12, 2020, Bitcoin rewards will be "halved." It requires new, more advanced miners, which the estate cannot afford to purchase. The Trustee has also received a Notice of Renewal from the estate's liability insurer. The TNT Leases require liability insurance. The insurance will expire on May 22, 2020. Further, electricity rates have increased significantly this year and the Corona Virus Pandemic has rattled the already jittery market for cryptocurrency.

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving: (i) Sale of TNT Facility, etc. - Page 2

The Trustee has marketed the TNT Facility since obtaining control of the TNT Facility in late summer 2019. The Trustee has spoken with numerous interested parties, none of whom have made an offer. By the same token, the Sale provides for over-bidding in the event that a third party wishes to create an auction.

Therefore, the Sale is a proper exercise of the Trustee's business judgment.

## II.    RELIEF REQUESTED

The Trustee requests that the Court:

1.     approve the Agreement;

2.     approve the Sale free and clear of any liens, claims or interests pursuant to 11 U.S.C. § 363(f)(4) and 11 U.S.C. § 363(f)(5) of the Bankruptcy Code;

3.     approve the bidding procedures (the "**Bidding Procedures**") and break-up fee ("**Break-Up Fee**") provided by the Agreement pursuant to which qualified third parties may bid in a first increment of $50,000 above the Purchase Price and in subsequent increments of $5,000 with a Break-Up Fee to Buyer in the greater of $40,000 or ten percent (10%) of the final purchase price, if Buyer does not win the overbidding;

4.     find that the sale is in good faith and waive the 14-day stay provided by Fed.R.Bank.P. 6004(h);

5.     approve the assumption by the Trustee and assignment to Buyer of the TNT Leases and the Power Contract pursuant to 11 U.S.C. § 365;

6.     approve the assignment to Buyer of the Trailer Oral Leases;

7.    find that the assumption and assignment of the TNT Leases, the Trailer Oral Lease and the Power Contract are in good faith and waive the 14-day stay provided by Fed.R.Bank.P. 6006(d); and

8.    grant shortened notice and approve the Notice as sufficient.

### III.    JURISDICTION AND VENUE

The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 154(b)(2). Venue is proper in this district pursuant to 28 U.S.C. § 1408 and 28 U.S.C. § 1409.

The statutory predicates for the relief requested in the Motion are 11 U.S.C. § 105, 11 U.S.C. § 363, 11 U.S.C. § 365, Fed.R.Bank.P. 2002, Fed.R.Bank.P. 6004, Fed.R.Bank.P. 6006, Fed.R.Bank.P. 9006, Fed.R.Bank.P. 9014, and L.B.R. 2002-1, L.B.R. 6004-1 and L.B.R. 6006-1.

### IV.    FACTUAL BACKGROUND

On May 14, 2018, Giga Watt, Inc. and the District entered into the *Interconnection and Service Agreement* ("**TNT Power Contract**") pursuant to which the District agreed to provide up to 3.3 megawatts of power to the TNT Facility. The TNT Facility currently consumes about 1.8 megawatts of power.

On November 19, 2018, Giga Watt, Inc. commenced this case by filing a voluntary petition for relief pursuant to sections 101, *et seq.* of title 11 of the United States Code ("**Bankruptcy Code**").

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving: (i) Sale of TNT Facility, etc. - Page 4

On January 23, 2019, the Court approved the appointment of Mark D. Waldron as the Trustee pursuant to its *Order Approving Appointment of Chapter 11 Trustee.* [Doc. No. 146]

On April 22, 2019, the Trustee commenced an adversary proceeding (the "**TNT Litigation**") regarding ownership of the TNT Facility. [Adv. Proc. No. 19-80012 Doc. No. 1]  On June 5, 2019, the Court entered a preliminary injunction in the TNT Litigation granting management and control of the TNT Facility to the Trustee.  [Adv. Proc. No. 19-80012, Doc No. 70]

On August 29, 2019, the Court signed an Order permitting the Trustee to re-open the TNT Facility. [Docket No. 365]

On September 30, 2019, the Court approved on a final basis the post-petition borrowing of $200,000 with unsecured, super-priority status. As of May 1, 2020, the estate owes $55,151.41 on this loan. The Trustee used $98,925 of the loan proceeds to fund the Power Deposit. The Trustee will receive the Power Deposit after the Sale closes. The Buyer will place its own deposit with the District pursuant to the Sale.

