Pamela M. Egan, WSBA No. 54736 (*pro hac vice*)
POTOMAC LAW GROUP PLLC
1905 7th Ave. W
Seattle, WA 98119
Telephone: (415) 297-0132
Email: pegan@potomaclaw.com

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

In re:

GIGA WATT, Inc., a Washington corporation,

Debtor.

Case No. 18-03197 FPC 11

The Honorable Frederick P. Corbit

Chapter 11

**DECLARATION OF MARK D. WALDRON IN SUPPORT OF CHAPTER 11 TRUSTEE'S MOTION FOR ORDER APPROVING: (I) SALE OF TNT FACILITY AND TRAILER EQUIPMENT, SUBJECT TO OVERBIDDING, APPROVING NOTICE THEREON; (II) ASSUMPTION AND ASSIGNMENT OF LEASES AND CONTRACT; AND (III) SHORTENED NOTICE THEREON**

<u>**Telephonic Hearing**</u>
Date: May 13, 2020
Time: 1:30 p.m. PT
Telephone: 877-402-9753
Access Code: 3001392

---

Decl. of Mark D. Waldron in Supp. of Trustee's Motion for Order Approving: (i) Sale of TNT Facility, etc.

18-03197-FPC7    Doc 576    Filed 05/04/20    Entered 05/04/20 12:47:17    Pg 1 of 11

I, Mark D. Waldron, declare as follows:

1. I submit this declaration in my official capacity as the duly-appointed Chapter 11 Trustee in the bankruptcy case of the above-captioned debtor (the "**Debtor**" or "**Giga Watt**") and in support of the *Chapter 11 Trustee's Motion for Order Approving: (i) the Sale of the TNT Facility and Trailer Equipment Free and Clear of all Liens, Claims and Interests, Subject to Overbidding, Approval of Notice Thereof, (ii) the Assumption and Assignment of Leases and Power Contract, and (ii) Shortened Notice Thereon* (the "**Motion**"), which I have read and approved. The statements set forth herein are based on my investigation of the Debtor's affairs, which is ongoing, and except where otherwise noted, are based on my personal knowledge. If called as a witness, I would and could competently testify thereto.

2. Unless otherwise defined herein, capitalized terms have the meanings ascribed to them in the Motion.

## THE SALE

3. Since obtaining control of the TNT Facility in late summer 2019, I have been discussing its sale with numerous interested parties. However, until now, none have made an offer, except as set forth below.

4. Subject to Court approval, I have negotiated an agreement (the "**Agreement**") with EcoChain, Inc. ("**EcoChain**" or "**Buyer**"), a Delaware limited liability company, to sell ("**Sale**") (i) the Debtor's crypto-mining facility located at 474 Highline Avenue, East Wenatchee Washington ("**TNT Facility**"). The Sale includes equipment at the TNT Facility ("**TNT Equipment**") and (ii) a

Decl. of Mark D. Waldron in Supp. of Trustee's Motion for Order Approving: (i) Sale of TNT Facility, etc. - Page 2

set of power distribution units, power supply units and related electrical equipment ("**Trailer Equipment**") that I am currently storing in leased trailers ("**Trailers**") that are located at the estate's other facility in Moses Lake, Washington. A true and correct copy of the Agreement is attached to the Motion as Exhibit B.

5. Pursuant to the Agreement, and subject to Court approval, I have further agreed to assume and to assign to Buyer all rights and obligations under the estate's four leases ("**TNT Leases**") relating to the TNT Facility. The monthly aggregate rent under the TNT Leases is $11,900. Pre-petition, the Debtor or an affiliate placed $202,000 in deposits with the TNT Landlords to cover the cost of restoring the buildings at the TNT Facility. The Debtor made substantial changes to the buildings of the TNT Facility. Such deposit was intended to approximate the restoration costs to the buildings at the end of the leases. Pursuant to the Agreement, the Buyer has agreed to assume all liabilities under the TNT Leases. The deposit will be assigned with the TNT Leases.

