Pamela M. Egan, WSBA No. 54736 (*pro hac vice*)
Potomac Law Group PLLC
1905 7th Avenue West
Seattle, WA 98119
Telephone: (415) 297-0132
Email: pegan@potomaclaw.com

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GIGA WATT, Inc., a Washington corporation,<br><br>Debtor. | Case No. 18-03197 FPC 11<br><br>Chapter 11<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CHAPTER 11 TRUSTEE'S MOTION FOR ORDER APPROVING SETTLEMENT WITH PORT** |

Mark D. Waldron, in his official capacity as the Chapter 11 Trustee (the "**Trustee**") hereby respectfully submits this Memorandum of Points and Authorities in support of the *Chapter 11 Trustee's Motion for Order Approving Settlement With Port* (the "**Motion**") pursuant to which the Trustee requests approval of that certain *Settlement Agreement and Release* (the "**Agreement**"), between, Mark D. Waldron, in his capacity as the Chapter 11 Trustee (the "**Trustee**") acting on behalf of and representing the estate (the "**Estate**") in the above-captioned bankruptcy case and the Chelan Douglas Regional Port Authority, formerly the Port of Douglas County (the "**Port**").

Memo in Support of Motion to Approve Port Settlement -- 1

In support of the Motion, the Trustee respectfully avers:

## I. INTRODUCTION

The Agreement resolves a dispute with the Port regarding equipment that the Debtor had left on the Port's property. It provides a full general release between the Estate and the Port.

## II. BACKGROUND, DISPUTE, AND SETTLEMENT

On August 9, 2017, the Port and Giga Watt, Inc. (the "**Debtor**") entered into that certain *Land Lease for Portion of Pangborn Airport Business Park East Wenatchee, Washington* on March 1, 2017 and that certain *Addendum to Lease Agreement Pangborn Airport Business Park East Wenatchee, Washington* (collectively, the "**Lease**"). Pursuant to the Lease, the Debtor leased four adjacent lots of land (the "**Pangborn Site**") that are in a business park by the Pangborn Airport that the Port manages. Pursuant to the Lease and pre-petition, the Debtor deposited $350,000 in cash with the Port as surety.

On November 19, 2018, the Debtor commenced the above-captioned case by filing a petition for relief under chapter 11 of the United States Code, section 101, *et seq.*.

On January 23, 2019, the Court approved the appointment of the Chapter 11 Trustee pursuant to the *Order Approving Appointment of Chapter 11 Trustee*, dated January 23, 2019. [ECF 146] Shortly after his appointment, the Chapter 11 Trustee visited the Pangborn Site. He observed a very wide and deep hole in lots adjacent to the Pangborn Site. The Trustee verified that the Debtor had dug this hole with the Port's permission. However, the Debtor had left the hole without the

Port's permission. The Pangborn Site itself was littered with very heavy equipment, partially built cement foundations, partially constructed buildings, fully completed buildings and conduit buried under the ground with wiring.

On February 15, 2019, the Port filed in the Bankruptcy Case a proof of claim, assigned no. 65, asserting the right to payment of $662,994.09 on a general unsecured basis (the "**Proof of Claim**").

On April 16, 2019, the Court entered its Order approving a stipulation (the "**Stipulation**") between the Port and the Estate. [Doc. No. 276] Pursuant to the Stipulation, the Port was entitled to apply the $350,000 surety deposit to clean up the premises and the Trustee's deadline to assume or reject the Lease was extended to June 17, 2019. After the Public Utility District No. 1 of Douglas County, Washington decided not to rescind the termination of the related power contract, the Lease was deemed rejected by operation of the Stipulation.

The Lease was rejected on June 17, 2019. However, post-rejection, the equipment remained on the Pangborn Site. The Port claimed that the Estate was holding over and that administrative rent would continue to accrue at the monthly rate of approximately $7,500, excluding taxes that the Port alleged were also due.

