Pamela M. Egan, WSBA No. 54736 (pro hac vice)
Potomac Law Group PLLC
1905 7th Avenue West
Seattle, WA 98119
Telephone: (415) 297-0132
Email: pegan@potomaclaw.com

Attorneys for Mark D. Waldron, Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GIGA WATT, Inc., a Washington corporation,<br><br>Debtor. | Case No. 18-03197 FPC 11<br><br>Chapter 11<br><br>**DECLARATION OF MARK D. WALDRON IN SUPPORT OF CHAPTER 11 TRUSTEE'S MOTION FOR ORDER APPROVING SETTLEMENT WITH PORT** |

I, Mark D. Waldron, declare as follows:

1. I submit this declaration in my capacity as the duly-appointed Chapter 11 Trustee in the bankruptcy case of the above-captioned debtor (the "Debtor" or "Giga Watt") and in support of the Chapter 11 Trustee's Motion for Order Approving Settlement With Port (the "Motion"), filed herewith. The statements set forth herein are based on my investigation of the Debtor's affairs, which is ongoing, and, except where otherwise noted, are based on personal knowledge. If called as a witness, I would and could competently testify thereto.

2. Unless otherwise defined herein, capitalized terms have the meanings ascribed to them in the Motion.

3. Pursuant to the Motion, I request approval of that certain *Settlement Agreement and Release* (the "**Agreement**"), which resolves a dispute with the Port regarding the Pangborn Site. A true and correct copy of the Agreement is attached to the Motion as Exhibit B.

4. Shortly after my appointment, I visited the Pangborn Site. On that tour, I observed a very wide and deep hole in lots adjacent to the Pangborn Site. I verified that the Debtor had dug this hole with the Port's permission. However, the Debtor had left the hole without the Port's permission. The Pangborn Site itself was littered with very heavy equipment, partially built cement foundations, partially constructed buildings, fully completed buildings and conduit buried under the ground with wiring. I also verified that the Debtor had placed a $350,000 cash surety deposit to secure the Debtor's obligations under the Lease.

5. As set forth more particularly in the memorandum filed herewith, in April 2019, the Court approved the Stipulation pursuant to which I agreed to allow the Port to apply the $350,000 surety deposit to clean up the premises. Pursuant to the Stipulation, the Trustee's deadline to assume or reject the Lease was also extended to June 17, 2019.

6. After the Public Utility District No. 1 of Douglas County, Washington, decided not to rescind the termination of the related power contract, the Lease was deemed rejected by operation of the Stipulation.

Declaration of Mark D. Waldron in Support of Motion to Approve Settlement With Port- Page 2

7. The Lease was rejected on June 17, 2019. However, post-rejection, the equipment remained on the Pangborn Site. The Port claimed that the Estate was holding over and that administrative rent would continue to accrue at the monthly rate of approximately $7,500, excluding taxes that the Port alleged were also due.

8. On November 14, 2019, the Court entered its Order approving another stipulation (the "**Second Stipulation**") between the Port and the Estate. Pursuant to this Second Stipulation, I agreed that the Port could apply the remaining portion of the surety deposit ($81,000) to further remediation of the Pangborn Site.

9. On March 30, 2020, I moved for approval to sell the equipment at the Pangborn Site. The Port objected on the ground that the proposed sale made no provision for cleaning up the Pangborn Site and that it allowed the buyer to "cherry pick" which equipment to take and which equipment to leave on the Pangborn Site.

10. The Port has further asserted that it is entitled to administrative rent from June 17, 2019, when the Lease was rejected, until I clear the Pangborn Site. For the period June 17, 2019 to April 30, 2020, the total administrative rate is approximately $80,000, not including taxes which the Port claims are applicable pursuant to the triple net provisions of the Lease.

11. The Agreement resolves all issues between the parties. In exchange for a full general release from the Port of all claims, the Estate will pay $22,500 to the Port and fully release the Port of all claims.

Declaration of Mark D. Waldron in Support of Motion to Approve Settlement With Port- Page 3

12. It was prohibitively expensive to move and store the Debtor's equipment that was left at the Pangborn Site. Further, I understood that the equipment was valuable.

13. The Port stated that it was unable to re-let or even market the property while the equipment remained on the Pangborn Site. Furthermore, it alleged that the Estate was liable for administrative rent, which by April 30, 2020 totals about $80,000.

14. The settlement breaks the impasse. In exchange for a payment of $22,500, the Estate is absolved of all obligations to clean up the Pangborn Site or pay further administrative rent. With Court approval, I recently sold the equipment on the Pangborn Site for $175,000. I have agreed to pay the Port's settlement out of these proceeds.

15. In my judgment, litigation would likely have increased the Estate's administrative rent burden and diverted the Estate's limited resources from the pending TNT Facility sale and wind down of the Moses Lake Facility.

To the best of my knowledge, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of May 2020 in Tacoma, Washington.

*[signature]*

Mark D. Waldron, *in his official capacity as Chapter 11 Trustee in the above-captioned case*

4822-2413-8683, v. 1

Declaration of Mark D. Waldron in Support of Motion to Approve Settlement With Port- Page 4