The Honorable Frederick P. Corbit
Chapter 11

IN THE UNITED STATES BANKRUPTCY COURT
IN AND FOR THE EASTERN DISTRICT OF WASHINGTON AT SPOKANE

| | |
|---|---|
| In Re:<br><br>GIGA WATT, INC.,<br><br>Debtor. | NO. 18-03197-FPC<br><br>RESPONSE OF WTT TOKEN HOLDERS AND MINERS TO TRUSTEE'S MOTION FOR ORDER APPROVING SALE OF TNT FACILITY AND TRAILER EQUIPMENT FREE AND CLEAR OF LIENS |

## RESPONSE

**COMES NOW** certain creditors claiming an interest in crypto miners, and members of the non-profit Creditors' Committee of WTT Token Holders and Miners[1] ("**Owners**"), by and through their attorneys of record, Samuel J. Dart and Eisenhower Carlson PLLC and hereby respond to the Chapter 11 Trustee's Motion for Order Approving Sale of TNT Facility and Trailer Equipment ("**Motion**") as follows.

## BACKGROUND

On April 10, 2020, the Owners filed a motion requesting administrative expense priority for their contribution to the bankruptcy estate of Giga Watt, Inc. on account of the Trustee's use of digital currency mining machines and WT Token rack space at Debtor's facilities to generate revenue for continued operations at Debtor's facilities. (Motion for Admin Expense, ECF No.

---

[1] Although some members of the WTT are also on the Official Committee of Unsecured Creditors ("OCUC") formed under the direct of the United States Trustee, this application is not made on behalf of the OCUC but only on behalf of the members of the non-profit who claim to hold WTT Tokens or own miners at Debtor's facilities.

RESPONSE OF WTT TOKEN HOLDERS AND MINERS
TO TRUSTEE'S MOTION FOR ORDER APPROVING
SALE OF TNT FACILITY - 1

19994-1/SJD/931237

EISENHOWER CARLSON PLLC Attorneys at Law
1201 Pacific Ave., Ste. 1200
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

547). The Motion asserts that during the administration of this case, the Trustee has used the property of the Owners to generate funds for the bankruptcy estate.

As set forth in the request for administrative expense priority, the Owners purchased digital mining machines and WTT Tokens through third party entities for use at Debtor's facilities. (Dec. of Glasscock, ECF No. 548). Digital mining machines could be purchased from a number of companies, including Debtor's affiliate, and the machines purchased could subsequently be used at Debtor's facilities by those holding WTT Tokens. *Id.* The WTT Tokens were purchased through a third-party called Cryptonomos and held in the individual's personal account until utilized. *Id.*

After the bankruptcy petition, most of the Owners timely filed claims, many of the indicating an ownership interest in the mining equipment. The Owner claims make up the majority of all claims filed in this case both in number and amount.[2] An example of the documentation of ownership is the miner dashboard, lot numbers, serial number, and tracking information included in the supplements to claim Nos. 60, 64, and 104. Some of the Owners also have documentation that the machines at the Debtors facilities were purchased elsewhere and shipped to the Giga Watt facility. *See* Claim 78-1. The Owners also have reason to believe that the Debtor may have maintained a spreadsheet identifying each Owner and the mining machines purchased. The spreadsheet identifies the Owners as "customers" and attaches numerous pieces of information attributable to each mining machine, including the name of the owner, the sales number, the dashboard ID for each device, the mining pool each device operated within, and the information on WTT Tokens attributable to each account with amount rented. The Owners are still attempting to verify the authenticity of these documents but if verified, this data serves as yet another potential example of how Giga Watt viewed the machines as property of the Owners and not Giga Watt.

---

[2] A representative example of the WTT claims presented by this Motion include claim nos. 60, 64, 104, and 329.

