The Honorable Frederick P. Corbit

BANKRUPTCY COURT FOR THE

EASTERN DISTRICT OF WASHINGTON AT SPOKANE

| | |
|---|---|
| In re Giga Watt, Inc.,<br><br>Debtor. | UNSECURED CREDITOR COMMITTEE'S RESPONSE TO TRUSTEE'S SECOND INTERIM MOTION FOR COMPENSATION AND MOTION FOR PAYMENT<br><br>CASE NO: 18-03197 FPC 11 |

## I. PRELIMINARY STATEMENT

The Committee of Unsecured Creditors ("Committee") of the Chapter 11 Bankruptcy Estate of Giga Watt, Inc. hereby responds to the Chapter 11 Trustee's pending motion to pay previously-allowed compensation. ECF No. 641. The Committee is only concerned with ECF No. 640 to the extent that the Trustee may seek further compensation – both on an hourly as well as a percentage basis of distributions.

## II. FACTUAL BACKGROUND

On November 20, 2019, the Court previously approved the Trustee's first interim motion for compensation on a provisional basis – allowing the entire amount of $100,480.06 –

COMMITTEE RESPONSE - 1

*but requiring that the Trustee wait until the solvency of this Chapter 11 estate became more clear before paying himself the full amount.*

The Trustee now seeks payment of the remainder balance amount of that previous fee application $38,097.70, and to obtain approval of an additional $65,576.49 in fees for work conducted over the last six months without addressing the issue that gave the Court pause more than 6 months ago.

### III. ARGUMENT

By any objective standard, the Estate is in a more precarious position now than it was back in November. The Estate no longer operates any cryptocurrency mining equipment as it did in the past, and as the case persists, any administrative insolvency will simply deepen.

Under these circumstances, the Trustee needs to take decisive moves to wrap up the case. Moreover, it is not clear that when that time eventually comes, the Trustee could even confirm a plan with unsecured creditor support – as the frayed relationship with the Committee evidences wide-spread unpopularity with the stakeholders in this case in general.[1]

We are still not at a place where the Chapter 11 estate can show that it is administratively solvent. Rather, the Trustee's legal counsel has not had any professional fees approved yet in this case, and her claim for legal fees exceeds – on information and belief – exceeds $700,000.

---

[1] Indeed, at the last hearing concerning adjudication of token holder rights, the Trustee's counsel mused about potentially forcing 290 of the 330 proof of claims holders in this case to appear as defendants for her litigation. While the legal position articulated here may persuade some, a Chapter 11 estate should not be tilting at windmills and overextending itself, when financial realities requires a more unambitious course of action.

18-03197-FPC7    Doc 655    Filed 07/29/20    Entered 07/29/20 23:52:27    Pg 2 of 5

Add on an additional $150,000 for the combined professional fees of the Committee, DBS Law, and successor firm, Salish Seal Legal PLLC, as well as PUD special counsel Beveridge & Diamond, and it becomes clear that the estate is presently insolvent on a balance sheet basis.[2]

If all professional fees were to freeze at this point – and that is not going to happen – there would still be a deficit of $250,000 to satisfy outstanding fees. If the motion is granted (so $38,097.70 deducted from the present balance), the liquid value of the estate would be $660k, against $915,00 in liabilities, made up of $65,000 (new Trustee fees ) + $700,000 (Trustee's Counsel) + Affiliated Committee Costs ($150,000).

In short, the Committee believes that the Trustee should only be paid for past work if he provides assurance as to how this work fits in the future services that still need to be rendered in this case. Indeed, the parties in interest would do the Trustee a disservice if the present fee motions were awarded, and past fees paid, without specifically and unmistakably putting the Trustee on notice that this would be the last time such motions are approved, and that his discretion moving forward is substantially constrained at this point without some unexpected showing of an immediate liquidity event justifying the existing *status quo* to this case

The Committee still do not understand the future plan for this case, and so is adamant that the Trustee provide a budget that reflects the reasonable financial realities of this Chapter 11 case, and narrowly tailors work to simply that which is absolutely necessary. The Trustee

---

[2] The latest Monthly Operating Report, ECF No. 649, discloses cash on hand of $398,980, with only a condominium worth ~$300,000 to sell.

COMMITTEE RESPONSE - 3

should be making his way to the exit in this case posthaste, and should have begun this months ago. The Committee has orally and in writing repeatedly conveyed this concern.[3]

Indeed, economic realities dictate that contingent fee law firms be brought in to handle the final (postconfirmation) phase of the Chapter 11 case that requires the prosecution of heavy litigation claims; furthermore, all efforts should be focused on drafting and obtaining approval of a simple Chapter 11 plan within 30 days.

## IV. CONCLUSION

The agreed mechanism in this case is for there to be an approved plan, and respectfully, the Court should tie payment of the Trustee's past fees to a firm commitment by the Trustee to (a) explain how he will obtain sufficient votes – *when there is no present payment to anyone other than administrative professionals* – to confirm a plan of reorganization, and (b) commit to filing a confirmable plan within 30 days. The reasonable reticence expressed by the Court on November 20, 2019 is relevant now more than ever.

---

[3] The Court has been warning all the Parties here since November 2019 that things might not be all right in this case. The Committee further raised the alarm on December 12, 2019 by filing its own Disclosure Statement that there were a trifecta of adverse impending events that the Estate was ill-equipped to handle, including obsolescence of mining equipment and adverse regulatory rate increases.

Since December, all that has outwardly been completed by the Trustee to provide recoveries for creditors has been completion of a mediation and sale of the TNT facility for a fire sale price, coincidently timed to preempt a motion by a large constituency of unsecured creditor to have their alleged personal property stored at TNT returned to them. If when it is all said and done the attendant costs of the TNT sale exceed the sale price, that will be an unexpected silver lining to this case. In short, the Committee was raising the alarm back in December, but the Trustee seems not to have acknowledged it in any meaningful way in the subsequent 8 months, and now professional fees exceed fees on hand, or fees reasonably expected to be on hand for some time.

DATED this 29th day of July, 2020.

SALISH SEA LEGAL PLLC

By /s. B. Ellison
Benjamin Ellison, WSBA No. 48315
2212 Queen Anne Ave. N., No. 719
Seattle, WA 98109
salishsealegal@outlook.com
*Attorney for the Committee*

COMMITTEE RESPONSE - 5