# EXHIBIT B

## (Real Estate Purchase and Sale Agreement)

Authentisign ID: 371B3B8B-17E0-4A61-AC78-B3210E5D4D5A

Form 36
Counteroffer Addendum
Rev. 8/11
Page 1 of 1

©Copyright 2011
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**COUNTEROFFER ADDENDUM**
**TO REAL ESTATE PURCHASE AND SALE AGREEMENT**

All terms and conditions of the offer (Real Estate Purchase and Sale Agreement) dated __August 10, 2020__ , 1

concerning 23684     Nw Cliffe Pointe Road 8-B     Quincy     WA   98848 (the "Property"), 2
       Address                          City             State    Zip

by, __Renee Hawkes & Gregory Lawrence Griffith__ , as _____ Buyer _____ 3

and the undersigned __Mark Waldron Chapter 11 Trustee for GIGA Watts__ , as _____ Seller _____ 4

are accepted, except for the following changes. 5

☑ **The Purchase Price shall be $** 315,000.00        three hundred and fifteen thousand dollars 6

_____ 7

☑ **Other.** 8

    1) NWMLS Form 21 #11 - Closing shall be September 30, 2020 or earlier, but in no event no earlier than 14 days
after court approval. 9

    2) NWMLS Form 21 #16 - Resale Certificate to be delivered to buyer withing 10 days after mutual agreement. 10
    11
    12
    3) NWMLS Form 21 page 5 of 5 Section "w" shall be removed from this Purchase and Sale Agreement. 13
    14
    4) NWMLS Form 21 #19 - Trustee's Addendum shall be attached to this Purchase and Sale Agreement. 15
    16
    5) NWMLS Form 22D - section 3 & 4 shall be removed from this Addendum. 17
    18
    6) This offer is subject to Bankruptcy Court Approval. 19
    20
    21
    22
    **MARK D. WALDRON**            [RMH]    08/12/2020    23
    **Chapter 11 Trustee**    24
    Giga Watt, Inc., Case No. 18-03197    25
    6711 Regents Blvd. W., Suite B        [GLG]    08/12/2020    26
    Tacoma, WA 98466
    Phone: 253-565-5800
    Email: gigawatt@mwaldronlaw.com

This counteroffer shall expire at 9:00 p.m. on __8-12-20__ (If not filled in, two days after it is delivered), 27
unless it is sooner withdrawn. Acceptance shall not be effective until a signed copy is received by the counterofferor, 28
their broker or at the licensed office of their broker. If this counteroffer is not so accepted, it shall lapse and the 29
Earnest Money shall be refunded to Buyer. 30

All other terms and conditions of the above offer are incorporated herein by reference as though fully set forth. 31

_____ __8/12/20__     _____ _____
Signature            Date               Signature                  Date

The above counteroffer is accepted.

Renee Michelle Hawkes    08/12/2020         Authentisign    Gregory Lawrence Griffith    08/12/2020
Signature 8:54 AM PDT           Date                 Signature 55:36 AM PDT    Date

Authentisign ID: 371B3B8B-17E0-4A61-AC78-B3210E5D4D5A

Authentisign ID: 76B1DE73-9460-4193-8BD5-C7482C0001A5

Form 28
Condominium Purchase & Sale
Rev. 7/19
Page 1 of 5

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**CONDOMINIUM PURCHASE AND SALE AGREEMENT**
**SPECIFIC TERMS**

1. Date: **August 10, 2020**    MLS No.: **1593661**    Offer Expiration Date: **8/11/2020**
2. Buyer: **Renee Hawkes**    **Gregory Lawrence Griffith**    **Unmarried persons**
   Buyer      Buyer      Status
3. Seller: **Mark Waldron Chapter 11**    **Trustee for GIGA Watt, Inc**
   Seller      Seller
4. Property: Tax Parcel No(s).: **320350237**      Unit No.: **8B**
   Residential Condominium: **Cave B Condominiums**    Parking No.: **1**    ; Storage No.:
   **23684    NW Cliffe Pointe Road**    **Quincy**    **Grant**    **WA**   **98848**
   Address      City      County      State   Zip
   ☐ Declaration Recording No.:      ☑ Declaration Recording No. attached as Exhibit A
   ☐ Declaration Recording No. Not Available, attach NWMLS Form 29
5. Included Items: ☐ stove/range; ☑ refrigerator; ☑ washer; ☐ dryer; ☑ dishwasher; ☐ security system; ☐ satellite dish; ☐ wood stove; ☐ fireplace insert; ☐ hot tub; ☐ attached television(s); ☐ attached speaker(s); ☑ microwave; ☐ generator; ☐ other
6. Purchase Price: $ **300,000.00**    **Three Hundred Thousand**    Dollars
7. Earnest Money: $ **3,500.00**    ☐ Check; ☐ Note; ☑ Other **wire**    (held by ☐ Selling Firm; ☑ Closing Agent)
8. Default: (check only one) ☑ Forfeiture of Earnest Money; ☐ Seller's Election of Remedies
9. Title Insurance Company: **Frontier**
10. Closing Agent: **WFG**    **Maschel 253-761-8000**
    Company      Individual (optional)
11. Closing Date: **9/30/2020**    ; Possession Date: ☐ on Closing; ☑ Other **9/30/20 or before**
12. Services of Closing Agent for Payment of Utilities: ☑ Requested (attach NWMLS Form 22K); ☐ Waived
13. Charges/Assessments Levied Before but Due After Closing: ☐ assumed by Buyer; ☑ prepaid in full by Seller at Closing
14. Seller Citizenship (FIRPTA): Seller ☐ is; ☑ is not a foreign person for purposes of U.S. income taxation
15. New Construction or Conversion: ☐ is (attach NWMLS Form 29); ☑ is not
16. Public Offering Statement or Resale Certificate (whichever is applicable): ☐ received _____ ; ☑ deliver to Buyer **5** days after mutual acceptance.
17. Condominium Assessment: $ **195.00** per month and Deposit equal to **1** month's assessment at Closing
18. Agency Disclosure:    Selling Broker represents: ☑ Buyer; ☐ Seller; ☐ both parties; ☐ neither party
               Listing Broker represents: ☑ Seller; ☐ both parties
19. Addenda: **22D(Optional Clauses)**    **22A(Financing)**    **35(Inspection)**

Authentisign
*Renee Michelle Hawkes*    08/10/2020
Buyer's Signature Hawkes 6:02:07 PM PDT    Date

*Gregory Lawrence Griffith*    08/10/2020
Buyer's Signature Griffith 6:02:57 PM PDT    Date

**9617    NE 28th St**
Buyer's Address
**Clyde Hill**      **WA**    **98004**
City, State, Zip

Phone No.      Fax No.
**rhawkes@buildbeyond.com**
Buyer's E-mail Address
**COMPASS**      **5813**
Selling Firm      MLS Office No.
**Katy Gamlem**      **104896**
Selling Broker (Print)      MLS LAG No.
**(425) 242-6440**    **(425) 765-0087**    **(425) 642-0025**
Firm Phone No.    Broker Phone No.    Firm Fax No.
**contractsseattle@compass.com**
Selling Firm Document E-mail Address
**Homes@KatyGamlem.com**
Selling Broker's E-mail Address
**120963**      **24503**
Selling Broker DOL License No.    Selling Firm DOL License No.

Seller's Signature    Date
MARK D. WALDRON
Chapter 11 Trustee
Giga Watt, Inc., Case No. 18-03197
6711 Regents Blvd. W., Suite B
Tacoma, WA 98466
Phone: 253-565-5800
Email: gigawatt@mwaldronlaw.com

Seller's Signature    Date
Seller's Address
City, State, Zip
**(000) 000-0000**
Phone No.      Fax No.
Seller's E-mail Address
**RE/MAX Northwest Realtors**      **890**
Listing Firm      MLS Office No.
**Karl Roberts**      **36720**
Listing Broker (Print)      MLS LAG No.
**(253) 853-3522**    **(253) 222-5235**    **(253) 853-3532**
Firm Phone No.    Broker Phone No.    Firm Fax No.
**notice@northwestrealtors.com**
Listing Firm Document E-mail Address
**karl@karlroberts.com**
Listing Broker's E-mail Address
**9629**      **24542**
Listing Broker DOL License No.    Listing Firm DOL License No.

Authentisign ID: 371B3B8B-17E0-4A61-AC78-B3210E5D4D5A

Authentisign ID: 70B1DE73-9480-4193-8BB5-C7482C0001A5

Form 28
Condominium Purchase & Sale
Rev. 7/19
Page 2 of 5

**CONDOMINIUM PURCHASE AND SALE AGREEMENT**
**GENERAL TERMS**
*Continued*

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

a. **Purchase Price.** Buyer shall pay to Seller the Purchase Price, including the Earnest Money, in cash at Closing, unless 1
otherwise specified in this Agreement. Buyer represents that Buyer has sufficient funds to close this sale in accordance 2
with this Agreement and is not relying on any contingent source of funds, including funds from loans, the sale of other 3
property, gifts, retirement, or future earnings, except to the extent otherwise specified in this Agreement. The parties shall 4
use caution when wiring funds to avoid potential wire fraud. Before wiring funds, the party wiring funds shall take steps 5
to confirm any wire instructions via an independently verified phone number and other appropriate measures. 6

b. **Earnest Money.** Buyer shall deliver the Earnest Money within 2 days after mutual acceptance to Selling Broker or to Closing 7
Agent. If Buyer delivers the Earnest Money to Selling Broker, Selling Broker will deposit any check to be held by Selling Firm, 8
or deliver any Earnest Money to be held by Closing Agent, within 3 days of receipt or mutual acceptance, whichever occurs 9
later. If the Earnest Money is held by Selling Firm and is over $10,000.00 It shall be deposited into an interest bearing trust 10
account in Selling Firm's name provided that Buyer completes an IRS Form W-9. Interest, if any, after deduction of bank 11
charges and fees, will be paid to Buyer. Buyer shall reimburse Selling Firm for bank charges and fees in excess of the interest 12
earned, if any. If the Earnest Money held by Selling Firm is over $10,000.00 Buyer has the option to require Selling Firm to 13
deposit the Earnest Money into the Housing Trust Fund Account, with the interest paid to the State Treasurer, if both Seller 14
and Buyer so agree in writing. If the Buyer does not complete an IRS Form W-9 before Selling Firm must deposit the Earnest 15
Money or the Earnest Money is $10,000.00 or less, the Earnest Money shall be deposited into the Housing Trust Fund 16
Account. Selling Firm may transfer the Earnest Money to Closing Agent at Closing. If all or part of the Earnest Money is to be 17
refunded to Buyer and any such costs remain unpaid, the Selling Firm or Closing Agent may deduct and pay them therefrom. 18
The parties instruct Closing Agent to provide written verification of receipt of the Earnest Money and notice of dishonor of any 19
check to the parties and Brokers at the addresses and/or fax numbers provided herein. 20

