# EXHIBIT B
## (Settlement Agreement - Allrise)

# AGREEMENT AND GENERAL RELEASE OF CLAIMS

This Settlement Agreement and General Release of Claims (the "**Agreement**") is entered into by Allrise Financial Group, Inc., a Delaware corporation, and Allrise IP Holding, Inc., a Delaware corporation and a Cayman Islands corporation (collectively "**Allrise**"), on the one hand, and, on the other hand, Mark D. Waldron, in his capacity as the Chapter 11 Trustee (the "**Trustee**") acting on behalf of and representing the estate (the "**Estate**") in the bankruptcy case (the "**Bankruptcy Case**") of Giga Watt, Inc., a Washington corporation ("**Giga Watt**" or the "**Debtor**") which is pending in the U.S. Bankruptcy Court for the Eastern District of Washington (the "**Bankruptcy Court**") and assigned Case No. 18-03197-FPC 11. Allrise and the Trustee are at times collectively referred to herein as the "**Parties**."

## RECITALS

A. On May 1, 2017, Giga Watt, Inc. and MLDC 1 LLC, a Wyoming limited liability company, (the "**Master Landlord**") entered into that certain *Land Lease for Portion of Land in Moses Lake, Washington* (the "**Master Lease**"), pursuant to which Giga Watt leased from the Master Landlord certain premises (the "**Expansion Area**") located in Moses Lake, Washington.

B. On May 1, 2017, Giga Watt entered into a Purchase and Sale Agreement (the "**Purchase Agreement**") with Allrise IP Holding Inc., described therein as a Cayman Island corporation. Pursuant to the Purchase Agreement, Allrise purchased from Giga Watt 268 Antminer S9 miners, 636 Panda Miners B3 Plus miners and 268 power supply units. Allrise asserts that it paid to Giga Watt the full purchase price, which includes shipping, in the amount of $1,694,916 pursuant to the Purchase Agreement.

C. On May 1, 2017, Giga Watt entered into a sublease (the "**Sublease**") with Allrise IP Holding, Inc., described therein as a Delaware corporation, pursuant to which Giga Watt subleased to Allrise a portion of the Expansion Area.

D. On May 2, 2017, Giga Watt entered into that certain *Mining Farm Development Agreement* (the "**Development Agreement**"), with Allrise IP Holding, Inc., described therein as a Cayman Islands corporation. The Development Agreement provided that Giga Watt would build a Giga Pod ("**Pod 1**") in the Expansion Area. A Giga Pod is an approximately 12' by 48' slab-on grade structure that is outfitted with racks, electrical wiring, power distribution units, and fans, which Allrise asserts has an aggregate capacity of 1.25 MW and a useful capacity of 1.2 MW, for the purpose of crypto-mining. Allrise asserts that pursuant to the Development Agreement, Allrise paid $1.2 million to Giga Watt. Allrise further asserts that Giga Watt and Allrise installed into Pod 1 the miners that it had purchased pursuant to the Purchase Agreement.

E. On May 2, 2017, Giga Watt entered into a Service Agreement (the "**Service Agreement**"), with Allrise IP Holding, Inc., described therein as a Cayman Islands corporation, pursuant to which Giga Watt agreed to maintain Pod 1 and the mining equipment therein for a fee. The Purchase Agreement, the Sublease, the Development Agreement, and the Service Agreement are referred to herein collectively as the "**Allrise Agreements**."

F. Construction of Pod 1 was completed on November 1, 2017. Allrise asserts that it began operating in Pod 1 on or about November 1, 2017.

G. On November 19, 2018 (the "**Petition Date**"), Giga Watt commenced the Bankruptcy Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

H. On January 24, 2019, the Court approved the Trustee's appointment as Chapter 11 Trustee pursuant to the *Order Approving Appointment of Chapter 11 Trustee*. [Doc 146] The Trustee has been managing the Debtor's affairs since his approval.

I. On April 19, 2019, Allrise filed its Proof of Claim No. 327-1 asserting the right to payment of not less than $2,827,956 on a general unsecured basis. Allrise asserted that its general unsecured claim arises under Allrise Agreements.

