Pamela M. Egan, WSBA No. 54736 (*pro hac vice*)
POTOMAC LAW GROUP PLLC
1905 7th Avenue W.
Seattle, Washington 98119
Telephone: (415) 297-0132
Facsimile: (202) 318-7707
Email: pegan@potomaclaw.com

*Attorneys for Mark D. Waldron, Chapter 11 Trustee*

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GIGA WATT, Inc., a Washington corporation,<br><br>              Debtor. | Case No. 18-03197 FPC 11<br><br>The Honorable Frederick P. Corbit<br><br>**MEMORANDUM IN SUPPORT OF CHAPTER 11 TRUSTEE'S MOTION FOR APPROVAL OF SETTLEMENT WITH ALLRISE AND RELATED RELIEF** |

Memorandum in Supp. of Chapter 11
Trustee's Motion for Order
Approving Allrise Settlement

# **TABLE OF CONTENTS**

I. RELIEF REQUESTED ................................................................................ 1

II. BACKGROUND FACTS ............................................................................ 2

    A. The Allrise Agreements. .................................................................... 3

    B. Post-Bankruptcy Events. .................................................................... 4

III. SUMMARY OF DISPUTE............................................................................ 6

IV. POINTS AND AUTHORITIES ................................................................... 8

    A. The Settlement Meets Each of the *A & C Properties Factors*............ 9

        1. Probability of Success on the Merits Is Uncertain. .................. 9

        2. Collectability Weighs in Favor of Settlement. ....................... 10

        3. The Litigation Would Be Complex, Expensive, Inconvenient and Would Cause Delay. ...................................................... 10

        4. The Settlement Serves the Paramount Interest of the Creditors and Provides Proper Deference to Their Reasonable Views.. 11

    B. The Settlement Is An Exercise of Sound Business Judgment .......... 12

    C. Cause Exists to Waive the Rule 6004 Stay ....................................... 13

V. NOTICE....................................................................................................... 13

VI. CONCLUSION ........................................................................................... 14

Memorandum in Supp. of Chapter 11
Trustee's Motion for Order
Approving Allrise Settlement - Page i

# TABLE OF AUTHORITIES

### CASES

*In re A & C Properties*, 784 F.2d 1377 (9th Cir. 1986) .......................................... 8

*In re Claar Cellars LLC and RC Farms LLC*, 2020 WL 1238924 (Bankr. E.D. Wash. Mar. 13, 2020) ........................................................................................ 12

*In re Equity Funding Corporation of America,* 519 F.2d 1274 (9th Cir. 1975) ... 12

*In re Ernst Home Ctr., Inc.*, 209 B.R. 974 (Bankr. W.D. Wash. 1997) ................ 12

*In re Flight Transportation Corporation Securities Litigation*, 730 F.2d 1128 (8th Cir. 1984) (citations omitted), *cert. denied*, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985)) ...................................................................................... 8

*In re Johnston*, 49 F.3d 538 (9th Cir. 1995) .......................................................... 9

*In re Lionel Corp.*, 722 F.2d 1063 (2nd Cir. 1983) .............................................. 12

*In re Schmitt,* 215 B.R. 417 (B.A.P. 9th Cir. 1997) ............................................... 8

*Mission Products Holdings, Inc. v. Tempnology, LLC,* 139 S. Ct. 1652, 203 L. Ed. 2d 876 (2019) ...................................................................................................... 12

### STATUTES

11 U.S.C. § 105 ........................................................................................................ 1

11 U.S.C. § 363 .................................................................................................. 1, 12

11 U.S.C. § 510 ........................................................................................................ 6

11 U.S.C. § 554 ........................................................................................................ 9

### RULES

Fed.R.Bank.P. 2002 ................................................................................................ 1

Fed.R.Bankr.P. 6004 .......................................................................................... 1, 13

Memorandum in Supp. of Chapter 11
Trustee's Motion for Order
Approving Allrise Settlement - Page ii

18-03197-FPC7    Doc 686    Filed 08/25/20    Entered 08/25/20 14:46:37    Pg 3 of 18

## Rules (Cont'd)

Fed.R.Bankr.P. 9019 .................................................................................... 1, 8

