# EXHIBIT B
(Equipment Purchase Agreement)

# EQUIPMENT SALE AGREEMENT

This Equipment Sale Agreement (the "**Agreement**"), is entered into as of the 11th day of September, 2020 between Mark D. Waldron, in his official capacity as the duly-appointed Chapter 11 Trustee (the "**Seller**") and Chain Lodge 1, LLC, a Washington Limited Liability Company ("**Buyer**," and together with Seller, the "**Parties**," and each, a "**Party**.").

**WHEREAS**, Seller is the duly-appointed Chapter 11 Trustee acting on behalf of and representing the estate (the "**Estate**") in the bankruptcy case (the "**Bankruptcy Case**") of Giga Watt, Inc. (the "**Debtor**") pending in the United States Bankruptcy Court for the Eastern District of Washington under Case No. 18-03197-FPC 11 (the "**Bankruptcy Court**").

**WHEREAS**, Buyer desires to purchase from Seller, and Seller desires to sell to Buyer the miners, including the D3 miners in the storage container, computers, power supply units (PSUs), power cables, power cords, servers, and computer screens located at the Moses Lake Facility, 7906 Randolph Rd. NE, Moses Lake, Washington, which has been operated by Debtor (the "**Equipment**"), as more particularly described in the attached Schedule 1, subject to the approval of the Bankruptcy Court and the terms of this Agreement.

**WHEREAS** the Parties acknowledge and agree that this sale does not include (1) the five (5) Antminer S9 miners and ninety-five (95) Panda B3 miners being transferred to Allrise IP Holding, Inc. by separate agreement, (2) the equipment located in Pod 8 of Parcel E pods at the Moses Lake Facility, which is occupied by Eco Diversified Holdings, Inc., (3) the electrical infrastructure, any shelving, and Power Distribution Units (PDUs) located at the Moses Lake Facility, or (4) the forklift or any other property or items not listed in Schedule 1.

**WHEREAS** this Agreement and the removal of the Equipment shall be in compliance with the reasonable requests of the Landlord.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Sale of Equipment. Seller shall sell the Equipment to Buyer and Buyer shall purchase the Equipment from Seller, as more particularly described in Schedule 1. The Parties acknowledge and agree that this sale does not include (i) the five (5) Antminer S9 miners and ninety-five (95) Panda B3 miners being transferred to Allrise IP Holding, Inc. by separate agreement, (ii) the equipment located in Pod 8 of Parcel E pods at the Moses Lake Facility, which is occupied by Eco Diversified Holdings, Inc., (iii) the electrical infrastructure, any shelving, and Power Distribution Units (PDUs) located at the Moses Lake Facility, or (iv) the forklift or any other property or items not listed on Schedule 1. This sale shall be free and clear of all liens, encumbrances, claims, or interest, pursuant to 11 USC §363, with any such claims attaching to the proceeds.

-1-

2. Buyer's Acknowledgement & Buyer's Security.

   2.1. Buyer acknowledges that:

      2.1.1. Buyer is not relying on Schedule 1 with respect to this Agreement, including, but not limited to, the decision to enter into this Agreement,
      2.1.2. Buyer has conducted its own inventory of the Equipment and is relying on its own inventory in deciding to enter into this Agreement.

3. Trustee's Representation. The Trustee represents and warrants that Schedule 1 is the result of the Trustee's good faith effort to inventory the Equipment. Notwithstanding the foregoing, the Trustee does not represent or warrant the accuracy or completeness of Schedule 1 and makes no representations concerning the same.

4. Purchase Price. Buyer shall purchase the Equipment from Seller for the sum of Forty-Two Thousand Dollars ($42,000.00) (the "**Purchase Price**"). The parties acknowledge that the Purchase Price includes consideration for the substantial labor costs for removal of the Equipment, which shall be the sole responsibility of Buyer, as set forth in Section 9 herein. The Purchase Price is exclusive of all sales, use and excise taxes, transfer taxes, and any other similar taxes, duties and charges of any kind imposed by any governmental authority on any amounts payable by Buyer. Buyer shall be responsible for all such charges, costs, and taxes; provided, that Buyer shall not be responsible for any taxes imposed on, or with respect to, Seller's income, revenues, gross receipts, personnel or real or personal property or other assets.

5. Bankruptcy Court Approval. The obligations of the Parties to this Agreement are subject to the approval of the Bankruptcy Court by entry of an Order approving this Agreement (the "**Approval Order**") with the exception that Buyer shall pay the Earnest Money Deposit upon execution of this Agreement, subject to the terms of Section 6 hereof. Seller shall file a motion with the Bankruptcy Court seeking approval of the Agreement within ten (10) days of execution of this Agreement.

