# EXHIBIT A

**EXHIBIT A**

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "**Agreement**") is entered into by and between: (1) Ryan Oster, Giga Plex LLC, MLDC 1 LLC, Q5 Plex, LLC, and East Wheeler Development LLC (collectively and individually, the "**Landlords**"), (2) EcoDiversified Holdings, Inc. ( "**Diversified**"), and (3) Mark D. Waldron, in his capacity as the duly-appointed Chapter 11 Trustee (the "**Trustee**") in the bankruptcy case of Giga Watt, Inc. (the "**GW**" or the "**Debtor**"), pending in the U.S. Bankruptcy Court for the E.D. of Washington (the "**Bankruptcy Court**") and assigned case no. 18-03197 (the "**Bankruptcy Case**") filed on November 19, 2018 (the "**Petition Date**"). The Landlords, the Trustee, and Diversified shall be referred to herein collectively as the "**Parties**."

## RECITALS

WHEREAS, before the Petition Date, the Debtor and the Landlords entered into a set of agreements listed on **Exhibit A** hereto.

WHEREAS, before the Petition Date, the Debtor and Diversified entered into a set of agreements listed on **Exhibit B** hereto.

WHEREAS, on or within ninety (90) days of the Petition Date, the Debtor transferred to the Landlords (a) tangible personal property that had an invoice price of $673,950 and (b) a security interest in the Debtor's assets located on land leased by the Debtor from the Landlords. In exchange for the foregoing transfers, the Landlords (a) forgave past due rent assertedly owed by the Debtor in the amount of $95,200, (b) transferred to GW $198,915.90 in cash, and (c) paid $383,184.10 to the Grant County PUD ("GC PUD"), which amount the Landlords assert was owed by the Debtor.

WHEREAS, on or ninety (90) days before the Petition Date, Diversified (i) cancelled a purported sublease between Diversified and the Debtor and (ii) removed personal property from the purportedly subleased premises.

WHEREAS, on November 19, 2018 (defined above as the "Petition Date"), the Debtor commenced the Bankruptcy Case by filing a petition for relief under chapter 11 of the United States Code, section 101, *et seq* (the "**Bankruptcy Code**").

WHEREAS, on December 17, 2018, the Court signed the *Stipulated Interim Order Authorizing Use of Cash Collateral* [Doc 53] relating to the Landlords' asserted security interest in assets of the Debtor. The Trustee disputes the asserted security interest.

WHEREAS, on January 23, 2019, the Bankruptcy Court approved the appointment of the Trustee pursuant to the *Order Approving Appointment of Chapter 11 Trustee*, dated January 23, 2019 [ECF 146]. The Trustee is acting on behalf of the Debtor's estate in the Bankruptcy Case (the "**Estate**").

WHEREAS, on January 30, 2019, as a part of the Landlords' refinancing of its real property, the Landlords purported to also grant to a third party, PBRELF I, LLC, a security interest in pods built by the Debtor on land leased from the Landlords to secure a loan in the amount of $4,150,000.

WHEREAS, on April 16, 2019, the Landlords filed a proof of claim assigned claim number 283-1 in the Bankruptcy Case asserting the right to payment of $255,265.47 on a general unsecured basis ("**Landlord Proof of Claim**").

WHEREAS, on May 10, 2019, pursuant to the *Order Granting Chapter 11 Trustee's Motion for Order Approving Agreement With Moses Lake Landlords* [Doc 300], the Bankruptcy Court approved an agreement between (a) the Trustee and (b) two of the Landlords, Giga Plex and MLDC 1 (the "**Two-Way Agreement**") pursuant to which, *inter alia*, the Trustee partially re-opened part of the Debtor's operations in Moses Lake, Washington (the "**ML Facility**") on land leased from Giga Plex and MLDC 1.

WHEREAS, on May 20, 2019, pursuant to the *Order Granting Chapter 11 Trustee's Motion for Order Approving Moses Lake Three-Way Agreement* [Doc 309], the Bankruptcy Court approved an agreement between (a) the Trustee, (b) Giga Plex and MLDC 1, and (c) Diversified (the "**Three-Way Agreement**"). Pursuant to the Three-Way Agreement, the Trustee resolved a dispute with Diversified regarding Diversified's asserted ownership of a Giga Pod at the ML Facility and a purported sublease at the ML Facility. For the avoidance of doubt, a Giga Pod is a structure designed to facilitate cryptocurrency mining.

