UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF WASHINGTON

_____

In re: ) Case No. 18-03197

GIGA WATT, INC. )

Debtor )

)

_____

MOTION TO SELL EQUIPMENT FREE AND CLEAR OF LIENS, RE:  BIDDING

PROCEEDURES

_____

OCTOBER 19, 2020

TRANSCRIBED BY:  GINA M. COZZA

1    CLERK: This is the time set on Giga Watt, Inc., 18-03197. This is the time set on the

2    Motion to Sell Equipment Free and Clear of Liens, Re: Bidding Procedures. This is Case

3    Number 18-03197. Present, we have the Honorable Frederick P. Corbit presiding. Also, on

4    the line, we have Pamela Egan, attorney for former trustee…or the current trustee.

5    MARK WALDRON: Good morning, Mark Waldron here.

6    CLERK: Do I have Pamela Egan?

7    PAMELA EGAN: Yes, this is Pamela Egan.

8    CLERK: Thank.

9    PAMELA EGAN: Before there was a lot of crosstalk, which is why I didn't respond.

10    CLERK: Okay, thank you. Jim Perkins from the U.S. Trustees office.

11    JIM PERKINS: Good morning.

12    CLERK: Jun Dam, who is a creditor.

13    JUN DAM: Good morning, Jolene, this is Jun Dam.

14    CLERK: Okay, thank you.

15    JUN DAM: Also, just a quick note. This is Jun Dam. I believe there's a lot of other pro se

16    creditors that might be on the line who...

17    CLERK: Okay.

18    JUN DAM: Objected to the motion. Just as a point of order. It'd be nice for them to be

19    recognized, as well. Thanks, Jolene.

20    CLERK: Judge? Your mic is open.

21    JUDGE CORBIT: Madam Clerk, this is Judge Corbit. I'm just waiting until you tell me.

22    CLERK: Yes, your mic is open, Judge.

23    JUDGE CORBIT: Or give the go sign.

24    CLERK: You may proceed.

25    JUDGE CORBIT: Good day, everyone, this is Judge Corbit. I got the go sign from Madam

26    Clerk. Today, we're dealing with the Trustee's motion to sell property in the Giga Watt case.

27    I'm going to start with a few, guess you could characterize these as conclusions of law, which

28    will sort of set forth the issues that we have to deal with today. The first point of law is

18-03197-FPC7   Doc 818   Filed 11/27/20   Entered 11/27/20 10:33:38   Pg 2 of 37

Section 704(a)(1) of the Bankruptcy Code provides that the Trustee has the duty to collect and reduce to money property of the estate. Second point I want to make is that Section 541(a) of the Bankruptcy Code describes what property of the estate is, and that includes all legal or equitable interests of the Debtor. Third point is Section 363(f) provides that a trustee may sell property if…even if there's objections, if the objecting party's interest is in bona fide a dispute, or if that objecting party's claim can be satisfied by a payment of money. Fourth point is that proper way to protect interests in property if there is a dispute is to provide in the sale order that the interests will attach to the proceeds. Fifth point is a good way to determine the value of property is to put the property up for sale and see what parties are willing to pay. That sort of sets the framework of where we're at today. Mr. Waldron is the Chapter 7 Trustee. It's proposed to sell property. Mr. Dam has filed an objection. Mr. Dam is not a lawyer but has indicated that there are other people that share his same concerns. I will hear from Mr. Dam today. I will hear from Mr. Waldron. I will also hear from Ms. Egan if Mr. Waldron wants her to speak as his attorney in this matter. I do…I will hear some argument from Mr. Waldron and/or Ms. Egan and Mr. Dam because they both have filed…or they all filed pleadings in connection with this matter. But before we get to that, I do have some questions. Mr. Dam, I'm going to have some questions for you. Can you hear me okay?

JUN DAM: Yes, Judge Corbit, this is Jun Dam.

JUDGE CORBIT: Okay, I'll ask you some questions in a second here. Mr. Waldron, I'm going to have some questions for you. Can you hear me okay?

MARK WALDRON: Yes, Your Honor.

JUDGE CORBIT: Okay, Mr. Waldron, let me start with you. Madam Clerk, could you swear in Mr. Waldron?

CLERK: Yes. Please raise your right hand. Do you solemnly affirm that the testimony that you are about to give will be the truth, the whole truth, and nothing but the truth under the penalties of perjury? Mr. Waldron?

JUDGE CORBIT: I assume the delay is…Ms. Britton trying to get Mr. Waldron unmuted and maybe unmute yourself.

18-03197-FPC7    Doc 818    Filed 11/27/20    Entered 11/27/20 10:33:38    Pg 3 of 37

1   CLERK:  He's unmuted.

2   MARK WALDRON:  Your Honor, I'm happy to provide an oath myself if I could.

3   JUDGE CORBIT:  Maybe one of my law clerks will come in and tell me…explain to me

4   because we're in different…I'm in my courtroom chambers.  Ms. Britton is in the courtroom,

5   if one of my law clerks...okay.

6   CLERK:  Okay, Mr. Waldron, did you hear the oath?

7   MARK WALDRON:  I did not.

8   CLERK:  Okay, I will do that again.  Thank you.  Please raise your right hand.  Do you

9   solemnly affirm that the testimony that you are about to give will be the truth, the whole truth,

10   and nothing but the truth under the penalties of perjury?

11   MARK WALDRON:  Yes, I do.

12   JUDGE CORBIT:  Mr. Waldron, this is Judge Corbit.  Now I'm familiar with the Docket, and

13   I've read all of the pleadings that you and Ms. Egan have filed, and I've read everything that

14   Mr. Dam has filed, as well.  So some of these questions you'll say "Well didn't he read that in

15   the record?"  Well, yes, I did.  But I want to…I want to ask you these questions anyway to

16   make it clear.  You know, for example, I'm going to ask you questions about why the

17   estate…why you claim the estate has an interest in the property.  I know that you, in fact, are

18   in possession of these miners and that they all have Giga Watt stickers.  And I know those

19   things.  But those are the kinds of things I want you to repeat if you would if they are true.  So

20   my first question to you Mr. Waldron is, why is it that you claim that the property for sale is

21   property of the bankruptcy estate?

22   MARK WALDRON:  When I was appointed in the Chapter 11 proceeding, I, within a week

23   of my appointment back in January visited all of the business locations of the Debtor and did

24   inspections and took photographs and took other sort of activities to verify what it looked like

25   [inaudible] appeared I was going to deal with.  And in this particular facility, the Moses Lake

26   facility on Randolph Road in Moses Lake, there was a large warehouse and then some smaller

27   what are known as, you know, the pod type of buildings and they had mining machines in

28   them, power supply units on top of each little mining computer, and all of them had stickers

1    that said "Property of Giga Watt". And they…it was represented to me by the landlord as

2    well as by the former employees, which in my first meeting I unfortunately had to lay off,

3    because that was the reason one of my reasons for visiting there is to lay off all the employees

4    so that we could start anew in the estate. And the…both the landlord and the employees

5    represented to me that these mining computers were all property of the Giga Watt Enterprise.

6    And so from there, I deduced that these were in fact what had been used in the operations of

7    the Giga Watt crypto-mining factories at the…three of the four locations.

8    JUDGE CORBIT: Did any other party attempt to take control of these mining units?

9    MARK WALDRON: No, they did not. On an occasional basis, sort of at the beginning and

10   then later on, I would receive an email from someone saying "Well I have this…I have this

11   document that says that I bought these mining computers" and the serial…and some had serial

12   numbers, but the serial numbers couldn't be matched because as I learned there had been sales

13   of mining machines just prior to the bankruptcy and it was…and they'd been moved all over

14   into different facility…you know, there was four facilities, and they had been being moved

15   around. It was almost impossible to locate them, as well they were packed tight in these

16   racks, which is the style used in crypto-mining so…and they were up high. You'd have to get

17   on a ladder. You'd have to unpack them to even be able to find the numbers. So it was pretty

18   impossible when people would ask me and I basically said "I believe you're required as far as

19   I can tell to purchase watt tokens before you're entitled to purchase a miner". And I had made

20   various legal conclusions based upon legal counsel that that's likely an investment anyway

21   not an ownership interest. And so no one…and I did check a UCC. I did UCC searches and

22   none of these were…had been filed as UCC 1 interests.

23   JUDGE CORBIT: These four facilities where these miners were located, these four facilities

24   all had buildings with locked doors and inside these buildings with locked doors is where the

25   miners were located, is that right?

26   MARK WALDRON: Yes, that is correct.

27   JUDGE CORBIT: Okay. Who had access to the buildings? I mean was it, you know, who

28   was leasing…because I take it, if I remember correctly Giga Watt does own real property, but

1  Giga Watt leases real property. Who was the lessee for these four sites?

2  MARK WALDRON: The one in particular today where the proposed equipment sale is to

3  take place was a tenant interest of Giga Watt, the Debtor.

4  JUDGE CORBIT: And…okay. And who had the keys to that facility? Are you the one with

5  the keys as the Trustee for Giga Watt?

