Pamela M. Egan, WSBA No. 54736
POTOMAC LAW GROUP
1905 7th Ave. W.
Seattle, WA 98119
Telephone: (415) 297-0132
Facsimile: (202) 318 7707
Email: pegan@potomaclaw.com

*Attorneys for Mark D. Waldron, Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| In re:<br><br>GIGA WATT, Inc., a Washington corporation,<br><br>Debtor. | Case No. 18-03197 FPC 7<br><br>The Honorable Frederick P. Corbit<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY JUN DAM SHOULD NOT BE SANCTIONED FOR VIOLATING THE AUTOMATIC STAY** |

Mark D. Waldron, the duly appointed chapter 7 trustee in the above-captioned case, hereby submits this memorandum in support of the motion (the "Motion"), filed herewith, for an Order to Show Cause why Jun Dam ("Dam") should not be sanctioned for violating the automatic stay.

## I. JURISDICTION

The bankruptcy court has jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1). This matter is core. 28 U.S.C. §157(b)(2)(A) and (O).

## II. INTRODUCTION

Dam is once again trying to cut the line and get paid ahead of other creditors. This time, he has sued Perkins Coie LLP and affiliates[1] on a cause of action that belongs exclusively to the estate and that the Trustee has already commenced.[2] In their respective actions, Dam and the Trustee allege the same facts: Perkins Coie LLP and Lowell Ness (collectively, "Perkins") agreed to hold token sale proceeds in trust (the "Escrow") until Giga Watt provided power to token holders.[3] If Giga Watt, Inc. ("Giga Watt") did not provide power within three months of projected dates, token holders could receive refunds from the Escrow. Perkins' violated the Escrow terms by releasing Escrow funds before Giga Watt had the requisite power capacity.

As both Dam and the Trustee allege in their respective actions, the Escrow completely failed and Giga Watt cratered into bankruptcy. As of the Petition Date, November 19, 2018, token holders who had received neither power nor a refund

---

[1] *See Dam v. Perkins Coie LLP, et al.*, Case No. 2:2020-cv-00464, commenced in the U.S. District Court for the Eastern District of Washington (the "District Court") on December 16, 2020.

[2] *See Waldron v. Perkins Coie LLP, et al.*, Adv. Case No. 2:2020-ap-80031, commenced in this Court.

[3] Dam also sues certain affiliates of Perkins.

MEMORANDUM IN SUPPORT
OF TRUSTEE'S MOTION FOR
ORDER TO SHOW CAUSE – Page 2

had brought two class actions against Giga Watt and others seeking rescission under section 12(a)(1) of the United States securities laws (the "Securities Laws").[4] Earlier in 2018, Giga Watt had settled another rescission action.[5]

The Escrow served as a credit enhancement mechanism in Giga Watt's Initial Coin Offering (the "GW ICO"). Token purchasers would receive either power or their money back. They could trust Giga Watt on this issue because a blue-chip firm would hold the token sale proceeds. The Escrow also hedged against litigation risk by providing immediate access to a refund. The GW ICO was an unregistered securities offering, meaning that any token purchaser could demand rescission on a strict liability basis for one year after the purchase, pursuant to section 12(a)(1) of the United States Securities Act of 1933 (the

---

[4] *See Moss v. Giga Watt, Inc., et al.*, No. 2:18-cv-00100-SMJ, District Court, Complaint, pp. 32-33, ¶ 105, ECF 1 (alleging individual claims against Giga Watt for rescission under the Securities Act); *Balestra v. Giga Watt, Inc., et al.*, No. 2:18-cv-00103-SMJ, District Court.

[5] *See StormsMedia, LLC. v. Giga Watt, Inc., et al.*, Case No. 2:2017-cv-00438, District Court. A fourth case was filed in October 2018, on behalf of a small group of miners who had not bought tokens. They claimed that they were entitled to the same or higher priority to Giga Watt's facilities as token holders. *Sofair v. Giga Watt, Inc.*, et al, No. 2:2017-cv-00438, pending in the District Court. Counsel for Sofair is also representing Dam in the District Court Action.

MEMORANDUM IN SUPPORT OF TRUSTEE'S MOTION FOR ORDER TO SHOW CAUSE – Page 3

"Securities Act"). The Escrow intended to help Giga Watt meet this foreseeable liability. It also signaled good faith. The Escrow would ensure that token holders would receive either power or a refund.

