Pamela M. Egan, WSBA No. 54736
POTOMAC LAW GROUP PLLC
1905 7th Ave. W.
Seattle, WA 98119
Telephone: (415) 297-0132
Facsimile: (202) 318 7707
Email: pegan@potomaclaw.com

*Attorneys for Mark D. Waldron, Chapter 7 Trustee*

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GIGA WATT, Inc., a Washington corporation,<br><br>Debtor. | Case No. 18-03197 FPC 7<br><br>The Honorable Frederick P. Corbit<br><br>**TRUSTEE'S REPLY TO J. DAM'S OBJECTION TO TRUSTEE'S MOTION FOR ORDER TO SHOW CAUSE WHY JUN DAM SHOULD NOT BE SANCTIONED FOR VIOLATING THE AUTOMATIC STAY AND REQUEST FOR EVIDENTIARY HEARING** |

Mark D. Waldron, the duly appointed chapter 7 trustee in the above-captioned case, hereby replies to Jun Dam's ("Dam") objection (the "Objection") to the *Trustee's Motion for Order to Show Cause Why Jun Dam Should Not Be Sanctioned for Violating the Automatic Stay,* filed on June 18, 2021, Doc 889 (the "Motion"). Unless otherwise set forth herein, capitalized terms have the meaning ascribed to them in the Motion.

TRUSTEE'S REPLY TO JUN DAM'S
OBJECTION TO TRUSTEE'S MOTION
FOR ORDER TO SHOW CAUSE – Page 1

## I. REPLY

The foregoing outlines the facts that the Trustee will establish at an evidentiary hearing:

According to Dam's Proof of Claim, Claim No. 52-1, filed in this case and signed under penalty of perjury, Dam bought 597,935 WTT Tokens on two secondary public exchanges, DeltaFork and EtherFork. He began buying these tokens on February 23, 2018, *after* Giga Watt had been sued for refusing to provide a refund to a powerless token holder and for running an unregistered securities offering.[1] In April 2018, he bought an additional 146,362 WTT Tokens after two more class actions were filed against the Giga Watt Project in which powerless token holders complained that the escrow had been depleted, they did not have power, and that under the Securities Act, they were entitled to rescission.[2] In early August 2018, Neppel Electric filed a lien against the Pangborn Site, which then triggered the eviction proceedings by the Pangborn Site

---

[1] *See StormsMedia LLC v. Giga Watt, et al*, Case No. 2:17-cv-00438-SMJ, ECF No. 1, filed on December 28, 2017, in the U.S. District Court, E.D. Wash. This was two days after Dam began receiving revenue on his ICO-purchased WTT Tokens.

[2] *See Balestra v. Giga Watt*, Case No. 18-00103, ECF No. 1, and *Moss v. Giga Watt*, Case No. 18-00100, ECF No. 1, both pending in the U.S. District Court, E.D. Wash.

TRUSTEE'S REPLY TO JUN DAM'S
OBJECTION TO TRUSTEE'S MOTION
FOR ORDER TO SHOW CAUSE – Page 2

landlord. Undeterred, Dam bought approximately 28,000 more WTT Tokens in August 2018.

When Dam started buying WTT Tokens on the public markets, he knew that Giga Watt was not meeting its construction milestones because he had already purchased 387,725 WTT Tokens in the ICO. On December 26, 2017, Dam's WTT Tokens started making money for Dam.[3] Dam never requested a refund, even though he had an opportunity to do so while waiting for power before December 26, 2017. Instead, he went all in, buying 597,935.00 more WTT Tokens after the ICO on public exchanges. He spent 90% of his assets on this venture.

Rather than manage the consequences of an imprudent investment, Dam has thrashed about this bankruptcy case like a bull in a china shop. His latest lunge for money is the most concerning because he has ignored, flouted even, the automatic stay, and is interfering with the Trustee's proceeding against Perkins Coie. Indeed, even after the Trustee filed a Notice of Automatic Stay in the District Court Action, Dam ignored the automatic stay, claiming baldly, that it does not apply to his new set of claims.

---

[3] This was one day after GW Sg released 7,730,093 WTT Tokens and the same day that Perkins Coie sent Giga Watt $4,000,000 from the Escrow.

