**So Ordered.**

**Dated: September 26th, 2021**



Frederick P. Corbit
Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

In re:

GIGA WATT INC.,

Debtor.

Case No. 18-03197-FPC7

**MEMORANDUM OPINION AND ORDER REGARDING STAY AND MOTION FOR ORDER TO SHOW CAUSE**

THIS MATTER came before the Court on the motion of Mark D. Waldron, as the chapter 7 trustee, for an Order to Show Cause why Jun Dam, the nominal plaintiff in a proposed class action lawsuit, should not be sanctioned for violating the Bankruptcy Code's automatic stay. (ECF No. 889) Trustee Waldron argued that Mr. Dam knowingly violated the automatic stay by filing a complaint in the United States District Court, Eastern District of Washington, Case Number 20-cv-00464-SAB ("the Class Complaint"),[1] and the Trustee requests entry of an order

---

[1] The proposed class of plaintiffs in the Class Complaint is referred to as "the Class;" the proposed class action is sometimes referred to as "the District Court action."

MEMORANDUM OPINION - 1

requiring Mr. Dam to appear and show cause why he should not be held in contempt and sanctioned. (ECF No. 890)[2]

The procedural posture of this motion complicates the Court's analysis. While both parties agreed[3] the ultimate issue presently before the Court is whether all or some of the claims asserted in the Class Complaint are property of the estate and therefore are subject to the automatic stay, neither party briefed all facets of the issue. However, in light of the parties' agreement that the issue is properly before the Court on this motion, the Court undertakes the analysis necessary to determine if any or all of the claims alleged in the Class Complaint are subject to the automatic stay. As set forth below, the Court concludes that: (1) the first three causes of action in the Class Complaint are subject to the automatic stay; (2) if the Trustee seeks an injunction, the Class could be enjoined from pursuing the final

---

[2] The Bankruptcy Court has jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1). This matter is core pursuant to 28 U.S.C. §157(b)(2)(A) and (O).

[3] In response to the Court's inquiry during the hearing on August 17, 2021, each party agreed this Court should decide whether the District Court action violates the automatic stay:

> JUDGE [to Ms. Egan, counsel for the Trustee]: As a legal determination, do we need to go to an order to show cause hearing or … can I enter an order saying that there is no stay or there is a stay based on what's before me today?
> MS EGAN: Yes, the court can say that there is a stay, today, based on the publicly recorded docs I'm about to discuss… (ECF No. 915 beginning at 10:51)
> * * *
> JUDGE [to Mr. Blood, counsel for the Class]: Both Ms. Egan on behalf of the trustee and Mr. Blood on behalf of Mr. Dam want me to decide today whether or not the District Court action is subject to the stay…. I could rule, make a final order one way or the other today, if I am not awarding sanctions, is that right Mr. Blood?
> MR. BLOOD: Yes that's our position. (ECF 915 beginning at 14:44)

MEMORANDUM OPINION - 2

two causes of action; and (3) no order to show cause regarding sanctions will be issued.

## BACKGROUND

Giga Watt was in the business of building and running a large-scale cryptocurrency mining operation.[4] Giga Watt's business failed, and that failure resulted in this bankruptcy proceeding and two lawsuits. The first lawsuit was filed November 19, 2020, by the Trustee as an adversary action in this Court against four defendants: (1) Perkins Coie ("Perkins"), a law firm;[5] (2) Lowell Ness, a partner in the Perkins law firm;[6] (3) Giga Watt PTE, Ltd. ("Giga Watt Singapore"); and (4) Andrew Kuzenny, the CEO of Giga Watt Singapore. (Adv. No. 20-80031, ECF No. 6)[7] The second lawsuit was filed December 16, 2020 by Jun Dam, as the nominal plaintiff, in the District Court against defendants Perkins, Lowell Ness, and Perkins' affiliates (U.S. Eastern District of Washington Case No. 20-cv-00464-SAB, ECF No. 1) ("Class Complaint"). Both lawsuits are based on the same core factual allegations that (i) Perkins agreed to hold millions of dollars in escrow until Giga Watt met certain milestones in construction, but Perkins released the money

---

[4] For additional background facts, *see Waldron v. Perkins Coie LLP, et al.,* Adv. Case No. 20-80031, ECF 49.
[5] Perkins has been identified in the two complaints as doing business in Washington as a limited liability partnership and as a corporation.
[6] For brevity, the Court will refer to Perkins and Ness as "Perkins."
[7] The Trustee's Complaint also includes allegations against Giga Watt Singapore that are not germane to this analysis.

MEMORANDUM OPINION - 3

prematurely, and (ii) Perkins' premature release of the escrowed funds caused

significant damages.

