Pamela M. Egan, WSBA No. 54736
POTOMAC LAW GROUP PLLC
1905 7th Ave. W.
Seattle, WA 98119
Telephone: (415) 297-0132
Email: pegan@potomaclaw.com
  *Attorneys for Mark D. Waldron, Chapter 7 Trustee*

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GIGA WATT, Inc., a Washington corporation,<br><br>　　　　　　Debtor.<br><br>MARK D. WALDRON, as Chapter 7 Trustee,<br><br>　　　　　　Plaintiff,<br>vs.<br><br>JUN DAM, a California resident, on behalf of himself and a purported class of similarly situated parties,<br><br>　　　　　　Defendant. | Case No. 18-03197<br><br>The Honorable Frederick P. Corbit<br><br>Chapter 7<br><br>Adv. Case No. 21-_____<br><br>**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF**<br><br>REDACTED |

Mark D. Waldron, in his capacity as the chapter 7 trustee ("Trustee") in the above-captioned bankruptcy case and as plaintiff in the above-captioned adversary proceeding hereby alleges, upon his own knowledge or upon information and belief, as follows:

VERIFIED COMPLAINT – Page 1

**PRELIMINARY STATEMENT**

1. This is an adversary proceeding seeking injunctive relief to enjoin the prosecution of a proposed class action lawsuit ("Class Action") brought against certain non-debtor defendants by Jun Dam, on behalf of similarly-situated WTT token holders. (Dam and the proposed class members are referred to hereinafter as "the Class").

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334. This adversary proceeding is commenced pursuant to Bankruptcy Rule 7001(7).

3. Plaintiff consents to entry of a final order or judgment by the Bankruptcy Court in this matter.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

**PARTIES NAMED IN THIS COMPLAINT**

5. Plaintiff is the Trustee in the bankruptcy case.

6. Jun Dam is a U.S. citizen and individual who resides in the State of California, conducting business in San Francisco, California, at the address, 237 Kearny Street, #9096, San Francisco, CA 94108.

7. Mr. Dam filed Proof of Claim No. 52 in the Bankruptcy Case.

**PARTIES TO THE GW ICO**

8. Perkins Coie LLP and Lowell Ness (collectively, "Perkins") were counsel to Cryptonomos Pte. Ltd. ("Cryptonomos"), a Singapore corporation, and

VERIFIED COMPLAINT – Page 2

to Giga Watt Pte. Ltd. ("Giga Watt Singapore"), a Singapore corporation, with respect to the Giga Watt Initial Coin Offering, (the "GW ICO"), which ran from on or about May 19, 2017 to on or about July 31, 2017. Based upon statements by Katrina Arden, David Carlson and Andrey Kuzenny, Perkins also represented Giga Watt with respect to the GW ICO. Other Perkins partners, including J. Dax Hansen, may have also advised.

9. Cryptonomos structured and marketed the GW ICO, with legal advice from Ms. Arden and Perkins.

10. Giga Watt Singapore issued the WTT tokens (also referred to herein as "WTT") and sold miners to the WTT holders.

11. Giga Watt built and operated the cryptomining facilities. The GW ICO marketed among other things, Giga Watt's experience, low power rates, and technological advantages, such as "proprietary" Giga Pods.

## GW ICO CASH FLOWS

12. Cryptonomos collected the WTT token sales proceeds, both cryptocurrency and fiat currency.

13. Cryptonomos transferred cryptocurrency WTT sale proceeds to Circle Internet Finance ("Circle"). Circle converted the cryptocurrency WTT sale proceeds to fiat currency and transferred the converted funds to Perkins. Cryptonomos transferred fiat WTT sale proceeds directly to Perkins.

14. WTT purchasers also deposited cash directly into Perkins' escrow account. Some WTT purchasers also paid Giga Watt Singapore instead of

VERIFIED COMPLAINT – Page 3

Cryptonomos. Giga Watt Singapore transferred all or some of these funds to Perkins.

15. Giga Watt Singapore collected all miner sale proceeds.

16. Giga Watt Singapore commingled the WTT sales proceeds that it received from Perkins, which it treated as earned, with miner sales proceeds and other funds before sending any funds to Giga Watt.

17. Revenues generated by Giga Watt's operations went directly to Giga Watt Singapore which then made distributions of net income (however calculated) to WTT holders.

18. The foregoing is a chart of the GW ICO cash flows:



VERIFIED COMPLAINT – Page 4

## REQUESTED RELIEF AND THE BASES THEREFOR

19. The Trustee has commenced this adversary proceeding in accordance with Bankruptcy Rule 7001 and Federal Rule of Civil Procedure 65 applicable hereto pursuant to Bankruptcy Rule 7065.

