## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

Case Name: _____  Case Number: _____

## APPLICATION FOR AWARD OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES PURSUANT TO 11 USC 330, AND FOR APPROVAL OF THE PAYMENT OF BANK FEES

Name of Applicant: _____

Position of Applicant: _____

Application Number: _____  ☐ Interim  ☐ Final

The undersigned applicant applies to the court for an award or allowance of compensation for services rendered and for reimbursement of expenses incurred in the above entitled case pursuant to 11 USC 330 *(or USC 331 if an interim application)*, and for approval of the payment of bank fees pursuant to sections 363 and 503(b). This application is supported by the following information and attached documents.

   I.    *(If applicant is employee of trustee, debtor in possession or creditors committee)*
        Date of Entry of Order Approving Employment: _____

   II.   Dates Covered by this Application: _____ to _____

   III.  The name, position, hourly rate, total time spent and amount requested for all compensation for services rendered by each person covered by this application, in connection with this case, is as follows *(if this is the FIRST Application, include **ALL** time and amounts, both pre- and post-petition in this Application)*:

| Name | Position | Hourly Rate | Total Time | Amount Requested |
|------|----------|-------------|------------|------------------|
|      |          | $           |            | $                |
|      |          | $           |            | $                |
|      |          | $           |            | $                |
|      |          | $           |            | $                |
|      |          | $           |            | $                |
|      |          | $           |            | $                |
| Totals |        |             |            | $                |

   IV.  Total amount of REIMBURSEMENT of expenses requested by this application in connection with this case *[if this is the **FIRST** Application, include **ALL** costs (including filing fees), both pre- and post-petition]*:   $ _____

   V.   Total of Compensation and Reimbursement requested:   $ _____

APPLICATION FOR COMPENSATION AND REIMBURSEMENT - 1

VI.   *(If applicant is a trustee)* The maximum amount of compensation allowable under 11 USC 326(a) is: $ _____ .

VII.   *(If applicant is an employee of trustee, debtor in possession or creditors committee).* All compensation for services rendered and reimbursement of expenses incurred for which award is sought were necessary to the administration of the case, beneficial to the estate, and does not include any unnecessary duplication of services.

☐ Yes      ☐ No      ☐ N/A      *(If answer is NO, attach an explanation.)*

VIII.   *(If applicant is the attorney for the debtor)* All compensation for services rendered and reimbursement for expenses incurred for which award is sought for representing the interests of the debtor(s) were necessary and beneficial to the debtor(s) in connection with the case.

☐ Yes      ☐ No      ☐ N/A      *(If answer is NO, attach an explanation.)*

IX.   Compensation or reimbursement previously received has been shared with another entity, or an agreement or understanding exists between the applicant and any other entity for sharing of compensation received or to be received for services rendered in or in connection with this case, except as a member or regular associate of a firm of lawyers.

☐ Yes      ☐ No      *(If answer is YES, attach an explanation.)*

X.   Attached to this application, and made part of this application are the following supporting documents:

    a.  ☐ Statement of Money or Property Received or Promised Other than by Applicant *(required in all cases, LF 2016A);*

    b.  ☐ Summary Supporting Application for Compensation for Services or Reimbursement of Expenses *(required in all cases, LF 2016B);*

    c.  ☐ Itemization of Services Rendered *(required; itemization must be by project category if cumulative compensation exceeds $10,000);*

    d.  ☐ Itemization of Expenses *(required)*; and

    e.  ☐ Narrative Summary *(required if cumulative compensation exceeds $10,000, LF 2016C).*

XI.   Bank Fees: $ _____

The undersigned Applicant states under penalty of perjury that the representations contained in this application and attachments are true and correct to the best of the applicant's knowledge and belief.

DATED: _____      _____

                                              *(Signature of Applicant)*

Name: _____

Position: _____

Address: _____

Phone: _____

Fax: _____

Email: _____

APPLICATION FOR COMPENSATION AND REIMBURSEMENT - 2

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

Case Name: _____    Case Number: _____

**STATEMENT OF MONEY OR PROPERTY RECEIVED OR PROMISED
IN CONNECTION WITH THIS CASE OTHER THAN BY APPLICATION OR A PLAN**

Name of Applicant: _____
Position of Applicant: _____
Application Number: _____

No Money or property was received or promised other than by application as a part of a Chapter 13 Plan.

(a)    Money or things of value received other than by application or as part of a Chapter 13 Plan:

    (1)    Amount received by attorney or firm for filing fee           $_____

    (2)    Amount received before the order for relief by
        attorney or firm for services and costs                          $_____

    (3)    Amount received after the order for relief by
        attorney or firm for services and costs                          $_____

    (4)    Value of any property or service given to attorney
        or firm as payment of fees and costs                             $_____
        Description:

    (5)    Total of entries 1, 2, 3 and 4                                              $_____

    (6)    Amount remaining in client trust account                  $_____

(b)    Amount applied to filing fee and services                          $_____
    *(Subtract entry (a)(6) from entry (a)(5))*

(c)    Money promised:                                                                     $_____
    Nature of arrangement for promise of payment:
    _____

(d)    Total amount and value of all money or property received or promised
    other than by Application or a Chapter 13 Plan *(items (a)(5) and (c))*    $_____

(e)    Other Items *(Value and description of any liens, guarantees,
    security interests or promissory notes):*
    _____

(f)    Source of Payment of Promise *(If other than the debtor,
    identify entity and relationship to the debtor):*
    _____

