BEN ELLISON, WSBA #48315
Email: salishsealegal@outlook.com
SALISH SEA LEGAL PLLC
2212 Queen Anne Avenue North, No. 719
Seattle, WA 98109
Telephone: (206) 257-9547
Attorney for the Unsecured Creditors
Committee

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

In re:

GIGA WATT, INC.

Debtor.

18-03197-FPC11

UNSECURED CREDITORS
COMMITTEE'S LIMITED
OBJECTION TO CHAPTER 7
TRUSTEE'S MOTION TO APPROVE
SETTLEMENT

## I.    INTRODUCTION

The Chapter 7 Trustee has filed a motion and memorandum to approve a
settlement mediated recently by the Honorable Benjamin B. Hursh, resulting in
agreed payments from the Perkins Coie law firm to the creditors here,
approximately in the amount of $3 million for unsecured creditors and $4.5 million
for tokenholders.

The Unsecured Creditors Committee wants to avoid prolonging the final
resolution of matters here, and in the ordinary course would be eager for all
stakeholders to finally receive their compensation for losses suffered historically
through the failure of Giga Watt.  Nonetheless, the Committee asks the Court to
slacken the approval of settlement approval, and not just because administrative
professionals seem poised to recover at least 2/3 of the moneys payable to the
estate (reportedly $2 million, but the Chapter 7 Trustee can clarify specific
amounts on reply).

1

## II.   ARGUMENT

*A. The Trustee Cannot Represent that He Negotiated A Reasonable Settlement on Behalf of the Unsecured Creditors Given that He Failed to Fully Apprise Himself as the Strength of his Case.*

The undersigned believes that he is in possession of information relating to the financial benefit that Perkins Coie received from the relevant transactions at issue, and other lines of discovery inquiry that would have substantially aided the Chapter 7 Trustee in prosecuting his litigation against the Law Firm, or more recently, negotiating settlement with Perkins.[1]

In October 2020, when the Chapter 11 case was converting to Chapter 7, the undersigned orally stated to Ms. Egan and/or the Chapter 7 Trustee that he had important information relevant for the Perkins Coie Litigation.  There being no follow up, the undersigned specifically wrote Ms. Egan in May 2023, to remind her again that valuable information was known, that the Committee wanted to share with the Trustee, so that he could make us of this, and achieve a more successful litigation or settlement outcome against the Defendant Law Firm.  As set forth in the attached exhibit, a true and accurate copy of that communication, I wrote to Ms. Egan and the Trustee that "*if there is much more to litigate over with Perkins, I may have a line of testimony /questioning that would leverage your position.  Let me know if you would like to set up a call*."

I was shocked by the written response that I received on May 1, 2023.  Ms. Egan mockingly referenced in air-quotes the "*helpful line of 'testimony' and 'questions' to 'leverage' the Perkins litigation, and concluded*" "[r]***egarding your***

---

[1] I came to learn of this information at the inception of the bankruptcy case, when it did not appear that there would be a confrontational relationship with the Law Firm, that Perkins would face a lawsuit, or that there might be litigation advantage to finding out more about this issue.

COMMITTEE LIMITED OPPOSITION TO MOTION TO APPROVE SETTLEMENT

**_testimony or line of questioning, the Trustee neither needs not wants either_**." (emphasis added).

To top it off, the Chapter 7 Trustee's counsel assured me that she would cause the UST to object to my modest (less than $50,000) professional fees in this case. If there was any confusion as to messaging, the Chapter 7 Trustee neither wanted to consider any options other than what it was already knowledgeable of, and if the undersigned were to continue to try to share this information, there could be potentially significant litigation consequences and a financial hit.

This is all relevant to settlement approval, because the Chapter 7 Trustee "_bears the burden of showing that the compromise is fair and equitable_." _In re Woodson_, 839 F.2d 610, 621 (9th Cir. 1988). As set forth below, that burden cannot be satisfied in this case because the Trustee's counsel erected blinders to potentially knowing the full strength of their substantive case; all we know is that Perkins Coie may have negotiated the best settlement that they were able to – not that the Chapter 7 Trustee yet, has achieved the same.

