**So Ordered.**

**Dated: October 4th, 2023**



**Frederick P. Corbit**
**Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GIGA WATT, INC.<br><br>Debtor. | Case No. 18-03197-FPC<br><br>**ORDER (1) APPROVING SETTLEMENT AGREEMENT WITH PERKINS COIE LLP AND LOWELL NESS; (2) APPROVING STIPULATION WITH REFAEL SOFAIR; AND (3) APPROVING STIPULATION WITH TIMUR USMANOV** |

THIS MATTER came before the court on the Chapter 7 Trustee's Motion for Order Approving Settlement ("the Motion") (ECF No. 1007). The Motion requests approval of three agreements: (1) a settlement between the Trustee and Perkins Coie LLP and Lowell Ness; (2) a stipulation with Refael Sofair that settles his claim; and (3) a stipulation with Timur Usmanov. Benjamin Ellison, purporting to represent the Unsecured Creditors Committee, objected to the Motion. (ECF No. 1021). The Court considered the record and related pleadings and exhibits and heard argument on October 3, 2023.

**ORDER APPROVING SETTLEMENTS** – Page 1

Based on the foregoing, the Court enters the following findings of fact, conclusions of law, and order:

## INTRODUCTION

Giga Watt, Inc. ("Giga Watt") was in the business of building and running a large-scale cryptocurrency mining operation. Giga Watt's business failed, and that failure resulted in this bankruptcy proceeding and several lawsuits. On November 19, 2020, the Trustee filed an adversary action in this Court against four defendants: (1) Perkins Coie ("Perkins"), a law firm; (2) Lowell Ness, a partner in the Perkins law firm; (3) Giga Watt PTE, Ltd.; and (4) Andrew Kuzenny, the CEO of Giga Watt Singapore. (Adv. No. 20-80031, ECF No. 6) Eventually, the Trustee amended the Complaint, which included removing defendants Andrey Kuzenny and Giga Watt Singapore and adding defendant Timur Usmanov. (Adv. No. 20-80031, ECF No. 135)

A second lawsuit was filed December 16, 2020 by Jun Dam, a WTT token holder, as the nominal plaintiff, in the District Court against defendants Perkins, Lowell Ness, and Perkins' affiliates (U.S. Eastern District of Washington Case No. 20-cv-00464-SAB, ECF No. 1). Both lawsuits are based on the same core factual allegations that (i) Perkins agreed to hold millions of dollars in escrow until Giga Watt met certain milestones in construction, but Perkins released the money

prematurely, and (ii) Perkins' premature release of the escrowed funds caused significant damages.

Eventually, this Court found that three of the six class claims belonged exclusively to the estate, not the class, and subsequently granted the Trustee's request for an injunction staying the remaining three Class claims in the District Court. (ECF No. 921; Adv. No. 21-80053, ECF No. 38)

## FINDINGS OF FACT

1. The procedural history of this case is complex. For several years, the parties have been actively litigating various issues related to the bankruptcy of Giga Watt, Inc.

2. To settle the related cases, Perkins has agreed to pay the Giga Watt estate $3 million and to pay WTT Token holders $4.5 million, pursuant to two agreements: (1) between Perkins and the Trustee; and (2) between Perkins and a class of WTT token holders.

3. The proposed settlement agreement is subject to and conditioned upon the occurrence of several events, generally described as: (i) the Bankruptcy Court enters a final and nonappealable Settlement Order; (ii) the District Court enters a Final Judgment and Approval Order such that the transaction set forth in a separate Class Settlement Agreement is successfully concluded; (iii) The District Court enters an Order Dismissing the Consolidated Appeals with prejudice and without

costs or fees; and (iv) the Bankruptcy Court enters an order approving the Sofair Stipulation; and (v) the District Court dismisses with prejudice the lawsuit *Sofair v. Giga Watt, Inc., GigaWatt Pte. Ltd., David Matthew Carlson and Does 1-10,* Case No. 2:18-cv-00308-SAB. (See ECF 1011-1, at pp. 10-11)

