# EXHIBIT A

WESTERN WASHINGTON LAW GROUP PLLC
DENNIS J. MCGLOTHIN (#28177)
ROBERT J. CADRANELL (41773)
P.O. Box 468
Snohomish, WA  98291
Tel: 425/728-7296, ext. 4
dennis@westwalaw.com
robert@westwalaw.com
docs@westwalaw.com

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (*pro hac vice*)
THOMAS J. O'REARDON II (*pro hac vice*)
PAULA R. BROWN (254142)
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ERIC BLOMQUIST, individually and on behalf of all others similarly situated; and JUN DAM, individually, <br><br> Plaintiff, <br><br> v. <br><br> PERKINS COIE LLP, a Washington limited liability partnership; PERKINS COIE CALIFORNIA, P.C., a California corporation; PERKINS COIE U.S., P.C.; and LOWELL NESS, individually, <br><br> Defendants. | Case No: 2:20-cv-00464-SAB <br><br> **CLASS ACTION** <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br><br><br> Chief Judge Stanley A. Bastian <br><br> Complaint Filed:  December 16, 2020 <br> Trial Date:   Not Yet Set <br><br> **JURY TRIAL DEMANDED** |

Exhibit A

00202845

1    Plaintiff ERIC BLOMQUIST ("Plaintiff" or "Class Representative") brings

2    this action on behalf of himself, and all others similarly situated, and JUN DAM

3    (collectively with Blomquist, "Plaintiffs") bring this action individually against

4    Defendants PERKINS COIE LLP; PERKINS COIE CALIFORNIA, P.C.,

5    PERKINS COIE U.S., P.C. (collectively "Perkins"); and LOWELL NESS

6    ("Ness") (collectively with Perkins, "Defendants"). Plaintiffs allege on

7    information and belief, except for information based on personal knowledge, as

8    follows:

9    **NATURE OF THE CASE**

10    1.    This class action seeks monetary relief to remedy Defendants'

11    misappropriation of money that they agreed to hold in escrow and distribute in

12    accordance with solicitation documents for an initial token offering in the

13    cryptocurrency market.

14    **JURISDICTION AND VENUE**

15    2.    This Court has original jurisdiction pursuant to 28 U.S.C.

16    § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds

17    the sum or value of $5,000,000 and is a class action in which there are over 100

18    class members, and many members of the class are citizens of a state different

19    from Defendants.

20    3.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and

21    (b) and 18 U.S.C. § 1965: The money that is the subject of this action was held

22    and controlled by Perkins and related to a project located exclusively in this

23    District; Perkins is authorized to, and regularly does, conduct business in this

24    District, and Defendants have intentionally availed themselves of the laws and

25    markets within this District, caused a substantial part of the harm within this

26    District, and are subject to personal jurisdiction in this District.

Exhibit A

BLOOD HURST & O' REARDON, LLP

4.     This Court has personal jurisdiction over Defendants because all Defendants are amenable to service of process for actions commenced in this District, have sufficient minimum contacts within this District, and have purposefully availed themselves of the privilege of conducting business in the State of Washington and, therefore, the Court's exercise of jurisdiction is permissible under traditional notions of fair play and substantial justice. This Court also has personal jurisdiction over all Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) because they would be subject to the jurisdiction of a court of general jurisdiction in Washington. Perkins also has its headquarters in the State of Washington.

**PARTIES**

5.     Plaintiff Eric Blomquist resides in and is a citizen of Montana. In 2017, Plaintiff pre-purchased "Tokens" through the GW Entities' Initial Token Offering ("ITO"). As a result of Defendants' breaches of fiduciary duty in wrongfully distributing ITO funds, breach of contract, and the unfair or deceptive acts alleged herein, Plaintiff and the other members of the "Class" (as hereafter defined) suffered injury in fact and lost money or property.

6.     Plaintiff Jun Dam resides in and is a citizen of Puerto Rico. In 2017, Plaintiff pre-purchased "Tokens" through the "ITO" and in the "Secondary Market" (as hereafter described and defined). As a result of Defendants' breaches of fiduciary duty in wrongfully distributing ITO funds, breach of contract, and the unfair or deceptive acts alleged herein, Plaintiff and the other members of the "Class" (as hereafter defined) suffered injury in fact and lost money or property.

7.     Defendant Perkins Coie LLP is a Washington professional limited liability partnership and headquartered in Seattle, Washington. It regularly

BLOOD HURST & O' REARDON, LLP

Exhibit A

1    conducts business in this District. Perkins Coie LLP is one of the largest law

2    firms in the United States.

3        8.    Perkins Coie California, P.C. is a California professional

4    corporation and is registered as a foreign corporation authorized to transact

5    business in Washington. Perkins Coie California, P.C. is a subsidiary or affiliate

6    of Perkins Coie LLP.

7        9.    Defendant Perkins Coie U.S., P.C. is a Washington professional

8    corporation and a subsidiary or affiliate of Perkins Coie LLP.

9        10.    Defendant Lowell Ness resides in and is a citizen of California and

10    is identified by Perkins Coie LLP as a Perkins Coie LLP partner. According to

11    Perkins Coie LLP's webpage Ness is a "partner in [Perkins Coie LLP]'s

12    Corporate practice" and is a "core member of the Blockchain Technology and

13    Digital Currency industry group where he focuses part of his practice on assisting

14    Blockchain, Bitcoin and other cryptocurrency clients raise money." He is also

15    identified as a Perkins Coie LLP attorney on the California State Bar

16    Association's website.

## FACTUAL ALLEGATIONS

18        11.    Cryptocurrencies are digital currencies that have a recognized value.

19    There are a finite number of cryptocurrency units that are generated through

20    encryption techniques.

21        12.    In addition, there is a recognized and accepted process by which

22    cryptocurrency-based transactions are recorded, verified, and approved based and

23    the transferors and transferees use pseudonyms when conducting and receiving

24    the transfers.

25        13.    Because there is a finite number of units that have a recognized

26    value and a verified recording of transactions, cryptocurrency is a widely

BLOOD HURST & O' REARDON, LLP

Exhibit A

FIRST AMENDED CLASS ACTION COMPLAINT - 3

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296, ext. 4

1  recognized and accepted medium of exchange to acquire or transfer value

2  between persons, firms, and entities. Examples include Bitcoin, Litecoin, Dash,

3  and Ethereum. Unlike fiat currency (such as U.S. dollars, Yen, or Euros),

4  cryptocurrencies are not issued or backed by a government. Instead, they are

5  released into circulation through a digital, decentralized process called "mining."

6      14.    Mining is a process by which a person, firm, or entity can acquire

7  new cryptocurrency units and increase the value of cryptocurrency that they and

8  other miners have previously acquired. Cryptocurrency miners must expend

9  money and resources to purchase or use computerized mining equipment and

10  acquire sufficient power to run the equipment. Cryptocurrency miners' power and

11  equipment is then used to perform millions of simple but time and energy-

12  consuming computations to validate previous cryptocurrency transactions. In

13  return the miners earn units and other value for their efforts.

14      15.    Continued cryptocurrency mining also increases the value of the

15  cryptocurrency. As the total number of remaining non-circulating units decreases,

16  the number of units a miner receives for the time and money it expends in mining

17  cryptocurrency also decreases. In addition, as more miners begin to mine, the

18  number of transactions a miner must validate also increases. This means each

19  miner must expend more time and money to earn a cryptocurrency unit or other

20  value. This, in turn, increases the value of each cryptocurrency unit a miner may

21  have previously acquired or acquires through current or future mining. Because

22  continuing and increased mining increases the value of cryptocurrency units, it

23  provides an incentive for miners to continue mining.

24      16.    Cryptocurrency mining has become a multi-billion-dollar

25  technology-based industry and has created a demand for cryptocurrency

26  infrastructure and power to enable mining operations.

