## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF WASHINGTON

Case Name: _____     Case Number: _____

## APPLICATION FOR AWARD OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES PURSUANT TO 11 USC 330, AND FOR APPROVAL OF THE PAYMENT OF BANK FEES

Name of Applicant: _____

Position of Applicant: _____

Application Number: _____     ☐ Interim     ☐ Final

The undersigned applicant applies to the court for an award or allowance of compensation for services rendered and for reimbursement of expenses incurred in the above entitled case pursuant to 11 USC 330 *(or USC 331 if an interim application)*, and for approval of the payment of bank fees pursuant to sections 363 and 503(b). This application is supported by the following information and attached documents.

I. *(If applicant is employee of trustee, debtor in possession or creditors committee)* Date of Entry of Order Approving Employment: _____

II. Dates Covered by this Application: _____ to _____

III. The name, position, hourly rate, total time spent and amount requested for all compensation for services rendered by each person covered by this application, in connection with this case, is as follows *(if this is the FIRST Application, include **ALL** time and amounts, both pre- and post-petition in this Application): **$900,000, 30% of $3 million Perkins adversary settlement***

| Name | Position | Hourly Rate | Total Time | Amount Requested |
|------|----------|-------------|------------|------------------|
|      |          | $           |            | $                |
|      |          | $           |            | $                |
|      |          | $           |            | $                |
|      |          | $           |            | $                |
|      |          | $           |            | $                |
|      |          | $           |            | $                |
| Totals |        |             |            | $                |

IV. Total amount of REIMBURSEMENT of expenses requested by this application in connection with this case *[if this is the **FIRST** Application, include **ALL** costs (including filing fees), both pre- and post-petition]:*     $ _____

V. Total of Compensation and Reimbursement requested:     $ _____

APPLICATION FOR COMPENSATION AND REIMBURSEMENT - 1

VI.   *(If applicant is a trustee)*  The maximum amount of compensation allowable under 11 USC 326(a) is: $ _____ .

VII.  *(If applicant is an employee of trustee, debtor in possession or creditors committee).*  All compensation for services rendered and reimbursement of expenses incurred for which award was sought were necessary to the administration of the case, beneficial to the estate, and does not include any unnecessary duplication of services.

☐ Yes          ☐ No          ☐ N/A          *(If answer is NO, attach an explanation.)*

VIII. *(If applicant is the attorney for the debtor)*  All compensation for services rendered and reimbursement for expenses incurred for which award is sought for representing the interests of the debtor(s) were necessary and beneficial to the debtor(s) in connection with the case.

☐ Yes          ☐ No          ☐ N/A          *(If answer is NO, attach an explanation.)*

IX.   Compensation or reimbursement previously received has been shared with another entity, or an agreement or understanding exists between the applicant and any other entity for sharing of compensation received or to be received for services rendered in or in connection with this case, except as a member or regular associate of a firm of lawyers.

☐ Yes          ☐ No          *(If answer is YES, attach an explanation.)*

X.    Attached to this application, and made part of this application are the following supporting documents:

a.   ☐  Statement of Money or Property Received or Promised Other than by Applicant *(required in all cases, LF 2016A);*

b.   ☐  Summary Supporting Application for Compensation for Services or Reimbursement of Expenses *(required in all cases, LF 2016B);*

c.   ☐  Itemization of Services Rendered *(required; itemization must be by project category if cumulative compensation exceeds $10,000);* **Not required per LBR 2016-1(b)(1)(B)(i).**

d.   ☐  Itemization of Expenses *(required)*; and

e.   ☐  Narrative Summary *(required if cumulative compensation exceeds $10,000, LF 2016C).*

XI.   Bank Fees:  $_____

The undersigned Applicant states under penalty of perjury that the representations contained in this application and attachments are true and correct to the best of the applicant's knowledge and belief.

DATED: _____          _____

*(Signature of Applicant)*

Name:      _____

Position:  _____

Address:   _____

Phone:     _____

Fax:       _____

Email:     _____

APPLICATION FOR COMPENSATION AND REIMBURSEMENT - 2

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

Case Name: _____  Case Number: _____

## STATEMENT OF MONEY OR PROPERTY RECEIVED OR PROMISED
## IN CONNECTION WITH THIS CASE OTHER THAN BY APPLICATION OR A PLAN

Name of Applicant: _____

Position of Applicant: _____

Application Number: _____

       No Money or property was received or promised other than by application as a part of a Chapter 13 Plan.

