1  Pamela M. Egan, WSBA No. 54736
   POTOMAC LAW GROUP PLLC
2  2212 Queen Anne Ave. N., #836
   Seattle, WA 98109
3  Telephone: (415) 297-0132
   Email: pegan@potomaclaw.com
4   *Special Litigation Counsel for Mark D. Waldron, Chapter 7 Trustee*

5                **UNITED STATES BANKRUPTCY COURT**
                 **EASTERN DISTRICT OF WASHINGTON**
6

7  In re:                              Case No. 18-03197 FPC 7

8  GIGA WATT, Inc., a                  The Honorable Frederick P. Corbit
   Washington corporation,
9                        Debtor.       Chapter 7

10                                     **POTOMAC LAW GROUP'S REPLY TO
                                       JUN DAM'S OBJECTION TO THE FIRST
11                                     AND FINAL CONTINGENCY FEE
                                       APPLICATION OF THE POTOMAC LAW
                                       GROUP PLLC (PERKINS ADVERSARY
12                                     PROCEEDING**

13                                     <u>Hearing Date:</u>
                                       Date:  September 10, 2024
14                                     Time: 10:30 Pacific Time
                                       Location: 904 West Riverside Ave., Ste. 304
15                                              Spokane, WA 99201

16

17

18

19

20

21

22

23

24  PLG'S REPLY TO JUN DAM'S OBJECTION TO
    PLG CONTINGENCY FEE APPLICATION
25

# TABLE OF CONTENTS

**I. INTRODUCTION**……………………………………………………………..1

**II. ARGUMENT**.................................................................................2

    A. THE OBJECTION IS A PROCEDURAL MOTION TO EXTEND A HEARING DATE.......2

    B.    CAUSE DOES NOT EXIST TO POSTPONE THE FEE APPLICATION HEARING .......3

       ***1. Claim Preclusion Bars Mr. Dam's Proposed Claims***..............................3

          a)    The Automatic Stay Contested Matter and the Proposed Adversary Proceeding Involve the Same Claim.............................................5

             (1)   These Two Matters Arise Out of the Same Transactional Nucleus of Facts............................................................................6

             (2)   The Trustee's Rights and Interests Established in the Automatic Stay Order Would Be Destroyed or Impaired by Prosecution of the Proposed Adversary Proceeding..................................................7

             (3)   The Two Matters Involve Infringement of the Same Right .............7

             (4)   The Two Matters Involve the Same Evidence .................................7

          b)    The Automatic Stay Order Is Final........................................8

          c)    The Automatic Stay Contested Matter and Mr. Dam's Proposed Adversary Proceeding Involve the Same Parties.............................................9

       ***2. Issue Preclusion Bars Mr. Dam's Proposed Claims*** ...............................9

          a)    The Issue Underpinning Mr. Dam's Proposed New Adversary Proceeding Was Actually Litigated in the Automatic Stay Contested Matter and Was Necessary to the Automatic Stay Order With a Full and Fair Opportunity to Argue Them................................................... 10

          b)    The Automatic Stay Order Is Final...................................... 11

          c)    The Parties Are the Same ................................................ 11

18-03197-FPC7    Doc 1052    Filed 08/27/24    Entered 08/27/24 15:11:48    Pg 2 of 23

> **3.** ***The Proposed Adversary Proceeding Is Barred by the Release*** ........... 11

> a) Mr. Dam is a "Releasing Party" Within the Meaning of the WTT Token Settlement Agreement ........................................................ 13

> b) The Giga Watt Estate Is A Released Party ......................................... 14

> c) Mr. Dam's Proposed Claim Is a "Released Claim" ........................... 14

> d) The Release Is Deemed to Be a Court Order ..................................... 14

> e) The Release Is Supported By Consideration ...................................... 15

> f) The Trustee's Detrimental Reliance on the Release is a Consideration Substitute ........................................................................ 15

