# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("**Agreement**") is entered into by Mark D. Waldron, in his capacity as Trustee ("**Trustee**"), and by Perkins Coie LLP, and Lowell Ness (collectively "**Perkins**"). The Trustee and Perkins are hereinafter sometimes referred to as the "**Parties**."

## I.      RECITALS

A.      Giga Watt, Inc. ("**Giga Watt**") is the debtor in the bankruptcy case entitled *In re Giga Watt, Inc.*, pending in the Eastern District of Washington, ("**Bankruptcy Court**"), Case No. 18-03197 FPC 11 ("**Bankruptcy Case**"). Mark Waldron is the duly appointed Trustee for the Giga Watt estate.

B.      Giga Watt was in the business of cryptomining. In 2017, pursuant to the GW ICO, David Carlson, Andrey Kuzenny and others, utilizing various corporations including Giga Watt, GigaWatt Pte. Ltd., and Cryptonomos Pte. Ltd., marketed and sold to the public WTT Tokens ("**Tokens**" and each a "**Token**") and Miners, which are specialized computers used in cryptomining. Giga Watt needed to build additional facilities to accommodate the cryptomining activities of all of the Tokens sold. Giga Watt was based in the Wenatchee area of Eastern Washington.

C.      Under circumstances which are disputed, Perkins provided certain legal advice regarding the Token sale and, according to the Trustee, the Miner sale, and agreed to hold in its IOLTA account proceeds from the sale of Tokens pending the issuance of Tokens to purchasers in step with Giga Watt's construction of

SETTLEMENT AGREEMENT AND RELEASE – Page 1

additional facilities. As of the purported end of the Token sale, Perkins held approximately $22.3 million of purported Token sales proceeds in its IOLTA trust account. Thereafter, Perkins disbursed these funds starting on August 8, 2017, and concluding on February 22, 2018, at which point Perkins held no remaining funds in its IOLTA trust account relating to the GW ICO.

     D.     Giga Watt allegedly never completed construction of all the facilities needed to accommodate all the purchasers of Tokens. Whether there was a shortfall, and its extent, are disputed by the Parties. As Giga Watt tried to expand its facilities and operate its business, it encountered various difficulties the reasons for which are also disputed by the Parties. It filed the Bankruptcy Case on November 19, 2018 in the Eastern District of Washington. In November of 2020, the Trustee filed an adversary proceeding against Perkins in the Bankruptcy Case, Case No. 20-80031 ("**Adversary Proceeding**"), alleging that Perkins improperly released $10.8 million of Token sale proceeds from its IOLTA account. The Trustee sought to recover from Perkins the allegedly improperly disbursed funds and damages. After conducting discovery, the Trustee amended his Complaint. Perkins contested the Trustee's right to amend his Complaint pending its appeal of the Court's Order denying Perkins' motion to compel arbitration.

     E.     In December of 2020, Jun Dam, on behalf of a putative class of Token purchasers, sued Perkins in the United State District Court for the Eastern District of Washington ("**District Court**"), Case No. 2:20-cv-00464 (the "**Class Action**"). In the Class Action, Dam likewise sought to recover from Perkins for the benefit of a putative class of Token holders, the $10.8 million which Perkins allegedly

disbursed before Giga Watt built sufficient facilities to accommodate all Token purchasers, as well as other alleged damages. By way of an Amended Complaint, Eric Blomquist will be substituted for Dam as the class representative in the Class Action.

F. Perkins has filed answers in both the Adversary Proceeding and the Class Action and has denied liability and asserted various affirmative defenses. In addition, Perkins named the Class as a third-party defendant in its Answer to the Trustee's First Amended Complaint. In the Adversary Proceeding, there has been considerable motion practice, including an appeal to the Ninth Circuit of a denial of Perkins' motion to compel arbitration ("**Arbitration Appeal**"), which is still pending, and the production of over one terabyte of digitally stored documents. To date, the costs of litigation have been substantial and are expected to continue to be substantial, not to mention the disruption involved for all concerned.

