# EXHIBIT I

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 30, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JUN DAM,<br><br>        Appellant,<br><br>        v.<br><br>MARK D. WALDRON, TRUSTEE, Chapter 11 Trustee; PAMELA M. EGAN, individually and on behalf of, THE POTOMAC LAW GROUP, a Washington DC Limited liability partnership and CKR LAW LLP, a California limited liability partnership; and GIGA WATT, INC.,<br><br>        Appellees. | No. 2:20-CV-00351-SAB<br><br>**ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER GRANTING APPELLEES' MOTION TO DISMISS** |

    This matter comes before the Court on Appellant Jun Dam's appeal seeking review of the Bankruptcy Court's Order granting Appellees' Motion to Dismiss, which was filed on September 17, 2020. Having considered the briefing, applicable caselaw, and the certified record, the Court affirms the Bankruptcy Court's order.

//
//
//
//

**ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER GRANTING APPELLEES' MOTION TO DISMISS** # 1      EXHIBIT I, 1 of 13

## Background

The following facts are drawn from Appellant's and Appellees' Briefs, ECF Nos. 9, 14.

Debtor Giga Watt was a business that provided cryptocurrency miners access to facilities with cheap power rates around Grant County and Douglas County. Specifically, Giga Watt built two facilities in Eastern Washington: (1) the Moses Lake facility in Grant County and (2) the East Wenatchee facility in Douglas County (the "TNT facility"). Giga Watt built infrastructure within these facilities that could host cryptocurrency mining machines, though Appellant alleges that Giga Watt did not actually own the mining machines.

In 2018, the value of most cryptocurrencies crashed. Additionally, because Giga Watt's facilities were straining the local utilities, the Douglas County Public Utility District reneged on their power service agreement with Giga Watt. Thus, Giga Watt filed for Chapter 11 bankruptcy on November 19, 2018 in the Eastern District of Washington and shut down operations in mid-January 2019. Appellee Mark D. Waldron ("Trustee Waldron") was appointed as the Chapter 11 Trustee on January 24, 2019. Appellant alleges that Giga Watt restarted its mining operations using "customer mining machines and customer facilities" at the Moses Lake facility in March 2019 and at the TNT facility in August 2019. ECF No. 9 at 5.

On April 23, 2019, Trustee Waldron commenced an adversary proceeding against Giga Watt's former Chief Executive Officer to enjoin him from asserting control over the TNT facility ("the Carlson Litigation"), arguing that the facility was the property of the bankrupt estate. Neither Appellant nor the Official Committee of Unsecured Creditors, which he chaired, intervened in the Carlson Litigation or asserted any ownership interest in the TNT facility. Thus, because no objections were filed, the Carlson Litigation was settled and Trustee Waldron assumed control over the TNT facility. Trustee Waldron then filed a Motion to Approve the Sale of the TNT Facility. Appellant once again did not individually

object or attend the hearing for Trustee Waldron's motion. However, an *ad hoc* group of token holders,[1] of which Appellant was also the chair, filed an objection to sale of the TNT facility.

On June 5, 2020, Appellant commenced the adversary proceeding that is the subject of this appeal. On July 23, 2020, Appellant filed an Amended Complaint alleging breach of contract, breach of fiduciary duty, and unjust enrichment against Giga Watt, Trustee Waldron, and Pamela Egan, Trustee Waldron's counsel ("Counsel Egan"). Specifically, Appellant argued that Trustee Waldron and Counsel Egan did not have the right to operate or sell Giga Watt's facilities on behalf of the bankrupt estate without first determining Appellant's property rights.

On August 4, 2020, Appellant filed a Motion to Withdraw the Reference of the Amended Complaint from Bankruptcy Court and requested leave to sue Appellees in this Court. However, because Appellant did not file a corresponding motion to stay the adversary proceeding, the Bankruptcy Court ruled on Appellees' Motion to Dismiss on September 17, 2020. The Bankruptcy Court granted the motion on the grounds that (1) Appellant could not assert a breach of contract claim because the White Paper specifically disclaimed that it was not a contract and because neither Trustee Waldron nor Counsel Egan were involved with the White Paper;[2] (2) Appellant could not assert a breach of fiduciary duty claim

---

[1] Some of these group members were also members of the Official Committee of Unsecured Creditors.

