**MOVING PARTY**

Andrea Sharp (*Pro Se*)
268 Bush Street #2520
San Francisco CA 94104
510/205-6779
anniezmailbox@gmail.com

The Honorable Frederick P. Corbit
Chapter 7

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF WASHINGTON

In Re:

    GIGA WATT, INC.
    Debtor

**Case Name: GIGA WATT, INC.**

**Case No: 18-03197 FPC 7**

**CREDITOR'S MOTION TO DENY "OMNIBUS OBJECTION" AND ITS PROPOSAL TO EXPUNGE HER BANKRUPTCY CLAIM**

Andrea Sharp, a creditor in the above-referenced case, and now appearing *pro se*, respectfully moves this Honorable Court to deny in its entirety Doc. No. 1098, filed on October 2, 2024, by Pamela Egan, Esq., titled "*CHAPTER 7 TRUSTEE'S FIRST OMNIBUS OBJECTION TO CLAIMS*" (hereinafter the "Omnibus Objection").

The Omnibus Objection alleges that I released my claim against the bankruptcy estate of Giga Watt, Inc. (hereinafter "Giga Watt") by agreeing to settle a separate lawsuit that excluded Giga Watt. On the basis of that allegation it proposes that my release of defendants Perkins Coie and Lowell Ness from further litigation of the matter that was settled in *Dam v. Perkins Coie LLP, et al., Case No. 2:20-cv-00464-SAB (E.D. Wash.)* also extend to Giga Watt, and that my claim as a creditor in Giga Watt's bankruptcy be expunged.

*Page i of iv*

This proposal seeks to deny my valid claim in the Giga Watt bankruptcy, even though I did not release Giga Watt from its debt to me by any means at any time.

The ten Exhibits attached hereto contain a great deal of proof that the Omnibus Objection and its proposal are not legally supportable, and that this Motion to reject it should therefore be approved.

The topics of the Exhibits are:

**Exhibit 1** Background and History of This Case, page 4

**Exhibit 2** Explicit Reservation of My Right To Recover Damages From Giga Watt, page 8

**Exhibit 3** Requirements for Valid Contract, page 11

**Exhibit 4** "Identical Predicate of Fact" Does Not Apply, page 13

**Exhibit 5** Lack of Privity, page 28

**Exhibit 6** Lack of Consideration and Related Abuses of Automatic Stay, page 29

**Exhibit 7** No Cause Of Action In Trustee's Lawsuit Against Perkins, page 33

**Exhibit 8** Miners, Unlawful Seizure, page 34

**Exhibit 9** Fairness and Equity, page 36

**Exhibit 10** Conclusion, page 55

**Ownership, Accuracy, and Truth Statement**

I affirm my commitment to accuracy and truthfulness in my pleading. The claims being made are based on the information I am aware of and believe to be true, and the claims and facts I state

herein are true and accurate to the best of my knowledge.

**Ownership of Miners and Tokens**. By signing and submitting this Motion, I certify that before, after, AND ON November 19, 2018, I owned the tokens and miners identified in my Proof of Claim for the Giga Watt Bankruptcy.

**Sole Owner**. I further certify that I am the sole owner of the identified tokens and miners therein, and that I have the authority to act on my own behalf in this lawsuit.

**Nothing Assigned**. I further certify that I have not assigned interest in the tokens or miners identified therein, nor assigned claims regarding the tokens or miners identified herein, to any parties whatsoever.

**Truth and Accuracy**. I further certify that what I state herein is true and accurate to the best of my knowledge. I further certify that all information and documents I provided in my Proof of Claim for the Giga Watt Bankruptcy, in my Perkins Claim Form and its Attachment, and all other related correspondence are true and accurate. I further certify that the documents submitted therein are true and correct copies of what they purport to be. I further certify that my documentation contains no falsification, misrepresentation, omission, exaggeration, or misleading or untruthful information.  I understand that documents I provide herein and have provided to Giga Watt, courts, and all participants are subject to investigation and verification, and that any falsification,  misrepresentation, omission, exaggeration,           *Page iii of iv*

or misleading or untruthful information in them could be sufficient cause for both denial of my

claim and legal action against me.

## Oath and Signature

Sworn to this sixth day of November, 2024, by:

ANDREA SHARP, Creditor in Giga Watt's Bankruptcy,

Creditor's Signature

---

# CERTIFICATE OF SERVICE

I hereby certify that on 10/22/24 I electronically filed this **CREDITOR'S MOTION TO DENY**

**OMNIBUS OBJECTION AND ITS PROPOSAL TO REMOVE BANKRUPTCY CLAIM**

with the Clerk of Court using the system provided to me by her to serve ECF participants with

notification of this filing.

Date Served: 11/06/2024

Sign your name:

Print name:
/ANDREA SHARP/

*Page iv of iv*

Page 1 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

# Contents

Exhibit 1 – Background and History of This Case ................................................................. 4

    The Only Legal Issue Addressed So Far ................................................................. 7

Exhibit 2 - I Clearly Reserved My Right To Pursue Recovery of Damages From Giga Watt ........ 8

    My Reservation of Rights Was Not Disputed ................................................................. 10

    My Reservation of Rights Was Accepted ................................................................. 10

    The Perkins Settlement Does Not Affect My Right ................................................................. 10

Exhibit 3 - Requirements for a Valid Contract ................................................................. 11

Exhibit 4 - "Identical Predicate of Fact" Does Not Apply ................................................................. 13

    Four Criteria for Identical Predicate of Fact ................................................................. 13

    Extensive Proof that IPF Principle Doesn't Apply ................................................................. 14

    My Claim Is For Different Damages and Recovery of Different Assets ................................................................. 14

    Scholarly Analysis of Class Action Settlement and the IPF Principle ................................................................. 15

    Pending Due Process in Bankruptcy Court ................................................................. 19

    Procedural Due-Process-Protection Rules ................................................................. 20

        Inadequate Representation ................................................................. 21

    Rule 23(e) Rules Invalidate the Omnibus Objection ................................................................. 22

    Comparison of the Two Cases ................................................................. 25

        The Two Separate Cases and Claims Are Not Even Similar ................................................................. 26

    The Class Action and The Bankruptcy – Two Different Assets and Issues ................................................................. 27

Exhibit 5 - Lack of Privity ................................................................. 28

Exhibit 6 - Lack of Consideration and Related Abuses of Automatic Stay ................................................................. 29

    Misapplication of the Automatic Stay and Lack of Consideration ................................................................. 29

        Bankruptcy Court's Ruling on Standing and Subsequent Appeal Withdrawal ................................................................. 30

        Automatic Stay Was Used to Divert Settlement Creditors' Money To Giga Watt ................................................................. 30

        Removal of Stay Did Not Need to Be Negotiated and Is Not Consideration For Settlement ............ 30

    Procedural Delays Intended To Harm Portrayed as Consideration ................................................................. 31

    Delay Tactics as Coercive Leverage Rather than Genuine Consideration ................................................................. 31

Page 2 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

Exhibit 7 - No Cause Of Action In Trustee's Lawsuit Against Perkins..........................................33

Exhibit 8 - Miners – Unlawful Seizure .......................................................................................34

    Miners - What Happened ..........................................................................................................34

    Miners - Issues .........................................................................................................................34

Exhibit 9 – Fairness and Equity ..................................................................................................36

    Adequate Notification ..............................................................................................................36

        Inadequate Notice ..............................................................................................................36

        Class Notification Provisions of the Perkins Settlement ......................................................36

        False Allegation of Clear Notice in the Omnibus Objection ................................................37

        Notices ...............................................................................................................................38

        Example of a Notice I Received ..........................................................................................38

    Why No One Objected or Opted Out ........................................................................................40

    Crucial Matter Kept Quiet ........................................................................................................41

    Class-Member Participation in Class-Action Lawsuit Negotiations ...........................................41

    Funds Belong to Token-Holders ...............................................................................................41

    Inappropriate Use of the Automatic Stay to Justify Diversion...................................................42

    Giving Plaintiff's Funds To Giga Watt Is Not Fair and Equitable ...............................................43

    Discouragement of Deceit, Equivocation, Sleight of Hand ........................................................43

    Falsely Naming Giga Watt as a Released Party Didn't Make It True...........................................43

    Good Faith................................................................................................................................43

    Honor, Oaths, and Duties .........................................................................................................44

        Professional Oaths ..............................................................................................................44

        Example of an Oath That Attorneys Take ...........................................................................44

        Example of an Oath That Judges Take ................................................................................45

        Legal Obligations and Duties of Escrow Officers ................................................................45

        Escrow ...............................................................................................................................45

        Bankruptcy .........................................................................................................................48

        Harm of Depriving Creditors of Bankruptcy Procedure ......................................................50

        Trustee ..............................................................................................................................51

Page 3 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

Traditions of Private Project-Financing ................................................................. 52

Protection of Parties From Complexities of Class-Action Lawsuits ....................... 53

*Pro Se* Pleading Apology .......................................................................................... 54

Exhibit 10 - Conclusion ............................................................................................ 55

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

# EXHIBIT 1 – BACKGROUND AND HISTORY OF THIS CASE

Following is my understanding of the history of this case.

1. In 2017, Giga Watt's founders and associates used the reliability and credibility of Washington State government services to form a corporation called "Giga Watt, Inc." so they could raise capital investments for a construction and crypto-mining project.
2. Two of the company's principal participants were Dave Carlson, who was the CEO, and Mark Dhamma, who was the COO.
3. Giga Watt used the corporation to raise capital for a company that would provide miner-hosting services for cryptocurrency mining.
4. Giga Watt promoted the fundraising globally with sophisticated advertising, clear promises, descriptions of finished milestones, and plans for additional milestones.
5. Giga Watt offered turnkey mining services, and leases on long-term rights to use mining-equipment facilities.
6. Giga Watt commenced with such activities as:
7. A capital-raising campaign for private investment into the Giga Watt project,
8. Constructing a set of buildings in which many crypto-mining computers ("miners") would be installed and operated.
9. Charging rent to owners of the miners for their installation and operation in the buildings.
10. Calculating and delivering earnings produced by the miners to the miner owners based on the mining output and efficiency of the equipment they owned or leased.
11. Mining crypto themselves within the facilities they built and promised to build.
12. The contractual agreements Giga Watt entered into included:

    · hosting crypto-mining computers in Giga Watt's planned and existing facilities on behalf of the owners of those miners,

    · renting out mining equipment,

    · selling in exchange for bitcoin or ethereum utility tokens[1] they called Watt (WTT) that had been issued by Giga Watt for operations of the Giga Watt platform. (See the footnote on pages 4 and 5 for an explanation of tokens.)

---

[1] WTT Tokens Explained

1 Token Usage in Renting Mining Equipment

Giga Watt investors could use WTT tokens to pay for renting mining equipment at Giga Watt's facilities. WTT token-holders used WTT to pay for use of Giga Watt's equipment and facilities, mining services, and infrastructure. The more WTT tokens a user had, the more mining equipment they could rent and the more computational power they could allocate to mining different cryptocurrencies. …

*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

- operating and maintaining the facility on behalf of investors and customers.

13. Giga Watt's advertised and contracted that funds investors paid for ownership of WTT tokens would be safely held in escrow with Perkins Coie[2], hereinafter "Perkins." (See footnote below for information about the size, reputation, and stature of this international firm.)

14. Per Giga Watt's advertised offer, and the reliable function of escrow, the invested funds could be disbursed part by part only after certain construction milestones were completed. See "Escrow" on page 45.

15. Investors purchased and shipped an estimated 10,000 miners to Giga Watt for installation and operation. Most of these miners were never installed.

16. Miners in one of Giga Watt's facilities started generating crypto. Miner-owners' accounts with Giga Watt tracked owners' earnings, and Miner-owners were able to access their earnings.

17. Giga Watt reported progress reports about construction of in-progress and future facilities.

18. Some of investors' money did go into escrow at Perkins.

19. Before November 19, 2018, Giga Watt Inc. had reportedly received investments worth approximately 7,300 BTC, 30,000 ETH, and an equivalent of around $22 million in USD based on the 2018 exchange rates.

