Jun Dam (*Pro Se*)
5432 Geary Blvd #535
San Francisco, CA 94121
Phone: (415) 748-1113
Email: jundam@hotmail.com

The Honorable Frederick P. Corbit
Chapter 7

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

In re:

GIGA WATT INC.,

Debtor

Case No. 18-03197-FPC

**CREDITOR JUN DAM'S RESPONSE TO TRUSTEE'S OBJECTION TO TOKEN-HOLDER CLAIMS**

**COMES NOW**, Creditor Jun Dam, by and through his pro se status, and submits this response to the Trustee's objections to token-holder claims. Creditor seeks to protect his legitimate claims as a token holder while reserving all rights to challenge jurisdiction over unrelated matters.

## I. JURISDICTIONAL DISCLAIMER

Creditor expressly reserves all rights to challenge the bankruptcy court's jurisdiction over the $3 million settlement allocation to the bankruptcy estate. This filing is limited to protecting Creditor's token-holder claims and does not indicate consent to jurisdiction over escrow-related matters or the $3 million settlement. Creditor intends to address these matters in the appropriate forum, including the U.S. District Court, if necessary.

## II. PROTECTING TOKEN-HOLDER CLAIMS

**A. Distinction in Factual Nucleus**

The Trustee's argument that token-holder claims and mining equipment/lease rights claims arise from a "common nucleus of operative fact" is fundamentally flawed.

    1.  **Token-Holder Escrow Claims:**

Token-holder escrow claims arise from the escrow agreement, under which token holders were the sole intended beneficiaries. This agreement governed funds held exclusively for token holders and ensured their exclusive benefit.

    2.  **Token-Holder Lease Rights Claims:**

Token-holder lease rights claims pertain to contractual obligations related to long term access and use of cryptocurrency mining facilities, which were not fulfilled. These claims arise from separate agreements and have distinct factual and legal predicates unrelated to the escrow agreement.

By conflating these two categories, the Trustee mischaracterizes the factual basis of the token-holder claims.

**B. Escrow Agreement and Breach**

    1.  The release of escrow funds constituted a breach of the agreement's terms, as the funds were prematurely and improperly released to the bankruptcy estate without justification or authority.

    2.  The Trustee's position improperly conflates the unauthorized early release of escrow funds with claims for unrelated obligations, such as token-holder lease rights to mining facilities

that were built. Lease rights arise from separate agreements and have no connection to the escrow agreement. Therefore, the two sets of claims do not share a "common nucleus of operative fact."

**C. Damages and Offsets**

1. **Partial Damages Offset:**

    It is acceptable for a portion of damages already covered by the class-action settlement to reduce creditor claims tied to the escrow breach.

2. **Improper Release of Funds:**

    The escrow funds intended for completed mining facilities were improperly released, as they were not earned and did not fulfill their intended purpose under the original agreements. These funds should have either remained in escrow or been distributed to token holders as compensation for unfulfilled obligations.

3. **Preservation of Token-Holder Claims:**

    Token holders should retain their lease-right claims to mining facilities, as these arise from separate agreements distinct from the escrow breach. These broader claims must not be dismissed based on offsets or duplicative arguments that are unrelated to the escrow breach.

**D. Creditor Claims Adjustment**

Offsets for partial damages do not absolve the bankruptcy estate from returning escrow funds improperly diverted and earmarked for token holders. Broader claims tied to unfulfilled obligations and the improper allocation of escrow funds remain valid and must be preserved (11 U.S.C. § 502).

## III. RELEASE CLAUSE AND ITS LIMITATIONS

**Class-Action Settlement vs. Creditor Claims**

The release clause in the class-action settlement generally prohibits class members from suing the Trustee, debtor, or estate. However, this does not extinguish distinct creditor claims filed in bankruptcy.

**Enforceability of the Release Clause**

1. The Trustee cannot rely on promissory estoppel, as:

    i. There is no clear and definite promise from Perkins Coie or token holders to release creditor claims in favor of the estate. The release clause applies only to not suing the Trustee, debtor, or estate directly based on the class-action settlement

    ii. The estate provided no valid consideration for releasing token-holder creditor claims.

2. Privity of Contract:

    Token holders had no privity of contract with the bankruptcy estate regarding the escrow funds. The escrow agreement existed between token holders and Perkins Coie, with token holders as the sole beneficiaries.

**Fraud on the Court**

Just as the Trustee misrepresented the bankruptcy estate's standing to receive $3 million from Perkins Coie, the Trustee's counsel misrepresents the $4.5 million class-action payment as part of consideration on behalf of the estate.

1. This misrepresentation undermines the integrity of the court's proceedings.
2. The $4.5 million payment to token holders is unrelated to the estate and cannot be used to justify the release of token-holder claims against the estate.

The court should provide an opportunity for the Trustee's counsel to retract this argument. If not retracted, the misrepresentation should be added to the record as a potential fraud on the court.

**IV. STATUTE OF FRAUDS AND LEASE RIGHTS**

**Misapplication of Statute of Frauds**

The Trustee's reliance on Washington's Statute of Frauds is misplaced. The statute governs enforceability as secured claims tied to real property interests, not general unsecured contractual claims.

1. Token holders are asserting unsecured claims for damages due to the debtor's failure to fulfill contractual obligations, which are enforceable even without meeting the Statute of Frauds requirements.
2. The Trustee conflates secured leasehold interests with unsecured contractual claims. Token holders are not currently seeking to elevate their claims to secured status but are instead asserting valid unsecured creditor claims.

**V. REQUEST FOR RELIEF**

For the foregoing reasons, Creditor respectfully requests that the court:

1. **Preserve Token-Holder Claims:**

    Deny the Trustee's objections seeking dismissal of token-holder claims, including those that are factually and legally identical to Creditor's (Proof of Claim No. 52).

2. **Limit Rulings to Procedural Fairness:**

    Ensure that rulings on token-holder claims do not prejudice or preclude Creditor from litigating identical or related issues in the proper jurisdiction.

3. **Reserve Escrow-Related Issues for the U.S. District Court:**

    Acknowledge that jurisdiction over the $3 million settlement allocation and escrow agreement lies outside the bankruptcy court.

4. **Address Misrepresentation:**

    Provide the Trustee's counsel an opportunity to retract the argument that the $4.5 million class-action settlement payment was part of the bankruptcy estate's consideration for the release of token-holder claims. If not retracted, this misrepresentation should be noted in the record as a potential fraud on the court.

**CONCLUSION**

Creditor seeks the preservation of token-holder claims, equitable treatment of similarly situated creditors, and adherence to jurisdictional principles. The Trustee's flawed arguments regarding the "common nucleus of operative fact," release clause, and Statute of Frauds must not serve as a basis to dismiss valid token-holder claims.

Creditor reserves all rights to pursue escrow-related matters in the appropriate jurisdiction and respectfully requests that this court focus on the protection of token-holder claims within its purview.

Dated this 25th day of November, 2024

Jun Dam (*Pro Se*)
5432 Geary Blvd #535
San Francisco, CA 94108
Phone: (415) 748-1113
Email: jundam@hotmail.com

# CERTIFICATE OF SERVICE

I hereby certify that on 11/25/24 I electronically filed the foregoing **CREDITOR JUN DAM'S RESPONSE TO TRUSTEE'S OBJECTION TO TOKEN-HOLDER CLAIMS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all ECF participants.

Date Served: 11/25/2024

Sign your name: *[signature]*

Print name: Jun Dam