On March 10, 2020, the Court signed the Order approving the settlement ("**TNT Settlement**") of the TNT Litigation. [Docket No. 508] Pursuant to the TNT Settlement, the Debtor's former Chief Executive Officer and related affiliates relinquished all right, claim and interest in the TNT Facility, including in the TNT Leases, and transferred any such interest to the Trustee for the benefit of the estate. Pursuant to the TNT Settlement, one of the affiliates also transferred to the estate a condominium, which the Trustee has listed for $385,000.

Pursuant to the TNT Settlement, the landlords of the TNT Facility (the "**TNT Landlords**") agreed to the assignment of the TNT Leases to the Trustee and agreed that July 10, 2020 would be the Trustee's deadline to assume or reject the TNT Leases.

On April 9, 2020, the Court approved ("**Pangborn Equipment Sale Order**") the sale of certain equipment (the "**Gib Equipment**") to Gib Compute LLC ("**Gib**"). [Docket No. 540]. Certain of the Gib Equipment is located at the TNT Facility. Other Gib Equipment is stored in the Trailers. As set forth more fully below, Gib Equipment located at the TNT Facility and at the Trailers are excluded from the Sale.

On May 12, 2020, bitcoin will "halve," meaning that the number of bitcoin rewards that are released will be reduced by 50% from its previous level. "Halving" requires new, more sophisticated computers or miners. The estate lacks the necessary funds to make this investment. Therefore, the imminent "halving" represents a significant economic hurdle.

The Trustee has received a Notice of Non-Renewal of the general liability insurance that the estate currently carries as required by the TNT Leases. The insurance expires on May 22, 2020.

Starting in June 2020, the District's electricity rates for crypto-mining will increase by 20% annually for the next five years. The increases are imposed semi-annually. Therefore, the rates will increase by ten percent in June 2020.

The TNT Landlords, the owner of the Trailers, and the District have consented to the assignment of the TNT Leases, the Trailer Oral Lease, and the

Power Contract, respectively, subject to Court approval. The District also requires Buyer to comply with its standard procedures and policies.

## V.    THE BUYER AND THE ASSETS TO BE SOLD

The Buyer is in the business of developing utility-scale computing infrastructure for the blockchain, powered by renewal energy. The material terms of the Agreement are set forth in the Motion and are incorporated herein by reference as if set forth fully herein.

### A.    Leases, Power Contract, Crypto

At the TNT Facility, the Debtor operates a crypto-mining facility in four buildings which the estate leases for $11,900 per month pursuant to the TNT Leases. The TNT Leases are listed in Schedule 2.01(b) of the Agreement.  *See* Motion, Exh. B. The Power Contract provides for 3.3 megawatts of power.  The TNT Facility draws approximately 1.9 megawatts of power. The Power Contract is listed in Schedule 2.01(c) of the Agreement. *See* Motion, Exh. B.

Crypto-mining is a process by which shoe-box size computers, called miners, confirm that a recorded transaction on the blockchain is accurate. After the transaction is confirmed, that "block" (record of the transaction) is added to the chain and a reward in the form of Bitcoin is released. For example, if John records that Jane gave him 5 Bitcoin (or other cryptocurrency) on April 30, 2020, his recorded transaction will be identified by a number, known as a "hash." Jane's record of giving John 5 Bitcoin will also be identified by a number or "hash."

The miner will run John's hash through a hash function. In a hash function, one input can produce one output. If John's hash is run through the hash function

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving: (i) Sale of TNT Facility, etc. - Page 7

1 and produces Jane's hash, then the transaction is confirmed and that block

2 (showing that John received 5 bitcoin from Jane) is added to the chain. Bitcoin

3 interests are then distributed as rewards. At the TNT Facility, the Debtor "mines"

4 for three types of coins: Bitcoin, Ethereum and Lite-Coin.