6. Pursuant to the Agreement, subject to Court approval, I will also assume and assign to the Buyer the Power Contract. With the Court's permission, I deposited $98,924 (the "**Power Deposit**") with the Public Utility District No. 1 in Douglas County, Washington (the "**District**") in order to re-open the TNT Facility. Pursuant to the Sale, the Power Deposit will be returned to the estate. The Buyer will place its own deposit with the District. I paid the Power Deposit from $200,0000 in Court-approved post-petition financing. As of May 1, 2020, the estate had a remaining balance of $55,151.41 on this post-petition financing.

Decl. of Mark D. Waldron in Supp. of Trustee's Motion for Order Approving: (i) Sale of TNT Facility, etc. - Page 3

7. Pursuant to the Agreement, I will also assign all obligations under an oral lease for the Trailers that I entered into post-petition in the ordinary course of business (the "**Trailer Oral Lease**"). Pursuant to the Trailer Oral Lease, the estate pays $1,000 in monthly rent for four trailers, or $250 per trailer. I stored equipment in the Trailers after removing it from the Debtor's "Rock Island" location and rejecting that lease.

8. The TNT Facility lessors (the "**TNT Landlords**"), the Public Utility District No. 1, Douglas County, Washington (the "**District**"), and the owner of the Trailers have consented to the assignment of their respective agreements pursuant to the Sale. The District consents to the assignment of the Power Contract, subject to its standard rules and policies.

9. The purchase price is a cash payment of $200,000 due at Closing. On Friday, May 1, 2020, the Buyer paid to the estate a $20,000 earnest money deposit, which will be applied to the purchase price, if the Sale is approved, or returned to the Buyer, if the Sale does not close. The net balance of $180,000 is due on Closing.

10. I have tested the market for the TNT Facility and the Trailer Equipment and have determined that $200,000 is market value. Numerous parties have expressed interest in the TNT Facility and have toured it. However, none, but EcoChain has made an offer.

11. I have also determined that Buyer's offer is in line with that comparable sale. In particular, a crypto-mining company, Hive Technology, located in Canada, recently purchased a facility for approximately US$95,000 per

Decl. of Mark D. Waldron in Supp. of Trustee's Motion for Order Approving:
(i) Sale of TNT Facility, etc. - Page 4

megawatt, most of which was paid in stock in the new buyer entity. This Sale is consistent with that sale in that the Buyer is paying approximately $100,000 cash per operating megawatt in exchange for the TNT Facility and miscellaneous electrical equipment.

## THE TNT AND TRAILER EQUIPMENT

12. Pursuant to the Agreement, the estate will sell to the Buyer all the equipment located in the TNT Facility ("**TNT Equipment**"), except for any Gib Equipment, defined below. The TNT Equipment is listed on Schedule Section 2.01(a) to the Agreement.

13. The Trailer Equipment consists of power distribution units and other electrical equipment used in crypto-mining. The Trailer Equipment used to be located at the Debtor's "Rock Island" location. When I rejected the Rock Island lease, I removed equipment from "Rock Island" and began storing it in the Trailers. The Trailer Equipment is listed in Schedule Section 2.01(d) to the Agreement.

## EXCLUDED ASSETS: THE GIB EQUIPMENT

14. Pursuant to the Pangborn Sale Equipment Order, two sets of equipment that are located in the TNT Facility and in the Trailers have been committed and sold to Gib Compute LLC ("**Gib**" and "**Gib Equipment**," respectively). Gib has not yet taken delivery of the Gib Equipment that is located in the TNT Facility and the Trailers because the work in clearing the Pangborn Site continues to require 18-hour workdays. In late April 2020, the Port agreed to

Decl. of Mark D. Waldron in Supp. of Trustee's Motion for Order Approving: (i) Sale of TNT Facility, etc. - Page 5

extend the deadline to finish removing equipment before the equipment is deemed abandoned. The deadline has been extended from May 7, 2020 to May 21, 2020.