On November 14, 2019, the Court entered its Order approving another stipulation (the "**Second Stipulation**") between the Port and the Estate. Pursuant to this Second Stipulation, the Trustee agreed that the Port could apply the remaining portion of the surety deposit ($81,000) to further remediation of the Pangborn Site. [Doc. No. 417]

On March 30, 2020, the Trustee moved for approval to sell the equipment at the Pangborn Site. [Doc. No. 519] The Port objected on the ground that the proposed sale made no provision for cleaning up the Pangborn Site and that it allowed the buyer to "cherry pick" which equipment to take and which equipment to leave on the Pangborn Site. [Doc No. 527]

The Port has further asserted that it is entitled to administrative rent from June 17, 2019, when the Lease was rejected, until the Trustee clears the Pangborn Site. For the period June 17, 2019 to April 30, 2020, the total administrative rate is approximately $80,000, not including taxes which the Port claims are applicable pursuant to the triple net provisions of the Lease.

The Agreement resolves all issues between the parties. In exchange for a full general release from the Port of all claims, the Estate will pay $22,500 to the Port and fully release the Port of all claims.

### III. POINTS AND AUTHORITIES

#### A. Standard for Approving a Settlement

Rule 9019(a) provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. To be approved, the settlement should be in the best interests of the estate and "reasonable, given the particular circumstances of the case." *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986). While a court generally gives deference to a trustee's business judgment in deciding whether to settle a matter, the Trustee "has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved" *Id.*

In determining the "fairness, reasonableness and adequacy" of a proposed compromise, a bankruptcy court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*A&C Properties*, 784 F.2d at 1381 (quoting *In re Flight Transportation Corporation Securities Litigation*, 730 F.2d 1128, 1135 (8th Cir. 1984) (citations omitted), *cert. denied*, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985)). "When assessing a compromise, courts need not rule upon disputed facts and questions of law, but rather only canvass the issues." *In re Schmitt,* 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997).

**B.    The Agreement Meets Each of the *A&C Properties* Factors.**

***1.    Probability of Success on the Merits Weighs in Favor of Settlement.***

It was prohibitively expensive to move and store the Debtor's equipment that was left at the Pangborn Site. Further, the Trustee understood that the equipment was valuable.

The Port stated that it was unable to re-let or even market the property while the equipment remained on the Pangborn Site. Furthermore, it alleged that the Estate was liable for administrative rent, which by April 30, 2020 totals about $80,000.

18-03197-FPC7    Doc 579    Filed 05/05/20    Entered 05/05/20 14:32:35    Pg 5 of 7

The settlement breaks the impasse. In exchange for a payment of $22,500, the Estate is absolved of all obligations to clean up the Pangborn Site or pay further administrative rent. The Trustee has recently sold the equipment for $175,000 and has agreed to pay the Port's settlement out of these proceeds.

Therefore, the probability-of-success-on-the-merits factor weighs in favor of the settlement.

### 2. Collectability.

Collectability is not at issue because the Estate did not assert claims against the Port.

### 3. Litigation Would Be Complex, Expensive, Inconvenient and Would Cause Delay.

Litigation would likely have increased the Estate's administrative rent burden and diverted the Estate's limited resources from the pending TNT Facility sale and winddown of the Moses Lake Facility.

Therefore, the complexity-expense-inconvenience-delay factor weighs in favor of the proposed settlement.

### 4. The Settlement Serves the Paramount Interest of the Creditors and Provides Proper Deference to Their Reasonable Views.

The Agreement serves the paramount interest of creditors by resolving the distraction, expense and uncertainty that was inherent in the dispute with the Port. A consensual relationship with the Port allows the Trustee to focus on closing the sale of the TNT Facility and wind down the Moses Facility.

Therefore, this paramount-interest-of-creditors and proper-deference factor weighs in favor of the proposed settlement.

Finally, entering into the Agreement is an exercise of sound business judgment pursuant to 11 U.S.C. § 363.

### IV. CONCLUSION

WHEREFORE, the Trustee respectfully requests entry of an Order:

1. Granting the Motion;

2. Approving the Agreement and the settlement embodied therein;

3. Authorizing the Trustee to perform pursuant to the terms of the Agreement; and

4. Granting such other and further relief as the Court deems necessary and just.

Dated: May 5, 2020            POTOMAC LAW GROUP PLLC

By:     */s/ Pamela M. Egan*
Pamela M. Egan (WSBA No. 54736)
(*pro hac vice*)

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*

Memo in Support of Motion to Approve Port Settlement -- 7