RESPONSE OF WTT TOKEN HOLDERS AND MINERS
TO TRUSTEE'S MOTION FOR ORDER APPROVING
SALE OF TNT FACILITY - 2



1201 Pacific Ave., Ste. 1200
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

19994-1/SJD/931237

18-03197-FPC7   Doc 592   Filed 05/07/20   Entered 05/07/20 23:49:51   Pg 2 of 9

1   Notwithstanding the unresolved motion for administrative expense and the dispute as to ownership of the property, the Trustee is requesting an order from the Court authorizing the sale of the TNT Facility and a significant amount of digital mining machines free and clear of the claims to ownership. Long before this sale, counsel for the OCUC specifically raised the issue of ownership and priority of claims related to use of the facilities and the miners in a response filed on May 2, 2019. *See* OCUC's Response to Trustee's Motion re Two-Way Agreement, ECF No. 289. The OCUC's response states "[t]he non-ordinary course reopening of the Moses Lake facility was undertaken without the Court's prior authorization, and may involve the use of non-estate property including Miners and the power-capacity reserved by Token Holders. No administrative priority is proposed in the Motion for Token Holders and miner Owners." OCUC Resp. at 2:2-5. The Response unequivocally states that "[t]he Committee also does not object to the Trustee's use of property that it believes **may belong to** creditors, *so long as* it is understood that **creditors are not waiving any future rights to reimbursement that would be due from any income generated through the use of their property** . . ." OCUC Resp. at 2-3 (emphasis added). Notwithstanding this objection, and without ever affirmatively resolving the matter or seeking written consent of each Owner, Trustee continued to use the facilities and the mining equipment to generate revenue without a determination of priority or ownership rights at that time. At a minimum, Trustee had a year of notice that the mining machines and WTT Token space utilized for those machines were not property of the bankruptcy estate.

  Based on their motion for administrative expense, the Owners now object to the sale of the TNT facility—and specifically object to the sale of any property they claim does not belong to the bankruptcy estate—without a full and fair opportunity to have that matter heard. With just six days' notice of time to object, the Trustee seeks to deprive the Owners of the property they own and without adequate funds to compensate the Owners should the Court determine that the bankruptcy estate did not hold an interest in such property.



# ARGUMENT

Relying on § 363(f) and the business judgment rule, the Trustee requests that the Court approve a sale for the TNT Facility and an uncertain number of digital mining machines. The Owners object to such a request on the ground that the Court has not yet decided whether the bankruptcy estate actually has any interest in the equipment at all. The Motion is also deficient because such sale fails to protect the Owners' interests in the event the Owners succeed on their motion for administrative expense because it has no provision to segregate funds and does not reflect a fair price for the digital mining equipment.

**A. The Sale Motion Inappropriately Concludes the Mining Machines are Property of the Giga Watt Bankruptcy Estate.**

Prepetition, Debtor represented to the world that it did not own the mining machines placed in its facilities and instead offered the service of hosting machines owned by others. Although the bankruptcy estate generally encompasses substantially all of a debtor's property, the property interests that form the bankruptcy estate are determined by state law. *In re Reed*, 940 F.2d 1317, 1322 (9th Cir. 1991) (citing *Butner v. United States*, 440 U.S. 48, 54, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979)). Notwithstanding the risk that the assets that are for sale do not belong to the Giga Watt bankruptcy estate, the Trustee seeks to sell the property free and clear of those interests pursuant to 11 U.S.C. § 363(f)(4) and (5) under the assumption that the sale is authorized based on a bona fide dispute or because the Owners should be compelled to accept money. Neither argument is persuasive.

Section 365(f)(4) allows a trustee to sell property that is in "bona fide dispute." However, the bankruptcy court's power pursuant to § 363 is to sell property **of the estate**, rather than any and all property. For the same reason, regardless of whether a party could be compelled to accept money for an interest, the bankruptcy court may not authorize a sale of property that does not belong to the debtor.

As an initial matter, the Owners do not agree that there is any bona fide dispute

RESPONSE OF WTT TOKEN HOLDERS AND MINERS
TO TRUSTEE'S MOTION FOR ORDER APPROVING
SALE OF TNT FACILITY - 4



1201 Pacific Ave., Ste. 1200
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

19994-1/SJD/931237

18-03197-FPC7    Doc 592    Filed 05/07/20    Entered 05/07/20 23:49:51    Pg 4 of 9

concerning the ownership of the digital mining machines. A number of claims include documentation showing that Owners paid a third party such as Bitmain for a machine and subsequently shipped that machine to Debtor's facilities for hosting. Trustee does not contest this at all, instead relying on stickers placed on the machines by some unknown person and for some unknown purpose. The Trustee's theory of ownership appears to stem from the antiquated notion that possession is nine-tenths of the law. Even if the Court agrees that there is a bona fide dispute as to ownership of the mining machines, the Trustee has cited no authority to allow the sale until the ownership question is resolved.