Upon termination of this Agreement, a party or the Closing Agent may deliver a form authorizing the release of Earnest 21
Money to the other party or the parties. The party(s) shall execute such form and deliver the same to the Closing Agent. If 22
either party fails to execute the release form, a party may make a written demand to the Closing Agent for the Earnest 23
Money. Pursuant to RCW 64.04, Closing Agent shall deliver notice of the demand to the other party within 15 days. If the 24
other party does not object to the demand within 20 days of Closing Agent's notice, Closing Agent shall disburse the Earnest 25
Money to the party making the demand within 10 days of the expiration of the 20 day period. If Closing Agent timely receives 26
an objection or an inconsistent demand from the other party, Closing Agent shall commence an interpleader action within 60 27
days of such objection or inconsistent demand, unless the parties provide subsequent consistent instructions to Closing 28
Agent to disburse the earnest money or refrain from commencing an interpleader action for a specified period of time. 29
Pursuant to RCW 4.28.080, the parties consent to service of the summons and complaint for an interpleader action by first 30
class mail, postage prepaid at the party's usual mailing address or the address identified in this Agreement. If the Closing 31
Agent complies with the preceding process, each party shall be deemed to have released Closing Agent from any and all 32
claims or liability related to the disbursal of the Earnest Money. If either party fails to authorize the release of the Earnest 33
Money to the other party when required to do so under this Agreement, that party shall be in breach of this Agreement. For 34
the purposes of this section, the term Closing Agent includes a Selling Firm holding the Earnest Money. The parties 35
authorize the party commencing an interpleader action to deduct up to $500.00 for the costs thereof. 36

c. **Included Items.** Any of the following items, including items identified in Specific Term No. 5 if the corresponding box is 37
checked, located in or on the Property are included in the sale: built-in appliances; wall-to-wall carpeting; curtains, drapes 38
and all other window treatments; window and door screens; awnings; storm doors and windows; installed television 39
antennas; ventilating, air conditioning and heating fixtures; trash compactor; fireplace doors, gas logs and gas log lighters; 40
irrigation fixtures; electric garage door openers; water heaters; installed electrical fixtures; lighting fixtures; shrubs, plants 41
and trees planted in the ground; and other fixtures; and all associated operating remote controls. Unless otherwise agreed, 42
if any of the above items are leased or encumbered, Seller shall acquire clear title before Closing. 43

d. **Condition of Title.** Unless otherwise specified in this Agreement, title to the Property shall be marketable at Closing. The 44
following shall not cause the title to be unmarketable: rights, reservations, covenants, conditions and restrictions, presently 45
of record and general to the area; easements and encroachments, not materially affecting the value of or unduly interfering 46
with Buyer's reasonable use of the Property; and reserved oil and/or mining rights. Seller shall not convey or reserve any 47
oil and/or mineral rights after mutual acceptance without Buyer's written consent. Monetary encumbrances or liens not 48
assumed by Buyer, shall be paid or discharged by Seller on or before Closing. Title shall be conveyed by a Statutory 49
Warranty Deed. If this Agreement is for conveyance of a buyer's interest in a Real Estate Contract, the Statutory Warranty 50
Deed shall include a buyer's assignment of the contract sufficient to convey after acquired title. 51

e. **Title Insurance.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to apply for the then-current ALTA 52
form of Homeowner's Policy of Title Insurance for One-to-Four Family Residence, from the Title Insurance Company. If 53
Seller previously received a preliminary commitment from a Title Insurance Company that Buyer declines to use, Buyer 54
shall pay any cancellation fees owing to the original Title Insurance Company. Otherwise, the party applying for title 55
insurance shall pay any title cancellation fee, in the event such a fee is assessed. If the Title Insurance Company selected 56
by the parties will not issue a Homeowner's Policy for the Property, the parties agree that the Title Insurance Company 57
shall instead issue the then-current ALTA standard form Owner's Policy, together with homeowner's additional protection 58
and inflation protection endorsements, if available. The Title Insurance Company shall send a copy of the preliminary 59
commitment to Seller, Listing Broker, Buyer and Selling Broker. The preliminary commitment, and the title policy to be 60

| _RMSL_ 08/10/2020 | _gLg_ 08/10/2020 | _[signature]_ 8/12/20 | |
|---|---|---|---|
| Buyer's Initials    Date | Buyer's Initials    Date | Seller's Initials    Date | Seller's Initials    Date |

Authentisign ID: 371B3B6B-17E0-4A61-AC76-B3210E5D4D5A

Authentisign ID: 76B1DE73-9480-4103-8BB5-C7482C0001A5

Form 28
Condominium Purchase & Sale
Rev. 7/19
Page 3 of 5

**CONDOMINIUM PURCHASE AND SALE AGREEMENT**
**GENERAL TERMS**
*Continued*

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

issued, shall contain no exceptions other than the General Exclusions and Exceptions in the Policy and Special Exceptions consistent with the Condition of Title herein provided. If title cannot be made so insurable prior to the Closing Date, then as | 61 62

Buyer's sole and exclusive remedy, the Earnest Money shall, unless Buyer elects to waive such defects or encumbrances, be refunded to the Buyer, less any unpaid costs described in this Agreement, and this Agreement shall thereupon be terminated. Buyer shall have no right to specific performance or damages as a consequence of Seller's inability to provide insurable title. | 63 64 65

f. **Closing and Possession.** This sale shall be closed by the Closing Agent on the Closing Date. If the Closing Date falls on a Saturday, Sunday, legal holiday as defined in RCW 1.16.050, or day when the county recording office is closed, the Closing Agent shall close the transaction on the next day that is not a Saturday, Sunday, legal holiday, or day when the county recording office is closed. "Closing" means the date on which all documents are recorded and the sale proceeds are available to Seller. Seller shall deliver keys and garage door remotes to Buyer on the Closing Date or on the Possession Date, whichever occurs first. Buyer shall be entitled to possession at 9:00 p.m. on the Possession Date. Seller shall maintain the Property in its present condition, normal wear and tear excepted, until the Buyer is provided possession. Seller shall either repair or replace any system or appliance (including, but not limited to plumbing, heat, electrical, and all included items) that becomes inoperative or malfunctions prior to Closing with a system or appliance of at least equal quality. Buyer reserves the right to walk through the Property within 5 days of Closing to verify that Seller has maintained the Property and systems/appliances as required by this paragraph. Seller shall not enter into or modify existing leases or rental agreements, service contracts, or other agreements affecting the Property which have terms extending beyond Closing without first obtaining Buyer's consent, which shall not be unreasonably withheld. If possession transfers at a time other than Closing, the parties shall execute NWMLS Form 65A (Rental Agreement/Occupancy Prior to Closing) or NWMLS Form 65B (Rental Agreement/Seller Occupancy After Closing) (or alternative rental agreements) and are advised of the need to contact their respective insurance companies to assure appropriate hazard and liability insurance policies are in place, as applicable. | 66 67 68 69 70 71 72 73 74 75 76 77 78 79 80 81

RCW 19.27.530 requires the seller of any owner-occupied single-family residence to equip the residence with a carbon monoxide alarm(s) in accordance with the state building code before a buyer or any other person may legally occupy the residence following the sale. RCW 43.44.110 requires the seller of a dwelling unit, that does not have at least one smoke detection device, to provide at least one smoke detection device in the unit before the buyer or any other person occupies the unit following a sale. The parties acknowledge that the Brokers are not responsible for ensuring that Seller complies with RCW 19.27.530 or RCW 43.44.110. Buyer and Seller shall hold the Brokers and their Firms harmless from any claim resulting from Seller's failure to install a carbon monoxide alarm(s) or smoke detector(s) in the Property. | 82 83 84 85 86 87 88

g. **Section 1031 Like-Kind Exchange.** If either Buyer or Seller intends for this transaction to be a part of a Section 1031 like-kind exchange, then the other party shall cooperate in the completion of the like-kind exchange so long as the cooperating party incurs no additional liability in doing so, and so long as any expenses (including attorneys' fees and costs) incurred by the cooperating party that are related only to the exchange are paid or reimbursed to the cooperating party at or prior to Closing. Notwithstanding the Assignment paragraph of this Agreement, any party completing a Section 1031 like-kind exchange may assign this Agreement to its qualified intermediary or any entity set up for the purposes of completing a reverse exchange. | 89 90 91 92 93 94 95

h. **Closing Costs and Prorations and Charges and Assessments.** Seller and Buyer shall each pay one-half of the escrow fee unless otherwise required by applicable FHA or VA regulations. Taxes for the current year, rent, interest, and lienable homeowner's association dues shall be prorated as of Closing. Buyer shall pay Buyer's loan costs, including credit report, appraisal charge and lender's title insurance, unless provided otherwise in this Agreement. If any payments are delinquent on encumbrances which will remain after Closing, Closing Agent is instructed to pay such delinquencies at Closing from money due, or to be paid by, Seller. Buyer shall pay for remaining fuel in the fuel tank if, prior to Closing, Seller obtains a written statement from the supplier as to the quantity and current price and provides such statement to the Closing Agent. Seller shall pay all utility charges, including unbilled charges. Unless waived in Specific Term No. 12, Seller and Buyer request the services of Closing Agent in disbursing funds necessary to satisfy unpaid utility charges in accordance with RCW 60.80 and Seller shall provide the names and addresses of all utilities providing service to the Property and having lien rights (attach NWMLS Form 22K Identification of Utilities or equivalent). | 96 97 98 99 100 101 102 103 104 105 106