J. On August 9, 2019, the Trustee sent a letter to Allrise formally terminating the Sublease.

K. On December 11, 2019, at the Trustee's request, Allrise removed its miners from Pod 1 so that the Trustee could begin operating in Pod 1. The Trustee's staff supervised the removal to ensure that nothing, but miners and related power cords were removed from Pod 1. Thereafter, in December 2019, the Trustee installed miners and began operations in Pod 1 for the benefit of the estate.

L. On January 24, 2020, Allrise IP Holding, Inc., through its affiliate, Allrise Financial Group filed the *Notice and Motion to Compel Trustee to Abandon Allrise Mining Pod* [ECF 461], filed on January 24, 2020 (the "**Pod Claim**") and the *Application of Allrise Financial Group for Allowance and Payment of Administrative Expense Claim* [ECF 459], filed on January 24, 2020 (the "**Miners Claim**"). In the Pod Claim and Miners Claim, Allrise asserted that it owned Pod 1 and that it had purchased an additional 168 miners which had not been located in Pod 1 on December 11, 2019 when it was allowed to remove miners from Pod 1. It sought payment in the amount of $165,100.

M. On February 17, 2020, the Trustee filed the *Omnibus Opposition of the Chapter 11 Trustee to: (i) Notice and Motion to Compel Trustee to Abandon*

*Allrise Mining Pod and (ii) Application of Allrise Financial Group for Allowance and Payment of Administrative Expense Claim* [Doc 483]

N. The Parties have resolved their differences and disputes and wish to enter into a settlement and general release of claims on the terms and conditions set forth in this Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual promises, covenants and provisions set forth in this Agreement, the sufficiency of which is hereby acknowledged, the parties agree as follows:

1. Effective Date. This Agreement will be effective on the date that an Order (the "**Approval Order**") of the Bankruptcy Court approving this Agreement has been entered on the Bankruptcy Court's docket in the Bankruptcy Case (the "**Effective Date**").

2. Miners. The Trustee shall transfer to Allrise five (5) Antminer S9 miners and ninety-five (95) Panda B3 miners (collectively, the "**Mining Equipment**").

> 2.1. Delivery. The Trustee's obligation to deliver the Mining Equipment shall be fulfilled by making the Mining Equipment available to Allrise at the Expansion Area. Allrise agrees to be responsible for, to assume, and to bear all costs and risks involved in picking up, removing, and transporting the Mining Equipment from the Expansion Area to Allrise's destination. Further, the Mining Equipment must be picked up by Allrise on or before 15 days after entry of the Approval Order (the "**Pick-Up Deadline**"). If Allrise does not pick up the Mining Equipment on or before the Pick-Up Deadline, and does not make arrangements with the Trustee for a mutually acceptable alternative Pick-Up Date confirmed in writing, then (x) Allrise shall automatically forfeit any claim to the Mining Equipment, (y) the Trustee shall have the right to dispose of the Mining Equipment in his sole discretion without further Order of the Court or notice to Allrise, and (z) all other terms of this Agreement, including the general release contained herein, shall survive and remain in full force and effect.

2.2. <u>Selection Protocol</u>. Allrise may choose the five (5) S9 miners and the ninety-five (95) Panda miners that the Trustee will transfer to Allrise subject to the following protocol:

2.2.1. A representative of the Trustee shall accompany a representative of Allrise on the Pick-Up Deadline;

2.2.2. After Allrise chooses the Mining Equipment, the Trustee's representative shall disconnect the Mining Equipment;

2.2.3. The Trustee has no obligation to ensure, test or demonstrate whether any of the Mining Equipment is working;

2.2.4. Allrise shall be responsible for all its costs incurred in removing the Mining Equipment, including, but not limited to, the cost of hiring personnel to remove the Mining Equipment and any transportation costs.

2.3. <u>As Is</u>. The transfer of the Mining Equipment is "as is."

**THE TRUSTEE MAKES NO WARRANTY WHATSOEVER WITH RESPECT TO THE MINING EQUIPMENT OR POD 1, INCLUDING ANY (a) WARRANTY OF MERCHANTABILITY; OR (b) WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE; WHETHER EXPRESS OR IMPLIED BY LAW, COURSE OF DEALING, COURSE OF PERFORMANCE, USAGE OF TRADE OR OTHERWISE.**

3. <u>Indemnification</u>. Allrise shall indemnify, defend, and hold harmless the Trustee against any and all damage to the real property of the Expansion Area or to property of the estate that is caused by Allrise's negligence in removing the Mining Equipment from Pod 1. Pursuant to this provision, Allrise agrees to pay the attorneys' fees and costs incurred by the Trustee as a result of damage to the real property of the Expansion Area or to property of the estate that is caused by Allrise's negligence.