L.B.R. 2002-1 ............................................................................................. 1, 13

L.B.R. 6004-1 ................................................................................................... 1

L.B.R. 9019-1 ............................................................................................. 1, 13

Memorandum in Supp. of Chapter 11
Trustee's Motion for Order
Approving Allrise Settlement - Page iii

18-03197-FPC7    Doc 686    Filed 08/25/20    Entered 08/25/20 14:46:37    Pg 4 of 18

Mark D. Waldron, in his official capacity as the Chapter 11 Trustee (the "Trustee") in the above-captioned case hereby respectfully submits this memorandum in support of the *Chapter 11 Trustee's Motion for Approval of Settlement With Allrise and Related Relief* (the "Motion"), filed herewith.

The Trustee brings the Motion pursuant to 11 U.S.C. §§ 105 and 363, Fed.R.Bank.P. 2002, 6004, and 9019 and L.B.R. 2002-1, 6004-1, and 9019-1. As set forth more fully below, by the Motion the Trustee is proposing to abandon a Pod that has no value and that instead creates a liability and to transfer 100 miners whose market value is *de minimis*. In exchange, the estate will be released of nearly $3 million in claims.

In support of the Motion, the Trustee respectfully avers:

## I. RELIEF REQUESTED

By the Motion, the Trustee seeks approval of a settlement (the "Settlement Agreement" or the "Settlement") with Allrise Financial Group, Inc., a Delaware corporation, Allrise IP Holding Inc., a Delaware corporation, and Allrise IP Holding Inc., a Cayman Islands corporation (collectively, "Allrise" and together with the Trustee, the "Parties"), pursuant to which (1) the Trustee will abandon any interest of the estate in Pod 1 and (2) the Trustee will transfer 100 miners to Allrise, as described more fully below. The Settlement Agreement includes a mutual general release. In particular, Allrise will release all claims against the estate, including Proof of Claim, Claim No. 327-1, seeking payment on a general

Memorandum in Supp. of Chapter 11
Trustee's Motion for Order
Approving Allrise Settlement - Page 1

18-03197-FPC7    Doc 686    Filed 08/25/20    Entered 08/25/20 14:46:37    Pg 5 of 18

unsecured basis in the amount of $2,827,956, and an administrative claim in the amount of $165,100. The Trustee also requests that the 14-day stay provided by Fed.R.Bank.P. 6004(h) be waived and that the Order granting the Motion be effective immediately. Release of the stay will allow the Trustee to more quickly vacate the premises of the Debtor's former facility in Moses Lake, Washington.

## II. BACKGROUND FACTS

The Trustee has determined that in early 2017, Giga Watt began a multi-front campaign to raise money. The Court is already familiar with the first front: an unregistered ICO pursuant to which Giga Watt and its affiliates, Giga Watt Pte. Ltd. ("GW Singapore") and Cryptonomos Pte. Ltd. ("Cryptonomos") broadly publicized that it was rapidly expanding its crypto-mining power capacity and that it had access to power at among the cheapest rates in the world. In a cynical attempt to evade U.S. securities laws, an offshore company, GW Singapore, claimed to control this capacity and offered to sell each "watt" of this capacity via "WTT tokens" which ranged in price from $1.00 to $1.20 per watt or per token depending on when they were purchased. Perkins Coie LLP would hold the token sale proceeds in escrow until the capacity was built. Giga Watt built less than half the promised capacity. Perkins Coie distributed all the proceeds.

Another way in which Giga Watt raised money was to sell individual pods to parties. In 2017, Giga Watt entered into two sets of very similar agreements:

Memorandum in Supp. of Chapter 11
Trustee's Motion for Order
Approving Allrise Settlement - Page 2

18-03197-FPC7    Doc 686    Filed 08/25/20    Entered 08/25/20 14:46:37    Pg 6 of 18

one with Allrise IP Holding, Inc. ("Allrise") and a second with EcoDiversified Holdings, Inc. ("EDH").[1] The Motion pertains to Allrise.