6. Earnest Money Deposit. Upon execution of this Agreement, Buyer shall deposit with the Trustee the sum of Four Thousand Two Hundred Dollars ($4,200.00) (the "**Earnest Money Deposit**"). Upon entry of the Approval Order, the Earnest Money Deposit shall become nonrefundable and the Earnest Money Deposit shall be applied to the Purchase Price. If the Bankruptcy Court declines to approve this Agreement, then the Seller shall refund the Earnest Money Deposit to the Buyer within five (5) business days after the Bankruptcy Court declines to approve the Agreement.

7. Purchase Price. Buyer shall pay the Purchase Price (net of the Earnest Money Deposit) within seven (7) calendar days after entry of the Approval Order. Buyer shall make all payments hereunder by wire transfer and in US dollars.

18-03197-FPC7    Doc 720-2    Filed 09/23/20    Entered 09/23/20 13:30:23    Pg 3 of 8

8. **Title and Risk of Loss.** Subject to entry of the Approval Order and payment of the Purchase Price, Seller shall deliver to Buyer all right, title and interest of the Estate in the Equipment free and clear of any and all liens, encumbrances, claims, and/or interests. Title and risk of loss shall pass to Buyer upon payment of the Purchase Price.

9. **Delivery.** Seller's obligation to deliver the Equipment shall be fulfilled by making the Equipment available at the Moses Lake facility. Buyer agrees to be solely responsible for, to assume, and to bear all costs and risks involved in picking up, removing, and transporting the Equipment from the facility. The Equipment must be picked up by the Buyer within thirty (30) days of entry of the Approval Order.

10. **Over-Bidding.** In the event that a third party seeks to submit a bid for the Equipment before entry of the Approval Order, then the Seller shall ask the Court to approve bidding procedures that require subsequent overbids to be no less than $5,000.00 per bid and permit Buyer to participate in overbidding.

11. **Warranties.**

    11.1. **Warranty of Title.** The Seller warrants free, clear, and full title to the Equipment, as specifically described in and approved by the Bankruptcy Court in the Approval Order.

    11.2. **As Is.** The sale of the Equipment is "as is."

    11.3. **EXCEPT AS SET FORTH IN SECTION 11.1 HEREOF, SELLER MAKES NO WARRANTY WHATSOEVER WITH RESPECT TO THE EQUIPMENT, INCLUDING ANY (a) WARRANTY OF MERCHANTABILITY; or (b) WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE; WHETHER EXPRESS OR IMPLIED BY LAW, COURSE OF DEALING, COURSE OF PERFORMANCE, USAGE OF TRADE OR OTHERWISE.**

12. **Compliance with Law.** Buyer is in compliance with and shall comply with all applicable laws, regulations, and ordinances. Buyer has and shall maintain in effect all the licenses, permissions, authorizations, consents and permits that it needs to carry out its obligations under this Agreement.

13. **Indemnification.** Buyer (as "**Indemnifying Party**") shall indemnify, defend and hold harmless Seller (the "**Indemnified Party**") against any and all damage to the real property of the Moses Lake Facility that is caused by the Buyer's gross negligence in removing the Equipment from the Moses Lake Facility. Pursuant to this provision, the Indemnifying Party agrees to pay the attorneys' fees and costs incurred by the Indemnified Party as a result of damage to the real property of the Moses Lake Facility that is caused by the Indemnified Party's gross negligence.

14. **Entire Agreement.** This Agreement, including and together with any related exhibits and the Approval Order, constitutes the sole and entire agreement of the Parties with respect to the subject matter contained herein and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, regarding such subject matter.

15. <u>Notices</u>. All notices, requests, consents, claims, demands, waivers, and other communications under this Agreement must be in writing and addressed to the other Party at its address set forth below. Except as otherwise provided in this Agreement, a notice is effective only on receipt by the receiving Party.

Notice to Seller:

Law Offices of Mark D. Waldron, PLLC
6711 Regents Blvd., Suite B
Tacoma, WA 98466
Attention: Mark D. Waldron
Email: mark@mwaldronlaw.com

With a copy to Seller's counsel:

Potomac Law Group
1905 7th Ave. W
Seattle, WA 98119
Attn: Pamela M. Egan
Email: pegan@potomaclaw.com

Notice to Buyer:

Chain Lodge 1, LLC
7345 164th Ave. NE, Ste. 145-453
Redmond, WA 98052
Attn: Erick Watson, Managing Director
Email: erick@blockchainlodge.com

16. <u>Amendments</u>. No amendment to or modification of this Agreement is effective unless it is in writing and signed by each Party.