WHEREAS, on March 13, 2020, the Trustee shut down the Estate's operations at the ML Facility due to a significant increase in the rates and fees charged by the GC PUD for electricity, among other reasons. After March 13, 2020, Diversified continued to occupy and operate within its Giga Pod

WHEREAS, the Landlords have asserted that the Estate and/or Diversified are obligated to pay to the Landlords the sum of $63,256.85, which is the amount of a surcharge ("**Minimum Charge**") that the GC PUD imposed when power usage at the ML Facility in April and May 2020 fell below the previous 12-month average of power usage. The Trustee and Diversified dispute this assertion.

WHEREAS, the Landlords have asserted that the Estate owes them the sum of $1,156,764.03 in administrative rent, unpaid post-petition electricity bills, and fees, including the Minimum Charge. The Trustee disputes this assertion.

WHEREAS, the Landlords have negotiated with the GC PUD a reduction of the Minimum Charge by $25,000.

WHEREAS, the Parties wish to settle their disputes on the terms and conditions set forth herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, the Parties hereby agree as follows:

## AGREED TERMS

1. <u>Settlement Payments</u>.

    (a) <u>Payment by the Trustee</u>. The Trustee shall pay the Landlords the sum of One Hundred Sixty Nine Thousand One Hundred Twenty-Eight and 43/100 Dollars ($169,128.43) (the "**Estate Settlement Payment**").

    (b) <u>Payment by Diversified</u>. Diversified shall pay the Landlords the sum of Nineteen Thousand One Hundred Twenty-Eight and 43/100 Dollars ($19,128.43) (the "**Diversified Settlement Payment**").

    (c) <u>Timing of Payment</u>. The payments provided herein shall be paid by wire transfer not later than five (5) business days after entry of an order in the Bankruptcy Case approving this Agreement (the "**Approval Order**").

2. <u>Withdrawal of the Landlord Proof of Claim</u>. Upon entry of the Approval Order, the Landlord Proof of Claim shall be deemed withdrawn with prejudice without the need of further notice or order.

3. <u>No Assignment</u>. The Landlords affirm that they have not assigned to any third party any claim released hereunder, including, but not limited to, the Landlord Proof of Claim and any claim against the Estate for payment on an administrative basis.

4. <u>Rejection of Pre-Petition Agreements</u>. The Landlord Agreements and the Diversified Agreements are deemed rejected as of March 13, 2020, pursuant to 11 USC §365, and the Trustee shall, immediately following approval of this Agreement, surrender the premises and restore possession of all ML Facility to the Landlords, subject to the terms herein.

5. <u>Termination of Post-Petition Agreements</u>. The Two-Way Agreement and the Three-Way Agreement are deemed terminated as of March 13, 2020.

6. <u>Removal of Equipment</u>. The Trustee shall have thirty (30) days after entry of the Approval Order to remove from the ML Facilities the computers, miners, power supply units (PSU), power cables, power cords, servers, and computer screens located at

the ML Facilities (the "**Equipment**") without any rent becoming due or owing. After the 30-day period expires, the Trustee shall pay to the Landlords a reasonable storage rate until such time as the Trustee has removed the foregoing equipment from the ML Facilities, and the Landlords shall be entitled to consolidate all Equipment into a designated storage area. Notwithstanding this provision, the parties expressly agree that the equipment referenced herein shall not include the transformer or anything servicing the Diversified pod.

7. <u>Abandonment of Giga Pods and Electrical Infrastructure</u>. Other than the Equipment referenced above, the Trustee will abandon all property located at the ML Facilities, including so-called Giga Pods and their electrical infrastructure and Power Distribution Units (PDUs), provided that the Trustee is not abandoning the Equipment set forth in paragraph 6 of this Agreement. For the avoidance of doubt:

(a) the Trustee is abandoning the Giga Pods located at the ML Facility that Allrise Financial Group claims to have purchased from GW before the Petition Date; and

(b) the Trustee is abandoning the Giga Pod located at the ML Facility that Eco Diversified Holdings, Inc. claims to have purchased from GW before the Petition Date.

8. <u>Cure</u>. Upon entry of the Approval Order by the Bankruptcy Court and upon payment as required by this Agreement, any default by any Party under the Two-Way Agreement or under the Three-Way Agreement shall be deemed cured.

9. <u>Landlords' Representations and Acknowledgement</u>.

(a) <u>Representations</u>. The Landlords each hereby represent that:

(i) <u>Agreements</u>. Exhibit A lists all the agreements that the Landlords and any of its affiliates have entered into with GW before the Petition Date.

(ii) <u>Transfers</u>. No transfers have been made by the Debtor or its affiliates to the Landlords other than (i) as recited in this Agreement or (ii) pursuant to the agreements listed on Exhibit A.