6  MARK WALDRON: Yes. Well, let's start at the beginning, the landlord had gone over there

7  when Giga Watt stopped paying them at…just before the bankruptcy was filed, and he had

8  locked up. There was a perimeter gate…perimeter fence, excuse me, with a locked gate, and

9  he had locked everything up. But yes, I obtained the keys from the landlord and from the

10  prior debtor operators.

11  JUDGE CORBIT: Could an individual creditor that claims an ownership interest in one of

12  the miners go in and remove their miner?

13  MARK WALDRON: No, there was no ability to do that.

14  JUDGE CORBIT: Okay. What efforts have you taken to get the highest price for the miners

15  that are up for sale today?

16  MARK WALDRON: So if I may, Your Honor, we have two active interested parties that

17  have submitted bids and have submitted written equipment sale agreements. One thing

18  important that the Court should know is that we are in a holdover position with the landlord at

19  Moses Lake, and we specifically negotiated with the landlord that we could exit the property

20  and take with it only particular parts of equipment. Some of the infrastructure was installed

21  and built by the landlord, some was built and installed by the Debtor, but as part of the

22  termination of any lease, you cannot do harm to the building within out an agreement to

23  restore, so we were faced with that. So the Court knows this was a very specific negotiated

24  list of equipment that is now proposed to be sold from the Moses Lake facility. So that's

25  thing one. The second thing is I…

26  JUDGE CORBIT: Let's go thing one before we go to thing two.

27  MARK WALDRON: Okay.

28  JUDGE CORBIT: You say it's holdover with the landlord. So at some point if…I guess I'm

1  asking here what happens if you can't get this stuff out of there or sold in the time period that

2  you've negotiated with the landlord?

3  MARK WALDRON:  The Debtor estate forfeits its interest.

4  JUDGE CORBIT:  Okay.  And how much time do you have to get this property sold?

5  MARK WALDRON:  Well we went back and forth between 30 and 45 days.  The Debtor

6  wanted…or, excuse me, the landlord wanted 30 days and I wanted 45 just because of the time

7  estimate that I had been provided to remove the equipment.  Particularly, as we come into,

8  you know, a colder season in Moses Lake.  So or excuse me, yeah, in Moses Lake.  So, but

9  we're at 30 days is what the landlord agreement now provides.

10  JUDGE CORBIT:  And when does that 30 days start to run?  Or has it started?

11  MARK WALDRON:  When the…when the court order is entered.

12  JUDGE CORBIT:  Okay.  Alright, thank you.  That was thing one.  I didn't mean to cut you

13  off sir.  Go ahead with thing two.

14  MARK WALDRON:  Well thing two is that the…an offer was received for a low amount.  It

15  was $15,000 because of all the labor to remove everything.  And I negotiated that, and then I

16  had another interested bidder.  One of the prior consultants had introduced me to a gentleman

17  by the name of Eric Watson of Chain Lodge.  And Chain Lodge came in and made a much

18  higher offer above the $15,000.  They made a $42,000 offer, and we went into a negotiated

19  circumstance to produce a written agreement, which I actually drafted myself, and we

20  exchanged it.  And during that period of time the original $15,000 interested party, which was

21  the parent company of the buyer at TNT, Soluna, they came in and made an offer increasing

22  their offer, and now both parties have increased their offers, and I have spoken to both parties

23  in anticipation of the hearing we were to have a few weeks ago that, would they prefer a

24  sealed bid or would they prefer an oral… an oral auction at a reasonable time and place?

25  Telephonic.  And they have both opted for that.  As Trustee, I often give the parties if I have

26  competing parties the opportunity and the option because as long as I think it's a fair process

27  to both, seems it's not a harmful thing to let them selected the method.

28  JUDGE CORBIT:  Right.

1    MARK WALDRON: So that's what they did. So now I have an offer substantially higher

2    than the one that was noted up for hearing. The other thing just so the Court knows is this is

3    all posted to the website. We created a website at the beginning of the Chapter 11, and the

4    sale notice was posted to the website, which it's a website that we've directed many times the

5    folks in the case to view. So I think that adequate and reasonable advertisement and notice of

6    what's going on is here. I have not disclosed the higher offers, though, to anyone.

7    JUDGE CORBIT: Okay.

8    MARK WALDRON: Because I didn't…I wanted to see what happened. But anyway

9    that's…

10    JUDGE CORBIT: Okay, well let me ask you this, though. What you're going to ask the

11    Court to sign today is an order authorizing you to proceed with the auction and to sell the

12    property to the highest bidder as long as that bid is more than X dollars. And so basically

13    what I can see in the record is it was up to $42,000. You expect that it's going to go higher

14    than that, so you're asking to me to approve a sale for…to the highest bidder in some amount

15    in excess of $42,000? Is that what you'll be asking me today?

16    MARK WALDRON: Correct. All cash and under the understanding that they will be able to

17    remove the equipment, the specific equipment that was noticed, within a timely period.

18    JUDGE CORBIT: Okay. And when you say "all cash" how long do they have to pay the

19    cash? I guess before…

20    MARK WALDRON: I anticipate…oh absolutely before they can move it, and I anticipated

21    that I would give them a couple of days to deliver a cashier's check to my office.

22    JUDGE CORBIT: Okay. Alright.

23    MARK WALDRON: After we have the oral auction.

24    JUDGE CORBIT: Okay, that couple of days, if it's three days or so, the Court would find

25    that to be reasonable. And then if someone didn't meet that obligation, then you'd go to your

26    second highest offer?

27    MARK WALDRON: Correct. Absolutely, that's how I've always done it in the past.

28    JUDGE CORBIT: Now you say this has been posted, and I was concerned about notice of

1  this, and I continue just to give parties more…more notice and we've done that.  Your sale

2  procedures, that's been open to anybody.  If Mr. Dam or any other creditors were interested in

3  purchasing this property, they too could have bid?

4  MARK WALDRON:  Yes, but with reservations in this regard, Your Honor.  I think it's

5  prudent to describe bidders as qualified bidders, so that I don't end up with people making

6  bids that will never, you know, come to fruition.  And I will tell the Court that on this last

7  Friday the 16th at 6:00pm, Mr. Dam sent me an email proposing a bid at $42,000, but he

8  wants an inspection of the equipment, and I can tell the Court that both of the other buyers,

9  there's no warranty, the power's shut off, so there are no guarantees that any of the miners

10  even work.  Now we know that they were working when we shut down some months past.

11  And the other thing that Mr. Dam said is he wants a credit bid above any amount exceeding

12  forty-two, and then he said if I don't agree to this, he's going to file appeals and seek State

13  pending appeals and such so.

14  JUDGE CORBIT:  Okay.

15  MARK WALDRON:  So I did get that bid and…or offer if you will, but I don't know…I

16  don't know the group is because Jun Dam does not own any…any miners.  He has admitted

17  many times on the record that he is a watt token investor only.

18  JUDGE CORBIT:  Okay.  Well, I'll…I'm going to have some questions for Mr. Dam, as

19  well.  And I'm not sure whether you'll be arguing the motion today or…on behalf of yourself,

20  or Ms. Egan is going to be doing it.  But if it's you or Ms. Egan, one of the questions now,

21  and I don't have…this is not a question for you, but one of the questions that I have and I'd

22  like you to address or Ms. Egan to address in the…in arguing for your motion, is how to

23  adequately protect interests that may, you know, that if there's a disputed interest and who's

24  the owner.  The official comments to the bankruptcy code talks about how to protect interests

25  that may be in dispute when a sale is in place.  And the proper way to protect interests is to

26  provide in the sale order that interests, whatever those interests are, attach to the sale

27  proceeds.  And I'm wondering if…well maybe let me even ask you, Mr. Waldron, right now

28  and if you want Ms. Egan to answer this question that's fine.  Is that provision that you have

9

1 concern about or what object to?

2 MARK WALDRON: No, Your Honor.

3 JUDGE CORBIT: Okay. You see, for Mr. Dam and others, the provision that I'm talking

4 about is that if the bankruptcy estate has an interest in the property and it's disputed and the

5 property is sold, what we can do is then attach those disputed interests to the proceeds.

6 There's two questions that the Court has to look at: does it make sense to sell the property?

7 And in this case, Mr. Waldron, I understand your argument is, is that if you don't sell it now,

8 you lose it to the landlord, so there's money there. So anybody…everybody would be

9 benefited as…if these…if this property interest could be converted into money. If there are

10 creditors out there that assert liens or claims or that they're the true owners of it, whatever

11 interest they have, we can determine that at another day, whether or not they actually have an

12 interest in this property. If they have an interest in the property, then that interest will attach

13 the same priority to the same effect to the proceeds. Mr. Waldron, I spoke a little bit more

14 maybe, did I…did I do anything that would change your response to my earlier question from

15 "yes" to "no"?

16 MARK WALDRON: No, Your Honor. I…that is fine and certainly I think the sale motion

17 was…for free and clear with any interest attaching to proceeds.

18 JUDGE CORBIT: Okay, thank you, sir. Madam Clerk, could you swear in Mr. Dam?

19 CLERK: Yes. Mr. Dam?

20 JUN DAM: Yes, this is Jun.

21 CLERK: Okay, thank you. Please raise your right hand. Do you solemnly affirm that the

22 testimony that you are about to give will be the truth, the whole truth, and nothing but the

23 truth under the penalties of perjury?