The Escrow breach directly injured (1) powerless token holders, who were entitled to Escrow refunds, and (2) Giga Watt, which relied on the Escrow as a backstop in the event of construction delays and refund requests. The Escrow did not intend to protect power token holders, like Dam, except to the extent that it protected Giga Watt and thus his investment. His alleged injury stems directly from Giga Watt's injury. Thus, Dam's claims against Perkins are derivative of Giga Watt's claims and belong to the estate. The District Court Action violates section 362(a)(3) of the automatic stay.

### III. BACKGROUND FACTS

#### A. Dam's Power Tokens

Dam asserts that he owns approximately one (1) million WTT Tokens entitling him to 50 years of access to one megawatt of Giga Watt's operating capacity. Dam was satisfied with his investment, stating, "Debtor performed by providing hosting access to facilities according to the contract from the start of

operations at the end of 2017 until the Petition Date."[6] In that same complaint he adds, "I was renting [out] all of my WTT Tokens pre-petition . . . ."[7] In his Proof of Claim filed in this case, Dam states that he earned more than $140,729.24 from his power tokens.[8]

B. The Adversary Proceeding

On November 19, 2020, the Trustee commenced an adversary proceeding against GW Sg., Andrey Kuzenny, and Perkins. The adversary proceeding is entitled, *Waldron v. Perkins Coie LLP,* Adv. Proc. No. 20-80031 (the "Adversary Proceeding"). In the Adversary Proceeding, the Trustee alleges that Perkins and GW Sg. breached their fiduciary duties to Giga Watt by prematurely releasing token sale proceeds from Perkins' trust account, the Escrow. Perkins had agreed to hold the token sale proceeds of the GW ICO in trust until Giga Watt built the crypto-mining facilities that would generate revenue for token holders.

---

[6] *See Amended Complaint for Breach of Fiduciary Duty; Professional Negligence; Unjust Enrichment; Breach of Contract* ("Amended Complaint"), ¶ 24, AP ECF No. 10, filed in *Dam v. Waldon, et al.* Adv. Proc. No. 20-80020. The Court dismissed Dam's complaint against Waldron and others. That dismissal is now on appeal to the District Court. District Court Case No. 2:2020-cv-00351.

[7] Amended Complaint, Exh. Q, AP ECF No. 10.

[8] *See* Proof of Claim, Claim No. 52-1, Attachment 2, p. 1.

MEMORANDUM IN SUPPORT
OF TRUSTEE'S MOTION FOR
ORDER TO SHOW CAUSE – Page 5

## C. The Copycat District Court Action

On December 16, 2020, approximately one month after the Trustee commenced the Adversary Proceeding, Dam commenced an action against Perkins Coie LLP and certain affiliates, alleging that the Escrow breach directly injured Dam. *See Dam v. Perkins Coie LLP, et al.*, Case No. 2:2020-cv-00464, commenced in the District Court on December 16, 2020 (the "District Court Action").

## IV. ARGUMENT

### A. The District Court Action Violates the Automatic Stay

An "estate" is created when a bankruptcy petition is filed. *See* 11 U.S.C. § 541(a); *In re FitzSimmons*, 725 F.2d 1208, 1210 (9th Cir. 1984). Property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This broad category includes causes of action. *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001).

The automatic stay enjoins "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362 (a)(3). "The automatic stay is self-executing, effective upon the filing of the bankruptcy petition." *Gruntz v. Cnty. of Los Angeles*, 202 F.3d 1074, 1081 (9th Cir. 2000).

"When a creditor suffers injury that is 'independent of the firm's fate,' his injury is direct and he may pursue his own remedy; otherwise the injury is derivative and the creditor must take his 'place in line' as a creditor in the

bankruptcy action." *Hamid v. Price Waterhouse,* 51 F.3d 1411, 1420 (9th Cir. 1995) (quoting *Mid–State Fertilizer Co. v. Exchange Nat'l Bank of Chicago*, 877 F.2d 1333, 1336–37 (7th Cir. 1989)). *Cf. Est. of Spirtos v. One San Bernardino County Super. Ct. Case Numbered SPR 02211*, 443 F.3d 1172, 1176 (9th Cir. 2006) ("We . . . reaffirm our previous reasoning and that of our sister circuits and hold that the bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on behalf of the estate.").

Strong policy supports the rule. It prevents individual shareholders, or in this case token holders, from picking off assets from the corporation's creditors. *See e.g.*, *In re Phillips*, 185 B.R. 121, 127–28 (Bankr. E.D.N.Y. 1995) ("Courts have recognized that a derivative suit may be preferable to a direct action where an award of an asset directly to an individual could impair the rights of creditors whose claims may be superior to that of the prevailing individual.") (quoting *Glenn v. Hoteltron Systems, Inc.,* 74 N.Y.2d 386, 547 N.Y.S.2d 816, 547 N.E.2d 71, 74 (1989).").