The White Paper provided that if construction were delayed by more than three months from the construction schedule set forth in the White Paper, then token holders would be entitled to a refund on request.

> H. <u>Construction delay</u>. Construction timeline specified in this White Paper is based on the reasonable estimates but is not guaranteed. This timeline may change, and the construction may be delayed . . . . If the completion of the capacities is delayed by more than 3 months from the projected date, and, consequently, the relevant WTT tokens are not issued, *the escrow agent may issue a refund at the request of the WTT token purchasers.* The refund will be issued in the original form of payment at the exchange rate on the date of the refund

*Amended Complaint for Breach of Fiduciary Duty; Professional Negligence; Unjust Enrichment; Breach of Contract,* AP Doc 10, Exhibit A, White Paper, pp. 26-27.[4]

Dam has also stated, "The funds for the purchase of WTT Tokens were held in an escrow account by the law firm of Perkins Coie **until** such time as the facilities buildout would support their use." (Emphasis added.)[5] On December 26, 2017, the "facilities buildout" began supporting Dam's WTT Tokens and he did

---

[4] Dam filed this complaint against the estate's professionals on July 23, 2020. It was assigned Adversary Proceeding No. 20-80020.

[5] *Motion [of Jun Dam] for Stay Pending Appeal of Order (i) Approving the Sale of Moses Lake Equipment and Related Relief, (ii) Approving Bid Procedures,* filed in the Bankruptcy Court on October 22, 2020, Doc 769, at 3:12-15.

TRUSTEE'S REPLY TO JUN DAM'S
OBJECTION TO TRUSTEE'S MOTION
FOR ORDER TO SHOW CAUSE – Page 4

not instead demand a refund. Therefore, any of his funds that were in the escrow could be properly released.

Dam has asserted throughout this case that the White Paper governed the terms of his token purchase. In his appeal of the TNT Sale Order, he wrote:

> However in the actual token sale there was no question that the *terms and conditions of the WTT token were stated in the white paper*. Both Appellant as customer and service provider partners Giga Watt Inc., Gigawatt PTE, LTD and Cryptonomos *agreed to and relied on the terms and conditions of the white paper* when Appellant gave consideration for the tokens and partners accepted. Both parties *relied on the terms and conditions of the white paper* when WTT tokens were used for access to hosting facilities from the start of operations in late 2017 until Giga Watt filed bankruptcy in late 2018. *Both Giga Watt Inc and Appellant performed according to the terms and conditions written in the Giga Watt, Inc. [White Paper]….*

Appellant's Reply Brief, pp. 4-5, filed with the Bankruptcy Appellate Panel, Case No. EW- 20-1156, Doc No. 13. Dam says the same thing in his Opposition to the Motion to Dismiss, AP Doc 20, AP Case No. 20-80020, p. 19. *See also* Amended Complaint, Exhibit Q ("I relied on the Giga Watt White Paper as the terms of the agreement with Giga Watt Inc. to buy WTT tokens."). Under the White Paper, as set forth above, Dam was not entitled to both power and a refund. If he did not receive power timely, he could obtain a refund on request. Dam chose power over a refund.

Rather than explain himself, Dam encourages the Court to ignore judicially cognizable facts and blindly accept his bald new theory. However, this Court has core jurisdiction to enter a final decision regarding violations of the automatic stay. *See In re Zumbrun,* 88 B.R. 250, 253 (Bankr. App. 9th Cir. 1988) ("[I]t is

TRUSTEE'S REPLY TO JUN DAM'S OBJECTION TO TRUSTEE'S MOTION FOR ORDER TO SHOW CAUSE – Page 5

recognized that such a proceeding is a core proceeding because the automatic stay is a 'creature peculiar to federal bankruptcy law' and it 'plays a fundamental role in the administration of the Bankruptcy Code.'") (quoting *In re Elegant Concepts, Ltd.,* 67 B.R. 914, 917 (Bankr. E.D.N.Y. 1986) (citation omitted)).

Dam's new theory would work a windfall to himself and his cohort of power token holders at the expense of the powerless token holders. Under his new theory, he and other power token holders are entitled to (i) keep what they earned, in Dam's case approximately $140,000, (ii) assert claims against Giga Watt for expectation damages, in Dam's case approximately $5 million, and (iii) receive their money back. Under his new theory, *all* token holders are entitled to a refund. However, giving all token holders a refund would dilute the refunds of token holders who received neither power nor a refund.