## DISCUSSION

### A. The Standard of Review.

In this case, both plaintiffs—the Trustee, on behalf of the Debtor, and Jun

Dam, on behalf of the proposed class[8] of token purchasers—claim they were

directly harmed by the same act of the defendants and claim they are entitled to

recover damages at least equal to the amount of funds improperly released. (ECF

No. 890 at p.4; ECF No. 903 at pp.1-3) The plaintiffs assert different legal theories

to support their respective claims. In determining if the District Court litigation

violates the automatic stay, this Court examines the allegations supporting each

claim in the Class Complaint to determine if the Class has standing.[9]

The Trustee's lawsuit alleges that by releasing money prematurely from an

escrow account, Perkins breached an escrow agreement and thereby breached its

---

[8]The proposed class is broadly defined to include "all persons who hold Tokens that were purchased as of the date this complaint was filed... [and] excludes any persons who received a full refund of their Token investment." (Class Complaint, p.7) The Complaint alleges that "[a]ll Class Members have been subject to the same conduct and their claims arise from the same legal claims." *Id.* Additionally, "Plaintiff's claims are typical of the claims of the other members of the Class in that Plaintiff is a member of the Class that he seeks to represent in both the capacity as a person who pre-purchased Tokens offered in the ITO and as a person who bought Tokens on the Secondary Market." *Id.*, p. 9.

[9] "A key tenet of prudential standing is that a party generally may not assert the rights of another person or entity." *Kyles v. J.K. Guardian Security Services, Inc.*, 222 F.3d 289, 294 (7th Cir. 2000). In other words, a party must assert its own legal interests. *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (plaintiff generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties); *Cusano v. Klein,* 264 F.3d 936, 945 (9th Cir. 2001).

MEMORANDUM OPINION - 4

fiduciary duty to Giga Watt and aided and abetted other parties' breach of fiduciary duties owed to Giga Watt. (Adv. ECF No. 6)  The Trustee alleges that Perkins' wrongful acts caused Giga Watt to break its promise to issue refunds to the token purchasers who did not receive power, and Perkins' wrongful acts pushed Giga Watt into bankruptcy. According to the Trustee, but for Perkins' breach, Giga Watt would have been in a position to issue $10.8 million in refunds to the token purchasers using the escrow account.[10]

### B. The Automatic Bankruptcy Stay.

An "estate" is created when a bankruptcy petition is filed. *See* 11 U.S.C. § 541(a); *In re FitzSimmons*, 725 F.2d 1208, 1210 (9th Cir. 1984).  Property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This broad category includes causes of action. *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001).

The automatic bankruptcy stay enjoins "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362 (a)(3).  "The automatic stay is self-

---

[10] The procedural posture of the current motion does not limit the Court's ability to analyze the parties' respective standing to assert claims. A court may examine prudential standing even when the parties have not raised the issue. *City of Los Angeles v. Cty. of Kern*, 581 F.3d 841, 846 (9th Cir. 2009).

MEMORANDUM OPINION  - 5

executing, effective upon the filing of the bankruptcy petition." *Gruntz v. Cnty. of Los Angeles*, 202 F.3d 1074, 1081 (9th Cir. 2000).

A bankruptcy trustee "stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy." *Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1250 (9th Cir. 2010) (*quoting Smith v. Arthur Andersen LLP,* 421 F.3d 989, 1002 (9th Cir. 2005)) (internal quotation marks omitted); 11 U.S.C. §§ 704(1), 541(a)(1). The trustee may assert only "claims belonging to the debtor corporation and 'has no standing generally to sue third parties on behalf of the estate's creditors.'" *Ahcom,* 623 F.3d at 250 (*quoting Smith*, 421 F.3d at 1002). When the trustee has standing to assert a debtor's claim, that standing is exclusive and divests all creditors of the power to bring the claim. *Ahcom,* 623 F.3d at 250 (*citing Estate of Spirtos v. One San Bernardino Cnty. Superior Court Case*, 443 F.3d 1172, 1176 (9th Cir. 2006)).

Generally, the automatic stay protects only the debtor, property of the debtor or property of the estate. *See* 11 U.S.C. §§ 362(a); 541(a) (defining property of the estate); *accord Boucher v. Shaw*, 572 F.3d 1087, 1092 (9th Cir. 2009) (plaintiff's statutory wage claim against individual directors of employer was not property of the estate). The stay "does not protect non-debtor parties or their property. Thus, section 362(a) does not stay actions against guarantors, sureties, corporate

MEMORANDUM OPINION - 6

affiliates, or other non-debtor parties liable on the debts of the debtor." *In re Chugach Forest Prod., Inc.*, 23 F.3d 241, 246–47 (9th Cir. 1994); *see e.g., In re Lockard,* 884 F.2d 1171, 1178–79 (9th Cir. 1989) (automatic stay was not extended to enjoin claims against a debtor's surety).

### C. Standing to Assert a Claim is Based on the State Law that Gives Rise to the Claim.

Although the question whether an interest claimed by creditors is property of the estate is a federal question to be decided by federal law, bankruptcy courts first look to state law to determine whether and to what extent the debtor has a legal or equitable interest in the property as of the commencement of the case. *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt estate to state law.").