20. The statutory basis for the relief requested herein is section 105(a) of the Bankruptcy Code. 11 U.S.C. § 105.

21. This adversary proceedings seeks to enjoin the Class Action as it threatens the integrity of this bankruptcy case and its estate.

## BACKGROUND

22. On November 19, 2020, the Trustee commenced an adversary proceeding (the "Bankruptcy Proceeding") in this Court against four defendants: Perkins Coie LLP and Lowell Ness, a partner in the Perkins law firm (collectively, "Perkins"), Giga Watt Singapore and Andrey Kuzenny, Adv. No. 20-80031, ECF No. 6.

23. On December 16, 2020, a second lawsuit was filed by Jun Dam, as the nominal plaintiff, in the District Court against defendants Perkins and Perkins' affiliates, United States District Court, Eastern District of Washington, Case Number 20-cv-00464-SAB ("the Class Complaint").

24. Both lawsuits are based on the same core factual allegations that (i) Perkins agreed to hold millions of dollars in escrow until Giga Watt met certain construction milestones, but Perkins released the money prematurely, and (ii) Perkins' premature release of the escrowed funds caused significant damages.

VERIFIED COMPLAINT – Page 5

25. On September 27, 2021, this Court held that the first three claims in the Class Complaint were barred by the automatic stay. The Court further held that the last two claims in the Class Complaint were not barred by the automatic stay. (Memorandum Opinion at 21, ECF No. 921) However, they could be enjoined pursuant to 11 U.S.C. § 105. By this Complaint, the Trustee seeks the foregoing injunction.

26. Both cases allege that the Giga Watt Project advertised the reputation of Perkins to assure WTT purchasers that their WTT would be backed by power or they would get their money back.

27. The Class alleges that Perkins breached its obligations under the Consumer Protection Act, RCW 19.86 et seq., and the Washington Escrow Agent Registration Act, RCW 18.44 *et seq.*, Class Complaint ¶¶ 59-60 by ignoring the escrow requirement of holding WTT proceeds until Giga Watt had the requisite cryptocurrency mining capacity.

28. The Trustee alleges in the Bankruptcy Proceeding that Perkins breached its fiduciary duty to Giga Watt and aided and abetted Giga Watt Singapore's breach of fiduciary to Giga Watt, by distributing funds from the escrow whenever Mr. Kuzenny requested, without regard to Giga Watt's cryptocurrency mining capacity.

29. The Class Action is closely related to the Bankruptcy Proceeding. Both the Trustee and the Class seek damages from the same defendants, for the same alleged wrongs, and from the same pool of funds – i.e., Perkins.

VERIFIED COMPLAINT – Page 6

## COUNT ONE

*(Injunctive Relief, 11 U.S.C. § 105)*

30. Plaintiff incorporates by reference all the foregoing paragraphs as if set forth fully herein.

31. The continuation of the Class Action will frustrate and jeopardize the Trustee's efforts to successfully prosecute the Bankruptcy Proceeding and liquidate the Debtor's assets.

**Balance of Harm**

32. The risk of irreparable harm to the estate outweighs the risk of irreparable harm to the Class.

33. If the Class Action is not enjoined, the estate will suffer the risk that the Class plaintiffs – many (if not all) of whom have filed claims in the bankruptcy case – could have their claims adjudicated outside the Bankruptcy Court and thereby "jump the line" of the bankruptcy creditors.

34. In contrast, enjoining the Class Action would require Mr. Dam to wait to collect his claims, like all other Giga Watt creditors. And, in the unlikely event of a settlement, Mr. Dam will have the right to be heard pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

35. In addition, unlike the Class Action, which threatens to siphon funds away from the estate, any recovery by the Trustee will be distributed to all creditors according to the Bankruptcy Code, including Mr. Dam, if his claim is allowed.

VERIFIED COMPLAINT – Page 7

**Likelihood of Success**

36. The Trustee's efforts in the Bankruptcy Proceeding and in the bankruptcy case have a reasonable likelihood of being successful if the Class Action is enjoined.

37. As a preliminary matter, Andrey Kuzenny has invoked his privilege against self-incrimination provided by the Fifth Amendment of the U.S. Constitution. And Giga Watt Singapore has failed to answer the complaint in the Bankruptcy Proceeding. Mr. Kuzenny's silence and Giga Watt Singapore's flight give the evidentiary advantage to the Trustee because they raise negative inferences, such as that Giga Watt Singapore intentionally and knowingly withdrew escrow funds from the escrow in violation of the ICO terms, their actions destroyed the Giga Watt Project, and they lied to the United States Securities Exchange Commission ("SEC") to cover up the theft of escrow funds.