STATEMENT OF MONEY OR PROPERTY RECEIVED

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

Case Name: _____     Case Number: _____

## SUMMARY SUPPORTING APPLICATION FOR COMPENSATION FOR SERVICES OR REIMBURSEMENT OF EXPENSES

Name of Applicant: _____

Position of Applicant: _____

Application Number: _____

| Sequential # | | Applied for | Awarded | Received |
|---|---|---|---|---|
| **A**<br>Receipts other than by Application<br>*(Transfer from (b) of Application LF 2016A)* | **Date**<br>**Compensation**<br>**Expenses** | | | $_____<br>$_____<br>$_____ |
| Prior Application<br><br>#_____ | **Date**<br>**Compensation**<br>**Expenses** | _____<br>$_____<br>$_____ | _____<br>$_____<br>$_____ | _____<br>$_____<br>$_____ |
| Prior Application<br><br>#_____ | **Date**<br>**Compensation**<br>**Expenses** | _____<br>$_____<br>$_____ | _____<br>$_____<br>$_____ | _____<br>$_____<br>$_____ |
| Prior Application<br><br>#_____ | **Date**<br>**Compensation**<br>**Expenses** | _____<br>$_____<br>$_____ | _____<br>$_____<br>$_____ | _____<br>$_____<br>$_____ |
| Present Application<br>*(Transfer totals from III & IV of Application)*<br>#_____ | **Date**<br>**Compensation**<br>**Expenses** | _____<br>$_____<br>$_____ | | |
| **Totals**<br><br>B | **Compensation**<br>**Expenses**<br><br>**Total Comp. + Exp.** | $____<br>$_____<br><br>$_____ | $_____<br>$_____<br><br>$_____ | $_____<br>$_____<br><br>$_____ |

SUMMARY SUPPORTING APPLICATION FOR
COMPENSATION AND REIMBURSEMENT OF EXPENSES

Potomac Law Group Fourth Interim Fee Application

Project Summary

| Project Category | Billable Time | Billable Amt |
|---|---|---|
| Fee/Employment Applications | 7.2 | $2,880.00 |
| Tax Issues | 0.8 | $320.00 |
| SLUSA | 107.6 | $43,040.00 |
| Dam Appeal to District Court of Automatic Stay & Preliminary Inj. | 36.9 | $14,760.00 |
| Perkins' 9th Cir. Appeal of Arbitration Order | 10.8 | $4,320.00 |
| **Grand Total** | **163.3** | **$65,320.00** |

| Date | Description | Billable Time | Billable Amt | Subtotal Time | Subtotal Amt |
|---|---|---|---|---|---|
| **Fee/Employment Applications** | | | | | |
| 03/23/2022 | Draft third interim fee application papers | 4.30 | $1,720.00 | | |
| 03/28/2022 | Draft Notice of Third Interim Fee Application | 0.30 | $120.00 | | |
| 03/29/2022 | Correspondence with J. Britton scheduling fee app hearing | 0.00 | $0.00 | | |
| 03/30/2022 | Draft narrative summary for third interim fee application | 1.50 | $600.00 | | |
| 04/05/2022 | Draft and file Notice of Errata with respect to PLG third interim fee app | 0.90 | $360.00 | | |
| 05/03/2022 | Attend hearing on PLG Third Interim Fee Application | 0.20 | $80.00 | | |
| | **Fee/Employment Applications Subtotal:** | | | 7.20 | $ 2,880.00 |
| **Tax Issues** | | | | | |
| 03/08/2022 | Telephone conference from IRS investigatory agent regarding Giga Watt, Inc. | 0.80 | $320.00 | | |
| | **Tax Issues Subtotal:** | | | 0.80 | $ 320.00 |
| **SLUSA Papers** | | | | | |
| 04/26/2022 | Develop SLUSA counter-offensive: analysis for intervening in and moving to dismiss D. Ct. action | 7.00 | $2,800.00 | | |
| 04/27/2022 | Research motion to dismiss - CPA on grounds of SLUSA. | 8.50 | $3,400.00 | | |
| 05/03/2022 | Outline motions to modify the injunction, intervene, and dismiss; | 7.00 | $2,800.00 | | |
| 05/04/2022 | Field emails with T. Blood re SLUSA (1.0); analyze SLUSA and procedure for moving to dismiss Dam lawsuit (4.0) | 5.00 | $2,000.00 | | |
| 05/08/2022 | Outline motion to dismiss Mr. Dam's lawsuit under SLUSA | 2.60 | $1,040.00 | | |
| 05/08/2022 | Draft motion to dismiss | 2.50 | $1,000.00 | | |
| 05/09/2022 | Telephone conference with R. Cromwell x 2; prepare for status conference; draft request for judicial notice; draft argument section of motion to dismiss | 8.30 | $3,320.00 | | |
| 05/10/2022 | Finalize circulation draft of motion to dismiss (5.0); outline motion to intervene (1.0); outline motion to modify preliminary injunction (1.2) | 7.20 | $2,880.00 | | |
| 05/11/2022 | Draft motion to modify injunction (8.5); telephone conference with R. Cromwell re modifying injunction (.9) | 9.40 | $3,760.00 | | |
| 05/12/2022 | Draft motion to dismiss (3.3); draft motion to intervene (3.2) | 6.50 | $2,600.00 | | |
| 05/13/2022 | Review documents for request for judicial notice (1.5); review and finalize request for judicial notice in support of motion to modify preliminary injunction (2.1); draft motion to dismiss (5.9) | 9.50 | $3,800.00 | | |
| 05/14/2022 | Draft motion to intervene; work on motion to dismiss | 5.50 | $2,200.00 | | |