   _B. While not formally disclosed here, all indications are that if true, the information would materially affect a settlement outcome_

The undersigned has shared the relevant information with the Committee. The undersigned also shared the information with Mr. Blood from the class action case, and he seemed reasonably impressed, as were attorneys that I discussed this matter with at a large Seattle trial firm.

After multiple refusals to consider whatever this information is, Ms. Egan today, September 22, 2023, after the settlement was already completed, requested to find out what the information was. The undersigned shared basic contours of the categories of information that the testimony relates to via e-mail.

The information at issue is relatively sensitive, and there is the chance that aspects of the information may be slightly different from how it is understood, but

COMMITTEE LIMITED OPPOSITION TO MOTION TO APPROVE SETTLEMENT

if correct, there probably is a strategic benefit to limiting the circle of persons who are aware of the issue. This need for discretion should come as no surprise to the Chapter 7 Trustee, as their initial complaint in the adversary proceeding is replete with a surprising amount of redactions, limiting full understanding of the precise allegations being asserted against Perkins Coie.

It goes without saying that if the Court is interested in the information, the undersigned is more than happy to share it *in camera*.

### C. The Committee's Proposal for Moving Forward; a 10 Day Pause to Consult with the Settlement Mediator

The Chapter 7 Trustee may well discount the information known to the Committee, to minimize any concerns that the settlement was not conducted in perfect form. Accordingly, the Committee requests that to make an independent assessment of the relevance of the information that Ms. Egan refused to consider, that Mr. Ellison be permitted to contact the mediator in this case, Judge Hursh, who is well-familiar with all the moving parts in this litigation. The undersigned proposes to convey to the mediator the information he believes to be relevant, and will seek the mediator's feedback as to whether he considers it to reasonably have been outcome determinative, in terms of affecting the final financial package by $250,000 or more. If Judge Hursh finds the information merely interesting or of minor import, then that can resolve this objection, and settlement confirmation can continue without the Committee's concerns.

However, if Judge Hursh agrees that if true, that the information was financially material, then it becomes a question of verifying the allegations. The Chapter 7 Trustee then can either approach Perkins Coie with the assumption that the information is accurate, and try to strike another settlement deal until the Law Firm demonstrates otherwise, or the undersigned can obtain a brief 2004 exam of Perkins Coie, which after responses are provided to effectively 5 questions, it will be very clear whether there is any "there" there, and the factual predicate was as

COMMITTEE LIMITED OPPOSITION TO MOTION TO APPROVE SETTLEMENT

Mr. Ellison believed originally.

By some metric, 10 days might seem like a long time. However, the undersigned already requested of the Chapter 7 Trustee, that he be able to meet with Judge Hursh. If we were able to work cooperatively, without court involvement, this process could be fully complete by the time of the upcoming settlement hearing, and we wouldn't be starting this process after the upcoming hearing.

## III.  CONCLUSION

The Committee respectfully submits that if the Chapter 7 Trustee went into high-stakes settlement and mediation talks, without being fully armed with all legal and factual arguments to support his case that he reasonably could have availed herself of, that the Chapter 7 Trustee would not be able to represent to the Court at the present time that they are confident that they have secured the best reasonable deal they could under the circumstances.

The Committee specifically requests that the Court not approve the settlement at the upcoming hearing, but rather establish a 2-step process for verifying the *bona fides* of the settlement contours as described below. Following these steps, which should be possible to complete in less than 2 weeks if schedules and cooperation is forthcoming, the Committee's concerns about settlement would either be fully resolved and pave the way for approval of the settlement, or they might be vindicated, and consensual support for the settlement might be withdrawn, with the opportunity for higher and more favorable financial terms.

COMMITTEE LIMITED OPPOSITION TO MOTION TO APPROVE SETTLEMENT

DATED this 22nd day of September, 2023.

**SALISH SEA LEGAL PLLC**

By:   /s/ Ben Ellison
Ben Ellison, WSBA No. 48315
2212 Queen Anne Ave. N., No. 719
Seattle, WA 98125
Tel: (206) 257-9547
Email: salishsealegal@outlook.com

COMMITTEE LIMITED OPPOSITION TO MOTION TO APPROVE
SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28