4. The proposed agreement settles the following cases and appeals: (i) Bankruptcy Court Adversary proceeding *Waldron v. Perkins et al,* No. 20-80031; (ii) Perkins' appeal of the Bankruptcy Court's order denying the request to arbitrate pending in the Ninth Circuit Court of Appeals Case No. 22-35104; (iii) Jun Dam's District Court putative class action against Perkins Coie, Case No. 20-00464; (iv) the Trustee's injunctive relief bankruptcy adversary case against Jun Dam, Case No. 21-80053; (v) Jun Dam's appeals of the bankruptcy court's orders staying and enjoining the District Court class action, Case No. 21-00291; and (vi) a RICO action and Mr. Sofair's purported class claim. (See ECF No. 1009, pp.2-3)

5. The Trustee has reviewed Debtor's affairs, operated Debtor's facility, reviewed books, records, and documents from third parties. (ECF No. 1009 at p.2) The Trustee opined that in his business judgment, the settlement with Perkins was "reasonable, fair and equitable." (ECF No. 1009 at p.2).

6. The total amount of funds that the Trustee alleged Perkins prematurely released totaled $10.8 million. The proposed total $7.5 million settlement amount is reasonable and fair under the present circumstances.

7. Perkins disagrees with the Trustee's claim amount; in the absence of an agreement, Perkins intends to continue litigating and the case could take another five years or more to resolve. (ECF No. 1009 at p. 3-4)

8. Collecting a judgment against Perkins would likely not pose a significant problem but collecting a judgment against Mr. Usmanov would be problematic and unrealistic.

9. The Trustee describes, and the Court has witnessed, the litigation between the parties was "complex, burdensome, and time-consuming." (ECF No. 1009 at p. 4) Mr. Dam's putative class action complicated the cases. Both Perkins and Mr. Dam have demonstrated a willingness to appeal unfavorable court decisions and thus it is likely that both Perkins and Dam would continue to appeal if the cases proceed. (ECF No. 1009 at p. 4)

10. The litigation was expensive compared to the estate's resources. The estate had $371,029.44 in unencumbered funds, and the Trustee is holding an additional $112,000 in sales proceeds, pending claims by creditors to ownership of the property sold. (ECF No. 1009 at p. 4)

11. The estate paid $87,050 in attorney related to the injunction orders and the Perkins appeals cost another $60,3209 in fees. The pace of the legal actions was accelerating. (ECF No. 1009 at p. 5)

**ORDER APPROVING SETTLEMENTS** – Page 5

12. The cost of discovery was estimated at approximately $65,000. Costs would continue to accumulate in an amount of at least $500 per month. (ECF No. 1009 at p. 5)

13. The settlement will serve the paramount interest of the creditors because the creditors will receive a distribution from the estate. The Trustee expects to pay all Chapter 7 and 11 administrative expenses in full. (ECF No. 1009 at p.6)

14. The WTT Token Holders will receive $4.5 million directly from Perkins. (ECF No. 1009 at p.7)

15. The Sofair Stipulation will end the class action litigation alleging millions of dollars in damages against the estate in exchange for $16,977. The cost of defending the Sofair lawsuit would greatly exceed the settlement amount. (ECF No. 1009, p.7)

16. Dismissing the claims against Mr. Usmanov is reasonable because the claims are fact-intensive and it is doubtful a judgment against Mr. Usmanov would be collectable. (ECF No. 1009, p. 7)

17. The settlement with Perkins will pay administrative claims and provide a meaningful distribution to creditors, without the significant delay and expense of ongoing litigation in the Bankruptcy Court, District Court and Court of Appeals.