Exhibit A

BLOOD HURST & O' REARDON, LLP

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296, ext. 4

00202845

17.    To profit off the cryptocurrency mining demand for infrastructure and power, a Singaporean business entity, GigaWatt Pte., Ltd. ("GW Singapore"), and its affiliate Giga Watt, Inc., a Washington corporation headquartered in Wenatchee, Washington (GW Washington) (hereafter GW Washington and GW Singapore will collectively be referred to as the "GW Entities"), proposed to create a cryptocurrency mining facility in this District (the "Giga Watt Project").

18.    To finance and create the Giga Watt Project, the GW Entities solicited investors, including cryptocurrency miners, to prepurchase a "Token" that represented the right to access and use 1 watt of power and related infrastructure to conduct cryptocurrency mining operations in the Giga Watt Project that the GW Entities proposed to create and make operational.

19.    The GW Entities' promotional materials and solicitations included circulating and disseminating a document to all prospective Token investors that is commonly called a "White Paper." The White Paper, which is attached hereto as Exhibit A, described the terms and conditions of the GW Entities' Initial Token Offering ("ITO").

20.    The White Paper specifically stated that the money each person paid to prepurchase a Token or Tokens ("Token Holders") would "be deposited in escrow" and would only "be released from escrow in step with completion of the facilities." Exhibit A at 18. Specifically, the escrow agent would only disburse Token investment proceeds (i.e., the Token Holders' money) in the same proportion as the Giga Watt Project had been completed. In other words, if only 50% of the Giga Watt Project was completed, then the escrow agent was only permitted to disburse 50% of the Token investment proceeds to the GW Entities.

Exhibit A

BLOOD HURST & O' REARDON, LLP

00202845

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

21.    One or more of the GW Entities contracted with one or more of the Perkins Defendants, through Ness, and one or more of the Perkins Defendants agreed to act as the escrow agent for the Token Holders and the GW Entities.

22.    Certain officers, directors, managing agents, or shareholders of the GW Entities founded another Singaporean company, Cryptonomos Pte. Ltd. ("Cryptonomos"). The officers, directors, managing agents, or shareholders of the two GW Entities are also common to one another. In March 2017, Cryptonomos retained one or more of the Perkins Defendants and Ness to be its attorneys. In May 2017, just days before the launch of the ITO, GW Singapore retained one or more of the Defendants to be its attorneys. Cryptonomos worked extensively on the Giga Watt Project, structured the Giga Watt Project's ITO, ran the marketing campaign for the entire Giga Watt Project, managed the online platform exclusively used for Token Holders to prepurchase Tokens offered in the ITO, and was authorized to collect the Token investment proceeds for GW Singapore. Defendants represented Cryptonomos with respect to the Giga Watt Project and the ITO. The Giga Watt Project touted Perkins' involvement as an advisor and escrow agent for the ITO investment proceeds. Ness' photograph was on Cryptonomos' website. Indeed, Cryptonomos carried Perkins' name, and logo as well as Ness' photograph on its website with the caption, "Legal Consulting and Escrow. Internationally acclaimed law firm with vast experience in the field of blockchain and cryptocurrencies." The website states under Ness' photograph and next to the picture of a safe:

> All funds raised through the WTT Token Launch are put in fiat escrow (funds received in cryptocurrencies are first converted into USD). Funds are released from escrow in batches only after the underlying capacities are built and relevant tokens are issued and distributed.

Exhibit A

BLOOD HURST & O' REARDON, LLP

00202845

FIRST AMENDED CLASS ACTION COMPLAINT - 6

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296, ext. 4

18-03197-FPC7    Doc 1033-1    Filed 10/19/23    Entered 10/19/23 15:35:34    Pg 8 of 41

1
2
3

23.    Plaintiffs and other members of the Class pre-purchased Tokens through the ITO and they accepted the escrow terms and conditions offered in the White Paper.

4
5
6
7
8
9
10

24.    Tokens were transferrable, and some Token Holders began to sell their Tokens to others after they pre-purchased Tokens through the ITO on a secondary market. Each Token that was purchased on a secondary market represented the value attributable to being able to access and use the infrastructure and 1 watt of power when the Giga Watt Project was completed, and the portion of the Token investment proceeds that were to have been held in escrow by Defendants for the uncompleted portion of the Giga Watt Project.

11
12
13
14
15

25.    Plaintiffs and other members of the Class either pre-purchased Tokens through the ITO or purchased Tokens from Token Holders on a secondary market, or both. The GW Entities never completed the entire Giga Watt Project and Giga Watt Washington filed for United States Bankruptcy protection and a trustee was appointed to liquidate its assets.

16
17
18
19
20
21
22
23
24

26.    As of August 4, 2017, four days after the ITO closed, Defendants held $22,351,957.58 in Token investment proceeds, representing 20,154,783 Tokens presold to the public, for the benefit of the Token Holders and the GW Entities related to the Giga Watt Project. After making certain refunds to various Token Holders, Defendants eventually distributed all the Token investment proceeds to one or more of the GW Entities even though the Giga Watt Project had not been completed. Specifically, Defendants distributed four payments to GW Singapore totaling $10.8 million and four payments to GW Washington totaling $10,865,757.31.

25
26

Exhibit A

BLOOD HURST & O' REARDON, LLP

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

27.    As of approximately January 2018, the Giga Watt Project was approximately 50% complete. The GW Entities then stopped constructing the Giga Watt Project and no higher percentage of completion was ever obtained.

28.    Plaintiffs and the other Token Holders never discovered and could not have reasonably discovered that Defendants improperly distributed the Token investment proceeds until much later than February 2018, if at all.

## CLASS ACTION ALLEGATIONS

29.    Plaintiff Blomquist brings this case as a class action pursuant to Rules 23(b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure. The proposed Class consists of:

> All persons or entities who owned one or more Tokens on November 19, 2018.

> Excluded from the Class are: (i) jurists and mediators who are or have presided over the Action, Plaintiff's Counsel and Defendants' Counsel, their employees, legal representatives, heirs, successors, assigns, or any members of their immediate families; (ii) Defendants and any of their subsidiaries, parents, affiliates, and officers, directors, partners, employees, legal representatives, heirs, successors, or assigns, or any members of their immediate family; (iii) GigaWatt Pte., Ltd., Cryptonomos Pte. Ltd., and Giga Watt Inc. and any of these entities' subsidiaries, parents, affiliates, and officers, directors, employees, partners, agents, legal representatives, heirs, successors, or assigns, or any persons or entities who timely and properly exclude themselves from the Class.

30.    ***Numerosity.*** The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff Blomquist is informed and believes,

Exhibit A

BLOOD HURST & O' REARDON, LLP

FIRST AMENDED CLASS ACTION COMPLAINT - 8

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00202845

1   and on that basis alleges, that the proposed Class contains hundreds of members

2   from across the country and in foreign states.

3       31.    ***Existence and Predominance of Common Questions of Law and***

4   ***Fact.*** Common questions of law and fact exist as to all Class Members and

5   predominate over any questions affecting only individual Class Members. All

6   Class Members have been subject to the same conduct and their claims arise

7   from the same legal claims. The common legal and factual questions include, but

8   are not limited to, the following:

9           (a)    whether one or more Defendants breached their fiduciary

10                  duty.

11          (b)    whether one or more of the Perkins Defendants entered into

12                  and then breached an expressed or implied agreement with

13                  the Class to hold and distribute the Token investment

14                  proceeds in accordance with the White Paper's terms and

15                  conditions.

16          (c)    whether the Class are third party beneficiaries of one or

17                  more agreements between one or more of the "Perkins'

18                  Agreements with the GW Entities and Cryptonomos" (as

19                  hereafter defined) regarding holding the Token investment

20                  proceeds in escrow and distributing the Token investment

21                  proceeds strictly in accordance with the White Paper's

22                  terms and conditions.