(a)    Money or things of value received other than by application or as part of a Chapter 13 Plan:

    (1)    Amount received by attorney or firm for filing fee    $_____

    (2)    Amount received before the order for relief by attorney or firm for services and costs    $_____

    (3)    Amount received after the order for relief by attorney or firm for services and costs    $_____

    (4)    Value of any property or service given to attorney or firm as payment of fees and costs    $_____
           Description:

    (5)    Total of entries 1, 2, 3 and 4    $_____

    (6)    Amount remaining in client trust account    $_____

(b)    Amount applied to filing fee and services    $_____
*(Subtract entry (a)(6) from entry (a)(5))*

(c)    Money promised:    $_____
Nature of arrangement for promise of payment:
_____

(d)    Total amount and value of all money or property received or promised other than by Application or a Chapter 13 Plan *(items (a)(5) and (c))*    $_____

(e)    Other Items *(Value and description of any liens, guarantees, security interests or promissory notes):*
_____

(f)    Source of Payment of Promise *(If other than the debtor, identify entity and relationship to the debtor):*
_____

STATEMENT OF MONEY OR PROPERTY RECEIVED

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

Case Name: *In re Giga Watt, Inc.*                    Case Number: 18-03197

Name of Applicant:          Potomac Law Group PLLC, Pamela M. Egan
Position of Applicant:       Special Litigation Counsel to Mark D. Waldron, in his capacity as
                             Chapter 7 Trustee
Application Number:          One (1)

This is the first and final application by the Potomac Law Group, PLLC for payment of a 30%
contingency fee pursuant to that certain Order, dated December 15, 2020 (ECF 840). Fees and
reimbursement will be paid from the proceeds of the settlement of adversary proceeding,
Waldron v. Perkins, et al., Adv. Proc. No. 20-80031. The settlement proceeds are $3 million.

Pursuant to a separate Order, dated October 27, 2020 [ECF 785], Applicant also serves as
general counsel to the Chapter 7 Trustee with fees paid at the rate of $400 per hour. Pursuant to
that separate Order, Applicant has been paid as set forth below:

| Sequential # | | Applied For | Awarded | Received |
|---|---|---|---|---|
| **A** | **Date** | | | n/a |
| Receipts other than by Application *(Transfer from (b) of Application LF 2016A)* | **Compensation** | | | $0.00 |
| | **Expenses** | | | $0.00 |
| Prior Application #1 | **Date** | 3/10/2021 | 4/14/2021 | 4/21/2021 |
| | **Compensation** | $30,040.00 | $30,040.00 | $30,040.00 |
| | **Expenses** | $0.00 | $0.00 | $0.00 |
| Prior Application #2 | **Date** | 7/16/2021 | 8/17/2021 | 8/20/2021 |
| | **Compensation** | $42,680.00 | $42,680.00 | $42,680.00 |
| | **Expenses** | $0.00 | $0.00 | $0.00 |

| Sequential # | | Applied For | Awarded | Received |
|---|---|---|---|---|
| Prior Application | **Date** | 4/1/2022 | 5/3/2022 | 5/4/2022 |
| #3 | **Compensation** | $65,360.00 | $65,360.00 | $65,360.00 |
| | **Expenses** | $350.00 | $350.00 | $350.00 |
| Prior Application | **Date** | 8/22/2022 | 9/21/2022 | 9/26/2022 |
| #4 | **Compensation** | $65,320.00 | $65,320.00 | $65,320.00 |
| | **Expenses** | $31.71 | $31.71 | 31.71 |
| Prior Application | **Date** | 2/2/2023 | 3/8/2023 | 3/10/2023 |
| #5 | **Compensation** | $74,480.00 | $74,480.00 | $74,800.00 |
| | **Expenses** | $482.31 | $482.31 | $482.31 |
| **Totals** | **Compensation** | $277,880.00 | $277,880.00 | $277,880.00 |
| **B** | **Expenses** | $864.02 | $864.02 | $864.02 |
| | **Total Comp. + Exp.** | $278,744.02 | $278,744.02 | $278,744.02 |

Case Name: Giga Watt, Inc.                    Case Number: 18-03197 FPC
Adv. Pro. Name: Waldron v. Perkins, et al     Adv. Pro. No.: 20-80031

NARRATIVE SUMMARY
(Required by LBR 2016-1(b)(1)(A) where requested
compensation exceeds $10,000.00)