**III. RESERVATION OF RIGHTS** ...................................................................... 17

**IV. CONCLUSION** ............................................................................................. 17

TABLE OF CONTENTS - P a g e | **ii**

TABLE OF AUTHORITIES AND EXHIBIT LIST

<u>CASES</u>

*Chao v. A–One Med. Servs., Inc.*, 346 F.3d 908 (9ᵗʰ Cir. 2003) .............................. 6

*City & Cnty. of San Francisco v. United States Citizenship & Immigr. Servs.*, 992 F.3d 742 (9th Cir. 2021) ............................................................. 5

*Feminist Women's Health Ctr. v. Codispoti*, 63 F.3d 863 (9th Cir. 1995) .............. 7

*Frank v. United Airlines, Inc.,* 216 F.3d 845 (9th Cir. 2000) .................................. 6

*Greaves v. Medical Imaging Systems, Inc.*, 124 Wash. 2d 389, 879 P.2d 276 (1994) ........................................................................................ 16

*Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wash. 2d 493 (2005) ......... 12, 13

*Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962) .......................................................................................... 8

*In re Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 345 (S.D.N.Y. 2015) ................. 3

*In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076 (9th Cir. 2024) ............................... 8

*John Davis & Co. v. Cedar Glen No. Four, Inc.*, 75 Wash. 2d 214, 450 P.2d 166 (1969) ........................................................................................ 15

*Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wash. 2d 255, 616 P.2d 644 (1980) ........................................................................................ 16

*McGuire v. Bates*, 169 Wash. 2d 185 (2010) ........................................................ 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ................................................................ 8

*Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wash. 2d 411 (2008) ................ 12

*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708 (9th Cir. 2001) .......... 5, 6

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) .......................................................................................... 9

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006) ........... 10

TABLE OF AUTHORITIES  -P a g e | **i**

*Save Bull Trout v. Williams,* 51 F.4th 1101 (9th Cir. 2022)..................................... 5

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18,
115 S. Ct. 386, 390, 130 L. Ed. 2d 233 (1994)..................................... 5

*United States v. Munsingwear, Inc.*, 340 U.S. 36, 71 S. Ct. 104,
95 L. Ed. 36 (1950) ......................................................................... 9

*Western Radio Servs. Co. v. Glickman,* 123 F.3d 1189 (9th Cir. 1997)................. 5

STATUTES

11 U.S.C. § 362(a)(3)............................................................................ 10

RULES

Fed. R. Bankr. P. 9006........................................................................... 2

TREATISES

25 Wash. Prac., Contract Law And Practice § 6:1 (3d ed.)................................... 16

4 Williston on Contracts § 8:4 (4th ed.) ....................................................... 16

Restatement (First) of Contracts § 90 (1932) ................................................. 16

TABLE OF AUTHORITIES  -P a g e | **ii**

# I. INTRODUCTION

Mr. Dam's Objection is a procedural motion to extend the hearing. Therefore, the Court has discretion to deny the request. Fed.R.Bank.P. 9006. Furthermore, Mr. Dam does not state cause to delay PLG's fee application hearing. He says he is looking for a lawyer to help develop a way to lay claim to the $3 million in settlement proceeds that the Trustee obtained for the estate's benefit. There is no reason to allow Mr. Dam to pursue this vague and improper wish.

Cause does not exist for the further reason that the proposed claims to these proceeds are barred by the doctrines of claim and issue preclusion. The Automatic Stay Order[1] held that the Trustee's claims in the Perkins Adversary[2] and Mr. Dam's first three claims for relief asserted in the WTT Token Class Action[3] arose from the same of facts, were "reflective" of each other, were property of the estate and that the Trustee had the exclusive standing to bring these claims. Mr. Dam would have the Court reverse its holding and grant exclusive standing to Mr. Dam to bring claims against Perkins. The Automatic Stay Order bars this effort.

---

[1] "Automatic Stay Order" refers to the *Memorandum Opinion and Order Regarding Stay and Motion for Order to Show Cause*, dated September 27, 2021, ECF No. 921.

[2] "Perkins Adversary" refers to the adversary proceeding entitled, *Waldron v. Perkins Coie LLP, et al.*, Adv. Proc. No. 20-80031, commenced on November 19, 2020 in the above-captioned Court.