G. In addition to the Adversary Proceeding and the Class Action, there have been disputes between the Trustee and Dam regarding whether both are entitled to recover from Perkins for the misconduct alleged in the respective actions, and who, as between them, is entitled to priority in pursuing their respective claims against Perkins. In this regard, the Trustee has obtained a ruling in the Bankruptcy Court that three of the claims asserted in the Class Action belong to the Giga Watt estate and are subject to the automatic stay provisions of 11 U.S.C. § 362; and has obtained a preliminary injunction in an adversary proceeding filed in the Bankruptcy Case, No. 21-80053, prohibiting the Class from pursuing any claim against Perkins until the Adversary Proceeding is completed.

SETTLEMENT AGREEMENT AND RELEASE – Page 3

The Class has appealed to the District Court the Automatic Stay Order and the Preliminary Injunction Order under case No. 2:21-cv-0291 SAB ("**Consolidated Appeals**").

H.    On January 20, 2023, United States Bankruptcy Judge Benjamin P. Hursh, acting as a mediator, conducted an in-person mediation of both the Adversary Proceeding and the Class Action. Discussions continued after the in-person meeting. Pursuant to this mediation, without admission of liability or wrongdoing, settlements of both the Adversary Proceeding and the Class Action were achieved, subject to various conditions and approvals. Accordingly, the Trustee and Perkins hereby agree as follows:

## II.    DEFINITIONS

A.    As used in this Agreement and the attached exhibits, the following terms shall have the meanings set forth below, unless this Agreement specifically provides otherwise:

1.    "Bankruptcy Court Settlement Order" means an Order approving this Agreement as fair, equitable and in the best interests of Giga Watt's bankruptcy estate, and issuing such other findings and determinations as the Court and/or the Parties deem necessary and appropriate to implement and conclude this Agreement consistent with the terms of this Agreement.

2.    "Class" means all persons or entities who owned one or more Tokens on November 19, 2018 as defined more fully in the Class Settlement Agreement,  attached hereto as Exhibit 1.

SETTLEMENT AGREEMENT AND RELEASE – Page 4

3. "Class Settlement Agreement" or "Class Settlement" means the Stipulation of Settlement to be entered into by the named plaintiff and proposed class representative on behalf of a class of WTT Token holders, Perkins Coie LLP, Perkins Coie U.S., P.C., Perkins Coie California, P.C., and Lowell Ness, in substantially the form as Exhibit 1.

4. "District Court Final Judgment and Approval Order" means the District Court's Order, in substantially the form of Exhibit 1.E, confirming the certification a class for settlement purposes, approving the Class Settlement as fair, adequate, and reasonable and issuing such other findings and determinations as the District Court and/or the parties to the Class Settlement deem necessary and appropriate to implement and conclude the Class Settlement.

5. "District Court Preliminary Approval Order" means the order in substantially the form of Exhibit 1.D to be entered by the District Court preliminarily approving the Class Settlement, setting the date of a final approval hearing, conditionally certifying a class for settlement purposes as more particularly described in the Class Settlement Agreement which is attached hereto as Exhibit 1, and approving the form and manner of notice of the Class Settlement,

6. "Effective Date" means the latest in time of:

a) The date on which the time to appeal entry of the Bankruptcy Court Settlement Order has expired if no appeal has been taken from entry of the Bankruptcy Court Settlement Order.

b)    The date on which the time to appeal entry of the District Court Final Judgment and Approval Order has expired if no appeal has been taken from the entry of the District Court Final Judgment and Approval Order.

c)    In the event that an appeal or other effort to obtain review of either the Bankruptcy Court Settlement Order or District Court Final Judgment and Approval Order has been initiated, the date after all such appeals or requests for other review have finally concluded on terms that affirm the Bankruptcy Court Settlement Approval Order or District Court Final Judgment and Approval Order, as applicable, and all such appeals or reviews are no longer subject to further review.

d)    The occurrence of each condition set forth in this Agreement.

e)    If the Parties agree in writing, any other agreed date that is earlier than the Effective Date, provided that all conditions to the Class Settlement Agreement have been satisfied.