[2] In his response to Appellees' Motion to Dismiss, Appellant conceded that Trustee Waldron and Counsel Egan were not involved with the White Paper. Thus, Appellant stated that he planned on amending the cause of action to tortious interference with contract. However, twenty-four days after his response, Appellant had still not submitted a request to amend his complaint. Thus, the

**ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER GRANTING APPELLEES' MOTION TO DISMISS** # 3        EXHIBIT I, 3 of 13

because Trustee Waldron's actions were performed pursuant to a Bankruptcy Court order and/or were based on reasonable business judgment and because Counsel Egan did not owe Appellant a fiduciary duty; and (3) Appellant could not assert a claim for unjust enrichment because there was an adequate legal basis to support each complained-of action. But, in the caption of the order, the Bankruptcy Court only included Trustee Waldron and Counsel Egan as defendants, even though Appellant's Amended Complaint also included Giga Watt as a defendant.

Appellant appealed the Bankruptcy Court's order granting the Motion to Dismiss on September 29, 2020. This case originally assigned to Judge Mendoza but, due to his order of recusal, the case was reassigned to this Court on November 12, 2020. ECF Nos. 5, 6. Appellant filed his opening brief on January 29, 2021. ECF No. 9. Appellees filed their response brief on March 3, 2021. ECF No. 14.

## Legal Standard

A federal district court has jurisdiction to hear appeals of final orders from core bankruptcy proceedings. 28 U.S.C. § 158(a)(1). Core bankruptcy proceedings include matters concerning the administration of the estate and orders regarding the sale, use, or lease of property. 28 U.S.C. § 157(b)(2). The district court reviews bankruptcy appeals under traditional appellate standards. *Stern v. Marshall*, 564 U.S. 462, 474-75 (2011). The district court shall not set aside the bankruptcy court's findings of fact unless they are clearly erroneous. *Id.* at 487; *see also* Fed. R. Bankr. P. 8013. However, the district court review the bankruptcy judge's decision to grant a motion to dismiss *de novo*. *In re Warren*, 568 F.3d 1113, 1116 (9th Cir. 2009). In reviewing decisions of the bankruptcy court, the district court can affirm or reverse on any basis supported by the record, even if different from

---

Bankruptcy Court ruled on the Motion to Dismiss Appellant's First Amended Complaint.

**ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER GRANTING APPELLEES' MOTION TO DISMISS** # 4

that relied on by the bankruptcy court. *See In re Frontier Properties, Inc.*, 979 F.2d 1358, 1364 (9th Cir. 1992).

**Discussion**

Appellant argues that the Bankruptcy Court erred in the following ways: (1) ruling on Appellees' Motion to Dismiss, even though he opposed the adjudication; (2) not including Giga Watt as a defendant in the caption of the Order Granting the Motion to Dismiss; (3) concluding that Trustee Waldron could not be held liable; (4) concluding that Counsel Egan could not be held liable; and (5) prematurely finding facts in Appellees' favor. For the reasons discussed below, the Court affirms the Bankruptcy Court's decision.

    1.   <u>Whether the Bankruptcy Court erred in adjudicating the Motion to Dismiss</u>

Appellant argues that the Bankruptcy Court erred in deciding Appellees' Motion to Dismiss because (1) he had already filed a Motion to Withdraw the Bankruptcy Reference and (2) the Bankruptcy Court lacked the constitutional authority to decide Appellant's state law contract claims without his consent. ECF No. 9 at 11–12. Appellees in response argue that (1) under Fed. R. Bank. P. 5011, a motion to withdraw the reference does not stay the case, and therefore the Bankruptcy Court had no obligation to refrain from deciding the Motion to Dismiss; (2) even without Appellant's consent, the Bankruptcy Court has authority to hear and determine all core bankruptcy proceedings, which includes state law contract claims; and (3) because this Court engages in *de novo* review of the Bankruptcy Court's order, Appellant is still receiving review from an Article III court. ECF No. 12 at 15–17.