---

2 Token Benefits

Benefits of owning WTT tokens included discounted hosting rates, priority access to new mining equipment, potential bonuses or rewards for using WTT tokens, and receiving income from use of WTT as an income-producing asset that could be rented-out for a fee to owners of miners who did not purchase WTT. Additionally, WTT tokens facilitated an efficient payment process within the Giga Watt ecosystem. In addition, because the value of Giga Watt's services was expected to increase as the crypto market grew, and the prices of crypto in general were expected to increase, the price of WTT itself was also expected to increase. WTT was an asset that, through the Giga Watt system, could be rented-out for a fee to owners of miners who did not purchase WTT but needed it to pay for Giga Watt's miner-hosting services.

3 Token Economy

The use of WTT tokens created a token economy within the Giga Watt platform. Users could earn, spend, and hold WTT tokens to participate in the cryptocurrency mining process and access the services offered by Giga Watt. This token economy added a layer of utility and value to WTT tokens, enhancing the overall user experience within the Giga Watt platform.

[2] Perkins Coie is a leading international law firm with more than 1,000 lawyers in 19 offices across the United States and Asia. They provide a full array of corporate, commercial litigation, intellectual property, and regulatory legal services to a broad range of clients, including Fortune 100 corporations, startups, entrepreneurs, and government agencies. Among comparable law firms, Perkins Coie is considered to be one of the largest in the United States and globally. Perkins Coie serves a diverse range of clients, including many Fortune 100 corporations, startups, and government agencies. Perkins Coie was founded in 1912 in Seattle, Washington. It has since expanded to become a major international law firm with a strong presence in the United States and Asia. Perkins Coie was founded about 112 years ago.

Page 6 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

20. On November 19, 2018, the price of Bitcoin (BTC) was around $5,600 - $5,700 per BTC. Assuming an average price of $5,650 per BTC, the USD value of 7,300 BTC would have been approximately $41,245,000.

21. At today's price of BTC of over $69,000 the USD value of 7,300 BTC that Giga Watt received from investors is over $500,000,000.

22. **Giga Watt's percentage-profit would be over 1000% just on the BTC.**

23. **ETH's price increase is similar to BTC's.**

24. **Giga Watt filed for bankruptcy on November 19, 2018.** See "Bankruptcy" on page 48.

25. Giga Watt's investors' accounts were closed. Investors' income from Giga Watt stopped.

26. Mark D. Mr. Waldron, Esq., (hereinafter "Mr. Waldron") was appointed by the Bankruptcy Court of Eastern Washington to serve as trustee in the Giga Watt bankruptcy. See "Trustee" on page 51.

27. Pamela Egan, Esq., (hereinafter "Ms. Egan") reportedly entered the property of Giga Watt and took possession of the income-generating assets—miners—that other people, not she nor Giga Watt, owned.

28. The owners of the miners were told that the seizure of their property-assets was justified by Giga Watt's filing of bankruptcy paperwork.

29. The owners of the miners were told that they would be classified in the bankruptcy as "unsecured creditors" so that Giga Watt could avoid repayment of their debt to the investors.

30. Miner owners took legal action by raising funds as a group to prevent Ms. Egan or anyone else from selling our seized miners.

31. The miners were taken somewhere. It's possible they may have been put into operation for crypto mining.

32. One report said that the miners were put up for sale auction.

33. That same report said miner owners tried to bid on seized miners at the auction but they were prohibited from doing so.

34. Giga Watt has so far not had an opportunity to prove their debt exceeded or exceeds its ability to repay because the bankruptcy proceedings are still ongoing.

35. Instead of abiding by contract and escrow law, Perkins disbursed the escrowed money.

36. Perkins disbursed the escrowed money to Giga Watt.

37. Contrary to law and contract, the disbursement from Perkins to Giga Watt was made even though construction-milestone guarantees had not been fulfilled.

38. The amount of the disbursement is reported to have been $22 million.

39. Eric Blomquist and Jun Dam tokens filed a class-action lawsuit on behalf of owners of WTT tokens (hereinafter the Class Members) against Perkins and a Perkins executive by the name of Lowell Ness (Perkins and Lowell Ness hereinafter collectively called Perkins,

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

and that lawsuit hereinafter called the "Class-Action Lawsuit" or "Class-Action Case" or "Perkins lawsuit" or "Perkins case") for unlawfully disbursing their funds to Giga Watt.

40. Of the $22 million, $7 million was set aside pending the outcome of the Class-Action Case as it proceeded.

41. Mr. Waldron also filed a lawsuit against Perkins on behalf of Giga Watt for allegedly damaging Giga Watt by disbursing $22 million of investors' money to Giga Watt. The alleged complaint was that Perkins disbursement of the investors' funds to Giga Watt (and possibly others) damaged Giga Watt because investors took legal action against Giga Watt.

42. Perkins settled with the plaintiffs for $4.5 million.

43. Perkins settled with Giga Watt for $3 million, but Class Members have formally placed a claim on that.

44. Most of the Class Members didn't know until after receiving their settlement payment that Mr. Waldron for Giga Watt had also sued the escrow company.

45. After all settlement payments were made to the Class Members, Mr. Waldron and Ms. Egan filed the Omnibus Objection (which my Motion here is objecting to) that proposes that all the investors' claims as creditors in the Giga Watt bankruptcy be cancelled.

46. This proposed order is based on the notion that the investors' agreement to settle the Class-Action Lawsuit with Perkins – an settlement that was between Perkins and the Class Members and not between anyone else for damages caused by Perkins – releases Giga Watt's debt to the investors who filed claims as creditors in the bankruptcy.

## The Only Legal Issue Addressed So Far

Only one of the many legal issues that Giga Watt's history raises has been legally addressed. That one issue is Perkins' illegal disbursement of escrowed money to the party that's guilty of not fulfilling the legal conditions for the disbursement.

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

# EXHIBIT 2 - I CLEARLY RESERVED MY RIGHT TO PURSUE RECOVERY OF DAMAGES FROM GIGA WATT

On page 2 of my Perkins settlement Proof of Claim, I stated the following:

"***Reservation of Rights****. I reserve all due rights, including the right to pursue recovery from damages related to Giga Watt that are not at issue in this class-action case.*"

Reservations of Rights clauses allow parties to a contract to assert their rights to pursue legal action without waiving any other rights they may have under the contract.[3]

By explicitly reserving all my rights in my "Reservation of Rights" statement, I eliminated any possibility that anyone could later allege that my acceptance of settlement with the two defendants in the Perkins case could hinder or affect in any way my right to pursue recovery of damages Giga Watt or any other party caused or may have caused me.

---

[3] A reservation of rights clause is a provision in an agreement that allows one party to reserve its rights to take certain actions, such as asserting legal claims or pursuing additional remedies, while still moving forward with the agreement. This clause ensures that one party does not waive or forfeit its legal rights by entering into the contract or taking certain actions.

Page 9 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024



**I reserved my rights to pursue recovery from Giga Watt.**


On March 14, 2024, I submitted my proof of claim for the Perkins case settlement, which contained my Reservation of Rights statement.[4]

---

[4] On May 21, 2024, over two months after I received confirmation that the O'Reardon law firm had received my Proof of Claim, Mr. O'Reardon filed *"REPLY DECLARATION OF TIMOTHY G. BLOOD IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL AND REQUEST FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD FOR CLASS REPRESENTATIVE."* It said, "*I submit this declaration in support of plaintiff's motion for final approval of class action settlement and request for an award of attorneys' fees, costs, and expenses.*"

On August 30, I received an email from the Settlement Adminstrator that said my settlement-payment cheque had been mailed to me. It did not include and tracking or delivery-confirmation information.

The cheque never arrived. I was offered one solution which was to provide wire-transfer instructions as a solution.

On October 12, 2024, my settlement payment was sent to me by wire-transfer.

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

## My Reservation of Rights Was Not Disputed

The attorneys for Perkins in the settled case did not dispute my explicit "reservation of rights" statement.

## My Reservation of Rights Was Accepted

My reservation of rights was affirmed by the acceptance of my proof of claim in the Perkins Lawsuit, in which I reserved my rights to pursue recovery of Giga Watt's damages to me, and the issuance of the settlement payment to me based on the proof of claim document.

Perkins and the Class Members' representative and the trustee had several weeks in which to respond to my Perkins Proof of Claim, and to dispute all or any part of it if they so chose. The Proof of Claim, including my reservation of rights declaration, was accepted. The settlement payment based on my Proof of Claim was sent to me.

Perkins, their representatives, and the Class Members' representatives:

- Acknowledged the validity of my reservation of rights by not disputing my proof of claim and its contents,
- Acknowledged the validity of my reservation of rights by accepting my proof of claim and its contents, and
- Acknowledged the validity of my reservation of rights by issuing the settlement payment to me.

## The Perkins Settlement Does Not Affect My Right

The Perkins settlement does not eliminate, or affect in any way, my right to pursue my claim in the Giga Watt bankruptcy.

My rights as a creditor in the Giga Watt bankruptcy, and my claim in it, would continue even if the Omnibus Objection is not denied.

Since my reservation of rights is valid, the Omnibus Objection and its proposal to remove creditors from the Giga Watt bankruptcy doesn't apply to me.

Like Class Members who didn't make any such "reservation of rights" statement in their proofs of claims, I didn't think it was necessary to make this statement. We reasonably believed this because, as everyone knew, the entire purpose of the class-action lawsuit, before it was even filed, was to pursue relief for an issue, and from a party, that were both entirely separate from the disputes we have with Giga Watt.

Page 11 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

# EXHIBIT 3 - REQUIREMENTS FOR A VALID CONTRACT

Requirements contracts must fulfill in order to be legally enforceable include the following.[5]

1. Offer and acceptance. A contract requires a clear offer by one party and acceptance by the other party. This requirement is not disputed herein.

2. Intention to create legal relations. Both parties must intend for the agreement to be legally enforceable. This requirement is not disputed herein.

**3. Consideration. There must be something of value exchanged between the parties, such as money, goods, or services. This requirement was NOT satisfied in this case.** No valuable consideration was given in exchange for release of the Giga Watt.  See **"Exhibit 6 - Lack of Consideration and Related Abuses of Automatic Stay"** that starts on page 29.

4. Legal capacity. Both parties must have the legal capacity to enter into a contract, such as being of sound mind and of legal age. This requirement is not disputed herein.

5. Legal object. The purpose of the contract must be legal and not against public policy. This requirement is not disputed herein.

**6. Privity of contract. Contract terms apply only to signatories of the contract. This requirement was NOT satisfied in this case.** Giga Watt was not a party to the lawsuit with Perkins, and was not signatory to any settlement agreement, and so does not have privity.  The plaintiffs in the Perkins Ness Class-Action lawsuit did not sue Giga Watt, and Giga Watt was not a party to the lawsuit nor the settlement. Therefore, 1) the Perkins Ness Class-Action lawsuit did not establish privity or legal relationship between Giga Watt and the Class Members, and so 2) there was no privity between Giga Watt and the Class Members in the settlement of the Class-Action lawsuit. See "Exhibit 5 - Lack of Privity" on page 28.

**7. Exclusionary.  Contract stipulations are not enforceable if they would affect, harm, or benefit someone who is not a party to the contract. If this requirement is not applied to this case, Giga Watt, which is not a party to the contract, would unjustly benefit.** This rule ensures that agreements are binding only on the parties that have voluntarily entered into them. Individuals or entities who are not

---

[5] Severability of parts of contracts is standard practice. That means, in the event any provision of the agreement is found to be invalid, illegal, or unenforceable by a qualified court, the remaining provisions of the contract remain in full force and effect. So although some parts of the Perkins settlement document are invalid, as proven herein, the invalid parts don't affect the remainder of the agreement.

Page 12 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

directly involved in the agreement are excluded from its effects and obligations. Any provision in the Perkins settlement that would affect, harm, or benefit any third party is not enforceable.

8. **Fair and Equitable. The "fair and equitable" rule in contract law says agreement stipulations should be just and reasonable.** The "fair and equitable" rule is a universal principle in contract law to help interpret the intention of the parties to a contract, using fairness and equity as a guideline in the event of a dispute. **See "Exhibit 9 – Fairness and Equity" that starts on page 36.**

Page 13 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

# EXHIBIT 4 - "IDENTICAL PREDICATE OF FACT" DOES NOT APPLY

The Omnibus Objection says:

*"A class action settlement binds class members to third-party releases when the claims asserted in the class action and the third-party claims released by the class action settlement arise from a common nucleus of operative fact also referred to as the identical predicate of fact.*
This is true.
*"The Proofs of Claims arise from the same nucleus of operative fact as the Class Action."*
This is not true.
The "Class Action" referred to is LEAD PLAINTIFFS v. PERKINS .
"The Proofs of Claims" referred to are claims to the Giga Watt bankruptcy by creditors who were also members of that class action.