5    In 2019, the TNT Facility's monthly net profit averaged approximately

6 $13,700, excluding taxes, U.S. Trustee fees and loan repayments. In 2020, the

7 monthly net profit averaged approximately $6,600, excluding taxes, U.S. Trustee

8 fees and loan repayments. The Trustee is not in default under the TNT Leases, the

9 Trailer Oral Lease or the Power Contract.

10    **B.    The TNT Equipment**

11    Pursuant to the Agreement, the Trustee will sell to the Buyer all the

12 equipment located in the TNT Facility ("**TNT Equipment**"), except for any Gib

13 Equipment. The TNT Equipment is listed on Schedule Section 2.01(a) to the

14 Agreement. *See* Motion, Exh. B.

15    **C.    Trailer Equipment**

16    The Trailer Equipment consists of Power Distribution Units and other

17 electrical equipment used in crypto-mining. The Trailer Equipment used to be

18 located at the Debtor's "Rock Island" location. After the Trustee rejected the Rock

19 Island lease, he removed equipment and began storing it in the Trailers. The

20 Trailer Equipment is listed in Schedule Section 2.01(d) to the Agreement. *See*

21 Motion, Exh. B.

22

23

24 Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving: (i)
Sale of TNT Facility, etc. - Page 8

25

## D. Excluded Assets: The Gib Equipment

Some of the Gib Equipment is located in the TNT Facility. Some is located in the Trailers. The Schedules in the Agreement omit the Gib Equipment because they are excluded from the Sale.

In late April 2020, the Chelan Douglas Regional Port Authority (the "**Port**") agreed to extend the deadline by which the Trustee and/or Gib must finish removing equipment before they are deemed abandoned. The deadline has been extended from May 7, 2020 to May 21, 2020. When Gib finishes work at the Port's site, Gib will pick up the two sets of Gib Equipment that are located in the TNT Facility and the Trailers, respectively.

### 1. *Excluded TNT Equipment*

The Gib Equipment located at the TNT Facility (the "**Excluded TNT Equipment**") is listed below:

| EXCLUDED TNT EQUIPMENT | | | |
|---|---|---|---|
| Item(s) Description | Quantity | Notes | Site |
| Raritan PX2-5956XV PDUs [1] | 270 approx. | 60A, 48A (Derated), 380-415V/ 220-240V | TNT [2] |
| Alpha Miner PSUs | 425 | Set aside and stacked. | TNT [2] |

**Notes:**
[1] The PDUs do not have whip tails; they have never been energized; not boxed
[2] TNT = Debtor's TNT Facility, 474 Highline Drive, E. Wenatchee, WA

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving: (i) Sale of TNT Facility, etc. - Page 9

2. ***Excluded Trailer Equipment***

The Gib Equipment located at the Trailers (the "**Excluded Trailer Equipment**") is listed below:

| EXCLUDED TRAILER EQUIPMENT | | | |
|---|---|---|---|
| Item(s) Description | Quantity | Notes | Site |
| Raritan PX2-5956XV PDUs **[1]** | 64 | 60A, 48A (Derated), 380-415V/ 220-240V | ML **[2]** |
| **Notes**: | | | |
| **[1`]** New in box | | | |
| **[2]** Located in Trailer at Moses Lake Facility. | | | |

**E.     The Power Deposit**

The Agreement provides that the Trustee is not assigning the Power Deposit to the Buyer. The Buyer has agreed that it is not receiving any interest in the Power Deposit. The Buyer will place its own deposit with the District. It is expected that the District will release the Power Deposit to the Trustee within a reasonable time after Closing.