15. When Gib finishes work at the Port's site, Gib will pick up the two sets of Gib Equipment that are located in the TNT Facility and the Trailers, respectively. The Gib Equipment is excluded from the Sale.

16. The Gib Equipment located at the TNT Facility is listed below:

| EXCLUDED EQUIPMENT AT TNT | | | |
|---|---|---|---|
| Item(s) Description | Quantity | Notes | Site |
| Raritan PX2-5956XV PDUs [1] | 270 | 60A, 48A (Derated), 380-415V/ 220-240V | TNT [2] |
| Alpha Miner PSUs | approx. 425 | Set aside and stacked. | TNT [2] |

**Notes:**
[1] The PDUs do not have whip tails; they have never been energized; not boxed
[2] TNT = Debtor's TNT Facility, 474 Highline Drive, E. Wenatchee, WA

17. The Gib Equipment located at the Trailers is listed below:

| EXCLUDED TRAILER EQUIPMENT | | | |
|---|---|---|---|
| Item(s) Description | Quantity | Notes | Site |
| Raritan PX2-5956XV PDUs [1] | 64 | 60A, 48A (Derated), 380-415V/ 220-240V | ML [2] |

**Notes:**

[1] New in box

[2] Located in Trailer at Moses Lake Facility

Decl. of Mark D. Waldron in Supp. of Trustee's Motion for Order Approving: (i) Sale of TNT Facility, etc. - Page 6

# OVERBIDDING

18. The Agreement permits overbids at or before the hearing on the Motion, provided that the first overbid is $50,000 or more than the purchase price. Subsequent overbids must be in increments of $5,000. A bidder must establish the bidder's financial ability to meet all the terms of the Agreement. Pursuant to the Agreement, I will decide the highest and best offer, in my sound business judgment, subject to Court review and approval. If a bidder other than Buyer wins the bidding, then Buyer will receive the greater of $40,000 or 10% of the final purchase price as a Break-Up Fee. Bidders must establish their qualifications on or before two days before the hearing or by May 11, 2020 in order to be allowed to bid.

19. The Buyer would not enter into the Agreement without the overbid procedures and the Break-Up Fee. The proposed bidding procedures ensure that the estate will benefit in the event of overbidding even after payment of the Break-Up Fee. Therefore, in my judgment the Over-Bid Procedures and Break-Up Fee are reasonable.

# FREE AND CLEAR

20. The Sale is free and clear of all liens, claims, and interests.

21. Allrise might object in that it claims that the Trustee might be in possession of some of its miners. Allrise has filed both a proof of claim and an administrative claim. Allrise has not yet attempted to search the Debtor's facility for these missing miners.

---

Decl. of Mark D. Waldron in Supp. of Trustee's Motion for Order Approving: (i) Sale of TNT Facility, etc. - Page 7

22. I expect that three members of the Official Committee of Unsecured Creditors (the **"Creditors' Committee"**) may also object to the Sale on the ground that they essentially own the TNT Facility through their purchase of tokens and miners in the Debtor's Initial Coin Offering. The trio, which includes the Committee's Chair, Jun Dam, has formed a separate, unofficial committee. As members of this new committee, these Creditor's Committee members have moved for administrative expense priority. In other words, they are claiming both general unsecured and administrative status from the same set of facts.

23. Another member of the new committee is the named plaintiff in a class action lawsuit against the Debtor and others on the grounds that his purchase of tokens and miners was the purchase of a security.

24. Given that each of the foregoing have filed claims in this, seeking monetary damages, I believe the request for a sale free and clear of liens is reasonable.

## GOOD FAITH

25. The Agreement was negotiated at arm's length, with each party represented by counsel. The negotiations occurred over a period of many weeks. I have determined that the Buyer is not an insider of the Debtor and is disinterested.

26. I am motivated to enter into the Sale in order to monetize the TNT Facility, the TNT Equipment and the Trailer Equipment for the estate's benefit. I am also motivated to place a reputable, financially sound tenant and customer in the TNT Facility.