Where there is a dispute over the debtor's interest in the property, and thus a dispute whether property is property of the estate, "the court may not authorize a sale under section 363 until the court resolves the dispute and determines that the debtor has an interest that can be sold. Until that occurs, section 363 does not even apply." 3 Collier on Bankruptcy ¶ 363.06 (16th 2020). Recognizing this critical limitation, other subsections of § 363 allow a sale of property where the estate shares an interest with another entity, but none of those sections allow the estate to ignore the non-estate interest or to sell property the bankruptcy estate does not have an interest in. *See e.g.,* 11 U.S.C. § 363(h).

Unless and until the bankruptcy court determines that the digital mining machines are property of the bankruptcy estate it cannot and should not approve a sale of that equipment. *Warnick v. Yassian (In re Rodeo Canon Dev. Corp.)*, 362 F.3d 603, 608 (9th Cir. 2004) *opinion withdrawn and superseded*, 126 F. App'x 353 (9th Cir. 2005), as amended on denial of reh'g (Apr. 1, 2005); *Moldo v. Clark (In re Clark)*, 266 B.R. 163, 172 (9th Cir. BAP 2001)). Regardless of whether the Trustee believes there is a bona fide dispute as to ownership, where the question is if property is property of the estate, the court must decide that issue prior to authorizing the sale. *In re Hunt*, No. CV 12-08439 MMM, 2014 U.S. Dist. LEXIS 189464, at *41 (C.D. Cal. July 25, 2014) (collecting cases).

In this case, Debtor never claimed an ownership interest in the mining equipment used

RESPONSE OF WTT TOKEN HOLDERS AND MINERS
TO TRUSTEE'S MOTION FOR ORDER APPROVING
SALE OF TNT FACILITY - 5



1201 Pacific Ave., Ste. 1200
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

19994-1/SJD/931237

18-03197-FPC7    Doc 592    Filed 05/07/20    Entered 05/07/20 23:49:51    Pg 5 of 9

at its facilities prepetition. Despite operating the TNT Facility and utilizing equipment, the Court has never determined that the bankruptcy estate did in fact have an interest in the mining equipment, regardless of whether the Debtor placed a sticker on certain machines.[3] The Trustee also incorrectly conflates his arguments regarding whether the Owners are equity holders in the Debtor by virtue of the WTT Tokens with the question about ownership of digital mining machines purchased from third parties. These are two different property interests and the Court should analyze them separately. The sale of TNT includes mining machines but does not include WTT Tokens.

The Trustee also attempts to persuade the Court to authorize the sale of mining machines by mischaracterizing both the claims filed by the Owners and the basis for the administrative expense. The majority of Owners filed claims at the outset of the bankruptcy case without a clear understanding of the technical terms in bankruptcy law and in the hope of recovering the projected loss of use of the machines—not as some sleight of hand to deprive the bankruptcy estate of funds for administrative professional fees. Instead, the claims often include calculations for projected WTT Token rental fees, loss of use from the hosting services prepaid by the individual Owners and similar amounts. Some of the claims could also be interpreted to have a basis in the Debtor's conversion of the property, something that clearly asserts a right to ownership. *See* Claim 78-1. Trustee has presented no basis for the Court to find that an owner of property used by the Debtor cannot have both an administrative expense claim for the postpetition benefit and a general unsecured claim for the prepetition conduct or breach of contract for hosting services. There is also no indication that the Owners intended to make a gift of their property to the Debtor and the Court should not work such an injustice on individual creditors without training in bankruptcy jargon.

---

[3] On information and belief, the "property of Giga Watt" sticker was nothing more than a means for the Debtor's employees to identify the machines at the facilities as part of the Giga Watt hosting program and not as an indication of ownership. The stickers allowed machines shipped off for service to return to the correct facility.



Trustee's argument that he can subordinate the claims of the Owners pursuant to § 510(b) assumes that the digital mining machines (as distinguished from the WTT Tokens) are somehow securities. The Court has not ruled on this issue and the Trustee has cited no controlling authority on point. The Court should not allow a sale of the mining machines until the question of the bankruptcy estate's ownership is decided.[4] Furthermore, the Court should not waive the 14-day stay for the appeal period in Rule 6004(h) given the reduced noticing time and the interests at stake.