Buyer is advised to verify the existence and amount of any local improvement district, capacity or impact charges or other assessments that may be charged against the Property before or after Closing. Seller will pay such charges that are or become due on or before Closing. Charges levied before Closing, but becoming due after Closing shall be paid as agreed in Specific Term No. 13. | 107 108 109 110

i. **Sale Information.** Listing Broker and Selling Broker are authorized to report this Agreement (including price and all terms) to the Multiple Listing Service that published it and to its members, financing institutions, appraisers, and anyone else related to this sale. Buyer and Seller expressly authorize all Closing Agents, appraisers, title insurance companies, and others related to this Sale, to furnish the Listing Broker and/or Selling Broker, on request, any and all information and copies of documents concerning this sale. | 111 112 113 114 115

j. **Seller Citizenship and FIRPTA.** Seller warrants that the identification of Seller's citizenship status for purposes of U.S. income taxation in Specific Term No. 14 is correct. Seller shall execute a certification (NWMLS Form 22E or equivalent) under the Foreign Investment in Real Property Tax Act ("FIRPTA") at Closing and provide the certification to the Closing Agent. If Seller is a foreign person for purposes of U.S. income taxation, and this transaction is not otherwise exempt from FIRPTA, Closing Agent is instructed to withhold and pay the required amount to the Internal Revenue Service. | 116 117 118 119 120

| _RAH_ 08/10/2020 | _aLg_ 08/10/2020 | _[signature]_ 8/12/20 | |
| Buyer's Initials Date | Buyer's Initials Date | Seller's Initials Date | Seller's Initials Date |

Authentisign ID: 371B3B8B-17E0-4A61-AC78-B3210E5D4D5A

Authentisign ID: 76B1DE73-9480-4193-8BB5-C7482C0001A5

Form 28
Condominium Purchase & Sale
Rev. 7/19
Page 4 of 5

**CONDOMINIUM PURCHASE AND SALE AGREEMENT**
**GENERAL TERMS**
*Continued*

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

k. **Notices and Delivery of Documents.** Any notice related to this Agreement (including revocations of offers or counteroffers) must be in writing. Notices to Seller must be signed by at least one Buyer and shall be deemed delivered only when the notice is received by Seller, by Listing Broker, or at the licensed office of Listing Broker. Notices to Buyer must be signed by at least one Seller and shall be deemed delivered only when the notice is received by Buyer, by Selling Broker, or at the licensed office of Selling Broker. Documents related to this Agreement, such as NWMLS Form 17, Information on Lead-Based Paint and Lead-Based Paint Hazards, Public Offering Statement or Resale Certificate, and all other documents shall be delivered pursuant to this paragraph. Buyer and Seller must keep Selling Broker and Listing Broker advised of their whereabouts in order to receive prompt notification of receipt of a notice.

Facsimile transmission of any notice or document shall constitute delivery. E-mail transmission of any notice or document (or a direct link to such notice or document) shall constitute delivery when: (i) the e-mail is sent to both Selling Broker and Selling Firm or both Listing Broker and Listing Firm at the e-mail addresses specified on page one of this Agreement; or (ii) Selling Broker or Listing Broker provide written acknowledgment of receipt of the e-mail (an automatic e-mail reply does not constitute written acknowledgment). At the request of either party, or the Closing Agent, the parties will confirm facsimile or e-mail transmitted signatures by signing an original document.

l. **Computation of Time.** Unless otherwise specified in this Agreement, any period of time measured in days and stated in this Agreement shall start on the day following the event commencing the period and shall expire at 9:00 p.m. of the last calendar day of the specified period of time. Except for the Possession Date, if the last day is a Saturday, Sunday or legal holiday as defined in RCW 1.16.050, the specified period of time shall expire on the next day that is not a Saturday, Sunday or legal holiday. Any specified period of 5 days or less, except for any time period relating to the Possession Date, shall not include Saturdays, Sundays or legal holidays. If the parties agree that an event will occur on a specific calendar date, the event shall occur on that date, except for the Closing Date, which, if it falls on a Saturday, Sunday, legal holiday as defined in RCW 1.16.050, or day when the county recording office is closed, shall occur on the next day that is not a Saturday, Sunday, legal holiday or day when the county recording office is closed. If the parties agree upon and attach a legal description after this Agreement is signed by the offeree and delivered to the offeror, then for the purposes of computing time, mutual acceptance shall be deemed to be on the date of delivery of an accepted offer or counteroffer to the offeror, rather than on the date the legal description is attached. Time is of the essence of this Agreement.

m. **Integration and Electronic Signatures.** This Agreement constitutes the entire understanding between the parties and supersedes all prior or contemporaneous understandings and representations. No modification of this Agreement shall be effective unless agreed in writing and signed by Buyer and Seller. The parties acknowledge that a signature in electronic form has the same legal effect and validity as a handwritten signature.

n. **Assignment.** Buyer may not assign this Agreement, or Buyer's rights hereunder, without Seller's prior written consent, unless the parties indicate that assignment is permitted by the addition of "and/or assigns" on the line identifying the Buyer on the first page of this Agreement.

o. **Default.** In the event Buyer fails, without legal excuse, to complete the purchase of the Property, then the following provision, as identified in Specific Term No. 8, shall apply:

i. **Forfeiture of Earnest Money.** That portion of the Earnest Money that does not exceed five percent (5%) of the Purchase Price shall be forfeited to the Seller as the sole and exclusive remedy available to Seller for such failure.

ii. **Seller's Election of Remedies.** Seller may, at Seller's option, (a) keep the Earnest Money as liquidated damages as the sole and exclusive remedy available to Seller for such failure, (b) bring suit against Buyer for Seller's actual damages, (c) bring suit to specifically enforce this Agreement and recover any incidental damages, or (d) pursue any other rights or remedies available at law or equity.

p. **Professional Advice and Attorneys' Fees.** Buyer and Seller are advised to seek the counsel of an attorney and a certified public accountant to review the terms of this Agreement. Buyer and Seller shall pay their own fees incurred for such review. However, if Buyer or Seller institutes suit against the other concerning this Agreement, or if the party holding the Earnest Money commences an interpleader action, the prevailing party is entitled to reasonable attorneys' fees and expenses.

q. **Offer.** This offer must be accepted by 9:00 p.m. on the Offer Expiration Date, unless sooner withdrawn. Acceptance shall not be effective until a signed copy is received by the other party, the other party's broker, or at the licensed office of the other party's broker pursuant to General Term k. If this offer is not so accepted, it shall lapse and any Earnest Money shall be refunded to Buyer.

r. **Counteroffer.** Any change in the terms presented in an offer or counteroffer, other than the insertion of or change to Seller's name and Seller's warranty of citizenship status, shall be considered a counteroffer. If a party makes a counteroffer, then the other party shall have until 9:00 p.m. on the counteroffer expiration date to accept that counteroffer, unless sooner withdrawn. Acceptance shall not be effective until a signed copy is received by the other party, by the other party's broker, or at the licensed office of the other party's broker pursuant to General Term k. If the counteroffer is not so accepted, it shall lapse and any Earnest Money shall be refunded to Buyer.

s. **Offer and Counteroffer Expiration Date.** If no expiration date is specified for an offer/counteroffer, the offer/counteroffer shall expire 2 days after the offer/counteroffer is delivered by the party making the offer/counteroffer, unless sooner withdrawn.

| Buyer's Initials [RMM] | Date 08/10/2020 | Buyer's Initials [gLg] | Date 08/10/2020 | Seller's Initials [signature] | Date 8/12/20 | Seller's Initials | Date |

AuthentiSign ID: 371B3B8B-17E0-4A61-AC78-B3210E5D4D5A

Authentisign ID: 76B1DE73-9480-4193-8BD5-C7482C0001A5

Form 28
Condominium Purchase & Sale
Rev. 7/19
Page 5 of 5

**CONDOMINIUM PURCHASE AND SALE AGREEMENT**
**GENERAL TERMS**
*Continued*

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

t. **Agency Disclosure.** Selling Firm, Selling Firm's Designated Broker, Selling Broker's Branch Manager (if any) and Selling Broker's Managing Broker (if any) represent the same party that Selling Broker represents. Listing Firm, Listing Firm's Designated Broker, Listing Broker's Branch Manager (if any), and Listing Broker's Managing Broker (if any) represent the same party that the Listing Broker represents. If Selling Broker and Listing Broker are different persons affiliated with the same Firm, then both Buyer and Seller confirm their consent to Designated Broker, Branch Manager (if any), and Managing Broker (if any) representing both parties as dual agents. If Selling Broker and Listing Broker are the same person representing both parties then both Buyer and Seller confirm their consent to that person and his/her Designated Broker, Branch Manager (if any), and Managing Broker (if any) representing both parties as dual agents. All parties acknowledge receipt of the pamphlet entitled "The Law of Real Estate Agency." 179 180 181 182 183 184 185 186 187