4. <u>Abandonment</u>. This Agreement is contingent on the Trustee abandoning Pod 1. Within five (5) business days of execution of this Agreement by both Parties, the Trustee will file a motion on notice and hearing for an Order permitting the Trustee to abandon Pod 1.

4.1. The Trustee makes no representation or warranty regarding Allrise's interest in Pod 1 after the Trustee has abandoned it. The Trustee discloses his belief that the Master Landlord may contest Allrise's interest in Pod 1.

5. <u>Bankruptcy Court Approval</u>. The obligations, releases, and waivers of each of the Parties are conditioned on approval of the Bankruptcy Court of this Agreement. Within five (5) business days after the Parties have signed this Agreement, the Trustee shall file a motion with the Court seeking approval of this Agreement.

6. <u>Deemed Withdrawal of Allrise Claims</u>. The Approval Order shall provide that the Allrise Proof of Claim, the Pod Claim, and the Miners Claim shall be deemed withdrawn with prejudice without the need of further motion, notice, hearing, or Order.

7. <u>No Further Contest; General Release</u>. The Parties acknowledge and agree that this Agreement is intended to fully and finally resolve all claims, controversies, and disputes between them, and that neither Allrise nor the Trustee may later pursue a claim or legal theory that would involve further litigation of the claims asserted in the Bankruptcy Case or otherwise. In exchange for the consideration provided in this Agreement, Allrise and its representatives, administrators, shareholders, members, partners, officers, directors, principals, attorneys, employees, agents, and assigns, on the one hand, and the Trustee and the Trustee's representatives, administrators, attorneys, employees, agents and assigns, on the other, hereby irrevocably and unconditionally fully and forever waive, release, and discharge the other from any and all claims, demands, actions, causes of actions, judgments, rights, fees, damages, debts, obligations, liabilities, and expenses (inclusive of attorneys' fees) of any kind whatsoever, whether known or unknown that either Party may have or has ever had against the other.

**Unknown Claims Waiver.** THIS GENERAL RELEASE BETWEEN THE PARTIES EXTENDS EVEN TO CLAIMS THAT A PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS, ITS OR HER FAVOR AT THE TIME OF EXECUTING THIS RELEASE. THIS GENERAL RELEASE IS VALID AND APPLIES EVEN IF KNOWLEDGE OF SUCH NOW UNKNOWN CLAIM WOULD HAVE MATERIALLY AFFECTED THE DECISION TO ENTER INTO THIS SETTLEMENT AGREEMENT.

8. <u>Agreement is Not an Admission</u>. The Parties hereby acknowledge that this Settlement Agreement is a compromise as to disputed claims and,—subject to

the conditions set forth herein—nothing in or about this Settlement Agreement is an admission of liability, wrongdoing, or default on the part of any Party, all of whom and which expressly deny any fault or liability, and the Settlement Agreement shall not be construed as admission of liability, wrongdoing, or default on the part of any Party.

9. <u>General Provisions</u>.

   9.1. <u>Amendment</u>. This Agreement may not be altered, modified, or amended except by a written document executed by all of the Parties.

   9.2. <u>Attorneys' Fees or Costs</u>. The Parties each acknowledge and agree that each Party is responsible for his, her or its own attorneys' fees, court fees, consultant, and other costs in connection with the Allrise Proof of Claims, the Pod Claim, the Miners Claim, or the Bankruptcy Case except that in the event of a breach of this Agreement, the prevailing party shall be entitled to attorneys' fees and costs.

   9.3. <u>Authority</u>. Each Party hereby represents and warrants to the other Party that it has the respective power and authority, and is duly authorized to execute, deliver, and perform their obligations under this Agreement and to release all claims against the other.

   9.4. <u>Headings</u>. The headings in the Agreement are inserted for reference only and shall not be construed to expand, limit, or otherwise modify the terms and conditions of this Settlement Agreement.