### A. The Allrise Agreements.

In anticipation of selling a Pod to Allrise, on May 1, 2017, Giga Watt signed a lease with MLDC 1 LLC, one of the landlords of the Debtor's facility in Moses Lake, Washington, for land (the "Expansion Area") that was adjacent to its preexisting facility that it already rented from MLDC 1 LLC. That same day, Giga Watt subleased (the "Sublease") half of the Expansion Area to Allrise.

Also, on the same day, May 1, 2017, Allrise entered into a Purchase and Sale Agreement (the "Purchase Agreement") with Giga Watt Pte., Ltd., a Singapore company ("GW Singapore"), for the purchase of 904 miners at a price, including shipping, of $1,694,916.00. Allrise asserts that it purchased these miners to operate them in Pod 1.

On May 2, 2017, Giga Watt and Allrise entered into a Mining Farm Development Agreement (the "Development Agreement") which provided that Giga Watt would build Pod 1 for Allrise for a purchase price of $1.2 million on the land that was the subject of Sublease.

On May 2, 2017, the Parties also entered into a service agreement (the "Service Agreement") pursuant to which Allrise agreed to pay Giga Watt for

---

[1] Giga Watt may have entered into a third set of agreements with Red Team Investments, whose CEO is Trevin Vaughn. The Trustee is investigating this possibility.

Memorandum in Supp. of Chapter 11
Trustee's Motion for Order
Approving Allrise Settlement - Page 3

electricity consumed by Pod 1 and would also pay for assistance with Allrise's operations. The Sublease, Purchase Agreement, the Development Agreement, and the Service Agreement are referred to herein collectively as the "<u>Allrise Agreements</u>."

### B. Post-Bankruptcy Events.

On November 19, 2018 (the "<u>Petition Date</u>"), Giga Watt commenced this case by filing a voluntary petition for relief pursuant to sections 101, *et seq.* of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). After the Petition Date, management did not report its post-petition revenues despite the fact that Giga Watt continued to operate until the Grant County Public Utility District turned off the electricity in mid-January 2019. Those revenues are unaccounted for and management has fled.

Allrise did not timely pay the January 2019 rent pursuant to the Sublease.

On January 23, 2019, the Court approved the appointment of Mark D. Waldron as the Trustee pursuant to its *Order Approving Appointment of Chapter 11 Trustee* [Docket. No. 146].

On April 19, 2019, Allrise filed Proof of Claim No. 327-1, seeking payment on a general unsecured basis in the amount of $2,827,956 and alleging breach by Giga Watt of the Allrise Agreements.

On August 9, 2019, the Trustee sent a letter to Allrise formally terminating the Sublease.

Memorandum in Supp. of Chapter 11
Trustee's Motion for Order
Approving Allrise Settlement - Page 4

On December 11, 2019, at the Trustee's request, Allrise removed its miners from Pod 1. The Trustee made this request after concluding that Allrise had not participated in the ICO, but instead ran an independent operation. The separate operation of another entity, EDH, corroborated Allrise's claims. The Trustee's staff supervised the removal to ensure that only miners and related power supply units were removed from Pod 1. Thereafter, Allrise asserted that 168 miners had not been located in Pod 1 and were missing.

In December 2019, the Trustee commenced cryptocurrency mining in Pod 1 for the benefit of the estate.

On January 24, 2020, Allrise filed the *Notice and Motion to Compel Trustee to Abandon Allrise Mining Pod* [ECF 461] seeking to recover Pod 1 through abandonment and the *Application of Allrise Financial Group for Allowance and Payment of Administrative Expense Claim* [ECF 459] demanding payment of $165,100 for 168 miners that it claims were missing from Pod 1 when it removed its miners from Pod 1 on December 11, 2019.

On March 13, 2020, the Trustee shut down the Debtor's operations at the ML Facility because the operations were not profitable.

On April 1, 2020, the Court directed the Parties to develop a protocol for searching for the missing miners. [ECF 525] In the course of those discussions, the Parties resolved their differences, as set forth herein, subject to Court approval.