17. <u>Waiver</u>. No waiver by any party of any of the provisions of this Agreement shall be effective unless explicitly set forth in writing and signed by the party so waiving. Except as otherwise set forth in this Agreement, no failure to exercise, or delay in exercising, any rights, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

18. <u>Assignment</u>. Buyer shall not assign, transfer, delegate, or subcontract any of its rights or obligations under this Agreement without the prior written consent of Seller. Any purported assignment, transfer, delegation, or subcontract in violation of this Section shall be null and void. No assignment, transfer, delegation, or subcontract shall relieve Buyer of any of its obligations hereunder.

19. Successors and Assigns. This Agreement is binding on and inures to the benefit of the Parties to this Agreement and their respective permitted successors and permitted assigns.

20. No Third-Party Beneficiaries. This Agreement benefits solely the Parties to this Agreement and their respective permitted successors and assigns and nothing in this Agreement, express or implied, confers on any other Person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

21. Choice of Law. This Agreement, including all exhibits attached to this Agreement and thereto are governed by, and construed in accordance with, the laws of the State of Washington and section 101, et seq. of title 11 of the United States Code, as applicable, without regard to the conflict of laws provisions thereof.

22. Choice of Forum. Each Party irrevocably and unconditionally agrees that it will not commence any action, litigation or proceeding of any kind whatsoever against the other Party in any way arising from or relating to this Agreement, including all exhibits attached to this Agreement, and all contemplated transactions, in any forum other than the U.S. Bankruptcy Court for the Eastern District of Washington, and any appellate court from thereof. Each Party irrevocably and unconditionally submits to the exclusive jurisdiction of the Bankruptcy Court and agrees to bring any such action, litigation or proceeding only in the U.S. Bankruptcy Court for the Eastern District of Washington. Each Party agrees that a final judgment in any such action, litigation or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

23. Counterparts. This Agreement may be executed in counterparts, each of which is deemed an original, but all of which together are deemed to be one and the same agreement. Notwithstanding anything to the contrary herein, a signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission is deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

24. Force Majeure. Any delay or failure of either Party to perform its obligations under this Agreement will be excused to the extent that the delay or failure was caused directly by an event beyond such Party's control, without such Party's fault or negligence and that by its nature could not have been foreseen by such Party or, if it could have been foreseen, was unavoidable (which events may include natural disasters, embargoes, explosions, riots, wars, epidemic, pandemic, plague, acts of terrorism, strikes, labor stoppages or slowdowns or other industrial disturbances, and shortage of adequate power or transportation facilities).

25. Relationship of the Parties. The relationship between the Parties is that of independent contractors. Nothing contained in this Agreement shall be construed as creating any agency, partnership, franchise, business opportunity, joint venture or other form of joint enterprise, employment or fiduciary relationship between the parties, and neither party shall have authority to contract for or bind the other

party in any manner whatsoever. No relationship of exclusivity shall be construed from this Agreement.

26. Attorneys' Fees or Costs. The Parties each acknowledge and agree that each Party is responsible for his, her or its own attorneys' fees in connection with this Agreement except that in the event of a breach of this Agreement, the prevailing party shall be entitled to attorneys' fees and costs.

27. Authority. Each Party hereby represents and warrants to the other Party that it has the respective power and authority, and is duly authorized to execute, deliver, and perform their obligations under this Agreement.

28. Headings. The headings in the Agreement are inserted for reference only and shall not be construed to expand, limit, or otherwise modify the terms and conditions of this Agreement.

29. Interpretation. This Agreement has been reviewed and revised by legal counsel for all Parties, and no presumption or rule that ambiguity shall be construed against the Party drafting the document shall apply to the interpretation or enforcement of this Agreement.

30. Acknowledgment of Full Understanding. THE PARTIES ACKNOWLEDGE AND AGREE THAT EACH OF THEM HAS FULLY READ, UNDERSTANDS, AND VOLUNTARILY ENTERS INTO THIS AGREEMENT. THE PARTIES ACKNOWLEDGE AND AGREE THAT EACH OF THEM HAD AN OPPORTUNITY TO ASK QUESTIONS AND CONSULT WITH AN ATTORNEY OF THEIR CHOICE BEFORE SIGNING THIS AGREEMENT.

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

MARK D. WALDRON, *as Chapter 11 Trustee of Giga Watt, Inc., US Bankruptcy Court for the Eastern District of Washington, Case No. 18-013197*

By _____
Name: Mark D. Waldron
Title: Chapter 11 Trustee


Chain Lodge 1, LLC

By *Erick Watson*
Name: Erick Watson
Title: Managing Director

-6-

# SCHEDULE 1

## Miner Inventory

| | |
|---|---|
| 2,765 | L3 Miners |
| 2,415 | S9 Miners |
| 626 | AMD Miners (4GB) |
| 103 | Nvidia Miners |
| Unknown | D3 Miners in storage container at Moses Lake Facility |

## Additional Inventory / Equipment

All computers
All computer screens
All servers
All Power Supply Units (PSUs)
All power cables
All power cords