(b) <u>Acknowledgement</u>. The Landlords hereby acknowledge that the Trustee is relying on the Landlord's representations made in this section 9 of the Agreement in entering into this Agreement and that any untruth in these

(b) <u>Acknowledgement</u>. The Landlords hereby acknowledge that the Trustee is relying on the Landlord's representations made in this section 9 of the Agreement in entering into this Agreement and that any untruth in these representations shall constitute a breach of the Agreement by the Landlords compensable by damages or other remedy as determined by the Bankruptcy Court.

10. <u>Diversified's Representations and Acknowledgement</u>.

(a) <u>Representations</u>. Diversified hereby represents that:

(i) <u>Agreements</u>. Diversified's agreement to purchase the POD, maintenance and service agreements, and sublease were subject to Diversified's claim in this Bankruptcy proceeding, and subject to the Three Way Agreement and settlement, Diversified had no other agreements verbal or written with GW prior to the Petition Date.

(ii) <u>No Preferential Transfers</u>. On or within ninety (90) days of the Petition Date, neither the Debtor nor its affiliates transferred any property or interest in property to or on behalf of Diversified or its affiliates, including but not limited to, (x) lien rights in property of the Debtor or its affiliates; (y) title to any property of the Debtor retained by Diversified or its affiliates as a security interest or otherwise; or, (z) foreclosure of any equity of redemption held by GW or affiliates.

(iii) <u>No Fraudulent Transfers</u>. On or within two (2) years of the Petition Date:

(A) Neither the Debtor nor any of its affiliates transferred to Diversified or any of its affiliates any property of the Debtor or interest of the Debtor in property, without new and valid consideration;

(B) Neither the Debtor nor any of its affiliates incurred any obligation to or on behalf of Diversified other than as set forth in the agreements listed in Exhibit B.

(b) <u>Acknowledgement</u>. Diversified hereby acknowledges that the Trustee is relying on Diversified's representations made in this section 10 of the Agreement in entering into this Agreement and that any untruth in these representations shall constitute a breach of the Agreement by Diversified compensable by damages or other remedy as determined by the Bankruptcy Court.

11. <u>Subject to Court Approval</u>. This Agreement, and all the rights, obligations, releases, and waivers of each of the Parties hereunder, are subject to the approval of the Bankruptcy Court. The Trustee will seek the approval of the Bankruptcy Court within five (5) business days after receipt by the Trustee of this Agreement executed by both the Landlords and Diversified.

12. <u>Mutual Release</u>. Except as expressly assumed by any Party in connection with this settlement, the Parties, on behalf of themselves, their predecessors, successors, affiliates, and assigns, and its and their past, present, and future officers, directors, commissioners, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, hereby release and discharge the other Party, together with their predecessors, successors, affiliates and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown, which either Party has, or may have had, against the other Party, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions of any kind, including, but not limited to, those relating to or arising from:

(a) The agreements listed on Exhibit A;

(b) The agreements listed on Exhibit B;

(c) The Two-Way Agreement;

(d) The Three-Way Agreement;

(e) The Bankruptcy Case.

13. <u>No Further Claims</u>. Upon approval of the Bankruptcy Court and receipt by the Landlords of the Estate Settlement Payment and the Diversified Settlement Payment, no further claims, administrative, general unsecured, pre-petition or otherwise shall exist between the Parties.

14. <u>No Admission of Liability</u>. The Parties acknowledge that the payments required herein were agreed upon as a compromise and final settlement of disputed claims and that payment of the Estate Settlement Payment and the Diversified Settlement Payment is not, and may not be construed as, an admission of liability by any Party and is not to be construed as an admission that any Party engaged in any actionable conduct. The Parties each specifically disclaim and deny (a) any liability to the other and (b) engaging in any actionable conduct .

15. <u>No Attorneys' Fees or Costs</u>. The Parties acknowledge and agree that they are solely responsible for paying any attorneys' fees and costs they incurred and that neither Party nor the Party's attorney(s) will seek any award of attorneys' fees or costs from the other Party.

16. <u>Entire Agreement</u>. The recitals set forth at the beginning of this Agreement are incorporated by reference and made a part of this Agreement. This Agreement constitutes the entire agreement and understanding of the Parties and supersedes all prior negotiations and/or agreements, proposed or otherwise, written or oral, concerning the subject matter hereof. Furthermore, no modification of this Agreement shall be binding unless in writing and signed by each of the parties hereto.

17. <u>New or Different Facts: No Effect</u>. Except as provided herein, this Agreement shall be, and remain, in effect despite any alleged breach of this Agreement or the discovery or existence of any new or additional fact, or any fact different from that which either Party now knows or believes to be true. Notwithstanding the foregoing, nothing in this Agreement shall be construed as, or constitute, a release of any Party's rights to enforce the terms of this Agreement.