24 JUN DAM: Yes, I do.

25 CLERK: Thank you.

26 JUDGE CORBIT: Mr. Dam, I read your pleadings and to some extent I'm a little bit

27 confused as to what you want. In earlier pleading, I see you were objecting to the price and

28 you know, also asserting the owner. Is your objection that the price is not high enough or is

1  your objection that the Trustee should not sell the property in any event?

2  JUN DAM:  They're actually both objecting to the, you know, as a Creditor, we want the

3  highest price as possible.  So I believe that the sale and the rush the sale, I believe that was,

4  you know, I think scheduled to be sold in a matter of nine days, which was at a current bid of

5  $42,000.  It was not a proper bid process.  And so no one had the opportunity, I don't think

6  enough people had the opportunity to bid, Number 1.  Recently, this is, you know, the Trustee

7  seems to suggest that there's been an increase in this bidding process.  So just by the virtue of

8  us objecting, now there might be you know a considerable like higher bid so this is…this is

9  new to me.  But anyway, so yes, Number 1, it should be sold for a higher price.  I did email,

10  you know, Waldron late Friday saying that, yeah this is…you know we…I think it's wrong

11  that mining machine owners even have to bid on their own machine, but if it's being sold for

12  such a low price, sure we'll go ahead and put in the $42,000.  I also understand that, and this

13  is on…there is a non-profit group that I founded, I recently rejoined, this is the Creditors

14  Committee of WTT Token Holders and Miners, and so this represents roughly two hundred

15  people that have both tokens and miners.  I think about a hundred eighty or so have mining

16  machines.  So they represent roughly twenty-five hundred mining machines that they have

17  invoices for.  No one in that group had any, you know, any doubt that these were the

18  machines, they have invoices, they've reached out to the Trustee, a number of them either the

19  Trustee or the Trustee's lawyer, Ms. Egan.  So there have been from what I…from what I'm

20  hearing from the group that they have…there are people that have reached out and...

21  JUDGE CORBIT:  Mr. Dam, okay, you say that they have invoices and so forth, but you

22  don't dispute who's in control of this property right now, do you?

23  JUN DAM:  In control?  As in where it is?

24  JUDGE CORBIT:  Do you any…do any of these creditors have the ability to go pick up a

25  miner?  The question I have is I don't…in the record, I don't see any attempts to exercise

26  dominion or control over these miners.

27  JUN DAM:  There's been motions…

28  JUDGE CORBIT:  I don't see anybody showing up to take the property or saying that they're

18-03197-FPC7    Doc 818    Filed 11/27/20    Entered 11/27/20 10:33:38    Pg 11 of 37

1  theirs.

2  JUN DAM:  This was a…this was a bailment relationship.  Giga Watt, it's public record…

3  JUDGE CORBIT:  Okay, Mr. Dam, this case has been pending now, what for over a year, and

4  I haven't seen any turnover motions.  What efforts…what efforts…let me ask you, what

5  efforts have you made to take control over the miners that you allege…allege to own?

6  JUN DAM:  Well it's…I'm sure…there's been outreach by others because, again, you

7  understand I do not own miners, right?  So others have requested their machines back, and

8  there's probably, you know, an email trail of the requests and responses from the Trustee

9  [inaudible].

10  JUDGE CORBIT:  Okay…okay let me clarify.  Okay, so you've objected, but you don't

11  claim to own any miners.  So with respect to your personal objection, it is that you think that

12  the sale is just not high enough, is that right?

13  JUN DAM:  Based on my standing, yes.  But you know, I'm also…there are many pro se

14  creditors…

15  JUDGE CORBIT:  Okay, Mr. Dam…okay, but Mr. Dam, are you a lawyer?

16  JUN DAM:  No, no, I'm not representing them.

17  JUDGE CORBIT:  Okay.

18  JUN DAM:  But I…

19  JUDGE CORBIT:  Okay.  Okay, if you're not representing them, then I don't see an objection

20  from them.  I see the objection that you filed that others have joined with.  Who prepared your

21  objection?  Who wrote it?  Your most recent objection?

22  JUN DAM:  Yeah, I mean, I wrote most of it and people have signed off to it.

23  JUDGE CORBIT:  Okay, but who…did…was there a lawyer or a law student that helped you

24  write it?

25  JUN DAM:  No, I prepared it all myself.

26  JUDGE CORBIT:  Okay.  Because I see it's written in a different style than your earlier

27  pleadings, and it looks like that maybe someone else had wrote it and if somebody else is…go

28  ahead.

1    JUN DAM:  Oh, the most recent one you're talking about the Motion for Administrative

2    Expenses.  We really just used the original filing that…

3    JUDGE CORBIT:  Okay.

4    JUN DAM:  Samuel Dart filed many months ago.  So I just really copied [inaudible] for the

5    most recently motion.

6    JUDGE CORBIT:  Okay.

7    JUN DAM:  But no…no I'm talking about the objection to the sale.

8    JUDGE CORBIT:  Okay.  Another legal point that I make here as I'm not deciding today

9    whether a creditor has an administrative claim.  That issue, I see that you filed a pleading, Mr.

10    Dam, where you've asked to have an administrative claim.  You know, you'll have the

11    opportunity to raise that administrative claim appropriately.  But you're not asking me to

12    decide that today, are you?

13    JUN DAM:  No.  That was…wanted that to be read kind of before this hearing as, you know,

14    just for, you know, just for notice, judicial notice so that…I believe, you know, this…the

15    ownership should be judicial…determined today.

16    JUDGE CORBIT:  Okay.

17    JUN DAM:  It's pretty straight-forward, and I did hear Mr. Waldron under oath.  And I do

18    have some questions about that, but because it again the big…big issue here is it's very public

19    knowledge that these machines were sold to people around the world.  We have just two

20    hundred members in the non-profit group I'm part of.  But you know there's hundreds,

21    probably more than that, that have invoices and purchased machines and to say that, you

22    know, anybody else, employers or the landlord did not understand that people bought these

23    machines for Giga Watt to host to me is extremely questionable.  I…

24    JUDGE CORBIT:  Well, Mr. Dam, okay, I'm going to let you…hear your argument in just a

25    second.  But I did read your pleading, and I think I read it as for the purpose that you wanted

26    me to today to understand that position.  But my question to you was whether or not you're

27    asking me to rule on the administrative claims today, and I think, well I don't think, I heard

28    you say "no" that's not before me today.  As for the pleading, I did read it.  And it did provide

18-03197-FPC7   Doc 818   Filed 11/27/20   Entered 11/27/20 10:33:38   Pg 13 of 37

1   some information that…in the record, which I think was accurate and is consistent with my

2   understanding of the law.  In particular, the question here is, you know, that what we've been

3   talking about is, who owns…who owns the miners?  And that's a question as you provided in

4   your materials, is a question to be decided under applicable non-bankruptcy law, State law.

5   You know, who is the owner?  You know, sometimes people commonly refer to those…you

6   know this law…well sometimes people use the phrase "possession is 9/10ths of the law", well

7   the issue that's before me is who owns this, and I'm going to have to look at State law to

8   determine whether or not there is a legal or equitable interest of the bankruptcy estate in the

9   property.  If the bankruptcy estate has legal or equitable interest in these miners, then the

10  Trustee has a duty to collect and reduce that money to property…or reduce that property to

11  money.  So now I think we've sort of set the…the stage for the argument, and I appreciate

12  your time Mr. Waldron, Mr. Dam.  What we'll hear now from is the moving party is Mr.

13  Waldron.  I will hear from him, then I will hear from Mr. Dam.  And the moving party under

14  normal procedure has an opportunity to respond.  So Mr. Waldron, whether it's you or Ms.

15  Egan can go first, Mr. Dam second, and then Mr. Waldron or Ms. Egan can reply.  I have not

16  seen any other objections.  United States Trustee is on the line and has standing to speak in

17  any matter, but I don't see that they have filed a pleading in this.  So if I've missed somebody,

18  let me know.  But as it is right now, those are the parties I'm going to hear from.  Mr.

19  Waldron or Ms. Egan as moving party, the floor is now yours.

20  MARK WALDRON:  Your Honor, I would prefer that Ms. Egan go ahead with the arguments

21  at this stage.  She's the one who drafted the motion, but I would like to throw one…put one

22  thing out there.  There was no attempt to rush this to hide it from anybody.  I want the Court

23  to know, it was because we were under the gun from the landlord to do something, and we

24  were being pushed, and so we were trying to get it done at the same time we were dealing

25  with the landlord.  Just so the Court knows, but I'll yield to Ms. Egan, please.

26  JUDGE CORBIT:  Okay.  Ms. Egan, the floor is yours.  Madam Clerk, does Ms. Egan need to

27  be unmuted?