In his previous filings with this Court, Dam attested to the strength of his power tokens. The Debtor had provided him with access to 1 MW of Giga Watt's mining capacity. He had rented out all his tokens. And he had earned more than $140,000 from his tokens. The Escrow breach did not directly damage him. Instead, it led inexorably to Giga Watt's collapse, which damaged Dam. Further, *all* token holders were damaged when Giga Watt shut down. Those whose tokens had power, like Dam, lost their revenue stream. Those whose tokens never had

MEMORANDUM IN SUPPORT
OF TRUSTEE'S MOTION FOR
ORDER TO SHOW CAUSE – Page 7

power, now had no hope of gaining either power or a refund. Dam has not alleged any particular injury to him.

If Giga Watt had met its construction schedule, then presumably, the vast majority of token holders would have chosen power over a refund and the premature Escrow releases would be moot. However, Giga Watt did not meet its construction schedule, triggering the need for the Escrow, whose funds Kuzenny had misappropriated on Perkins' watch and with Perkins' substantial assistance. Giga Watt should have had a cushion of approximately $10.8 million to issue refunds for construction delays. Instead, it stood as a defendant in multiple class action lawsuits, all seeking rescission based on the U.S. securities laws, as anticipated. The Escrow was intended as a backstop for Giga Watt in case it fell behind its constructions schedule and for token holders who did not receive power as a result. It did not serve to protect token holders who received power, like Dam. Dam and the other power token holders are not entitled to both power and a refund.

Therefore, the District Court Action alleges only claims that are derivative of Giga Watt's claim. As such, it violates the automatic stay.

**B.     The Court Has the Statutory Power to Sanction Jun Dam**

The bankruptcy court has the authority to impose civil contempt sanctions under § 105(a) of the Bankruptcy Code. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1189–90 (9th Cir. 2003). To find a party in civil contempt, the court

MEMORANDUM IN SUPPORT
OF TRUSTEE'S MOTION FOR
ORDER TO SHOW CAUSE – Page 8

must find that the offending party knowingly violated a definite and specific court order. *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir. 1993). The automatic stay is a definite and specific court order. *Dyer*, 322 F.3d at 1190-91:

> Because the "metes and bounds of the automatic stay are provided by statute and systematically applied to all cases," *Jove Eng'g v. IRS (In re Jove Eng'g)*, 92 F.3d 1539, 1546 (11th Cir. 1996), there can be no doubt that the automatic stay qualifies as a specific and definite court order.

The moving party has the burden of showing a willful violation of the automatic stay by clear and convincing evidence. *Dyer,* 322 F.3d at 1190–91. "A 'willful violation' does not require a specific intent to violate the automatic stay. *In re Pinkstaff*, 974 F.2d 113, 115 (9th Cir. 1992). Further, whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful." *Goichman v. Bloom (In re Bloom),* 875 F.2d 224, 227 (9th Cir. 1989). Instead, a party is subject to sanction "upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional." *Dyer*, 322 F.3d at 1191.

Jun Dam knew that the automatic stay was in place when he commenced the District Court Action. In the bankruptcy case, he had served as the Chair of the Official Committee of Unsecured Creditors. The Committee was represented by bankruptcy counsel until the bankruptcy case converted to chapter 7 in September 2020. Jun Dam also intentionally filed the District Court Action through retained

MEMORANDUM IN SUPPORT OF TRUSTEE'S MOTION FOR ORDER TO SHOW CAUSE – Page 9

counsel. His name has been on the District Court's docket as the lead plaintiff since December 2020. Thus, Dam's violation was willful.

Once willfulness is established, as it is here, "[t]he burden then shifts to the contemnors to demonstrate why they were unable to comply" with the Court order. *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City and County of San Francisco,* 968 F.2d 850, 856 n. 9 (9th Cir. 1992)).

## V.
## CONCLUSION

WHEREFORE, the Trustee requests entry of an Order requiring Dam to appear and show cause why he should not be held in contempt for violating the automatic stay.

Date: June 18, 2021  POTOMAC LAW GROUP

By:    */s/ Pamela M. Egan*
Pamela M. Egan (WSBA No. 54736)

*Attorneys for Mark D. Waldron, Chapter 7 Trustee*

MEMORANDUM IN SUPPORT OF TRUSTEE'S MOTION FOR ORDER TO SHOW CAUSE – Page 10