For example, assume $10.8 million was improperly distributed from the Escrow, representing 10.8 MW of power that was not being provided to the holders of 10,800,0000 tokens. Under the White Paper, the powerless token holders were entitled to recover 100% of their investment from the escrow, $10.8 million. But, under Dam's new theory, the powerless token holders would have to share that $10.8 million *pro rata* with Dam and the power token holders. The powerless token holders would receive less than a full refund and no income, while Dam and his fellow power token holders would receive a partial refund and income. This result is inequitable.

The fact that Dam and Perkins Coie are non-debtors is irrelevant. A bankruptcy petition "operates as a stay, applicable to *all* entities, of . . . . any act to

TRUSTEE'S REPLY TO JUN DAM'S
OBJECTION TO TRUSTEE'S MOTION
FOR ORDER TO SHOW CAUSE – Page 6

obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). *Compare* 11 U.S.C. § 362(a)(6) (enjoining "any act to collect, assess, or recover a claim *against the debtor* that arose before the commencement of the case . . . ."). (Emphasis added.)

Further, property of a debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Thus, prepetition causes of action of a Chapter 7 debtor are property of the debtor's estate. *See Parker v. Goodman (In re Parker),* 499 F.3d 616, 624 (6th Cir. 2007) ("As 'legal and equitable interests,' causes of action that belong to the debtor constitute property of the estate under § 541(a)(1)."). The Chapter 7 trustee has the exclusive right to assert those claims. *See Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 853 (6th Cir. 2002) (holding that a Chapter 7 trustee has the exclusive right to assert causes of action belonging to the debtor).

Dam knew about the bankruptcy case and the Trustee's adversary proceeding against Perkins Coie. Rather than follow standard practice and ask the Court for relief from the stay, he chose to act unilaterally. *See e.g., In re Top Roofing, Inc.*, 11-22814, 2013 WL 5636628, at *9 (Bankr. D. Md. Oct. 15, 2013):

> When in doubt as to whether the automatic stay of Section 362 may be in effect, for the good of all, it is always preferable for a creditor to file a motion for relief from the stay in the bankruptcy court before pursuing a cause of action, risking

TRUSTEE'S REPLY TO JUN DAM'S
OBJECTION TO TRUSTEE'S MOTION
FOR ORDER TO SHOW CAUSE – Page 7

unnecessary delay, expense and anguish which these defendants have brought upon themselves.

See also *In re Metromedia Fiber Network, Inc.*, 290 B.R. 487, 490 (Bankr. S.D.N.Y. 2003) (citing *In re Knaus,* 889 F.2d 773, 775 (8th Cir. 1989)) ("The imposition of the automatic stay is automatic and persons or parties acting in violation of the bankruptcy automatic stay due so at their own peril.").

Dam is making up new claims as he goes along in an effort to get paid ahead of other creditors. He should be sanctioned for burdening the estate with the need to litigate this issue.

Finally, the Trustee will not address the Objection's disingenuous *ad hominem* attacks. *Ad hominem* attacks are logical fallacies designed to deflect the Court's attention from the merits. They are a last resort.

## II.

## REQUEST FOR AN EVIDENTIARY HEARING

The Trustee is prepared to establish the foregoing facts in an evidentiary hearing whether before or after entry of an Order to Show Cause. At any hearing on the appropriate sanction, the Trustee will ask the Court to consider all of Dam's conduct throughout this case.

## III.

## CONCLUSION

WHEREFORE, the Trustee requests:

1. An evidentiary hearing regarding the facts and circumstances described herein; and

TRUSTEE'S REPLY TO JUN DAM'S
OBJECTION TO TRUSTEE'S MOTION
FOR ORDER TO SHOW CAUSE – Page 8

2. Entry of an Order requiring Dam to appear and show cause why he should not be held in contempt for violating the automatic stay; and

3. Such other and further relief as the Court deems equitable and just.

Date: July 29, 2021  POTOMAC LAW GROUP

By: */s/ Pamela M. Egan*
Pamela M. Egan (WSBA No. 54736)

*Attorneys for Mark D. Waldron, Chapter 7 Trustee*