In this motion, neither party urged the Court to apply the law of a certain state or country to determine whether Class claims are property of the estate. Nor is the answer clear by examining the parties' respective complaints. The Trustee's complaint alleges that partners are liable for the partnership debts, and cites both the Washington partnership statute, RCW 25.05.120, and the Singapore Partnership Act, §5. The Class Complaint does not cite law related to the first three counts but relies exclusively on Washington statutes for counts 4 and 5: the

MEMORANDUM OPINION - 7

Washington Consumer Protection Act, RCW 19.86.020 and the Washington

Escrow Agent Registration Act, RCW 18.44.011(8). (Class Complaint ¶¶ 56-80)

In Ninth Circuit bankruptcy cases, federal common law choice of law rules

apply. *In re Vortex Fishing Sys., Inc*., 277 F.3d 1057, 1069 (9th Cir. 2002). Federal

choice of law rules follow the approach of the Restatement (Second) of Conflict of

Laws ("the Restatement"). *Id.* at 1069. Application of the Restatement principles

determine whose law applies to the Class action claims. The first cause of action in

the Class Complaint alleges a combination of a contract breach giving rise to a tort,

the second and third causes of action are based in contract and the fourth and fifth

causes of action are based on violations of Washington statutes.

The Restatement analysis for determining which state law applies to torts

and contract claims utilizes similar factors. *See* RESTATEMENT (SECOND) OF

CONFLICT OF LAWS §§ 145(1); 188(1) (1971). Generally, the rights and obligations

of contracting parties are "determined by the local law of the state which ... has the

most significant relationship to the transaction and the parties ...." *Id.* § 188(1).

Similarly, the rights and liabilities of parties to a tort are determined by "the local

law of the state which, with respect to that issue, has the most significant

relationship to the occurrence and the parties…." *Id.* at § 145.

In determining "the most significant relationship" test, the court considers

factors such as the place where the injury occurred, the place where the conduct

MEMORANDUM OPINION - 8

causing the injury occurred, the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship, if any, between the parties is centered. *Id.* at § 6. "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.*

In this case, several facts have yet to be discovered (i.e., where the alleged escrow agreement negotiations occurred, the terms of the alleged agreement, the expectations of the parties to that agreement), but the facts that are known favor applying Washington law.[11] For example, Perkins and the Debtor both conducted business in Washington. Significantly, the inexpensive electricity, the crucial piece of the "product" offered by the Giga Watt Project, was delivered within Washington. Additionally, the physical buildings and the mining machines were physically located in Washington. Finally, some of the Debtor's employees worked in Washington.

Based on these facts, all the parties were on notice that the State of Washington had significant contacts with the conduct and transactions in this case. Moreover, none of the parties have asserted that this Court, in deciding whether any or all of the claims belong to the estate, should apply any law other than Washington law, and the parties agreed that the Court may decide this matter on

---

[11] See ECF No. 893 (Perkins' brief urging this Court to refrain from making findings of fact because discovery has not occurred).

the record presented. Accordingly, applying the factors in the Restatement of Conflict of Laws, the Court finds that Washington State has the most significant relationship with the transactions, and the parties. As a result, the Court will apply Washington law to determine whether any or all of the Class claims belong to the estate.

### D. Class Complaint Claims Counts One, Two and Three: the Breach of Contract and Tort Claims are Derivative and Thus Property of the Estate.

Mr. Dam[12] argues that the Class claims "are not by or against the Debtor and do not seek any property of the Estate or in which the Estate has an interest." (ECF No. 903, p. 1) Mr. Dam contends that "[the class action] seeks direct recovery of particularized damages from an independently liable, non-debtor escrow agent" based on "particularized injury to the Class and not general harm to the Debtor." (*Id.* at pp. 1, 8)

Before determining whether a creditor or bankruptcy trustee may properly assert a claim, the court first examines if state law dictates whether the claim belongs to one of the parties. *See e.g., Whirlpool Corp v. CIT Group/Business Credit Inc.,* 258 F. Supp.2d 1140 (D. Haw. 2003) (discussing cases where state law affected creditor's standing to bring claim); *In re ECS Refining Inc.,* 625 B.R. 425

---

[12] The Court occasionally refers to the Class Action nominal plaintiff Jun Dam, instead of the Class, because no Class has yet been certified, and thus the arguments in the present motion are attributed to Mr. Dam.

(Bankr. E.D. Cal. 2020) (applying Delaware law to find trustee had standing to sue debtor's directors for breach of fiduciary duty); *In re Speir,* 190 B. R. 657, 661 (Bankr. N.D. Ala.1995) (under Alabama law, objecting creditor to fraudulent transfer was lien creditor with rights superior to trustee). If state law does not dictate whether the claim belongs to one party, the court analyzes whether the claim is a direct, particularized claim or a claim that is derivative from the estate.