38. As a further advantage to the Trustee, Mr. Kuzenny's abuse of the escrow and its subsequent cover up trigger the crime-fraud exception to the attorney-client privilege, to the extent any applies, given the evidence that Perkins also represented Giga Watt in the GW ICO.

39. The Trustee's case is also strong on the merits and therefore reasonably likely to succeed. Mr. Ness understood the escrow terms and the central role that Perkins and the escrow would play in the GW ICO. For example, Perkins' March 2017 retainer letter with Cryptonomos stated that Perkins would provide "final document review with respect to digital currency style token sales."

VERIFIED COMPLAINT – Page 8

The GW ICO was a digital currency style token sale with a White Paper that provided for an escrow. As the final document reviewer, Perkins understood the White Paper and the escrow that the White Paper described.

40. Perkins served as a credit enhancement mechanism and as a backstop for Giga Watt against liability for construction delays. In addition, the Perkins' escrow was the linchpin of Ms. Arden's securities analysis. She argued that if the WTT token proceeds were held in escrow until Giga Watt built the capacity to back those WTT tokens, then the token could be deemed a "utility token," as opposed to a security. This would mean that no registration of the GW ICO with the SEC was required and that the GW ICO could market to unsophisticated investors, regardless of their means.

41. The key to the utility token theory was that the sales proceeds would only be released when the construction was completed. Perkins' role as escrow holder was to ensure compliance with this regime.

42. Perkins denies the allegations and affirmatively defends that its conduct did not damage Giga Watt, because Giga Watt received the escrow proceeds. This defense relies on an August 2, 2018 letter that Wilson Sonsini Goodrich & Rosati ("WSGR") sent to the SEC stating that 100% of the escrow proceeds was spent on construction. However, no evidence supports this assertion and the available evidence contradicts it.

43. Ms. Arden told WSGR that no one could account for the use of the escrow proceeds, because Giga Watt Singapore had commingled the escrow

VERIFIED COMPLAINT – Page 9

proceeds with its other funds. To the Trustee's knowledge, no one has produced an accounting or traced the escrow proceeds.

44. Further, after reviewing Giga Watt's bank records and the escrow accounting provided to the Trustee by both WSGR and Perkins, the Trustee has found no correlation between Giga Watt Singapore's escrow withdrawals and its deposits to Giga Watt. Giga Watt Singapore paid Giga Watt between $2 and $3 million a month, no matter how much Giga Watt Singapore withdrew from the Escrow, as shown by the following chart:



VERIFIED COMPLAINT – Page 10

45. Giga Watt did not even keep all the proceeds that Perkins distributed directly to Giga Watt, as set forth below:

| When | Escrow Transfers to Giga Watt | GW Bank Withdrawals (Not Ordinary) | Giga Watt Bank | Bank Records' Transfer Description |
|---|---|---|---|---|
| 12/19/2017 | $ 2,000,000.00 | | Numerica Credit Union | Incoming Wire |
| 12/26/2017 | $ 4,500,000.00 | | Umpqua Bank | Incoming Wire |
| 12/26/2017 | | $ (294,000.00) | Umpqua Bank | , INTL Wire Xfer Debit Businesi Singtrade Kr Pte Ltd Overseas-Chinese Banking Corp Paymen1 Under Gw Sg1 |
| 1/8/2018 | | $ (3,450,340.00) | Umpqua Bank | OTC Withdrawal |
| 1/17/2018 | | $ (953,320.00) | Bank of America | BNF:SILVER MILLER FBO STORMSME SETTLEMENT AGREEMENT DD 01.15.20 |
| 1/19/2018 | | $ (47,250.00) | Bank of America | BNF:GIGWATT PTE. LTD BNF BK:E UROSTANDARD BK 60 LOAN AGREEMENT |
| 2/9/2018 | $ 1,148,057.58 | | Bank of America | Incoming Wire |
| 2/22/2018 | $ 3,217,699.73 | | Bank of America | Incoming Wire |
| | $10,865,757.31 | $ (4,744,910.00) | | |
| | | $ 2,258,078.00 | | Deposits partially reimbursing the $3,450,340 withdrawal. |
| | $ (2,486,832.00) | $ (2,486,832.00) | | |
| | $ 8,378,925.31 | | | |

VERIFIED COMPLAINT - Page 11

46. Out of the second distribution to Giga Watt in the amount of $4.5 million, $2,486,832 was transferred to Giga Watt Singapore, Singtrade KR Pte Ltd. (whose claim in the bankruptcy case is now owned by Mr. Kuzenny), and unknown party(ies).

47. Giga Watt also paid the $953,319.55 settlement payment to StormsMedia LLC on behalf of itself and Giga Watt Singapore, out of this second payment.