| Date | Description | Billable Time | Billable Amt | Subtotal Time | Subtotal Amt |
|---|---|---|---|---|---|
| 05/15/2022 | Draft motions to modify injunction, intervene and dismiss. | 3.50 | $1,400.00 | | |
| 05/16/2022 | Draft motion to intervene and motion to modify preliminary injunction | 4.50 | $1,800.00 | | |
| 05/16/2022 | Draft proposed order granting motion to modify preliminary injunction (.5); draft Egan declaration in support of motion to modify preliminary injunction (.9); draft motion to intervene (6.9); draft request for judicial notice in support of motion to modify preliminary injunction (1.3) | 9.60 | $3,840.00 | | |
| 05/19/2022 | Review and finalize SLUSA packet: (1) motion to modify preliminary injunction (.3); (2) memorandum in support of chapter 7 trustee motion to modify preliminary injunction (2.4); (3) Egan declaration support of motion to modify preliminary injunction (.4) ; (4) motion to intervene (2.4); (5) motion to dismiss (1.9); (6) request for judicial notice in support of motion to modify preliminary injunction (3.5); and (7) notice of motion and opportunity to object (.1) | 11.00 | $4,400.00 | | |
| | | | **SLUSA Papers Subtotal:** | 107.60 | $43,040.00 |
| | **Dam Appeal to District Court of Automatic Stay and Preliminary Injunction** | | | | |
| 03/08/2022 | Review Notice of Appeal filed by Jun Dam regarding Order Denying Preliminary Injunction (.1); confer with client re same (.1) | 0.20 | $80.00 | | |
| 03/11/2022 | Draft status conference report for PI appeal in District Court (.3); correspondence with counsel for J. Dam re same (.2) | 0.50 | $200.00 | | |
| 03/28/2022 | Review J. Dam's designation of record in appeal of PI (.1); review briefing schedule (.1); communication with client re same | 0.20 | $80.00 | | |
| 04/04/2022 | Review appellate schedule - designation of record in appeal of AS and PI | 0.20 | $80.00 | | |
| 04/05/2022 | Review documents designated by Jun Dam in appeal of Preliminary Injunction Order (2.1) | 2.10 | $840.00 | | |
| 04/06/2022 | Outline issues and arguments relevant to designation of record (6.0); develop supplemental designation of record (1.1); draft supplemental designation of record (.6) | 7.70 | $3,080.00 | | |
| 04/11/2022 | Telephone conference with T. Blood re mediation and email exchange re same (.6) | 0.20 | $80.00 | | |
| 04/18/2022 | Review motion to consolidate appeals drafted by L. Hurst (.1); confer with L. Hurst re same (.3); outline issues for that appeal (.3) | 0.70 | $280.00 | | |
| 04/19/2022 | Review order consolidating appeals of Automatic Stay and Preliminary Injunction | 0.10 | $40.00 | | |

| Date | Description | Billable Time | Billable Amt | Subtotal Time | Subtotal Amt |
|---|---|---|---|---|---|
| 05/23/2022 | Correspondence with L. Hurst re motion to extend page limit in and merits of J. Dam's appeal of the Automatic Stay and Preliminary Injunction Orders | 0.30 | $120.00 | | |
| 05/24/2022 | Draft motion to dismiss appeal of PI | 8.20 | $3,280.00 | | |
| 05/25/2022 | Draft motion to dismiss PI appeal | 8.00 | $3,200.00 | | |
| 05/26/2022 | Draft motion to dismiss appeal of Preliminary Injunction | 8.50 | $3,400.00 | | |
| **Dam Appeal to District Court of Automatic Stay and Preliminary Injunction Subtotal:** | | | | 36.90 | $14,760.00 |
| **Perkins Appeal to 9th Circuit of Arbitration Order** | | | | | |
| 02/21/2022 | Review mediation statement by PC (.9); review statement of issues and designation of record (1.0); calendar dates | 1.80 | $720.00 | | |
| 03/02/2022 | Prepare for mediation preliminary conference (.5); attend mediation preliminary conference (.9); send email to client re same (.1) | 1.50 | $600.00 | | |
| 03/03/2022 | Review and analyze issues in arbitration appeal (3.5); review and identify documents for supplemental designation of record (2.5); and draft supplemental designation of record (1.0) | 7.00 | $2,800.00 | | |
| 03/25/2022 | Review briefing schedule for appeal of jury demand and arbitration orders (.1); review stipulated motion to extend briefing schedule deadlines (.2); confer with client re same (.1) | 0.40 | $160.00 | | |
| 04/05/2022 | Review Perkins' streamlined request for extension of briefing schedule; check local rules; send email to client re same | 0.10 | $40.00 | | |
| **Perkins Appeal to 9th Circuit of Arbitration Order Subtotal:** | | | | 10.80 | $ 4,320.00 |
| **Total:** | | | | 163.3 | $65,320.00 |

**POTOMAC LAW GROUP, PLLC- Expense Report**

Date Start: 1/27/2022 | Date End: 5/26/2022 | Clients: Law Offices of Mark D. Waldron, PLLC | Matters: Chapter 7 Trustee | Users: All | Matter Type: All | Group By: Client

| Expense Date | Created Date | Invoice Id | Client | Matter | User | Expense Type | Description | Status | Cost | Bill Price |
|---|---|---|---|---|---|---|---|---|---|---|
| **Law Offices of Mark D. Waldron, PLLC** | | | | | | | | | | |
| 04/01/2022 | 04/02/2022 | | Law Offices of Mark D. Waldron, PLLC | Chapter 7 Trustee | Pamela Egan | E108 - **Postage** | Postage for serving **3rd Interim Fee App** (PLG) (5.31.21-1.26.22) | Ready For Billing | $18.95 | $18.95 |
| | 04/22/2022 | | **Law Offices of Mark D.** Waldron, PLLC | Chapter 7 Trustee | **Pamela Egan** | E108 - **Postage** | Postage for Notice of **Motion to Inrur** Discovery Expenses | Ready For Billing | $12.76 | $12.76 |
| | | | | | | | **Totals Billable Amounts to, Law Offices of Mark D. Waklron, PLLC** | | **$31.71** | **$31.71** |
| | | | | | | | | Grand Total | **$31.71** | **$31.71** |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

Case Name: Giga Watt, Inc.                    Case Number: 18-03197 FPC

NARRATIVE SUMMARY
(Required by LBR 2016-1(b)(1)(A) where requested
compensation exceeds $10,000.00)

Name of Applicant:              Potomac Law Group PLLC
Position of Applicant:          General Insolvency Counsel to Chapter 7 Trustee
Application Number:             Four (4)
Application Period:             January 27, 2022 - May 26, 2022
Fees Requested:                 $65,320.00
Expenses Requested:             $      31.71

## I.      Introduction

This Application seeks fees accrued over a 120-day period, January 27,

2022 through May 26, 2022 (the "Application Period") in the main case.