**ORDER APPROVING SETTLEMENTS** – Page 6

18. A limited objection was filed by attorney Benjamin Ellison, who asserted he represented the Unsecured Creditors Committee. Mr. Ellison requests a 10-day delay in approval of the settlement. (ECF No. 1021) Mr. Ellison asserts that "he is in possession of information relating to the financial benefit that Perkins Coie received from the relevant transactions at issue.…" (ECF No. 1021 at p. 2) Earlier, Mr. Ellison relayed the same message to the Trustee, who chose not to pursue this information. Mr. Ellison contends that the Trustee cannot bear his burden of showing the compromise is fair and equitable because "the Trustee's counsel erected blinders to potentially knowing the full strength of their substantive case…." (ECF No. 1029 at p. 3)

19. In the objection, Mr. Ellison did not disclose "information," and instead vaguely described the information as: "relatively sensitive and there is the chance that aspects of the information may be slightly different from how it is understood, but if correct, there probably is a strategic benefit to limiting the circle of persons who are aware of the issue." (ECF No. 1029 at pp. 3-4) Mr. Ellison requested the Bankruptcy Court "make an independent assessment of the relevance of the information that Ms. Egan refused to consider," and allow a ten-day delay so that Mr. Ellison could consult with the mediator and possibly order a 2004 exam of Perkins Coie. (ECF No., 1029 at p. 4)

20. Perkins responded, "it is very unlikely that Perkins would have paid any additional sums to the Trustee in settlement based on this unidentified information." (ECF No. 1028 at p. 1) Perkins' representatives spent months reviewing 1.2 terabytes of information from the Debtor. After the extensive review, Perkins "entered settlement discussions with carefully derived views about the merits of the Trustee's case, based on extensive documentation contained in the 1.2 terabytes of files produced by the debtor, and from other sources, such as documents obtained from third parties and informal interviews of potential witnesses." (ECF No. 1028 at pp. 1-2) "Perkins negotiated the settlement being submitted for approval on the basis of very extensive evidence which was carefully considered." (ECF No. 1028, p. 2)

21. The unsecured creditors committee was dissolved when the bankruptcy case was converted from a chapter 11 to a chapter 7.

22. The parties on each side spent considerable time and resources investigating the facts and circumstances of the case against Perkins. Mr. Ellison fails to persuade this Court that the undisclosed "information" is material and thus would provide a reason to delay approval of the settlement agreement.

23. This Court has extensive experience with this case and the various related litigation. The proposed settlement is fair and equitable.

24. The Notice of Motion complied with all applicable rules and satisfies due process.

**CONCLUSIONS OF LAW**

1. Rule 9019(a) authorizes the bankruptcy court to approve a compromise or settlement on the trustee's motion and after notice and a hearing.

2. "The bankruptcy court has great latitude in approving compromise agreements." *Woodson v. Fireman's Fund Insurance Co. (In re Woodson),* 839 F.2d 610, 620 (9th Cir. 1998).

3. The bankruptcy court must consider all "factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). The court may approve the settlement if it is "fair and equitable." *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986). The trustee bears the burden of proving to the bankruptcy court that the settlement is fair and equitable and should be approved. *Id.* at 1382.

4. In determining if a proposed settlement is fair and equitable, a bankruptcy court must consider: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in collecting a judgment if obtained; (c) the complexity of the litigation, and the expense, inconvenience and delay related

to the litigation; and (d) the paramount interest of the creditors and a proper deference to the creditors' reasonable views about the settlement. *In re A & C Properties*, 784 F.2d at 1381.

5. The Trustee met the burden to prove the proposed settlement is fair and equitable.

6. The limited objection to the proposed settlement presented no basis in fact and provided no reason to delay approval of the settlement agreement.

7. In considering the *A&C Properties* factors, the Court concludes that the settlement proposed by the Trustee is fair and equitable.

8. The Notice of Motion complied with all applicable rules and satisfies due process.

## ORDER

IT IS ORDERED:

1. The Trustee's Motion (ECF No. 1007) is **GRANTED**;
2. The Trustee's Settlement Agreement is approved; and
3. The Trustee is authorized to enter into the Trustee Settlement Agreement, the Sofair Stipulation and the Usmanov Stipulation, as described in the Motion.

///End of Order///