23          (d)    whether one or more of the Perkins Defendants breached

24                  the Perkins Agreements with the GW Entities and

25                  Cryptonomos.

26

Exhibit A

BLOOD HURST & O' REARDON, LLP

FIRST AMENDED CLASS ACTION COMPLAINT - 9

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296, ext. 4

00202845

BLOOD HURST & O' REARDON, LLP

(e)    whether one or more of the Defendants are liable for violating the Washington Consumer Protection Act.

(f)    whether Defendants are liable for engaging in prohibited practices contained in the Washington's Escrow Agent Registration Act.

(g)    whether Plaintiff Blomquist and the other members of the Class are entitled to monetary relief, and the proper measure of that monetary relief.

32.    ***Typicality.*** Plaintiff Blomquist's claims are typical of the claims of the other members of the Class in that he is a member of the Class because he owned one or more Tokens on November 19, 2018, and is not a person or entity excluded from the Class.

33.    ***Adequacy of Representation.*** Plaintiff Blomquist will fairly and adequately protect the interests of the other members of the Class. Plaintiff Blomquist has retained counsel experienced in the prosecution of this type of class action litigation. Plaintiff Blomquist has no adverse or antagonistic interests to those of the other members of the Class.

34.    ***Superiority.*** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individualized litigation would increase the amount of litigation and create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. The burden and expense that would be entailed by individual litigation makes it impracticable or impossible for Class Members to prosecute their claims individually. Further, the adjudication of this action presents no unusual management difficulties.

Exhibit A

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00202845

1    35.    Unless a class is certified, Defendants may not fully compensate all
2    the injured parties for the damages they suffered because one or more of the
3    Defendants failed to disburse the Token investment proceeds they were holding in
4    escrow in accordance with the White Paper's terms.

5    **COUNT I**

6    ***Breach of Fiduciary Duty***

7    **(Against All Defendants)**

8    36.    Plaintiffs incorporate by reference and reallege the allegations
9    elsewhere in this First Amended Complaint as if fully set forth herein.

10    37.    Defendants allowed the GW Entities, and their affiliate and agent
11    Cryptonomos (that always acted within the scope of its actual or apparent
12    authority) to use their names and images as well as the Perkins logo in the White
13    Paper, the Cryptonomos website for the ITO, and other solicitation materials that
14    GW Singapore used to solicit Token presales offered through the ITO.

15    38.    Both prior to and after the GW Entities disseminated and circulated
16    the White Paper, Defendants were aware that the GW Entities were going to use
17    their names and images and the Perkins logo when soliciting Token presales
18    through the ITO. They also understood that Defendants would be receiving
19    Token investment proceeds paid by the Token Holders who pre-purchased
20    Tokens through the ITO, that Defendants were to hold the Token investment
21    proceeds in escrow and distribute the Token investment proceeds pursuant to the
22    White Paper's terms and conditions, and that the Tokens were freely transferrable
23    on the Secondary Market. Defendants, therefore, offered to hold the Token
24    investment proceeds in escrow and distribute the Token investment proceeds in
25    accordance with the White Papers' terms and conditions ("Perkins' Offer").

Exhibit A

26

BLOOD HURST & O' REARDON, LLP

FIRST AMENDED CLASS ACTION COMPLAINT - 11

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296, ext. 4

00202845

18-03197-FPC7    Doc 1033-1    Filed 10/19/23    Entered 10/19/23 15:35:34    Pg 13 of 41

BLOOD HURST & O' REARDON, LLP

39.    The Token Holders accepted Perkins' Offer and the Token Holders reposed their trust and confidence in Defendants to hold and distribute the escrowed money in accordance with the White Paper's terms and conditions ("Token Holders' Acceptance").

40.    Defendants owed the Token Holders a fiduciary duty to distribute the Token investment proceeds in accordance with the White Paper's terms and conditions.

41.    Defendants breached their fiduciary duties to the Token Holders by distributing the Token investment proceeds to one or more of the GW Entities in a manner that was inconsistent with the White Paper's terms and conditions. They distributed all the Token investment proceeds to one or more of the GW Entities prior to the Giga Watt Project being completed and not in proportion to the Giga Watt Project's completion.

42.    As a result of Defendants' breach of their fiduciary duties to Plaintiffs and the other members of the Class, they have been damaged in an amount to be determined at trial.

**COUNT II**

***Breach of Express or Implied Agreement with the Token Holders***

**(Against Perkins)**

43.    Plaintiffs incorporate by reference and reallege the allegations elsewhere in this First Amended Complaint as if fully set forth herein.

44.    Defendants formed an expressed or implied agreement with the Token Holders, including Plaintiffs and other members of the Class, when it made the Perkins Offer and when the Token Holders accepted the Perkins Offer when they gave the Token Holders' Acceptance ("Perkins Agreement with the Token Holders").

Exhibit A

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

45.     Perkins reaffirmed and ratified its obligations under the Perkins Agreement with the Token Holders when it freely and voluntarily accepted the Token investment proceeds and placed the Token investment proceeds into a trust account that was controlled by Perkins.

46.     Perkins breached the Perkins Agreement with the Token Holders when Perkins distributed all the Token investment proceeds to one or more of the GW Entities prior to the GW Entities completing the Giga Watt Project.

47.     As a result of Perkins' breach of the Perkins Agreement with the Token Holders, including Plaintiffs and other members of the Class, Plaintiffs and the other members of the Class have been damaged in an amount to be determined at trial.

## COUNT III

### *Breach of Agreements Perkins had with the GW Entities and Cryptonomos*

### **(Against Perkins)**

48.     Plaintiffs incorporate by reference and reallege the allegations elsewhere in this First Amended Complaint as if fully set forth herein.

49.     Perkins entered into one or more agreements with one or more of the GW Entities and Cryptonomos that required Perkins to hold the Token investment proceeds in escrow and to distribute the Token investment proceeds in accordance with the White Paper's terms and conditions ("Perkins' Agreements with the GW Entities and Cryptonomos").

50.     The Perkins' Agreements with the GW Entities and Cryptonomos were intended to benefit not only the contracting parties, but also the Token Holders, including Plaintiffs and the other members of the Class.

Exhibit A

BLOOD HURST & O' REARDON, LLP

00202845    FIRST AMENDED CLASS ACTION COMPLAINT - 13    Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

18-03197-FPC7    Doc 1033-1    Filed 10/19/23    Entered 10/19/23 15:35:34    Pg 15 of 41

51.     Perkins breached the Perkins' Agreements with the GW Entities and Cryptonomos when they distributed all the Token investment proceeds to one or more of the GW Entities prior to the Giga Watt Project being completed.

52.     As a result of Perkins breaching the Perkins' Agreements with the GW Entities and Cryptonomos, Plaintiffs and members of the Class, the intended third-party beneficiaries of those agreements, have been damaged in an amount to be determined at trial.

## COUNT IV

### *Defendants' Violation of Washington's Consumer Protection Act*

### (Against All Defendants)

53.     Plaintiffs incorporate by reference and reallege the allegations elsewhere in this First Amended Complaint as if fully set forth herein.

54.     The Washington Consumer Protection Act (the "WCPA"), RCW 19.86.020, provides that, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

55.     Defendants' acts were controlled by Perkins' policies and procedures that govern all Defendants.

56.     Defendants engaged in unlawful, unfair, or deceptive acts or practices through their conduct and the representations that Defendants allowed the GW Entities to make on Defendants' behalf in the White Paper, the Cryptonomos website, and other ITO solicitation materials.