Name of Applicant:            Potomac Law Group PLLC
Position of Applicant:        Special Litigation Counsel to Chapter 7 Trustee
Application Number:           One (1)
Application Period:           Not applicable – contingency fee
Contingent Fees Requested:    $900,000.00
Expenses Requested:           $   1,648.15

This Application seeks approval for the payment of contingency fees and reimbursement of litigation expenses incurred by the Potomac Law Group PLLC ("Applicant" or the "Firm") in the adversary proceeding entitled, *Waldron v. Perkins*, Case No. 20-80031 ("Perkins Adversary"). In settlement of the Perkins Adversary, Perkins Coie LLP has agreed to pay the estate a $3 million settlement fund. Pursuant to the *Order Approving Employment Under 11 U.S.C. § 327 By Trustee/Debtor-in-Possession*, dated December 14, 2020 (ECF No. 840) ("Special Counsel Employment Order"), the Chapter 7 Trustee retained the Firm as special litigation counsel. The Special Counsel Employment Order provides that, subject to further order of this Court pursuant to 11 U.S.C. § 330, the Firm is entitled to fees in the amount of 30% of any recovery in the Perkins Adversary up to $10 million, and fees of 25% of any recovery exceeding $10 million.

1

The settlement fund amounts to $3 million. Therefore, in accordance with the Special Counsel Employment Order, the Firm requests compensation of $900,000, which is 30% of the settlement amount. Compensation is to be paid from the settlement proceeds.

The Firm also seeks reimbursement for the following litigation expenses incurred in connection with the Perkins Adversary:

| Expense Date | Expense Description | Expense Amount |
|---|---|---|
| 01/06/2023 | Postage for Mailing: (1) First Amended Cpt; (2) Reissued Summons to T. Usmanov; (3) Notc. Of Scheduling Conf to T. Usmanov | $12.75 |
| 09/14/2023 | Cost of service of Notice of Motion for Orders Approving Settlement and of Motion for Indicative Ruling by Stretto | $473.70 |
| 10/19/2023 | Court filing fee on motion for relief from stay to allow WTT Token class settlement to proceed | $188.00 |
| 12/15/2023 | Cost of service of notice of Motion for Relief from Stay by Stretto | $473.70 |
| 7/28/2024 | Estimated cost of serving notice of this Application | $500.00 |
| **Grand Total** | | **$1,648.15** |

At the hearing, Applicant will present the actual cost of service of notice of this Application.

2

# I. Background

## A. Prepetition

In 2017, Giga Watt, Inc. ("Giga Watt") and its affiliates conducted a public offering and capital raise known as an Initial Coin Offering (the "GW ICO"). This offering was managed by a group of Russian nationals, including Andrey Kuzenny, who operated through offshore corporations. David Carlson, an American, was the public face of the GW ICO.

The GW ICO's sales pitch claimed that David Carlson and his company, Giga Watt, had overcome significant obstacles to profitable cryptocurrency mining. They purportedly were building a 30 MW facility in East Wenatchee, Washington, near the Pangborn Airport, and had secured a power contract on favorable terms with the Douglas County Public Utility District. According to the pitch, Carlson aimed to "democratize" cryptocurrency mining by enabling "the little guy" to earn money from it.

Katrina Arden, a/ka/ Katrina Grant or Ekatarina Kovalyeva, a Russian national with a California law license who operated out of Puerto Rico, structured the GW ICO. The GW ICO sold WTT Tokens and cryptocurrency miners. On Arden's recommendation, her clients retained Perkins Coie and Lowell Ness at Perkins Coie to provide a "final review" of all documents issued concerning the GW ICO and, the Trustee alleged, to advise on its structuring. Arden concluded

18-03197-FPC7     Doc 1044     Filed 07/26/24     Entered 07/26/24 16:14:47     Pg 8 of 23

that if the sales proceeds of the WTT Tokens were held in trust until Giga Watt's new facilities began operating, the WTT Token would not be considered a security under U.S. securities laws, but rather a utility token. Lowell Ness is an expert on the "utility token" analysis, having testified before Congress on the matter.

The GW ICO promoters widely disseminated a White Paper describing the Giga Watt Project and estimating potential returns on the purchase of WTT Tokens and miners. The White Paper also reflected Arden's "utility token" structure, stipulating that WTT Token sales proceeds would be held in escrow until the Giga Watt facilities became operational. The release of WTT Tokens was to be coordinated with the growth of operations.