[3] "WTT Token Class Action" refers to the class action entitled, *Dam v. Perkins Coie LLP, et al.*, Case No. 20-464, commenced on December 16, 2020 in the U.S. District Court for the Eastern District of Washington.

PLG'S REPLY TO JUN DAM'S OBJECTION TO
PLG CONTINGENCY FEE APPLICATION - P a g e | **1**

Furthermore, Mr. Dam released the estate of any claims arising from or relating to the facts underlying the WTT Token Class Action. The Trustee's claims in the Perkins Adversary arose from and relate to the same facts that underly the WTT Token Class Action. Therefore, when Mr. Dam asserts an interest in the Trustee's claims he is asserting a claim that falls squarely within the release of all claims, legal or equitable, arising from or relating to the facts underlying the WTT Token Class Action. It is released.

For all these reasons, the Potomac Law Group PLLC ("PLG") respectfully requests that the Court to overrule Mr. Dam's Objection, deny his request for a postponement and hold the hearing on PLG's fee application on September 10, 2024, as scheduled.

## II. ARGUMENT

### A. The Objection is a Procedural Motion to Extend a Hearing Date

Pursuant to Fed.R.Bank.P. 9006, a court can extend a hearing "*for cause shown* . . . *in its discretion*. . . ." Fed. R. Bankr. P. 9006 (emphasis added). PLG requests that the Court deny this request. PLG would be prejudiced by the delay. And there is no scenario under which PLG could be deprived of compensation for obtaining these proceeds as the Trustee's counsel. Furthermore, Mr. Dam's proposed claim to ownership of the Settlement Proceeds is barred and released, as set forth below, as a matter of law. Accordingly, PLG requests that the Court deny the request for an extension.

PLG'S REPLY TO JUN DAM'S OBJECTION TO
PLG CONTINGENCY FEE APPLICATION - P a g e | **2**

**B. Cause Does Not Exist to Postpone the Fee Application Hearing**

There is no cause to delay the hearing on PLG's fee application while Mr. Dam searches for a lawyer who would be willing to bring a case that faces insurmountable hurdles, as set forth below.

**1. Claim Preclusion Bars Mr. Dam's Proposed Claims**

On September 27, 2021, the Court entered the Automatic Stay Order in which the Court held, on the Trustee's motion, that Mr. Dam's generalized claims alleged in the WTT Token Class Action belonged to the estate. The Automatic Stay Order further held that the Trustee's claims asserted in the Perkins Adversary and Mr. Dam's claims asserted in the WTT Token Action arose from the same "core factual allegations." Automatic Stay Order, ECF No. 921 at 3.

The Court added: "[T]he Class has 'merely repackaged the same facts underlying the Trustee's claims without any new particularized injuries' that are traceable to Perkins." *See* Automatic Stay Order, ECF No. 921 at 17 (*quoting In re Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 345, 353-54 (S.D.N.Y. 2015). The Court stated that Mr. Dam's generalized claims were "***merely reflective of the estate's claims.*** As a result, ***the Class lacks standing to pursue the claims***." Automatic Stay Order, ECF No. 921 at 19 (emphasis added).

The Automatic Stay Order provides that the Trustee – not Jun Dam – has the exclusive standing to bring the generalized claims arising from the facts that both the Trustee and Jun Dam were alleging in their respective lawsuits. "When the trustee has standing to assert a debtor's claim, that standing is exclusive and

PLG'S REPLY TO JUN DAM'S OBJECTION TO
PLG CONTINGENCY FEE APPLICATION - P a g e | **3**

divests all creditors of the power to bring the claim." Automatic Stay Order, ECF No. 921 at 6. Therefore, Mr. Dam cannot have an interest in these proceeds that would allow him to take the proceeds ahead of all other creditors.