7.    "GW ICO" refers to the marketing and sale of WTT Tokens and Miners by Giga Watt, Inc., GigaWatt Pte., Ltd., and/or Cryptonomos Pte. Ltd., starting in May 2017, utilizing various websites and the Giga Watt Token Launch White Paper, dated May 2017.

8.    "Litigation" means the Bankruptcy Case, the Adversary Proceeding, and the Arbitration Appeal.

9.    "Perkins' Counsel" means Byrnes Keller Cromwell LLP and Munding P.S.

SETTLEMENT AGREEMENT AND RELEASE – Page 6

10. "Sofair Stipulation" means that certain stipulation between the Trustee and Refael Sofair in substantially the form as Exhibit 2.

11. "Trustee's Counsel" means Potomac Law Group PLLC.

## III. SETTLEMENT TERMS AND AGREEMENT

A. Payment by Perkins. Perkins will pay to the Trustee the total sum of THREE MILLION dollars ($3,000,000 USD) no later than fifteen business days after the Effective Date by wire transfer as set forth in Schedule A, appended hereto.

B. Mutual Release. The Trustee and Perkins hereby mutually release each other and each other's insurers, former or current partners, shareholders, owners, employees, affiliate entities, agents, attorneys, officers, directors, and/or any such person or entity acting on their behalf from any and all claims, losses, damages, attorneys' fees, expenses and costs, sanctions, disgorgement of fees, fines or penalties, whether accrued or not, whether known or unknown, of any type or nature.

C. Broad Intent. This mutual release is intended to be broad, and to include every dispute or claim of any type, as well as any and all claims arising from unknown or unsuspected facts. In this regard, the Parties acknowledge that discovery has not been completed in either the Adversary Proceeding or in the Class Action and that there may be additional facts, unknown to them at the time of entering into this Agreement, which would influence or perhaps change their willingness to enter into this Agreement. Nevertheless, given the cost and

SETTLEMENT AGREEMENT AND RELEASE – Page 7

uncertainty of litigation, the parties have decided to proceed, based on their present knowledge, and enter into this Agreement.

      D.     <u>1542 Waiver</u>. In addition, with respect to the claims released by this Agreement, the Parties specifically acknowledge and affirmatively waive any rights or benefits available to them under California Civil Code Section 1542. California Civil Code Section 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

      E.     The Parties hereby waive any and all federal and state statues similar in substance, meaning, or application to California Civil Code section 1542.

      F.     <u>Litigation Bar</u>. The Trustee agrees not to assert any claim or demand against non-parties to this Agreement arising from or related to the GW ICO; provided that nothing in this Agreement shall prevent the Trustee from objecting to or asserting defenses, including affirmative defenses, to any claim or demand that is made against Giga Watt, Inc., the Trustee, or the Trustee's professionals, including Trustee's Counsel, even if such claim or demand arises from or relates to the GW ICO.

G.     <u>Conditions</u>. This Agreement is subject to and conditioned upon the occurrence of the following events:

1.     <u>Bankruptcy Court Settlement Order</u>. The Bankruptcy Court Settlement Order is entered and becomes final and nonappealable. If the Bankruptcy Court Settlement Order is appealed, then such Bankruptcy Court Settlement Order is affirmed without modification or the appeal is dismissed with prejudice.

2.     <u>District Court Final Judgment and Approval Order</u>. The District Court Final Judgment and Approval Order is entered and becomes final and nonappealable. If the District Court Final Judgment and Approval Order is appealed, then such District Court Final Judgment and Approval Order is affirmed without modification or the appeal is dismissed with prejudice such that the transaction set forth in the Class Settlement Agreement is successfully concluded. In this regard, Perkins intends to and will make its best effort to pay the settlement amounts due under this Agreement and under the Class Settlement Agreement at the same time.

3.     <u>Order Dismissing the Consolidated Appeals</u>. An Order of the District Court dismissing the Consolidated Appeals with prejudice and without costs or fees to either side is entered and becomes final and nonappealable.