It is unclear to the Court whether Appellant is arguing that (1) the Bankruptcy Court should have stayed the case and refrained from deciding the Motion to Dismiss because of the Motion to Withdraw or that (2) Appellant's Motion to Withdraw indicated his lack of consent to non-Article III adjudication,

ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER GRANTING APPELLEES' MOTION TO DISMISS # 5    EXHIBIT I, 5 of 13

18-03197-FPC7    Doc 1056-9    Filed 09/03/24    Entered 09/03/24 17:48:00    Pg 6 of 14

which therefore implicated the Bankruptcy Court's constitutional authority to decide Appellant's claims. If it is the former, then Appellant's argument is a non-starter. Fed. R. Bankr. P. 5011(c) states that filing a motion for withdrawal "shall not stay the administration of the case . . . before the bankruptcy judge except that the bankruptcy judge may stay . . . proceedings pending disposition of the motion."

But even if it is the latter, the Bankruptcy Court still properly adjudicated Appellees' Motion to Dismiss. 28 U.S.C. § 157(b)(1) states that "[b]ankruptcy judges may hear and determine . . . all core proceedings arising under title 11." § 157(b)(2) goes on to define core proceedings as, *inter alia*, matters concerning the administration of the estate; orders approving the use or lease of property; and orders approving the sale of property. When presiding over a core proceeding, a bankruptcy judge can enter all appropriate orders and judgments subject to appellate review by the district court. 28 U.S.C. § 157(b)(1). Conversely, when presiding over a non-core proceeding, the bankruptcy judge can only enter appropriate orders and judgments with the consent of all parties in the proceeding. 28 U.S.C. § 157(c)(2).

However, even though a bankruptcy judge may be statutorily authorized to hear a claim in bankruptcy court, the Supreme Court has stated that the bankruptcy judge must also have constitutional authority to hear the claim. In *Stern v. Marshall*, the Supreme Court held that a bankruptcy court lacks the constitutional authority to decide claims when they are "in no way derived from or dependent upon bankruptcy law" and which "exist[] without regard to any bankruptcy proceeding." 564 U.S. 462, 499 (2011). Four years later, in *Wellness International Network, Ltd. v. Sharif*, the Supreme Court further explained that bankruptcy courts generally do not pose a large threat to Article III because they (1) are staffed by bankruptcy judges, who are appointed and subject to removal by Article III judges, and hear matters only based on district court reference; (2) only resolve "a narrow class of common law claims as an incident to the [bankruptcy courts']

primary, and unchallenged, adjudicative function"; and (3) the purpose of delegating work to bankruptcy courts is not to threaten the constitutional power of Article III courts, but rather to alleviate the burden on district court judges with limited capacity. 575 U.S. 665, 679–81 (2015).

The Court finds that the Bankruptcy Court had constitutional authority to adjudicate Appellant's state law contract claims. Appellant's claims against Appellees arose directly out of the actions Trustee Waldron took in administering the bankrupt estate—specifically, the actions he took to restart mining operations and then to later sell Giga Watt's mining facilities. Thus, Appellant's claims would not have existed absent the bankruptcy proceeding.

This is in contrast to *Stern*. In that case, Vickie Lynn Marshall sued E. Pierce Marshall in Texas state probate court, alleging that Pierce tortiously interfered with a gift that J. Howard Marshall II—Pierce's father and Vickie's husband—intended to give Vickie as a trust. *Stern*, 564 U.S. at 470. However, Vickie then filed for bankruptcy in federal court, which prompted Pierce to file a proof of claim against her estate, arguing that he was entitled to damages for defamation (*i.e.*, because Vickie defamed him by inducing her lawyers to tell the press that he had engaged in fraud to gain control of his father's assets). *Id.* Vickie filed a counterclaim, once again alleging that Pierce tortiously interfered with J. Howard's gift. *Id.* The Bankruptcy Court ruled in Vickie's favor on both the defamation and the tortious interference claim, subsequently awarding her over $400 million in compensatory damages and $25 million in punitive damages. *Id.* Pierce argued that the Bankruptcy Court lacked jurisdiction to enter a final judgment on the tortious interference claim because it was not a "core proceeding" under 28 U.S.C. § 157(b)(2). *Id.* at 471.