The term "identical predicate of fact" (hereinafter sometimes referred to as "IPF") or "common nucleus of operative fact" refers to a legal principle that is used to determine whether multiple claims or parties are related or connected in a legal context.

## Four Criteria for Identical Predicate of Fact

Note that the Identical Predicate of Fact Principle is used to

| | |
|---|---|
| a) **One defending party.** | Protect defendants who settle a case… |
| b) **One issue or set.** | for a specific issue or set of issues… |
| c) **Subsequent suit for identical injuries.** | from later being sued for the settled issue… |
| d) **Unnamed plaintiffs.** | from plaintiffs who were not named in the settled case. |

In view of those four criteria, what needs to be emphasized in evaluation of the validity of the Omnibus Objection's invocation of the IPF Principle is:

a) **One defending party.** The defendants that class members settled with was not Giga Watt.

b) **One issue or set.** The issue or set of issues that were settled don't pertain to any of the issues of Giga Watt's bankruptcy.

c 1) **Subsequent suit for identical injuries.** Claims to the Giga Watt bankruptcy preceded the Perkins lawsuit

c 2) **Subsequent suit for identical injuries.** Claims to the Giga Watt bankruptcy are for recovery from completely different injuries, not identical injuries.

d) **Unnamed plaintiffs.** The plaintiffs that the Omnibus Objection seeks to remove from the Giga Watt bankruptcy are not plaintiffs who were not named in the Perkins case.

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

The IPF principle answers the question of whether or not claims can be joined together in a single lawsuit, whether related claims can be litigated together, whether a settlement or release in one case may impact or extend to related claims parties, or whether claims or parties are sufficiently similar or connected such that they can be considered together in a single lawsuit or legal proceeding. For claims to be considering to have identical predicate of fact, also called a common nucleus of operative fact, they must have common elements or be based on the same underlying facts or circumstances.

The IPF principle doesn't apply to the Giga Watt creditors and their claims in the Giga Watt bankruptcy.

My claims against Giga Watt cannot be extinguished on the basis of the IPF principle.

## Extensive Proof that IPF Principle Doesn't Apply

To apply the identical predicate of fact principle to this case, i.e. proposed release of claims in the Giga Watt bankruptcy because of settlement of the Perkins lawsuit, the facts and issues in the Perkins case would have to be the same as those of Giga Watt bankruptcy.

In the context of litigation, this principle is often used to assess whether claims or parties are sufficiently similar or connected such that they should be considered together in a single lawsuit or legal proceeding. For claims to share an identical predicate of fact, they must have common elements or be based on the same underlying facts or circumstances.

For example, if a group of plaintiffs had filed a single class-action lawsuit against Perkins Coie, Lowell Ness, and Giga Watt as one defendant for the same cause of action, and the plaintiffs demonstrated that their damages could be calculated on a class-wide basis, the identical predicate of fact principle would apply.

Courts have consistently held that class action settlements cannot release claims that arise from different factual predicates, even if they involve the same defendants.

In *TBG, Inc. v. Bendis*, 36 F.3d 916, 918-19 (10th Cir. 1994), the court ruled that "released claims must be based on the identical factual predicate as the claims in the settled class action," and not merely related to the same general subject matter.

## My Claim Is For Different Damages and Recovery of Different Assets

My claim includes mining equipment and lease rights that I paid for. These are separate from my purchases of Giga Watt's tokens and related rights.

I sued Perkins exclusively for the loss of money their crime caused,

Page 15 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

       not for any physical assets, and

       not for loss of income from those assets, and

       not for loss of income from the income-producing utility of the tokens, and

       not as a creditor in the Giga Watt bankruptcy, and

       not as investors in the various earnings methods of the mining-facilities business model.

Perkins was sued exclusively because of Perkins's crime of breaching their contractual and fiduciary duty to keep the escrowed money safe. Most of the class members also filed creditor claims with the bankruptcy court, which was a separate legal matter.

In this case, the Omnibus Objection overlooks the fact that in addition to what was litigated in the case settled with Perkins, my Giga Watt claims also include physical mining equipment and lease rights. These distinct property rights and contractual obligations arise from entirely different transactions and agreements than those at issue in the class settlement concerning token, their function, and escrow laws.

The principle of "identical predicate of fact" typically applies to a single class action lawsuit, where the plaintiffs in the class collectively seek relief against a defendant or group of defendants for similar claims based on common issues of fact or law.

## Scholarly Analysis of Class Action Settlement and the IPF Principle

To determine the validity of invoking the Identical Predicate of Fact Principle (hereinafter "IPF" or "IPFP"), one professional resource with numerous citations is:

> ***Idaho Law Review***
> Volume 55, Number 3, Article 4
> "Class Action Settlements: Res Judicata, Release, and the Identical Factual Predicate Doctrine"
> Kris J. Kostolansky and Diane R. Hazel
>
> Citation
> Kris J. Kostolansky & Diane R. Hazel, Class Action Settlements: Res Judicata, Release, and The Identical Factual Predicate Doctrine, 55 IDAHO L. REV. 263 (2019).
> Available at: https://digitalcommons.law.uidaho.edu/idaho-law-review/vol55/iss3/4

This article is referred to hereinafter as "Kostolansky and Hazel."

Kostolansky and Hazel make it clear that for the the IPFP to apply to Giga Watt claims as a result of a class member's agreement to settle the class-action lawsuit against Perkins, the underlying injury to the

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

class-member plaintiffs in the Perkins lawsuit must be identical to at least one injury underlying the Giga Watt bankruptcy case.

### Page 263 - Abstract

"Under the [IPF] doctrine, a release in a class settlement can release only those claims sharing an identical factual predicate with the settled class claims."

### Page 263 - Abstract

"In the class settlement context, the court must enter a final judgment approving the settlement before the set¬tlement becomes final. But as part of the final judgment, the court can only release claims that share an identical factual predicate. "

### Page 270

"The IFPD is particularly important given that a class release may release claims that were not brought in the class case nor could have been brought.
Wal-Mart Stores, 396 F.3d at 106–07

### Page 270

"To release claims that were "not presented and might not have been presentable," courts require that the released claims share the identical factual predicate underlying the claims in the class litigation. "

### Page 276

"A class settlement release ... requires identity of fact."
Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 748 (9th Cir. 2006).

### Page 276

"And, at least in the Ninth Circuit, an identical factual predicate means both the same set of facts (the predicate) and the same injury."
Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 749 (9th Cir. 2006).

### Page 276

"Some courts have interpreted identical factual predicate to be narrower than the more relaxed standard of same transaction or occurrence under res judicata."
Burgess v. Citigroup Inc., 624 F. App' x 6, 9 (2d Cir. 2015) ("distinct claims that depend 'upon proof of further facts' constitute a 'separate factual predicate.' ")
W. States Wholesale Nat. Gas Antitrust Litig., 725 F. App' x 560 (9th Cir. 2018)

Page 17 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

Page 277

> "...the Ninth Circuit in Class Plaintiffs v. City of Seattle—a case three years before Epstein I—reasoned that "[t]he weight of authority holds that a federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action . . . .' "
> Class Plaintiffs v. Seattle, 955 F.2d 1268 (9th Cir. 1992) at 1287–88 (quoting TBK Partners, 675 F.2d at 460).

Page 277

> "Yet, in Class Plaintiffs' analysis, the court found the claims asserted in the two actions 'arise from the same common nucleus of operative fact' and could therefore be released."
> Class Plaintiffs v. Seattle, 955 F.2d 1268 (9th Cir. 1992) at 1288.

The issue settled in the Perkins lawsuit didn't arise out of the same transactions that are the issues in the Giga Watt bankruptcy claims. Even if they had, according to Kostolansky and Hazel, the claims would also have to be based on the same underlying facts for the IPFP to apply.

Page 277

> "...claims can arise 'out of the same transaction, [but be] based upon different underlying facts.' " Epstein v. MCA, Inc., 50 F.3d 644, 665 (9th Cir. 1995).
>
> "For example, although the Ninth Circuit in Reorganized FLI, Inc. v. OneOK, Inc. found a prior class action and a subsequent litigation both challenged manipulative trading practices that allegedly inflated the price of natural gas, the court found the class settlement release from the prior action was not enforceable against the plaintiff in the subsequent litigation under the identical factual predicate rule."
> In re W. States Wholesale Nat. Gas Antitrust Litig., 725 F. App' x 560, 562 (9th Cir. 2018).

Page 227

Kostolansky and Hazel continue in reference to W. States Wholesale Nat. Gas Antitrust Litig., cited above:

> "The Ninth Circuit emphasized that 'even if those elements of the factual predicates of each claim are identical, the question whether [the plaintiff] was injured by Defendants—as well as the follow-on questions of when, and where, and how—are also part of the factual predicate of [the plaintiff's] claims made here."
> Id. at 563 (citing Hesse, 598 F.3d at 581 (9th Cir. 2010)).

Page 264

Page 18 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

"The IFPD permits a broad release of claims—including claims that were not pursued in the underlying class litigation—if the party raising the defense can show an identical factual predicate between the underlying class claims and subsequent claims."
Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 107–09 (2d Cir. 2000).

Page 265

"For a claim to be precluded under the doctrine of res judicata, the following elements must be met:

(1) a valid, final judgment on the merits . . . ;
(2) claims arising out of the same transaction and occurrence as the initial judgment; and
(3) identity of parties."

---WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS 5, at §18:15.  (5th ed. 2018). In the class context, absent class members are not technically parties. Once a class is certified, absent class members are considered parties for preclusion purposes.
---Taylor v. Sturgell, 553 U.S. 880, 894–95 (2008) ("Representative suits with preclusive effect on nonparties include properly conducted class actions and suits brought by trustees, guardians, and other fiduciaries.")
---Devlin v. Scardelletti, 536 U.S. 1, 9–10 (2002) ("[N]onnamed class members . . . may be parties for some purposes and not for others. The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context."

Accordingly, creditors' claims to the Giga Watt bankruptcy cannot be precluded under the doctrine of res judicata because:
(1) A valid, final judgment on the merits of the creditors' claims against Giga Watt has not been made.
(2) The claims arising out of the bankruptcy case are not the same transaction and occurrence as the Perkins case; and
(3) The two cases' defendants are not the same parties.

The purpose of the IPFP is to prevent the re-litigation of questions that have been settled and resolved. Page 266, Kostolansky and Hazel say:

"Courts permit the release of a broader range of claims to 'promot[e] judicial economy by preventing the relitigation of settled questions resolved in comprehensive settlement agreements.' "

Page 19 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

> Freeman v. MML Bay State Life Ins. Co., 445 F. App'x 577, 579 (3d Cir. 2011) (citing In re Prudential Ins. Co. of Am. Sales Prac. Litig., 261 F.3d 355, 366 (3d Cir. 2001)).

The questions yet to be answered in the Giga Watt bankruptcy case have not yet been through court procedure, and have not been settled or resolved. Nothing is being re-litigated in the bankruptcy case.

Page 266.

> "Before a class settlement with a release is finalized, the court must enter a judgment approving the settlement."
> "Court approval is a two-step process."
> ---WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS 5, at §18:15.  (5th ed. 2018). In the class context, absent class members are not technically parties. Once a class is certified, absent class members are considered parties for preclusion purposes.
> ---Taylor v. Sturgell, 553 U.S. 880, 894–95 (2008) ("Representative suits with preclusive effect on nonparties include properly conducted class actions and suits brought by trustees, guardians, and other fiduciaries.")
> ---Devlin v. Scardelletti, 536 U.S. 1, 9–10 (2002) ("[N]onnamed class members . . . may be parties for some purposes and not for others. The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context."
>
> "First, the court must 'determin[e] whether the proposed settlement falls within the range of possible approval and whether it is reasonable to issue notification to settlement  class members of the settlement's terms.' "
> FED. R. CIV. P. 23(e)(2). For a judgment to be enforceable, the judgment must have been rendered with due process. Pelt v. Utah, 539 F.3d 1271, 1284 (10th Cir. 2008) ("The preclusive effect of a prior judgment will depend upon whether absent class members were 'in fact' adequately represented by parties who are present" and will not bind absent class members' if they were not accorded due process of law").