**VI.     POINTS AND AUTHORITIES**

**A.     The Sale Is Authorized Pursuant to 11 U.S.C. § 363(b)(1)**

Under section 363(b)(1) of the Bankruptcy Code, the Trustee may use, sell, or lease property of the estate, other than in the ordinary course of its business. 11 U.S.C. § 363. The decision to enter into a transaction that is outside the ordinary course of the debtor's business must be based on the Trustee's reasonable business judgment and supported by "some articulated business justification." *In re Ernst Home Ctr., Inc.,* 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997) (quoting *In re*

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving: (i) Sale of TNT Facility, etc. - Page 10

*Lionel Corp.*, 722 F.2d 1063, 1070 (2nd Cir. 1983)). The standard is deferential. *See In re Claar Cellars LLC and RC Farms LLC*, 2020 WL 1238924, at *4 (Bankr. E.D. Wash. Mar. 13, 2020) (describing the business judgment standard as a 'deferential' standard pursuant to which a 'bankruptcy court will generally approve' a reasoned decision by the debtor.").[2]

### 1. *The TNT Facility and Trailer Equipment Are Property of the Estate.*

The Order approving the TNT Settlement conclusively established the estate's ownership of the TNT Facility, including its equipment, leases, and power contract. The Trailer Equipment is also property of the estate. The Trustee moved the Trailer Equipment from the Debtor's warehouse located in Rock Island, Washington after rejecting that lease.[3]

### 2. *Sound Business Judgment Supports the Sale*

The Trustee has tested the market for the TNT Facility and the Trailer Equipment and has determined that $200,000 is market value. In particular, a crypto-mining company called Hive Technology that is located in Canada, sold for approximately US$95,000 per megawatt, most of which was paid in stock in the new buyer entity. This Sale is consistent with that sale in that the Buyer is

---

[2] Citing and quoting, *In re Equity Funding Corp. of Am.*, 519 F.2d 1274, 1277 (9th Cir. 1975); *Ernst Home Ctr., Inc.*, 209 B.R. at 979-80, and *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1658, 203 L. Ed. 2d 876 (2019).

[3] The Trustee rejected the lease for the warehouse in Rock Island, Washington.

1  paying approximately $100,000 cash per operating megawatt in exchange for the
2  TNT Facility and miscellaneous electrical equipment.

3       In addition to the cash purchase price of $200,000, the estate recovered a
4  condominium pursuant to the TNT Settlement. The Trustee has listed the
5  condominium for $385,000. Pursuant to the Sale, the estate will also recover the
6  Power Deposit in the amount of $98,925.

7       The Trustee is assigning to the Buyer all of the liabilities under the TNT
8  Leases. The TNT Landlords are holding a $202,000 deposit that the Debtor had
9  placed with the TNT Landlords as security for restoring the four leased buildings
10 at the TNT Facility. The cost of restoring those buildings may exceed the amount
11 of this deposit.

12      Further, the TNT Facility has three significant economic hurdles in the
13 present and near future: (1) the Corona Virus Pandemic which has rattled already
14 volatile cryptocurrency markets, (2) the halving in May 2020, and (3) the 10%
15 rate hike in July 2020.

16      The estate will not be able to withstand these events. To survive the
17 halving, the estate would have ot purchase thousands of new, more advanced
18 miners. The estate lacks the funds to do so. In contrast, the Trustee is informed
19 that the Buyer will make a substantial capital investment in the TNT Facility.

20      Given the foregoing, the Sale is an exercise of sound business judgment.

21

22

23

24 Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving: (i)
   Sale of TNT Facility, etc. - Page 12
25

**B.** **The Overbid Procedures and Break-Up Fee Are in the Best Interests of the Estate**

The overbid procedures are reasonable and in the best interests of the estate. As set forth in the Motion, the Agreement permits overbids at or before the hearing on the Motion, provided that the first overbid is $50,000 or more than the Purchase Price. Subsequent overbids must be in increments of $5,000. A bidder must establish the bidder's financial ability to meet all the terms of the Agreement. The Trustee will decide the highest and best offer, in his sound business judgment, subject to court review and approval. If a bidder other than Buyer wins the bidding, then Buyer will receive the greater of $40,000 or 10% of the final purchase price as a Break-Up Fee. Bidders must establish their qualifications on or before two days before the hearing or by May 11, 2020 in order to be allowed to bid.

The Buyer would not enter into the Agreement without the overbid procedures and the Break-Up Fee. The proposed bidding procedures ensure that the estate will benefit in the event of overbidding even after payment of the Break-Up Fee. *Cf. In re Am. W. Airlines, Inc.*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (court considers best interests of the estate in reviewing a breakup fee; collecting and discussing cases therein). Therefore, they are reasonable.