## THE BUYER AND THE TNT FACILITY

27. The Buyer is in the business of developing utility-scale computing infrastructure for the blockchain, powered by renewal energy.

28. At the TNT Facility, the estate operates a crypto-mining facility in four buildings which the estate leases, as set forth above. The TNT Leases are listed in Schedule 2.01(b) of the Agreement. The Power Contract provides for 3.3 megawatts of power. The TNT Facility currently draws approximately 1.9 megawatts of power. The Power Contract is listed in Schedule 2.01(c) of the Agreement.

29. Crypto-mining is a process by which shoe-box size computers, called miners, confirm that a recorded transaction on the blockchain is accurate. After the transaction is confirmed, that "block" (record of the transaction) is added to the chain and a reward in the form of Bitcoin is released. For example, if John records that Jane gave him five Bitcoin (or other cryptocurrency) on April 30, 2020, his recorded transaction will be identified by a number, known as a "hash." Jane's record of giving John 5 Bitcoin will also be identified by a number or "hash."

30. The miner will run John's hash through a hash function. In a hash function, one input can produce only one output. If John's hash is run through the hash function and produces Jane's hash, then the transaction is confirmed and that block (showing that John received five bitcoin from Jane) is added to the chain. Bitcoin interests are then distributed as rewards. The TNT Facility "mines" three types of coins: Bitcoin, Ethereum and Lite-Coin.

Decl. of Mark D. Waldron in Supp. of Trustee's Motion for Order Approving: (i) Sale of TNT Facility, etc. - Page 9

31. In 2019, the TNT Facility's monthly net profit averaged approximately $13,700, excluding taxes, U.S. Trustee fees and loan repayments. In 2020, the monthly net profit averaged approximately $6,600, excluding taxes, U.S. Trustee fees and loan repayments. Most recently, in April 2020 the TNT Facility lost money, with gross revenues of $62,016.40 and expenses of $67,501.13, for a net loss of $5,484.73.

32. The estate is not in default under the TNT Leases, the Trailer Oral Lease or the Power Contract. The estate is also current with all taxes and U.S. Trustee fees. It has been important to continue operating TNT to fund the monthly rent until a buyer was located.

## TNT SETTLEMENT

33. I recovered the TNT Facility for the benefit of the estate pursuant to vigorously contested litigation and mediation. In addition to recovering the TNT Facility for the estate's benefit, pursuant to the TNT Settlement, I also obtained for the estate's benefit a condominium which I have now listed for sale at $385,000. This was based on comparable sales and the advice of the estate's broker.

34. The TNT Settlement is part and parcel of my efforts to capture the TNT Facility's value for the estate's benefit.

## SHORTENED NOTICE

35. My request for shortened notice is based on a set of imminent economic hurdles and deadlines.

Decl. of Mark D. Waldron in Supp. of Trustee's Motion for Order Approving: (i) Sale of TNT Facility, etc. - Page 10

36. On May 12, 2020, Bitcoin will "halve," meaning that the number of Bitcoin rewards that are released will be reduced by 50% from its previous level. "Halving" requires new, more sophisticated computers or miners. The estate lacks the necessary funds to make this investment. Therefore, the imminent "halving" represents a significant economic hurdle for the TNT Facility.

37. On May 22, 2020, the estate's liability insurance for the TNT Facility will expire and I have received a Notice of Non-Renewal. It was difficult to find insurance last year. I expect it to be difficult if not impossible to renew this year.

38. Starting in July 2020, the District's electricity rates for crypto-mining will increase by 20% annually for the next five years. The increases are imposed semi-annually. Therefore, the rates will increase by ten percent in July 2020.

39. Shortened notice is calculated to avoid damage to the estate.

40. Also, I am serving notice on the Master Mailing List as well as to persons who have previously expressed serious interest in purchasing the TNT Facility.

To the best of my knowledge, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 4th day of May 2020 in Tacoma, Washington.

*/s/ Mark D. Waldron*

Mark D. Waldron, in his official capacity as Chapter 11 Trustee in the above-captioned case

4818-6246-9051, v. 2