### B. The Sale Provisions Fail to Adequately Protect the Owners.

In all § 363 sales, the ultimate question is whether the bankruptcy Code authorizes the sale and, if so, whether such sale is fair and reasonable under the circumstances. In this case, the Owners aver that the Code does not authorize the sale at all. In the alternative, the Court should not approve the sale because the sale price is not fair and because the sale does not adequately protect the Owners.

Trustee is offering to sell the TNT facility essentially at a fire sale price in order to avoid issues with the lease and the halving-event referenced in the Motion. Neither of these issues is exigent and both were known to the Trustee for some time. Obviously, the halving-event is not an impediment to some use and value of the mining machines because they are being offered as part of the sale and still maintain substantial value in the public marketplace. It is a reasonable assumption that the price may also reflect the halving event already and therefore the timing for this motion is not so critical as to require the Court ignore the legitimate and superior property rights asserted by the Owners. Unfortunately, the Owners are left to guess as to the value allocated to the machines as the Trustee's Motion fails to identify what portion of the purchase price is attributable to each machine sold or even how many machines in total are included with the sale.

---

[4] In order to determine this issue it is likely that the Trustee will need to file an adversary proceeding. *In re Cogliano*, 355 B.R. 792, 804 (9th Cir. BAP 2006).



| | |
|---|---|
| 1 | As a piece of equipment, digital mining machines are subject to upgrades, patches, etc. |
| 2 | to extend their useful life. For this reason, such machines still command prices that exceed $100 |
| 3 | per unit on marketplaces such as Ebay. Given the amount of machines the Trustee proposes to |
| 4 | sell, the sales price does not appear to approximate anything close to the value of the machines |
| 5 | and thus, there is a substantial risk that the machines will be sold for essentially nothing and the |
| 6 | value lost forever. |

As there is a substantial question about ownership in this case, the Court should not allow the sale to proceed absent adequate protection of the Owners' interests in the mining machines. For avoidance of doubt, the Owners specifically request that the Court require the Trustee provide some form of adequate protection pursuant to § 363(e) that will provide them with the indubitable equivalent of their ownership interest in certain mining machines in the event the Court agrees that the Debtor's property does not include machines purchased from third parties (including Debtor's affiliate) and shipped to its facilities for purposes of hosting.

## **CONCLUSION**

**WHEREFORE**, The Court should deny the Trustee's Motion for an order allowing the sale of the TNT Facility until a hearing can be held on the administrative claim and ownership issues presented by the Owners. In the alternative, if the Court does not agree to determine the issue of ownership prior to authorizing the sale, the Court should require that the Trustee adequately protect the Owners' interest in the property pending a final hearing on this matter.

DATED this 7th day of May, 2020.

EISENHOWER CARLSON PLLC

By: */s/ Samuel J. Dart*
    Samuel J. Dart, WSBA #47871
    Attorney for Owners

RESPONSE OF WTT TOKEN HOLDERS AND MINERS
TO TRUSTEE'S MOTION FOR ORDER APPROVING
SALE OF TNT FACILITY - 8



1201 Pacific Ave., Ste. 1200
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

19994-1/SJD/931237

18-03197-FPC7    Doc 592    Filed 05/07/20    Entered 05/07/20 23:49:51    Pg 8 of 9

# CERTIFICATE OF SERVICE

Samuel Dart declares and states as follows:

I am an attorney at the law firm of Eisenhower Carlson PLLC, am over the age of 18, and otherwise competent to testify.

On May 7, 2020, a true and correct copy of the Response to the Trustee's Motion for Order Approving Sale of TNT Facility was sent via ECF notification to the following:

Chapter 11 Trustee Mark Waldron

Pamela Egan as attorney for the Trustee

Ben Ellison as attorney for the Official Committee of Unsecured Creditors

The United States Trustee

All parties requesting special notice

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED at Gig Harbor, Washington this 7th day of May, 2020.

*/s/ Samuel J. Dart*_____
Samuel J. Dart, Attorney

RESPONSE OF WTT TOKEN HOLDERS AND MINERS
TO TRUSTEE'S MOTION FOR ORDER APPROVING
SALE OF TNT FACILITY - 9



1201 Pacific Ave., Ste. 1200
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

19994-1/SJD/931237