u. **Commission.** Seller and Buyer shall pay a commission in accordance with any listing or commission agreement to which they are a party. The Listing Firm's commission shall be apportioned between Listing Firm and Selling Firm as specified in the listing. Seller and Buyer hereby consent to Listing Firm or Selling Firm receiving compensation from more than one party. Seller and Buyer hereby assign to Listing Firm and Selling Firm, as applicable, a portion of their funds in escrow equal to such commission(s) and irrevocably instruct the Closing Agent to disburse the commission(s) directly to the Firm(s). In any action by Listing or Selling Firm to enforce this paragraph, the prevailing party is entitled to court costs and reasonable attorneys' fees. Seller and Buyer agree that the Firms are intended third party beneficiaries under this Agreement. 188 189 190 191 192 193 194

v. **Cancellation Rights/Lead-Based Paint.** If a residential dwelling was built on the Property prior to 1978, and Buyer receives a Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (NWMLS Form 22J) after mutual acceptance, Buyer may rescind this Agreement at any time up to 3 days thereafter. 195 196 197

w. **Information Verification Period.** Buyer shall have 10 days after mutual acceptance to verify all information provided from Seller or Listing Firm related to the Property. This contingency shall be deemed satisfied unless Buyer gives notice identifying the materially inaccurate information within 10 days of mutual acceptance. If Buyer gives timely notice under this section, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 198 199 200 201

x. **Property Condition Disclaimer.** Buyer and Seller agree, that except as provided in this Agreement, all representations and information regarding the Property and the transaction are solely from the Seller or Buyer, and not from any Broker. The parties acknowledge that the Brokers are not responsible for assuring that the parties perform their obligations under this Agreement and that none of the Brokers have agreed to independently investigate or confirm any matter related to this transaction except as stated in this Agreement, or in a separate writing signed by such Broker. In addition, Brokers do not guarantee the value, quality or condition of the Property and some properties may contain building materials, including siding, roofing, ceiling, insulation, electrical, and plumbing, that have been the subject of lawsuits and/or governmental inquiry because of possible defects or health hazards. Some properties may have other defects arising after construction, such as drainage, leakage, pest, rot and mold problems. Brokers do not have the expertise to identify or assess defective products, materials, or conditions. Buyer is urged to use due diligence to inspect the Property to Buyer's satisfaction and to retain inspectors qualified to identify the presence of defective materials and evaluate the condition of the Property as there may be defects that only may be revealed by careful inspection. Buyer is advised to investigate whether there is a sufficient water supply to meet Buyer's needs. Buyer is advised to investigate the cost of insurance for the Property, including, but not limited to homeowner's, flood, earthquake, landslide, and other available coverage. Buyer acknowledges that local ordinances may restrict short term rentals of the Property. Buyer and Seller acknowledge that home protection plans may be available which may provide additional protection and benefit to Buyer and Seller. Brokers may assist the parties with locating and selecting third party service providers, such as inspectors or contractors, but Brokers cannot guarantee or be responsible for the services provided by those third parties. The parties shall exercise their own judgment and due diligence regarding third-party service providers. 202 203 204 205 206 207 208 209 210 211 212 213 214 215 216 217 218 219 220

y. **Public Offering Statement.** This paragraph only applies if a Public Offering Statement is required by RCW 64.34. If Buyer has not received a Public Offering Statement (including the Declaration, Survey Map and Plans, Association Articles of Incorporation, Association Bylaws, Association Rules and Regulations, Association Budget and Association Balance Sheet) Seller shall deliver a Public Offering Statement to Buyer by the date specified in Specific Term No. 16. Buyer shall be conclusively deemed to have approved the Public Offering Statement unless, within 7 days following receipt, Buyer gives notice of disapproval of the same. If Buyer disapproves the Public Offering Statement, this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 221 222 223 224 225 226 227

z. **Resale Certificate.** This paragraph only applies if a Public Offering Statement is NOT required by RCW 64.34. If Buyer has not received a Resale Certificate, Seller shall deliver a Resale Certificate to Buyer by the date specified in Specific Term No. 16. Buyer shall be conclusively deemed to have approved the Resale Certificate unless, within 5 days following receipt, Buyer gives notice of disapproval of the same. If Buyer disapproves the Resale Certificate, this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 228 229 230 231 232

aa. **Condominium Assessment.** The current Condominium Assessment is the amount specified in Specific Term No. 17, but is subject to change from time to time. In addition to Buyer's prorated portion of the Closing month's condominium assessment, a Deposit equal the amount specified in Specific Term No. 17 is required to be paid by Buyer at Closing. 233 234 235

| | | | |
|---|---|---|---|
| *RA13L* 08/10/2020 | *gLg* 08/10/2020 | *(signature)* 8/12/20 | |
| Buyer's Initials       Date | Buyer's Initials       Date | Seller's Initials       Date | Seller's Initials       Date |

Authentisign ID: 371B3B8B-17E0-4A61-AC78-B3210E5D4D5A

Authentisign ID: 76B1DE73-9480-4193-BBB5-C7482C0001A5

Form 35
Inspection Addendum
Rev. 7/19
Page 1 of 2

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## INSPECTION ADDENDUM TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated ___August 10, 2020___  1

between ___Renee Hawkes___     ___Gregory Lawrence Griffith___ ("Buyer")  2
    Buyer            Buyer

and ___Mark Waldron Chapter 11___     ___Trustee for GIGA Watt, Inc___ ("Seller")  3
    Seller            Seller

concerning ___23684___ NW Cliffe Pointe Road    8B    Quincy    WA   98848 (the "Property").  4
    Address            City        State    Zip

1. ☐ a. **INSPECTION CONTINGENCY.** This Agreement is conditioned on Buyer's subjective satisfaction with  5
inspections of the Property and the improvements on the Property. Buyer's inspections may include, at  6
Buyer's option and without limitation, the structural, mechanical and general condition of the  7
improvements to the Property, compliance with building and zoning codes, an inspection of the Property  8
for hazardous materials, a pest inspection, and a soils/stability inspection. The inspection must be  9
performed by Buyer or a person licensed (or exempt from licensing) under Chapter 18.280 RCW. 10

**Sewer Inspection.** Buyer's inspection of the Property ☐ may; ☐ may not (may, if not checked) include 11
an inspection of the sewer system, which may include a sewer line video inspection and assessment and 12
may require the inspector to remove toilets or other fixtures to access the sewer line. 13

**Buyer's Obligations.** All inspections are to be (a) ordered by Buyer, (b) performed by inspectors of 14
Buyer's choice, and (c) completed at Buyer's expense. Buyer shall not alter the Property or any 15
improvements on the Property without first obtaining Seller's permission. Buyer is solely responsible for 16
interviewing and selecting all inspectors. Buyer shall restore the Property and all improvements on the 17
Property to the same condition they were in prior to the inspection. Buyer shall be responsible for all 18
damages resulting from any inspection of the Property performed on Buyer's behalf. 19

**BUYER'S NOTICE.** This inspection contingency SHALL CONCLUSIVELY BE DEEMED WAIVED unless 20
within _____ days (10 days if not filled in) after mutual acceptance of this Agreement (the "Initial 21
Inspection Period"), Buyer gives notice (1) approving the inspection and waiving this contingency; (2) 22
disapproving the inspection and terminating the Agreement; (3) that Buyer will conduct additional 23
inspections; or (4) proposing repairs to the property or modifications to the Agreement. If Buyer disapproves 24
the inspection and terminates the Agreement, the Earnest Money shall be refunded to Buyer. If Buyer 25
proposes repairs to the property or modifications to the Agreement, including adjustments to the purchase 26
price or credits for repairs to be performed after Closing, the parties shall negotiate as set forth in paragraph 27
1.c, below. The parties may use NWMLS Form 35R to give notices required by this Addendum. 28

**ATTENTION BUYER:** If Buyer fails to give timely notice, then this inspection contingency shall be 29
deemed waived and Seller shall not be obligated to make any repairs or modifications. Buyer shall not 30
provide the inspection report, or portions of the report, to Seller, unless Seller requests otherwise or as 31
required by paragraph 1.b. 32

b. **Additional Inspections.** If an inspector so recommends, Buyer may obtain further evaluation of any item 33
by a specialist at Buyer's option and expense if, on or before the end of the Initial Inspection Period, 34
Buyer provides Seller a copy of the inspector's recommendation and notice that Buyer will seek additional 35
inspections. If Buyer gives timely notice of additional inspections, Buyer shall have _____ (5 days if 36
not filled in) after giving the notice to obtain the additional inspection(s) by a specialist. 37

c. **Buyer's Requests for Repairs or Modifications.** If Buyer requests repairs or modifications under 38
paragraph 1.a. or 1.b., the parties shall negotiate as set forth in this paragraph. Buyer's initial request and 39
Seller's response made in accordance with the following procedures are irrevocable for the time period 40
provided. 41

(i) **Seller's Response to Request for Repairs or Modifications.** Seller shall have _____ days (3 42
days if not filled in) after receipt of Buyer's request for repairs or modifications to give notice that Seller 43
(a) agrees to the repairs or modifications proposed by Buyer; (b) agrees to some of the repairs or 44
modifications proposed by Buyer; (c) rejects all repairs or modifications proposed by Buyer; or (d) 45
offers different or additional repairs or modifications. If Seller agrees to the terms of Buyer's request for 46
repairs or modifications, this contingency shall be satisfied and Buyer's Reply shall not be necessary. If 47

| RAHe 08/10/2020 | GLG 08/10/2020 | [signature] 8/12/20 | |
|---|---|---|---|
| Buyer's Initials   Date | Buyer's Initials   Date | Seller's Initials   Date | Seller's Initials   Date |

AuthentiSign ID: 371B3B8B-17E0-4A61-AC78-B3210E5D4D5A

AuthentiSign ID: 76B1DE73-9480-4193-8BB5-C7402C0001A5

Form 35
Inspection Addendum
Rev. 7/19
Page 2 of 2

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## INSPECTION ADDENDUM TO PURCHASE AND SALE AGREEMENT
### Continued