   9.5. <u>No Third-Party Beneficiary</u>. This Agreement is made and entered into for the sole protection and benefit of the Parties. No other person shall have any right of action based upon any provision of this Agreement.

   9.6. <u>Interpretation</u>. This Agreement has been reviewed and revised by legal counsel for all Parties and no presumption or rule that ambiguity shall be construed against the Party drafting the document shall apply to the interpretation or enforcement of this Agreement.

   9.7. <u>Governing Law, Jurisdiction, and Venue</u>. This Agreement and all matters arising out of or relating to this Agreement

for all purposes shall be governed by and construed in accordance with the laws of the State of Washington, without regard to any conflicts of laws principles that would require the laws of any other jurisdiction to apply, and section 101, et seq. of title 11 of the United States Code, as applicable, Any action or proceeding by either of the Parties concerning this Agreement shall be brought only in the Bankruptcy Court. The Parties hereby irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court and waive the defense of inconvenient forum to the maintenance of any action or proceeding in such venue.

    9.8. <u>Entire Agreement</u>. Unless specifically provided herein, this Agreement contains all of the understandings and representations between the parties relating to the subject matter hereof and supersedes all prior and contemporaneous understandings, discussions, agreements, representations, and warranties, both written and oral, regarding such subject matter.

    9.9. <u>Counterparts</u>. The Parties may execute this Agreement in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same instrument. This Agreement and counterparts thereof, may be executed and delivered by facsimile or other electronic transmission, with the safe effect as an original executed Agreement or counterpart.

    9.10. <u>Notices</u>. All notices under this Agreement must be given in writing at the addresses indicated in this Agreement or any other address designated in writing by either Party.

    9.11. <u>Acknowledgment of Full Understanding</u>. The Parties acknowledge and agree that each of them has fully read, understands, and voluntarily enters into this agreement. The Parties acknowledge and agree that each of them had an opportunity to ask questions and consult with an attorney of their choice before signing this Agreement. The Parties further acknowledge that their signature below is an agreement to release each other from any and all claims that can be released as a matter of law.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date and year indicated below.

ALLRISE FINANCIAL GROUP, INC., a Delaware corporation

By: _____*Ruslan Zinurov*_____
      DocuSigned by: C59270E813C74A8...
Name: Ruslan Zinurov
Title: CEO

Date Signed: August 21, 2020

Address: 200 Spectrum Center Dr., Suite 1450
Irvine, CA 92618

ALLRISE IP HOLDING, INC., a Delaware corporation

By: _____*[signature]*_____
      DocuSigned by: 76C27F2093564DB...
Name: Vladimir Evseev
Title: CEO

Date Signed: August 21, 2020

Address: Spectrum Center Dr., Suite 1450
Irvine, CA 92618

**ALLRISE IP HOLDING, INC., a Cayman Islands corporation**

By: _____*Ruslan Zinurov*_____
      DocuSigned by: C59270E813C74A8...
Name: Ruslan Zinurov
Title: President

Date Signed: August 21, 2020

Address: Spectrum Center Dr., Suite 1450
Irvine, CA 92618

**CHAPTER 11 TRUSTEE, on behalf of the Giga Watt estate**

By: _____
    Mark D. Waldon, *Chapter 11 Trustee*

Date Signed: August __, 2020

Address:
Law Offices of Mark D. Waldron, PLLC
6711 Regents Blvd., Suite B
Tacoma, WA 98466

4831-7766-7527, v. 3

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date and year indicated below.

ALLRISE FINANCIAL GROUP, INC., a Delaware corporation

By:_____
Name:
Title:

Date Signed: August __, 2020

Address:

ALLRISE IP HOLDING, INC., a Delaware corporation

By:_____
Name:
Title:

Date Signed: August __, 2020

Address:

ALLRISE IP HOLDING, INC., a Cayman Islands corporation

By:_____
Name:
Title:

Date Signed: August __, 2020

Address:

CHAPTER 11 TRUSTEE, on behalf of the Giga Watt estate

By: _____
Mark D. Waldon, *Chapter 11 Trustee*

Date Signed: August 24, 2020

Address:
Law Offices of Mark D. Waldron, PLLC
6711 Regents Blvd., Suite B
Tacoma, WA 98466

4831-7766-7527, v. 3