Memorandum in Supp. of Chapter 11
Trustee's Motion for Order
Approving Allrise Settlement - Page 5

18-03197-FPC7    Doc 686    Filed 08/25/20    Entered 08/25/20 14:46:37    Pg 9 of 18

### III. SUMMARY OF DISPUTE

Allrise alleges that in May 2017, it paid $1.2 million to Giga Watt, Inc. to build a Giga Pod ("Pod 1"), which is a 12' by 48' slab-on-grade building outfitted with wiring, racks and fans and which was designed to facilitate cryptocurrency mining at Giga Watt's facility in Moses Lake, Washington (the "ML Facility"). Allrise alleges that it owns and that it operated Pod 1 before the Petition Date until the electricity was shut off in mid-January 2019. Allrise has further asserted that 168 miners were missing from Pod 1. It demanded that the Trustee look for the missing miners throughout the Debtor's facilities, which at the time were operating in Moses Lake, Washington and East Wenatchee, Washington.

The Trustee initially contested Allrise's claims. Generally, the Trustee wanted to determine whether Allrise had participated in Giga Watt's Initial Coin Offering ("ICO"). If it had, then, arguably, Allrise's claims would arise from the purchase of a security and would be subordinated pursuant to section 510(b) of the Bankruptcy Code. Allrise countered that it made its agreements with Giga Watt before the ICO began and without any purchase of the WTT tokens offered in the ICO. It also presented evidence that Allrise had its own onsite employee who was responsible for Allrise's operations in Pod 1 and that employees of Giga Watt had been aware that Allrise operated Pod 1.

Initially, the Trustee asserted that his *bona fide* purchaser status defeated Allrise's unrecorded interest in Pod 1. Allrise countered that there was sufficient

Memorandum in Supp. of Chapter 11
Trustee's Motion for Order
Approving Allrise Settlement - Page 6

constructive notice to avoid *bona fide* purchaser status. The Trustee further asserted that Pod 1 became property of the estate after Allrise breached the Parties sublease. Allrise argued that it had not breached any agreements by not making payment in January 2019 because Giga Watt had instructed Allrise not to pay pending further notice. EDH corroborated Allrise's argument by asserting the same thing, that is, that Giga Watt had instructed EDH not to pay pursuant to the parties' agreements.

With respect to the alleged missing miners, the Trustee argued that, among other things, Allrise had never complained about missing miners for the year that it had operated Pod 1. However, Giga Watt's facilities were in disarray when the Trustee took over. Therefore, it is possible that miners were moved or lost before the Trustee was appointed. Further, the value of the 100 miners that the estate would be transferring in exchange for a full release is significantly less than Allrise's claims, which is nearly $3 million – including $165,100 in administrative priority

After the dispute began, the Trustee concluded that Pod 1 is of inconsequential value and benefit to the estate. The ML Facility is not profitable. Pod 1 is a niche structure designed solely for cryptocurrency. An entire wall of Pod 1 has holes in it to accommodate fans. There is no heat or running water. Further, the estate never owned the land on which Pod 1 stands, but instead leased it. That lease has been rejected.

Memorandum in Supp. of Chapter 11
Trustee's Motion for Order
Approving Allrise Settlement - Page 7

## IV. POINTS AND AUTHORITIES

Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. To be approved, the settlement should be in the best interests of the estate and "reasonable, given the particular circumstances of the case." *In re A & C Properties.*, 784 F.2d 1377, 1381 (9th Cir. 1986). While a court generally gives deference to a trustee's business judgment in deciding whether to settle a matter, the Trustee "has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved." *Id.*

In determining the "fairness, reasonableness and adequacy" of a proposed compromise, a bankruptcy court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*A & C Props.*, 784 F.2d at 1381 (quoting *In re Flight Transportation Corporation Securities Litigation*, 730 F.2d 1128, 1135 (8th Cir. 1984) (citations omitted), *cert. denied*, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985)). "When assessing a compromise, courts need not rule upon disputed facts and questions of law, but rather only canvass the issues." *In re Schmitt,* 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997).