18. <u>Interpretation</u>. Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement. The headings within this Agreement are purely for convenience and are not to be used as an aid in interpretation. Moreover, this Agreement shall not be construed against either Party as the author or drafter of the Agreement.

19. <u>Choice of Law</u>. This Agreement and all related documents, and all matters arising out of or relating to this Agreement, whether sounding in contract, tort, or statute are governed by, and construed in accordance with, the laws of the State of Washington and the Bankruptcy Code, as applicable, without giving effect to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the

application of the laws of any jurisdiction other than those of the State of Washington or the Bankruptcy Code.

20. <u>Choice of Forum; Exclusive Jurisdiction</u>. The Bankruptcy Court shall be the exclusive forum for litigation concerning this Agreement. The Parties hereby irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court and waive the defense of inconvenient forum to the maintenance of any action or proceeding in such venue.

21. <u>Reliance on Own Counsel</u>. In entering into this Agreement, the Parties acknowledge that they have relied upon the legal advice of their respective attorneys, who are the attorneys of their own choosing, that such terms are fully understood and voluntarily accepted by them, and that, other than the consideration set forth herein, no promises or representations of any kind have been made to them by the other Party. The Parties represent and acknowledge that in executing this Agreement they did not rely, and have not relied, upon any representation or statement, whether oral or written, made by the other Party or by that other Party's agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

22. <u>Counterparts</u>. This Agreement may be executed by the Parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

23. <u>Authority to Execute Agreement</u>. By signing below, each Party warrants and represents that the person signing this Agreement on its behalf has authority to bind that Party and that the Party's execution of this Agreement is not in violation of any by-law, covenants, and/or other restrictions placed upon them by their respective entities.

24. <u>Effective Date</u>. The terms of the Agreement will be effective on the date that the Trustee and Diversified have each made the Settlement Payment to Landlords (the "**Effective Date**").

[*Signature page follows*.]

**IN WITNESS WHEREOF,** and intending to be legally bound, each of the Parties hereto has caused this Agreement to be executed as of the date(s) set forth below.

Date: August 28th, 2020

MARK D. WALDRON, AS CHAPTER 11 TRUSTEE

By: /s/ Mark D. Waldron
Mark D. Waldron, *in his official capacity as Chapter 11 Trustee*

Date: August 3, 2020

/s/ Ryan Oster
Ryan Oster

Date: August 3, 2020

GIGA PLEX LLC

By: /s/ Ryan Oster
Name: Ryan Oster
Title: Managing Member

Date: August 3, 2020

MLDC 1 LLC

By: /s/ Ryan Oster
Name: Ryan Oster
Title: Managing Member

PAGE | 9

Date: August 3, 2020

EAST WHEELER DEVELOPMENT LLC

By: *Ryan Oster*
Name: Ryan Oster
Title: Managing Member

Date: August 3, 2020

Q5 PLEX, LLC

By: *Ryan Oster*
Name: Ryan Oster
Title: Managing Member

Date: August __, 2020

ECO-DIVERSIFIED HOLDINGS, INC.

By: *Randy Prince*
Name: RANDY PRINCE
Title: PRESIDENT

4818-9821-4849, v. 2

**EXHIBIT A**

East Wheeler Land Lease - 9/25/17

Q5 Plex Land Lease - 9/25/17

MLDC1 Datacenter Lease - 7/28/15

MLDC1 Pods Lease - 5/1/17

Gigaplex Parcel E Lease - 7/7/17

Gigaplex Parcel C Lease - 6/27/17

MLDC1 Pods Lease Amended - 8/16/18

Gigaplex Parcel E Lease Amended - 10/16/18

Gigaplex Parcel C Lease Amended - 10/16/18

18-00319-FPC17   Doc 7234-2   Filed 10/23/20   Entered 10/23/20 13:46:03   Pg 12 of 13

# EXHIBIT B

Mining Farm Development Agreement dated June 27, 2017, by and between Giga Watt, Inc., as Developer, and ECO Diversified Holdings Inc., as Client

Sublease Agreement dated July 10, 2017, by and between Giga Watt, Inc., as Sublessor, and ECO Diversified Holdings Inc., as Sublessee

Service Agreement dated June 27, 2017 by and between Giga Watt Hosting, Inc. and ECO Diversified Holdings, Inc.

Various equipment purchase orders identified on supporting documents to Diversified's Proof of Claim 67 filed on Feb. 15, 2019 in the Bankruptcy Case