28  CLERK:  Just a minute, Judge, I thought she was.  I believe she is unmuted.

1 JUDGE CORBIT: Okay, Ms. Egan, can you hear us?

2 CLERK: Let me try one other thing. Ms. Egan?

3 PAMELA EGAN: Yes.

4 JUDGE CORBIT: Good. We can hear you now, Ms. Egan.

5 PAMELA EGAN: Alright, thank you, Your Honor. Pamela Egan on behalf of the Chapter 7

6 Trustee, Mark D. Waldron. The Court is very well aware of the background facts and the sale

7 descriptions and the proposed bid procedures where we now have two qualified bids who

8 would like to bid in increments of $5,000 and would like to do it over the phone, and we'd

9 like to do that tomorrow because of the deadlines that we're under. The thing is…

10 JUDGE CORBIT: Ms. Egan, what time tomorrow do you want that to take place?

11 PAMELA EGAN: I'm going…if we may have Mr. Waldron provide input on that. I would

12 think late in the afternoon.

13 JUDGE CORBIT: Okay, if it's different than that let me know because one of the things

14 depending on what I rule here, if I rule, you know, the sale doesn't take place if I sustain Mr.

15 Dams objection, but if I grant the motion I'm going to have to prepare an order and get it

16 entered before you complete the sale. So hearing that, I understand that I would have a little

17 bit of time to do my penmanship if I end up granting this motion, that if I got the order entered

18 by noon tomorrow, I'm probably…I'd probably meet the deadline that you need?

19 PAMELA EGAN: Yes, Your Honor, and we cite the Court for your attentiveness.

20 JUDGE CORBIT: Okay, I'm sorry to interrupt you. Go ahead, Ms. Egan.

21 PAMELA EGAN: Thank you, Your Honor. When sale is authorized pursuant to 363(b)(1),

22 the Moses Lake equipment, which is made up of miners as well power distribution units and

23 power supply units, is property of the estate. As Mr. Waldon testified, it was always under

24 the control of the Debtor on land that was leased from Ryan Oster's entities at the Moses Lake

25 facility. We negotiated the identification of the various equipment with the landlord to ensure

26 that we were all in agreement that this was property of the estate and not property of the

27 landlord. Sound business judgment…well okay…sound business judgment supports the sale.

28 We need to vacate the premises. We're holding over. The Trustee is under a statutory duty to

18-03197-FPC7    Doc 818    Filed 11/27/20    Entered 11/27/20 10:33:38    Pg 15 of 37

1    monetize, to liquidate and monetize the equipment of the estate and we have a deadline for

2    selling this equipment, otherwise it goes back to the landlord, and so it completely makes

3    sense for the money to come into the estate instead.  And the bid procedures are appropriate.

4    They will provide for overbidding.  We noticed it up on the…on the website.  The Court

5    declined…denied the motion for shorten notice so it was put on full notice, and it's reasonable

6    to have $5,000 overbids.  It's also reasonable to require that the bidder establish its ability to

7    close, otherwise we're just wasting the limited resources of the estate.  Plus, the two bidders,

8    Chain Lodge and Soluna, which is the parent of the company that bought the TNT facility,

9    have established their ability to close quickly.  They have the money to both pay and remove

10   the equipment as-is, where-is, no warranties whatsoever.  The sale may be and should be free

11   and clear of any claim…of any [inaudible] claim or interest under 363(f)(4) and (5).  The

12   claims of the Jun Dam…Jun Dam group is in dispute.  You know, their subjective belief that

13   they own the miners and that they weren't investing in Giga Watt is not relevant.  Under the

14   seminal case of *FCC v. Howie* dating all the way back to 1946, the purchasers in that case, the

15   investors in that case, had land deeds that they recorded with the county, and they claimed

16   "We own this property, it's not an investment, we own it" but the Court cut through the

17   subjective understanding of the parties and the papers that they created to the economic

18   reality.  And we have briefed with the Court, the Trustee's bona fide arguments that these

19   miners were contributed to Giga Watt.  One had to buy a token in order to purchase these

20   miners, and all of these watt token committee members have purchased tokens, and then they

21   also bought the miners pursuant to their and in conjunction with their purchase of the tokens.

22   That's one.  Furthermore, each of these committee members, ad hoc committee members can

23   be compelled to accept a monetary compensation for their claims, which is the requirement

24   under 363(f)(5) and we know that because I saw a proof of claim in this case asking for

25   money.  And by the way…well not…with respect to standing, that watt token committee has

26   formed itself as an LLC, and therefore, it is not allowed to appear in this court unless it's

27   represented by an attorney, and it's not represented by an attorney.  And while these

28   individual members signed Mr. Dam's objection and claim that they're all pro se, Mr. Dam is

1   the one who submitted this.  He is not a lawyer.  He does not have the right to argue on their

2   behalf.  And he does not own miners.  Therefore, he lacks standing to be bringing this

3   objection.  That's another reason for overruling it.  The bid procedures constitutes an

4   appropriate process to obtain the highest and best bid because of the overbidding that's

5   allowed and because of the fact that they've established their ability to close

6   which…which…which insures that we will receive the highest, the best offer as a result.  The

7   Trustee…the sale is in…is in good faith.  The two qualified bidders are arms-length.  They're

8   not insiders.  And so we would ask the Court to wave the Rule 6004 stay in order to make the

9   order effective immediately.  Cause exists to wave the Rule 6004 states that the additional

10  reason and in addition to good faith that we are holding over, we need to get out, and we will

11  forfeit the equipment if we can't close.  And so waving the Rule 6004 stay, cause exists for

12  that.  And finally, the formal manner of service of notice is sufficient.  We put it on the

13  website, the Court declined shortened notice, it was put on regular notice, everybody agrees

14  that they received a notice, we're here in court.  So for all the forgoing reasons, Your Honor,

15  we ask that Court approve the sale as set forth in the motion and also approve the bidding

16  procedures and wave the Rule 6004 stay and find that the sale is made in good faith, free and

17  clear of any lien, claim, or interest.  Thank you, Your Honor.

18  JUDGE CORBIT:  Ms. Egan, just some procedural questions.

19  PAMELA EGAN:  Yes, sir.

20  JUDGE CORBIT:  I'm looking at my computer now and sometimes some of my various

21  screens to get it I can't get attachments.  Have you prepared a proposed order?

22  PAMELA EGAN:  Yes, I have.

23  JUDGE CORBIT:  And…

24  PAMELA EGAN:  And it is attached as Exhibit A, excuse me.

25  JUDGE CORBIT:  Your motion is 720.  And so yeah I don't…okay…okay, so I see it has

26  Exhibits A, B, and C to it.  Okay.  Let me see if I can…okay, I'll look at A.  Is it under the

27  circumstances, the proposed order that you have is that, which exhibit is it?

28  PAMELA EGAN:  Exhibit A to the motion.

1  JUDGE CORBIT: Okay. Are there any changes to that order that you want the Court to

2  prepare?

3  PAMELA EGAN: Please give me a second, Your Honor. No, Your Honor…well, we might

4  want to state that all objections are overruled.

5  JUDGE CORBIT: Okay.

6  PAMELA EGAN: And we may also…and we may also want to add given Mr. Waldron's

7  statement that the…that the…that the…any claims will attach to the proceeds.

8  JUDGE CORBIT: Okay. Okay, and those are things you could change in your order

9  quickly? So you could upload a new order if I grant your motion?

10  PAMELA EGAN: Yes, Your Honor.

11  JUDGE CORBIT: Okay, if I grant your motion, I may make some findings of fact and

12  conclusions of law. I assume that you have findings of fact in your order. Do you have

13  conclusions of law, as well?

14  PAMELA EGAN: Well, it states that the findings of fact and conclusions of law are

15  incorporated here and by reference as if set forth [inaudible] hearing as provided in Rule

16  705(2) of the Federal Rules of Bankruptcy Procedure.

17  JUDGE CORBIT: Okay, and so if I…I can prepare my own findings of fact and conclusions

18  of law to supplement the order is what you're anticipating?

19  PAMELA EGAN: Yes, Your Honor.

20  JUDGE CORBIT: Okay. Alright, thank you.

21  PAMELA EGAN: If the Court…if the…you're welcome…if the Court would wish for me to

22  draft them, I would be happy to do so, Your Honor, with some guidance.

23  JUDGE CORBIT: Okay. If I grant your motion, the order I want to make some changes: 1) I

24  want you to make sure that you put in…that the claims will attach to the proceeds.

25  PAMELA EGAN: Yes.

26  JUDGE CORBIT: And I listened to you talk about, you know, findings of fact and

27  conclusions of law are incorporated herein. In specific, you know, I may make some oral

28  findings and conclusions, and I may make some written ones, but you should say as well, the

1  Court's oral and written findings are incorporated herein.

2  PAMELA EGAN:  Understood.

3  JUDGE CORBIT:  Okay.  So that's what I understand that the order before me…that's the

4  order that you're proposing, Exhibit A with the changes that you've described.  Okay, Mr.