In determining whether a claim belongs to a party or to the estate, the Court examines each claim separately. *See In re Real Mktg. Servs., LLC,* 309 B.R. 783, 788 (S.D. Cal. 2004*); Matter of Educators Grp. Health Tr*., 25 F.3d 1281, 1286 (5th Cir. 1994). The Court's analysis looks solely to the allegations in the challenged complaint, assumes the truth of the allegations, abstains from determining the legal sufficiency of the claims, and will "not credit conclusory allegations that are belied by more specific allegations."[13] *In re Granite Partners, L.P.,* 194 B.R. 318, 325-26 (Bankr. S.D.N.Y. 1996) (citations omitted). Also, "[t]he court must look to the nature of the wrongs alleged in the complaint without regard to the plaintiff's designation" and at "the nature of the injury for which relief is sought." *Id.* at 325 (citations omitted).[14]

---

[13] This comports with the analysis employed when prudential or statutory standing is challenged under the facts of a particular case: the issue to be decided is whether a claim has been stated upon which relief can be granted. *Harold H. Huggins Realty, Inc. v. FNC, Inc.,* 634 F.3d 787, 795 n.2 (5th Cir. 2011).
[14] The Trustee argues that Perkins' alleged breach of the escrow did not directly damage the nominal plaintiff Jun Dam because he, unlike other token purchasers, received power from Giga

The Class Complaint alleges five claims that can be separated into two general categories: breach of contract and tort claims (Counts I-II-III) and violations of Washington statutes (Counts IV-V). This opinion will address the two general categories separately.

In the first three claims of the Class Complaint, Mr. Dam alleges that the token purchasers suffered damages when: (1) Perkins breached a contract with the token purchasers and thereby breached a fiduciary duty to the token purchasers (Count I); (2) Perkins breached an express or implied agreement with the token purchasers (Count II); and (3) the token purchasers were third party beneficiaries to an agreement between Perkins and the Giga Watt corporations, and Perkins' breach of the agreement injured the token purchasers (Count III).

In the first cause of action in the Class Complaint, the plaintiffs allege Perkins contracted with the Class, and under the contract, Perkins owed the Class a fiduciary duty. (Class Complaint ¶¶ 41-43) In the second cause of action in the Class Complaint, the plaintiffs allege Perkins breached an express or implied contract that was created when each Class member purchased a token. (Class Complaint ¶¶47-49)

---

Watt for all his purchased tokens. As a result, the Trustee argues, Mr. Dam lacks standing to pursue these claims because he was never entitled to a refund from the escrow account. At this stage, the Court will not accept the Trustee's invitation to make a factual finding about whether the nominal plaintiff Jun Dam received power for all his tokens. Instead, in a proceeding to determine whether claims alleged in a third party lawsuit violate the automatic stay, the Court should not decide facts, but instead limits the inquiry to an examination of the allegations in the challenged complaint to determine if those claims are property of the estate.

MEMORANDUM OPINION - 12

In determining the existence of a valid contract, Washington follows the "objective manifestation test." *Keystone Land & Development Co. v. Xerox Corp.*, 152 Wash.2d 171, 94 P.3d 945, 949 (2004). The Class are purchasers, and while it has not been determined that they are shareholders, it helpful to examine Washington shareholder law to determine the nature of the Class claims. Under Washington law, a shareholder has no standing to bring a claim for wrongs done to the corporation, unless a special duty—such as a contractual duty—exists between the wrongdoer and the shareholder, or if the shareholder suffered separate and distinct from that suffered by other shareholders. *Sabey v. Howard Johnson & Co.,* 101 Wash. App. 575, 584–85, 5 P.3d 730, 735 (2000). Also, under Washington law an escrow holder is an agent who occupies a fiduciary relationship to all parties to the escrow. *Nat'l Bank of Washington v. Equity Invs.*, 81 Wash. 2d 886, 910, 506 P.2d 20, 35 (1973). Without deciding the legal sufficiency of the claims, Washington law might allow the token purchasers to pursue the claims if they can establish both that they were parties to a contract with Perkins, and that they were parties to an escrow with Perkins. But because the general nature of the allegations supporting these claims is derivative, as analyzed below, the Class has no standing to pursue the first two claims.

In the third cause of action in the Class Complaint, Mr. Dam alleges that Perkins breached an agreement with Giga Watt and the token purchasers were third

MEMORANDUM OPINION  - 13

party beneficiaries to the agreement. (Class Complaint ¶¶ 51-55) Washington law recognizes the cause of action of third party beneficiary agreements, under certain circumstances. *Lonsdale v. Chesterfield*, 99 Wash.2d 353, 361, 662 P.2d 385 (1983). Count three contains conclusory allegations that an agreement between Perkins and Giga Watt was intended to benefit the token purchasers, and while Washington law allows for third party beneficiary breach of contract claims, as analyzed below, the general nature of the allegations supporting this claim is derivative, and thus the Class lacks standing to pursue this claim.

Generally, an action is derivative, and not independent of the corporation's rights if "the gravamen of the complaint is injury to the corporation . . . or it seeks to recover assets for the corporation or to prevent the dissipation of its assets." *Real Mktg. Servs.,* 309 B.R. at 788, (*quoting PacLink Communications Int'l, Inc. v. Super. Ct.,* 90 Cal.App.4th 958, 964, 109 Cal.Rptr.2d 436 (2001)). "If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action." *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989); *see In re Adbox, Inc.*, 234 F. App'x 420, 421–22 (9th Cir. 2007) (creditors who held security interest in debtor's stock had no standing to bring claim because the fraudulent transfer of assets harmed all creditors). Derivative claims in the

MEMORANDUM OPINION - 14

bankruptcy context are also described as claims that arise "from harm done to the estate and that seek relief against third parties that pushed the debtor into bankruptcy." *In re Bernard L. Madoff (Inv. Sec. LLC),* 740 F.3d 81, 89 (2nd Cir. 2014) (*quoting Picard v. JPMorgan Chase & Co*, 721 F.3d 54, 70 (2d Cir. 2013)); *see In re Mark One Corp*., 619 B.R. 423, 431–32 (Bankr. E.D. Cal. 2020).