48. Perkins provided Giga Watt no access or information about the escrow. Mr. Carlson informed WSGR that Giga Watt had no documents or information regarding the escrow or WTT Token releases. When informed that Giga Watt and Mr. Carlson could not provide the information and that all the documents were with Cryptonomos, Mr. Kuzenny stepped forward without protest or disagreement. He and Ms. Arden – not Mr. Carlson – answered the questions regarding the use and release of escrow proceeds.

49. Mr. Carlson, the CEO of Giga Watt, was kept in the dark regarding the escrow, its receipts, and its distributions.

50. Based on the foregoing, it is reasonably likely that the Trustee will succeed in the Bankruptcy Proceeding and in the bankruptcy case.

**The Public Interest**

51. Both the Chelan-Douglas County Port Authority, f/k/a the Port of Douglas County ("the Port") and the Douglas County Public Utility District ("the DC PUD"), government entities, have asserted claims against the estate arising

VERIFIED COMPLAINT – Page 12

from their support of the Giga Watt Project. The Port leased the Pangborn Site to Giga Watt on favorable terms. The DC PUD agreed to provide 30 MW of power to the Pangborn Site at an internationally competitive rate.

52. Giga Watt dug a hole spanning approximately 70 feet across and approximately 12 feet down on Port-administered land adjacent to the Pangborn Site without permission. It cost more than $100,000 to restore the site. Apart from the expense, the hole was a hazard and a nuisance. The foregoing is a photograph provided by Mr. Carlson to WSGR of the Pangborn site with the hole:



53. The DC PUD asserts it is owed more than $300,000 for work and materials in constructing poles and transmission lines pursuant to its 30 MW power contract with Giga Watt. Furthermore, Mr. Kuzenny has blamed the DC PUD - rather than his misappropriations from the escrow - for destroying Giga Watt. Mr. Kuzenny has not produced evidence to support this assertion. The Trustee's special litigation counsel reviewed tens of thousands of pages of

VERIFIED COMPLAINT-Page 13

1 | documents produced by the DC PUD regarding this assertion. The Trustee has not
2 | found support for Mr. Kuzenny's allegation.
3 |     54. Enjoining the Class Action will maximize the potential distribution to
4 | all creditors, including these public entities. Thus, an injunction would further the
5 | public interest.
6 |     55. In addition, the Bankruptcy Proceeding promotes the public interest
7 | by exposing attorney dishonesty. ██████████████████████████
8 | ██████████████████████████████████████████
9 | ██████████████████████████████████████████
10 | ██████████████████████████████████████████
11 | ██████████████████████████████████████████
12 | ██████████████████████████████████████████
13 | ██████████████████████████████████████████
14 | ██████████████████████████████████████████
15 | ████████████████
16 |     56. Further, ████████████████████████████
17 | ██████████████████████████████████████████
18 | ██████████████████████████████████████████
19 | ████████████████
20 | ██████████████████████████████████████████
21 | ██████████████████████████████████
22 | ██████████████████████████████████████████
23 | ████████████████████████
24 | VERIFIED COMPLAINT - Page 14
25 |

57. ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████
████████████████████████

58. Attorneys enabling Russian cryptocurrency fraudsters is a matter of public interest.

## SECURITY WAIVER

59. The Trustee is not required to post any security, pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure.

## PRAYER

Wherefore, Plaintiff prays for the equitable relief and judgment as follows:

1. Entry of an order pursuant to section 105(a) of the Bankruptcy Code enjoining Mr. Jun Dam, his attorneys, and all other persons who are in active concert or participation with Jun Dam and his attorneys from litigating or arbitrating, in any way or in any forum, the Class Action or any claims arising

*[This Complaint continues on the following page.]*

VERIFIED COMPLAINT-Page 15

from or related to the Class Action until such time as the Bankruptcy Proceeding is adjudicated or otherwise resolved on a final, nonappealable basis.

2. Such other and further relief as the Court deems just and proper.

Dated: October 29, 2021          POTOMAC LAW GROUP PLLC

By:     /s/ Pamela M. Egan
Pamela M. Egan (WSBA No. 54736)
*Attorneys for Mark D. Waldron, Chapter 7 Trustee, Plaintiff*

VERIFIED COMPLAINT – Page 16

# VERIFICATION

I, Mark D. Waldron, the Chapter 7 Trustee in the above-captioned case, having been duly sworn, hereby declare that I have read the attached Complaint. I am fully familiar with the facts set forth herein and they are true and correct to the best of my information and belief.

Executed on this 29th day of October 2021 in Tacoma, Washington.

By: _____
Mark D. Waldron, as Chapter 7 Trustee

VERIFIED COMPLAINT – Page 17