The Potomac Law Group PLLC ("PLG") represents the Trustee pursuant to

two employment Orders: *Order Approving Employment Under 11 U.S.C. § 327

By Trustee/Debtor-in-Possession,* dated October 27, 2020 [ECF 785], pursuant to

which PLG was retained as counsel to the Chapter 7 Trustee ("Hourly

Employment Order"), and the *Order Approving Employment Under 11 U.S.C. §

327 By Trustee/Debtor-in-Possession,* dated December 14, 2020 [ECF 840]

("Contingent Fee Employment Order"), pursuant to which PLG was retained on a

contingent fee basis to represent the Debtor in an adversary proceeding that the

Trustee brought against Perkins Coie, LLP ("Perkins"), Lowell Ness ("Ness"),

1

GigaWatt Pte. Ltd. ("GW Sg."), and Andrey Kuzenny ("Kuzenny"), Case No. 20-80053 ("Perkins Adversary").

This Application seeks compensation for work performed pursuant to the Hourly Employment Order. It also seeks reimbursement of postage expenses incurred in serving notice of Applicant's *Third Interim Employment Application* and also in serving notice of the Trustee's motion for an order authorizing payment of discovery expenses in the Perkins Adversary.

## II.    Background of the Case

### A.    Conversion

On November 19, 2018, Giga Watt, Inc. ("Giga Watt") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On September 30, 2020, the Bankruptcy Court entered an Order converting the bankruptcy case from Chapter 11 to Chapter 7 of the Bankruptcy Code, ECF No. 744. The same day, the U.S. Trustee's Office appointed Mark D. Waldron as Trustee in the Chapter 7 case, ECF No. 745.

### B.    Giga Watt Background

The foregoing is based on the Trustee's investigation and new facts revealed by 223.4 gigabytes of information ("Lighthouse Documents") that the

2

Trustee obtained in July 2022. It also assumes familiarity with the facts.[1] It is not complete and is subject to change. By his signature set forth below, the Trustee attests that the following is based on his review of the Debtor's books and records, including the Lighthouse Documents. The Trustee has sent letters to Perkins, Kuzenny, Timur Usmanov ("Usmanov") and Jun Dam ("Dam") regarding the information below.

In 2016, Daryl and Kelly Thompson, landlords, were renting out property in East Wenatchee, Washington to two groups who were cryptocurrency mining. At one property, a Russian using the pseudonym, Adam West ("West"), and another Russian, Nikolay Evdokimov ("Evdokimov"), rented land from the Thompsons to operate a cryptocurrency mining facility under the name Mining King. At

---

[1] Additional facts may be found in the Narrative Summaries set forth in the *First Interim Application for Award of Compensation for Services Rendered and Reimbursement of Expenses*, dated March 10, 2021, ECF 863, the *Second Interim Application for Award of Compensation for Services Rendered and Reimbursement of Expenses*, dated July 16, 2021, ECF 898, and the Third Interim Application for Award of Compensation for Services Rendered and Reimbursement of Expenses, dated April 1, 2022, ECF No. 940.

3

another of the Thompsons' properties, Dave Carlson, Rob Taves, and Jeff Field operated a cryptocurrency mining facility under the name MegaBigPower.[2]

On December 15, 2016, Katrina Kovalyeva ("Kovalyeva") filed Articles of Incorporation with the Washington Secretary of State creating Giga Watt. Later, West and Evdokimov each separately named themselves as a director of Giga Watt, although neither was a shareholder and there is no record of a shareholder meeting.

Kovalyeva goes by a variety of names, including Grant and Arden. She claims dual U.S.-Russian citizenship and an M.B.A. from an American university. She passed the California bar without going to law school. She has a current California law license and is based in Puerto Rico.

In 2016 and 2017, Kovalyeva provided legal advice to Evdokimov in a series of unregistered securities offering involving cryptocurrency, called initial coin offerings. One of those unregistered securities offering on which they collaborated resulted in a judgment against Evdokimov and his entity, ICOBox,

---

[2] MegaBigPower had a second facility in Grant County, Moses Lake. It rented the Moses Lake land from an entity controlled by Ryan Oster.

Inc., in the amount of $16,059,429.99 and a civil penalty against Evdokimov and ICOBox, Inc. of $192,768.[3]

On December 28, 2016, GW Sg. filed the Singapore equivalent of Articles of Incorporation. The sole shareholder was Sergey Pashentsev ("Pashentsev"), who is an auto mechanic in rural Russia. Kuzenny connected GW Sg.'s bank account at the Overseas Chinese Banking Corporation ("OCBC") with PayPal by pretending to be Pashenstev. When one clicks on the name Pashenstev in these emails, Kuzenny's email address appears.

In early 2017, Taves, Field, and Carlson, on behalf of MegaBigPower, and Evdokimov, on behalf of Giga Watt, entered into a purchase and sale agreement pursuant to which MegaBigPower sold to Giga Watt all or substantially all of its assets. They titled the agreement, *Bill of Sale and Assignment and Assumption Agreement* ("Sale Agreement"). Giga Watt promised to pay MegaBigPower $3 million on the following schedule: (1) January 15, 2017, $21,000; (2) February 15, 2017, $21,000; (3) March 15, 2017, $958,000; (4) September 15, 2017, $1,000,000; and (5) March 15, 2018, $1 million.