57.     Defendants facilitated and allowed the GW Entities and Cryptonomos to solicit Token presales by representing that the Token investment proceeds would be held in escrow by Defendants and distributed to the GW

**Exhibit A**

BLOOD HURST & O' REARDON, LLP

FIRST AMENDED CLASS ACTION COMPLAINT - 14

00202845

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

18-03197-FPC7    Doc 1033-1    Filed 10/19/23    Entered 10/19/23 15:35:34    Pg 16 of 41

BLOOD HURST & O' REARDON, LLP

1  Entities only in the proportion that the GW Entities had completed the Giga Watt
2  Project.

3      58.  Defendants then received the Token investment proceeds and held
4  themselves out as holding the Token investment proceeds in escrow and that they
5  would distribute the Token investment proceeds in accordance with the White
6  Paper's and the Cryptonomos website's terms and conditions.

7      59.  Defendants then distributed the escrowed money inconsistent with
8  the White Paper's and the Cryptonomos website's terms and conditions and
9  began distributing the Token investment proceeds to one or more of the GW
10  Entities in a higher proportion than the Giga Watt Project had been completed.
11  Defendants continued to make distributions to one or more of the GW Entities
12  until all the Token investment proceeds had been distributed to one or more of
13  the GW Entities even though the Giga Watt Project was never completed.

14      60.  Defendants made no effort to notify the Token Holders that they
15  intended to distribute or were distributing the Token investment proceeds in a
16  manner that was inconsistent with the White Paper's and Cryptonomos website's
17  terms and conditions.

18      61.  Defendants' conduct, when considering the representations they
19  knew were made by the GW Entities and Cryptonomos, had the capacity to
20  deceive a substantial portion of the public because members of the public expect
21  and trust that attorneys and law firms that are regulated by a state bar association,
22  licensed to practice law, and exempt from registering as an escrow agent, will
23  only distribute monies that are entrusted to their care to be held in escrow will be
24  held and distributed in accordance with the applicable escrow instructions.

25      62.  Defendants' unfair or deceptive acts occurred in the conduct of trade
26  or commerce (i.e., in connection with the marketing and presale of investment

Exhibit A

00202845

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

1   opportunities and in holding and distributing the investment monies that they

2   have agreed to hold in escrow).

3         63.   Defendants' unfair or deceptive acts and practices concerning the

4   marketing and presale of Tokens during the ITO and in holding and distributing

5   the Token investment proceeds adversely affected the public interest because the

6   public relies on lawyers and law firms, especially law firms like Perkins that have

7   a reputation for being a long-time respected institution; and attorneys like Ness,

8   who is identified as a Perkins partner with an advertised reputation for dealings in

9   the cryptocurrency industry, to act consistent with the fiduciary duties they

10   undertake when acting as an escrow agent, to-wit: to handle money that is placed

11   in their capable hands in escrow to distribute that money in accordance with the

12   escrow instructions. The public's reliance is reasonable because law firms and

13   lawyers are regulated by a state bar association, they are licensed to practice law,

14   and are exempt from escrow agent registration and bonding requirements.

15         64.   Members of the public other than the Token Holders have the

16   capacity to be just as deceived and injured as the Plaintiffs and other members of

17   the Class were in this case if Defendants act like they did toward the Token

18   Holders.

19         65.   Plaintiffs and the other members of the Class have been injured as a

20   direct and proximate result of Perkins' and Ness' violations of the WCPA.

21         66.   Plaintiffs and the other members of the Class have suffered and

22   incurred actual compensatory damages to be determined at trial that results

23   directly and proximately from Defendants' WCPA violations.

24         67.   Plaintiffs and the other members of the Class are "persons" as

25   defined in RCW 19.86.010.

Exhibit A

26

BLOOD HURST & O' REARDON, LLP

68.    Plaintiffs and the other members of the Class are entitled to remedy Defendants' WCPA violations.

69.    Plaintiffs and the other members of the Class seek compensatory damages, statutory damages, exemplary damages, interest, and attorney's fees and costs as well as all other appropriate legal and equitable relief and remedies the WCPA allows.

## **COUNT V**

***Violation of Washington's Escrow Agent Registration Act RCW 18.44 ch.***

**(Against All Defendants)**

73.    Plaintiffs incorporate by reference and reallege the allegations elsewhere in this First Amended Complaint as if fully set forth herein.

74.    Defendants were responsible for accepting the Token investment proceeds ("Perkins Escrow Defendants") and were an "Escrow Agent" as that term is defined in the Washington Escrow Agent Registration Act ("WEARA"), RCW 18.44.011(8).

75.    Defendants all agreed the Token investment proceeds were to be held in "Escrow" as that term is defined in the WEARA, RCW 18.44.011(7).

76.    Defendants knew the escrow instructions that controlled how they were to handle the Token investment proceeds were the instructions in the White Paper and on the Cryptonomos website.

77.    Defendants that were not a Perkins Escrow Defendant were each a controlling person, officer, or designated officer for the Perkins Escrow Defendants' escrow business for this transaction, or other person subject to the WEARA.

78.    RCW 18.44.301(2) prohibits Defendants from "[d]irectly or indirectly engag[ing] in any unfair or deceptive practices toward any person."

Exhibit A

BLOOD HURST & O' REARDON, LLP

00202845

79.   For the reasons described in this First Amended Complaint, Defendants engaged in unfair or deceptive practices towards Plaintiffs and the other members of the Class.

80.   Plaintiffs and the other members of the Class have suffered damages in an amount to be determined at trial, that was directly and proximately caused by the Perkins Escrow Defendants and Ness engaging in the unfair or deceptive practices alleged in this Complaint that were prohibited by the WEARA.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief in interim orders and by way of entry of final judgment in their favor, in favor of those Plaintiff Blomquist seeks to represent, and against Defendants:

A.   Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff Blomquist as the Class Representative, and appointing the undersigned counsel as Class Counsel.

B.   Ordering Defendants to pay actual damages to Plaintiffs and the Class Members.

C.   Ordering Defendants to pay exemplary or punitive damages, as allowable by law, to Plaintiffs and the Class Members.

D.   Ordering Defendants to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiffs and the Class Members.

E.   Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiffs and the Class Members.

F.   Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded.

G.   Ordering such other and further equitable, injunctive, or legal relief as may be just and proper.

Exhibit A

BLOOD HURST & O' REARDON, LLP

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

1

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury for all the claims asserted in this First Amended Complaint so triable.

Respectfully submitted,

Dated: September 13, 2023

WESTERN WASHINGTON LAW
    GROUP PLLC
DENNIS J. MCGLOTHIN (#28177)
ROBERT J. CADRANELL (41773)

By:    s/ Dennis J. McGlothin
        DENNIS J. MCGLOTHIN

P.O. Box 468
Snohomish, WA  98291
Tel: 425/728-7296, ext. 4
dennis@westwalaw.com
robert@westwalaw.com
docs@westwalaw.com

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (*pro hac vice*)
THOMAS J. O'REARDON II
    (*pro hac vice*)
PAULA R. BROWN (254142)
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

*Attorneys for Plaintiff*

Exhibit A

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00202845

BLOOD HURST & O' REARDON, LLP



WESTERN WASHINGTON LAW GROUP PLLC
DENNIS J. MCGLOTHIN (#28177)
ROBERT J. CADRANELL (41773)
P.O. Box 468
Snohomish, WA 98291
Tel: 425/728-7296, ext. 4
dennis@westwalaw.com
robert@westwalaw.com
docs@westwalaw.com

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (*pro hac vice*)
THOMAS J. O'REARDON II (*pro hac vice*)
PAULA R. BROWN (254142)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

Attorneys for Plaintiffs

Mr. Blomquist is added. Jun Dam is suing individually.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| ERIC BLOMQUIST, individually and on behalf of all others similarly situated; and JUN DAM, individually,<br><br>Plaintiff,<br><br>v.<br><br>PERKINS COIE LLP, a Washington limited liability partnership; PERKINS COIE CALIFORNIA, P.C., a California corporation; PERKINS COIE U.S., P.C.; and LOWELL NESS, individually,<br><br>Defendants. | Case No: 2:20-cv-00464-SAB<br><br>**<u>CLASS ACTION</u>**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Chief Judge Stanley A. Bastian<br><br>Complaint Filed: December 16, 2020<br>Trial Date: Not Yet Set<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Perkins Coie I, P.C., and Perkins Coie California II, P.C. dropped; Perkins Coie US, P.C. added.