At the last minute, Arden requested that Perkins Coie serve as the GW ICO escrow agent, and Mr. Ness agreed. The ICO ran from May 2017 to August 2017, during which time $21,665,757.58 in GW ICO-related funds were deposited into Perkins' IOLTA trust account.

In the settled litigation, the Trustee alleged that Perkins did not handle the funds according to the terms outlined in the White Paper. Instead, Perkins released the funds whenever requested by Andrey Kuzenny. Giga Watt never commenced operations at Pangborn. Instead, it constructed alternative facilities in Moses Lake, Washington, which incurred higher rent and power costs than those

4

at Pangborn. Furthermore, the construction was chronically underfunded and insufficient to serve all the WTT Tokens sold. Giga Watt had facilities adequate to service only half the WTT Tokens sold, yet Perkins disbursed all the WTT Token sales proceeds.

In late 2017 and 2018, three securities class action suits and one RICO class action were filed against Giga Watt by purchasers of WTT Tokens and/or miners. In April 2018, the U.S. Securities and Exchange Commission commenced an investigation of the GW ICO. Post-petition, in April 2019, the SEC terminated the investigation without exonerating Giga Watt.

### B. *The Bankruptcy Case*

On November 19, 2018, Giga Watt filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Andrey Kuzenny signed the petition. The schedules were incomplete and inaccurate. Debtor's request for DIP financing was denied. On January 24, 2019, the Court approved Mark D. Waldron's appointment as Chapter 11 Trustee. ECF No. 146.

On September 30, 2020, the Bankruptcy Court entered an Order converting the bankruptcy case from Chapter 11 to Chapter 7 of the Bankruptcy Code. ECF No. 744. The same day, the U.S. Trustee's Office appointed Mark D. Waldron as Trustee in the Chapter 7 case. ECF No. 745.

### C.   *The Perkins Adversary*

On November 30, 2020, the Trustee commenced the Perkins Adversary, alleging, *inter alia*, that Perkins had breached its fiduciary duty to Giga Watt by prematurely releasing $10.8 million from its IOLTA trust account.

On December 16, 2021, Jun Dam on behalf of himself and a putative class of WTT Token holders commenced a similar suit against Perkins in the United States District Court, Eastern Washington, entitled *Dam v. Perkins*, Case No. 20-464. This Court later stayed and enjoined the WTT Token class action.

On July 20, 2022, the Court appointed The Honorable Benjamin P. Hursh of the United States Bankruptcy Court for the District of Montana as settlement judge. Perkins Adversary, ECF No. 99. On January 20, 2023, a full-day in-person mediation occurred which Perkins, the Trustee, and Jun Dam on behalf of the WTT Token holders attended. That session did not result in a settlement. On April 30, 2023, Judge Hursh withdrew as settlement judge. ECF No. 171. In September 2023, Perkins, the Trustee, and the WTT Token holders finalized the settlement terms. On October 5, 2023, this Court approved the Trustee's settlement. ECF No. 1031. On February 2, 2024, the District Court approved the WTT Token settlement on a preliminary basis. (*Dam v. Perkins*, Case No. 20-464, USDC EDWA, ECF No. 66) After a comprehensive noticing program, no WTT Token holders either opted out of the settlement or objected to the

settlement. Claims representing 24,997,323.73 tokens were filed. On May 23, 2024, the District Court granted final approval of the WTT Token settlement. *Id.*, ECF No. 83.

Payment of $3 million to the estate and $4.5 million to the WTT Token holders is due on July 29, 2024 pursuant to the settlements with Perkins.

## II.    Project Summaries

Pursuant to LBR 2016-1(b)(1)(B)(i), contingency fee applications do not have to include itemized time entries or project summaries. Nonetheless, Applicant worked 2,536.80 hours in the Perkins Adversary which if paid at Ms. Egan's typical hourly rate of $600 would exceed the requested contingency fee. The following chart summarizes the work by project:

| Task Code | Percentage of Total Time | Sum of Total Time |
|---|---|---|
| Fact Investigation/Development | 28.74% | 729.20 |
| Settlement/Mediation | 24.42% | 619.50 |
| Pleadings | 15.75% | 399.60 |
| Discovery | 13.08% | 331.80 |
| Motion to Compel Arbitration | 4.24% | 107.50 |
| Relief from Stay Against WTT Token Class | 3.74% | 94.90 |
| Motion to Strike Jury Demand | 3.70% | 93.80 |
| Motion to Withdraw the Reference | 2.99% | 75.90 |
| Other Written Motions and Submissions | 1.57% | 39.90 |
| Budgeting | 1.25% | 31.80 |

| Task Code | Percentage of Total Time | Sum of Total Time |
|---|---|---|
| Trial and Hearing Attendance | 0.50% | 12.60 |
| Status Conferences | 0.01% | 0.30 |
| **Grand Total** | **100.00%** | **2536.80** |

## III.    Financial Condition of the Estate

1.    <u>Profit and Loss</u>: Not applicable. Debtor is not operating.