Mr. Dam appealed the Automatic Stay Order to the District Court (Case No. 21-291). However, he dismissed that appeal with prejudice pursuant to his settlement with Perkins (the "WTT Token Settlement Agreement"), Art. VII, ¶ G, attached hereto as **Exhibit A**, after the Court approved it pursuant to that certain *Order Granting Final Approval of Class Action Settlement*, dated May 23, 2024, attached hereto as **Exhibit B**. Regarding the dismissal of the appeal of the Automatic Stay Order, the WTT Token Settlement Agreement stated, "Any acts by Perkins Coie keyed off of the Effective Date and conditions of settlement will not be required until the consolidated appeal is dismissed." *Id*., Art. VII, ¶ G.

On July 1, 2024, Mr. Dam and the Trustee filed their Stipulated Dismissal of Consolidated Appeals, attached hereto as **Exhibit C**. On August 2, 2024, the District Court dismissed the appeal of the Automatic Stay Order with prejudice in its *Order Granting Dismissal and Closing File*, attached hereto as **Exhibit D**.

Dismissal of the Consolidated Appeal with prejudice was also a condition of the Trustee's settlement of the Perkins Adversary. *See* Settlement Agreement and Release, Art. III, ¶ G.3, attached hereto as **Exhibit E**. This Court approved the settlement of the Perkins Adversary pursuant to that certain Order dated October 5, 2023, ECF No. 1031.

1   Because Mr. Dam's appeal of the Automatic Stay Order was dismissed with

2   prejudice, the Automatic Stay Order retains its preclusive effect. *See U.S. Bancorp*

3   *Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 22, 115 S. Ct. 386, 390, 130 L. Ed.

4   2d 233 (1994) (holding that when an appeal is mooted by the parties' settlement

5   and the appeal is dismissed, the underlying Orders retain their preclusive effect,

6   unless the appellate court grants the exceptional equitable remedy of vacatur); *City*

7   *& Cnty. of San Francisco v. United States Citizenship & Immigr. Servs.*, 992 F.3d

8   742, 753–54 (9th Cir. 2021) ("[C]ourts rarely vacate a lower court decision when

9   the parties voluntarily settle a case."). The District Court did not vacate the

10  Automatic Stay Order. Therefore, it retained its preclusive effect.

11  Claim preclusion applies where "the earlier suit (1) involved the same

12  'claim' or cause of action as the later suit, (2) reached a final judgment on the

13  merits, and (3) involved identical parties or privies." *Save Bull Trout v. Williams,*

14  51 F.4th 1101, 1107 (9th Cir. 2022).

### a)   The Automatic Stay Contested Matter and the Proposed Adversary Proceeding Involve the Same Claim

16

17  Claim preclusion "bars a party in successive litigation from pursuing claims

18  that 'were raised or could have been raised in a prior action.'" *Owens v. Kaiser*

19  *Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) ( *quoting Western*

20  *Radio Servs. Co. v. Glickman,* 123 F.3d 1189, 1192 (9th Cir. 1997)). Claim

21  preclusion prevents Mr. Dam's latest gambit by barring re-litigation of claims

22  that were or could have been brought in a prior matter, in this case the contested

23  PLG'S REPLY TO JUN DAM'S OBJECTION TO
24  PLG CONTINGENCY FEE APPLICATION - P a g e | **5**

25

matter that ended with the Automatic Stay Order. Reflecting these principles, the court's analysis on this element considers the following four criteria:

> [W]hich are not applied mechanistically: **(1)** whether the two suits arise out of the same transactional nucleus of facts; **(2)** whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; **(3)** whether the two suits involve infringement of the same right; and **(4)** whether substantially the same evidence is presented in the two actions.

*Chao v. A–One Med. Servs., Inc.*, 346 F.3d 908, 921 (9th Cir. 2003).

## **(1)** **These Two Matters Arise Out of the Same Transactional Nucleus of Facts**

"The central criterion in determining whether there is an identity of claims between the first and second adjudications is 'whether the two suits arise out of the same transactional nucleus of facts.'" *Owens,* 244 F.3d at 714 (9th Cir. 2001)) (*quoting Frank v. United Airlines, Inc.,* 216 F.3d 845, 851 (9th Cir. 2000) (citation omitted).