4.     <u>Order Approving Sofair Stipulation</u>. An Order of the Bankruptcy Court approving the Sofair Stipulation is entered and becomes final and nonappealable and in connection therewith, Claim No. 70-1, filed by Refael Sofair on February 15, 2019 in the Bankruptcy Case is withdrawn with prejudice

and all claims asserted against Giga Watt, Inc. in the action filed on October 2, 2018, by Refael Sofair, in the District Court, *Sofair v. Giga Watt, Inc., GigaWatt Pte. Ltd., David Matthew Carlson and Does 1-10*, Case No. 2:18-cv-00308-SAB are dismissed with prejudice.

H.      Cooperation. The Parties agree to cooperate with one another to obtain all necessary approvals of this Agreement and to meet the conditions of this Agreement, including the Trustee will file the motion(s) and other documents in the Bankruptcy Court that are necessary for this approval.

I.      Dismissal of Pending Actions and Appeals. Upon payment of the Settlement Amount, the Parties will dismiss the Adversary Proceeding and the Arbitration Appeal with prejudice and without costs or fees to either side.

J.      No Admission of Liability. This Agreement reflects the compromise and settlement of disputed claims among the Parties and is for settlement purposes only. Neither the fact of, or any provision contained in this Agreement or its exhibits, nor any action taken hereunder, shall constitute, be construed as, or be admissible in evidence as an admission of: (a) any fact recited herein; (b) the validity of any claim or allegation by any Party in the Litigation, (c) the validity of any defense or argument asserted by any Party in the Litigation, or (d) any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party or their respective counsel.

K.      Entire Agreement. This Agreement, including all exhibits, shall constitute the entire agreement between Perkins and the Trustee with respect to the Litigation. This Agreement shall supersede any previous settlement agreements

term sheets, representations, communications and understandings among the Parties with respect to the subject matter of the Agreement.

L.      New or Different Facts: No Effect. Except as provided herein, this Agreement shall be, and remain, in effect despite the discovery or existence of any new or additional fact, or any fact different from that which either Party now knows or believes to be true. Notwithstanding the foregoing, nothing in this Agreement shall be construed as, or constitute, a release of any Party's rights to enforce the terms of this Agreement.

M.      Execution in Counterparts. The Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Facsimile signatures or signatures sent by email be treated as original signatures and shall be binding.

N.      Notices. Whenever this Agreement requires or contemplates that one Party shall or may give notice to the other, notice shall be provided in writing by first class US Mail and email to:

      1.      If to Defendant or Defendant's Counsel:

> Ralph E. Cromwell Jr.
> Byrnes Keller Cromwell LLP
> 1000 2nd Ave., 38th Fl.
> Seattle, WA 98104
> Tel.: (206) 622-2000
> Email: rcromwell@byrneskeller.com

SETTLEMENT AGREEMENT AND RELEASE – Page 11

2. If to the Trustee or Trustee's Counsel:

Pamela M. Egan
Potomac Law Group PLLC
2212 Queen Anne Ave., #836
Seattle, WA 98109
Tel.: 415-297-0132
Email: pegan@potomaclaw.com

O.    Good Faith. The Parties agree that they will act in good faith and will not engage in any conduct that will or may frustrate the purpose of this Agreement. The Parties further agree, subject to Court approval as needed, to reasonable extensions of time to carry out any of the provisions of this Agreement.

P.    Publicity. To the extent any Party makes any public statements regarding this Agreement, any such statements shall be consistent with the Court-approved documents that comprise this Agreement or otherwise agreed on by the Parties in writing in advance.

Q.    Binding. This Agreement is binding on all predecessors, successors, heirs, affiliates, partners, companies under common control with any of the foregoing, assigns, past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, and all persons acting by, through, under, or in concert with any Party.

R.    Arms-Length Negotiations. The determination of the terms and conditions contained herein and the drafting of the provisions of this Agreement has been by mutual understanding after negotiation, with consideration by and participation of the Parties hereto and their counsel. This Agreement shall not be

construed against any Party on the basis that the Party was the drafter or participated in the drafting. Any statute or rule of construction that ambiguities are to be resolved against the drafting party shall not be employed in the implementation of this Agreement and the Parties agree that the drafting of this Agreement has been a mutual undertaking.