The Supreme Court found that, though Vickie's counterclaim for tortious interference fell within the text of § 157(b)(2)(C) ("counterclaims by the estate against persons filing claims against the estate"), defining such a claim as a "core

**ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER GRANTING APPELLEES' MOTION TO DISMISS** # 7

bankruptcy proceeding" raised serious constitutional concerns. *Id.* at 475–477. Specifically, the Supreme Court stated that—although Vickie's counterclaim was the result of Pierce filing a proof of claim in bankruptcy court—the counterclaim was not one that stemmed from the bankruptcy itself or would necessarily be resolved in the claims allowance process. *Id.* at 495–99. Thus, the Supreme Court held that "[t]he Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 503.

In *Stern*, Vickie's claim of tortious interference against Pierce arose *before* she declared bankruptcy. Here, Appellant's claims against Appellees were only created *because* of Giga Watt's bankruptcy (*i.e.*, otherwise, there would have been no need to sell the mining facilities on behalf of the estate). Thus, the Bankruptcy Court decision does not raise the same Article III concerns present in *Stern*. Instead, this case is more akin to *In re Harris Pine Mills*, 44 F.3d 1431 (9th Cir. 1995) or *In re Ferrante*, 51 F.3d 1473 (9th Cir. 1995). Though both these cases predate *Stern* and *Sharif*, they both conclude that post-petition state law claims asserted against a trustee or a trustee's agents for conduct arising out of sale of property belonging to the bankrupt estate qualify as core bankruptcy proceedings. Thus—even though Appellant's claims were state law contract claims and Appellant had moved to withdraw the bankruptcy reference—because Appellant's claims directly pertained to the administration of the bankrupt estate, the Bankruptcy Court's adjudication of the Motion to Dismiss was a core bankruptcy proceeding. Therefore, the Bankruptcy Court had the constitutional authority to adjudicate Appellees' Motion to Dismiss.

    2.    <u>Whether the Bankruptcy Court properly decided the Motion to Dismiss</u>

Appellant raises three grounds for why the Bankruptcy Court erred in granting Appellees' Motion to Dismiss: (1) providing "biased and premature

**ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER GRANTING APPELLEES' MOTION TO DISMISS # 8**

opinions of the facts on the case and a prejudicial ruling before they were heard on the merits"; (2) failing to include Giga Watt as a defendant in the caption when dismissing Appellant's breach of contract claim; and (3) failing to recognize that Trustee Waldron and Counsel Egan could be subject to liability.

The Court rejects Appellant's first argument. The Bankruptcy Court did not engage in impermissible fact-finding. ECF No. 9 at 14-16. Appellant's cited examples merely constitute the Bankruptcy Court deciding whether Appellant had plausibly stated a claim (*i.e.*, whether Appellant plausibly alleged that Trustee Waldron breached his fiduciary duty). The Court thus moves onto Appellant's other two arguments.

### a.     Breach of Contract Claim

Appellant argues that the Bankruptcy Court erred in dismissing his breach of contract claim because the Bankruptcy Court only included Defendants Trustee Waldron and Counsel Egan in the order of dismissal, but left out Defendant Giga Watt. Appellant argues that that this omission constituted clear error because Giga Watt—unlike Trustee Waldron and Counsel Egan—was a party to the alleged contract. ECF No. 9 at 12.