## Pending Due Process in Bankruptcy Court

To be enforceable, a judgment must have been rendered with due process. The Giga Watt bankruptcy creditors have not yet had court procedure that is due to them.

> "A judgment in a class action lawsuit binds all members of the class and prevents class members from later bringing claims over the same transaction or occurrence in a future lawsuit if they have met IFPD." Hansberry v. Lee, 311 U.S. 32, 42–43 (1940); RUBENSTEIN, supra note 5, at §18:1.

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

The IPF principle protects defendants from being sued in again for a settled matter. Class members' claims against Giga Watt were formally made in the proper court long before the separate lawsuit was filed with Perkins for completely different reasons.

> "Generally, by 'precluding parties from contesting matters that they have had a full and fair opportunity to litigate,' the doctrine of preclusion 'protect[s] against the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions.' "
> Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (internal quotation marks and citations omitted).

Class members that the Omnibus Objection alleges have released Giga Watt have not had due process of a full and fair opportunity to litigate with Giga Watt.

The IPF principle cannot be said to apply to class members who are creditors in the Giga Watt bankruptcy because class members aren't contesting matters with Giga Watt that have already been settled.

## Procedural Due-Process-Protection Rules

Kostolansky and Hazel list the following procedural due-process protection requirements.

"Procedural due process protection in the class context requires:
(i) notice plus an opportunity to be heard and participate in the litigation;
(ii) notice that is the best practicable and reasonably calculated to apprise parties of the action and opportunity to object;
(iii) notice that describes the action and rights;
(iv) the opportunity to remove oneself from the class and opt out; and
(v) adequate representation by the named plaintiff(s) of absent class members' interests."

Again, the five due-process rules are:

i) Class Members Must Be Heard and Participate
ii) Parties of the Action be Apprised with Opportunity To Object
iii) Notice of Action and Rights
iv) Opportunity to Remove and Opt Out
v) Adequate Representation

Four of These Five Requirements Weren't Met

Page 21 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

i. No Notice To Be Heard and Participate. Even if I was given technically allowed to be heard in settlement discussions, I was not notified of any event, venue, or method by which to do that, and the Omnibus Objection doesn't provide a copy of any such notice, event, venue, or method. Moreover, class members' and I did not have any genuine opportunity to participate in the litigation other than as plaintiffs wholly dependent on representatives to participate on our behalf and in our best interests.

Kostolansky and Hazel confirm that: "Generally speaking, absent class members are not 'parties' before the court in the sense of being able to direct the litigation."
Williams v. Gen. Elec. Capital Auto Lease, Inc., 159 F.3d 266, 269 (7th Cir. 1998).

ii. Not Apprised. The notices sent to class members and me that informed us of the lawsuit regarding damages caused by Perkins, and its settlement that we had an opportunity to object to, made it clear that the lawsuit was against Perkins. It was clear at all times that the lawsuit excluded Giga Watt, which is what we wanted at all times. I believe I was reasonable to expect the notices to be truthful and complete. I believe I was reasonable to rely on the notices in making my decision to accept the settlement on the basis of that reasonable believe. I don't believe I was expected to assume the notices were or even could be untruthful or incomplete or misleading.

iii. Notice of Action and Rights. If class members and I ever received a notice that describes a change to the lawsuit superficially or at its foundation, such as to include Giga Watt and release them – which would have been contrary to what we wanted and a violation of our rights -- I would like to ask that I be shown a copy of that notice. If it exists, I believe it would be reasonable to expect to find it in the Omnibus Objection as support of the allegation that I released Giga Watt from my claim to their bankruptcy, but it's not there.

v. Inadequate Representation.
Please see the next section.

## Inadequate Representation

If anything that the Class Members' representatives and the trustee negotiated on our behalf could be harmful to class members' interests and what class members wanted and want, then the adequate representation rule was broken.

But it's probable that Class Members' representatives would argue that they did represent class members' best interests in every way, and that nothing in the settlement could harm the class members they represented. In that case, it's not possible that they negotiated anything that would harm the class

Page 22 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

members. _Which means they didn't agree on our behalf to releasing Giga Watt from our bankruptcy claims_ in our settlement with Perkins, since such a release would be harmful to us and contrary to our best interest.

In any event, if the class members had been adequately represented by the legal professionals who were present at the settlement negotiations and hearing, any proposal to release of Giga Watt would not have been proposed, nor considered, nor alleged, and most certainly would not have been established. Such a proposal would not have been kept quiet. Class Members would have been clearly warned of the potential harm. Adequate representation would have sternly warned class members of any such proposal in a clear notification, and pointed out potential harm if approved.

Regarding the question of whether or not class members released Giga Watt when they agreed to settle with Perkins, the Omnibus Objection only says this:

> *"The Preliminary Approval Order (i) held that Jun Dam, who has filed Proof of Claim No. 324 in this Trustee's First Omnibus Objection (Released Claims) case, adequately represented the Class, (ii) certified the Class for settlement purposes, and (iii) approved the substance and manner of notice to the Class of the Class Action Settlement."*

If it's true that the settlement agreement contains one or more terms that are harmful to or not in the best interests of the class members...

...then it can't also be truthfully said that Jun Dam:

> i) adequately represented the Class, and
> ii) certified the Class for settlement purposes on class members' consent with authority to do so, and
> (iii) approved the substance and manner of notice to the Class of the Class Action Settlement, with authority to do so?

The Omnibus Objection even goes on to point out that no one opted out of the Perkins settlement, which underscores, intentionally or not, that the Class Members were certain that harmful substantive changes couldn't be lawfully added to the core matter of the case, such as by means of an allegation that we released Giga Watt from our bankruptcy claim when we settled with Perkins for an entirely different matter, which we didn't knowingly do.

## Rule 23(e) Rules Invalidate the Omnibus Objection

Rule 23(e) in the Federal Rules of Civil Procedure (FRCP) is a set of rules that govern the procedures for class-action lawsuits in United States federal courts. It outlines the requirements and procedures for court approval of class action settlements.

Page 23 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

On page 269, Kostolansky and Hazel say:

> "Although Rule 23(e) serves as a procedural safeguard on the front end during the finalization and approval of a class settlement, courts also have established safeguards on the back end for unnamed class members when a party argues a class settlement release precludes their claims."

On page 268 of "Class Action Settlements: Res Judicata, Release, and the Identical Factual Predicate Doctrine", Kostolansky and Hazel also point out in various ways that the purpose of Rule 23(e) is to ensure that claims of class members are protected. While Rule 23(e) applies to class members who weren't named in a settled class-action lawsuit, the spirit of the law is to protect valid claims from unwarranted release.

> "The due process clauses, along with Federal Rule of Civil Procedure 23(e), serve as safeguards protecting the release of unnamed putative class members' claims."
> FED. R. CIV. P. 23(e).

Requirements For Court Approval of Settlement
According to Kostolansky and Hazel, "Under Rule 23(e), class claims may only be settled or dismissed with the court's approval."

On page 269, Kostolansky and Hazel say:

> "Rule 23(e) imposes certain requirements in approving a proposed settlement:
> • The court must direct notice to all class members who would be bound. [FED. R. CIV. P. 23(e)]
> • The court may approve the settlement binding class members only after a hearing and a 'finding that it is fair, reasonable, and adequate.' [FED. R. CIV. P. 23(e)]
> • The parties must file a statement identifying any agreement made in connection with the proposed settlement. [FED. R. CIV. P. 23(e)]
> • If the class action was already certified under Rule 23(b)(3), the court may refuse to approve the settlement unless it allows class members a new opportunity to request exclusion. [FED. R. CIV. P. 23(e)]
> • Any class member may object to the settlement. [FED. R. CIV. P. 23(e)] "

Were these rules enforced and followed? For one example, did class members file a statement identifying an agreement made in connection with the proposed settlement? I'm not aware of any such statement and the Omnibus Objection doesn't provide a copy of or link to one.

Nevertheless, these rules are intended to protect class members from the intentional or unintentional risks of harm that can result from the complex nature of class action lawsuits.

Page 24 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

Protection of Class Members Who Did Not Shape The Settlement.

Page 269, Kostolansky and Hazel say:

"Rule 23(e)'s requirement that the court approve the settlement and enter a finding that the settlement is 'fair, reasonable, and adequate' seeks to reinforce due process of law and ensure adequate representation of class members who have not participated in shaping the settlement. "

FED. R. CIV. P. 23(e).

"Courts thus have a duty to ensure that the settlement is fair and adequate to all potential class members."

Grimes v. Vitalink Communications. Corp., 17 F.3d 1553, 1557 (3d Cir. 1994)

Page 270

Kostolansky and Hazel quote text from Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 106 (2d Cir. 2005):

"Plaintiffs in a class action may release claims that were or could have been pled in exchange for settlement relief. Plaintiffs' authority to release claims is limited by the 'identical factual predicate' and 'adequacy of representation' doctrines. Together, these **legal constructs allow plaintiffs to release claims that share the same integral facts as settled claims, provided that the released claims are adequately represented prior to settlement.**"

This Wal-Mart Stores statement affects the Omnibus Objection in at least three ways:

Not Same Integral Facts. The bankruptcy-creditor claims that the Omnibus Objection seeks to release Giga Watt from do not share the integral facts of the claims settled in the Perkins lawsuit.

Not Represented Prior to Settlement. The bankruptcy-creditor claims that the Omnibus Objection seeks to release Giga Watt from were not evaluated in any way in the Perkins lawsuit, and they were not represented prior to settlement.

Inadequate Representation. As noted elsewhere, adequate representation would not have considered or allowed class members to be harmed by the settlement with Perkins.

A class settlement release will preclude subsequent claims only if the released conduct arises out of the "identical factual predicate" as the claims at issue in the underlying class litigation. Moreover, adequacy of representation in the underlying litigation also must be found.

Page 25 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

Release of Giga Watt is contrary to the class members' intention and ongoing understanding since the formation of the class-action suit, where it was made clear that the two cases are separate and distinct. Any attempt to release Giga Watt or limit the undersigned's rights to seek redress for separate damages is unjust and unacceptable.

## Comparison of the Two Cases

| Fact | DEBTOR Giga Watt | DEFENDANT Perkins | Identical or Different? |
|---|---|---|---|
| Advertised Giga Watt's offers. | Yes | No | Different |
| Received from investors an estimated 7,300 bitcoins and 30,000 ethereum from the total of all investors for crypto-mining in an existing facility and in facilities to be constructed. | Yes | No | Different |
| Received from Giga-Watt investors' money for escrow services. | No | Yes | Different |
| Sent my money to escrow-agent Perkins for safe escrow guardianship. | Yes | No | Different |
| Received my miners for installation and operation. | Yes | No | Different |
| Sold WTT tokens to me. | Yes | No | Different |
| Was entrusted with escrow protection of investors' money. | No | Yes | Different |
| Held my payments for WTT tokens in escrow. | No | Unlawfully disbursed depositors' escrowed funds to Giga Watt. Was sued, and settled out of court. | Different |
| Contracted with me to install and operate my miners. | Yes. | No | Different |
| Breached its contract with me to install and operate the miners I purchased and shipped to Giga Watt. | Yes | No | Different |
| Credited my account for my earnings per written contractual promises. | Temporarily. Breached contract after bankruptcy | No | Different |

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

| | filing. | | |
|---|---|---|---|
| Unfinished | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |


### The Two Separate Cases and Claims Are Not Even Similar

The Trustee argues that my claims and those covered by the settlement arise from an "identical factual predicate." However, this is incorrect. My claims involve physical mining equipment and lease rights, which are separate from token-holder claims centered on token purchases or rights under token escrow agreements. These claims involve tangible assets and specific lease obligations, fundamentally distinct from the class-action's token-holder escrow claims.

The "identical predicate of fact" rule does not apply because my separate claims for different damages from different causes do not share an identical predicate with the Perkins escrow claims.

Courts have consistently held that class action settlements cannot release claims that arise from different factual predicates, even if they involve the same defendants. For instance, in TBG, Inc. v. Bendis, 36 F.3d 916, 918-19 (10th Cir. 1994), the court ruled that "released claims must be based on the identical factual predicate as the claims in the settled class action," and not merely related to the same general subject matter. In this case, my claims involve physical mining equipment and lease rights— distinct property rights and contractual obligations that arise from entirely different transactions and agreements than those at issue in the class settlement concerning token purchases or escrow rights.