**C.** **The Motion Satisfies the Elements of 11 U.S.C. § 363(f)**

The Trustee seeks an order making the sale of the TNT Facility and the Trailer Equipment free and clear of any lien, claim or interest in the TNT Facility and Trailer Equipment. The Trustee anticipates that Allrise and/or members

1 ("**WTT Token/Miner Holders**") of the Ad Hoc WTT Token Committee may

2 object to the sale of the miners that are included in the Sale.

3       Section 363(f) allows the Chapter 11 Trustee to sell property of the estate

4 free and clear of interests that are "in *bona fide* dispute," or if the claimed interest

5 holder "could be compelled, in a legal or equitable proceeding, to accept a

6 monetary satisfaction of such interest." 11 U.S.C. § 363(f)(4); 11 U.S.C. §

7 363(f)(5).

8       All the miners included in the Sale bear labels stating in plain and easy to

9 read lettering, "Property of Giga Watt." These labels were present when the

10 Trustee was appointed. Therefore, ownership claims to the miners are in bona fide

11 dispute.

12       Each WTT Token/Miner Holder has filed proofs of claims in which they

13 assert that they are general unsecured creditors who are not entitled to priority.

14 Paradoxically, they have also filed administrative claims arising from the same set

15 of alleged facts. They cannot be both general unsecured creditors and

16 administrative claimants. The WTT Token/Miner Holders should be estopped

17 from now asserting that they have administrative claims. Creditors should not be

18 allowed to "hedge their bets" and sign proofs of claim only to contradict them

19 later when that seems more expedient.

20       Three members of the WTT Token Committee are members of the Official

21 Committee of Unsecured Creditors ("**Creditors Committee**") and one is even the

22 chair of the Creditors Committee: Jun Dam. John Winslow and Steve Glasscock

23

1 are the other two members of the Creditors' Committee who are now asserting an

2 ownership interest in the TNT Facility, including "WTT Tokens" and miners.

3       Another member of the WTT Token Committee, Alex McVicker, has

4 previously alleged that his purchase of tokens and miners were investments in the

5 Debtor and that the Debtor's sale of these investments violated U.S. securities

6 laws. *See Balestra v. Giga Watt, Inc.*, 2018 WL 8244006, at *1 (E.D. Wash. June

7 28, 2018) (appointing Alex McVicker as lead plaintiff in the class action):

> 8     Participants in Giga Watt's initial coin offering could
> contribute Bitcoin, Ether (the token for Ethereum), or U.S.
> 9     dollars in exchange for either: (1) cryptocurrency tokens issued
> by Giga Watt, called "WTT," which represented the right to
> 10     use Giga Watt's Bitcoin mining hardware rent-free for 50
> years; or (2) Bitcoin mining equipment to be set up and
> 11     deployed at Giga Watt's facility.

12 *Id*., at *1 (E.D. Wash. June 28, 2018). *Cf. In the Matter of Symatri, LLC*, *et*

13 *al.,Texas State Securities Board,* 2018 WL 3731708, at *6 (July 11, 2018) (after

14 review thorough analyses of the *Howry* test, the Texas State Securities Board

15 found that the sale of "kala rigs," which are miners, constituted an unregistered

16 sale of a security in violation of the U.S. Securities Act). The Trustee has raised a

17 bona fide dispute with respect to the assertion that the WTT Token/Miner Holders

18 are entitled to any priority of payment. Claims arising from the purchase of a

19 security are mandatorily subordinated pursuant to 11 U.S.C. § 510(b). They are

20 treated like equity, while maintaining the nominal title "creditor."

21       For all the foregoing reasons, the Trustee disputes any asserted interest in

22 the TNT Equipment or the Trailer Equipment.