Seller does not agree to all of Buyer's repairs or modifications, Buyer shall have an opportunity to reply, as follows: 48 49

(ii) **Buyer's Reply.** If Seller does not agree to all of the repairs or modifications proposed by Buyer, Buyer shall have _____ days (3 days if not filled in) from either the day Buyer receives Seller's response or, if Seller fails to timely respond, the day Seller's response period ends, whichever is earlier, to (a) accept the Seller's response at which time this contingency shall be satisfied; (b) agree with the Seller on other remedies; or (c) disapprove the inspection and terminate the Agreement, in which event, the Earnest Money shall be refunded to Buyer. 50 51 52 53 54 55

**ATTENTION BUYER:** These time periods for negotiating repairs or modifications shall not repeat. The parties must either reach a written agreement or Buyer must terminate this Agreement by the Buyer's Reply deadline set forth in paragraph 1.c.ii. Buyer's inaction during Buyer's reply period shall result in waiver of this inspection condition, in which case Seller shall not be obligated to make any repairs or modifications whatsoever AND THIS CONTINGENCY SHALL BE DEEMED WAIVED. 56 57 58 59 60

d. **Repairs.** If Seller agrees to make the repairs proposed by Buyer, then repairs shall be accomplished at Seller's expense in a commercially reasonable manner and in accordance with all applicable laws no fewer than _____ days (3 days if not filled in) prior to the Closing Date. In the case of hazardous materials, "repair" means removal or treatment (including but not limited to removal or, at Seller's option, decommissioning of any oil storage tanks) of the hazardous material at Seller's expense as recommended by and under the direction of a professional selected by Seller. Seller's repairs are subject to re-inspection and approval, prior to Closing, by the inspector who recommended the repair, if Buyer elects to order and pay for such re-inspection. If Buyer agrees to pay for any repairs prior to Closing, the parties are advised to seek the counsel of an attorney to review the terms of that agreement. 61 62 63 64 65 66 67 68 69

e. **Oil Storage Tanks.** Any inspection regarding oil storage tanks or contamination from such tanks shall be limited solely to determining the presence or non-presence of oil storage tanks on the Property, unless otherwise agreed in writing by Buyer and Seller. 70 71 72

f. **On-site Sewage Disposal Systems Advisory:** Buyer is advised that on-site sewage disposal systems, including "septic systems," are subject to strict governmental regulation and occasional malfunction and even failure. Buyer is advised to consider conducting an inspection of any on-site sewage system in addition to the inspection of the Property provided by this Form 35 by including an appropriate on-site sewage disposal inspection contingency such as NWMLS Form 22S (Septic Addendum). 73 74 75 76 77

2. ☐ **NEIGHBORHOOD REVIEW CONTINGENCY:** Buyer's inspection includes Buyer's subjective satisfaction that the conditions of the neighborhood in which the Property is located are consistent with the Buyer's intended use of the Property (the "Neighborhood Review"). The Neighborhood Review may include Buyer's investigation of the schools, proximity to bus lines, availability of shopping, traffic patterns, noise, parking and investigation of other neighborhood, environmental and safety conditions the Buyer may determine to be relevant in deciding to purchase the Property. If Buyer does not give notice of disapproval of the Neighborhood Review within _____ (3 days if not filled in) of mutual acceptance of the Agreement, then this Neighborhood Review condition shall conclusively be deemed satisfied (waived). If Buyer gives a timely notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 78 79 80 81 82 83 84 85 86

3. ☐ **PREINSPECTION CONDUCTED.** Buyer, prior to mutual acceptance of this Agreement, conducted a building, hazardous substances, building and zoning code, pest or soils/stability inspection of the Property, and closing of this Agreement is not conditioned on the results of such inspections. Buyer elects to buy the Property in its present condition and acknowledges that the decision to purchase the property was based on Buyer's prior inspection and that Buyer has not relied on representations by Seller, Listing Broker or Selling Broker. 87 88 89 90 91 92

4. ☑ **WAIVER OF INSPECTION.** Buyer has been advised to obtain a building, hazardous substances, building and zoning code, pest or soils/stability inspection, and to condition the closing of this Agreement on the results of such inspections, but Buyer elects to waive the right and buy the Property in its present condition. Buyer acknowledges that the decision to waive Buyer's inspection options was based on Buyer's personal inspection and Buyer has not relied on representations by Seller, Listing Broker or Selling Broker. 93 94 95 96 97

| _RMSL_ 08/10/2020 | _QLG_ 08/10/2020 | _[signature]_ 8/12/20 | |
|---|---|---|---|
| Buyer's Initials   Date | Buyer's Initials   Date | Seller's Initials   Date | Seller's Initials   Date |

Authentisign ID: 371B3B8B-17E0-4A61-AC78-B3210E5D4D5A

Authentisign ID: 76B1DE73-9480-4193-8BB5-C7482C0001A5

Form 22A
Financing Addendum
Rev. 7/19
Page 1 of 3

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**FINANCING ADDENDUM TO**
**PURCHASE & SALE AGREEMENT**

The following is part of the Purchase and Sale Agreement dated ___**August 10, 2020**___                     1

between ___**Renee Hawkes**___                    ___**Gregory Lawrence Griffith**___                 ("Buyer")   2
                Buyer                                          Buyer

and ___**Mark Waldron Chapter 11**___                    ___**Trustee for GIGA Watt, Inc**___                 ("Seller")   3
                Seller                                          Seller

concerning __23684__      __NW Cliffe Pointe Road__      __8B__      __Quincy__      __WA__   __98848__   (the "Property").   4
         Address                                  City              State  Zip

1. **LOAN APPLICATION/WAIVER OF CONTINGENCY.**                                                        5
   a. **Loan Application.** This Agreement is contingent on Buyer obtaining the following type of loan or loans to   6
      purchase the Property (the "Loan(s)"): ☑ Conventional First; ☐ Conventional Second; ☐ Bridge; ☐ VA; ☐ FHA;   7
      ☐ USDA; ☐ Home Equity Line of Credit; ☐ Other _____   8
      (the "Financing Contingency"). Buyer shall pay ☐ $ _____; or ☑ __10__ % of the Purchase   9
      Price down, in addition to the Loans. Buyer shall make application for the Loans to pay the balance of the   10
      Purchase Price and pay the application fee, if required, for the subject Property within _____ days (5   11
      days if not filled in) after mutual acceptance of this Agreement. For the purposes of this Addendum,   12
      "application" means the submission of Buyer's financial information for the purposes of obtaining an extension   13
      of credit including Buyer's name, income, social security number (if required), the Property address, purchase   14
      price, and the loan amount.                                                                       15
   b. **Waiver of Financing Contingency.** If Buyer (i) fails to make application for financing for the Property within   16
      the agreed time; (ii) changes the type of loan at any time without Seller's prior written consent; or (iii) changes   17
      the lender without Seller's prior written consent after the agreed upon time to apply for financing expires, then   18
      the Financing Contingency shall be deemed waived. Buyer's waiver of the Financing Contingency under this   19
      Paragraph 1(b) also constitutes a waiver of Paragraph 7 (Appraisal Less Than Sales Price). For purposes of   20
      this Addendum, "lender" means either the party to whom the application was submitted or the party funding   21
      the loan.                                                                                        22

2. **LOAN INFORMATION.**                                                                               23
   a. **Seller's Request for Loan Information.** At any time _____ days (10 days if not filled in) after mutual   24
      acceptance, Seller may give, once, a notice requesting information related to the status of Buyer's loan   25
      application ("Request for Loan Information"). NWMLS Form 22AL may be used for this notice.         26
   b. **Buyer's Loan Information Notice.** Within _____ days (3 days if not filled in) of receiving Seller's Request   27
      for Loan Information, Buyer shall give notice of the status of Buyer's loan application ("Loan Information   28
      Notice"). Buyer's notice shall be on NWMLS Form 22AP and shall include the date of application, the name   29
      of lender, a list of the information that Buyer has provided to lender, and a warranty that Buyer has provided   30
      all information requested by lender.                                                             31
   c. **Failure to Provide Loan Information Notice.** If Buyer fails to timely give to Seller a completed Loan   32
      Information Notice, Seller may give the Right to Terminate Notice described in Paragraph 3 (Seller's Right to   33
      Terminate) at any time after the date that the Loan Information Notice is due.                    34

3. **SELLER'S RIGHT TO TERMINATE.**                                                                    35
   a. **Right to Terminate Notice.** At any time _____ days (30 days if not filled in) after mutual acceptance,   36
      Seller may give notice that Seller may terminate the Agreement at any time 3 days after delivery of that notice   37
      (the "Right to Terminate Notice"). NWMLS Form 22AR may be used for this notice.                  38
   b. **Termination Notice.** If Buyer has not previously waived the Financing Contingency, Seller may give notice of   39
      termination of this Agreement (the "Termination Notice") any time following 3 days after delivery of the Right   40
      to Terminate Notice. If Seller gives the Termination Notice before Buyer has waived the Financing   41
      Contingency, this Agreement is terminated and the Earnest Money shall be refunded to Buyer. NWMLS Form   42
      22AR may be used for this notice. If not waived, the Financing Contingency shall survive the Closing Date.   43
   c. **Appraisal Less Than Sales Price.** Buyer's waiver of the Financing Contingency under this Paragraph 3 ☐ will;   44
      or ☐ will not (will, if not filled in) constitute waiver of Paragraph 7 (Appraisal Less Than Sales Price).   45

| _RMH_ 08/10/2020 | _GLG_ 08/10/2020 | _[signature]_ 8/12/20 | |
|---|---|---|---|
| Buyer's Initials  Date | Buyer's Initials  Date | Seller's Initials  Date | Seller's Initials  Date |