Memorandum in Supp. of Chapter 11
Trustee's Motion for Order
Approving Allrise Settlement - Page 8

The Trustee has determined that Pod 1 is of inconsequential value and benefit to the estate and that it should be abandoned. 11 U.S.C. § 554. *Accord In re Johnston*, 49 F.3d 538, 540 (9th Cir. 1995). The Grant County Public Utility District has raised electrical rates for cryptocurrency miners to the point that crypto-mining in Grant County, Washington is not profitable. Further, Pod 1 is too specialized to be used outside of cryptocurrency mining and cannot economically be repurposed. For example, an entire wall of Pod 1 has holes in it for fans. Pod 1 has no running water or heat. Further, the lease for the land on which the Pod stands has been rejected. Therefore, the Pod would have to be removed, which is also expensive. The foregoing justifies abandonment, regardless of the settlement.

### A.     The Settlement Meets Each of the *A & C Properties* Factors.

#### 1.     Probability of Success on the Merits Is Uncertain.

As set forth above, Giga Watt built Pod 1 for Allrise's use and ownership, pursuant to the Development Agreement. Although Allrise failed to record its interest, Pod 1 is of inconsequential value and benefit to the estate. Furthermore, Allrise argued that, although it did not record its interest in Pod 1, constructive notice existed sufficient to make the claim enforceable against the estate despite the lack of recording. The Trustee confirmed that Giga Watt's employees were aware that an entity other than Giga Watt operated Pod 1.

The Trustee disputed Allrise's claim of missing miners largely on the ground that Allrise had been operating Pod 1 for almost a year and never once during that

Memorandum in Supp. of Chapter 11
Trustee's Motion for Order
Approving Allrise Settlement - Page 9

18-03197-FPC7    Doc 686    Filed 08/25/20    Entered 08/25/20 14:46:37    Pg 13 of 18

year complained about missing miners. However, the Trustee could not rule out the possibility that Giga Watt moved miners after the Petition Date but before the Trustee's appointment and confirmation, which date is, January 23, 2019. Giga Watt's facilities were in disarray when the Trustee took over.

Therefore, the probability of success factor weighs in favor of the Settlement.

### 2. Collectability Weighs in Favor of Settlement.

Even if the Trustee won the dispute re Pod 1, the estate would recover nothing because Pod 1 has inconsequential value. It is designed specifically for crypto-mining and cannot economically be re-purposed or moved. The estate does not own the land on which the Pod stands. Furthermore, the miners are obsolete and old and, therefore, the miners are also of minimal value to the estate. Accordingly, "winning" the dispute regarding the Pod would provide little value to the estate. Based on the foregoing, collectability weights in favor of the Settlement.

### 3. The Litigation Would Be Complex, Expensive, Inconvenient and Would Cause Delay.

Fighting over Pod 1 would not be a productive use of the estate's resources because Pod 1 is not valuable, as set forth above. In addition, searching for missing miners based on serial numbers would be time consuming and distracting.

Memorandum in Supp. of Chapter 11
Trustee's Motion for Order
Approving Allrise Settlement - Page 10

18-03197-FPC7    Doc 686    Filed 08/25/20    Entered 08/25/20 14:46:37    Pg 14 of 18

Furthermore, the landlord of the ML Facility may assert that it owns Pod 1 because it was built without notice to or consent of the landlord in violation of the lease between Giga Watt and the landlord for the Expansion Area. After abandonment, those issues will no longer implicate the estate and the landlord and Allrise can work out those issues without the Trustee's involvement.

This factor weighs in favor of Settlement.

### 4. The Settlement Serves the Paramount Interest of the Creditors and Provides Proper Deference to Their Reasonable Views.

The Settlement Agreement relieves the estate of nearly $3 million in liability in exchange for assets that are of inconsequential value. It will also facilitate the Trustee's vacating of the Moses Lake Facility by having Allrise pay to remove 100 miners. The Trustee has also determined that the 100 miners are worth significantly less than Allrise's administrative claim of $165,100, which is being released.

Further, it would not be productive defending claims to assets which are of inconsequential value.

Based on the foregoing, all the *A & C Properties* factors weigh in favor of approving the Settlement Agreement. Pod 1 is of inconsequential value or benefit to the estate. The Settlement Agreement releases the estate of a general unsecured claim in the amount of $2,827,956 and of an administrative claim in the amount of

Memorandum in Supp. of Chapter 11
Trustee's Motion for Order
Approving Allrise Settlement - Page 11

$165,100 in exchange. The value of the 100 miners to be transferred is far less than either of these claims.