5  Dam, I'll hear from you.  I think Madam Clerk needs to unmute you, Mr. Dam.  I want to

6  thank everyone for their patience.  Handling these complicated hearings by phone are difficult

7  with many parties.  So Mr. Dam, we'll be patient…we'll patiently wait for you here while

8  Madam Clerk…

9  CLERK:  Mr. Dam, may proceed.

10  JUN DAM:  Yes, this is Jun Dam.  So, first of all, the objection to the sale or equipment sale

11  was signed by about seventy-five pro se Creditors or mining machine owners.  It's just…it's

12  not me, I'm not representing them.  As a point of order, I…there might be people here on the

13  phone that would like…

14  CLERK:  Go ahead.

15  JUN DAM:  Yes, I don't know if you were able to hear me.  I heard [inaudible]

16  JUDGE CORBIT:  Mr. Dam, you came through loud and clear.

17  JUN DAM:  Okay.  So there are people on the phone that would likely…would like…I'd like

18  to have recognized because they signed the motion, and so just to give you some context, you

19  know, I'm a spokesperson for people since I've…you know, I've founded the Creditors

20  Committee of token holders and miners in early 2019, so I'm in contact with many of these

21  mining machine owners and token holders.  To provide you some context, 5700 machines are

22  being sold.  When they were…when the mining owner…miner owners bought those

23  machines, it was probably over $15 million dollars brand new.  Last week, seventy-five

24  people signed this motion objecting, and it was in a matter of one day.  People from twenty-

25  six countries, fourteen different states that spent, you know, that group in itself represented

26  about a thousand machines or $3 million dollars when they bought it brand new.

27  JUDGE CORBIT:  Let me interrupt you, Mr. Dam.  I do…I've got in front of me right

28  now…I've got the other Creditors that have signed your pleading.  I'm looking at your

1  pleading that's been filed in the docket at 723.  Okay?

2  JUN DAM:  Yes.

3  JUDGE CORBIT:  I have one objection that has been signed by all of these people, and

4  you've described yourself as the spokesperson for these other people and I…okay, I

5  understand that.  Have these people authorized you to speak on their behalf?

6  JUN DAM:  No, that's why I want them recognized on this call.

7  [crosstalk]

8  JUDGE CORBIT:  Okay, I recognize that they share the objections that you're making.  What

9  I'm wondering is, do you want me to open the line to each of these people and have them

10  speak or are you speaking or what you are saying is being said on behalf of all of them?  Are

11  they all gonna just go in and say "me too"?  What's the procedure?

12  JUN DAM:  Yeah…yeah so, I don't know.  Everyone is independent, so they…but they

13  generally agree in the motion that was written.

14  JUDGE CORBIT:  Okay.

15  JUN DAM:  And they…

16  JUDGE CORBIT:  Okay, I have one…I have one objection to the motion, and that's the one

17  that you filed at Docket 723.  And I need to know who's speaking on behalf of that.  And

18  you're the person that's speaking on behalf of that objection.  And I do note you've asked me

19  to take notice of the fact that you're not the only one that has signed this.  I see that next to

20  your signature is Shawn Jackson Dyke D-Y-C-K.  I'm not sure that I pronounced his name

21  correctly.  And there's more signatures until you go down to the bottom of it, and the last

22  signatures, I see several pages of signatures, the last signature is an Edward Selmer of

23  Charlotte, North Carolina.  So I have one objection that was filed and signed by all people.

24  So you're speaking for those other people.  Is that an acceptable assumption on my part?

25  JUN DAM:  In general, they agree with me so.  But again they haven't officially authorized

26  me to be any official spokesman, but that's the only thing I just want to make clear.  So but,

27  you know, they generally will agree with, you know, what I'm saying here.  And I'm just

28  providing context of the collective group, so I've just done an analysis of, you know, how

1    many miner machine owners are in this group that are objecting.  And so just to make it more

2    efficient I'm just synthesizing all the information there is.  And yeah…and just publically

3    letting, you know, the Court know as part of the argument here.

4    JUDGE CORBIT:  Okay, thank you, sir.

5    JUN DAM:  Okay.  And so from a legal standpoint, I just wanted to give that as a context like

6    this is…these are people around the world, spent millions of dollars.  They have invoices for

7    those, so I don't believe it's in a true bona fide dispute.  So under 363(f), they consider this

8    bona fide dispute.  But you know, under case law, the bona fide dispute generally has to be

9    summarily judged first when there is a dispute to see if it's truly bona fide quote un-quote.  So

10   I believe the determination of ownership legally from what I've read should be determined

11   beforehand.  So number two…

12   JUDGE CORBIT:  Let me ask you about that, Mr. Dam.

13   JUN DAM:  [inaudible]

14   JUDGE CORBIT:  Is that the code, you know, I think you cited the Darby case.  And the

15   Darby case was a bit different because there was an adversary action pending, dealing with

16   the ownership interest at the same time sale free and clear was going on.  I'm not aware of

17   any adversary proceeding or any turnover motion with respect to the miners.  Have I missed

18   anything?

19   JUN DAM:  There is no adversary action, but the motion itself requested, you know,

20   everybody who signed requested adequate protection so, you know, that's 363(e).

21   JUDGE CORBIT:  Okay.  As to the adequate protection, that's something…whatever their

22   interests are can attach to the proceeds.  That's an adequate protection interest, and I already

23   told Ms. Egan and Mr. Waldron that I'm going to require that.  But here I'm concerned with

24   nobody else other than the Trustee taking control over this property, this property is going to

25   be lost.  If…because all of the property is in the landlord's building, and the landlord's gonna

26   take…take control of this soon if we don't do something quickly.  So, you know, practically

27   speaking, what can we do other than sell it to the highest bidder right now?

28   JUN DAM:  Yes, and then you know, I'll get to that point.  I believe if it is sold, there should

1    be a process…and but adequate protection…this is to me…there's a higher priority for

2    personal property than a secured interest, which if we're talking about the bid, if we skip over

3    to the bid, there is a proper sales process that should include…just because miners owners are

4    at a high position to secured, I would only assume…I could only assume that…

5    JUDGE CORBIT: Okay, but if we do that process…

6    [crosstalk]

7    JUDGE CORBIT: If we have an adversary action, there isn't one pending, but if some…if an

8    owner of property, an alleged owner of property brought an adversary action saying "This is

9    really my property, it's not the trust's, it's not property of the bankruptcy estate" and we did

10    that, how could that be accomplished, you know, isn't…if we allowed that process to take

11    place, we'd be fighting over nothing. The miners would be gone. There wouldn't be

12    anything to fight over.

13    JUN DAM: I'd have to understand the exact details of the landlord's request for…or not

14    request, but demands for leaving the premises. I think that needs to be determined exactly,

15    you know, and that…I haven't talked to…I mean Dave Kazemba might be here, but you

16    know, this is a process. I think right now we don't have that information. Alright, none of us

17    have that information about how soon they're going to require everyone to vacate, right, and

18    in what terms, right. So but it just for…to your point about the sale, alright, I believe this

19    collective group under a non-profit is a more appropriate entity to sell the property to because

20    if you look at just the evidence and the claims we have, that group represents about twenty-

21    five hundred machines, which is roughly half or just, you know, less maybe forty percent of

22    the machines that are being sold. If it sold at any price, especially at $42,000 or, and I don't

23    know where the bidding would go, but whatever that range of price is can, you know, the

24    estate can get out of it would cause irreparable harm because anybody else outside would be

25    able to sell those…that property individually for a lot higher. So…so…

26    JUDGE CORBIT: What…Mr. Dam…Mr. Dam, what evidence have you presented that the

27    property can be sold for a lot higher price? And bankruptcy…this is…we have to be practical

28    here. This case has been going on for a long time and the loss…as I mentioned before to you,

1  Mr. Dam, you've suffered a great loss and so have the other parties that have been involved in

2  this, and I see it.  But that…people invested or bought or whatever their relationship with the

3  founders of Giga Watt, their trust in the founders of Giga Watt was misplaced.  And the

4  founders of Giga Watt ran this to the ground and caused a tremendous amount of loss to

5  landlords, to investors, to alleged miner owners.  There is nothing much left here.

6  JUN DAM:  So Judge Corbit, just in terms of the amount that could be how much these can

7  be sold for on EBay I think the GPU's I've seen they're the rigs, alpha miner rigs, there's

8  about, I think, six hundred of them, $800…they're selling for about $800 individually on

9  EBay.  Same thing, you know, L3's and S9's, there's about twenty-five hundred each of

10  those.  I would say you know some are selling between forty and fifty and now these are

11  individually sold, so in bulk it would be less than that.  But if…

12  JUDGE CORBIT:  If they're worth that much, why didn't you make a higher offer?

13  JUN DAM:  Well, you know, we just found out about this bid late and we…and this is, you

14  know, as a collective group in the token holders [inaudible] and we scrambled together to say

15  "Okay are people willing to contribute to this?" and it was actually…we were able to get

16  commitments and to support this effort.  So yes, that's what all we did back in just last Friday.

17  We said, you know, we could bid $42,000, that's not a big deal.  It's uncomfortable for miner

18  owners to have to….

19  JUDGE CORBIT:  I want to go back to this…this case was filed in November of 2018, and if

20  people had claimed that they owned property and that somebody else was holding their

21  property, this is not a last minute thing.  This case has gone through starting off with debtors

22  in possession trying to run the case, failing to run it adequately, and a trustee had to be

23  appointed, a Chapter 13…a Chapter 11 trustee.  And then significant time went by where the

24  Trustee tried to reorganize the affairs but couldn't do it, and the case had to be converted to a

25  Chapter 7.  But since November of 2018m I haven't seen anybody come in and say "Please

26  give me my miner".  There's been two years here.  This is not something that has been just

27  dropped on people.