A derivative injury is based upon "a secondary effect" from harm done to the debtor, and an injury is particularized only when the injury can be "directly traced to" a third party's conduct. *Inv. Sec.*, 740 F.3d at 89. Non-derivative claims are also described as personal to the individual creditor and of no interest to the others. *In re Tronox Inc.*, 855 F.3d 84, 100 (2d Cir. 2017).

In distinguishing derivative claims from direct claims, labels are not conclusive since plaintiffs often try to plead around a bankruptcy. *See Inv. Sec.,* 740 F.3d at 91-92. In determining who may bring a claim, courts will look behind labels and "inquire into the factual origins of the injury and, more importantly, into the nature of the legal claims asserted." *Id*. at 89 (*citing Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*, 517 F.3d 52, 67 (2d Cir. 2008), *rev'd on other grounds sub nom Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 129 S. Ct. 2195, 174 L. Ed. 2d 99 (2009)). "It is entirely possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events and broad course of conduct." *In re*

MEMORANDUM OPINION  - 15

*Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 345, 351 (S.D.N.Y. 2015) (quotations omitted). Although the same factual allegations may give rise to both derivative and independent claims, claimants may not state independent claims merely by asserting new legal claims or seeking different forms of relief than the trustee. *Id; see also Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.,* 187 F.3d 439, 441 (4th Cir. 1999) (sureties lacked standing to pursue claims that were similar in nature and purpose to claims that could be pursued by the trustee). "To allow selected creditors to artfully plead their way out of bankruptcy court would unravel the bankruptcy process and undermine and ordered distribution of the bankruptcy estate." *Ruppert*, 187 F.3d at 442.

In *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1419 (9th Cir. 1995), a proposed class of plaintiff depositors alleged several firms and individuals looted the bankrupt bank for personal gain and caused it to collapse. In analyzing whether the depositors had standing to bring the claims, the Ninth Circuit asked, "can a depositor in a bank sue a bank robber?" *Id.* The court held the case was analogous to a shareholder suit, and found that if the class action was allowed, "it would enable [the depositors] to jump ahead of other creditors in priority and obtain greater shares of the failed bank's assets and the assets of any wrongdoers who may owe money to the failed bank on account of their wrongs." *Id.*

MEMORANDUM OPINION - 16

The factual origins of the Class Complaint are based upon a token purchase made by scores of people from around the world. The token purchasers bought the right to use electricity in Washington State, for a certain rate. As alleged, the sellers advertised the reputation of Perkins to assure purchasers that the project would be completed or the purchase money would be refunded. The Class alleges that Perkins did not distribute the purchase money on the proper schedule and as a result, breached a duty to the token purchasers.

The Class seeks to bring claims based on legal theories that, at first blush, appear to assert independent, particularized claims. However, like the plaintiffs in *Maddoff,* the Class has "merely repackaged the same facts underlying the Trustee's claims without any new particularized injuries" that are traceable to Perkins. *See Madoff,* 531 B.R. at 353-54. The Class claims rest on the allegation that Perkins did not follow the escrow agreement and therefore the token purchasers were harmed. Similarly, the Trustee's lawsuit alleges that if Perkins had properly followed the escrow agreement, the token purchasers who were entitled to a refund would have received a full refund. The allegations in both complaints support the Trustee's theory: Perkins held the purchase money in escrow primarily to disburse to Giga Watt for periodic construction and operation costs. Perkins' ability to issue refunds was secondary to the primary purpose of funding construction and operations.

MEMORANDUM OPINION - 17

Also, in determining if a claim is derivative, the court considers if a judgment in another court against a defendant by either the debtor or another party asserting the debtor's claims precluded the other from recovery, then the other party's claims are not independent and instead belong exclusively to the debtor. *Real Mktg. Servs.,* 309 B.R. at 788. This would result in this case: if the Class creditors are allowed to proceed with the Class action and they recovered damages because Perkins improperly released funds, that recovery could decrease or eliminate the amount the Trustee could recover for the estate. As a result, the Class claims related to breach of contract and fiduciary duties against Perkins are not direct, particularized claims. Instead, the Debtor, not the Class, was directly harmed by the alleged malfeasance because the escrow's primary purpose— funding construction and operations—was frustrated and the inescapable result was Giga Watt's bankruptcy. In other words, the Class claims are merely a reflection of the loss suffered by the Debtor. If the Trustee prevails, Mr. Dam, and the proposed Class members who filed proofs of claims in the bankruptcy, will likely receive a distribution from the bankruptcy estate. The estate properly owns these claims, and thus, the Class lacks standing to pursue them.