---

[3] *See ICOBox, Inc. SEC v. ICOBOX*, Case No. 2:19-cv-8066 DSF-E, U.S. District Court, Central District of California, filed March 5, 2020, ECF No. 17.

Pursuant to the Sale Agreement, MegaBigPower assigned its leases with the Thompsons to Giga Watt. However, the Thompsons' experience with West and Evdokimov had been so negative that they refused to provide their banking information to Giga Watt and instead required Giga Watt to pay the rent in cashier's checks.

In early 2017, Giga Watt began publicizing that it was building a massive cryptocurrency facility near the Pangborn airport in East Wenatchee, Washington, and that it was raising capital to do so through an initial coin offering ("GW ICO"). The securities sold were (i) digital assets referred to as WTT Tokens and (ii) computers used for "mining" cryptocurrency, which means running a hash function to verify the legitimacy of transactions recorded on the blockchain. Giga Watt's stated goal was to raise money from the little guy on the street without attracting "the Eye of SECron," Carlson's moniker for the U.S. Securities and Exchange Commission ("SEC"). [4]

In March 2017, Carlson told Taves and Field that payment under the Sale Agreement would be delayed. He explained that they were all waiting on the

_____

[4] Carlson is comparing the SEC to the embodiment of evil in *The Lord of the Rings*.

6

lawyers on how to "productize" the WTT Tokens. He sent them a modified Sale Agreement, which they signed.

The modification tied payment of the purchase price to escrow releases. Giga Watt would pay $3 million in three installments: (1) $1 million when the first $1 million was withdrawn from the GW ICO escrow; (2) $1 million six months after the first payment; and (3) $1 million twelve months after the first payment. This agreement contemplates that Giga Watt would receive the WTT Token sales proceeds from escrow and then use those funds to pay MegaBigPower. Giga Watt would have had no other source of funds to make such a sizeable payment.

Although Evdokimov signed the Sale Agreement and the modification on Giga Watt's behalf, three other Russian nationals dominated and controlled Giga Watt: (1) Kuzenny; (2) Leonid Markin ("Markin"); and (3) Eduard Khaptakhaev ("Khaptakhaev"). Carlson referred to Kuzenny, Markin, and Khaptakhaev as his "Russian partners." Like West and Evdokimov, Kuzenny and Markin were based in Los Angeles. Khaptakhaev is based in Moscow and/or St. Petersburg, Russia.

Markin and Khaptakhaev are shareholders in an offshore company that is listed in the Panama Papers, Vigorous Profits, Ltd.[5]

On or about May 3, 2017, Kuzenny, Markin, and Khaptakhaev installed Usmanov, who is also a Los Angeles-based Russian national, to take control of Giga Watt's revenues. Kuzenny, Markin and Khaptakhaev named Usmanov as Giga Watt's Chief Financial Officer ("CFO"). Kuzenny paid Usmanov's salary in a series of cash payments and wire transfers via a Singapore corporation called Cryptonomos Pte. Ltd. ("Cryptonomos"). Like Giga Watt and GW Sg., Cryptonomos never had a shareholders' agreement. In 2017, Cryptonomos had a bank account with Deutsche Bank.[6]

On May 12, 2017, Perkins agreed to hold all the WTT Token sales proceeds in trust pending construction of Giga Watt's facilities. Despite the remarkable nature of this agreement – which Perkins had never done before and will never do

---

[5] *See* ICIJ website, https://offshoreleaks.icij.org/nodes/10153947. Last accessed on August 14, 2022.

[6] In January 2017, the New York State Department of Financial Service fined Deutsche Bank $425 million and the U.K. Financial Conduct Authority fined Deutsche Bank £163 million ($204 million). Both fines arose from Deutsche Bank's role in a $10 billion Russian money laundering scheme.

again – Ness wrote a letter stating that Perkins would represent GW Sg. regarding general corporate matters. This representation does not make sense because according to the White Paper, Cryptonomos would issue the WTT Tokens and collect the WTT Token sales proceeds, then place them in escrow. GW Sg. would only sell miners. Further Martha Sandoval ("Sandoval"), Perkins' corporate attorney, later stated that Perkins had not advised GW Sg. on corporate matters.

On July 25, 2017, the SEC issued its *Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO* explaining its analysis that blockchain digital asset tokens were securities subject to the U.S. securities laws.

On August 1, 2017, GW Sg. deposited $1.95 million into the Perkins escrow. This contradicted the White Paper which stated that GW Sg. would sell miners and Cryptonomos, not GW Sg., would issue the WTT tokens and collect the proceeds. Perkins said nothing.

On August 7, 2017, Marina Mikhaylyuta, who claimed to be GW Sg.'s current director, but whose email was only admin@gigawatt.sg., asked Perkins to release $5.4 million from the GW ICO escrow, even though no construction had been completed. Mikhaylyuta also uses an email with the domain, moonmist.ru.

9

That same day, August 7, 2017, Usmanov emailed Perkins partner, Ness, with the subject line, "need your advice":

> Hi Lowell, My name is Tim, I'm the CFO at Giga Watt, Inc. Katrina referred to you as a main contact person who I could speak with on all our legal matters. Several days ago we received an email supposedly sent by the U.S. Secret Service, asking us to share some sensitive information. Please find below a copy of this email.

Ness directed Usmanov to Jean-Jacques Cabou ("Cabou"), Ness' partner.

On August 8, 2017, Perkins made the first premature escrow release in the amount of $5.4 million. On the same day, Cabou wrote to the U.S. Secret Service that Perkins "represents Giga Watt." This email was discovered in the Lighthouse Documents. It contradicts Perkins' representations to the Trustee that it had not represented Giga Watt. Very recently, Perkins made a supplemental production, again omitting the foregoing correspondence.