Exhibit A

BLOOD HURST & O' REARDON, LLP

1    Plaintiff ERIC BLOMQUIST ("Plaintiff" or "Class Representative") brings

2    this action on behalf of himself, and all others similarly situated, and JUN DAM

3    (collectively with Blomquist, "Plaintiffs") bring this action individually against

4    Defendants PERKINS COIE LLP; PERKINS COIE CALIFORNIA, P.C.,

5    PERKINS COIE U.S., P.C. (collectively "Perkins"); and LOWELL NESS

6    ("Ness") (collectively with Perkins, "Defendants"). Plaintiffs allege on

7    information and belief, except for information based on personal knowledge, as

8    follows:

9                    **NATURE OF THE C**[replaces "Defendant Perkins Coie, LLP]

10    1.    This class action seeks monetary relief to remedy Defendants'

11    misappropriation of money that they agreed to hold in escrow and distribute in

12    accordance with solicitation documents for an initial token offering in the

13    cryptocurrency market.

14                    **JURISDICTION AND VENUE**

15    2.    This Court has original jurisdiction pursuant to 28 U.S.C.

16    § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds

17    the sum or value of $5,000,000 and is a class action in which there are over 100

18    class members, and many members of the class are citizens of a state different

19    from Defendants.

20    3.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and

21    (b) and 18 U.S.C. § 1965. The money that is the subject of this action was held

22    and controlled by Perkins and related to a project located exclusively in this

23    District; Perkins is authorized to, and regularly does, conduct business in this

24    District, and Defendants have intentionally availed themselves of the laws and

25    markets within this District, caused a substantial part of the harm within this

26    District, and are subject to personal jurisdiction in this District.    Exhibit A

1      4.     This Court has personal jurisdiction over Defendants because all

2    Defendants are amenable to service of process for actions commenced in this

3    District, have sufficient minimum contacts within this District, and have

4    purposefully availed themselves of the privilege of conducting business in the

5    State of Washington and, therefore, the Court's exercise of jurisdiction is

6    permissible under traditional notions of fair play and substantial justice. This

7    Court also has personal jurisdiction over all Defendants pursuant to Federal Rule

8    of Civil Procedure 4(k)(1)(A) because they would be subject to the jurisdiction of

9    a court of general jurisdiction in Washington. Perkins also has its headquarters in

10    the State of Washington.

## **PARTIES**

11

12      5.     Plaintiff Eric Blomquist resides in and is a citizen of Montana. In

13    2017, Plaintiff pre-purchased "Tokens" through the GW Entities' Initial Token

14    Offering ("ITO"). As a result of Defendants' breaches of fiduciary duty in

15    wrongfully distributing ITO funds, breach of contract, and the unfair or deceptive

16    acts alleged herein, Plaintiff and the other members of the "Class" (as hereafter

17    defined) suffered injury in fact and lost money or property.

18      6.     Plaintiff Jun Dam resides in and is a citizen of Puerto Rico. In

19    2017, Plaintiff pre-purchased "Tokens" through the "ITO" and in the "Secondary

20    Market" (as hereafter described and defined). As a result of Defendants' breaches

21    of fiduciary duty in wrongfully distributing ITO funds, breach of contract, and

22    the unfair or deceptive acts alleged herein, Plaintiff and the other members of the

23    "Class" (as hereafter defined) suffered injury in fact and lost money or property.

24      7.     Defendant Perkins Coie LLP is a Washington professional limited

25    liability partnership and headquartered in Seattle, Washington. It regularly

26

**Exhibit A**

BLOOD HURST & O' REARDON, LLP

1    conducts business in this District. Perkins Coie LLP is one of the largest law

2    firms in the United States.

3       8.      Perkins Coie California, P.C. is a California professional

4    corporation and is registered as a foreign corporation authorized to transact

5    business in Washington. Perkins Coie California, P.C. is a subsidiary or affiliate

6    of Perkins Coie LLP.

7       9.      Defendant Perkins Coie U.S., P.C. is a Washington professional

8    corporation and a subsidiary or affiliate of Perkins Coie LLP.

9       10.     Defendant Lowell Ness resides in and is a citizen of California and

10   is identified by Perkins Coie LLP as a Perkins Coie LLP partner. According to

11   Perkins Coie LLP's webpage Ness is a "partner in [Perkins Coie LLP]'s

12   Corporate practice" and is a "core member of the Blockchain Technology and

13   Digital Currency industry group where he focuses part of his practice on assisting

14   Blockchain, Bitcoin and other cryptocurrency clients raise money." He is also

15   identified as a Perkins Coie LLP attorney on the California State Bar

16   Association's website.

17                           **FACTUAL ALLEGATIONS**

18      11.     Cryptocurrencies are digital currencies that have a recognized value.

19   There are a finite number of cryptocurrency units that are generated through

20   encryption techniques.

21      12.     In addition, there is a recognized and accepted process by which

22   cryptocurrency-based transactions are recorded, verified, and approved based and

23   the transferors and transferees use pseudonyms when conducting and receiving

24   the transfers.

25      13.     Because there is a finite number of units that have a recognized

26   value and a verified recording of transactions, cryptocurrency is a widely

BLOOD HURST & O' REARDON, LLP

**Exhibit A**

FIRST AMENDED CLASS ACTION COMPLAINT - 3

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

recognized and accepted medium of exchange to acquire or transfer value between persons, firms, and entities. Examples include Bitcoin, Litecoin, Dash, and Ethereum. Unlike fiat currency (such as U.S. dollars, Yen, or Euros), cryptocurrencies are not issued or backed by a government. Instead, they are released into circulation through a digital, decentralized process called "mining."

14.    Mining is a process by which a person, firm, or entity can acquire new cryptocurrency units and increase the value of cryptocurrency that they and other miners have previously acquired. Cryptocurrency miners must expend money and resources to purchase or use computerized mining equipment and acquire sufficient power to run the equipment. Cryptocurrency miners' power and equipment is then used to perform millions of simple but time and energy-consuming computations to validate previous cryptocurrency transactions. In return the miners earn units and other value for their efforts.

15.    Continued cryptocurrency mining also increases the value of the cryptocurrency. As the total number of remaining non-circulating units decreases, the number of units a miner receives for the time and money it expends in mining cryptocurrency also decreases. In addition, as more miners begin to mine, the number of transactions a miner must validate also increases. This means each miner must expend more time and money to earn a cryptocurrency unit or other value. This, in turn, increases the value of each cryptocurrency unit a miner may have previously acquired or acquires through current or future mining. Because continuing and increased mining increases the value of cryptocurrency units, it provides an incentive for miners to continue mining.

16.    Cryptocurrency    mining    has    become    a    multi-billion-dollar technology-based industry and has created a demand for cryptocurrency infrastructure and power to enable mining operations.

Exhibit A

FIRST AMENDED CLASS ACTION COMPLAINT - 4

00202845

BLOOD HURST & O' REARDON, LLP

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296, ext. 4

18-03197-FPC7    Doc 1033-1    Filed 10/19/23    Entered 10/19/23 15:35:34    Pg 26 of 41

BLOOD HURST & O' REARDON, LLP

17.     To profit off the cryptocurrency mining demand for infrastructure and power, a Singaporean business entity, GigaWatt Pte., Ltd. ("GW Singapore"), and its affiliate Giga Watt, Inc., a Washington corporation headquartered in Wenatchee, Washington (GW Washington) (hereafter GW Washington and GW Singapore will collectively be referred to as the "GW Entities"), proposed to create a cryptocurrency mining facility in this District (the "Giga Watt Project").