2.    <u>Amount of Cash on Hand or on Deposit</u>: $3,478,823.68, assuming

the $3 million settlement amount is paid by July 29, 2024 when due.

3.    <u>Amount of Accrued Unpaid Administrative Expenses</u>:

| Expense Description | Amount |
|---|---|
| Accountants' Fees | $10,979.00 |
| Chapter 7 Attorneys' Fees | $980 (waived) |
| Attorneys' Fees accrued after Application Period (through date of filing of this Application) | n/a, contingency fee case |
| Chapter 7 Trustee's Fees | $138,123.11 |
| **Total** | $149,102.11 |

4.    <u>Amount of Unencumbered Funds in the Estate</u>: $3,478,823.68. This

assumes that Perkins pays the $3 million settlement amount by July 29, 2024

when due.

## IV.    Applicant's Work Was Necessary and Benefitted the Estate

Applicant's efforts resulted in a $3 million payment to the estate and an

additional $4.5 million payment to the WTT Token holders. Under the

settlement, WTT Token class members are releasing the estate from all claims

8

"that arise from or relate to the facts giving rise to this [Class] Action." Trustee's Motion to Approve Settlement, ECF No. 1008 at 4:1-17. WTT Token holders had filed approximately $70 million in claims against the estate. They are now released. The settlement also secured the withdrawal of a RICO purported class claim asserted on behalf of "purchasers" of Giga Watt's mining services.

This settlement has made the case administratively solvent and paves the way for a meaningful distribution to creditors.

## V. The Contingence Fee is Reasonable and Commensurate With the Complexity, Importance, and Nature of the Perkins Adversary

### A. *The Investigation Was Complex*

The alleged facts of the case were straightforward: Perkins prematurely released funds from its trust account to Giga Watt's detriment. However, uncovering these facts required considerable skill and tenacity. Giga Watt management refused to cooperate, and the information provided to the SEC was inaccurate. Perkins informed the Trustee that it had never represented Giga Watt and had no relationship with the company.

To successfully litigate and obtain the beneficial settlement, Applicant diligently researched the facts, including: (1) interviewing WTT Token holders, former employees, landlords, and contractors; (2) obtaining and reviewing the extensive files of Wilson Sonsini Goodrich & Rosati, which had represented Giga Watt in the SEC investigation; (3) obtaining an accounting from Perkins Coie of

9

the GW ICO escrow; and (4) obtaining public records confirming construction and power consumption. Applicant reviewed tens of thousands of pages of documents, social media posts, videos, and financial records. Demonstrating expertise in using spreadsheets and databases, Applicant effectively analyzed, organized and timely produced to Perkins a large volume of documents. The Lighthouse Documents alone were 223.4 gigabytes. No discovery disputes required the Court's involvement.

Throughout the investigation, Applicant regularly updated the Trustee, providing detailed reports and charts to illustrate the facts. The thoroughness of Applicant's investigation was such that, with the Trustee's consent, Applicant sent Perkins copies of the Verified Complaint and the Amended Complaint, which contained hyperlinks to the evidence supporting the specific allegations.

### B.     *The Litigation Was Vigorous.*

Applicant successfully opposed Perkins' motions to withdraw the reference and to compel arbitration in Singapore. Applicant also prevailed in moving to strike Perkins' jury demand, thereby establishing that the Trustee's claims were equitable rather than legal in nature.

Following the resolution of Perkins' initial motions, Applicant continued its investigation into the GW ICO. Utilizing Microsoft Access, Applicant created a comprehensive database to analyze the GW ICO cash flows. This analysis

effectively rebutted Perkins' argument that Giga Watt had received the prematurely released funds and therefore lacked a valid claim against Perkins.