The Automatic Stay Order arose from the claims that Mr. Dam asserted in the WTT Token Class Action. The Court held that those close arose from the same facts as the facts alleged by the Trustee and the Perkins Adversary. They were the same as the Trustee's claims only "packaged" differently. Therefore, the Trustee had the exclusive standing to bring these claims on behalf of the estate. Now Mr. Dam wants to claim that in fact the Trustee's claims were litigated on his behalf.

**(2)** **The Trustee's Rights and Interests Established in the Automatic Stay Order Would Be Destroyed or Impaired by Prosecution of the Proposed Adversary Proceeding**

The Automatic Stay Order allowed the Trustee to exercise exclusive control over the claims arising from the facts alleged in both the WTT Token Class Action and the Perkins Adversary. Granting Mr. Dam the right to the proceeds of those proceeds would destroy the estate's rights under the Automatic Stay Order.

**(3)** **The Two Matters Involve Infringement of the Same Right**

The Automatic Stay contested matter and Mr. Dam's Objection involve infringement of the right to assert claims arising from the same facts against Perkins. The Court ruled in the estate's favor. Mr. Dam is now asking the court to reverse itself and rule in his favor.

**(4)** **The Two Matters Involve the Same Evidence**

In the Automatic Stay contested matter, the Court considered the question of standing to bring the claims arising from the facts asserted in both the WTT Token Class Action and the Perkins Adversary. Mr. Dam's Objection turns on the same claims and therefore the same facts. *Cf. Feminist Women's Health Ctr. v. Codispoti*, 63 F.3d 863, 868 (9th Cir. 1995) (holding that *res judicata* bars subsequent action when the plaintiff "had to produce substantially the same evidence in both suits to sustain its case").

PLG'S REPLY TO JUN DAM'S OBJECTION TO
PLG CONTINGENCY FEE APPLICATION - P a g e | **7**

**b)** <u>**The Automatic Stay Order Is Final**</u>

Mr. Dam stipulated that the Court could decide the issue of standing and ownership of the claims in the Automatic Stay contested matter based on the record before the Court.

> JUDGE [TO Mr. Blood, counsel for the Class]: Both Ms. Egan on behalf of the trustee and Mr. Blood on behalf of Mr. Dam want me to decide today whether or not the District Court Action is subject to the stay . . . . I could rule, make a final order one way or the other way, if I am not awarding sanctions, is that right Mr. Blood?
>
> MR. BLOOD: *Yes that's our position* (ECF 915 beginning at 14:44).

Automatic Stay Order, ECF No. 921 at 2, n. 3. (Emphasis added.)

This stipulation is consistent with the case law. The Supreme Court has held that a stay order is final if it places the opposing litigant "effectively out of court." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (*quoting Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713, 715 n. 2, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962) (per curiam)). *Accord In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076 (9th Cir. 2024). The Automatic Stay Order put Mr. Dam "effectively out of court" with respect to the claims arising from the same facts alleged in the Perkins Adversary and the WTT Token Class Action. Therefore, the Order regarding standing to pursue those claims is final.

### c) The Automatic Stay Contested Matter and Mr. Dam's Proposed Adversary Proceeding Involve the Same Parties

The Trustee brought the motion for the Automatic Stay Order against Mr. Dam, who opposed it. The Trustee would be the defendant in Mr. Dam's proposed adversary proceeding. Therefore, the same parties would be present in both matters.

### 2. Issue Preclusion Bars Mr. Dam's Proposed Claims

Collateral estoppel or issue preclusion precludes relitigating issues that have already been litigated and that were necessary to a prior judgment. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). How it is used to avoid needless litigation is left to the broad discretion of the trial court. *Id. See also United States v. Munsingwear, Inc*., 340 U.S. 36, 38, 71 S. Ct. 104, 95 L. Ed. 36 (1950):

> [E]ven if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.

*Id.*, at 105-06. The requirements for issue preclusion are:

> (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated;
>
> (2) the first proceeding ended with a final judgment on the merits; and

PLG'S REPLY TO JUN DAM'S OBJECTION TO
PLG CONTINGENCY FEE APPLICATION - P a g e | **9**

(3) the party against whom [issue preclusion] is asserted was a party or in privity with a party at the first proceeding.

*Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 (9th Cir. 2006).

These elements are present here.

        a)     **<u>The Issue Underpinning Mr. Dam's Proposed New Adversary Proceeding Was Actually Litigated in the Automatic Stay Contested Matter and Was Necessary to the Automatic Stay Order With a Full and Fair Opportunity to Argue Them</u>**

The Trustee asked the Court to hold that Mr. Dam's claims asserted in the Perkins Adversary were stayed pursuant to section 362(a)(3) of the Bankruptcy Code. The Court found that the first three claims of relief asserted by Mr. Dam in the WTT Token Class Action and the claims asserted by the Trustee in the Perkins Adversary arose from the same set of facts. The Court further held that only the Trustee had standing to bring claims arising from these facts. Although Mr. Dam gave his claims different names, they were merely "reflective" of the Trustee's claims and they belonged to the estate. This finding was essential to the Court's Automatic Stay Order.

Mr. Dam would have the Court reconsider the issue of exclusive standing to bring these claims and thus overrule the Automatic Stay Order. Re-litigation of the issue is precluded.

Mr. Dam had a full and fair opportunity to litigate these issues. Through counsel, he stipulated to having the Court decide these issues in the contested matter. Automatic Stay Order, ECF No. 921 at 2, n. 3.

PLG'S REPLY TO JUN DAM'S OBJECTION TO
PLG CONTINGENCY FEE APPLICATION - P a g e | **10**

**b)** **The Automatic Stay Order Is Final**

As set forth above, the Automatic Stay Order was a final judgment on the merits.

**c)** **The Parties Are the Same**

Both Mr. Dam and the Trustee were the parties in the Automatic Stay contested matter. They would be the same parties in the proposed adversary proceeding. Therefore, his new claim is barred by issue preclusion.

**3. The Proposed Adversary Proceeding Is Barred by the Release**

The WTT Token Settlement Agreement provides a release ("Release") as follows:

> Upon the Effective Date, each and every Releasing Party **shall by order of this Court** be deemed to have released, waived, forfeited and shall be permanently barred and enjoined from initiating, asserting, and/or prosecuting **any Released Claim against any Released Party** in any court or any forum.

WTT Token Settlement Agreement at 24:20-23, Art. VII, ¶ A, **Exh. A**. (Emphasis added.) The Effective Date occurred on July 8, 2024. *See* Declaration of Pamela M. Egan ("Egan Declaration"), filed herewith.

The WTT Token Settlement Agreement further states:

> "Released Claims" means any and all actions, claims, demands, rights, suits, and causes of action of whatever kind or nature against the Released Parties, including damages, costs, expenses, penalties, equitable relief, injunctions, and attorneys' fees, known or unknown,

PLG'S REPLY TO JUN DAM'S OBJECTION TO
PLG CONTINGENCY FEE APPLICATION - P a g e | **11**

1    suspected or unsuspected, in law or in equity, ***that arise***
     ***from or relate to the facts giving rise to this Action***.

2    WTT Token Settlement Agreement at 9:7-11, Art. II, ¶ A.35, **Exh. A**. (Emphasis

3    added).

4         The WTT Token Settlement Agreement further provided that:

5         [U]pon final approval of the Settlement Agreement, the
          Final Judgment and Approval Order shall be entered
6         dismissing the Action with prejudice and releasing all
          Released Claims against the Released Parties.
7

8    *Id*., Recitals at 3:19-21, **Exh. A**. The WTT Token Settlement Agreement is

9    governed by Washington law. *Id*. at 32:3-5, Art. XII, ¶ M, **Exh. A**.