     S.    <u>Waiver</u>. The waiver by one Party of any provision or the waiver of any breach of the Agreement shall not be deemed a waiver of any other provision or subsequent breach of the Agreement.

     T.    <u>Variance</u>. In the event of any variance between the terms of this Agreement and any of the exhibits hereto, the terms of this Agreement shall control and supersede the exhibit(s).

     U.    <u>Taxes</u>. No opinion, representation or guarantee concerning the tax consequences of the Agreement is given or will be given by the Trustee's Counsel or Perkins' Counsel.

     V.    <u>Modifications in Writing</u>. The Agreement may not be changed, modified, or amended except in a writing signed by the Parties or their counsel, and, if required, approved by this Court. The Parties contemplate that the exhibits to the Agreement may be modified by subsequent agreement of the Parties so long as the modifications do not alter the substantive terms of the Agreement or reduce the rights and benefits of the Parties.

     W.    <u>Retain Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction with respect to the implementation, interpretation, and enforcement of the terms of this Agreement. The Parties agree that the effect of the release given to the Giga

Watt Estate, Mark D. Waldron as Chapter 7 Trustee of the Giga Watt Estate, and agents and attorneys of the Giga Watt Estate in the Class Settlement Agreement will be determined by the Bankruptcy Court to the extent that the release affects matters pending in the Bankruptcy Court.

X.    <u>Reliance on Own Counsel</u>. In entering into this Agreement, the Parties acknowledge that they have relied upon the legal advice of their respective attorneys, who are the attorneys of their own choosing, that such terms are fully understood and voluntarily accepted by them, and that, other than the consideration set forth herein, no promises or representations of any kind have been made to them by the other Party. The Parties represent and acknowledge that in executing this Agreement they did not rely, and have not relied, upon any representation or statement, whether oral or written, made by the other Party or by that other Party's agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

Y.    <u>Choice of Law</u>. This Agreement is governed by and shall be construed and enforced in accordance with Washington law.

Z.    <u>Computation of Time</u>. All deadlines and time periods prescribed in this Agreement, to the extent they are not otherwise specified, shall be calculated pursuant to Fed.R.Bank.P. 9006.

*[Signatures appear on next page.]*

IN WITNESS WHEREOF, the Parties hereto have caused the Agreement to be executed as of the last date set forth below.

Dated: September ___, 2023    Mark D. Waldron

By: _____

In his capacity as Chapter 7 Trustee in the Bankruptcy Case

Dated: September ___, 2023    PERKINS COIE LLP

By: _____

Its:   Partner and General Counsel

_____

Dated: September ___, 2023    LOWELL NESS

_____
*per email authorization*

IN WITNESS WHEREOF, the Parties hereto have caused the Agreement to be executed as of the last date set forth below.

Dated: September ~~____~~, ~~2023~~  June 28, 2024    Mark D. Waldron

By: _____

In his capacity as Chapter 7 Trustee in the Bankruptcy Case


Dated: September ___, 2023    PERKINS COIE LLP

By: _____

Its:    Partner and General Counsel

_____


Dated: September ___, 2023    LOWELL NESS

_____
Ralph E. Cromwell Jr.
per email authorization

\

EXHIBIT E, Page 16 of 17
Exhibit 1, Page 15 of 16
SETTLEMENT AGREEMENT AND RELEASE – Page 15
*TRUSTEE'S DRAFT: 8/25/2023*

18-03197-FPC7    Doc 1011-1    Filed 08/28/23    Entered 08/28/23 22:10:41    Pg 16 of 17
18-03197-FPC7    Doc 1052-5    Filed 08/27/24    Entered 08/27/24 15:11:48    Pg 16 of 17

# SCHEDULE OF EXHIBITS

Exhibit 1    Class Settlement Agreement

          Exhibit 1.A       Long Form Notice

          Exhibit 1.B       Email Notice

          Exhibit 1.C       Postcard Notice

          Exhibit 1.D       District Court Final Judgment and Approval Order

          Exhibit 1.E       District Court Preliminary Approval Order

          Exhibit 1.F       Claim Form

Exhibit 2    Sofair Stipulation