In response, Appellees first note that Appellant concedes that the Bankruptcy Court properly dismissed the breach of contract claim against Trustee Waldron and Counsel Egan because they were not parties to the alleged contract. ECF No. 12 at 13–14. As for the Bankruptcy Court's omission of Giga Watt from its order, Appellees argue that (1) this omission was harmless because Giga Watt— who had by then declared bankruptcy—was not the one engaging in the complained-of actions and therefore cannot be held liable for breach of contract and (2) Appellant has already filed an administrative claim and prepetition claims against Giga Watt and thus can assert any contractual claims he has against Giga Watt through those avenues. *Id.* at 18.

**ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER GRANTING APPELLEES' MOTION TO DISMISS** # 9

The Court finds that the Bankruptcy Court's failure to include Giga Watt was harmless error. First, as Appellees point out, Appellant conceded that Trustee Waldron and Counsel Egan were not parties to the hosting lease contract, which prompted Appellant to state that he planned on amending his Complaint. Appellant's Response Brief at 12. However, by the time the Bankruptcy Court decided Appellees' Motion to Dismiss, twenty-four days had elapsed since Appellant's response and he had still not filed a Motion to Amend. Order Granting Motion to Dismiss at 10 n.7. Therefore, the Bankruptcy Court properly dismissed the breach of contract claim as originally pled against Trustee Waldron and Counsel Egan.

### b. Failure to Include Giga Watt as Defendant in Caption

Additionally, though the Bankruptcy Court's order failed to include Giga Watt as a defendant in the caption, the reasoning in the Bankruptcy Court's order dismissing the breach of contract claim still applies to Giga Watt. The Bankruptcy Court held that, because the White Paper (the basis for Appellant's breach of contract claim) specifically disclaimed that it was not a contract and was only intended to "present the Giga Watt project," Appellant had failed to state a plausible claim for breach of contract. Order Granting Motion to Dismiss at 10; *see also* Amended Complaint at 3, 37. Moreover, Appellant did not plead any additional facts to support why the White Paper was a binding contract and/or why the disclaimer was invalid. Thus, Appellant still would not have been able to allege a plausible claim for breach of contract against Giga Watt.

Finally, there was no need for the Bankruptcy Court to include Giga Watt as a defendant because Appellant's complained-of actions were taken by Trustee Waldron after Giga Watt declared bankruptcy and thus Giga Watt is not liable for those actions. Amended Complaint at 3 (alleging that the breach of contract occurred when Trustee Waldron first used and then sold the TNT facility without consideration of Appellant's lease rights); *see also* 11 U.S.C. § 1108 (a trustee may

**ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER GRANTING APPELLEES' MOTION TO DISMISS** # 10 EXHIBIT I, 10 of 13

operate a debtor's business after a notice and a hearing) and 11 U.S.C. § 363 (a trustee may use, sell, or lease property of the estate after notice and a hearing). Thus, the Bankruptcy Court's failure to include Giga Watt as a defendant constituted harmless error.

   3. <u>Whether the Bankruptcy Court properly concluded that Trustee Waldron and Counsel Egan were immune from liability</u>

Appellant argues that the Bankruptcy Court erred in dismissing the breach of fiduciary duty and unjust enrichment claims against Trustee Waldron and Counsel Egan on the grounds that (1) they were engaging in their official duties, exercising reasonable business judgment, and acting based on court approval and (2) Counsel Egan does not owe Appellant a fiduciary duty. ECF No. 9 at 13, 16-17. Appellees in response argue that the Bankruptcy Court properly concluded that Trustee Waldron and Counsel Egan were immune from liability because they were engaging in their official duties with court approval and because Counsel Egan does not owe Appellant a fiduciary duty. ECF No. 12 at 20–28.

   **a. Trustee Waldron**

Bankruptcy trustees are generally entitled to broad immunity when acting within the scope of their authority and pursuant to court order. *Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir. 1989). A trustee can be held liable for intentional or negligent violations of duties imposed on him by law. *Id.* (internal quotations and citation omitted). But if a trustee (1) makes candid disclosures to the court; (2) gives notice to the affected parties of the proposed action; and (3) obtains court approval, then the trustee will be held immune for their actions. *Id.* Some courts have even held that, so long as the trustee obtains court approval for their actions after full disclosure to the court and notice to the affected parties, they will be immune, even if they engage in actions that violate their duty of loyalty or do willful and deliberate damage to the estate. *See In re Cont'l Coin Corp.*, 380 B.R.

**ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER GRANTING APPELLEES' MOTION TO DISMISS** # 11 EXHIBIT I, 11 of 13

1, 15–16 (Bankr. C.D. Cal. 2007), *aff'd sub nom. In Re Cont'l Coin Corp.*, No. 1:00-BK-15821-GM, 2009 WL 2589635 (C.D. Cal. Aug. 21, 2009).

A trustee will also be held immune when exercising reasonable business judgment, even if they make a mistake. *Bennett*, 892 F.2d at 824. The rationale for this is that trustees should not be expected to conduct business according to the wishes of the debtor or an individual creditor. *Id.*; *see also Mosser v. Darrow*, 341 U.S. 267, 273–74. However, a trustee can be held liable if they engage in acts which exceed their authority, such as using property that does not belong to the estate, engaging in misrepresentations, failing to distribute assets, or committing theft or slander. *Bennett*, 892 F.2d at 824 (citing cases). A trustee can limit their potential liability by accounting their actions to the court and the relevant parties, which can place the burden on others to object to their proposed actions. *Mosser*, 341 U.S. at 274–75. Courts have held that trustees are generally immune when selling estate property based on their exercise of reasonable business judgment. *See Sw. Media, Inc. v. Rau*, 708 F.2d 419, 425 (9th Cir. 1983) (holding that a trustee was immune for selling estate assets pursuant to court approval); *In re Cont'l Coin Corp.*, 380 B.R. at 16 (holding that a trustee was immune for negotiating sales transactions, even though he did not engage in candid disclosure or seek court approval).

The Court agrees with the Bankruptcy Court's finding that Trustee Waldron was immune for his actions. Appellant argues that the Bankruptcy Court erred because (1) the Bankruptcy Court failed to recognize that breach of contract could be in excess of Trustee Waldron's authority, which could subject him to liability and (2) "case precedents in bankruptcy courts [] support the concept of Trustee quasi-immunity should be balanced against" a citizen's right to sue government agents acting under the color of law. ECF No. 9 at 13. However, as already discussed above, Appellant failed to allege a plausible claim of breach of contract against Trustee Waldron because he was not a party to the alleged contract.

**ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER GRANTING APPELLEES' MOTION TO DISMISS** # 12 EXHIBIT I, 12 of 13

Additionally, Trustee Waldron took all the requisite steps for immunity to attach: (1) he filed a motion to approve the sale of the TNT facility on behalf of the bankrupt estate; (2) the Bankruptcy Court held a hearing on the motion at which Appellant did not individually object; (3) and the Bankruptcy Court approved the sale.

        **b.    Counsel Egan**

Finally, Appellant argues that the Bankruptcy Court erred in concluding that Counsel Egan did not owe a fiduciary duty to third party beneficiaries, such as Appellant, without engaging in further legal analysis. ECF No. 9 at 16–17. However, multiple bankruptcy cases have held that trustee's counsel does not owe a fiduciary duty to the creditors of the estate. *In re Cont'l Coin Corp.*, 380 B.R. at 16; *In re Wolf & Vine, Inc.*, 118 B.R. 761, 771 (Bankr. C.D. Cal. 1990). Thus, the Court affirms the Bankruptcy Court's order granting Appellees' Motion to Dismiss.

Accordingly, **IT IS HEREBY ORDERED:**

1.    The Bankruptcy Court's September 17, 2020 Order granting Appellees' Motion to Dismiss is **AFFIRMED**.

**IT IS SO ORDERED.** The District Court Clerk is hereby directed to file this Order, provide copies to the parties and the Clerk of the Bankruptcy Court, and **close** the file.

**DATED** this 30th day of July 2021.



                    Stanley A. Bastian
               Chief United States District Judge

ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER GRANTING APPELLEES' MOTION TO DISMISS # 13 EXHIBIT I, 13 of 13