The parties in the settled class-action case on the one hand and the bankruptcy case that started before the class-action case did and is still not settled on the other hand are two different entities. The lawsuits against these two entities were for separate and distinct legal claims and issues. The inclusion of Giga Watt in the release paragraph of the settlement agreement is not only surprising but also unjust as it seeks to release a party against whom the class members have separate claims and ongoing litigation.

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

In their proposal to remove creditors like me from Giga Watt's bankruptcy, representatives of Giga Watt allege that members of the Perkins Lawsuit were notified that Giga Watt would be released along with the class-action defendants.

This isn't and can't be true, because the purpose of the class-action suit was to recover damages Perkins Coie and Lowell Ness caused without affecting in any way the class members' claims against Giga Watt for entirely separate matters.

The notices class members were sent about the proposed settlement were all exclusively about the lawsuit between the suit's plaintiffs on the one hand, and the defendants on the other. One of the parties was the class members as plaintiffs. The other was Perkins Coie and Lowell Ness as defendants.

## The Class Action and The Bankruptcy – Two Different Assets and Issues

The losses of assets that the class-action's lead plaintiffs, Eric Blomquist and Jun Dam, focused on were losses from investment class members made In Giga Watt tokens. This lawsuit didn't address loss of investments in crypto-currency miners that Giga Watt caused its creditors.

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

# EXHIBIT 5 - LACK OF PRIVITY

Giga Watt was not a party to the settled Perkins class-action lawsuit and there is no legal relationship between Giga Watt and the class members in the settled case. As noted elsewhere herein, this "privity" is required for the agreement to be enforceable. So Giga Watt should not be released from my claims or any other dispute that's if it was not an issue settled in the Class-Action case.

Page 29 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

# EXHIBIT 6 - LACK OF CONSIDERATION AND RELATED ABUSES OF AUTOMATIC STAY

The Omnibus Objection says:

> On November 21, 2023, on the Trustee's motions, this Court granted relief from the stay and modified the Automatic Stay Order (ECF No. 1040). That same day, the Court also modified the related Preliminary Injunction (Adv. Proc. No. 21-80053, ECF No. 87). The Trustee's agreement to obtain these Orders and his consent to the Class Action Settlement constituted valuable consideration to the Class Members as the settlement could not have moved forward without these Orders. The Trustee obtained these Orders in exchange for the release.

This is wrong.

There was no fair consideration provided to class-action members for the release. Class members, including myself, received no tangible or equitable benefit from the estate's involvement, which fails the standard of fairness required for enforcing such a release. The release was granted without proportional value provided to the token holders, especially given the procedural issues involved.

In *Aegean Marine Petroleum Network Inc.*, 599 B.R. 717, 721-23 (Bankr. S.D.N.Y. 2019), the court held that principles to safeguard fairness and equity mandate that class members receive value for any third-party release granted. The court held that consideration must provide a tangible benefit or concession to the releasing party for a third-party contract-stipulation to be enforceable.

In Perkins/Giga-Watt case, trustee Mr. Waldron's removal of an automatic stay that was wrongly initiated from the beginning does not constitute valuable consideration to the Class Members. It doesn't provide Class Members with any benefit or value.

Without valuable consideration, the third-party release statement in the Perkins settlement agreement is unenforceable.

## Misapplication of the Automatic Stay and Lack of Consideration

The automatic stay was misapplied because Giga Watt lacked standing over token-holder claims. The removal of the automatic stay, therefore, does not constitute legitimate consideration, as it was a procedural error, not a negotiated benefit. The stay was incorrectly applied and its removal was a corrective action rather than a concession with added value to the class members. The stipulation that

Page 30 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

Giga Watt be released is not enforceable because the Class Members not only did not receive anything of value in exchange for the alleged concession, but in fact would be extremely harmed by it.

## Bankruptcy Court's Ruling on Standing and Subsequent Appeal Withdrawal

Giga Watt's standing over token-holder claims was contested, and the appeal was subsequently withdrawn, which weakens even further the allegation that removal of the stay was an item of consideration. Without a fully adjudicated standing, reliance on the stay as consideration is tenuous at best, as it fails to provide a genuine benefit to class members, undermining the validity of the third-party release.

Standing requirements must be rigorously established in bankruptcy releases. In *In re Combustion Engineering*, 391 F.3d 190, 233 (3d Cir. 2004), the court stated that "Article III standing must be demonstrated with the same rigor in the bankruptcy context as in other areas of law," cautioning against using bankruptcy jurisdiction as a "jurisdictional bootstrap" to validate releases where standing is uncertain. Here, the contested standing and subsequent withdrawal of the appeal regarding Giga Watt's standing over token-holder claims undermines the legitimacy of the stay as a form of consideration. Without full adjudication, reliance on the stay lacks the required concrete and particularized injury needed to justify a third-party release. *Id.* at 231-33 (noting the need for specific factual findings to demonstrate both an actual dispute and proper standing). Furthermore, the absence of a full adjudication in this case fails to establish the "concrete injury, causal connection, and redressability" necessary to validate consideration. *Id.* at 228.

## Automatic Stay Was Used to Divert Settlement Creditors' Money To Giga Watt

Giga Watt's reliance on the automatic stay to intercept these funds is inequitable, as it improperly favored Giga Watt instead of the token-holder creditors who were damaged by Giga Watt. Had the stay been correctly applied, token holders would have received the full $7.5 million, preserving the settlement's integrity.

## Removal of Stay Did Not Need to Be Negotiated and Is Not Consideration For Settlement

The class-action settlement itself rendered any stay proceedings and appeals irrelevant. The settlement fully addressed the claims. The automatic stay would have been lifted by that. The automatic stay would have been removed even if the trustee had not done anything to remove it. So the change the trustee made to the stay is not valuable consideration.

Courts have established rigorous standards for valid consideration in third-party releases. In *In re Dow Corning Corp.*, 280 F.3d 648, 658 (6th Cir. 2002), the court outlined specific factors for such releases, including that "the non-debtor has contributed substantial assets to the reorganization" and that "substantial factual and legal grounds" must support the release. Here, any effect on the automatic stay was incidental and would have occurred naturally following the settlement, which does not meet Dow Corning's "substantial contribution" requirement. Courts consistently hold that third-party release

Page 31 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

consideration must represent actual, meaningful contributions, not incidental procedural effects. See *In re Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994) (requiring a "real and substantial contribution" rather than incidental benefits that arise from the natural course of proceedings). The automatic stay's lifting due to the settlement is such an incidental effect, failing to satisfy the substantial contribution standard demanded by *Dow Corning*.

## Procedural Delays Intended To Harm Portrayed as Consideration

Procedural delays were used as a tactic interfered with plaintiffs' efforts to go to jury trial and recover from damages done to them and that interference put pressure on plaintiffs to settle. Such delay tactics have been rightly described as "legal extortion" and the agreement that it forces greatly diminishes possible benefit to class members. But an attempt has been made to portray this delaying and tactical strategizing that amounts to legal extortion as valuable consideration to the Class Members in the settlement. It isn't something that counts as consideration that would justify release of Giga Watt from bankruptcy claims.

In *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 143 (2d Cir. 2005), the Second Circuit held that third-party releases cannot rest solely on procedural leverage or delay tactics; rather, they must provide real value to the releasing parties. Procedural delays aimed at pressuring settlement do not meet the standard for valid consideration, as they fail to offer an equitable exchange or tangible benefit. This case supports the argument that delay tactics, serving merely as "legal extortion," do not justify the enforcement of a third-party release.

Given the misapplication of the automatic stay, lack of standing, procedural withdrawals, and the self-resolving nature of the class-action settlement, the Trustee's actions do not qualify as true consideration. Without any tangible or equitable value directly from Giga Watt, the release fails due process and fairness standards, making it unenforceable.

## Delay Tactics as Coercive Leverage Rather than Genuine Consideration

The procedural delays employed to pressure the settlement effectively functioned as a form of coercive leverage, compelling agreement without delivering any substantive benefit to class members. While such delays may sometimes serve as negotiation tools, they fall short of providing the necessary consideration required to support a third-party release. This approach unfairly obligates class members, including myself, to relinquish claims without receiving a fair and equitable exchange.

In *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 143 (2d Cir. 2005), the Second Circuit held that third-party releases must be grounded in genuine consideration, not merely procedural leverage or delay tactics. A valid release requires a tangible benefit to the releasing parties. Delays used purely to pressure settlement lack the standard of valid consideration, as they fail to offer an equitable exchange

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

or real value. This case supports the position that delay tactics, when used as coercive leverage, cannot substantiate the enforcement of a third-party release.

Given the misapplication of the automatic stay, lack of standing, procedural withdrawals, and the self-resolving nature of the class-action settlement, the Trustee's actions do not qualify as true consideration. Without any tangible or equitable value directly from Giga Watt, the release fails due process and fairness standards, making it unenforceable.

Page 33 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

## EXHIBIT 7 - NO CAUSE OF ACTION IN TRUSTEE'S LAWSUIT AGAINST PERKINS

Perkins was entrusted with investment moneys made for completion of Giga Watt project milestones. But Perkins unlawfully disbursed it to Giga Watt, thereby damaging the investors --- not Giga Watt.

Giga Watt was enriched by the disbursement of investors' funds, not damaged.

The lawsuit Mr. Waldron the trustee filed against Perkins on behalf of Giga Watt is without merit. Giga Watt was not damaged by Perkins. Giga Watt received millions of dollars from Perkins. Since Giga Watt was not damaged by Perkins, the lawsuit and the settlement that trustee Mr. Waldron is said to have negotiated between Giga Watt and Perkins is unfounded.

Page 34 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

# EXHIBIT 8 - MINERS – UNLAWFUL SEIZURE

## Miners - What Happened

After the bankruptcy was filed, Giga Watt sent notices to the miners owners forbidding them to go to Giga Watt to get their miners.

About the same time, Mr. Waldron, the court-appointed Giga-Watt-bankruptcy trustee, hired Ms. Egan to be his attorney for the Giga Watt bankruptcy.

Ms. Egan went to the Giga Watt property where miners had been shipped by the miners' owners for installation and operations in Giga Watt hosting facilities.

Ms. Egan took the miners out of the Giga Watt property.

Miner owners took legal action by raising funds as a group to prevent Ms. Egan or anyone else from selling our miners. That included trying to bid on the miners we already owned at the auction, but we were not allowed to bid on and try to buy our miners a second time.

## Miners - Issues

Bankruptcy filing does not automatically give the filer a legal right to seize property that belongs to others.

The comparison that the following questions make demonstrates the reasoning behind this:

If the owner of a parking lot files a bankruptcy document with a court, does the owner then have a legal right to seize the cars parked in his lot as if they were his property?
If the owner of a boat marina files a bankruptcy document, does the owner then have a legal right to take the boats berthed in the marina as his own property?
If the owner of an airline files a bankruptcy document, does the owner of the airline then have a legal right to claim all the luggage inside the company's airplanes belongs to the owner?

No.

Bankruptcy laws are designed to provide a fair and orderly process for everyone affected by a bankruptcy.

If a parking lot owner files for bankruptcy, the cars parked in the lot belong to cars' owners, and the owner of the parking lot cannot simply claim them as their new property. The same applies to anyone else who files for

> If the owner of a parking lot files a bankruptcy document with a court, does the owner then have a legal right to seize the cars parked in his lot as if they were his property?
> If the owner of a boat marina files a bankruptcy document, does the owner then have a legal right to take the boats berthed in the marina as his own property?
> If the owner of an airline files a bankruptcy document, does the owner of the airline then have a legal right to claim all the luggage inside the company's airplanes belongs to the owner?

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

bankruptcy. Bankruptcy doesn't give owners of boat marinas or airlines permission to take boats berthed in the marina or passengers' luggage, for just two more examples.

Giga Watt was not awarded with permission to take the miners from the miners' owners by filing bankruptcy paperwork with an honorable court of law.

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

# EXHIBIT 9 – FAIRNESS AND EQUITY

As noted elsewhere herein, the "fair and equitable" rule in contract law says agreement stipulations should be just and reasonable. The "fair and equitable" rule is a universal principle in contract law to help interpret the intention of the parties to a contract, using fairness and equity as a guideline in the event of a dispute.