23

24 Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving: (i)
Sale of TNT Facility, etc. - Page 15

25

1    Furthermore, under section 363(f)(5), a sale free and clear of any interest

2  may occur if "such entity *could be* compelled, in a legal or equitable proceeding,

3  to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5) (emphasis

4  added). Any claims asserted by Allrise or the WTT Token/Miner Holders may be

5  compensable in a money satisfaction. In fact, both Allrise and the WTT

6  Token/Miner Owners have filed claims in this case seeking to recover money.

7  Importantly, the claim does not have to be paid in order to satisfy section 363(f).

8  *See In re Lady H Coal Co., Inc.,* 193 B.R. 233, 247–48 (Bankr. S.D. W. Va. 1996)

9  (referring to "hypothetical" satisfaction under (f)(5) since the subsection uses

10 "could be" compelled and not "must be" or "shall be" compelled.).

11    For all the foregoing reasons, the Sale satisfies the elements of 11 U.S.C.

12 § 363(f) and the Sale can be approved free and clear of all claims, liens and

13 interests.

14    **D.    The Assumption and Assignment of the TNT Leases, the Power**

15    **Contract and the Trailer Oral Lease Is Appropriate**

16    The Bankruptcy Code provides that the "the trustee, subject to the court's

17 approval, may assume or reject any executory contract or unexpired lease of the

18 debtor." 11 U.S.C. § 365(a). *See In re Catapult Entm't, Inc.*, 165 F.3d 747 (9th

19 Cir. 1999):

20        Section 365 of the Bankruptcy Code gives a trustee in
         bankruptcy . . . the authority to assume, assign, or reject the
21       executory contracts and unexpired leases of the debtor,

22

23

24  Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving: (i)
    Sale of TNT Facility, etc. - Page 16

25

| | |
|---|---|
| 1 | notwithstanding any contrary provisions appearing in such contracts or leases. |
| 2 | *Id.*, at 749. In this case, the TNT Landlords and the District consent to the |
| 3 | assumption and assignment of the TNT Leases and the Power Contract, |
| 4 | respectively. The lessor of the Trailer Oral Lease also consents. |
| 5 | For all the foregoing reasons, the assumption and assignment as set here is |
| 6 | appropriate. |
| 7 | **E.    The Sale Is in Good Faith** |
| 8 | The Trustee requests a finding that the Agreement is made in good faith |
| 9 | pursuant to 11 U.S.C. § 363(m). Under § 363(m) of the Bankruptcy Code: |
| 10 | [w]hen a sale of assets is made to a good faith purchaser, it may not be modified or set aside unless the sale was |
| 11 | stayed pending appeal. |
| 12 | *In re Filtercorp, Inc.,* 163 F.3d 570, 576 (9th Cir. 1998). *See also* Fed.R.Bank.P. |
| 13 | 6004(h): |
| 14 | An order authorizing the . . . sale . . . of property  . . . is stayed until the expiration of 14 days after entry of the |
| 15 | order, ***unless the court orders otherwise***. |
| 16 | *Id.* (emphasis added). |
| 17 | A good faith buyer "is one who buys 'in good faith' and 'for value.'" *Ewell* |
| 18 | *v. Diebert (In re Ewell),* 958 F.2d 276, 281 (9th Cir. 1992). The analysis is holistic |
| 19 | and does not depend on any one factor. *See also In re Onouli-Kona Land Co.*, 846 |
| 20 | F.2d 1170, 1174 (9th Cir. 1988) ("Ninth Circuit authority . . . does not make good |
| 21 | faith depend on 'value' . . . ."); *accord In re Lind,* 2019 WL 2950167, at *4 |
| 22 | (B.A.P. 9th Cir. July 8, 2019) ("[A] a good faith finding does not turn on the |
| 23 | purchase price in isolation."). |
| 24 | Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving: (i) Sale of TNT Facility, etc. - Page 17 |
| 25 | |

The Agreement was negotiated at arm's length, with each party represented by counsel. The Buyer is not an insider of the Debtor and is disinterested. The bidding procedures, if approved, will ensure that the Sale is put to the test of other interested buyers. The Trustee is motivated to enter into the Sale in order to monetize the TNT Facility and the TNT Equipment for the estate's benefit and by placing a reputable, financially sound tenant and customer in the TNT Facility.