Authentisign ID: 371B3B8B-17E0-4A61-AC78-B3210E5D4D5A

Authentisign ID: 76B1DE73-6480-4103-8BB5-C7482C0001A5

Form 22A
Financing Addendum
Rev. 7/19
Page 2 of 3

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## FINANCING ADDENDUM TO
## PURCHASE & SALE AGREEMENT
*Continued*

4. **LOAN COST PROVISIONS.** Seller shall pay up to ☐ $ _____ ; or ☐ _____ % of the Purchase 46
Price ($0.00 if not filled in), which shall be applied to Buyer's Loan(s) and settlement costs, including prepaids, loan 47
discount, loan fee, interest buy down, financing, closing or other costs allowed by lender. That amount shall include 48
the following costs that lender is prohibited from collecting from Buyer: (a) up to $300.00 for Buyer's Loan(s) and 49
settlement costs for FHA/USDA/VA loans; and (b) unless agreed otherwise below, Buyer's share of the escrow fee 50
for a VA loan. Seller shall pay the costs for (a) and (b), even if the amount agreed upon in this Paragraph 4 is 51
insufficient to pay for those costs. If checked, ☐ Buyer shall pay Buyer's share of the escrow fee for the VA loan 52
(note that VA regulations prohibit Buyer from paying loan and settlement costs exceeding one percent of the amount 53
of the loan). 54

5. **EARNEST MONEY.** If Buyer has not waived the Financing Contingency, and is unable to obtain financing by 55
Closing after a good faith effort then, on Buyer's notice, this Agreement shall terminate. The Earnest Money shall 56
be refunded to Buyer after lender confirms in writing (a) the date Buyer's loan application for the Property was 57
made, including a copy of the loan estimate that was provided to Buyer; (b) that Buyer possessed sufficient funds 58
to close (e.g. down payment, closing costs, etc.); and (c) the reasons Buyer was unable to obtain financing by 59
Closing. If Seller terminates this Agreement, the Earnest Money shall be refunded without need for such 60
confirmation. 61

6. **INSPECTION.** Seller shall permit inspections required by lender, including but not limited to structural, pest, 62
heating, plumbing, roof, electrical, septic, and well inspections. Seller is not obligated to pay for such inspections 63
unless otherwise agreed. 64

7. **APPRAISAL LESS THAN SALE PRICE.** 65
   a. **Notice of Low Appraisal.** If lender's appraised value of the Property is less than the Purchase Price, Buyer 66
   may, within 3 days after receipt of a copy of lender's appraisal, give notice of low appraisal, which shall 67
   include a copy of lender's appraisal. NWMLS Form 22AN may be used for the notices in this Paragraph 7. 68
   b. **Seller's Response.** Seller shall, within 10 days after Buyer's notice of low appraisal, give notice of: 69
      **(i)** A reappraisal or reconsideration of value, at Seller's expense, by the same appraiser or another appraiser 70
   acceptable to lender, in an amount not less than the Purchase Price. Buyer shall promptly seek lender's 71
   approval of such reappraisal or reconsideration of value. The parties are advised that lender may elect 72
   not to accept a reappraisal or reconsideration of value; 73
      **(ii)** Seller's consent to reduce the Purchase Price to an amount not more than the amount specified in the 74
   appraisal or reappraisal by the same appraiser, or an appraisal by another appraiser acceptable to 75
   lender, whichever is higher. (This provision is not applicable if this Agreement is conditioned on FHA, VA, 76
   or USDA financing. FHA, VA, and USDA financing does not permit the Buyer to be obligated to buy if the 77
   Seller reduces the Purchase Price to the appraised value. Buyer, however, has the option to buy at the 78
   reduced price.); 79
      **(iii)** Seller's proposal to reduce the Purchase Price to an amount more than the amount specified in the 80
   appraisal and for Buyer to pay the necessary additional funds (the amount the reduced Purchase Price 81
   exceeds the appraised value) to close the sale; or 82
      **(iv)** Seller's rejection of Buyer's notice of low appraisal. 83

   If Seller timely delivers notice of (i) reappraisal or reconsideration of value; or (ii) consent to reduce the 84
   Purchase Price to an amount not more than the amount specified in the appraisal (except for FHA, VA, or 85
   USDA financing), and lender accepts Seller's response, then Buyer shall be bound by Seller's response. 86
   c. **Buyer's Reply.** 87
      **(i)** Buyer shall have 3 days from either Seller's notice of rejection of low appraisal or, if Seller fails to respond, 88
   the day Seller's response period ends, whichever is earlier, to (a) waive the Financing Contingency; or (b) 89
   terminate the Agreement, in which event the Earnest Money shall be refunded to Buyer. 90
      **(ii)** If Seller proposes to reduce the Purchase Price to an amount more than the appraised value, Buyer shall 91
   have 3 days to (a) accept and represent that Buyer has sufficient funds to close the sale in accordance with 92
   this provision; or (b) terminate the Agreement, in which event the Earnest Money shall be refunded to Buyer. 93

| RALSL | 08/10/2020 | GLG | 08/10/2020 | *(signature)* | 8/12/20 | | |
|---|---|---|---|---|---|---|---|
| Buyer's Initials | Date | Buyer's Initials | Date | Seller's Initials | Date | Seller's Initials | Date |

AuthentiSign ID: 371B3B8B-17E0-4A61-AC78-B3210E5D4D5A

AuthentiSign ID: 76B1DE73-9480-4193-8BB5-C7482C0001A5

Form 22A
Financing Addendum
Rev. 7/19
Page 3 of 3

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**FINANCING ADDENDUM TO
PURCHASE & SALE AGREEMENT**
*Continued*

(iii) If Seller consents to reduce the Purchase Price to an amount not more than the appraised value for FHA, 94
VA, or USDA financing, Buyer shall have 3 days to (a) give notice that Buyer will buy at the reduced price; 95
or (b) terminate the Agreement, in which event the Earnest Money shall be refunded to Buyer. 96

Buyer's inaction during this reply period shall result in termination of the Agreement and return of the Earnest 97
Money to Buyer. The Closing Date shall be extended as necessary to accommodate the foregoing times for 98
notices. 99

8. **FHA/VA/USDA - Appraisal Certificate.** If this Agreement is contingent on Buyer obtaining FHA, VA, or USDA 100
financing, notwithstanding any other provisions of this Agreement, Buyer is not obligated to complete the 101
purchase of the Property unless Buyer has been given in accordance with HUD/FHA, VA, or USDA requirements 102
a written statement by FHA, VA, USDA or a Direct Endorsement lender, setting forth the appraised value of the 103
Property (excluding closing costs). Seller and Buyer shall execute a document setting forth the prior provision, or 104
similar provision, known as the FHA, VA, or USDA amendatory clause, as required by lender. Buyer shall pay 105
the costs of any appraisal. If the appraised value of the Property is less than the Purchase Price, Paragraph 7 106
above shall apply. 107

**Purpose of Appraisal.** The appraised valuation is arrived at only to determine the maximum mortgage FHA, VA, 108
or USDA will insure. FHA, VA, or USDA do not warrant the value or the condition of the Property. Buyer agrees 109
to satisfy himself/herself that the price and condition of the Property are acceptable. 110

9. **EXTENSION OF CLOSING.** If, through no fault of Buyer, lender is required by 12 CFR 1026 to give corrected 111
disclosures to Buyer due to (a) a change in the Annual Percentage Rate ("APR") of Buyer's Loan(s) by .125% or 112
more for a fixed rate loan or .250% or more for an adjustable rate loan; (b) a change in the loan product; or (c) the 113
addition of a prepayment penalty, then upon notice from Buyer, the Closing Date shall be extended for up to 4 days 114
to accommodate the requirements of Regulation Z of the Truth in Lending Act. This paragraph shall survive Buyer's 115
waiver of this Financing Contingency. 116

Buyer's Initials 08/10/2020 Date — Buyer's Initials 08/10/2020 Date — Seller's Initials 8/12/20 Date — Seller's Initials Date

Authentisign ID: 371B3B8B-17E0-4A61-AC78-B3210E5D4D5A

Authentisign ID: 76B1DE73-9480-4193-8BB3-C7482C0001A5

Form 22D
Optional Clauses Addendum
Rev. 7/19
Page 1 of 2

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## OPTIONAL CLAUSES ADDENDUM TO
## PURCHASE & SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated **August 10, 2020**    1

between   **Renee Hawkes**     **Gregory Lawrence Griffith**   ("Buyer")   2
     Buyer         Buyer

and   **Mark Waldron Chapter 11**     **Trustee for GIGA Watt, Inc**   ("Seller")   3
     Seller         Seller

concerning **23684 NW Cliffe Pointe Road**    **8B**   **Quincy**    **WA**   **98848**   (the "Property").   4
     Address        City      State   Zip

**CHECK IF INCLUDED:**   5

1. ☑ **Square Footage/Lot Size/Encroachments.** The Listing Broker and Selling Broker make no representations   6
concerning: (a) the lot size or the accuracy of any information provided by the Seller; (b) the square footage of   7
any improvements on the Property; (c) whether there are any encroachments (fences, rockeries, buildings) on   8
the Property, or by the Property on adjacent properties. Buyer is advised to verify lot size, square footage and   9
encroachments to Buyer's own satisfaction.   10

2. **Title Insurance.** The Title Insurance clause in the Agreement provides Seller is to provide the then-current ALTA   11
form of Homeowner's Policy of Title Insurance. The parties have the option to provide less coverage by selecting   12
a Standard Owner's Policy or more coverage by selecting an Extended Coverage Policy:   13

     ☐ **Standard Owner's Coverage.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to   14
     apply for the then-current ALTA form of Owner's Policy of Title Insurance, together with homeowner's   15
     additional protection and inflation protection endorsements, if available at no additional cost, rather than   16
     the Homeowner's Policy of Title Insurance.   17