### B. The Settlement Is An Exercise of Sound Business Judgment

Under section 363(b)(1) of the Bankruptcy Code, the Trustee may use, sell, or lease property of the estate, other than in the ordinary course of its business. 11 U.S.C. § 363. The decision to enter into a transaction that is outside the ordinary course of the debtor's business must be based on the Trustee's reasonable business judgment and supported by "some articulated business justification*." In re Ernst Home Ctr., Inc.*, 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997) (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2nd Cir. 1983)). The standard is deferential. *See In re Claar Cellars LLC and RC Farms LLC,* 2020 WL 1238924, at *4 (Bankr. E.D. Wash. Mar. 13, 2020) (describing the business judgment standard as a 'deferential' standard pursuant to which a 'bankruptcy court will generally approve' a reasoned decision by the debtor.").[2]

Here, the Trustee is proposing to abandon a Pod 1 that is a liability and to transfer 100 miners whose market value are *de minimis*. In exchange, the estate is being released of nearly $3 million in claims. Based on the foregoing, the proposed transaction is a reflection of sound business judgment.

---

[2] Citing and quoting, *In re Equity Funding Corporation of America,* 519 F.2d 1274, 1277 (9th Cir. 1975); *Ernst Home Ctr., Inc.*, 209 B.R. at 979-80, and *Mission Products Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1658, 203 L. Ed. 2d 876 (2019).

Memorandum in Supp. of Chapter 11
Trustee's Motion for Order
Approving Allrise Settlement - Page 12

### C. Cause Exists to Waive the Rule 6004 Stay

Bankruptcy Rule 6004 states:

> An order authorizing the . . . use . . . of property . . . is stayed until the expiration of 14 days after entry of the order, *unless the court orders otherwise*.

Fed.R.Bankr.P. 6004(h). Time is of the essence. As the Court is aware, the Trustee closed the Moses Lake Facility after the Grant County Public Utility District approved and implemented a significant rate increase specifically for cryptocurrency mining operations. The Trustee is informed and believes that this rate increase has vastly reduced the number of such operations in Grant County. The Trustee has negotiated a settlement with the Moses Lake landlord, subject to Court approval, which requires the Trustee to vacate the premises as soon as possible. Transferring the 100 miners as proposed in the Motion will facilitate this process by enabling the Trustee to remove 100 miners from the premises at no expense to the estate.

The foregoing states sufficient cause to provide that the Order approving the Allrise Settlement will be effective immediately upon entry onto the Court's docket.

### V. NOTICE

Pursuant to L.B.R. 2002-1 and 9019-1, the Trustee is serving notice of this Motion on the Master Mailing List, which includes the U.S. Trustee. A copy of

Memorandum in Supp. of Chapter 11
Trustee's Motion for Order
Approving Allrise Settlement - Page 13

the Notice is attached to the Motion as <u>Exhibit C</u>. The Trustee respectfully submits that the Notice is sufficient.

## VI. CONCLUSION

WHEREFORE, the Trustee respectfully requests entry of an Order:

1. Granting the Motion;

2. Approving the Settlement Agreement;

3. Authorizing the Trustee to enter into the Settlement Agreement and to perform pursuant to its terms, including, abandoning Pod 1 and transferring to Allrise five (5) S9 miners and ninety-five (95) Panda Plus B3 miners;

4. Providing that the Order be effective immediately upon entry; and

5. Granting such other and further relief as the Court deems necessary and just.

Dated: August 25, 2020     POTOMAC LAW GROUP PLLC

By: */s/ Pamela M. Egan*
Pamela M. Egan (WSBA No. 54736)
*Attorneys for Mark D. Waldron, Chapter 11 Trustee*

Memorandum in Supp. of Chapter 11
Trustee's Motion for Order
Approving Allrise Settlement - Page 14

18-03197-FPC7    Doc 686    Filed 08/25/20    Entered 08/25/20 14:46:37    Pg 18 of 18