28  JUN DAM:  There's been numer occasions…numerous occasions from what I understand

1    where people have emailed the Trustee and the Trustee's lawyer to get their machines back.

2    We actually as a group held off in the collective effort of stopping the Trustee from using the

3    machines because we thought it would benefit the estate. That was probably in the March

4    timeframe in twenty…in nineteen when the…when the…March, April, May when Moses

5    Lake started in operations and TNT later in that year. So that was, you know, some time

6    for…for both of these locations to become operational. And at that point those with machines

7    thought they were helping the estate, and the condition that we had and we requested as a part

8    of another group, the creditors…official Creditors Committee is that, you know, just because

9    miner owners and token holders had not objected to the operations that they wouldn't be

10    compensated for that. So there was a motion that kind of declared that. And over time, we

11    hired a lawyer. It took some time as a group to hire a lawyer to fight for our rights and for,

12    you know, many reasons I guess that, you know, I don't fully understand, our lawyer not able

13    to follow through with the administrative expense motion that we refiled. I believe that, you

14    know, the cost of a lawyer to file an appeal, that maybe the Trustee was indicating that they

15    would, you know, it would get to appeal was the reason why our…our…the Samuel Dart was

16    not able move further with the motion for administrative expenses, but that's another story.

17    So there were efforts made as a group. There were efforts made individually to get their…to

18    fight for adequate protection for their miners back. And you know, we're at a point where we

19    are here, and we're, you know, the sale…these rushed sales are being objected to right now

20    because we as a group realize that we weren't able to get to this adequate protection using

21    other means. So we'd have to kind of take it upon ourselves to do the…do these things pro se

22    so. But getting back, you know, you know, as a group there's a non-profit group, again, that

23    represents…represents nearly two hundred members. We have commitments to put in the

24    $42,000 that the Trustee was willing to sell just last week. You know, secured creditors are

25    allowed credit bids. Personal property is a higher priority than secured property. So under

26    363(k) I believe the right way to do it is to…to allow an entity that is effectively bidding on

27    their own machines to be the preferred bidder or allow a credit bid beyond the cash that

28    was…was to…was to be accepted or was accepted as of last week and would have probably

18-03197-FPC7    Doc 818    Filed 11/27/20    Entered 11/27/20 10:33:38    Pg 24 of 37

1  been sold for $42,000 in cash were it not for a group of people around the world coming

2  together to object to the sale.  So whatever…

3  JUDGE CORBIT:  Mr. Dam, as to that point, I don't think that's the testimony that was

4  before me.  The testimony from Mr. Waldron as to the sale, if he has…he brought in two

5  active bidders, and they bid against each other that brought it up over to $42,000, and he was

6  aware of your $42,000 offer, but it wasn't…it's not the highest bid.  You know, there are two

7  other bidders that Mr. Waldron has brought to the table, and that's what's caused the sale to

8  go up.

9  JUN DAM:  And I'm fine with higher…more bidders and a process, but again, I would note

10  that there were no bidders if this wasn't postponed until today, this hearing.  I assume $42,000

11  was to be accepted and the deadline even to bid was before the hearing that was held last

12  week.  So in any case so the…

13  JUDGE CORBIT:  Well, let me make it clear that, you know…you know, the Trustee in a

14  sale can put reasonable criteria in place to make sure that people are legitimate purchasers.

15  You know at this point, things have to be moved quickly and this is an as-is, where-is sale

16  without warranties, without any additional inspections.  If…and as I understand the Trustee, it

17  has to be done that way or property is going to be lost, he doesn't have much time.  You

18  know, if you or any other interested parties are interested in bidding, and you can wire

19  transfer funds to Mr. Waldron to hold and deposit or Ms. Egan to hold in trust, and you can

20  show that you've got the cash, if you…your green is going to be as green as anybody else's if

21  it's real and it's there.  And you know, you can bid more if you're interested in doing it.  And

22  if I approve the sale, it's not going to happen today, it's going to happen tomorrow afternoon.

23  JUN DAM:  Yes, thanks for that, Judge.  So, but my big point is, you know, we're willing to

24  put up the cash, but we're as a group, miner owners are buying what they effectively believe

25  are their machines, and I…to me, it's…I agree wholeheartedly that these are their machines.

26  So to have to even bid on what you know was stolen property is already I think uneasy to

27  people.  But people understand that, you know, they're willing to do it.  So, I think the big

28  point here is about the credit bid.  $42,000 in cash is what the estate would have gotten, right?

1   Regardless of…or in…as of last week.  So that cash would have been the same amount of

2   cash that the estate would have gotten last week.  The higher priority personal property

3   position of those mining machine owners should allow them to credit bid and with the credit

4   bid of a reasonable amount of the machines that they claim.  And so as a group, the non-profit

5   token holders and miners, what we're inclined to do is reserve the twenty-five hundred

6   machines that the members have invoices for and just as a non-profit, we're going to give it

7   back to them, we're giving these mining machines back to the people that we believe deserve

8   it.  And really when you think about it, that's what happened in the natural court process

9   anyway, that people who deserved these machines would get it back, we'll probably sell it on

10  their behalf ,and that's the big distinction.  We know we…everybody knows that the

11  machines that are being sold, we'll…we'll be able to get a higher price outside of this

12  liquidation sale, so…so anyway, so the credit bid is the important point here.  If Judge Corbit,

13  you allow a credit bid, I think that would be the most fair for those that already, you know,

14  what we're doing as a non-profit, we're reserving those twenty-five hundred machines just for

15  them, and if you require some sort of accounting for that and a credit bid for each of the

16  persons, I think we could come up with a fair amount per machine.

17  JUDGE CORBIT:  Mr. Dam, I'll be ruling on this in a second, but 363(k) deals with liens and

18  for someone to have something akin to a lien or to have an ownership interest in property, I'd

19  have to have a record of that.  As I'm going to comment in a minute, the exercise of dominion

20  and control over this property, which is one factor you look at to see who actually owns it has

21  always been exercised by Giga Watt.  It hasn't been exercised by anybody else.  Over two

22  years in this case or almost two years in this case, and I don't see anybody else taking control

23  of it, and I know where the property is located, and it's Giga Watt that's always had the key to

24  this…to the premises.  So…

25  JUN DAM:  So…

26  JUDGE CORBIT:  I'm not going to allow credit bidding, Mr. Dam.  So what's your next

27  argument?  Is there any other?

28  JUN DAM:  So okay, if that's the case, which I believe, again, the personal property is the

1  higher priority than any lien.  So I'm not sure if there's a specific statute that

2  allows…because, you know, people are supposed to get their machines back.  So there is no

3  statute that would even consider that situation.  So there's a…

4  JUDGE CORBIT:  Okay, but that…Bankruptcy Code, you know, anticipates liquidation.  At

5  some point when businesses fail, property has to be liquidated, and trustees have to be

6  appointed.  And 363(f) does provide where there is…a sale can be approved where an

7  objecting party, even though they may claim an interest, the sale can be approved over that

8  objecting party's objection if the objecting party's interest is in bona fide a dispute.  That's

9  exactly what Section 363(f)(4) says.  And what I'm struggling here with, Mr. Dam, is how I

10  conclude…can conclude at this point otherwise that the interest that various Creditors have

11  asserted here is not in bona fide a dispute when they haven't exercised control over this

12  property for years?

13  JUN DAM:  So I would say the ownership should be determined beforehand, before the sale

14  could be approved because at least a summary judgment of ownership and that has to be…that

15  should have been done awhile back.  But then…and…

16  JUDGE CORBIT:  Okay but if someone…okay, you cited in your pleadings talking about

17  burden of proof over the…you know, in connection with a turnover.  And your citation of

18  cases there and law is accurate.  A trustee has the burden of proof and the burden of going

19  forward to get a third party to turnover property, but that's not what we have here.  The

20  property is in the possession of the Trustee.  The Trustee has access to this property, and

21  you're saying the Trustee should be giving you that property. Well, parties have had two years

22  to say "Give me back my property" and you say there may be emails out there and so forth,

23  but in the bankruptcy procedure…proceeding, those claims should have been filed in the

24  bankruptcy proceeding, motions or adversary actions should have been filed, and you should

25  have brought it to my attention, and that hasn't happened.

26  JUN DAM:  I agree that there hasn't been an adversarial, but there have been motions,

27  specifically, by Samuel Dart, and on behalf of the creditors committee of WTT Token

28  Holders and Miners that have brought that to the attention the Court.

18-03197-FPC7    Doc 818    Filed 11/27/20    Entered 11/27/20 10:33:38    Pg 27 of 37

1    JUDGE CORBIT: But…

2    JUN DAM: And also I've also…

3    JUDGE CORBIT: Well, let me…what has been brought to my attention is, to be charitable to

4    you, would be that that has been brought to my attention. But again, that…you have to do

5    something with it, you have to bring a motion for turnover, or bring an adversary action. The

6    matter has to be brought before me so that I can rule on it, and nobody's done that.