Moreover, the prosecution of the Class action lawsuit claims one, two and three would interfere with the Trustee's ability to pursue claims for the benefit of all creditors and to ensure that all similarly-situated creditors are treated

MEMORANDUM OPINION - 18

fairly. *See In re Conejo Enterprises, Inc.,* 96 F.3d 346, 351–352 (9th Cir. 1996)

("Bankruptcy is designed to provide an orderly liquidation procedure under which

all creditors are treated equally."); *In re MortgageAmerica Corp.,* 714 F.2d 1266,

1275–1276 (5th Cir. 1983) (concluding that actions "by individual creditors under

state fraudulent conveyance laws would interfere with [the] estate and with the

equitable distribution scheme dependent on it and are therefore appropriately

stayed.... Any other result would produce near anarchy...."). The members of the

proposed Class pursue essentially the same remedy as the Trustee: $10.8 million in

purchase money that was supposed to be held in escrow. Many and possibly all of

the proposed class members have filed proof of claims in this bankruptcy for

refunds of purchase money.[15] The first, second and third causes of action in the

Class Complaint are not direct and particularized, but instead are merely reflective

of the estate's claims. As a result, the Class lacks standing to pursue the claims.

### E. Class Complaint Counts IV and V: The Consumer Protection Act Claim and the Washington Escrow Agent Registration Act Agent Claims belong to the Class Members.

The fourth and fifth causes of action in the class action lawsuit are based on

alleged violations of Washington statutes that are designed to protect consumers.

Claim four alleges a violation of the Consumer Protection Act ("the CPA"), RCW

19.86 et seq, and claim five alleges a violation of the Washington Escrow Agent

---

[15]282 Giga Watt Project token purchasers filed proofs of claim totaling over $79 million.

MEMORANDUM OPINION - 19

Registration Act ("WEARA"), RCW 18.44 et seq. The Class alleges the same facts under both these claims: Perkins engaged in unfair or deceptive acts or practices by allowing the Giga Watt entities to represent that Perkins would hold the token purchase money in escrow and distribute the money according to the terms in the White Paper[16] and the Giga Watt project website. (Class Complaint ¶¶ 59-60) The Complaint alleges the conduct had the capacity to deceive a substantial portion of the public, the acts occurred in the conduct of trade or commerce, the acts adversely affected the public interest, and the individual plaintiffs were damaged as a result of the conduct. (Class Complaint ¶¶ 64-72)

In the fourth cause of action in the Class Complaint, plaintiffs allege that Perkins violated the CPA, which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. The five distinct elements of a private CPA claim are: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) a public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). In order to prove a violation of the CPA, the

---

[16] The "White Paper" is a document titled "Giga Watt Token Launch White Paper," that was intended to "present the Giga Watt project to potential token holders in connection with the Proposed Token Launch." (*See* Adv. 20-80031-FPC, ECF No. 6-1 at 3.) The White Paper included a "legal disclaimer" that stated the information contained therein did "not imply any elements of a contractual relationship," and its "sole purpose is to provide relevant and reasonable information to potential token holders in order for them to determine whether to undertake a thorough analysis of the company with the intent of acquiring WTT Tokens." *Id.*

MEMORANDUM OPINION - 20

Class will have to show direct, particularized harm that was causally connected to Perkins' acts. As such, the Class members, and not the Trustee, have standing to pursue a CPA claim. *Accord In re The 1031 Tax Grp*., LLC, 397 B.R. 670, 680 (Bankr. S.D.N.Y. 2008) (investor claims based on violation of the Colorado Consumer Protection Act were deemed direct and did not belong to the estate).

In the fifth cause of action in the Class Complaint, plaintiffs allege that Perkins violated WEARA, which prohibits employing a scheme to defraud or engaging in any unfair or deceptive practice by obtaining property by fraud, and knowingly making any false, deceptive, or misleading statements in the conduct of the business of escrow. RCW § 18.44.301(l)-(4). The Class Complaint incorporates the factual allegations for the CPA claim and contends that the conduct alleged in the CPA claim also violated WEARA. (Class Complaint ¶¶ 75-80) Similar to the CPA claim, to establish a claim under WEARA, the Class will have to prove Perkins employed a scheme to defraud or that Perkins' unfair and deceptive practices damaged the individual members of the Class, and thus this is a particularized, direct claim that belongs to the Class members.

**F. The Necessity for an Injunction.**

Mr. Dam asserts that "even if a stay can be extended to non-debtors, it 'does not occur automatically' and requires a hearing and an injunction." (ECF No. 903 at 11) Mr. Dam is not entirely correct. "The bankruptcy automatic stay is

MEMORANDUM OPINION - 21

differentiated from a bankruptcy court-ordered injunction, which issues under 11 U.S.C. § 105." *Canter,* 299 F.3d at 1155 n.1.