On August 11, 2017, OCBC inquired about the $1.95 million transfer to Perkins and the $5.4 million transfer from Perkins (the first escrow release), which were both large sums of obscure provenance occurring within three (3) days of each other. In response, Kuzenny and Usmanov dissembled, as set forth below.

On August 18 and 21, 2017, GW Sg. paid Carlson approximately $1 million in cryptocurrency. These payments vary from the Sale Agreement terms, as

10

modified, which provided that Giga Watt would pay the installment and that the installment would be in U.S. dollars.

On September 5, 2017, Michael Olmstead ("Olmstead"), the sole accountant at Giga Watt, learned that Usmanov had succeeded in obtaining control of Giga Watt's cryptocurrency revenue wallets. From that point forward, Giga Watt never had insight into or access to its own revenue stream. A wall was put between the Giga Watt accounting team and revenues. Kuzenny, Markin, and Khaptakhaev received and controlled Giga Watt's revenues from this point forward. At the same time, they burdened Giga Watt with all the liabilities of the Giga Watt Project, including Uber rides in Moscow, office space in Beverly Hills, first-class airline tickets between Los Angeles and Moscow, and various expenses incurred by Cryptonomos, Kuzenny, Markin, and Khaptakhaev in their other ventures. Kuzenny, Markin, and Khaptakhaev never provided Giga Watt sufficient funds to pay its debts as they came due. Giga Watt was never balance-sheet solvent. Usmanov testified that "a girl in Ukraine" actually received the revenues. The Trustee believes that Usmanov is referring to Olesia Egozina, who was an officer of Cryptonomos. Thus, Cryptonomos took all of Giga Watt's revenues.

The GW ICO raised $50 million. Kuzenny, Markin, and Khaptakhaev ran $37,767,558 through Giga Watt's multiple bank accounts. All payments to Giga

11

Watt were booked as loans. Revenues were siphoned to Kuzenny, Markin and Khaptakhaev via Olesia Egozina. Heather Mulhall, Giga Watt's Controller, has told the Trustee that $30 million was spent on "project expenditures."

Like GW Sg., Giga Watt never had a stable banking relationship. Wells Fargo, Numerica Credit Union, and Umpqua Bank each informed Giga Watt that its large transactions of cash from uncertain sources triggered red flags which required them to close the accounts. Giga Watt bounced from bank to bank. Perkins saw this hopscotch, transferring money first to OCBC, then to Wells Fargo, then to Numerica Credit Union, then to Umpqua Bank, and then to Bank of America. No questions asked.

In the summer and early fall of 2017, when Usmanov was pressuring Carlson to hand over the wallet addresses, Carlson went to Perkins for advice. He specifically asked how the revenue stream should be handled both internally and for tax purposes. He met with Sandoval on or about July 27, 2017. Before, during, and after this meeting, Usmanov, Kuzenny, Markin, and Khaptakhaev pressured Carlson to back down. They told him to accept Usmanov's authority, "change his attitude," and turn over the wallets. Meanwhile, Sandoval advised Giga Watt that its corporate documents were in disarray and she prepared a list of action items for the client, Giga Watt, which Usmanov ignored.

18-03197-FPC7    Doc 959    Filed 08/22/22    Entered 08/22/22 13:11:50    Pg 21 of 34

In September 2017, Usmanov and Kuzenny were working with a group called AA1 Solutions in Singapore to, among other things, communicate with OCBC regarding the $1.95 million withdrawal and $5.4 million deposit that had raised red flags at OCBC. Usmanov and Kuzenny told AA1 Solutions that the $1.95 million transfer to Perkins' escrow was an "inter-company transfer." However, Perkins' IOLTA trust account was not a company account held by GW Sg. Further, GW Sg. did not own and was not authorized to handle the WTT Token sales proceeds.

They also told AA1 Solutions that the $5.4 million was released "for completed construction." However, no construction had been completed. They further stated that the $5.4 million was for "pre-sales." However, no WTT Tokens were to be released until Giga Watt could back the token with power. Further, on the very day of the $5.4 million transfer to GW Sg., which is the first premature release from the escrow, Perkins informed the U.S. Secret Service that it represented Giga Watt. Nevertheless, it told the Trustee repeatedly that it had never represented Giga Watt.

On November 2, 2017, Usmanov directed Giga Watt's payroll department to put Kuzenny on the payroll at $15,000 a week (or month) -- the Trustee is still clarifying -- with the title of Chief Operating Officer "as a mere formality, rather than implication of actual duties" so that Kuzenny could pretend to have a job

18-03197-FPC7    Doc 959    Filed 08/22/22    Entered 08/22/22 13:11:50    Pg 22 of 34

and thus obtain a U.S. work visa. For good measure, Usmanov put himself on the Giga Watt payroll as well.

On December 4, 2017, GW Sg. lost its OCBC banking privileges.

On December 5, 2017, Usmanov wrote to AA1 Solutions, "Most probably we will have to release some funds from escrow later this week. So we'd definitely need a USD [U.S. dollar denominated] account ***to land the money***." (Emphasis added.)

On December 18, 2017, Usmanov drafted what would become the text of an email request to Perkins, ostensibly from Mikhaylyuta, to release $2 million from the escrow to Giga Watt. On December 19, 2017, Perkins transferred $2 million from the escrow to Giga Watt. On December 22, 2017, Usmanov ghost wrote another escrow release request to Perkins, this time requesting that $4.5 million be sent to Giga Watt. Perkins transferred this amount to Giga Watt on December 26, 2017.

In late December 2017, Stormsmedia LLC, a WTT Token and Miner purchaser, sued Giga Watt under section 12 of the U.S. Securities Act of 1933 seeking rescission and restitution of its WTT Token and miner purchases on behalf of all WTT Token and Miner investors. Stormsmedia alleged that Giga Watt had not completed construction. Perkins received actual notice of this complaint.