18.     To finance and create the Giga Watt Project, the GW Entities solicited investors, including cryptocurrency miners, to prepurchase a "Token" that represented the right to access and use 1 watt of power and related infrastructure to conduct cryptocurrency mining operations in the Giga Watt Project that the GW Entities proposed to create and make operational.

19.     The GW Entities' promotional materials and solicitations included circulating and disseminating a document to all prospective Token investors that is commonly called a "White Paper." The White Paper, which is attached hereto as Exhibit A, described the terms and conditions of the GW Entities' Initial Token Offering ("ITO").

20.     The White Paper specifically stated that the money each person paid to prepurchase a Token or Tokens ("Token Holders") would "be deposited in escrow" and would only "be released from escrow in step with completion of the facilities." Exhibit A at 18. Specifically, the escrow agent would only disburse Token investment proceeds (i.e., the Token Holders' money) in the same proportion as the Giga Watt Project had been completed. In other words, if only 50% of the Giga Watt Project was completed, then the escrow agent was only permitted to disburse 50% of the Token investment proceeds to the GW Entities.

Exhibit A

00202845

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296, ext. 4

BLOOD HURST & O' REARDON, LLP

21. One or more of the GW Entities contracted with one or more of the Perkins Defendants, through Ness, and one or more of the Perkins Defendants agreed to act as the escrow agent for the Token Holders and the GW Entities.

22. Certain officers, directors, managing agents, or shareholders of the GW Entities founded another Singaporean company, Cryptonomos Pte. Ltd. ("Cryptonomos"). The officers, directors, managing agents, or shareholders of the two GW Entities are also common to one another. In March 2017, Cryptonomos retained one or more of the Perkins Defendants and Ness to be its attorneys. In May 2017, just days before the launch of the ITO, GW Singapore retained one or more of the Defendants to be its attorneys. Cryptonomos worked extensively on the Giga Watt Project, structured the Giga Watt Project's ITO, ran the marketing campaign for the entire Giga Watt Project, managed the online platform exclusively used for Token Holders to prepurchase Tokens offered in the ITO, and was authorized to collect the Token investment proceeds for GW Singapore. Defendants represented Cryptonomos with respect to the Giga Watt Project and the ITO. The Giga Watt Project touted Perkins' involvement as an advisor and escrow agent for the ITO investment proceeds. Ness' photograph was on Cryptonomos' website. Indeed, Cryptonomos carried Perkins' name, and logo as well as Ness' photograph on its website with the caption, "Legal Consulting and Escrow. Internationally acclaimed law firm with vast experience in the field of blockchain and cryptocurrencies." The website states under Ness' photograph and next to the picture of a safe:

All funds raised through the WTT Token Launch are put in fiat escrow (funds received in cryptocurrencies are first converted into USD). Funds are released from escrow in batches only after the underlying capacities are built and relevant tokens are issued and distributed.

Exhibit A

*Annotations:* replaces "Perkins Defendants and Lowell" · replaces "Perkins Coie, LLP's" · same as above · replaces "one or more of the Perkins Defendants and Ness"

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

23.    Plaintiffs and other members of the Class pre-purchased Tokens through the ITO and they accepted the escrow terms and conditions offered in the White Paper.

24.    Tokens were transferrable, and some Token Holders began to sell their Tokens to others after they pre-purchased Tokens through the ITO on a secondary market. Each Token that was purchased on a secondary market represented the value attributable to being able to access and use the infrastructure and 1 watt of power when the Giga Watt Project was completed, and the portion of the Token investment proceeds that were to have been held in escrow by Defendants for the uncompleted portion of the Giga Watt Project.

25.    Plaintiffs and other members of the Class either pre-purchased Tokens through the ITO or purchased Tokens from Token Holders on a secondary market, or both. The GW Entities never completed the entire Giga Watt Project and Giga Watt Washington filed for United States Bankruptcy protection and a trustee was appointed to liquidate its assets.

26.    As of August 4, 2017, four days after the ITO closed, Defendants held $22,351,957.58 in Token investment proceeds, representing 20,154,783 Tokens presold to the public, for the benefit of the Token Holders and the GW Entities related to the Giga Watt Project. After making certain refunds to various Token Holders, Defendants eventually distributed all the Token investment proceeds to one or more of the GW Entities even though the Giga Watt Project had not been completed. Specifically, Defendants distributed four payments to GW Singapore totaling $10.8 million and four payments to GW Washington totaling $10,865,757.31.

replaces "one or more of the Perkins Defendants"

not capitalized

not capitalized and replaces the with "a"

replaces "one or more of the Perkins Defendants and Ness

Exhibit A

BLOOD HURST & O' REARDON, LLP

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00202845

18-031                -1    Filed 10/19/23    Entered 10/19/23 15:35:34    Pg 29 of 41

27.  As of approximately January 2018, the Giga Watt Project was approximately 50% complete. The GW Entities then stopped constructing the Giga Watt Project and no higher percentage of completion was ever obtained.

28.  Plaintiffs and the other Token Holders never discovered and could not have reasonably discovered that Defendants improperly distributed the Token investment proceeds until much later than February 2018, if at all.

## CLASS ACTION ALLEGATIONS

29.  Plaintiff Blomquist brings this case as a class action pursuant to Rules 23(b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure. The proposed Class consists of:

> All persons or entities who owned one or more Tokens on November 19, 2018.

> Excluded from the Class are: (i) jurists and mediators who are or have presided over the Action, Plaintiff's Counsel and Defendants' Counsel, their employees, legal representatives, heirs, successors, assigns, or any members of their immediate families; (ii) Defendants and any of their subsidiaries, parents, affiliates, and officers, directors, partners, employees, legal representatives, heirs, successors, or assigns, or any members of their immediate family; (iii) GigaWatt Pte., Ltd., Cryptonomos Pte. Ltd., and Giga Watt Inc. and any of these entities' subsidiaries, parents, affiliates, and officers, directors, employees, partners, agents, legal representatives, heirs, successors, or assigns, or any members of their immediate families; and (iv) any persons or entities who timely and properly exclude themselves from the Class.

*replaces "Perkins and Ness"*

*Blomquist added*

*date changed from date complaint was filed, 12/16/20; this is the bankruptcy Petition Date.*

*rewritten*

30.  ***Numerosity.*** The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff Blomquist is informed and believes,

Exhibit A

BLOOD HURST & O' REARDON, LLP

00202845

FIRST AMENDED CLASS ACTION COMPLAINT - 8

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296, ext. 4

18-03197-FPC7    Doc 1033-1    Filed 10/19/23    Entered 10/19/23 15:35:34    Pg 30 of 41

1  and on that basis alleges, that the proposed Class contains hundreds of members

2  from across the country and in foreign states.

3      31.    ***Existence and Predominance of Common Questions of Law and***

4  ***Fact.*** Common questions of law and fact exist as to all Class Members and

5  predominate over any questions affecting only individual Class Members. All

6  Class Members have been subject to the same conduct and their claims arise

7  from the same legal claims. The common legal and factual questions include, but

8  are not limited to, the following:

9      (a)    whether one or more Defendants breached their fiduciary

10                duty.

11     (b)    whether one or more of the Perkins Defendants entered into

12                and then breached an expressed or implied agreement with

13                the Class to hold and distribute the Token investment

14                proceeds in accordance with the White Paper's terms and

15                conditions.

16     (c)    whether the Class are third party beneficiaries of one or

17                more agreements between one or more of the "Perkins'

18                Agreements with the GW Entities and Cryptonomos" (as

19                hereafter defined) regarding holding the Token investment

20                proceeds in escrow and distributing the Token investment

21                proceeds strictly in accordance with the White Paper's

22                terms and conditions.

23     (d)    whether one or more of the Perkins Defendants breached

24                the Perkins Agreements with the GW Entities and

25                Cryptonomos.

Exhibit A

26

BLOOD HURST & O' REARDON, LLP

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296, ext. 4

00202845

(e)   whether one or more of the Defendants are liable for violating the Washington Consumer Protection Act.