In April 2022, Applicant uncovered that Lighthouse Technologies had imaged all of Giga Watt's electronic files for the SEC investigation. Applicant promptly obtained these files, totaling over 1 terabyte of data. After processing, the information was distilled to 223.4 gigabytes.

In Applicant's view the documents obtained from Lighthouse Technologies, known as the "Lighthouse Documents," contradicted Perkins' claim that it had not represented Giga Watt. The documents also revealed that Andrey Kuzenny had exploited Giga Watt as a cash cow and a repository for liabilities, while revenues were redirected to Kuzenny's offshore entities. This critical information led Applicant, with the Trustee's approval, to draft an amended complaint. Although Perkins objected to the amendment, the Court granted the Trustee's motion to amend the complaint.

Subsequently, Perkins filed a Third-Party Complaint seeking to join the WTT Token class action with the Perkins Adversary. Applicant drafted the Trustee's motion to strike this complaint as violating this Court's previous orders staying and enjoining the WTT Token class action. In late 2022, the Court continued this matter pending the outcome of settlement negotiations.

11

### C.      *Mediation Was Complex and Protracted*

Perkins, like the Trustee, demanded repose from the WTT Token holders, creating a situation akin to untangling a complex knot, where aligning the interests of all three parties required careful and precise coordination.

The settlement judge was appointed on July 20, 2022. Perkins Adversary, ECF No. 99. While actively litigating with Perkins regarding the Trustee's amended complaint and Perkins' third-party complaint, Applicant provided summaries and charts of the Trustee's case to the Honorable B. P. Hursh, serving as the settlement judge.

The parties attended a full day of in-person mediation on January 20, 2023, which did not result in a settlement. The Hon. B.P. Hursh withdrew as settlement judge in April 2023. Perkins Adversary, ECF No. 171. Despite this setback, Applicant remained steadfast, maintaining communication with counsel for Perkins and the WTT Token holders.

The settlement terms were finalized in September 2023. Due to the extensive noticing requirements for the WTT Token class action settlement, final District Court approval was not received until May 2024, nearly two years after the settlement judge's appointment in July 2022.

During the height of the settlement negotiations, which lasted for most of 2023, Applicant's ability to take on significant new bankruptcy matters was limited in light of the possibility that the Perkins Adversary would not settle.

### D. *The Perkins Adversary Was Important*

The Port of Douglas County, now the Chelan Douglas Regional Port Authority, is a governmental entity dedicated to promoting local business. It granted Giga Watt advantageous rental terms for the Pangborn site in alignment with its mission. Similarly, the Douglas County Public Utility District, also a governmental entity, provided Giga Watt with favorable terms. Both the Port and the District suffered damage due to Giga Watt's actions, which have implications for the public interest.

Further, Applicant's work has strengthened the Bankruptcy Court's authority, showing it is not a haven for unscrupulous behavior or financial misconduct.

## VI. Applicant Has Demonstrated Skill and Experience in the Bankruptcy Field and Regarding Russia

Pamela Egan, a partner at Applicant, brought to this case relevant dual expertise in bankruptcy law and the Russian entrepreneur business culture, both of which were relevant given that a group of Russian nationals conducted the GW ICO and placed Giga Watt into bankruptcy before fleeing.

13

Ms. Egan has practiced bankruptcy law since 1996 and is a member of the California and Washington bars. She earned her J.D. from Cornell University in 1989. She spent more than eleven years (2002 to 2013) at the San Francisco office of Pachulski, Stang, Ziehl, & Jones, a nationally recognized bankruptcy boutique firm where she represented debtors, official creditors' committees, trustees, creditors, asset purchasers, and parties to avoidance actions. Since June 2019, Ms. Egan has been a partner at Potomac Law Group. She was awarded the 2020 M&A Advisory Group 14th Annual Turnaround Award for her role in the bankruptcy case of Empyrean Towers (Case No. 15-42341, USBC, NDCA), where she facilitated the transformation of a dilapidated residential hotel into affordable housing. In 2019, she received the 13th Annual Turnaround Award for her work in the bankruptcy case of XS Ranch Fund VI, LP (Case No. 16-31367, USBC, NDCA), where she achieved an order mandatorily subordinating $22 million in secured debt, leading to a confirmed plan that paid creditors in full.

Ms. Egan also brought to bear in this case a deep skill set regarding the Russian tech and business culture. Ms. Egan majored in Soviet Area Studies as an undergraduate at Dartmouth College, earning her B.A. in 1982. As part of her undergraduate studies, she also studied in the Soviet Union. She speaks Russian. This allowed her to interview Russian former management in Russian and read their unguarded communications without an interpreter.