10        As set forth above, the District Court approved the WTT Token Settlement

11   Agreement on May 23, 2024. *See* Order, **Exh. B.** Perkins, Mr. Dam, and the Class

12   Members agreed that as to disputes between themselves the District Court would

13   retain jurisdiction to interpret the Agreement. WTT Token Settlement Agreement

14   at 25:21-25, Art. VII, ¶ E, Art. XII, ¶ L, **Exh. A**. The Trustee is excluded from that

15   provision. Therefore, this Court has jurisdiction to interpret and enforce the

16   Release of the estate.

17        The Washington Supreme Court "interprets settlement agreements in the

18   same way as other contracts." *McGuire v. Bates*, 169 Wash. 2d 185, 188 (2010)

19   (*citing Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wash. 2d 411, 424 n. 9

20   (2008)). In interpreting contracts, Washington courts follow the "objective

21   manifestation theory of contracts." *Hearst Commc'ns, Inc. v. Seattle Times Co.*,

22   154 Wash. 2d 493, 503 (2005). Under that approach, courts "impute an intention

23

24   PLG'S REPLY TO JUN DAM'S OBJECTION TO
     PLG CONTINGENCY FEE APPLICATION - P a g e | **12**

25

corresponding to the reasonable meaning of the words used" and generally give words "their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Id.* at 503-04. The parties' subjective intent is generally irrelevant if "an intention corresponding to the reasonable meaning of the words used" can be imputed. *Id.*

### a) Mr. Dam is a "Releasing Party" Within the Meaning of the WTT Token Settlement Agreement

The WTT Token Settlement Agreement states, "'Releasing Party' means Plaintiff and each and every Class Member." *WTT Token Settlement Agreement* at 9:18-19, Art. II, ¶ A.37, **Exh. A**. The Agreement states, "'Plaintiff' means the proposed Class Representative Eric Blomquist." *Id.* at 8:22-23, Art. II, ¶ A.32. However, it also means Jun Dam because it uses the term "Plaintiff" to refer to Mr. Dam. For example, it states, "Plaintiff will seek a voluntary dismissal" of the Consolidated Appeal. *Id.* at 26:15-16, Art. VII, ¶ G. It also recites how "Plaintiff" appealed the Automatic Stay Order, *id.* at 2:12-14, Art. I, ¶ F, and how "Plaintiff and his counsel. . . attended an all day, in person mediation . . . on January 20, 2023." *Id.* at 2:20-22, Art. I, ¶ I. Jun Dam is also listed in the caption of the WTT Token Settlement Agreement as a named Plaintiff.

Jun Dam is a "Releasing Party" for the additional reason that he is also a Class Member, which the WTT Token Settlement Agreement defines as "all persons or entities who owned one or more Tokens on November 19, 2018" who

have not opted out. *Id.* at 4:24-26, 5:1-9, Art. II, ¶ A.9.[4] Jun Dam alleges that he owned Tokens on the Petition Date. *See* Jun Dam Proof of Claim No. 51 (claiming to own WTT Tokens as of the Petition Date). He did not opt out of the class.

### b) The Giga Watt Estate Is A Released Party

The WTT Token Settlement Agreement defines "Released Party" or "Released Parties" to include, "the Giga Watt Estate, Mark D. Waldron as Chapter 7 Trustee of the Giga Watt Estate, and agents and attorneys of the Giga Watt Estate. WTT Token Settlement Agreement at 9:12-17, Art. II, ¶ A.36, **Exh. B**.

### c) Mr. Dam's Proposed Claim Is a "Released Claim"

As set forth above, the WTT Token Settlement Agreement defines "Released Claim" as claims "that arise from or relate to the facts giving rise to this Action." *Id*. at 9: 7-11, Art. II, ¶ A.35, **Exh. B**. The facts giving rise to the WTT Token Action and to the Perkins Adversary were the same. Therefore, Mr. Dam's assertion that he owns the claims made in the Perkins Adversary arises from and relates to "the facts giving rise to this Action."

### d) The Release Is Deemed to Be a Court Order

Mr. Dam released the estate "by order" of the District Court. WTT Token Settlement Agreement at 24:22-23, Art. VII, ¶ A, **Exh. A**. Consideration is not necessary for an Order to be enforceable.

---

[4] The exceptions to class membership stated therein do not apply here.