## Adequate Notification

Lawyers in class-action lawsuits are require to provide clear written disclosures of settlement terms before making any recommendation about accepting them. In class-action lawsuits, their representatives have a responsibility to ensure that class members are informed about the terms of a proposed settlement before making any recommendation about accepting it. This includes providing clear written disclosures that outline the details of the settlement, such as the amount of monetary compensation, any changes in behavior or practices by the defendant, the distribution process for settlement funds, and any other relevant terms.

### Inadequate Notice

Notice of a pending settlement of a lawsuit between the Class Members and their two defendants—with an option to opt out—is completely different from a notice that discloses unmentioned, unannounced addition of third parties for release of liability from other issues not related to the settled case that the notice refers to.

### Class Notification Provisions of the Perkins Settlement

The "Class Notice" section of the Settlement Stipulation document specifies what the Perkins defendants were required to do to notify Class Members about the settlement, including required forms of notice (email, postcard, long-form, website, publication) and steps to ensure the information was disseminated effectively.

1. Types of Notice
Long-form Class Notice: This document had to contain all the essential information about the settlement, including the background of the case, settlement relief, release of claims, deadlines, and procedures for opting out or objecting to the settlement. It was required to be available on the Settlement Website and sent upon request.

And

Email and Postcard Notice: These notifications were required to be sent to Class Members, directing them to the Settlement Website and providing information about their rights and deadlines.

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

Website and Publication Notice: In addition to direct mail and email, public notice was to be made via social media platforms (Reddit, Twitter, Telegram) and search engines (Google, Yahoo, Bing) to increase visibility.

And

2. Direct Notice (Email/Postcard)
Notices were to be sent to Class Members who could be identified in the records of Perkins Coie, the Giga Watt Estate, or other available records.
Method: Direct notices were to be sent either by email or, for those without email addresses, by mail. In the event that notices were returned as undeliverable, the Settlement Administrator would take additional steps to find updated addresses and resend notices.

And

3. Website Notice and Accessibility
The Settlement Website had to be active no later than the Notice Date, and contain important documents like the Long-form Class Notice, Claim Form, the Settlement Agreement, and other settlement-related information.

And

Additional Requests: If Class Members requested the notice or Claim Form, these were to be sent via email or regular mail.

**False Allegation of Clear Notice in the Omnibus Objection**
The Omnibus Objection states that class members were notified that in settling with Perkins, we would be releasing Giga Watt from its debts to us.

The instance I'm aware of that alleges class members were properly notified was in the Omnibus Objection of October 2, 2024. Not until after the Perkins settlement payments were made did the attorney speak openly and frankly about efforts to release their Class Members' claims against Giga Watt.

Page 12 of the Omnibus Objection says,
"In addition to receiving notice in the Class Action, the claimants listed on Exhibit 1 also received notices from the Trustee informing them of the release."

And

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

"This notice was served before claimants had to decide whether to object to the settlement of the Perkins Adversary or whether to object to or opt-out of the Class Action Settlement."

## Notices

All of the very few emails I received for the Perkins settlement were about the claim form and the process of sending me the settlement payment.

All of the notices I received, as was expected and accurate, were about a settlement that would release the defendants the class members sued, namely Perkins and Lowell Ness on the condition that the full amount of the estimated payment-for-settlement was made.

All of the notices I received informed me of my right to opt out of the settlement.

All of the notices I received informed me of my right to opt out of the settlement with the only defendants the class members sued, namely Perkins and Lowell Ness.

None of the few email messages I received said anything about any effort to include Giga Watt in the settlement with Perkins.

None of the notices I received stated that any other defendant had been added to the Perkins lawsuit.

None of the notices I received stated that the settlement being proposed could or would be with any party other than the only defendants the class members sued, namely Perkins.

None of the notices I received disclosed that a party that the class members had expressly and intentionally excluded from, and did not sue in, the class action lawsuit had been or possibly could be part of any settlement discussion.

I truthfully state that I was not aware at any time during the Perkins litigation of any effort on the part of the Trustee to remove my claim to the Giga Watt bankruptcy.

The notices that the Omnibus Objection refers to, and proof of delivery of them to the class members, are not provided as exhibits in the Omnibus Objection.

## Example of a Notice I Received

One notice I received from the class members' law firm is a postcard. It's post-marked March 13, 2024
Here is the text of the postcard notice:

Page 39 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

*Legal Notice*

*You are receiving this email because records indicate you may have owned one or more "Tokens" that were supposed to provide access to "Giga Watt" cryptocurrency mining facilities in Eastern Washington. If so, you may be a "Class Member" and entitled to receive a cash award from a class action settlement. In Dam v. Perkins Coie LLP, et al., Case No. 2:20-ev-00464-SAB (E.D. Wash.), the court preliminarily approved the Settlement of a class action lawsuit over whether Defendants improperly released money deposited in its escrow account that was paid to purchase Tokens representing the right to use the Giga Watt Project's cryptocurrency mining facilities. The Defendants in the lawsuit deny these claims.*

*What does the Settlement Provide? The Settlement will create a $4,500,000 Common Fund from which Class Members who submit a valid claim will receive a cash payment. Each Class Member's pro rata amount will be calculated based upon the number of Tokens owned by the Class Member on November 19, 2018, as a percentage of all Tokens owned by Class Members who submit valid claims. Class notice and settlement administration expenses, Plaintiff's Counsel's fees (up to 25% of the Common Fund) and expenses, and any Class Representative service award as approved by the Court will also be paid out of the Common Fund.*

*How do I get a cash payment? By April 15, 2024, you must submit a Claim Form to qualify for a cash payment. The Claim Form is available at www.-----Settlement.com. Claim Forms can be submitted online at www.-----Settlement.com or by mail. The deadline to submit a Claim Form is April 15, 2024.*

*What are my other options? If you don't want any cash payment or to be legally bound by the Settlement, you must submit a "Request for Exclusion" mailed or submitted online at www.-----Settlement.com so that the exclusion request is received by April 30, 2024. If you do not exclude yourself, you have the right to object to the Settlement. The deadline for filing objections is April 30, 2024. The requirements for submitting an objection and exclusion request can be found in the Settlement Agreement and Detailed Notice available at www.-----Settlement.com . If you exclude yourself, you cannot receive any cash payment, but you do not release any potential rights to sue Defendants relating to the claims in the lawsuit.*

*The Court will hold a hearing on May 21, 2024 at 1:30 p.m. At that hearing, the Court will consider whether to approve this Settlement and whether to approve requested attorneys' fees of 25% of the Common Fund plus reimbursement of costs and a $5,000 service award for the Class Representative. You may appear at the hearing, but you don't have to. The Court has appointed attorneys from the law firm Blood Hurst & O'Reardon, LLP to represent the Class*

Page 40 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

> *("Class Counsel"). You will not be charged for these lawyers. If you want your own lawyer, you may hire one at your expense.*
> *For more information or for a Claim Form, please visit www.-----Settlement.com or call 1-888-841-0273.*
> *AJ8542_v03*

This notice is explicitly about the Perkins lawsuit that class members agreed to be part of because this lawsuit excluded Giga Watt and the Class Members' dispute with Giga Watt, and the Class Members agreed with the sensible reasons for excluding Giga Watt from this lawsuit.

This statement doesn't say that acceptance of the settlement negotiations announced therein would end or would even affect Class Members' right to sue Giga Watt or their claims as creditors in Giga Watt's bankruptcy.

This notice and any other notices that may have been made were opportunities to be clear, frank, and honest about the settlement and matters that could harm the Class Members.

Even if I had received numerous notices like this in various formats, the proposal to include Giga Watt as a released party is wrong. But as for inadequate notice, this notice doesn't mention the idea of release of Giga Watt from separate matters of a separate lawsuit—something that would harm and not benefit me.

## Why No One Objected or Opted Out

The Omnibus Objection says, "No one objected to or opted out of the Class Action Settlement."

No class member objected to the Perkins lawsuit settlement because we and our attorneys knew a) our dispute was with the two defendants and no one else, b) our settlement with the two defendants wasn't and could not be with anyone other than the two defendants, c) our settlement not with Giga Watt and so didn't affect our still-valid claims in Giga Watt's bankruptcy, and at no time were Class Members informed of any effort or possibility to include in any part of the Perkins lawsuit and its settlement a release of our valid claims against a party we did not want to release, and which we had intentionally, clearly excluded from every step of the Perkins lawsuit.

If it's true that none of the class members objected to or opted-out of the Class Action settlement, that is because they were settling with a lawsuit that Giga Watt was not a party to. The class members want the separate bankruptcy claims that they have had as Giga Watt creditors since before the Perkins case started to continue in court.

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

Our agreement was to settle with Perkins for a fraction of the proven amount of damages caused by Perkins's illegal disbursement of our escrowed funds.

## Crucial Matter Kept Quiet

In fair and equitable dealings, something as crucial as invalidating a claim against a third party that the class members are and always have been and still very much are committed to pursuing in bankruptcy court is something that—as a matter of routine legal procedure—would be openly stated and discussed so that everyone affected would have been informed of it.

The fact that the blatantly important matter of trying to force Class Members to release Giga Watt from their valid bankruptcy claims by not telling them about a release of Perkins was not openly discussed, and Class Members weren't informed, suggests that the Perkins settlement discussions might not have been entirely consistent with law, fair dealing, justice, impartiality, unbiased representation of the interests of all parties, minimum best practices, honor, and integrity.

## Class-Member Participation in Class-Action Lawsuit Negotiations

Class-member participation is not genuinely allowed in class-action lawsuits. Kostolansky and Hazel confirm that: "Generally speaking, absent class members are not 'parties' before the court in the sense of being able to direct the litigation."
Williams v. Gen. Elec. Capital Auto Lease, Inc., 159 F.3d 266, 269 (7th Cir. 1998).

## Funds Belong to Token-Holders

Perkins was ordered to set aside at least $7.5 million to settle issues related to the escrow account. Errors and the automatic stay resulted in $3 million of this being claimed by trustee Mr. Waldron for Giga Watt instead of the Class Members whose money it is.

This case supports the argument that such a diversion is neither fair nor justified, as it reallocates resources intended for token holders without providing adequate compensation to them.

Class Members agree that they were notified of the options to opt-out or object. What was not clear, and in fact was concealed, was talk of class members releasing Giga Watt "in exchange for" settling our class-action case. It doesn't make sense to negotiate to have someone you're supposed to be helping give up something of value -- i.e. continuing with an effort to go to jury-trial for a very winnable lawsuit -- in exchange for something that harms and therefore is not wanted by the conceding party.

But this appears to be what the Mr. Waldron has said he "negotiated." Mr. Mr. Waldron 1) arranged to have Giga Watt sue Perkins Coie on the nonsensical grounds that Giga Watt was damaged by Perkins sending Giga Watt over 20 million dollars that everyone knew belong to the creditors, and then 2) pretended to negotiate with Perkins on the Class-member bankruptcy-creditors' behalf by means

Page 42 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

activity with the unjustified lawsuit by Giga Watt against Perkins, and then 3) arranged to have Giga Watt receive almost half of the total Perkins settlement amount ($3 million of $7.5 million), even though escrow law, other law, and basic standards of what's Fair and Equitable mean that that money rightfully belongs to the Class Members. I believe the $3 million has not been distributed to Giga Watt because it does rightfully belong to the Class-Action Lawsuit's plaintiffs.

Sending to Giga Watt money that belongs to Class Members can be accomplished only by means of procedural errors and abuses.

Class members have every right to recover their money from Perkins and Giga Watt. It should not be given to a debtor that unjustly received millions more of their money.

Settlement proceeds designated for specific creditor groups cannot be redirected without proper justification and consent. In *In re Johns-Manville Corp.*, 517 F.3d 52, 66 (2d Cir. 2008), the court held that bankruptcy proceedings should not be used to "achieve the substantive equivalent" of diverting designated settlement funds away from their intended beneficiaries. Similarly, *In re Quigley Co.*, 676 F.3d 45, 59 (2d Cir. 2012), emphasizes that bankruptcy courts cannot approve arrangements that "improperly strip" creditors of their legitimate claims to settlement proceeds without ensuring they receive their rightful share. Here, token holders were the designated beneficiaries of the escrow settlement, and Giga Watt's interception of these funds via the release mechanism represents precisely the type of improper diversion that these cases reject.