The Trustee submits that this is sufficient to find that the Sale and the Agreement are made in good faith. Based on the foregoing, the Trustee further requests that the 14-day stay provided by Fed.R.Bank.P. 6004(h) and Fed.R.Bank.P. 6006(d) be waived and that the Order approving the Sale be effective immediately.

### 1. *Buyer's Requested Findings Regarding Good Faith*

Pursuant to the Agreement, the Trustee agreed to request that the Court make the following findings regarding the Sale:

    a.    the Agreement was negotiated at arm's length, and Buyer has acted in good faith and without collusion or fraud of any kind;

    b.    Buyer is not an "insider" or "affiliate" of Seller as those terms are defined in the Bankruptcy Code;

    c.    neither Seller nor Buyer has engaged in any conduct that would prevent the application of Section 363(m) of the Bankruptcy Code or cause the application of Section 363(n) of the Bankruptcy Code with respect to the consummation of the transactions contemplated in this Agreement;

d.    Buyer is purchasing the Purchased Assets in good faith within the meaning of Section 363(m) of the Bankruptcy Code and is entitled to the protections afforded by Section 363(m) of the Bankruptcy Code;

e.    notice of the transactions contemplated in the Agreement is sufficient to comply with the notice requirements of the Bankruptcy Code;

f.    any objections to the sale of the Purchased Assets free and clear of liens, claims, interests and encumbrances should be overruled;

g.    Buyer is purchasing the Purchased Assets free and clear of all liens, claims, interests, and encumbrances; and

h.    Buyer is released from any potential liability in connection with the purchase of the Purchased Assets.

**F.    Cause Exists for Shortened Notice**

Bankruptcy Rule 9006(c)(1) provides that:

> when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of the court, *the court for cause* shown may in its discretion *with or without motion or notice order the period reduced*.

Fed.R.Bank.P. 9006(c)(1).

Similarly, L.B.R. 2002-1 provides,

> A motion for an order reducing the time for making objections to a proposed action may be made and granted after notice and hearing for cause shown. Notice of such a motion shall clearly state the reasons supporting the necessity for a reduction of time and that objections may be made to the requested reduction. The objections will be considered by the court at the time of hearing on the motion for the principal relief requested.

*Id.*

Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving: (i) Sale of TNT Facility, etc. - Page 19

1  Cause exists to shorten notice. The TNT Facility operated at a loss in April

2  2020. The halving in May 12, 2020 is projected to significantly reduce revenues.

3  Insurance will lapse on May 22, 2020, making operations impossible.

4  Respectfully, these reasons justify shortened notice.

5  **G.  The Form and Manner of Service of Notice Is Sufficient**

6  The Trustee is serving the Notice on the Master Mailing List on Saturday,

7  May 2, 2020 and on parties who have previously expressed serious interest in the

8  TNT Facility, as deemed by the Trustee. The Notice contains all the information

9  required by Fed.R.Bank.P. 2002(c)(1) and L.B.R. 2002-1. It describes the Sale,

10  the Bidding Procedures, and the reasons for shortened notice.

11  Based on the foregoing, the form and manner of service of the Notice is

12  sufficient.

13  **VII.  CONCLUSION**

14  WHEREFORE, the Trustee respectfully requests entry of an Order:

15  1.  Granting the Motion;

16  2.  Approving the Agreement;

17  3.  Approving the Bidding Procedures;

18  4.  Approving the assumption by the Debtor and assignment to Buyer of

19  the TNT Leases, the Oral Trailer Lease and the Power Contract;

20  5.  Authorizing the Trustee to enter into and perform pursuant to the

21  terms of the Agreement;

22  6.  Approving the form and manner of service of the Notice, including

23  shortened notice; and

24  Memorandum in Support of Chapter 11 Trustee's Motion for Order Approving: (i)
Sale of TNT Facility, etc. - Page 20

25

7. Granting such other and further relief as the Court deems necessary and just.

Dated: May 1, 2020                    POTOMAC LAW GROUP PLLC

                                      By:    */s/ Pamela M. Egan*
                                      Pamela M. Egan (WSBA No. 54736)

                                      *Attorneys for Mark D. Waldron, Chapter 11 Trustee*