     ☐ **Extended Coverage.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense to apply for   18
     an ALTA or comparable Extended Coverage Policy of Title Insurance, rather than the Homeowner's   19
     Policy of Title Insurance. Buyer shall pay the increased costs associated with the Extended Coverage   20
     Policy, including the excess premium over that charged for Homeowner's Policy of Title Insurance and   21
     the cost of any survey required by the title insurer.   22

*RMH* 08/12/2020

3. ☑ **Seller Cleaning.** Seller shall clean the interiors of any structures and remove all trash, debris and rubbish   23
from the Property prior to Buyer taking possession.   24

*MDW*

4. ☑ **Personal Property.** Unless otherwise agreed, Seller shall remove all personal property from the Property   25
not later than the Possession Date. Any personal property remaining on the Property thereafter shall become   26
the property of Buyer, and may be retained or disposed of as Buyer determines.   27

*GLG* 08/12/2020

5. ☑ **Utilities.** To the best of Seller's knowledge, Seller represents that the Property is connected to a:   28
☑ public water main; ☑ public sewer main; ☐ septic tank; ☐ well (specify type) _____   29
☐ irrigation water (specify provider) _____ ; ☐ natural gas; ☐ telephone;   30
☐ cable; ☐ electricity; ☐ other _____   31

6. ☐ **Insulation - New Construction.** If this is new construction, Federal Trade Commission Regulations require   32
the following to be filled in. If insulation has not yet been selected, FTC regulations require Seller to furnish   33
Buyer the information below in writing as soon as available:   34

WALL INSULATION: TYPE: _____ THICKNESS: _____ R-VALUE: _____   35

CEILING INSULATION: TYPE: _____ THICKNESS: _____ R-VALUE: _____   36

OTHER INSULATION DATA: _____   37

7. ☐ **Leased Property Review Period and Assumption.** Buyer acknowledges that Seller leases the following   38
items of personal property that are included with the sale: ☐ propane tank; ☐ security system; ☐ satellite   39
dish and operating equipment; ☐ other _____   40

*RMH* 08/10/2020     *GLG* 08/10/2020     _____ 8/12/20
Buyer's Initials   Date     Buyer's Initials   Date     Seller's Initials   Date     Seller's Initials   Date

Authentisign ID: 371B3B8B-17E0-4A61-AC78-B3210E5D4D5A

Authentisign ID: 76B1DE73-9480-4193-8BB5-C7482C0001A5

Form 22D
Optional Clauses Addendum
Rev. 7/19
Page 2 of 2

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

### OPTIONAL CLAUSES ADDENDUM TO PURCHASE & SALE AGREEMENT
*Continued*

Seller shall provide Buyer a copy of the lease for the selected items within _____ days (5 days if not filled 41
in) of mutual acceptance. If Buyer, in Buyer's sole discretion, does not give notice of disapproval within 42
_____ days (5 days if not filled in) of receipt of the lease(s) or the date that the lease(s) are due, whichever 43
is earlier, then this lease review period shall conclusively be deemed satisfied (waived) and at Closing, Buyer 44
shall assume the lease(s) for the selected item(s) and hold Seller harmless from and against any further 45
obligation, liability, or claim arising from the lease(s), if the lease(s) can be assumed. If Buyer gives timely 46
notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 47

8. ☑ **Homeowners' Association Review Period.** If the Property is subject to a homeowners' association or any 48
other association, then Seller shall, at Seller's expense, provide Buyer a copy of the following documents (if 49
available from the Association) within ___7___ days (10 days if not filled in) of mutual acceptance: 50

    a.   Association rules and regulations, including, but not limited to architectural guidelines;
    b.   Association bylaws and covenants, conditions, and restrictions (CC&Rs); 51
    c.   Association meeting minutes from the prior two (2) years; 52
    d.   Association Board of Directors meeting minutes from the prior six (6) months; and 53
    e.   Association financial statements from the prior two (2) years and current operating budget. 54
        55

If Buyer, in Buyer's sole discretion, does not give notice of disapproval within _____ days (5 days if not 56
filled in) of receipt of the above documents or the date that the above documents are due, whichever is 57
earlier, then this homeowners' association review period shall conclusively be deemed satisfied (waived). If 58
Buyer gives timely notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be 59
refunded to Buyer. 60

9. ☑ **Homeowners' Association Transfer Fee.** If there is a transfer fee imposed by the homeowners' association 61
or any other association (e.g. a "move-in" or "move-out" fee), the fee shall be paid by the party as provided for 62
in the association documents. If the association documents do not provide which party pays the fee, the fee 63
shall be paid by ☐ Buyer; ☑ Seller (Seller if not filled in). 64

10. ☐ **Excluded Item(s).** The following item(s), that would otherwise be included in the sale of the Property, is 65
excluded from the sale ("Excluded Item(s)"). Seller shall repair any damage to the Property caused by the 66
removal of the Excluded Item(s). Excluded Item(s): 67

    68
    69

11. ☐ **Home Warranty.** Buyer and Seller acknowledge that home warranty plans are available which may provide 70
additional protection and benefits to Buyer and Seller. Buyer shall order a one-year home warranty as follows: 71

    a.   Home warranty provider: _____
        72
    b.   Seller shall pay up to $_____ ($0.00 if not filled in) of the cost for the home warranty, together 73
        with any included options, and Buyer shall pay any balance. 74
    c.   Options to be included: _____
        75
    _____ (none, if not filled in). 76
    d.   Other:_____ 77

12. ☐ **Other.** 78

    79
    80
    81
    82
    83
    84
    85

| *BMBL* 08/10/2020 | *GLG* 08/10/2020 | 8/12/20 | |
|---|---|---|---|
| Buyer's Initials  Date | Buyer's Initials  Date | Seller's Initials  Date | Seller's Initials  Date |

Authentisign ID: 371B3B6B-17E0-4A61-AC78-B3210E5D4D5A

Authentisign ID: 76B1DE73-9460-4193-8BB5-C7492C0001A5

Form 22K
Identification of Utilities Addendum
Rev. 7/19
Page 1 of 1

©Copyright 2019
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## IDENTIFICATION OF UTILITIES
## ADDENDUM TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated _08/10/2020_    1

between   Renee Michelle Hawkes     Gregory Lawrence Griffith    2
     Buyer      Buyer     ("Buyer")

and   Mark Waldron Chapter 11     Trustee for GIGA Watt, Inc    ("Seller")   3
    Seller      Seller

concerning   23684   Nw Cliffe Pointe Road 8-B   8B    Quincy    WA   98848   (the "Property").   4
    Address      City    State   Zip

Pursuant to RCW 60.80, Buyer and Seller request the Closing Agent to administer the disbursement of closing funds   5
necessary to satisfy unpaid utility charges, if any, affecting the Property. The names and addresses of all utilities   6
providing service to the Property and having lien rights are as follows:   7

**WATER DISTRICT:**    Included in HOA Dues    8
    Name      e-mail or website (optional)
    Address    9
    City, State, Zip      Fax. No. (optional)    10

**SEWER DISTRICT:**    Included in HOA Dues
    Name      e-mail or website (optional)    11
    Address    12
    City, State, Zip      Fax. No. (optional)    13

**IRRIGATION DISTRICT:**
    Name    14
    Address    15
    City, State, Zip      Fax. No. (optional)    16

**GARBAGE:**    Included in HOA Dues
    Name      e-mail or website (optional)    17
    Address    18
    City, State, Zip      Fax. No. (optional)    19

**ELECTRICITY:**    Grant County PUD
    Name      e-mail or website (optional)    20
    509-766-2505
    Address    21
    City, State, Zip      Fax. No. (optional)    22

**GAS:**
    Name    23
    Address    24
    City, State, Zip      Fax. No. (optional)    25

**SPECIAL DISTRICT(S):**    26
(local improvement districts or    Name      e-mail or website (optional)
utility local improvement districts)    Address    27
    City, State, Zip      Fax. No. (optional)    28

If the above information has not been filled in at the time of mutual acceptance of this Agreement, then (1)   29
within _____ days (5 if not filled in) of mutual acceptance of this Agreement, Seller shall provide the Listing   30
Broker or Selling Broker with the names and addresses of all utility providers having lien rights affecting the Property   31
and (2) Buyer and Seller authorize Listing Broker or Selling Broker to insert into this Addendum the names and   32
addresses of the utility providers identified by Seller.   33

Nothing in this Addendum shall be construed to diminish or alter the Seller's obligation to pay all utility charges   34
(including unbilled charges). Buyer understands that the Listing Broker and Selling Broker are not responsible for, or   35
to insure payment of, Seller's utility charges.   36

| RMH 08/10/2020 | GLG 08/10/2020 | _signature_ 4-24-2020 | |
|---|---|---|---|
| Buyer's Initials   Date | Buyer's Initials   Date | Seller's Initials   Date | Seller's Initials   Date |

Authentisign ID: 371B3B8B-17E0-4A61-AC78-B3210E5D4D5A

Authentisign ID: 76B1DE73-9480-4193-8BB5-C7482C0001A5

Exhibit "A"

Unit 8 B Cave B Ridge Condos, an Airspace Condominium, according to the declaration thereof recorded September 6, 2017, under Auditor's file No. 1383415, and Amended Declaration recorded August 16, 2018 under Auditors File No. 1397773, Records of Grant County, Washington.

TOGETHER WITH Easement rights and the use of a shared on-site sewage system as provided in document recorded March 7, 2018 under Auditor's file No. 1390783, being a re-recording of Auditor's File No. 1390502.