7    JUN DAM: The motion for administrative expenses, I agree we have to refile that so you

8    know that…there's gonna to be a ruling on the ownership eventually. But under 363(f) under

9    bona fide dispute under the case law that I under…that I've read, there should, you know,

10   most case laws suggest there should be a summary judgment before any sale is approved and

11   you know we didn't apute…I mean, I understand we didn't…

12   JUDGE CORBIT: Okay, no, I read…I read the Darby case, and the Darby case had it…was

13   different in that there was an adversary action pending at the same time as the sale motion. I

14   don't have that here. Nobody…nobody has raised or commenced an adversary action or even

15   brought a motion for turnover. I don't have that here.

16   JUN DAM: I believe, you know, we can consider more case law. But when someone or

17   anybody requests adequate protection, I believe that…that is an adversarial action. And you

18   know, maybe, you know, I understand if this comes to appeal, you know, what we'll do is

19   we'll appeal, and we'll request a temp…we'll request a motion for stay pending appeal. We,

20   you know, as a group I think that's the…that's unfortunately what we're prepared to do. We

21   don't want it to last more than three to five months in appeal, but, you know, I think the case

22   law would…has to support this. I'm sure that there…it should be in a judgment or at least a

23   summary judgment on the ownership issue, and it's precisely the reason why I did not

24   [inaudible].

25   JUDGE CORBIT: Okay, I've heard you, Mr. Dam, you're going to have to move on to the

26   next argument. Yes, I would have given you an opportunity to bring a summary judgment

27   motion or even given you the opportunity to have a trial on the ownership had you filed an

28   action, but you didn't.

1    JUN DAM:  Well, this motion…

2    JUDGE CORBIT:  Next point, Mr. Dam.  Next point, Mr. Dam.

3    JUN DAM:  Okay, that's fine.  I mean we'll just save that I guess for an appeal.  But so those

4    are the two points.  The main one is that considering the evidence of this case, where

5    everybody has invoices, it's to me quite obvious who owns the machines.  Giga Watt was

6    always a hosting company.  They are holding the property in bailment.  It's a custodial

7    relationship.  This is quite obvious.  I think we have to check and see if Mark Waldron is

8    committing some sort of perjury when he said that the employees and landlords are saying

9    that, you know, Giga Watt, Inc. owned these machines and not those that purchased it.  I think

10    this is serious when you say things like that openly.  We actually have, you know, a former…

11    JUDGE CORBIT:  Mr.…okay, Mr. Dam, I hope that the people that you're representing or

12    that you're trying to synthesize the argument for their behalf will take a look at my long

13    opinion that I issued when you raised the similar allegations against Mr. Waldron.  But what

14    I'm looking at here, the evidence that is most compelling to me is that the person that has

15    dominion and control over these miners is Mr. Waldron.  He's had that for some time now as

16    the Chapter 11 Trustee, and then now as the Chapter 7 Trustee.  He's controlling it.  He has

17    possession of the property.  And before that, who had possession of the property was Giga

18    Watt's management.  So, coming to the conclusion that there is a bona fide dispute that

19    someone else might own this is really easy for me to make, if that the person exercising

20    control over this property and how the property's been stored and where it's been just…and

21    where it's been stored, all points to the bankruptcy estate being the owner or having either a

22    legal or equitable ownership into this property.  Now I'm not making the final determination

23    on that today, but if you argue otherwise, at this point I've got to conclude that contrary

24    arguments are subject to a bona fide dispute.

25    JUN DAM:  And I would dispute that because this is a simple, very simple custodial

26    relationship.  They're a hosting company, people send machines over to this company, or you

27    know, a lot of these machines were purchased from Giga Watt Singapore and sent over to

28    Giga Watt.  But this is out open in the public, this is…should not even be a debate at this

1    point.

2    JUDGE CORBIT: Okay, Mr. Dam, okay, move on to the next point.

3    JUN DAM: Okay.

4    JUDGE CORBIT: Because if what you say is true, then people could have come in long time

5    ago and said when this business was failing, they could have said "Give me back my

6    equipment" and they never did.

7    JUN DAM: Oh and [inaudible]

8    JUDGE CORBIT: Next point…next point, Mr. Dam. Next point. Is there anything else or

9    are you done?

10    JUN DAM: So those are my main points and really at this point, there, you know,

11    there…it…there's no option for credit bid which I feel is the appropriate path in this…in this,

12    I guess, equipment sale. Then we will have to appeal and…and move to stay pending an

13    appeal, and you know, I'm sure we're prepared to do that.

14    JUDGE CORBIT: Okay…okay Mr.…Mr. Dam, answer for me: what else can we do? If the

15    landlords are going to take the premises back soon, what else can we do? You know, I hear

16    that you don't like this sale, but…and a credit bid doesn't work because that brings no money

17    into the estate because we haven't established that your clients actually own something. So, if

18    I don't approve this sale, it appears to me that it's quite clear that the property will be lost.

19    JUN DAM: Judge Corbit, I think it would…I would request the Court take some time to

20    consider the ownership issue and issue a summary judgment on it, and I believe that could be

21    a [inaudible] of…

22    JUDGE CORBIT: Okay, you need to file…you need to file an adversary action so that I can

23    rule on that. You know, sir, give me the opportunity to rule, and you haven't given me that.

24    You haven't filed. You haven't brought that before the Court. I can only rule on the issues

25    and the matters that come before me. Anything else, Mr. Dam?

26    JUN DAM: Well, there is a motion for administrative expenses that requests a declaratory

27    relief for the ownership issue and in that motion, you know, to me that can be ruled on and

28    that would decide the ownership issue. Again…

1  JUDGE CORBIT:  Does that…that hasn't…that has not been properly noted for hearing

2  today, correct?

3  JUN DAM:  That hasn't been procedurally, or yeah, noted for a hearing, but it's been on the

4  table for a while, so I'm sure you've probably even read the motion, I hope.  And…

5  JUDGE CORBIT:  I did.

6  JUN DAM:  In preparation, so…

7  JUDGE CORBIT:  I did.  I think that you can tell from my comments that I was talking about

8  various sections of that.  You know in…for example, when I talked about the turnover

9  section, which appeared in that document.  Okay, Mr. Dam, anything else, sir?

10  JUN DAM:  So a declaratory ruling on that motion for the miner ownership issue I think

11  would be preferable at least first.  And really at the end of the day, we can file a motion as a

12  group whether, you know, you file a declaratory motion…or order on the ownership issue or

13  not.  And we'll move to…to…to…move for a stay pending the appeal.  We don't want to do

14  this.  It's going to take three to five months.  If you rule on the ownership issue first, rule one

15  way or the other, we may have to appeal that as well.  So but if, you know, at least if you are

16  able to rule on that motion on the ownership issue, I think it would give you a peace of mind

17  about whether or not this sale should be ex…you know, should be done in the first place and

18  get adequate protection for everybody who…who's…who's objected to this motion or who

19  have objected to this motion.  So either way, I mean, you know, again I think the right way to

20  do it is to declare, you know, have some sort of judgment on the ownership issue before this is

21  sold.  It can easily be done.  If not, allow a credit bid because that's to me the second most

22  fair…fair thing you can do.  Allow people who own the machine to [inaudible] having to bid

23  for their own machines, at least have them allowed to have some advantage because it's their

24  machines that they're bidding on.  It'll cause irreparable harm, that's why I think it would be

25  easy to get a, you know, a stay pending an appeal because really it's irreparable harm.  These

26  machines are being sold for maybe $5 instead of, you know, $40.  So you're selling for

27  twenty percent of what the market is…is selling for them individually on EBay.  So anyway

28  so those are my final points.  I don't want to take anymore but…of anybody's time at this

1  point but, you know, you know we're ready to appeal or we're ready to move for a stay and

2  only…only other route that would satisfy us is if we are able to put some cash amount

3  together as a group and credit bid the remaining amount and…and, you know, those are my

4  final words, so.

5  JUDGE CORBIT:  Okay, thank you.  Mr. Waldron, Ms. Egan, I'm prepared to rule, so I don't

6  need a reply.  I've got several points that I'm going to make, but preliminarily what I intend to

7  do is to sign the order that Ms. Egan has proposed with the revisions that we've discussed.  I

8  will enter some written findings and conclusions.  And I'm going to try and get that done

9  before noon tomorrow.  So Ms. Egan, get your order in here, and I'd do the two together.

10  Your order should provide what I'm going to incorporate, written findings of fact and

11  conclusions of law, as well as the oral ones that I'm going to make right now.  But I'm going

12  to prepare findings of fact and conclusions of law.  And then the order will be a separate

13  order, the one that you're going to present, Ms. Egan.  Let me go through sort of these

14  mixture of findings of fact and conclusions of law.  The first point is, is that I am going to

15  provide adequate protection of the…

16  ["all participants are now in listen only mode" 11:32:15 to 11:32:32]

17  JUDGE CORBIT:  Okay.

18  CLERK:  Judge, you may proceed.

19  JUDGE CORBIT:  I'm hoping you can hear me.  I'm going to start again.  Ms. Egan is going

20  to present an order that's going to incorporate my written findings and conclusions, which I'm

21  going to do tomorrow and also these oral comments that I'm making now.  The first one is, is

22  that I am going to provide adequate protection that the interest…the proceeds will be subject

23  to the claims of the various claimants who claim that they own the property.  To the extent

24  those claims are determined to be valid, then they're going to get the proceeds.  Now Mr.