      *1. The Class Complaint Counts I, II and III.*

      "The automatic stay sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case." *Gruntz,* 202 F.3d at 1082. The stay is "designed to effect an immediate freeze of the status quo by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate." *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993). "The automatic stay plays a vital and fundamental role in bankruptcy" and "ensures that all claims against the debtor will be brought in a single forum, the bankruptcy court." *Id. (citing Pettibone Corp. v. Easley*, 935 F.2d 120, 123 (7th Cir. 1991)).

      The Ninth Circuit adheres to the general rule that "actions taken in violation of the automatic stay are void and without effect."[17] *Gruntz*, 202 F.3d at 1082; *see Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992).

---

[17] Courts are split on this issue, with a minority asserting that actions in violation of the automatic stay should be treated as voidable only, not void. *See, In re Lampkin*, 116 B.R. 450, 451 (Bankr.D.Md.1990) (collecting cases and following the "majority" rule that such actions are void).

Further, "[j]udicial proceedings in violation of th[e] automatic stay are void." *Phoenix Bond & Indemnity Co. v. Shamblin (In re Shamblin),* 890 F.2d 123, 125 (9th Cir. 1989). "The Bankruptcy Code does not burden the debtor with a duty to take additional steps to secure the benefit of the automatic stay." *Schwartz,* 954 at 572. The Supreme Court has explained that the automatic stay "deprived [the state court] of all jurisdiction or power to proceed." *Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940) (the automatic stay rendered the confirmation of sale, execution of the sheriff's deed, and the ejection of appellants from their property without authority of law).

While the automatic stay specifically enjoins eight acts, one subsection is at issue here: 11 U.S.C. § 362(a)(3), which provides that the stay applies to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." "A principal purpose of this provision is to preserve property for use in the reorganization of the debtor and to prevent the dismemberment of the estate." *Hillis Motors,* 997 F.2d at 586. An individual or entity that seeks to exercise control over property of the estate, "must obtain advance relief from the automatic stay from the bankruptcy court." *Id. (citing Carroll v. Tri-Growth Centre City, Ltd. (In re Carroll)*, 903 F.2d 1266, 1270–71 (9th Cir. 1990)).

In this case, the Court determines that the first three causes of action alleged in the Class Complaint are claims that the Class has no standing to assert and are property of the estate. Because these causes of action are estate property, the automatic stay applies to them and thus Mr. Dam and the proposed class must not pursue Class Complaint Counts I, II and III.

### 2. *The Class Complaint Counts IV and V.*

The fourth and fifth claims in the Class Complaint are analyzed differently. Unlike the contract and tort claims, the CPA and WEARA claims are direct, and particularized to the Class and thus are not property of the estate.

Although the scope of the automatic stay is broad, it does not stay all proceedings. *In re Palmdale Hills Prop., LLC*, 423 B.R. 655, 663–64 (B.A.P. 9th Cir. 2009), aff'd, 654 F.3d 868 (9th Cir. 2011). The jurisdiction of the bankruptcy court to stay actions in other courts extends beyond claims by and against the debtor to include "suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate," *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161–62 (7th Cir. 1994), or "the allocation of property among creditors." *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir. 1992); *see In re Heath*, 115 F.3d 521, 524 (7th Cir. 1997). To protect this jurisdiction, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," 11 U.S.C. § 105(a), including a stay. *Fisher*

18-03197-FPC7    Doc 921    Filed 09/27/21    Entered 09/27/21 08:49:22    Pg 24 of 29

*v. Apostolou,* 155 F.3d 876, 882 (7th Cir. 1998); *see also* 3 Collier on Bankruptcy ¶ 362.03 (16th ed. 2021) ("[A] court may enjoin a creditor's prosecution of an action against a third party where the action is sufficiently related to the bankruptcy estate's claims against the same third party to allow the trustee to proceed first.").

In this case, while claims four and five are particularized to the proposed Class, and the Class members appear to have standing to bring the claims under Washington law, these claims are closely related to the bankruptcy proceeding. Both the Trustee and the Class seek damages from the same defendants, for the same alleged wrongs, and from the same pool of funds. The pursuit of these two claims by the Class during the pendency of the bankruptcy could threaten the orderly liquidation procedure of bankruptcy where all creditors are treated equally. *Accord Fisher,* 155 F.3d at 882 (investors' claims were not property of the estate but should be stayed because they sought the same limited pool of money, in the possession of the same defendants, as a result of the same acts performed by the same individuals, as part of the same conspiracy); *In re Caesars Entertainment Operating Co. Inc.,* 808 F.3d 1186, 1188 (7th Cir. 2015) (third-party litigation claims were closely related to and sometimes overlapping with those challenged in by the bankruptcy trustee). If the District Court class action lawsuit proceeded more quickly than the Trustee's lawsuit, the Class plaintiffs—many of whom have

filed claims in the bankruptcy case—could "jump the line" of the bankruptcy creditors.