In January 2017, Giga Watt settled this lawsuit by paying Stormsmedia LLC $953,319.55 out of funds that Perkins transferred to Giga Watt from the escrow on instructions from Usmanov, Kuzenny, and/or Mikhaylyuta. The settlement released both Giga Watt and GW Sg. from Stormsmedia only. No settlement class had been certified.

In February 2018, Perkins made the last two escrow releases, notwithstanding (1) actual and inquiry notice that construction was not completed; (2) actual knowledge of the $1.95 million deposit from GW Sg., which had no right to handle WTT Token sales proceeds before construction was completed; (3) the shuffling of bank accounts; and (4) someone calling himself, Al Mafia, asking Perkins to send him the general ledger for the GW ICO escrow account.

In March 2018, two more federal securities suits were filed against Giga Watt under section 12 of the U.S. Securities Act of 1933 on behalf of WTT Token holders and Miner owners.

In March 2018, GW Sg. paid Carlson approximately $1 million in cryptocurrency.

In April 2018, the SEC commenced its investigation of the GW ICO. In April 2018, Usmanov convinced Carlson to tear up the modified asset sale agreement between MegaBigPower and Giga Watt and sign a new agreement

15

providing that the purchase price was only $1 million. They would backdate the agreement to January 2017. The $2 million that GW Sg. had already paid to Dave Carlson would vanish, thus, perhaps, helping Carlson with his taxes, as Usmanov suggested. Carlson's reaction: that would be "excellent."

In August 2018, the SEC asked why the last four escrow payments were made to Giga Watt and not to GW Sg., as the first four payments had been paid. Kuzenny stated that it was for administrative convenience in light of urgent invoices that needed to be paid. He did not mention that GW Sg. had nowhere else to land the money.

That same month, August 2018, Usmanov told Carlson that Kuzenny was embezzling funds. Carlson confronted Kuzenny, who admitted the crime and responded, "Don't break the balls." Carlson and Usmanov received their last pay checks from Giga Watt on September 15, 2018. Perkins has tried to describe these transfers as "loans," while Kuzenny has run away and plead the 5th Amendment.

In October 2018, Jun Dam's lawyer, Blood Hurst & O'Reardon, filed a RICO class action against Giga Watt on behalf of token-less miner owners alleging that Giga Watt was a criminal enterprise. Carlson is a named defendant, as is GW Sg. This case is in tension with Mr. Dam's allegations that pre-petition

his investment had been "good" and that the Trustee was liable for his investment loss.

On November 19, 2018, Kuzenny signed Giga Watt's petition for voluntary relief under chapter 11 of the Bankruptcy Code. Post-petition before the Trustee was appointed, Giga Watt continued operating. These operations generated more than $100,000 in administrative expenses. No revenues were reported. However, Jun Dam, John Winslow, and Scott Glasscock, WTT Token holders and/or Miner owners who formed a majority on the Official Committee of Unsecured Creditors, received transfers from Giga Watt's post-petition operations before the Trustee was appointed, according to their Proofs of Claims, filed with the Court.

C. **Financial Condition of the Estate**

1. Profit and Loss: Not applicable. Debtor is not operating.

2. Amount of Cash on Hand or on Deposit: $640,643.86.

3. Amount of Accrued Unpaid Administrative Expenses:

| Expense Description | Amount |
|---|---|
| LexBe | $4,600.00 |
| Accountants' Fees | $7,000.00 (est'd) |
| Attorneys' Fees accrued after Application Period | $31,520.00 |
| **Total** | $ 43,120.00 |

17

4. Amount of Unencumbered Funds in the Estate: $528,643.68.[7]

Pursuant to the *Order: (i) Approving the Sale of Moses Lake Equipment and Related Relief, (ii) Approving Bid Procedures, and (iii) Shortening Time to Object*, ECF 765 ("ML Equipment Sale Order") the Trustee is holding an additional $112,000 in sales proceeds, subject to resolution of claims asserted by certain WTT Token and miner purchasers.

## III. Description of Tasks or Projects for which Compensation is Sought

| Project Category | Billable Time | Billable Amt |
|---|---|---|
| Fee/Employment Applications | 7.2 | $2,880.00 |
| Tax Issues | 0.8 | $320.00 |
| SLUSA | 107.6 | $43,040.00 |
| Dam Appeal to District Court of Automatic Stay & Preliminary Inj. | 36.9 | $14,760.00 |
| Perkins' 9th Cir. Appeal of Arbitration Order | 10.8 | $4,320.00 |
| **Grand Total** | **163.3** | **$65,320.00** |

---

[7] Pursuant to the *Order: (i) Approving the Sale of Moses Lake Equipment and Related Relief, (ii) Approving Bid Procedures, and (iii) Shortening Time to Object*, ECF 765 ("ML Equipment Sale Order") the Trustee is holding another $112,000 in sales proceeds, subject to resolution of claims asserted by certain WTT Token and miner purchasers.

### A. Fee/Employment Applications

During the Application Period, PLG drafted its third interim fee application, ECF 897, which the Court granted. *See Order Awarding Compensation for Services Rendered and Reimbursement of Expenses Pursuant to 11 U.S.C. § 330 and § 331, and Approving the Payment of Bank Fees*, dated May 3, 2022, ECF No. 957. PLG worked 7.2 hours on the fee application for a total of $2,880.00. PLG has reduced the requested fees to $2,614.40 representing less than five percent (5%) of requested fees.

*Time Spent: 7.2*                    *Amount: $2,880.00*

### B. Tax Issues

PLG responded to queries by the United States Internal Revenue Service relating to Giga Watt.

*Time Spent: .8*                    *Amount: $320.00*

### C. SLUSA

Less than three weeks after the Trustee commenced the Perkins Adversary, Dam filed a copycat lawsuit in the District Court, Case No. 20-cv- 00464-SAB. Mr. Dam asserts that the WTT Token holders, not the Trustee, are the exclusive party who can sue Perkins for claims arising from Perkins' premature escrow releases. Two of his claims are extant, both alleging that Perkins tricked him into buying his WTT Tokens.