(f)   whether Defendants are liable for engaging in prohibited practices contained in the Washington's Escrow Agent Registration Act.

rewritten

(g)   whether Plaintiff Blomquist and the other members of the Class are entitled to monetary relief, and the proper measure of that monetary relief.

32.   ***Typicality.*** Plaintiff Blomquist's claims are typical of the claims of the other members of the Class in that he is a member of the Class because he owned one or more Tokens on November 19, 2018, and is not a person or entity excluded from the Class.

33.   ***Adequacy of Representation.*** Plaintiff Blomquist will fairly and adequately protect the interests of the other members of the Class. Plaintiff Blomquist has retained counsel experienced in the prosecution of this type of class action litigation. Plaintiff Blomquist has no adverse or antagonistic interests to those of the other members of the Class.

34.   ***Superiority.*** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individualized litigation would increase the amount of litigation and create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. The burden and expense that would be entailed by individual litigation makes it impracticable or impossible for Class Members to prosecute their claims individually. Further, the adjudication of this action presents no unusual management difficulties.

BLOOD HURST & O' REARDON, LLP

Exhibit A

FIRST AMENDED CLASS ACTION COMPLAINT - 10

00202845

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296, ext. 4

18-03197-FPC7   Doc 1033-1   Filed 10/19/23   Entered 10/19/23 15:35:34   Pg 32 of 41

35.     Unless a class is certified, Defendants may not fully compensate all the injured parties for the damages they suffered because one or more of the Defendants failed to disburse the Token investment proceeds they were holding in escrow in accordance with the White Paper's terms.

replaces "Perkins and Ness"

replaces "Perkins Coie, LLP"

**COUNT I**

*Breach of Fiduciary Duty*

**(Against All Defendants)**

36.     Plaintiffs incorporate by reference and reallege the allegations elsewhere in this First Amended Complaint as if fully set forth herein.

37.     Defendants allowed the GW Entities, and their affiliate and agent Cryptonomos (that always acted within the scope of its actual or apparent authority) to use their names and images as well as the Perkins logo in the White Paper, the Cryptonomos website for the ITO, and other solicitation materials that GW Singapore used to solicit Token presales offered through the ITO.

38.     Both prior to and after the GW Entities disseminated and circulated the White Paper, Defendants were aware that the GW Entities were going to use their names and images and the Perkins logo when soliciting Token presales through the ITO. They also understood that Defendants would be receiving Token investment proceeds paid by the Token Holders who pre-purchased Tokens through the ITO, that Defendants were to hold the Token investment proceeds in escrow and distribute the Token investment proceeds pursuant to the White Paper's terms and conditions, and that the Tokens were freely transferrable on the Secondary Market. Defendants, therefore, offered to hold the Token investment proceeds in escrow and distribute the Token investment proceeds in accordance with the White Papers' terms and conditions ("Perkins' Offer").

replaces "one or more of the Perkins Defendants"

BLOOD HURST & O' REARDON, LLP

Exhibit A

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

omits "and Ness's"

39.    The Token Holders accepted Perkins' Offer and the Token Holders reposed their trust and confidence in Defendants to hold and distribute the escrowed money in accordance with the White Paper's terms and conditions ("Token Holders' Acceptance").

40.    Defendants owed the Token Holders a fiduciary duty to distribute the Token investment proceeds in accordance with the White Paper's terms and conditions.

41.    Defendants breached their fiduciary duties to the Token Holders by distributing the Token investment proceeds to one or more of the GW Entities in a manner that was inconsistent with the White Paper's terms and conditions. They distributed all the Token investment proceeds to one or more of the GW Entities prior to the Giga Watt Project being completed and not in proportion to the Giga Watt Project's completion.

42.    As a result of Defendants' breach of their fiduciary duties to Plaintiffs and the other members of the Class, they have been damaged in an amount to be determined at trial.

replaces "Perkins and Ness"

**COUNT II**

replaces "One or more of the Perkins Defendants"

***Express or Implied Agreement with the Token Holders***

***(Against Perkins)***

43.    Plaintiffs incorporate by reference and reallege the allegations elsewhere in this First Amended Complaint as if fully set forth herein.

44.    Defendants formed an expressed or implied agreement with the Token Holders, including Plaintiffs and other members of the Class, when it made the Perkins Offer and when the Token Holders accepted the Perkins Offer when they gave the Token Holders' Acceptance ("Perkins Agreement with the Token Holders").

Exhibit A

BLOOD HURST & O' REARDON, LLP

00202845

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

45.    Perkins reaffirmed and ratified its obligations under the Perkins Agreement with the Token Holders when it freely and voluntarily accepted the Token investment proceeds and placed the Token investment proceeds into a trust account that was controlled by Perkins.

46.    Perkins breached the Perkins Agreement with the Token Holders when Perkins distributed all the Token investment proceeds to one or more of the GW Entities prior to the GW Entities completing the Giga Watt Project.

47.    As a result of Perkins' breach of the Perkins Agreement with the Token Holders, including Plaintiffs and other members of the Class, Plaintiffs and the other members of the Class have been damaged in an amount to be determined at trial.

*replaces "one or more of the Perkins Defendants"*

*replaces "in an amount that exceeds $10 Million, plus interest"*

**COUNT III**

***Breach of Agreement to Perform with the GW Entities and Cryptonomos***
**(Against Perkins)**

48.    Plaintiffs incorporate by reference and reallege the allegations elsewhere in this First Amended Complaint as if fully set forth herein.

49.    Perkins entered into one or more agreements with one or more of the GW Entities and Cryptonomos that required Perkins to hold the Token investment proceeds in escrow and to distribute the Token investment proceeds in accordance with the White Paper's terms and conditions ("Perkins' Agreements with the GW Entities and Cryptonomos").

50.    The Perkins' Agreements with the GW Entities and Cryptonomos were intended to benefit not only the contracting parties, but also the Token Holders, including Plaintiffs and the other members of the Class.

Exhibit A

FIRST AMENDED CLASS ACTION COMPLAINT - 13

BLOOD HURST & O' REARDON, LLP

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00202845

18-03197-FPC7    Doc 1033-1    Filed 10/19/23    Entered 10/19/23 15:35:34    Pg 35 of 41

51.    Perkins [replaces "one or more of the Perkins Defendants"] [replaces "Perkins Defendants"] s' Agreements with the GW Entities and Cryptonomos when they distributed all the Token investment proceeds to one or more of the GW Entities prior to the Giga Watt Project being completed.

52.    As a result of Perkins breaching the Perkins' Agreements with the GW Entities and Cryptonomos, Plaintiffs and members of the Class, the intended third-party beneficiaries of those agreements, have been damaged in an amount to be determined at trial.

**COUNT IV**

***Defendants' Violation of Washington's Consumer Protection Act***

**(Against All Defendants)**

53.    Plaintiffs incorporate by reference and reallege the allegations elsewhere in this First Amended Complaint as if fully set forth herein.

54.    The Washington Consumer Protection Act (the "WCPA"), RCW 19.86.020, provides that, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

55.    Defendants' [replaces "Perkins and Ness"] acts were controlled by Perkins' [replaces "Perkins Coie, LLP"] policies and procedures that govern all Defendants.

56.    Defendants engaged in unlawful, unfair, or deceptive acts or practices through their conduct and the representations that Defendants allowed the GW Entities to make on Defendants' behalf in the White Paper, the Cryptonomos website, and other ITO solicitation materials.