In addition, Ms. Egan left Pachulski Stang to apply for a grant from the United States Department of State which she successfully obtained. This grant facilitated collaboration between the Berkeley Center for Law, Business, and the Economy at the University of California, Berkeley, and the Higher School of Economics in Nizhny Novgorod, Russia. Together, they surveyed Russian tech entrepreneurs in Silicon Valley and Russia on legal obstacles to innovation in Russia. The findings were presented at the ABA Section of International Law Spring Meeting in April 2016, New York City, revealing significant corruption in the Russian tech community. This empirical study enabled Ms. Egan to recognize early on that this case deserved both scrutiny and Applicant's efforts, despite the estate's lack of resources.

Ms. Egan is a Fellow of the American Bar Foundation and holds an AV Preeminent Peer Rating, Martindale-Hubbell's highest distinction for ethics and legal ability. Additionally, she serves as the Vice-Chair of the International Bankruptcy Subcommittee of the ABA's Bankruptcy Committee. In this capacity, she is organizing, along with others, a panel titled, "Should I Stay or Should I Go: Clash and Coordination in Cross-Border Insolvency Proceedings," to be presented at the upcoming National Conference of Bankruptcy Judges' annual meeting in Seattle, Washington. The panel will feature her former colleague from

Pachulski, Brad Sandler, and will be moderated by Hon. Christopher Sontchi. She is also a published author on bankruptcy matters.

## VII. The Contingency Fee is Reasonable Based on Customary Compensation Charged by Comparably Skilled Practitioners in Non-Bankruptcy Cases

Blood, Hurst & O'Reardon (BHO) represented the WTT Token holders in the WTT Token class action. This Court stayed and enjoined that litigation, making the Perkins Adversary the primary case in which the claims against Perkins would be litigated and making Applicant the primary litigator.

On May 23, 2024, the District Court awarded BHO $1.125 million in fees. *Dam v. Perkins*, Case No. 20-464, ECF No. 83. In comparison, Applicant's contingency fee of $900,000 is reasonable and demonstrates exceptional value, reflecting Applicant's substantial contribution and leadership in the litigation.

## VIII. [Intentionally omitted. Only Applies in Chapter 11.]

## IX. Other Information: The Chapter 7 Trustee supports this Application.

16

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WASHINGTON**

In re:                                              )
                                                    )        Case No.
                                                    )
                                                    )        **ORDER AWARDING COMPENSATION**
                                                    )        **FOR SERVICES RENDERED AND**
                                                    )        **REIMBURSEMENT OF EXPENSES**
                                                    )        **PURSUANT TO 11 U.S.C. §330 or §331,**
                                                    )        **AND APPROVING THE PAYMENT OF**
                                                    )        **BANK FEES**
_____ Debtor(s)      )

THIS MATTER HAVING come before the Court on the # _____ (☐interim ☐ final)
application of _____ dated _____, docket # _____, notice
docket # _____ and certificate of service docket # _____, for an order allowing compensation
for services rendered and reimbursement of expenses in the above entitled case; and the court
being fully advised in the premises:

NOW THEREFORE the below listed amounts are hereby allowed and awarded as compensation
and reimbursement pursuant to 11 USC §330 or §331, and approved as bank fees pursuant to
§363 and §503(b), to the above-named applicant and are authorized to be disbursed or
transferred from funds of the above entitled estate, subject to the availability of funds and the
provision of any confirmed plan. *

|                                   |                          |
|-----------------------------------|--------------------------|
| Compensation in the amount        | $ _____     |
| Reimbursement in the amount of    | $ _____     |
| Bank fees                         | $ _____     |
| **TOTAL**                         | $ _____     |

\* If for first application, includes compensation earned pre-petition and filing fees and other costs incurred pre-petition.

ORDER AWARDING COMPENSATION  - 1

Summary of all prior awards and approvals on previous applications:

       Compensation     $ _____

       Reimbursement    $ _____

       Bank fees          $ _____

       Total             $ _____

Disbursement information for this award:

       Received directly from debtor by application
          (if for first application)            $ _____

       To be paid by transfer from attorney trust account: $ _____

       To be paid by trustee               $ _____

       Total                       $ _____

///End of Order///

Presented by:

_____

(Signature/address/phone)

ORDER AWARDING COMPENSATION  - 2