### e) The Release Is Supported By Consideration

Perkins paid $4.5 million pursuant to the WTT Token Settlement Agreement in exchange for a release from Mr. Dam of both Perkins and the estate. That consideration is sufficient for the estate to enforce the release against Mr. Dam under Washington law which governs both the Trustee's settlement and the WTT Token settlement. WTT Token Settlement Agreement, Art. XII, ¶ M, **Exh. A**. *See John Davis & Co. v. Cedar Glen No. Four, Inc.*, 75 Wash. 2d 214, 450 P.2d 166 (1969):

> It is not essential that the consideration move directly from the promisee. It is sufficient if it moves from a third person. Generally, if consideration is sufficient in other respects, it does not matter from whom the consideration moves. It may move from a third person as well as from the promisee.

*Id.*, 75 Wash. 2d at 22, 450 P.2d at 171. (Citation omitted.) Perkins paid the $4.5 million to the class in order to obtain the release of both itself and the estate. The Trustee would not have released Perkins otherwise. *See* Declaration of Mark D. Waldron ("Waldron Declaration"), filed herewith.

### f) The Trustee's Detrimental Reliance on the Release is a Consideration Substitute

If Mr. Dam were to violate the Automatic Stay Order and the Release and commence an adversary proceeding to revisit the issue of standing over the claims asserted in the Perkins Adversary and the WTT Token Class Action, then the Trustee would, among other things, counter-claim asserting promissory estoppel to

PLG'S REPLY TO JUN DAM'S OBJECTION TO
PLG CONTINGENCY FEE APPLICATION - P a g e | **15**

enforce the Release. "Promissory estoppel based on Restatement of Contracts section 90 (1932) has long been recognized in this state. . . ." *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wash. 2d 255, 259, 616 P.2d 644, 646 (1980). Restatement (First) of Contracts § 90 (1932) states:

> A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

*Id.* A party's detrimental reliance on another's promise is a substitute for consideration.

> The doctrine of promissory estoppel operates "to make a promise binding, under certain circumstances, without consideration in the usual sense" as it allows a plaintiff to sue for enforcement of a promise based, in part, on reliance.

25 Wash. Prac., Contract Law And Practice § 6:1 (3d ed.) (*quoting Greaves v. Medical Imaging Systems, Inc*., 124 Wash. 2d 389, 398, 879 P.2d 276 (1994) and *Klinke*, 94 Wash. at 261, n. 4). S*ee also* 4 Williston on Contracts § 8:4 (4th ed.) ("The binding thread in all the classes of cases [regarding promissory estoppel] is the justifiable reliance of the promisee and the hardship involved in refusal to enforce the promise.").

The Trustee's promissory estoppel counterclaim would meet all the elements of promissory estoppel. The Trustee required the Release before he would agree to settle the Perkins Adversary. Mr. Dam knew this because it was communicated to

his counsel multiple times over the course of more than a year of negotiations. See Declaration of Pamela M. Egan, filed herewith. In reliance on the Release, the Trustee entered into the Trustee's Settlement with Perkins. *See* Waldron Declaration. It would be unjust to allow Mr. Dam to evade the Release now.

### III.  RESERVATION OF RIGHTS

PLG reserves the right to contest Mr. Dam's proposed claims on any ground whatsoever, including, but not limited. to the grounds set forth herein.

### IV.  CONCLUSION

It would be well within the Court's discretion to postpone consideration of PLG's fees. Mr. Dam wants a postponement so that he has more time to figure out how to evade the Automatic Stay Order and the Release. The doctrines of claim and issue preclusion anticipate and block this effort. He cannot re-litigate the original dispute and evade this Court's adverse rulings. Further, the Release is a binding Court Order to which Mr. Dam is also bound.

[*This Reply continues on the next page*.]

PLG'S REPLY TO JUN DAM'S OBJECTION TO
PLG CONTINGENCY FEE APPLICATION - P a g e | **17**

1    WHEREFORE, PLG requests that the Court deny the Objection, grant the

2  Fee Application, and grant such other and further relief as the Court deems

3  appropriate and just.

4  Dated:  August 27, 2024          POTOMAC LAW GROUP PLLC

5
                                   By:   /s/ Pamela M. Egan
6                                       Pamela M. Egan (WSBA No. 54736)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23
25