## Inappropriate Use of the Automatic Stay to Justify Diversion

Giga Watt's reliance on the automatic stay to intercept these funds is inequitable, as it improperly prioritized estate interests over token-holder creditors. This artificial diversion gave Giga Watt an unwarranted share of settlement funds meant for token holders. Had the stay been correctly applied, token holders would have received the full $7.5 million, preserving the settlement's integrity.

Courts have consistently held that the automatic stay cannot be employed as a tactical device to redirect funds away from their rightful beneficiaries or to manipulate creditor recoveries. In *In re Residential Capital, LLC*, 508 B.R. 851, 863 (Bankr. S.D.N.Y. 2014), the court emphasized that the automatic stay "was not intended to be used as a tactical device to orchestrate pending litigation" or to disrupt legitimate creditor expectations. Additionally, *In re Lehman Bros. Holdings Inc.*, 439 B.R. 811, 837 (S.D.N.Y. 2010), highlighted that procedural mechanisms in bankruptcy must uphold fairness and avoid inequitable redistribution of recoveries. Giga Watt's intervention through the automatic stay to intercept funds designated for token holders exemplifies the type of procedural manipulation these cases caution against, failing to meet equitable standards by undermining the original purpose of the settlement.

Page 43 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

## Giving Plaintiff's Funds To Giga Watt Is Not Fair and Equitable

The attempt to give the plaintiffs' money to Giga Watt violates the fair and equitable standard. Perkins received the plaintiffs' money for safe-keeping. It was unlawful for them to release it until certain milestones were completed. But Perkins disbursed it to Giga Watt.

## Discouragement of Deceit, Equivocation, Sleight of Hand

The Omnibus Objection would turn the meaning of "settlement with creditors for Perkins' violation of escrow law and resulting damages" into "release of Giga Watt." This isn't legally supportable.

The idea that class members released Giga Watt "in exchange for" settling the lawsuit with Perkins doesn't make sense. That's why valuable consideration is required for a contract to be enforceable. Concession of something -- i.e. settling a very winnable lawsuit for a fraction of your damages -- in exchange for something you don't want is nonsense. But this is what the trustee Mr. Waldron claims he "negotiated." Mr. Waldron 1) arranged to have Giga Watt sue perkins coie lowell ness on the nonsensical grounds that Giga Watt was damaged by perkins sending Giga Watt at least 20 million dollars that both of them knew belong to the creditors, and then 2) pretended to negotiate with Giga Watt "on the creditors' behalf" and "for the benefit of the creditors", and then 3) arranged to have almost half of the Perkins settlement money go to Giga Watt instead of the people it belongs to.

Class Members were not willing to release Giga Watt for any reason, under any circumstances.

## Falsely Naming Giga Watt as a Released Party Didn't Make It True

Even if notifications about the idea of Class Members releasing Giga Watt along with Perkins in the settlement had been explicit, clear, and above board (which they weren't), every one of the inclusions of Giga Watt in notices that suggested Class Members' settlement with Perkins would release Giga Watt were incorrect—as this Motion extensively proves.

## Good Faith

This objection is motivated by good faith, integrity, and honesty. my genuine effort to resolve the matter in a fair and equitable manner.

Even though the amount of recovery in the settlement offer was a small fraction of our losses and the future increases in value of crypto that we were reasonable to foresee in the dawning industry, the class members and I accepted the settlement agreement in good faith. We knew the lawsuit didn't pertain to the issues and parties of the Perkins class-action case. The allegation that we released Giga Watt when we settled with Perkins is contrary to what the class members had been told before and during the entire time of the Perkins case, and to our intentions in agreeing to the settlement.

Page 44 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

Class members acted in good faith at all times. The Omnibus Objection revealed to us for the first time that although we acted in good faith in all of our interactions with the Giga Watt and with Perkins, we now find we've been treated in bad faith and intentionally misled. The bad-faith attempt to include our bankruptcy debtor, Giga Watt, in a settlement with Perkins is by all objective assessment deceitful, dishonest, and manipulative, and the intention of this effort could only be to . an undeserved, unlawful . of bankruptcy debt.

## Honor, Oaths, and Duties

We don't want to live in the impoverished mess of a lawless country. Nor do we want to leave a mess to future generations.

As a *pro se* filer in this court, I deeply appreciate this opportunity to bring the facts of this case to the court's attention by filing this Motion. I also appreciate the work the United States Judiciary does to guard principles of fairness, justice, and social order for ordinary regular people like me, who have to fend for ourselves against wrongs and risks.

Thank you for your diligence, integrity, and unbiased wisdom in this case. The outcome of this bankruptcy will affect not just the litigants, but also everyone who MAY EVER turn to court and the people who work hard there every day for help. Thank you for that dedication to honor and justice, ensuring the integrity of this court for generations to come.

No matter what happens… I am making every effort and sacrifice to bring awareness to the truths of this case not just for my and my co-victims' sake, but also for everyone who relies or will ever rely on courts to make it possible for people to team up in business and accomplish the all the good things business provides us all with.

### Professional Oaths

The professional oaths, ethical obligations, and the role and duty of class members' legal representatives underscore the importance of upholding legal ethics and responsibilities. This can help emphasize the gravity of the situation and the commitment of legal representatives to act in the best interests of their clients. It can also highlight the legal standards that guide the actions of legal representatives in representing their clients in class action cases.

### Example of an Oath That Attorneys Take

The oath that licensed attorneys take when sworn in to practice law in Washington state is as follows: "I, Attorney's Name, do solemnly swear that I will support the Constitution of the United States and the Constitution and laws of the State of Washington; that I will not counsel or maintain any suit or proceeding which shall appear to me to be unjust, nor any defense except such as I believe to be

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

honestly debatable under the law; that I will employ for the purpose of maintaining the cause confided to me only such means as are consistent with truth and honor, and will never seek to mislead the judge or jury by any artifice or false statement of fact or law; that I will maintain the confidence and preserve inviolate the secrets of my client, and will accept no compensation in connection with the client's business except from the client or with the client's knowledge and approval; that I will abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged, so help me God."

## Example of an Oath That Judges Take

The oath that licensed judges take when sworn in to serve as judges in Washington state is as follows: "I, Judge's Name, do solemnly swear that I will support the Constitution of the United States and the Constitution and laws of the State of Washington; that I will administer justice without respect to persons, and do equal right to the poor and to the rich; and that I will faithfully and impartially discharge the duties of the office of judge to the best of my ability, so help me God."

When a judge swears to "administer justice without respect to persons," it means that they are committing to applying the law fairly and equally to all individuals, without showing favoritism or bias based on personal characteristics such as race, gender, religion, wealth, or social status. This principle ensures that justice is dispensed objectively, without discrimination or prejudice.

On the other hand, when a judge pledges to "faithfully and impartially discharge the duties of the office of judge," it signifies their promise to carry out their judicial responsibilities diligently, honestly, and neutrally. Judges are expected to act with integrity, adhere to ethical standards, and make decisions based on the law and evidence presented in court, rather than personal beliefs or external influences. Impartiality is crucial to maintaining the public's trust in the legal system and ensuring that justice is served fairly and equitably for all.

## Legal Obligations and Duties of Escrow Officers

Financial fiduciaries, such as escrow officials, are bound by law in addition to binding contracts or agreements with their clients when they are entrusted to carry out escrow responsibilities. This contract would outline their duties, responsibilities, and obligations to act in the best interest of their clients in accordance with the law and ethical standards. Failure to uphold these obligations can result in legal consequences.

## Escrow

Escrow law applies to the establishment, operation, and management of escrow accounts. Escrow accounts are financial arrangements where a neutral third party holds funds or assets on behalf of two parties involved in a transaction, until certain conditions of the agreement are met.

Key aspects of escrow law include:

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

1. Escrow agent responsibilities: The escrow agent is responsible for safeguarding the funds or assets deposited in the escrow account and ensuring that they are disbursed according to the terms of the agreement.

2. Escrow instructions: Escrow instructions are the terms and conditions agreed upon by the parties involved in the transaction regarding the handling and disbursement of the escrow funds or assets. These instructions are legally binding.

3. Disbursement conditions: Escrow funds are typically released to the intended recipient only when all conditions of the agreement have been met. These conditions are outlined in the escrow instructions.

4. Regulatory requirements: Escrow accounts are often subject to specific regulations and requirements imposed by state or federal laws. For example, some states require escrow agents to obtain a license to operate.

5. Conflict resolution: In the event of a dispute between the parties involved in the transaction, escrow law may provide mechanisms for resolving conflicts, such as mediation or arbitration.

The combination of regulatory oversight, legal requirements, escrow instructions, insurance, bonding, and auditing mechanisms helps to safeguard the integrity of the escrow process and protect the interests of the parties involved. These measures are designed to prevent criminal abuse and ensure that escrow transactions are conducted in a fair and lawful manner.

Misappropriation of escrow funds is a serious offense and can lead to criminal charges, civil liability, and the revocation of the escrow agent's license (if applicable). The affected parties who have entrusted funds to the escrow agent may have legal recourse to recover their funds and seek damages for any losses incurred.

If this situation arises, the affected parties should immediately notify the appropriate authorities, such as the regulatory agency overseeing escrow activities in their jurisdiction, and consult with legal counsel to pursue legal action against the escrow agent for misappropriation of funds and breach of fiduciary duty.

In Washington State, escrow officers are subject to a set of laws and regulations that govern their fiduciary duty and responsibilities. The primary law governing escrow activities in Washington is the Escrow Agent Registration Act, which is found in Chapter 18.44 of the Revised Code of Washington

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

(RCW). This law sets forth the requirements for registration, bonding, and licensing of escrow agents in the state.

Under Washington state law, escrow officers are considered fiduciaries, meaning they have a legal obligation to act in the best interests of the parties involved in the escrow transaction. This includes a duty to safeguard the funds entrusted to them, follow the escrow instructions provided by the parties, and act in a neutral and impartial manner.

In addition to state law, there are also federal laws that apply to escrow officers, particularly in certain types of transactions that involve federal regulations. For example, the Real Estate Settlement Procedures Act (RESPA) is a federal law that sets forth requirements for escrow officers in real estate transactions, including disclosure requirements and prohibitions on certain practices, such as kickbacks and referral fees.

Both Washington state and federal laws impose important fiduciary duties on escrow officers to ensure the protection of funds and the fair and lawful handling of escrow transactions. Violations of these laws can result in legal action, including civil penalties, revocation of licenses, and potential criminal charges. It is important for escrow officers to be knowledgeable about these laws and to comply with their fiduciary responsibilities to avoid legal consequences.

While the honor and trustworthiness of the escrow officer play a significant role in the integrity of the escrow process, there are also legal mechanisms and safeguards in place to prevent criminal abuse and ensure the proper functioning of the escrow system, particularly in the real estate industry.

> 1. Licensing and Regulation: Escrow officers are typically required to be licensed and regulated by state authorities. These regulatory bodies oversee the activities of escrow officers, ensure compliance with escrow laws, and have the authority to investigate complaints and take disciplinary actions against escrow officers who violate the law.

> 2. Escrow Instructions: The escrow instructions, which are legally binding agreements between the parties involved in the transaction, outline the terms and conditions for the handling and disbursement of funds in the escrow account. If the escrow officer does not follow these instructions, it can lead to legal consequences.

> 3. Audits and Reviews: Escrow accounts may be subject to audits and reviews by third-party professionals or regulatory agencies to ensure that the funds are being handled appropriately and in accordance with the law.

Page 48 of 59
**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

4. Errors and Omissions Insurance: Escrow officers often carry errors and omissions insurance, which provides financial protection in case of errors or negligence in the handling of escrow transactions.

5. Escrow Bonding: Escrow officers may be required to maintain a bond as part of their licensing requirements, which serves as a form of financial protection for the parties involved in the escrow transaction in case of fraud or mismanagement.

## Definitions In The Giga-Watt/Perkins Escrow

1. Depositor/Payer: Andrea Sharp. I am the party who deposited to the escrow account. I made the payments according to the terms of the agreement with Giga Watt.

2. Funds in Escrow: The funds or assets placed in the escrow account were held by Perkins Coie who was legally required to serve as a neutral third party (escrow agent) until the terms of the escrow contract were fulfilled.