MARK D. WALDRON
Chapter 11 Trustee
Giga Watt, Inc., Case No. 18-03197
6711 Regents Blvd. W., Suite B
Tacoma, WA 98466
Phone: 253-565-5800
Email: gigawatt@mwaldronlaw.com

08/10/2020

08/10/2020

Authentisign ID: 371B3B8B-17E0-4A61-AC78-B3210E5D4D5A

## TRUSTEE'S ADDENDUM

This Addendum to Condominium Purchase and Sale Agreement Specific Terms ("Addendum") is entered into by and between Mark D. Waldron, Chapter 11 Trustee for the Bankruptcy Estate of Giga Watt, Inc., United States Bankruptcy Court for the Eastern District of Washington at Spokane, Case No. 18-03197 ("Seller") and Renee Hawkes and Gregory Lawrence Griffith, unmarried persons ("Buyer").

1.      This is an addendum to the Condominium Purchase and Sale Agreement Specific Terms and said agreement and any and all addenda thereto, including this Addendum, shall be referred to as the "Sale Agreement".

To the extent the terms of this Addendum contradict or conflict with the terms of the Condominium Purchase and Sale Agreement Specific Terms, this Addendum controls.

2.      The sale of the property addressed herein is subject to Bankruptcy Court approval in the bankruptcy proceeding identified above, upon notice and hearing and the Seller's rights and obligations hereunder are subject to Seller obtaining Bankruptcy Court approval to sell and transfer the property subject hereto, free and clear of liens and encumbrances, with liens and encumbrances to attach to the proceeds thereof as evidenced by a final, non-appealed order. Buyer understands and acknowledges that the Bankruptcy Court will approve the highest and best offer received by the Trustee, which could mean that this offer is not approved if a higher priced and less contingent offer is received by the Trustee.

3.      Seller has not occupied the subject property and makes no warranties or representations, of any kind or nature, either expressed or implied, as to the condition of the property, including but not limited to square footage, zoning, roof, foundation, building materials, siding, roofing, ceiling, insulation, drainage, leakage, pest, rot, mold problems, sewage, septic, plumbing, electrical, heating, furnace, hazardous substances, above, upon or below the subject property, lead paint, asbestos, and/or the quality or condition of the improvements thereon or other defects arising therefrom, including possible building defects or health hazards, encroachments, including fences, rockeries, buildings or otherwise. For purposes of this Addendum, hazardous substances means to include any and all oil, or petrochemical products, PCBS, pesticides, asbestos, urea formaldehyde, flammable explosives, radioactive materials, hazardous wastes, toxic substances or related materials, including, without limitation, any substance now or hereafter defined as or included in the definition of "hazardous substances," "hazardous wastes," "hazardous materials," or "toxic substances" under any applicable federal, state or local law or regulations.

-1-

AuthentiSign ID: 371B3B8B-17E0-4A61-AC78-B3210E5D4D5A

4.      The property subject hereto is being sold and is accepted by Buyer "AS IS, WHERE IS" without any warranties or representations of any kind or nature, either expressed or implied, except as expressly provided in the Addendum.

5.      Buyer may not rely on Seller, Seller's agents, Buyer's agents, or the bankruptcy debtors as to the condition of the property and no person acting on behalf of Seller is authorized to make any such representation, agreement, statement, warranty, guaranty or promise regarding the property or any aspect of the property.

6.      Title to the property shall be conveyed by Trustee's Quit Claim Deed and the property shall be subject only to the warranties of title provided in a standard form owner's policy of title and Buyer shall look to the title company issuing said policy for any claim or damage.

7.      In the event of Seller's default under the Sale Agreement, Buyer's recourse is absolutely limited to return of any refundable earnest money, less applicable charges or costs of Buyer.

8.      The purchase price shall be paid in cash at closing. Seller shall not carry any portion of the purchase price. Buyer shall be responsible to pay any and all of Buyer's expenses associated with Buyer's loan or financing, including loan costs, creditor report, appraisal charge, lender's title policy and other associated expenses or costs, unless specifically agreed otherwise, signed by the Trustee and approved by Bankruptcy Court.

9.      The property and the grounds will not be maintained by Seller pending closing.

10.      The United States Bankruptcy Court for the Eastern District of Washington at Spokane retains exclusive jurisdiction over the property subject hereto and any and all issues arising hereunder, including but not limited to any dispute between the parties under the Sale Agreement and the Addendum.

11.      Buyer accepts the property subject to any and all conditions disclosed in any inspection or pest inspection regarding the property and Seller is under no obligation to make any repairs to the property.

12.      The property subject to this sale consists of the real property identified above and does not include any personal property. In the event the property contains appliances, such as a stove/range, dishwasher, refrigerator, washer or dryer, and Trustee specifically agrees to include those items in the sale, evidenced by written agreements signed by Trustee, said items will be included in the transfer for no consideration. Seller makes no warranties or representations as to the existence of such items. The included items identified in the Sale Agreement shall be only those items which are located at or in the property at closing.

-2-

Authentisign ID: 371B3B8B-17E0-4A61-AC78-B3210E5D4D5A

13.    Seller shall not provide a Seller's Disclosure, a Real Property Disclosure Statement, Disclosure of Information on Lead Base Paint, Lead Based Paint Hazard Statement or any other similar or related notices.    Seller makes no warranties or representations concerning the existence of lead based paint located on the property.

14.    Regarding the Counteroffer Addendum to Real Estate Purchase and Sale Agreement, Addendum/Amendment to Purchase and Sale Agreement, Short Sale Addendum to Purchase & Sale Agreement, Financing Addendum to Purchase & Sale Agreement, the Optional Clauses Addendum to Purchase and Sale Agreement and the Inspection Addendum Purchase and Sale Agreement Buyer's Satisfaction, Well Addendum to Purchase and Sale Agreement, Septic Addendum to Purchase & Sale Agreement, and any and all other addenda to the Sale Agreement, Seller is not responsible for any costs or expenses associated therewith and in the event any of said addenda address, identify or require Seller to respond thereunder indicating Seller's agreement or rejection to changes or modifications thereof, and Seller does not give timely notice or response thereto, Seller will be deemed to have rejected such and Buyer may terminate the Sale Agreement within three (3) days after the deadline for Seller's response or notice.

SELLER:

MARK D. WALDRON, Chapter 11 Trustee
for the Bankruptcy Estate of Giga Watt, Inc.

DATED: 4/12/2020

**MARK D. WALDRON**
Chapter 11 Trustee
Giga Watt, Inc., Case No. 18-03197
6711 Regents Blvd. W., Suite B
Tacoma, WA. 98466
Phone: 253-565-5800
Email: gigawatt@mwaldronlaw.com

BUYER:

Renee Michelle Hawkes
Renee Hawkes

DATED: 08/12/2020

Gregory Lawrence Griffith
Gregory Lawrence Griffith

DATED: 08/12/2020

-3-

AuthentiSign ID: 0A389F69-B0A5-40B9-82CB-5E8C95D4C648

Form 34
Addendum/Amendment to P&S
Rev. 7/10
Page 1 of 1

©Copyright 2010
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## ADDENDUM / AMENDMENT TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated _____ **August 10, 2020** _____ 1

between ____ **Renee Michelle Hawkes** _____ **Gregory Lawrence Griffith** _____ ("Buyer") 2
              Buyer                           Buyer

and ____ **Mark Waldron Chapter 11** _____ **Trustee for GIGA Watt, Inc** _____ ("Seller") 3
       Seller                             Seller

concerning **23684**   **Nw Cliffe Pointe Road 8-B**   **Quincy**   **WA**  **98848**  (the "Property"). 4
        Address                           City         State   Zip

IT IS AGREED BETWEEN THE SELLER AND BUYER AS FOLLOWS:          5

**Buyers legal names are as follows:**          6

**Renee Michelle Hawkes & Gregory Lawrence Griffith**       7
 8
 9
 10
 11
 12
 13
 14
 15
 16
 17
 18
 19
 20
 21
 22
 23
 24
 25
 26
 27
 28
 29
 30

MARK D. WALDRON
Chapter 11 Trustee
Giga Watt, Inc., Case No. 18-03197
6711 Regents Blvd. W., Suite B
Tacoma, WA 98466
Phone: 253-565-5800
Email: gigawatt@mwaldronlaw.com

ALL OTHER TERMS AND CONDITIONS of said Agreement remain unchanged.

_RMH_  08/12/2020      _GLG_  08/12/2020      8/13/2020
Buyer's Initials  Date      Buyer's Initials  Date      Seller's Initials  Date      Seller's Initials  Date

Form 34
Addendum/Amendment to P&S
Rev. 7/10
Page 1 of 1

©Copyright 2010
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

### ADDENDUM / AMENDMENT TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated ___August 10, 2020___ 1

between ___Renee Michelle Hawkes___ ___Gregory Lawrence Griffith___ ("Buyer") 2
　　　　　Buyer　　　　　　　　　　　　　　　Buyer

and ___Mark Waldron Chapter 11___ ___Trustee for GIGA Watt, Inc___ ("Seller") 3
　　　　Seller　　　　　　　　　　　　　Seller

concerning 23684　　Nw Cliffe Pointe Road 8-B　　Quincy　　WA　98848　(the "Property"). 4
　　　　　　Address　　　　　　　　　　　　　　City　　　　State　Zip

IT IS AGREED BETWEEN THE SELLER AND BUYER AS FOLLOWS: 5

**"Closing shall be September 30, 2020 or earlier, unless the parties agree otherwise"** 6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

**MARK D. WALDRON**
Chapter 11 Trustee
Giga Watt, Inc., Case No. 18-03197
6711 Regents Blvd. W., Suite B
Tacoma, WA 98466
Phone: 253-565-5800
Email: gigawatt@mwaldronlaw.com

ALL OTHER TERMS AND CONDITIONS of said Agreement remain unchanged. 31

*RMH*　08/19/2020　　　　*GLG*　08/19/2020　　　　　8/19/20
Buyer's Initials　Date　　Buyer's Initials　Date　　Seller's Initials　Date　　Seller's Initials　Date