25  Dam has asked us to delay this process to try to get more money, but the second point is that

26  that's not possible.  This case has been going on for a long time, there are landlords that are

27  getting anxious, and if the Trustee doesn't exercise his reasonable judgment to get property

28  sold soon, it will be lost.  So this has to go quickly, and even though we're moving it quickly

1   there…we're going to provide adequate protection as I said at the outset by any objecting

2   Creditors' claims against those assets that are being sold, those claims will attach to the

3   proceeds.  The third point I need to point out is that Mr. Dam has pointed out that he is not an

4   owner of the miners.  The fourth point, Mr. Dam is not a lawyer.  But Mr. Dam, I've given

5   him the opportunity to proceed, and he has synthesized the arguments for the other parties that

6   have signed off on the pleadings that he prepared.  The…I think I'm on the sixth point, but

7   I've skipped one, well we'll renumber them later, but just for my purposes the next point

8   is…is the sixth point, I do find that the sale is in good faith.  Under the circumstances, I don't

9   see what else the Trustee could do.  The seventh point is the Trustee is exercising reasonable

10  business judgment.  The eighth factor of point is that notice was sufficient, parties objected to

11  notice, I granted…I sustained that objection and gave parties a longer opportunity to object,

12  and we had that hearing today.  Ninth point is we have to look at Section 704 of the

13  Bankruptcy Code, in particular Section 704(a)(1).  And that section provides that it is a duty

14  of the Chapter 7 Trustee to collect and reduce to money all property of the estate.  Tenth point

15  is, what is property of the estate?  You look to Section 541(a) of the Bankruptcy Code:

16  property of the estate includes all legal or equitable interests in…interests of the Debtor.

17  Here, the Debtor has exercised dominion and control over this property for some time and no

18  one has countered that.  The property…the record shows that the property that's being sold

19  has stickers on it that say it's property of Giga Watt.  The eleventh point, we look at, how can

20  the Trustee sell property?  We look at Section 363(b) and 363(f) and that allows the Trustee

21  under these circumstances to sell property.  This is a liquidating proceeding.  It's no longer a

22  reorganization proceeding where people can take this property and try to use and make it

23  worth more.  Property has to be liquidated.  And unfortunately, the property doesn't, you

24  know, in certain circumstances may not generate as much money as a reorganized concern,

25  but we take it where it is.  And what we have here is a business that's not functioning, and

26  property has to be sold.  Under Section 363(f), the Trustee may sell property if the objecting

27  party's interest is in bona fide a dispute or if that party's claim can be satisfied by a payment

28  of money.  I notice here that all the claimants that have signed onto Mr. Dam's proceeding

18-03197-FPC7   Doc 818   Filed 11/27/20   Entered 11/27/20 10:33:38   Pg 33 of 37

1    have all filed proof of claim claiming that they're owed money.  So that factor and the fact

2    that 363(f) allows for the sale of property where the objecting parties interest is in bona fide a

3    dispute are grounds to allow the sale to take place here.  Twelfth point, a proper way in a

4    liquidation proceeding to protect interests is to provide that, as I indicated at the outset, that to

5    the extent Creditors have an interest in this property, any such interest will attach to the

6    proceeds, and those can be determined at a later date.  There is no adversary proceeding or no

7    claim.  You know, there's no adversary proceeding.  There is a motion for administrative

8    priority, but those issues will be decided later.  The third point is…the thirteenth point is a

9    good way to determine the value of property in a…when you have to get…when you have to

10    liquidate it soon is to put it up for sale and see what parties are willing to pay.  Here, the

11    Trustee has found competing bidders, and the price has raised accordingly.  Those are the

12    points that I make oral, but this will be possibly expanded by the written findings and written

13    conclusions that I will be preparing today.  Ms. Egan, I hope to be able to get that done by

14    noon tomorrow.  My question for you, Mr. Waldron, if I can't get it done by Tuesday, Ms.

15    Egan, talk to me about timing.

16    PAMELA EGAN:  Well, I can do this right now, so I can get this to you this afternoon.

17    JUDGE CORBIT:  Okay.

18    PAMELA EGAN:  [inaudible]

19    JUDGE CORBIT:  Well, I'll be working on mine.  The…my intent is to try to get it done by

20    noon tomorrow, my findings and fact that will be incorporated with that.

21    PAMELA EGAN:  Thank you, Your Honor.

22    JUDGE CORBIT:  If I can't get it done by noon tomorrow, if…I will contact Mr. Waldron,

23    Ms. Egan, and Mr. Dam and let you know that I'm still working on it.  If I can't get it done, it

24    might push your sale back a day.

25    [unknown people talking]

26    JUDGE CORBIT:  Okay, I'm hearing other people talk.  Ms. Egan, does that create a

27    problem?

28    PAMELA EGAN:  I'd like to let Mr. Waldron answer whether that would create a problem if

18-03197-FPC7    Doc 818    Filed 11/27/20    Entered 11/27/20 10:33:38    Pg 34 of 37

1    it were pushed over for one day.

2    JUDGE CORBIT: Okay, Mr. Waldon?

3    MARK WALDRON: Thank you, Your Honor. I have not set a specific time. I spoke to both

4    of the interested bidders, and we discussed the process, and we discussed a tentative date,

5    which would have been when the previous hearing was set. I have advised them that I

6    thought tomorrow, Tuesday, would be a good time and give them adequate…adequate time to

7    be ready to participate in the auction. It's…there's…we haven't set a time, we just

8    suggested…I suggested Tuesday so.

9    JUDGE CORBIT: Okay.

10   MARK WALDRON: If that's not available, Your Honor, then I can, you know…I'll be in

11   touch with them later today and letting them know what's going on here, so it's flexible. We

12   can…

13   JUDGE CORBIT: Okay, well I…

14   MARK WALDRON: We can make it what the Court needs.

15   JUDGE CORBIT: I will try to get it done by noon tomorrow. If looking at the work that I

16   have to do, sitting down to do this, and also dealing with the other cases that I have, if I can't

17   get it done by noon tomorrow, it's possible you might have to move your Tuesday afternoon

18   transactions to maybe Wednesday, but I'll know sooner. I'm gonna shoot for that noon

19   Tuesday deadline.

20   MARK WALDRON: That would work. Thank you, Your Honor.

21   JUDGE CORBIT: Okay. Alright.

22   PAMELA EGAN: Your Honor?

23   JUDGE CORBIT: Yes, Ms. Egan.

24   PAMELA EGAN: Your Honor? It's very disturbing that Mr. Dam is practicing law without

25   a license, and he is advising them. After the last call, he crowed about the success that he had

26   in delaying things, and he started advising them.

27   JUN DAM: I have an objection, Your Honor.

28   PAMELA EGAN: And it's simply wrong.

35

1  JUDGE CORBIT:  Okay.

2  PAMELA EGAN:  And so I want to put that on the record.

3  JUDGE CORBIT:  Okay, Mr. Dam.  Go ahead, Mr. Dam.

4  JUN DAM:  Yes, I'm not practicing law.  I am doing everything pro se.  I actually wanted

5  people to be recognized in this hearing to independently…independently give their

6  perspective on this whole case.  And really Ms. Egan has been…I wish someone had put her

7  under oath because I think you're going to find out that…

8  JUDGE CORBIT:  Okay, okay Mr. Dam, Ms. Egan, let me tell you on this issue, okay.  This

9  is a tough issue for the Court because Mr. Dam, Ms. Egan is correct.  You can't represent

10  these other parties.  However, I do recognize that you have concerns, and they have concerns.

11  So I let you at this point, synthesize their arguments.  I wanted to make sure that I heard what

12  their arguments were, and you know, Mr. Dam, I interrupted at some time, but I…hopefully,

13  you concur that I did…you recognize that I did read what you have filed on behalf of all those

14  parties, and I did hear what you have synthesized on behalf of all those parties.

15  JUN DAM:  Yeah.

16  JUDGE CORBIT:  So, Mr. Dam, I did not cut you off.

17  PAMELA EGAN:  Your Honor, he's doing more than synthesizing arguments.

18  JUDGE CORBIT:  Okay, I understand.  But at this point, I have made finding of fact that Mr.

19  Dam is not an attorney, and he can't represent other parties.  But for the purposes of parties

20  being heard, I've let him speak.  And nonetheless having heard Mr. Dam, I am denying his

21  objection.

22  PAMELA EGAN:  It goes to a corruption issue here.  He is advising [inaudible]

23  JUDGE CORBIT:  Ms. Egan…Ms. Egan, the issue that's before me today.

24  JUN DAM:  I can [inaudible]

25  JUDGE CORBIT:  No, Mr. Dam, the issue that's been presented before me today has been

26  decided.

27  JUN DAM:  Yes, but I…

28  JUDGE CORBIT:  And I'm going to go start working…I'm going to go start working on my

1  findings of fact and conclusions of law.  And we'll look forward to seeing Ms. Egan's

2  proposed order.  Thank you.  We're adjourned.

3

4  Signed under penalty of perjury on November 19, 2020

5

6  _____

7  Signature

8

9  Gina M. Cozza

10 Print/Type Name

11

12 518 East Nebraska, Spokane, WA 99208

13 Address

37