Generally, a bankruptcy court has broad equitable powers and has the power to prevent injustice or unfairness in the administration of the bankruptcy estate. *In re Folks*, 211 B.R. 378, 384 (B.A.P. 9th Cir. 1997). Under 11 U.S.C. § 105(a), a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." "While 11 U.S.C. § 105(a) does grant the bankruptcy court broad powers to issue any order 'necessary or appropriate to carry out the provisions of this title,' it is an extraordinary exercise of discretion to use that power to stay a third party action not involving the debtor." *In re G.S.F. Corp*., 938 F.2d 1467, 1474 (1st Cir. 1991), *overruled on other grounds by Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *see also In re Southmark Corp*., 49 F.3d 1111, 1116 (5th Cir. 1995) (powers under § 105(a) are not unlimited; the statute does not permit bankruptcy court to "act as roving commission[s] to do equity").

Stated differently, "section 105(a) gives the bankruptcy courts the power to stay actions that are not subject to the 11 U.S.C. § 362(a) automatic stay but threaten the integrity of a bankrupt's estate." *In re Excel Innovations, Inc*., 502 F.3d 1086, 1093 (9th Cir. 2007), *quoting Canter v. Canter (In re Canter),* 299 F.3d 1150, 1155 (9th Cir. 2002); *see Ingersoll–Rand Fin. Corp. v. Miller Mining Co.*,

MEMORANDUM OPINION - 26

817 F.2d 1424, 1427 (9th Cir. 1987) ("In the absence of special circumstances, stays pursuant to section 362(a) are limited to debtors and do not include non-bankrupt co-defendants."). The automatic stay may protect nondebtors only under "unusual circumstances" where the interests of the debtor and the nondebtor are inextricably interwoven. *See A.H. Robins v. Piccinin*, 788 F .2d 994, 999 (4th Cir. 1986).

In the Ninth Circuit, "although referred to as extensions of the automatic stay, this 'extension' is in fact an injunction issued by the bankruptcy court after a hearing where it is established that unusual circumstances are needed to protect the administration of the bankruptcy estate." *Boucher,* 572 F.3d at 1093 n.3 (*citing Chugach Forest Prods*, 23 F.3d at 247); *see also In re Spaulding Composites Co., Inc*., 207 B.R. 899 (9th Cir. B.A.P. 1997); *see also In re Ripon Self Storage, LLC,* 2011 WL 3300087, *6 (9th Cir. B.A.P. 2011).

As stated at the outset, the procedural posture of this case limits the Court's ability to enforce a full remedy—no adversary was filed and no injunction has been requested. The Court's analysis concludes that the Class lacks standing to pursue the first three causes of action in the Class Complaint, because those claims belong to the estate and the automatic stay applies. Additionally, the Court concludes that the Class has standing to pursue the fourth and fifth causes of action, but those actions could be enjoined during the pendency of the bankruptcy proceeding. In

order to enjoin those claims, the Trustee must take additional action and file an adversary proceeding requesting the bankruptcy court to act under section 105(a).[18]

### G. The Court will not Issue a Show Cause Order.

The Trustee requested the Court issue a show cause order and hold an evidentiary hearing to determine if Jun Dam should be sanctioned for violating the stay by filing the District Court action. A trustee may be entitled to recovery for violation of the automatic stay "under section 105(a) as a sanction for ordinary civil contempt." *In re Dyer,* 322 F.3d 1178, 1189 (9th Cir. 2003). A trustee has the burden of showing by clear and convincing evidence that the stay was violated. *See id.* The court examines the "willfulness" of the violation which does not require a specific intent to violate the automatic stay, but instead requires a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. *Id. (citing Havelock v. Taxel (In re Pace),* 67 F.3d 187, 191 (9th Cir. 1995) (quotations omitted).

In this case, the issues raised in connection with the business failure of Giga Watt are complicated and many of the issues have been resolved, or will be resolved, in a court. As a result, it does not appear filing the Class Complaint

---

[18]*See Excel Innovations,* 502 F.3d at 1096 (automatic stay extended to third party actions are injunctions issued by the bankruptcy court); Federal Rule of Bankruptcy Procedure 7001(7) (requires that injunctive relief be obtained through an adversary proceeding); *Lyons v. Lyons (In re Lyons*), 995 F.2d 923, 924 (9th Cir. 1993) (when a Rule 7001 category was at issue, the movant "may obtain the authority he seeks only through an adversary proceeding").

amounts to an intentional violation of the automatic stay. It was not unreasonable for Mr. Dam and his attorneys to take the actions that prompted the Trustee to file the motion now before the Bankruptcy Court. Moreover, the actions of Mr. Dam and his attorneys did not significantly damage the Giga Watt bankruptcy estate because those actions have not yet resulted in a trial or the entry of a judgment. For the reasons stated in this Opinion, the Court declines to issue a show cause order.

## ORDER

THEREFORE, based on the foregoing it is ordered that:

1. In the case pending in Eastern District of Washington, Case Number 2:2020-cv-00464, pursuit of Class Complaint Counts I, II and III is stayed;

2. In the case pending in Eastern District of Washington, Case Number 2:2020-cv-00464, the Class Complaint Counts IV and V, are not stayed, but the Trustee may take additional action in this Court, and in conformity with this opinion, to obtain an injunction; and

3. The Motion for an Order to Show Cause (ECF No. 889) is **DENIED.**

///End of Order///