19

Perkins may try to leverage Dam to extract concessions from the estate. However, Dam's class action lawsuit is barred by the Securities Litigation Uniform Standards Act ("SLUSA"). Mr. Dam has no class action claims against Perkins.

The Bankruptcy Court and the District Court have placed litigation of this issue on hold pending mediation. If Mr. Dam plays the spoiler at mediation, or if the Trustee otherwise does not settle with Perkins, then the Trustee will be prepared to obtain permission from the Bankruptcy Court to move forward against Mr. Dam's lawsuit as barred by SLUSA. Applicant submitted to Mr. Dam's counsel, Perkins' counsel, and this Court copies of completed drafts of the motion to intervene in the Mr. Dam's lawsuit and motion to dismiss Mr. Dam's lawsuit. The papers could be filed on a day's notice.

The SLUSA papers provide necessary clarity to the mediation process while also allowing the Trustee to immediately commence litigation, as appropriate.

***Time Spent: 107.6***                                  ***Amount: $43,040.00***

### D.   Dam Appeal to District Court of Automatic Stay and Preliminary Injunction

During the Application Period, Dam appealed this Court's *Order Denying Mr. Dam's Motion to Dismiss and Granting Trustee's Motion for Preliminary*

20

*Injunction* ("Preliminary Injunction"), dated February 23, 2022. ECF No. 38. The District Court consolidated this appeal with Dam's earlier appeal of the *Memorandum Opinion and Order Regarding Stay and Motion for Order to Show Cause*, filed in the Bankruptcy Case on September 26, 2021, ECF No. 921, and appealed to the District Court in Case No.2:21-cv-00291-SAB.

Mr. Dam has designated more than 2,000 pages of documents on appeal thus compounding the amount of work necessary to review the designation of record. Incredibly, even after including more than 2,000 pages of documents, the Trustee had to supplement the record because of omissions by Mr. Dam.

In addition, during the Application Period, Applicant moved to dismiss the Mr. Dam's appeal of the Preliminary Injunction on the ground that it was interlocutory and Mr. Dam was not asking for permission to appeal.

After the parties agreed to participate in mediation, the District Court struck the motion to dismiss without prejudice to renewing it after the mediation ends. The District Court also stayed the appeal pending the mediation.

*Time Spent: 36.90*                                    *Amount: $14,760.00*

### E.    Perkins Appeal to the Ninth Circuit of the Arbitration Order

In this project, Applicant addressed issues relating to Perkins' appeal to the Court of Appeals of the District Court's *Order Denying Motions and Appeals*, dated January 7, 2022, ECF No. 21. The *Order Denying Motions and Appeals*

affirmed this *Court's Order Denying Perkins' and Ness' Motion to Compel Arbitration and Stay*, dated April 22, 2021, ECF No. 51. The parties attended a mediation inquiry session, which did not lead to any agreement. Applicant also supplemented the designation of record and outlined the issues for Applicant's brief, which was filed after the Application Period.

*Time Spent: 10.8*                                    *Amount: $4,320.00*

**IV.      [Intentionally omitted. Only Applies in Chapter 11.]**

**V.      Other Information: None.**

## **VERIFICATION**

I, Mark D. Waldron, hereby under penalty of perjury verify that I have reviewed the foregoing Narrative Summary and the relevant Lighthouse Documents relating to that Narrative Summary. The Narrative Summary is based upon the books and records of Giga Watt, including the Lighthouse Documents, and upon my investigation of the affairs of Giga Watt.

Executed this 7 day of August 2022 in Tacoma, Washington.

Mark D. Waldron

22

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

In re:                                    )
                                          )   Case No.
                                          )
                                          )   **ORDER AWARDING COMPENSATION**
                                          )   **FOR SERVICES RENDERED AND**
                                          )   **REIMBURSEMENT OF EXPENSES**
                                          )   **PURSUANT TO 11 U.S.C. §330 or §331,**
                                          )   **AND APPROVING THE PAYMENT OF**
                                          )   **BANK FEES**
                              Debtor(s)    )

THIS MATTER HAVING come before the Court on the # _____ (☐interim ☐ final)
application of _____ dated _____, docket # _____, notice
docket # _____ and certificate of service docket # _____, for an order allowing compensation
for services rendered and reimbursement of expenses in the above entitled case; and the court
being fully advised in the premises:

NOW THEREFORE the below listed amounts are hereby allowed and awarded as compensation
and reimbursement pursuant to 11 USC §330 or §331, and approved as bank fees pursuant to
§363 and §503(b), to the above-named applicant and are authorized to be disbursed or
transferred from funds of the above entitled estate, subject to the availability of funds and the
provision of any confirmed plan. *

|                                   |                    |
|-----------------------------------|--------------------|
| Compensation in the amount        | $ _____ |
| Reimbursement in the amount of    | $ _____ |
| Bank fees                         | $ _____ |
| **TOTAL**                         | $ _____ |

* If for first application, includes compensation earned pre-petition and filing fees and other costs incurred pre-petition.

ORDER AWARDING COMPENSATION  - 1

Summary of all prior awards and approvals on previous applications:

Compensation      $ _____
Reimbursement      $ _____
Bank fees      $ _____
Total      $ _____

Disbursement information for this award:

Received directly from debtor by application
    (if for first application)      $ _____
To be paid by transfer from attorney trust account:    $ _____
To be paid by trustee      $ _____
Total      $ _____

///End of Order///

Presented by:

_____
(Signature/address/phone)

Potomac Law Group PLLC
1905 7th Ave. W
Seattle, WA 98119
(415) 297-0132

ORDER AWARDING COMPENSATION - 2