57.    Defendants facilitated and allowed the GW Entities and Cryptonomos to solicit Token presales by representing that the Token investment proceeds would be held in escrow by Defendants and distributed to the GW

Exhibit A

00202845    FIRST AMENDED CLASS ACTION COMPLAINT - 14    **Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

BLOOD HURST & O' REARDON, LLP

18-03197-FPC7    Doc 1033-1    Filed 10/19/23    Entered 10/19/23 15:35:34    Pg 36 of 41

replaces "Perkins and Ness"

1  Entities only in the proportion that the GW Entities had completed the Giga Watt

2  Project.

3      58.   Defendants then received the Token investment proceeds and held

4  themselves out as holding the Token investment proceeds in escrow and that they

5  would distribute the Token investment proceeds in accordance with the White

6  Paper's and the Cryptonomos website's terms and conditions.

7      59.   Defendants then distributed the escrowed money inconsistent with

8  the White Paper's and the Cryptonomos website's terms and conditions and

9  began distributing the Token investment proceeds to one or more of the GW

10  Entities in a higher proportion than the Giga Watt Project had been completed.

11  Defendants continued to make distributions to one or more of the GW Entities

12  until all the Token investment proceeds had been distributed to one or more of

13  the GW Entities even though the Giga Watt Project was never completed.

14      60.   Defendants made no effort to notify the Token Holders that they

15  intended to distribute or were distributing the Token investment proceeds in a

16  manner that was inconsistent with the White Paper's and Cryptonomos website's

17  terms and conditions.

18      61.   Defendants' conduct, when considering the representations they

19  knew were made by the GW Entities and Cryptonomos, had the capacity to

20  deceive a substantial portion of the public because members of the public expect

21  and trust that attorneys and law firms that are regulated by a state bar association,

22  licensed to practice law, and exempt from registering as an escrow agent, will

23  only distribute monies that are entrusted to their care to be held in escrow will be

24  held and distributed in accordance with the applicable escrow instructions.

25      62.   Defendants' unfair or deceptive acts occurred in the conduct of trade

26  or commerce (i.e., in connection with the marketing and presale of investment

Exhibit A

Blood Hurst & O' Reardon, LLP

FIRST AMENDED CLASS ACTION COMPLAINT - 15

00202845

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

18-03197-FPC7    Doc 1033-1    Filed 10/19/23    Entered 10/19/23 15:35:34    Pg 37 of 41

opportunities and in holding and distributing the investment monies that they have agreed to hold in escrow).

63.    Defendants' unfair or deceptive acts and practices concerning the marketing and presale of Tokens during the ITO and in holding and distributing the Token investment proceeds adversely affected the public interest because the public relies on lawyers and law firms, especially law firms like Perkins that have a reputation for being a long-time respected institution; and attorneys like Ness, who is identified as a Perkins partner with an advertised reputation for dealings in the cryptocurrency industry, to act consistent with the fiduciary duties they undertake when acting as an escrow agent, to-wit: to handle money that is placed in their capable hands in escrow to distribute that money in accordance with the escrow instructions. The public's reliance is reasonable because law firms and lawyers are regulated by a state bar association, they are licensed to practice law, and are exempt from escrow agent registration and bonding requirements.

64.    Members of the public other than the Token Holders have the capacity to be just as deceived and injured as the Plaintiffs and other members of the Class were in this case if Defendants act like they did toward the Token Holders.

65.    Plaintiffs and the other members of the Class have been injured as a direct and proximate result of Perkins' and Ness' violations of the WCPA.

66.    Plaintiffs and the other members of the Class have suffered and incurred actual compensatory damages to be determined at trial that results directly and proximately from Defendants' WCPA violations.

67.    Plaintiffs and the other members of the Class are "persons" as defined in RCW 19.86.010.

Exhibit A

FIRST AMENDED CLASS ACTION COMPLAINT -

BLOOD HURST & O' REARDON, LLP

Washington Law Group PLLC
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00202845

18-03197-FPC7    Doc 1033-1    Filed 10/19/23    Entered 10/19/23 15:35:34    Pg 38 of 41

68. Plaintiffs and the other members of the Class are entitled to remedy Defendants' WCPA violations.

69. Plaintiffs and the other members of the Class seek compensatory damages, statutory damages, exemplary damages, interest, and attorney's fees and costs as well as all other appropriate legal and equitable relief and remedies the WCPA allows.

**COUNT V**

***Violation of Washington's Escrow Agent Registration Act RCW 18.44 ch.***

**(Against All Defendants)**

73. Plaintiffs incorporate by reference and reallege the allegations elsewhere in this First Amended Complaint as if fully set forth herein.

74. Defendants were responsible for accepting the Token investment proceeds ("Perkins Escrow Defendants") and were an "Escrow Agent" as that term is defined in the Washington Escrow Agent Registration Act ("WEARA"), RCW 18.44.011(8).

75. Defendants all agreed the Token investment proceeds were to be held in "Escrow" as that term is defined in the WEARA, RCW 18.44.011(7).

76. Defendants knew the escrow instructions that controlled how they were to handle the Token investment proceeds were the instructions in the White Paper and on the Cryptonomos website.

77. Defendants that were not a Perkins Escrow Defendant were each a controlling person, officer, or designated officer for the Perkins Escrow Defendants' escrow business for this transaction, or other person subject to the WEARA.

78. RCW 18.44.301(2) prohibits Defendants from "[d]irectly or indirectly engag[ing] in any unfair or deceptive practices toward any person."

BLOOD HURST & O' REARDON, LLP

FIRST AMENDED CLASS ACTION COMPLAINT - 17

00202845

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296, ext. 4

*Handwritten annotations:*
replaces "Perkins and Ness"
replaces "Ness and each Perkins Defendants"
replaces, "Each Perkins Defendant that was"
syntax change
Exhibit A

*replaces "Perkins and Ness"*

*replaces "in an amount that exceeds $10Million, plus interest"*

79.   For the reasons described in this First Amended Complaint, Defendants engaged in unfair or deceptive practices towards Plaintiffs and the other members of the Class.

80.   Plaintiffs and the other members of the Class have suffered damages in an amount to be determined at trial, that was directly and proximately caused by the Perkins Escrow Defendants and Ness engaging in the unfair or deceptive practices alleged in this Complaint that were prohibited by the WEARA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief in interim orders and by way of entry of final judgment in their favor, in favor of those Plaintiff Blomquist seeks to represent, and against Defendants:

A.   Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff Blomquist as the Class Representative, and appointing the undersigned counsel as Class Counsel.

B.   Ordering Defendants to pay actual damages to Plaintiffs and the Class Members.

C.   Ordering Defendants to pay exemplary or punitive damages, as allowable by law, to Plaintiffs and the Class Members.

D.   Ordering Defendants to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiffs and the Class Members.

E.   Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiffs and the Class Members.

F.   Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded.

G.   Ordering such other and further equitable, injunctive, or legal relief as may be just and proper.

**Exhibit A**

BLOOD HURST & O' REARDON, LLP

00202845

FIRST AMENDED CLASS ACTION COMPLAINT - 18

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296, ext. 4

18-03197-FPC7   Doc 1033-1   Filed 10/19/23   Entered 10/19/23 15:35:34   Pg 40 of 41

1

BLOOD HURST & O' REARDON, LLP

# JURY TRIAL DEMAND

Plaintiffs demand a trial by jury for all the claims asserted in this First Amended Complaint so triable.

Respectfully submitted,

Dated: September 13, 2023

WESTERN WASHINGTON LAW
      GROUP PLLC
DENNIS J. MCGLOTHIN (#28177)
ROBERT J. CADRANELL (41773)

By:     *s/ Dennis J. McGlothin*
        DENNIS J. MCGLOTHIN

P.O. Box 468
Snohomish, WA  98291
Tel: 425/728-7296, ext. 4
dennis@westwalaw.com
robert@westwalaw.com
docs@westwalaw.com

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (*pro hac vice*)
THOMAS J. O'REARDON II
      (*pro hac vice*)
PAULA R. BROWN (254142)
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

*Attorneys for Plaintiff*

Exhibit A

00202845