3. Escrow Agent: Perkins Coie Lowell Ness.  The defendants were legally contracted to safely hold my funds in escrow. Their job, by law, was to ensure that the terms of the escrow agreement were met so that either Giga Watt fulfilled the terms of the escrow agreement, or the money in escrow was returned to the escrow-fund depositors.

4. Beneficiary/Recipient: Giga Watt. By law, Giga Watt was not entitled to receive the funds or assets from the escrow account because Giga Watt did not fulfill the agreed-upon conditions of the escrow agreement. Even though Giga Watt did not perform according to the contract terms to receive the funds, Perkins disbursed the escrowed funds to Giga Watt. The law is clear that the funds should have been returned to the Depositors, minus a standard fee for escrow services.

**Bankruptcy**

Bankruptcy is a legal process designed to help individuals and businesses who are unable to pay their debts. It can provide relief by allowing debtors to either reorganize their finances or have their debts discharged.

There are legitimate reasons for declaring bankruptcy, such as financial hardship, overwhelming debt, job loss, medical expenses, or a business downturn. The process can help individuals or companies get back on their feet and make a fresh start financially.

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

However, it has happened that dishonest people have abused the bankruptcy system to avoid fulfilling their contractual obligations to people they owe money to. This can happen when someone takes payment for goods or services without intending to deliver on their promises and then declares bankruptcy to avoid legal repercussions for not fulfilling the contract.

Bankruptcy laws have provisions to prevent abuse of the system, and courts can dismiss a bankruptcy case if there is evidence of fraud, such as concealment of assets, false statements, or fraudulent transfers. Additionally, creditors can challenge the discharge of debts in bankruptcy to prevent possible attempts to use the bankruptcy system to commit and conceal fraud.

In the U.S., the Bankruptcy Code establishes the criteria for filing for bankruptcy and proving insolvency. Specifically, under Chapter 7 bankruptcy, the debtor must meet a means test to determine if they have the ability to repay their debts. This test compares the debtor's income to the state median income and expenses to determine if there is disposable income available to repay debts.

Additionally, under Chapter 13 bankruptcy, the debtor must present a repayment plan to show how they intend to repay their debts over a specified period of time based on their income and expenses.

Courts generally require various forms of evidence to prove inability to pay debts, such as:

1. Income and expense statements
2. Tax returns
3. Bank statements
4. Documentation of debts owed
5. Evidence of attempts to negotiate with creditors
6. Valuation of assets and liabilities

Courts have rejected certain forms of proof of inability to pay debts, such as:

1. Lack of effort to negotiate with creditors or explore other repayment options
2. Failure to provide accurate and complete financial information
3. Inadequate documentation to support claims of insolvency
4. Hiding assets or falsifying financial information

On the other hand, courts have accepted valid forms of proof of inability to pay debts when presented accurately and fairly, demonstrating a clear financial hardship and an honest attempt to address the debts.

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

It is important for the debtor to work closely with their bankruptcy attorney to gather and present the necessary evidence to prove their inability to pay debts and qualify for bankruptcy relief under the applicable provisions of the Bankruptcy Code.

Avoidance actions in bankruptcy refer to legal proceedings where a bankruptcy trustee seeks to recover certain transfers made by the debtor before filing for bankruptcy. These actions aim to undo transactions that may have unfairly favored certain creditors or defrauded Giga Watt.

Some common types of avoidance actions include:

> 1. Preferential transfers: These are payments or transfers made to a specific creditor within a certain period before filing for bankruptcy, which may be avoided and recovered to ensure fair distribution among all creditors.

> 2. Fraudulent transfers: These are transfers made with the intent to defraud creditors or hinder the bankruptcy process, which can be avoided and recovered by the trustee.

> 3. Unauthorized post-petition transfers: These are transactions made after filing for bankruptcy without proper approval, which may be avoided by the trustee.

Avoidance actions serve to protect the integrity of the bankruptcy process and ensure equitable distribution of assets among creditors.

**Harm of Depriving Creditors of Bankruptcy Procedure**

Approval of the Omnibus Objection would deprive class members of the routine process of objectively determining whether Giga Watt's bankruptcy claim is legitimate or not by means of the bankruptcy process.

In the bankruptcy evaluation process of Giga Watt, the court can expect Giga Watt will be providing documentation and other proof needed to satisfy bankruptcy rules. If Giga Watt's bankruptcy is proper, there's no reason to try have my claim removed from a bankruptcy evaluation. If there are any valid reasons to exclude or include my claim, they can be properly presented in court. Bankruptcy creditors and their claims should not be deprived of a disinterested qualified bankruptcy judge's evaluation of their merit.

We rely on bankruptcy court to ensure that reasons for not paying a debt are lawful.

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

Without reliable bankruptcy courts, all that dishonest people would need to do to break their contractual obligation to deliver on their end of a contract is file bankruptcy paperwork. The effect on business, and life in general, would be disastrous.

Bankruptcy court is essential for ensuring bankruptcy can't be used to make promises, receive money, and escape fulfillment of promise.

Bankruptcy court is essential so that bankruptcy cannot be abused to make theft appear legal.

The creditors that the Omnibus Objection seeks to exclude from the bankruptcy the creditors deserve to be part of still need to be able to find out the answers to many questions. Examples did Giga Watt list all their assets? Accurately? Their true liabilities? Did Giga Watt use misrepresentation to acquire as much money from as investors as possible? After doing so, did Giga Watt use money that credit with investors to financially benefit themselves in subsequent private ventures, such as crypto-mining and –investing, that they excluded their creditors from? Is Giga Watt using bankruptcy, as sometimes happens, simply to try to breach the terms they promised in their contract with creditors?

I submitted my proof of claim to the Giga Watt bankruptcy because I have a valid claim to that bankruptcy, and I trust the bankruptcy court to oversee the case and protect everyone from possible abuse of the bankruptcy process.

**Trustee**
The trustee's legal duty is to act in the best interests of all parties involved in a bankruptcy, and not misrepresent their intentions.

The duties, responsibilities, and professional requirements of a state court-appointed bankruptcy trustee in Washington can typically be found in the Revised Code of Washington (RCW) and the Washington State Court Rules, specifically Title 11 (Bankruptcy) of the RCW and the Washington State Court Rules for Bankruptcy.

Additionally, the United States Trustee Program, which is part of the Department of Justice and oversees the administration of bankruptcy cases, may also provide information on the duties and responsibilities of bankruptcy trustees.

To find the official job description and requirements for a bankruptcy trustee in Washington's public records, you can search on the Washington State Legislature's website for the relevant statutes and regulations, or visit the website of the United States Trustee Program. Additionally, you may also find

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

information on the Washington State Bar Association's website or through the Washington State Court system's official website.

## Traditions of Private Project-Financing

Private financing of projects like online businesses, real estate development, IT solutions, and many others has been going on since at least the 1500s. The tradition has become even more prevalent in modern times.

Private financing is essential to economic growth. It rewards innovation, brings about infrastructures for prosperous communities, creates jobs, and provides countless other social benefits.

Investors can benefit from the tradition of private financing by agreeing to let their money be put to use in funding industrious endeavors and later participating in the success and growth of the project funded, rise in price of its tradeable assets, public equity offerings, sale of the project itself, dividends paid for equity ownership, and other things.

Are there any legal mechanisms for protecting investors in privately funded projects?

How do participants ensure transparency, accountability, and fair treatment?

> Regulations. The business world relies on rules and guidelines from government agencies and regulatory bodies for the financial fuel needed to get businesses started, keep them going, and share success in mutually beneficial ways.

> Law. Law for contracts, escrow, accounting, financial disclosure, and other business matters makes it possible to trade and operate business.

> Courts.  Law and regulation is useless without enforcement. None of us want to live in the impoverished mess of a lawless country. What would life be like without reliable courts? What would the consequences be to us and our children if protective mechanisms are weakened by corruption, neglect, abuse, misapplication of law, kickbacks, bribes, and other failings within the systems that exist to make protection possible, profound unwanted consequences ?

When successful, businesses financed by private investors can bring about a range of benefits to society. These benefits include:

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

1. Innovation and job creation: Successful businesses can introduce new products, services, and technologies that can improve the quality of life for people. This innovation can lead to job creation, boosting employment opportunities and stimulating economic growth.

2. Economic growth and development: By investing in infrastructure projects and business ventures, investors can contribute to the overall economic development of a region or country. This investment can lead to increased productivity, higher incomes, and improved living standards for communities.

3. Social impact: Successful enterprises can also have a positive impact on society by supporting charitable causes, engaging in socially responsible practices, and promoting sustainable development. This can help address social issues and contribute to the well-being of communities.

4. Tax revenue: Successful businesses generate tax revenue for governments, which can be used to fund public services such as healthcare, education, infrastructure, and social welfare programs. This helps to support the overall well-being of society.

The advantages of financing from private sources rather than taxes include:

1. Efficient allocation of resources: Private investors evaluate investment opportunities based on their potential returns, leading to a more efficient allocation of resources. This can result in better project selection and management compared to government-funded projects, which may be subject to political considerations.

2. Risk-sharing: Private investors bear the financial risks associated with their investments, encouraging them to carefully assess opportunities and manage risks effectively. This can lead to more prudent decision-making and better project outcomes.

3. Innovation and entrepreneurship: Private investment can foster innovation and entrepreneurship by providing capital and expertise to support new ideas and ventures. This can drive economic growth and create opportunities for job creation and wealth generation.

## Protection of Parties From Complexities of Class-Action Lawsuits

Here are examples of mechanisms used to protect class-member plaintiffs in class-action lawsuits from wrongdoing by the representatives who negotiate the settlement on their behalf.

1. Court Approval: Any settlement in a class action lawsuit must be approved by the court. The court will review the terms of the settlement to ensure that it is fair, reasonable, and adequate

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

for the class members. The court will also consider whether the representatives acted in the best interests of the class members.

2. Notice to Class Members: Class members are typically provided with notice of the proposed settlement and have the opportunity to object to or opt out of the settlement. This provides class members with the chance to voice concerns or raise any discrepancies they may have with the terms of the settlement.

3. Representation by Class Counsel: Class members are represented by appointed class counsel who have a duty to act in the best interests of the class as a whole. Class counsel are responsible for negotiating the settlement on behalf of the class members and must ensure that the terms are fair and appropriate.

The court plays a crucial role in overseeing class action settlements to ensure that the rights of class members are protected and that the settlement terms are fair and reasonable. Class members have the opportunity to raise concerns and object to settlements that do not accurately represent their interests.

## *Pro Se* Pleading Apology

As a *pro se* petitioner, I apologize for my improper formatting and deviation from decorum. I hope that can be viewed with the leniency traditionally extended to self-represented individuals. Also, I didn't know about the Omnibus Objection until October 12 and so have not had enough time to produce a document of the quality I would have produced if I had had enough time to.

**Giga Watt, Inc., Debtor**
Case No: 18-03197 FPC 7
*Creditor's Motion To Deny Omnibus Objection And Its Proposal To Expunge Her Bankruptcy Claim*
Moving Party: Andrea Sharp
November 6, 2024

# EXHIBIT 10 - CONCLUSION

Arguments that class members and I released Giga Watt when we settled a different matter with a different defendant are not factually, legally, or morally supportable.

If the Omnibus Objection were approved, the parties would not have an opportunity to find out if the creditors' claims or the bankruptcy are valid or invalid, which is the purpose of bankruptcy.

If the Omnibus Objection were approved, my valid claims in Giga Watt's bankruptcy would effectively be discharged even though the debt has not been legally deemed to be legally dischargeable.

It would be legally and morally wrong to release Giga Watt from claims or litigation that are unrelated to the settled case with Perkins.

The fact that release of Giga Watt from our claims in their bankruptcy would profoundly harm me, and I would not and do not agree to this harm. The Class Members and I were reasonable to rely on our attorneys to represent us in good faith, and to advocate on our behalf for our best interests.

I respectfully request that the Court preserve the right of the Giga Watt's creditors, including myself, to pursue our legitimate claims by denying Omnibus Objection, including its allegations that I released Giga Watt and its proposal that my valid claim against Giga Watt be released, and uphold the fair and equitable treatment of Giga Watt'S creditors, so damage that Giga Watt has done to creditors can be repaired, and so the injustices that have happened in this case can be rectified.

We simply deserve to "have our day in bankruptcy court."